**LiLaw Inc., a Law Corporation**
J. James Li, Ph.D. (*pro hac vice*)
Andy Pierz (*pro hac vice*)
5050 El Camino Real, Suite 200
Los Altos, California 94022
Telephone: (650) 521-5956
Facsimile: (650) 521-5955

Attorneys for Plaintiff and Counterclaim-Defendant
Advanced Analytics, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ADVANCED ANALYTICS, INC.,<br><br>   Plaintiff and Counterclaim Defendant,<br><br>     vs.<br><br>CITIGROUP GLOBAL MARKETS, INC., f/k/a SALOMON SMITH BARNEY, INC., and THE YIELD BOOK, INC., f/k/a/ SALOMON ANALYTICS, INC.,<br><br>   Defendants and Counterclaim-Plaintiffs. | **Case No. 04 Civ. 3531 (LTS) (HBP)**<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S MOTION UNDER FRCP 56(d)** |

# TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY ....................................................................... 1

II.  STATEMENT OF FACTS .................................................................................... 5

  A.  Defendants' Discovery Misconducts Obstructed AAI's Efforts to Obtain the Crucial Evidence at Issue in the 56(d) Motion .................................................... 5

  B.  AAI's Former Counsel Acted Adversely to AAI and Sabotaged AAI's Plans to Seek Rule 37(b) Spoliation Sanction and Rule 56(d) Request ........................... 6

  C.  Defendants and AAI's Formal Counsel Made It Extremely Difficult for AAI to Engage New Counsel and Created Various Obstacles that the New Counsel Had to Overcome to File the 56(d) Motion ..................................................... 8

  D.  Defendants Willingly Forfeited Their Right to File an Opposition to the 56(d) Motion ............................................................................................ 9

III.  ARGUMENT.................................................................................................. 10

  A.  There Is No Ground for Striking the 56(d) Motion. ......................................... 10

    1.  The Rule 56(d) Motion Is Not A Sur-Reply ................................................. 10

    2.  There Is No Ground to Strike Fan 4th Decl. Filed for Non-Merits-Related Purposes .............................................................................................. 12

  B.  Defendants' Remaining Arguments Are Contentions for Opposing, Instead of Striking, the 56(d) Motion, Which They Have Waived .................................... 14

    1.  Defendants Have Forfeited Their Opposition to the 56(d) Motion................. 15

    2.  The Previous Court Orders regarding the Discovery Matters Were Made without the Benefit of Fan 4th Decl. and Wang 6th Decl., Which Show Serious Discovery Misconducts by Defendants. ........................................ 16

    3.  The 56(d) Motion Is Timely and AAI Have Acted with Reasonable Diligence ............................................................................................... 18

a)   Discovery Cutoff Is Not the Deadline for Filing the 56(d) Motion Where Defendants Have Wrongfully Withheld the Evidence in Question ................................................................................................................18

b)   AAI Was Also Diligent in Seeking Rule 56(d) Relief but Was Thwarted by the Former Counsel Who Acted Adversely to AAI ...........................20

c)   The Time Period Spent by the New Counsel to Investigate the Complex Case and to Prepare for the 56(d) Motion Is Reasonable .......................23

C.   Defendants' Request for Sanctions Should Be Denied ................................................... 24

IV. CONCLUSION ................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Bank of China, New York Branch v. NBM LLC*,

    359 F.3d 171 (2d Cir. 2004)..................................................................... 21

*Brand Servs., L.L.C. v. Irex Corp.*,

    909 F.3d 151 (5th Cir. 2018) ................................................................... 19

*Carney v. United States*,

    19 F.3d 807 (2d Cir.1994)........................................................................ 13

*Convertino v. U.S. Dep't of Justice*,

    684 F.3d 93 (D.C. Cir. 2012) ................................................................... 19

*Eastway Constr. Corp. v. City of New York*,

    762 F.2d 243 (2d Cir.1985)...................................................................... 24

*Gachette v. Metro N.-High Bridge*,

    722 F. App'x 17 (2d Cir. 2018) ............................................................... 20

*Hinojosa v. Johnson*,

    277 Fed. Appx. 370 (5th Cir. 2008).......................................................... 18

*Kulkarni v. City Univ. of New York*,

    No. 01 CIV. 10628(DLC), 2003 WL 23319 (S.D.N.Y. Jan. 3, 2003) ................ 21

*Lore v. City of Syracuse*,

    232 F.R.D. 155 (N.D.N.Y. 2005) ............................................................. 19

*Marcin Eng' g, LLC v. Founders at Grizzly Ranch, LLC*,

    219 F.R.D. 516 (D. Colo. 2003) .............................................................. 21

*Miyares v. City of New York*,

    2013 WL 3940816 (S.D.N.Y. July 31, 2013) ............................................. 20

*Resolution Tr. Corp. v. N. Bridge Assocs., Inc.*,

    22 F.3d 1198 (1st Cir. 1994) ........................................................................... 20

*Schlueter v. Varner*,

    384 F.3d 69 (3d Cir. 2004) ............................................................................. 21

*Tebor Sportswear v. The Ltd. Stores, Inc.*,

    865 F.2d 506 (2nd Cir. 1989) .......................................................................... 23

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of*

    *Am., AFL-CIO*,

    948 F.2d 1338 (2d Cir. 1991) .......................................................................... 24

**RULES**

FRCP Rule 11(c)(2) ........................................................................................... 24

Local Civil Rule 6.1(b)(2) ................................................................................... 15

**TREATIES**

Restatement (Third) Of Agency § 5.04 (2006) ..................................................... 21

## I.  <u>INTRODUCTION AND SUMMARY</u>

*Recently*, Plaintiff Applied Analytics, Inc. ("AAI" or "Plaintiff") filed its Motion under FRCP 56(d) (the "56(d) Motion") to defer or deny Defendants' summary judgment motion (the "SJM"). The 56(d) Motion for the first time in this case sets forth the voluminous evidence showing Defendants' discovery misconducts which have so far enabled them to withhold the crucial evidence that Plaintiff needs to oppose the SJM.

Being unable to rebut the evidence of discovery misconducts, Defendants made a conscious decision not to file an opposition to the 56(d) Motion. Instead, Defendants chose to launch a collateral attack on the 56(d) Motion by filing a motion to strike, which will be referred to as the "Motion" hereinafter.

The Motion was filed 9 days too late for being an opposition to the 56(d) Motion, not due to excusable errors but based on Defendants' deliberate decision to forfeit their right to file an opposition. Thus, to the extent that the Motion makes arguments not for striking but for opposing the 56(d) motion in substances, such arguments should not be considered.

Nor is there any valid ground to strike the 56(d) Motion. There are only two contentions in the Motion that are actually for the motion to strike, as opposed for opposing the 56(d) Motion: (1) the 56(d) Motion is a sur-reply for the SJM; and (2) the 56(d) Motion relies primarily on the Fourth Declaration of Jianqing Fan ("Fan 4th Decl.")[1] which the Court has stricken from the opposition to the SJM. These arguments are inapposite.

The 56(d) Motion is not a sur-reply. It is supported by affidavits required by Rule 56(d). The entire motion is about Defendants' discovery misconducts in withholding crucial evidence to support the Rule 56(d) request, pursuant to the four-parts test under the Second Circuit law. It makes no arguments on issues related to the merits of a claim or defense and presents no evidence for the purpose of proving disputed issues of facts for the SJM. Nor does it rebut any

---

[1] Fan 4th Decl. (including the exhibits to the declaration) was previously filed under seal on November 13, 2018 as Exhibit 6 to Declaration of Andrew Pierz in Support of Plaintiff's Motion Under FRCP 56(d) (as Part of the Sealed Document, ECF 289) and is refiled under seal as Ex. J to Declaration of J. James Li, Ph.D., in Support of Plaintiff's Opposition to Defendants' Motion to Strike Plaintiff's Motion Under FRCP 56(d).

of Defendants' claims or evidence presented in the SJM.

For Fan 4th Decl., the court order of March 26, 2014, ECF235 (hereinafter the "March 26, 2014 Order") explicitly held that AAI may use it for "non-merits-related issues" such as "whether an adversary has engaged in discovery misconduct." ECF235 at 33. Thus, using the declaration to seek a Rule 56(d) relief based on Defendants' discovery misconducts is entirely proper under the previous court order.

The rest of Defendants' arguments, that the 56(d) Motion merely repeats previously decided discovery matters and that it is untimely, are all directed to opposing the 56(d) Motion, instead of striking it, because the Court must decide these matters based on the substances of the 56(d) Motion, *i.e.,* the laws of Rule 56(d) and the declarations that AAI have submitted to support its Rule 56(d) requests. These arguments are thus not proper contentions for a motion to strike because, even if the Court would disregard the undisputed declarations and agree with these arguments, the proper action is to deny the 56(d) Motion, not to strike it. Because Defendants have willingly forfeited the right to file an opposition to the 56(d) Motion, the Court should not consider these arguments that are in fact for opposing instead of striking the 56(d) Motion.

In any event, Defendants' arguments opposing the 56(d) Motion are unavailing. Contrary to what Defendants claim, the 56(d) Motion is ***the first time*** that Defendants' discovery misconducts relevant to the withheld evidence are ever properly presented to this Court with evidentiary supports found in Fan 4th Decl. and Wang 6th Decl. This Court's decision on September 5, 2012 to allow the case to move into summary judgment stage was made not against the coherent evidence presented in Fan 4th Decl., but based on "very little, if any evidence" of Defendants' discovery fraud, because AAI's formal counsel refused to present Fan's declaration of July 18, 2012 as admissible evidence to support motion to compel but set it

up as target for Defendants to strike, as well documented by Wang 6th Decl. [2] filed in support of the 56(d) Motion. AAI later commissioned the Fan 4th Decl., which was finished on June 4, 2013, for the purpose of filing a discovery sanction motion and a Rule 56(d) request, not for opposing the SJM in substances. AAI's former counsel, however, thwarted AAI's efforts by refusing to file Fan 4th Decl. for its intended purpose of proving discovery misconducts but as a substantive expert disclosure that were easily stricken, as also shown by Wang 6th Decl.

The 56(d) Motion is the first time that Fan 4th Decl. is properly presented to the Court for proving Defendants' discovery misconducts. Fan 4th Decl. reveals the discovery misconducts that are so serious and so willful that can be properly characterized as frauds and obstruction of justice by Defendants. Further, Wang 6th Decl. proves that the lead lawyer of AAI's formal counsel (the "formal counsel") intentionally acted against AAI's interest in the relevant time period to enable Defendants to conceal the crucial evidence. Citing the facts presented in Fan 4th Decl. and Wang 6th Decl, the 56(d) Motion shows that Defendants have used discovery misconducts to successfully prevent the production of various items of crucial evidence. Because the evidence presented in Fan 4th Decl. and Wang 6th Decl. is not rebutted in any way, such evidence should be taken as true for the purpose of the 56(d) Motion. Consequently, it should be deemed factually established that Defendants have committed discovery frauds or even obstruction of justice. Under this extraordinary circumstance, the SJM should be continued or denied under Rule 56(d) because Defendants should not be allowed to use discovery fraud to escape liability.

Defendants' untimeliness argument is also inapposite. Rule 56(d) does not set any deadline for filing the request for relief. The Second Circuit laws consider it as timely if the 56(d) affidavit is filed before the ruling or the hearing on the summary judgement motion. There has never been any cut-and-dried rule that the Rule 56(d) request must be made before the

---

[2] Sixth Declaration of Xiaolu Wang, Ph.D. (including the exhibits to declaration), which was previously filed under seal on November 13, 2018 in Support of Plaintiff's Motion Under FRCP 56(d) (as part of the Sealed Document, ECF 289) and is refiled under seal as Ex. K. to Declaration of J. James Li, Ph.D., in Support of Plaintiff's Opposition to Defendants' Motion to Strike Plaintiff's Motion Under FRCP 56(d).

discovery cutoff. Instead, the case law considers the factor of reasonable diligence, i.e., whether the plaintiff has inexcusably delayed its discovery effort in seeking the material sought in the Rule 56(d) request. Contrary to all the cases cited in the Motion, where 56(d) requests were denied because the movants had not previously asked for these items until summary judgment motions, AAI in this case diligently sought the evidence in question from the very beginning of the case, and secured at least five court orders compelling Defendants to produce them. The fact that AAI could not obtain the discovery materials before the discovery cutoff was not due to lack of diligence, but the discovery misconducts by Defendants. Further, the discovery cutoff is not even relevant to the 56(d) Motion because the motion is seeking evidence items that AAI has properly requested and even secured court orders to compel their production before the discovery cutoff. Thus, deferring the SJM would not necessarily involve reopening discovery.[3] All the Court needs to do is to issue an order compel the Defendants to comply with previous court orders at the pain of adverse judgment against them.

The delay in filing the Rule 56(d) request, although seems long by ordinary standard, is entirely reasonable and excusable in light of the extraordinary situations of the case. The delay was mostly due to AAI's former counsel acting adversely to AAI and the difficulty in finding a new counsel due to the barriers erected by the former counsel and Defendants. As the undisputed Wang 6th Decl. showed, the formal counsel blocked the Rule 56(d) motion for several years to benefit Defendants, which AAI as the aggrieved client should not be responsible.

The time period between the appearance of AAI's new counsel and the filing of the 56(d) Motion is also reasonable and excusable, due to the new counsel's need to study the voluminous case records, to investigate the client's serious charges against Defendants and the former counsel including the claim of collusion, the time needed for the client to write his voluminous declaration detailing the misconducts of Defendants and the former counsel, and

---

[3] The discovery is currently suspended as to the damage discovery.

also due to the sickness and eventual death of AAI lead counsel's mother in the relevant time period. The bottom line is, the main supporting Rule 56(d) affidavit, Fan 4th Decl., was provided to Defendants within 2 months after the filing of SJM in 2013. Thus, the misconducts shown in that declaration is no surprise to Defendants. Because the Court has not ruled or even set a hearing date for the SJM and because AAI has acted reasonably diligently, the 56(d) Motion is timely. As shown by the 56(d) Motion, the SJM should be deferred because Defendants have used discovery misconducts to avoid producing highly relevant evidence. Granting the 56(d) Motion would not be prejudice to Defendants, but would be justice at work.

## II.   STATEMENT OF FACTS

The factual background of this long-running case has been stated in detail in the 56(d) Motion and thus will not be repeated here. There is a need, however, to describe the facts directly relevant to Defendants' motion to strike the 56(d) Motion.

### A.   Defendants' Discovery Misconducts Obstructed AAI's Efforts to Obtain the Crucial Evidence at Issue in the 56(d) Motion

In the 56(d) Motion, AAI discussed Defendants' obstruction of discovery relating to the crucial evidence at issue in that motion. *See* 56(d) Mo. at 9-17. The following discovery misconducts are especially relevant to the instant motion to strike and are briefly summarized below.

First, Defendants used semantic transformation to change the subjects of discovery and to make the key evidence they withheld look irrelevant. See 56(d) Mo. at 15-16. The semantic transformation sets up a "strawman" target," by substituting the term "sequences used by TYB" sought by Plaintiff in discovery with the term "YB sequences" aka "Defendants' sequences" which Defendants misleadingly defined as "sequences generated using the default seeds in [TYB] code extracted from the RCS code produced in CGM 00176-00177." Fan 4th Decl. ¶ 49; Wang 6th Decl.¶¶ 42-49, Annex B & C.  Because TYB can never generate ACE sequences, and because Defendants withheld the real seeds for ACE-derivative sequences, Defendants' semantic game essentially gave themselves a permit to withhold all the sequences used by TYB

("Trading Sequences") in violation of court orders, especially the July '07 Order (ECF 75). *See* 56(d) Mo. at 9-15. In addition, Defendant's semantic game also allowed them to misrepresent that the sequence development files and testing files that they withheld were irrelevant. *See id.* at 16-17.

Second, Defendants also supplemented the semantic game with material misrepresentation as to what they have produced. For example, Defendants mischaracterized the 3 Radak code files as the 1,000+ TYB-RCS files they withheld or the uncompilable partial MR-RCS files. Wang 6th Decl., ¶ 94. Defendants also misrepresented to the Court what they had produced in discovery. For example, during the hearing on September 5, 2012, Defendants misrepresented to the Court many times that the 3 Radak code files were the 1,000+ TYB-RCS files they withheld or the uncompilable partial MR-RCS files. Wang 6th Decl. ¶ 94.

Third, Defendants' discovery misconducts so far have escaped the Court's attention largely because AAI's former counsel started to act adversely to AAI in mid-2012 and acted in the interest of Defendants as discussed in the next subsection.

**B.   AAI's Former Counsel Acted Adversely to AAI and Sabotaged AAI's Plans to Seek Rule 37(b) Spoliation Sanction and Rule 56(d) Request**

As stated by Dr. Wang, AAI asked its former counsel in no later than late 2012 to file discovery sanction motion under Rule 37(b) (the "Rule 37(b) motion") to no avail. Wang 6th Decl. ¶¶ 96, 107-116. In refusing to file the Rule37(b) sanction motion, the former counsel was not merely negligent, but acted adversely to AAI to conceal Defendants' discovery misconducts from the Court and to damage AAI's case. *Id.* ¶¶ 97-103, 117-123.

Rejecting Plaintiff's instructions and over Plaintiff's objections, the former counsel blocked all experts' declarations from being submitted to support motions for procedural relief based on Defendants' discovery misconducts but submitted them as inadmissible expert disclosure as easy targets for Defendants to strike, one after another. Wang 6th Decl., §IV, ¶98-103. When Defendants moved to exclude these declarations, former counsel either concurred to Defendants' motion to strike (e.g., as in the cases of the Third Declaration of Jianqing Fan, PhD,

and Third Declaration of Xiaolu Wang, PhD), or filed "oppositions" to Defendants' motions to strike with misleading arguments to actually support them (e.g., as in the cases of Fan July 2012 Decl., and Fan 4th Decl.). *Id*.

AAI commissioned the four expert declarations between July 2012 and June 2017, to support a Rule37(b) sanction motion and Rule 56(d) & (h) motion. *Id.* ¶ 97. The former counsel, however, steadfastly blocked all of them. *Id.* ¶ 98. The former counsel blocked the July 2012 Fan Declaration "to mislead the Court to believe that there was 'very little if any evidence of Defendants fraud'" during the September 5, 2012 hearing. Wang 6th Decl. ¶ 111.

Among the four expert declarations fell by the former counsel, Fan 4th Decl. was the most significant, which was issued on June 4, 2013 (see Fan 4th Decl. at 91 for date). Fan 4th Decl. is the most comprehensive evidence of Defendants' discovery misconducts. It was created for the specific purposes of proving such misconducts to support procedural motions such as a Rule 37(b) sanction motion or Rule 56(d) motion in response to Defendants' SJM. *Id.* ¶ 97. At Dr. Wang's "repeated urge and insistence," the former counsel filed Fan 4th Decl. together with a letter motion for Rule 37(b) sanction. *Id.* ¶ 98(iii). The former counsel, however, promptly neutralized the letter sanction motion in a joint request with Defendants asking the Court not to consider it, which was made secretly behind Plaintiff's back. *Id*. In six sets of court filings against Dr. Wang's express and explicit instructions, the former counsel then concealed the fact that Fan 4th Decl. was first filed to support the Rule37(b) sanction motion, and all other key facts to frame Plaintiff for contempt of court and to strike Fan 4th Decl. *Id.* ¶¶ 99-103.

Immediately after the filing of the SJM in April 2013, AAI urged the former counsel to file a Rule 56(d) motion using Fan 4th Decl. *Id.* ¶165, 166, 169. The Former counsel, however, steadfastly refused to file a Rule 56(d) motion (*Id.* ¶¶ 166, 170, 171) but eagerly used the same declaration to substantively oppose the SJM over AAI's strong objection to frame AAI for the monetary sanction, and indeed procured the sanction order against AAI on March 26, 2014, ECF235 (*Id.* ¶¶103, 149-151, 173-79).

According to the voluminous evidence in Dr. Wang's uncontroverted declaration, since

mid-2012 the former counsel did not just make mistakes in blocking the discovery sanction motion and the Rule 56(d) motion but acted adversely to AAI's interest in a willful and deliberate way to protect and to cover up Defendants' deceits in discovery. Wang 6th Decl. §§ 96-123, 165-179.

**C.    Defendants and AAI's Formal Counsel Made It Extremely Difficult for AAI to Engage New Counsel and Created Various Obstacles that the New Counsel Had to Overcome to File the 56(d) Motion**

While AAI was trying to find a new counsel, the sealed filings by the former counsel and Defendants after 2012 and the unfavorable clause in the Protective Order made it impossible for any new counsel to evaluate the case. Wang 7th Decl. § VII(A), ¶¶ 67-71. The former counsel and Defendants refused to modify the Protective Order to allow access of crucial case information by potential new counsel. *Id.* § VII(B), ¶¶ 72-71. Although the protective order was partially modified on July 30, 2015 (ECF272), the former counsel continued to make it very difficult for any new counsel to take over the case. *Id.* § VII(C), ¶¶ 76-80. These problems placed the case in limbo until the former counsel's withdrawal on May 31, 2017. ECF275.

On July 6, 2017, the current AAI counsel made its first appearance in this case. ECF278. Because of the enormity of the case files and complexity of the issues, the new counsel had to spend several months to familiarize themselves with the case and eventually made the decision to file the 56(d) Motion. Li Decl. ¶ 2. Several more months then elapsed from the first draft of the motion to the eventual filing, due to the need for the new counsel to reconcile its understanding of the case facts with the client's on many issues relevant to the 56(d) Motion, especially the issues regarding the former counsel's conducts. *Id.* ¶ 3. Dr. Wang also had to spend quite some time drafting his voluminous declaration to document the Defendants' misconducts and the former counsel's action against AAI's interest, which is completely reasonable given the complexity of matters and the length of time the declaration covers. *Id.* ¶ 3. Another factor causing the delay was the health crisis of AAI's lead counsel's mother who fell seriously ill at the beginning of 2018 and eventually passed away on October 28, 2018. *Id.* ¶ 4. The 56(d) Motion was filed on November 13, 2018, about a week after the old lady's funeral.

*Id.* ¶ 5.

**D.    Defendants Willingly Forfeited Their Right to File an Opposition to the 56(d) Motion**

The 56(d) Motion was the first substantive papers ever filed by AAI's new counsel. In keeping with the practice in this case so far, the entire filing was placed under seal because it contains Defendants' materials that are marked "Confidential" or "Highly Confidential" under the Protective Order. Li Decl. ¶¶ 7-8.

Immediately after the filing of the Rule 56(d) motion, Plaintiff provided Defendants with the version for public filing and asked Defendants to provide their redaction for public filing to comply with the established law, which requires filing under seal to be "narrowly tailored."[4] *Id.* Ex. A. On the same day, Defendants agreed to adopt an early procedure in a stipulation by this court regarding redacting "Highly Confidential" materials also for redacting "Confidential" materials. *Id.* Ex. B.

On November 15, 2018, AAI expressed concerns over the issues that the Attorney Eyes Only designation (i.e., "Highly Confidential") of the opposition paper to be filed by Defendants would hinder its reply brief and thus asked for a one-week extension of time for the reply brief. *Id.* Ex. C. Defendants responded on the same day and requested a mutual extension of time. *Id.* Ex. C. On November 16, 2018, AAI responded with the following briefing schedule: (1) Defendants' opposition due December 7, 2018 and AAI's reply due December 24, 2018. *Id.* Ex. D. Later in that day, the schedule was agreed to be: (1) Defendants' opposition due December 6, 2018 and AAI's reply due December 21, 2018. Ex. E.

On November 24, 2018, Defendants sent AAI a draft stipulation which was supposed to memorialize the parties' earlier agreement but deviated from it by excluding the "Confidential" designation for public filing. Li Decl. Ex F1 & F2. AAI thought it was an inadvertence and thus sent back a revised version of the stipulation, adding back the "Confidential" redaction part. *Id.*

---

[4] This issue of redaction for public filing is discussed in detail in AAI's Letter Motion filed on Dec. 6, 2018 (ECF293).

Ex. G1 & G2. After that, Defendants made it clear that omitting the "confidential" redaction was on purpose, which effectively repudiated the parties' earlier agreement. Thereafter, the parties could not reach a new agreement and had a telephonic meet and confer on November 29, 2018. *Id.* ¶ 15. During the meet and confer, AAI proposed that they could move ahead with the original agreement minus the redaction schedule for "confidential" materials but will file its separate motion on that issue. *Id.* ¶ 15. Defendants' counsel said he would "sleep on it" for a night and get back to AAI the next day, which he did not. On December 4, 2018, having not heard from Defendants, AAI sent Defendants an email inquiring about the status of the stipulation. *Id.* Ex. H. On December 5, 2018, Defendants responded by declaring that it would not need the stipulation because they would not file an opposition but would file a motion to strike instead. *Id.* Ex. I. The next day, on December 6, 2018, Defendants filed the instant Motion. No opposition to the 56(d) Motion was ever filed.

## III.  ARGUMENT

### A.  There Is No Ground for Striking the 56(d) Motion.

#### 1.  The Rule 56(d) Motion Is Not A Sur-Reply

The 56(d) Motion asks the Court to continue or deny the SJM under FRCP 56(d) based on Defendants' discovery misconducts, relying on the four-part test of the Rule 56(d) law of the Second Circuit. 56(d) Mo. at 22-24. If Defendants had truly believed AAI has not met its burden under Rule 56(d), the proper course of action is to file an opposition to ask the Court to deny the motion, which Defendants chose not to do, because they cannot dispute the facts presented in the 56(d) Motion supported by the two expert affidavits: Fan 4th Decl. and Wang 6th Decl. Instead, Defendants attempts to strike the 56(d) Motion by mischaracterizing it as a sur-reply.

A sur-reply is a brief that attempts to rebut the points raised in the reply or to further buttress matters discussed in the opposition. The issues of the SJM are whether there were disputed genuine issues of material facts as to Defendants' liability. Defendants could not point out a single argument in the Rule 56(d) Motion that was raised for the purpose of raising disputed issues of facts. Nor have Defendants pointed out a single part of the 56(d) Motion that

either rebuts a matter raised in Defendants' reply to the SJM or further supports a matter in AAI's opposition to the SJM.

Instead, Defendants claim that the Rule 56(d) motion is a sur-reply because the discovery deficits raised in the motion have been touched upon during the SJM briefing, listing 8 bullet points. MOL at 5-7. This argument is logically erroneous. The issue here is not whether the 56(d) Motion touches upon any evidentiary matters mentioned in the MSJ, but whether it discusses these matters for the legitimate purpose of proving the four-part test under Rule 56(d) or to argue about disputed issues of facts for the SJM. All the evidentiary matters paraded by Defendants as proof of sur-reply were referenced in the 56(d) Motion to prove the points of that motion.  A discussion of the withheld evidence items and why they may create genuine issue of material fact on the merits are squarely required by Part 2 of the 4-part test of Rule 56(d). Simply because there were evidentiary cites in the SJM filing on the same issues it does not mean the evidence cites cannot be legitimately used in a Rule 56(d) motion. Nowhere do the cited portions argue existence of disputed material issues of facts to oppose the SJM in substance.

Below is a discussion of each of the 8 examples of the evidence items used in the SJM:

- *Withheld MR-RCS code, including Offline ACE Use Code*. That is precisely one of the bases of the 56(d) Motion, which was raised to satisfy the legal requirements under Rule 56(d), not for arguing any merits-related points. The cited sentence is found under the section "The Key Facts Sought." It is thus squarely an issue of the 56(d) Motion. Of course, it cites Dr. Fan's analysis on why "crucial files are missing in the produced MR-RCS" because that is the very point of the 56(d) Motion.

- *TYB-RCS code* --- The Yield Book Production Code withheld by Defendants. Defendants are withholding these crucial evidence items at issue in the 56(d) Motion. The fact that the SJM papers may have also mentioned this issue does not mean the evidence were submitted to

11

raise disputed material issues of facts. To the contrary, it is again a legitimate issue under the four-part test for the 56(d) Motion.

- The other 6 bullet points of Defendants suffer from the same logical defects, equating evidentiary overlap with the reasons for invoking such evidence. Defendants' withholding of the TYB-RCS code, CMO-RCS Code, Development Files and Testing Files, Trading Sequences, and Calibration Sequence are the very subject matters of the 56(d) Motion.

Thus, contrary to what Defendants claim, the 56(d) Motion is not a "sur-reply" simply because it relied on evidentiary cites that are also relied upon by AAI's opposition to the SJM. To the contrary, the 56(d) Motion relied primarily on two expert declarations, Fan 4th Decl. and Wang 6th Decl., to establish the facts that Defendants have fraudulently withheld crucial evidence material to the SJM. Whether or not the two declarations referenced the same evidence cited in the opposition papers to the SJM is immaterial as to the issue of whether the 56(d) Motion is a sur-reply.

### 2. There Is No Ground to Strike Fan 4th Decl. Filed for Non-Merits-Related Purposes

Defendants' another contention for striking the 56(d) Motion is that the motion relies heavily on Fan 4th Decl. which should be stricken based on the March 26, 2014 Order. This argument ignores an explicit distinction made by the March 26, 2014 Order between "merits-related" and "non-merits-related" purposes of using Fan 4th Decl. The March 26, 2014 Order holds that Fan 4th Decl. is admissible for supporting motions for non-merits-related purposes, which certainly include proving Defendants' discovery misconducts for the 56(d) Motion.

The March 26, 2014 Order states that the Court does not believe that "Rule 26(a)(2)'s requirements should be applied when expert testimony or affidavits are offered for purposes other than the merits of a claim or defense." *Id.* at 32. The Court explained this distinction between merits- and non-merits-related issues under Rule 26(a)(2) by stating that "merits-related issues are capable of being known from the inception of the case" (*id.* at 32) and that

"non-merits issues could not be known at the time the Rule 26(a)(2) disclosures are required" (*id.* at 33).

There can be no reasonable argument that the issue of whether Defendants have committed discovery misconduct and withheld crucial evidence—thus the SJM should be continued or denied based on Rule 56(d)—is a non-merits-related issue, because it is not related to the merits of any claims or defenses of the case. To be sure, the Court made it amply clear that the term "non-merits-related issues" indeed include "***whether an adversary has engaged in discovery misconduct.***" *Id.* at 33. Thus, there is no ambiguity that the March 26, 2014 explicitly allows the kind of use of Fan 4th Decl. that AAI has done in the 56(d) Motion. Defendants cannot point to one single sentence in the 56(d) Motion where Fan 4th Decl. was cited for the purpose of defeating the SJM on the merits. To the contrary, AAI has relied on Fan 4th Decl. in the 56(d) Motion entirely for the purpose of proving Defendants' discovery misconducts and the crucial evidence they are wrongfully withholding, which is an explicitly allowed purpose for which Fan 4th Decl. may be used under the March 26, 2014 Order. To be clear, the issue here is not whether Fan 4th Decl. is admissible evidence at trial, but whether it can be used to support a Rule 56(d) request. See *Carney v. United States*, 19 F.3d 807, 813 (2d Cir.1994) ("We agree with [plaintiff] that, in support of his Rule 56(f) affidavit, he was not required to present evidence that would be admissible at a trial").

Finished on June 4, 2013, Fan 4th Decl. was commissioned by Plaintiff as admissible evidence for the express purposes of supporting a FRCP37(b) sanction motion and a Rule 56(d) or (h) motion, not for opposition to the MSJ. Wang 6th Decl. ¶¶ 97, 131, 137. While this point will be addressed in detail in later section of this brief, the relevant point here is that Fan 4th Decl. was in fact created for the specific purposes of proving Defendants' discovery misconducts to support procedural motions such as those under Rule 37(b) or 56(d). This purpose is precisely why Fan 4th Decl. is relied upon by the 56(d) Motion and thus a non-merit-related purpose.

Defendants also resurrected their failed argument that Fan 4th Decl. should be stricken

for missing the Rule 26(a)(2) expert disclosure deadline even if it is used for non-merit purposes. In rejecting that argument, the March 26, 2014 Order held that "[Defendants' position] would create a standard with which compliance is impossible." *Id.* at 33. The supporting declaration for a Rule 56(d) motion was necessarily created after the filing of the SJM, which was after the Rule 26(a)(2) disclosure deadline. More importantly, Fan 4th Decl., like Wang 6th Decl., are not used to disclose trial testimony of these experts, which was the essence of Rule 26(a)(2), but to support a procedural motion under Rule 56(d). Thus, Defendants' rehashing of their rejected arguments is frivolous.

### B.  Defendants' Remaining Arguments Are Contentions for Opposing, Instead of Striking, the 56(d) Motion, Which They Have Waived

Defendants also argued that the 56(d) Motion is untimely and merely repeats old discovery matters rejected by the Court. These arguments are not contentions for striking the 56(d) Motion but for opposing it.

For the timeliness issue, Defendants concede that their untimeliness argument should be discussed only if the Court reviews the 56(d) Motion substantively, which means it should not be struck. MOL at 4 ("even if the Court were to consider Plaintiff's filing under Rule 56(d), it would be untimely"). This timeliness issue in fact must be analyzed under the body of law regarding Rule 56(d) in terms of whether AAI has exercised reasonable diligence in seeking the 56(d) relief. Thus, Defendants' argument regarding timeliness is not an argument for its motion to strike, but an argument in opposition to the 56(d) Motion.

So is the argument that the Court has rejected the same discovery issues before. To decide this argument, the Court will have to review the 56(d) Motion to see if AAI has presented new evidence proving the discovery misconducts that so far have precluded AAI from obtaining the evidence in question in the 56(d) Motion. Another important issue that is part of the substance of the 56(d) Motion is how Defendants mischaracterized AAI's claims into "strawman" issues, as enabled by AAI's former counsel, which is discussed in detail later in this brief. Thus, Defendants' argument that the same evidentiary issues have been raised and

rejected before is not an argument for striking the 56(d) Motion but to oppose it. As shown below, Defendants have forfeited such arguments opposing the 56(d) Motion in substances.

### 1.  Defendants Have Forfeited Their Opposition to the 56(d) Motion

Under the local rules, "opposing affidavits and answering memoranda shall be served within fourteen days after service of the moving papers." Local Civil Rule 6.1(b)(2). The 56(d) Motion was served by personal service on November 13, 2018. Li Decl. ¶ 5. Thus, the opposition was due November 27, 2018, and to the extent that Defendants now want to use part of the instant Motion, filed and served on December 6, 2018, to oppose the Rule 56(d) motion, it was late by 9 days.

This delay is not inadvertent or excusable, but by the conscious choice of Defense counsel. Li Decl. ¶¶ 16-17. It is true that the parties were engaged in a discussion of extending the deadline for filing the opposition and reply. *Id.* ¶ 13. It is also true that the parties actually reached an agreement on November 19, 2018 to extend the deadline. *Id.* Ex. E. However, afterwards, Defendants repudiated the agreement. *Id.* ¶ 15. After AAI attempted to salvage the agreement by proposing a compromise on November 29, 2018 by removing the issue of public version redaction from the stipulation, Defendants delayed six days after saying they would "sleep on it for a night," and eventually informed AAI on December 5 that they would not need the extension agreement because they were not filing any opposition, but only a motion to strike. *Id.* ¶ 16. By that time, Defendants have already passed their deadline for filing the opposition by 8 days. While they still could have entered into the revised stipulation to allow them to file the opposition on time, Defendants rejected that solution and thus intentionally and willfully forfeited their right to file an opposition to the 56(d) Motion. Therefore, Defendants cannot now sneak the opposition into their motion to strike filed 9 days after the deadline for filing the opposition. Thus, to the extent the Motion contains arguments opposing the 56(d) Motion in substances, i.e., the issues have been decided by previous court orders and or the motion is untimely, they should not be considered. In any event, as discussed below, these arguments are inapposite even if the Court chooses to consider them.

2. **The Previous Court Orders regarding the Discovery Matters Were Made without the Benefit of Fan 4th Decl. and Wang 6th Decl., Which Show Serious Discovery Misconducts by Defendants.**

Defendants contends that all the discovery misconduct issues revealed in the 56(d) Motion has been litigated before and the Court rejected the evidence during the hearing on September 5, 2012 which was memorialized in an order issued on September 25, 2012 as (ECF174) and affirmed by Judge Swain on February 8, 2013 (ECF214).

This argument ignores the important fact that the issue of Defendants' discovery misconducts has never been properly shown to the Court, because over AAI's objection, the formal counsel presented Fan July 2012 Decl. to the Court not for the intended purpose of supporting a motion for sanctions but as substantive evidence. Wang 6th Decl. ¶¶ 98(i), 111, 143, 155. The Court certainly did not have the evidence in Fan 4th Decl. which was issued on June 4, 2013. Yet, Defendants misrepresented that the Court's comments that there was "little evidence" on September 5, 2012 were directed at Fan 4th Decl.

In reality, until the 56(d) Motion, Fan 4th Decl. has never been properly explained to the Court in the context of whether the SJM should be delayed or denied due to discovery misconducts. As explained in the 56(d) Motion, Fan 4th Decl. was drafted with the purpose of supporting a discovery sanction motion and a Rule 56(d) request. *See* 56(d) Mo. at 18; Wang 6th Decl. ¶¶ 131, 137. Although Fan 4th Decl. was filed in support of a Rule 37(b) sanction motion, the former counsel effectively withdrew the sanction motion, but filed the declaration to support the opposition to the SJM. *See* 56(d) Mo. at 18; Wang 6th Decl. ¶¶ 98(iii), 113, 139, 140. Thus, the 56(d) Motion is the first time that Fan 4th Decl. is filed in this Court for one of its intended purposes: i.e., to prove Defendants' discovery misconducts to support the 56(d) Motion. The reason that Fan 4th Decl. was not properly presented to the Court was primarily due to AAI's former counsel who acted adversely to AAI during the relevant time period. Wang 6th Decl. ¶ 165-79. This point will be discussed further in relation to AAI's reasonable diligence in seeking the evidence at issue.

To be clear, the issues exposed in Fan 4th Decl. are not to be taken lightly. Not only does

it prove discovery misconducts in violation of this Court's orders, it also shows a high likelihood of intentional fraud and obstruction of justice committed by Defendants to conceal crucial evidence, often in direct violation of this Court's orders, and even with formal counsel's help and cooperation after mid-2012, as shown by Wang 6th Decl. *See* 56(d) Mo. at 9-17.

One important discovery misconduct, which is material in this Court's decisions of September 5, 2012 and February 8, 2013 cited by Defendants' Motion, at 7, is Defendants' semantic transformation that substitutes the sequences used by TYB for trading, which is what AAI seeks in discovery, with the term "Defendants' sequences" defined as sequences generated by TYB code using the decoy seeds that Defendants produced. Fan 4th Decl. ¶ 49; Wang 6th Decl. ¶¶ 42-49, Annex B & C.  Relying on Fan 4th Decl., the 56(d) Motion, at 9-13,[5] shows how Defendants have used the semantic game to mislead the Court and withhold the sequences used by TYB and other key evidence in violation of court orders.

 Defendants' semantic transformation of the issues directly led to the decisions by the Court regarding discovery, where the Court was misled to believe that "Defendants' sequences" were the Trading Sequences and that all AAI needed to do was to generate "Defendants' sequences" and then compare the "Defendants' sequences" with ACE sequences. See, e.g. ECF214 at 4 ("Plaintiff has everything it needs to compare Defendants' sequences"). In fact, no actual Trading Sequences have ever been produced and AAI was never in a position to generate any real Trading Sequences. *See* 56(d) Mo. at 9-15.

Defendants also supplemented the semantic game with material misrepresentation as to what they have produced. For example, Defendants misrepresented the 3 Radak code files as the 1,000+ TYB-RCS files they withheld or the uncompilable partial MR-RCS files. Wang 6th Decl. ¶ 94; Fan 4th Decl. § B.

Thus, the 56(d) Motion is the first time that the issue of Defendant's discovery

---

[5] No details can be repeated here because this Opposition will be filed on public docket. But the relevant portions of the 56(d) Motion contain the details why the semantic game excludes the Trading Sequences and the Calibration Sequence that AAI was seeking from Defendants.

misconducts is presented to the Court with supporting evidence found in Fan 4th Decl. and Wang 6th Decl. Importantly, Defendants have waived their right to file opposition to the 56(d) Motion, and indeed have not adduced any evidence rebutting Fan 4th Decl. or Wang 6th Decl. Nor have they even attempted to dispute any of the serious discovery misconducts, frauds, or even collusions as described in the two declarations. Thus, the discovery misconducts shown by Fan 4th Decl. and Wang 6th Decl. are undisputed for the purpose of the 56(d) Motion, which leads to the inevitable conclusion that Defendants have indeed committed serious discovery misconducts to conceal and withhold highly material evidence from AAI. Regardless of whether such discovery misconducts rise to the level of fraud and obstruction of justice, they distinguish all the previous court orders on the discovery matters made without such facts. With the finding of serious discovery misconducts, there is no valid ground to deny the properly supported 56(d) Motion. Being unable to muster any rebuttal evidence against the large body of evidence of fraud and deception, Defendants simply chose to ignore the evidence by filing a motion to strike to collaterally attack the 56(d) Motion.

### 3.   The 56(d) Motion Is Timely and AAI Have Acted with Reasonable Diligence

#### a)   Discovery Cutoff Is Not the Deadline for Filing the 56(d) Motion Where Defendants Have Wrongfully Withheld the Evidence in Question

Defendants do not dispute the law that Rule 56 does not specify a time limit for filing a Rule 56(d) motion. *See* 56(d) Mo. at 20-22. Nor do Defendants dispute the law that a Rule 56(d) motion should be "broadly favored and should be liberally granted," *Hinojosa v. Johnson*, 277 Fed. Appx. 370, 375 (5th Cir. 2008), and should be considered timely if "made well in advance of the district court's ruling, and the motion and supporting declaration put the district court on notice that [plaintiff] was seeking discovery pertaining to the summary judgment motion," *id.* at 375, fn.5. Defendants merely contend that Rule 56(d) motions "should be made before the close of discovery." MOL at 9.

Defendants are attempting to re-write the Rule 56(d) laws by adding an additional requirement that the request must be filed before the discovery cutoff. It is axiomatic that "[a]

Rule 56(f)[6] motion requesting time for additional discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C. Cir. 2012). There has never been a cut-and-dried requirement that a Rule 56(d) motion be filed before close of discovery. For example, in *Lore v. City of Syracuse*, 232 F.R.D. 155 (N.D.N.Y. 2005), the court was faced with two motions after discovery cutoff, one 56(f) motion to seek unproduced notecards and one Rule 37 motion to compel a deposition. The court granted the Rule 56(f) motion for good cause (*id.* at 158) but denied the motion to compel based on plaintiff's lack of diligence (*id.* at 159). In *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 156 (5th Cir. 2018), the court reversed the district court's order prematurely granting a summary judgment motion after the discovery cutoff when a pending discovery motion potentially shows that defendants failed to properly respond to discovery requests. Thus, the real issue facing a Rule 56(d) request is not whether it was filed after the discovery cutoff, but "whether the [requesting party] has not diligently pursued discovery of the evidence." *Convertino*, 684 F.3d at 99.

Defendants' argument also ignores the very basis of the 56(d) Motion in this case: the discovery items at issue were not produced due to Defendants' discovery misconducts in violation of court orders. *See* 56(d) Mo. at 15-17; 19-20. This is thus not a case where the plaintiff sits idle until after the discovery cutoff. To the contrary, AAI did all it could before the discovery cutoff, including securing *five (5)* court orders compelling the discovery items at issue. *See* 56(d) Mo. at 9-17; Wang 6th Decl. ¶ 212. There is no authority allowing a litigant to win a summary judgment motion by withholding pertinent evidence in violation of discovery rules and court orders.

To be clear, AAI's Rule 56(d) request is not based on re-opening the discovery to obtain the missing evidence. The point of the 56(d) Motion is that, but for Defendants' discovery misconducts, the missing evidence should have been produced to AAI in response to the past

---

[6] FRCP 56(f) is the predecessor of FRCP 56(d) with little change.

discovery requests and, more importantly, in compliance with this Court's orders compelling Defendants to produce this evidence. *See Gachette v. Metro N.-High Bridge*, 722 F. App'x 17, 20 (2d Cir. 2018) (deferring summary judgment motion because of the undisputed claim that "defendant failed to respond to [plaintiff's] discovery request"). Thus, the discovery cutoff is not even relevant here because AAI does not need to propound any new discovery in order to obtain the missing evidence so long as Defendants properly comply with the standing court orders compelling them to do so.

None of the cases that Defendants cite are applicable here. For example, in *Miyares v. City of New York*, 2013 WL 3940816 at *2, fn. 3 (S.D.N.Y.  2013), the court mentioned that the plaintiff contended for the first time during the summary judgment proceeding that the defendant failed to produce certain discovery. Thus, the 56(d) motion was untimely in *Miyares* because of the lack of diligence on the plaintiff's part. In contrast, as discussed in the 56(d) Motion, AAI diligently sought the evidentiary items at issue during the discovery and even obtained court orders to compel Defendants to produce them. *See* 56(d) Mo. at 9-17. Diligence is thus not a question regarding how AAI pursued the evidence at issue.

### b)  AAI Was Also Diligent in Seeking Rule 56(d) Relief but Was Thwarted by the Former Counsel Who Acted Adversely to AAI

Citing *Resolution Tr. Corp. v. N. Bridge Assocs., Inc.*, 22 F.3d 1198, 1203 (1st Cir. 1994), Defendants claim that AAI acted lackadaisically and thus cannot claim the benefit of Rule 56(d). MOL at 10-11. To the contrary, AAI as a company was very diligent in seeking the 56(d) relief. Defendants filed its SJM on April 4, 2013. Immediately thereafter, Plaintiff urged the former counsel to file a Rule 56(d) motion using the forthcoming Fan 4th Decl. ¶¶ 165, 166, 169. Two months later, the main evidence source for the 56(d) Motion, Fan 4th Decl., was finished on June 4, 2013, six days before AAI's opposition to the SJM was due. Wang 6th Decl. ¶ 165. The Former counsel, however, still steadfastly refused to file a Rule 56(d) motion (*Id.* ¶¶ 166, 170, 171) but eagerly used the same declaration to substantively oppose the SJM to attract the monetary sanction on AAI (*Id.* ¶¶ 173-79). The delay in filing the Rule 56(d) motion using

Fan 4th Decl. was not because of lack of diligence on AAI's part, but because the formal counsel acted adversely to its client to railroad AAI into a quagmire to benefit Defendants. Wang 6th Decl. ¶¶ 122-123.

Defendants seem to take the position that the delay under the former counsel should be vicariously attributed to AAI, citing *Kulkarni v. City Univ. of New York*, No. 01 CIV. 10628(DLC), 2003 WL 23319, at *4 (S.D.N.Y. Jan. 3, 2003) and *Marcin Eng' g, LLC v. Founders at Grizzly Ranch, LLC*, 219 F.R.D. 516, 521 (D. Colo. 2003). Neither case supports this contention. *Kulkarni* merely denied a Rule 56(d) motion because the new counsel did not file an affidavit to cover the four factors required for granting such a motion. *Kulkarni*, 2003 WL 23319, at *4. *Marcin* denied the new counsel's request to re-open discovery because there was no valid proof of discovery misconducts. *Marcin Eng' g, LLC*, 219 F.R.D. at 521.

More importantly, despite the general rule that an attorney action is normally attributed to his client under the agency law, the rule does not apply if the attorney "acts adversely" to the client, as clearly stated in the Restatement:

> For purposes of determining a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is not imputed to the principal if the agent acts adversely to the principal in a transaction or matter, intending to act solely for the agent's own purposes or those of another person.

Restatement (Third) Of Agency § 5.04 (2006); *see* also *Schlueter v. Varner*, 384 F.3d 69, 80–81 (3d Cir. 2004) (refusing to impute attorney's action to client, citing Restatement Third).

In fact, this basic agency principal is well-established under New York and the Second Circuit Law. *See Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 179 (2d Cir. 2004):

> the District Court correctly noted … that when an agent acts adversely to its principal, the agent's actions and knowledge are not imputed to the principal.

Here, undisputed evidence shows that the former counsel acted adversely to AAI's interest and against explicit instructions by AAI from the later part of 2012. Wang 6th Decl. ¶¶ 96-212. Especially relevant is the former counsel's conduct derailing the client's plans and

explicit instructions to file a discovery sanction motion (*id.* §§ 104-123) and a Rule 56(d)

Motion based on Fan 4th Decl. (*id.* ¶¶ 165-172). Thus, by the time of the SJM, not only was the

agency between the former counsel and AAI had completely collapsed, the former counsel was

indeed acting adversely to AAI's interest. The former counsel and Defendants also prevented

AAI from finding a new counsel for several years until its withdrawal from the case. Wang 7th

Decl. ¶¶ 67-80. Thus, the 5-year delay between 2012 and 2017 when the new counsel made

appearance was caused entirely by the joint efforts of Defendants and formal counsel.

According to uncontroverted declaration by Dr. Wang, the formal counsel consented to and

echoed Defendants' mischaracterization of Plaintiff's allegation as "YB Monte Carlo code

generated ACE sequences." Wang 6th Decl. ¶ 191. He blocked AAI's motions under 56(d) and

37(b) and refused to submit AAI's experts' declarations to support such discovery-related

motions, but instead submitted them as substantive expert reports for Defendants to strike. The

former counsel was thus essentially acting for the interest of Defendants starting in mid-2012.

     On this point, Defendants misrepresented a footnote in the 56(d) Motion which states:

> As he expressed in his declaration, Dr. Wang believes that the former
> counsel started to act against Plaintiff's interest intentionally in
> approximately late 2012 by colluding with Defendants. AAI's new
> counsel, however, reserves its judgment on the alleged collusion for the
> time being.

56(d) Mo. at 1, fn. 1.

     Defendants claim that this footnote shows that AAI's counsel believes the former

counsel merely made mistakes. That is an outright misinterpretation of the footnote. As shown

by its plain meaning, AAI's counsel only reserves its judgment on the "alleged collusion" part

of Dr. Wang's declaration and believed the evidence that he presented had proved the fact that

"the former counsel started to act against Plaintiff's interest intentionally in approximately late

2012." Counsel was waiting to see how Defendants deny the collusion charge and how they

explain the multiple acts by AAI's former counsel which did Defendants' biddings. Now, since

Defendants have chosen not to deny the collusion charge and provided no explanation why the

former counsel of AAI acted in the interest of Defendants, it is now established for the purpose

of the 56(d) Motion that AAI's former counsel colluded with Defendants to damage its own client's interest. Although AAI is not required to prove it to reject the imputation of the former counsel's action to AAI, the collusion between the former counsel and Defendants was fraud on this Court and obstruction of justice. No party should win an SJM by fraud and obstruction of justice.

Defendants argue that AAI has had "ample time to conduct discovery," citing *Tebor Sportswear v. The Ltd. Stores, Inc.*, 865 F.2d 506, 512 (2nd Cir. 1989). The real legal issue, however, is "if the nonmoving party has had a ***fully adequate opportunity for discovery***." *Id.* at 511. No matter how long the time may be, if the Defendants have wrongfully thwarted the motion to compel orders that AAI obtained from the Court by discovery misconducts or even obstruction of justice, there is no "fully adequate opportunity for discovery." This point distinguishes this case from *Tebor Sportswear*'s facts where there is not even a claim of discovery misconducts or obstruction of justice.

### c) The Time Period Spent by the New Counsel to Investigate the Complex Case and to Prepare for the 56(d) Motion Is Reasonable

After AAI's new counsel made appearance, it took several months for the new counsel to get some basic ideas about the evidence and status of this long-running action. Li Decl. ¶ 2. After the first draft of 56(d) Motion was crafted, it took several more months for the new counsel and client to reconciliate their thinking over special facts surrounding the former counsel's conducts which requires the review of much case filings and correspondences, and for the client to draft his lengthy declaration, Wang 6th Decl., before the motion could be finalized. *Id.* ¶ 3. Moreover, the severe illness and eventual death of the lead counsel's mother during the relevant period of time also contributed to the delay. Li Decl. ¶ 4.

Defendants' Motion does not argue that AAI's new counsel should have ignored the extremely serious misconducts exposed by Fan 4th Decl. and Wang 6th Decl. As officers of the court, it is new counsel's duty to investigate and present these facts for the Court's consideration. According to Wang 6th Decl. ¶¶ 96-103, AAI's formal counsel blocked the 56(d)

Motion and all other procedural reliefs for AAI pursuant to Defendants' direction and scheme. Such serious accusation deserved careful vetting. Thus, the amount of time that AAI's new counsel took to examine the case records and evidence is eminently reasonable, and the time period between the new counsel took over the case and the filing of the 56(d) Motion reflected the diligence of AAI and its new counsel, instead of inexcusable delay.

C.   **Defendants' Request for Sanctions Should Be Denied**

Being unable to rebut the serious charges of discovery misconducts or even fraud and obstruction of justice, Defendants have the audacity to seek sanction against AAI. As demonstrated above, the 56(d) Motion does not violate any federal or local rules or any court orders, notwithstanding Defendants' claim to the contrary. Defendants failed to even provide its legal basis for the requested sanction. It is obvious that the sanction request cannot be based on FRCP 11 for its failure to file a separate motion and to comply with the "safe harbor" requirement under FRCP 11(c)(2). Thus, the only possible ground for the sanction request against AAI is under the court's inherent power and against counsel under 28 U.S.C. § 1927. Neither works here because there is no bad faith whatsoever.

It is well established that "[b]oth § 1927 and the court's inherent power demand, inter alia, a clear demonstration of bad faith in order to justify sanctions." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345-46 (2d Cir. 1991) (vacating sanction order). A finding of bad faith requires "clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the lower courts." *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991). (internal quotations and citation omitted). A court should sanction a party for legally insufficient pleadings only "[w]here it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands ...." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985).

Defendants are far from meeting their burden to prove bad faith. The 56(d) Motion was filed based on the new counsel's good faith determination that Defendants have committed serious discovery misconducts as demonstrated by Fan 4th Decl. and Wang 6th Decl. Li Decl. ¶ 20. In fact, it is AAI counsel's view after time-consuming investigation that if this issue of discovery misconducts is not raised with the Court and the Court granted Defendants' SJM, counsel would have failed its duty to zealously represent the client within the bounds of law and also its duty as officers of the Court. *Id.* ¶ 21. The Court might disagree with Fan 4th Decl. and Wang 6th Decl. and hence deny the 56(d) Motion, which it should not. There is, however, no ground to strike the motion or impose sanction on Plaintiff or its counsel for filing the motion.

## IV.  **CONCLUSION**

The motion to strike should be denied because (1) the 56(d) Motion is not a sur-reply; (2) Fan 4th Decl. can be used for non-merits-related purposes such as for proving Defendants have withheld crucial evidence by discovery misconducts (3) Defendants have waived opposition; thus arguments going to the substances of the 56(d) Motion such as timeliness and strength of evidence of discovery misconduct should not be considered; (4) the 56(d) Motion is timely because AAI has exercised reasonable diligence to seek discovery sanction and Rule 56(d) request, but only to be thwarted by its former counsel, who acted adversely to its interest, and by Defendants' discovery fraud; and (5) until the 56(d) Motion, this Court has never been presented with the kind of systematic evidence proving Defendants' discovery misconducts. Finally, the motion is being made in good faith and Defendants have failed to show any basis for imposing sanction on AAI.

Dated: January 2, 2019                    Respectfully Submitted


                                          /s/J. James Li
                                          _____

                                          J. James Li, Ph.D.

Email: lij@lilaw.us

Lilaw Inc.
5050 El Camino Real, Ste 200
Los Altos, CA 94022
Telephone: (650) 521-5956
Facsimile: (650) 521-5955

Attorneys for Plaintiff and
Counterclaim-Defendant Advanced
Analytics, Inc.