# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| ADVANCED ANALYTICS, INC., | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | **No.  04 Civ. 3531 (LTS) (HBP)** |
| | ) | |
| vs. | ) | |
| | ) | |
| CITIGROUP GLOBAL MARKETS, INC. f/k/a | ) | |
| SALOMON SMITH BARNEY, INC., and THE | ) | |
| YIELD BOOK INC., f/k/a SALOMON | ) | |
| ANALYTICS, INC., | ) | |
| | ) | |
| Defendants and Counterclaim-Plaintiffs. | ) | |

---

## <u>MEMORANDUM IN SUPPORT OF PROSPECTIVE INTERVENORS BRANDON SMITH AND THE AMERICAN PROSPECT'S MOTION TO INTERVENE AND UNSEAL COURT RECORDS</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................ii

INTRODUCTION ................................................................................................................. 1

INTEREST OF PROSPECTIVE INTERVENORS ........................................................... 2

THE AMERICAN PROSPECT AND BRANDON SMITH......................................... 2

ARGUMENT ......................................................................................................................... 3

    I.   The American Prospect and Mr. Smith Should Be Permitted to Intervene to Enforce the Public's Right to Access Court Records. ........................................................................... 3

       A.   The American Prospect and Mr. Smith Have a Right to Intervene under Rule 24(a). .... 4

       B.   Mr. Smith and the American Prospect Satisfy the Standard for Granting Permissive Intervention Under Rule 24(b). ........................................................................................ 7

    II.   The Court Records Should Be Unsealed. ........................................................................... 9

       A.   The Public Has a Presumptive Right to Access Court Records. ...................................... 9

       B.   The Parties Have Not Met Their Burden to Justify Sealing Any Court Records in this Case. ................................................................................................................................. 13

       C.   The Documents Should Be Unsealed Without Further Delay. ...................................... 16

CONCLUSION....................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Baycol Prod. Litig.*,
    214 F.R.D. 542 (D. Minn. 2003)................................................................6

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
    814 F.3d 132 (2d Cir. 2016)................................................................11

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,
    712 F.3d 1349 (9th Cir. 2013) .............................................................5

*Brown v. Maxwell*,
    929 F.3d 41 (2d Cir. 2019)...........................................................10, 11

*Cipollone v. Liggett Grp., Inc.*,
    785 F.2d 1108 (3d Cir. 1986)........................................................14, 15

*Coleman v. Cty. of Suffolk*,
    174 F. Supp. 3d 747 (E.D.N.Y. 2016) ...................................................3

*CSL Silicones, Inc. v. Midsun Grp. Inc.*,
    No. 3:14-CV-1897 (CSH), 2017 WL 4750701 (D. Conn. July 12, 2017).............11

*E.E.O.C. v. National Childrens Center, Inc.*,
    146 F.3d 1042 (D.C. Cir. 1998) ..........................................................5

*Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*,
    26 F. Supp. 2d 606 (S.D.N.Y. 1998).....................................................11

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
    255 F.R.D. 308 (D. Conn. 2009)...........................................................5

*Flynt v. Lombardi*,
    782 F.3d 963 (8th Cir. 2015) ...........................................................8, 9

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) ...........................................................12

*Giuffre v. Maxwell*,
    325 F. Supp. 3d 428 (S.D.N.Y. 2018)....................................................8

*Globe Newspaper Co. v. Superior Court for Norfolk Cty.*,
    457 U.S. 596 (1982).......................................................................3

*Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*,
   24 F.3d 893 (7th Cir. 1994) ...................................................................................16

*Jessup v. Luther*,
   227 F.3d 993 (7th Cir. 2000) ...................................................................................9

*Joy v. North*,
   692 F.2d 880 (2d Cir. 1982)..............................................................................14, 15

*Kamakana v. City and County of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006) ...............................................................................14

*Katzman v. Victoria's Secret Catalogue*,
   923 F. Supp. 580 (S.D.N.Y. 1996) .......................................................................6, 7

*Kelly v. City of New York*,
   2003 WL 548400 (S.D.N.Y. Feb. 24, 2003).........................................................4, 8

*New York ex rel. Khurana v. Spherion Corp.*,
   No. 15-CV-6605 (JMF), 2019 WL 3294170 (S.D.N.Y. July 19, 2019) ...........10, 15

*Lugosch v. Pyramid Co. of Onondaga*,
   435 F.3d 110 (2d Cir. 2006)........................................................................ *passim*

*Methodist Hospitals, Inc. v. Sullivan*,
   91 F.3d 1026 (7th Cir.1996) ..................................................................................12

*Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*,
   823 F.2d 159 (6th Cir. 1987) ...................................................................................5

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   164 F.R.D. 346 (S.D.N.Y. 1996) ..........................................................................4, 6

*Newsday LLC v. Cnty. of Nassau*,
   730 F.3d 156 (2d Cir. 2013).......................................................................10, 12, 13

*Nycomed US, Inc. v. Glenmark Generics, Inc.*,
   No. 08-CV-5023 CBA, 2010 WL 889799 (E.D.N.Y. Mar. 8, 2010).......................11

*Oliver Wyman, Inc. v. Eielson*,
   282 F. Supp. 3d 684 (S.D.N.Y. 2017)....................................................................15

*Pansy v. Borough of Stroudsburg*,
   23 F.3d 772 (3d Cir. 1994).............................................................................5, 8, 9

*In re Parmalat Sec. Litig.*,
   258 F.R.D. 236 (S.D.N.Y. 2009) ...........................................................................11

*In re Pineapple Antitrust Litig.*,
  No. 04 MD. 1628 RMB MHD, 2015 WL 5439090 (S.D.N.Y. Aug. 10, 2015) .............. *passim*

*Pub. Citizen v. Liggett Grp., Inc.*,
  858 F.2d 775 (1st Cir. 1988) ..................................................................................5

*Rambus, Inc. v. Infineon Techs. AG*,
  No. CIV.A. 3:00CV524, 2005 WL 1081337 (E.D. Va. May 6, 2005) ...................................14

*Republic of Philippines v. Westinghouse Elec. Corp.*,
  949 F.2d 653 (3d Cir. 1991)...................................................................................16

*Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*,
  834 F.3d 589 (6th Cir. 2016) .................................................................................14

*Savitt v. Vacco*,
  No. 95-CV-1842, 1996 WL 663888 (N.D.N.Y. Nov. 8, 1996) ............................................3, 8

*Schiller v. City of New York*,
  No. 04 CIV. 7921(KMK)(JC), 2006 WL 2788256 (S.D.N.Y. Sept. 27, 2006) ................4, 6, 7

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984)...............................................................................................14

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
  825 F.3d 299 (6th Cir. 2016) .........................................................................9, 14, 15

*Uni-Sys., LLC v. U.S. Tennis Ass'n*,
  No. 17CV147KAMCLP, 2017 WL 4081904 (E.D.N.Y. Sept. 13, 2017) .................................9

*United Nuclear Corp. v. Cranford Ins. Co.*,
  905 F.2d 1424 (10th Cir. 1990) ...............................................................................5

*United States v. Amodeo*,
  44 F.3d 141 (2d Cir. 1995)....................................................................................10

*United States v. Aref*,
  533 F.3d 72 (2d Cir. 2008)......................................................................................9

*United States v. Erie Cty., N.Y.*,
  763 F.3d 235 (2d Cir. 2014)....................................................................................9

*United States v. Sattar*,
  471 F. Supp. 2d 380 (S.D.N.Y. 2006).......................................................................10

*Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*,
  529 F. Supp. 866 (E.D. Pa. 1981) ...........................................................................14

## INTRODUCTION

Court records are public documents. And under both the First Amendment and the common law, the public has a right to access them. Therefore, absent a particular and specific demonstration of fact showing that a document must be sealed, courts have an obligation to keep their records open to the public.

Yet numerous court records in this case have been sealed in their entirety—in many instances, even the *title* of the document is hidden from public view—without, it seems, any justification whatsoever, let alone the particular and specific demonstration of fact the law requires. Therefore, the American Prospect, an online and print magazine, and investigative journalist Brandon Smith move to intervene in this case for the sole purpose of asking this Court to unseal its records as required by the First Amendment and the common law.

Protecting the public's right to access court records is particularly important here because this case, and the documents filed in it, are of great public interest. Large financial institutions like Citigroup—and their trading of asset-backed securities, which is at the heart of this lawsuit—play an enormous role in our economy. Because of the impact of this trading, Mr. Smith and the Prospect are attempting to report on this lawsuit. But they are currently unable to do so because the court records are sealed.

Courts routinely permit journalists and media organizations to intervene in lawsuits to vindicate the public's right to access court records. This Court should do the same here. And because the parties have not demonstrated any need for secrecy, let alone one that would outweigh the public's right of access to court records, this Court should unseal its records, so that Mr. Smith, the Prospect, and the public can view them as the law requires.

## INTEREST OF PROSPECTIVE INTERVENORS
## THE AMERICAN PROSPECT AND BRANDON SMITH

Prospective intervenors, investigative journalist Brandon Smith and the American Prospect, a magazine devoted to policy and politics, have a strong interest in the court records in this case. This lawsuit alleges that Defendants Citigroup and Yield Book stole software from the plaintiff that allowed the bank to price financial instruments like mortgage-backed securities faster and more accurately than other investment banks, and that they have been using that software for years. *See* Compl. ¶¶ 1, 122. Based on their experience as investigative journalists, Brandon Smith and American Prospect Executive Editor David Dayen believe that this lawsuit is of great public interest. *See* Dayen Decl. ¶¶ 4-5; Smith Decl. ¶¶ 2-4.

As Mr. Dayen explains in his declaration, "[t]he activities of the nation's largest financial institutions, which are publicly traded companies, play a significant role in the functioning of our economy." Dayen Decl. ¶ 4. "Any consequential activities of major financial firms, particularly the kinds of securities trading that played a role in the previous [financial] crisis," like the asset-backed securities trading at issue in this lawsuit, are "important for the public to know." *Id.*[1]

For this reason, Mr. Smith and the American Prospect would like to report on this lawsuit. *See* Dayen Decl. ¶ 5; Smith Decl. ¶ 2.  But they are unable to do so because many of the court records are sealed. *See* Dayen Decl. ¶ 5; Smith Decl. ¶ 3.  Numerous court records, including, it seems, all of the briefing and evidence on three motions for summary judgment, are sealed in their entirety.[2] Even the titles of many of these documents are concealed from public

---

[1] Unless otherwise specified, internal quotation marks, brackets, and other alterations are omitted throughout.

[2] There are references to three different summary judgment motions on the docket. *See, e.g.*, Dkt. No. 112 (report and recommendation on what appears to be first two summary judgment motions, decided years ago); Dkt. No. 312 (order that references what is apparently a pending summary judgment motion). But with the exception of one notice of motion, Dkt. No. 105, none

view. It's not even clear that everything filed in the case is on the public docket in any form, sealed or otherwise. As Mr. Smith explains in his declaration, "[i]t is nearly impossible to report on a case without knowing what documents have been filed, let alone what arguments and evidence those documents contain." Smith Decl. ¶ 3.

Mr. Smith and the American Prospect, therefore, seek to intervene in this lawsuit and ask this Court to unseal its records, so they can understand, evaluate, and report on this lawsuit to the public. *See* Dayen Decl. ¶ 5; Smith Decl. ¶ 4.

## ARGUMENT

### I.   The American Prospect and Mr. Smith Should Be Permitted to Intervene to Enforce the Public's Right to Access Court Records.

"[R]epresentatives of the press and general public must be given an opportunity to be heard on the question of their exclusion" from court proceedings. *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 609 (1982). It's well-established, therefore, that members of the press may intervene in litigation to seek access to sealed court records. *See, e.g.*, *In re Pineapple Antitrust Litig.*, No. 04 MD. 1628 RMB MHD, 2015 WL 5439090, at *1 (S.D.N.Y. Aug. 10, 2015) (citing cases); *Coleman v. Cty. of Suffolk*, 174 F. Supp. 3d 747, 754 (E.D.N.Y. 2016) ("[C]ourts in this Circuit have demonstrated a willingness to allow the press to intervene in situations such as this where the public's access to court documents is at stake."); *Savitt v. Vacco*, No. 95-CV-1842 (RSP/DRH), 1996 WL 663888, at *7 (N.D.N.Y. Nov. 8, 1996) ("The Second Circuit Court of Appeals and its district courts have consistently held that news agencies have standing to challenge protective orders in cases of public interest.").

---

of the briefing or evidence on these motions appears to be on the docket. All of this briefing and evidence seems to be sealed.

Some courts have held that under Federal Rule of Civil Procedure 24(a), the press has an absolute right to intervene in a lawsuit to challenge the sealing of court records, while other courts—and this is the more common route—have held that permissive intervention under Rule 24(b) is the more appropriate vehicle. *Compare, e.g.*, *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 164 F.R.D. 346, 351 (S.D.N.Y. 1996) (granting intervention as of right to newspaper) *with Schiller v. City of New York*, No. 04 CIV. 7921(KMK)(JC), 2006 WL 2788256, at *2 (S.D.N.Y. Sept. 27, 2006)  (stating that newspaper "may have an absolute right of intervention in the circumstances of this case" but avoiding the issue by granting permissive intervention).

But regardless of whether intervention is permissive or as of right, courts agree "that members of the press (and other non-parties) may" challenge the sealing of court records "and that the appropriate procedural mechanism to do so is a motion to intervene." *In re Pineapple Antitrust Litig.*, 2015 WL 5439090, at *1; *cf., e.g.*, *Kelly v. City of New York*, No. 01 CIV. 8906, 2003 WL 548400, at *3 (S.D.N.Y. Feb. 24, 2003) ("Regardless of whether *The Daily News* is entitled to intervention as of right, the Court agrees that it is, in any event, entitled to permissive intervention, in order to articulate the public interest in access to the records at issue.").

Thus, under either Rule 24(a), which provides for intervention as of right, or Rule 24(b), which provides for permissive intervention, Mr. Smith and the American Prospect are entitled to intervene in this lawsuit for the purpose of vindicating the public's right to access court records.

## A.  The American Prospect and Mr. Smith Have a Right to Intervene under Rule 24(a).

Rule 24(a) provides that "[o]n timely motion, a court *must* permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a) (emphasis added).

The American Prospect and Mr. Smith meet these criteria. As an initial matter, their motion is timely. Unlike motions to intervene in a case on the merits, there is no "deadline by which [ ] a journalistic request for" intervention for the sole purpose of seeking "access to documents must be asserted." *In re Pineapple Antitrust Litig.*, 2015 WL 5439090, at *2. Indeed, intervention for the purpose of unsealing court records is permissible even years after a case has ended. *See id.* (citing cases); *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.,* 712 F.3d 1349, 1353 (9th Cir. 2013) ("[M]otions to intervene for the purpose of seeking modification of a protective order in long-concluded litigation are not untimely."); *E.E.O.C. v. National Childrens Center, Inc.,* 146 F.3d 1042, 1047 (D.C. Cir. 1998) ( "[T]here is a growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated.").

That's because the purpose of the "timeliness requirement is to prevent prejudice in the adjudication of the rights of the existing parties"—"a concern not present" when intervention is solely for the "collateral purpose" of challenging secrecy. *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *see Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994); *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 786 (1st Cir. 1988). Unlike intervention on the merits, intervention to challenge the sealing of court records does not affect the underlying case at all. Any delay in seeking such intervention, therefore, cannot possibly "prejudice the adjudication of the rights of the original parties." *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 162 (6th Cir. 1987); *see United Nuclear*, 905 F.2d at 1427.

Here, Mr. Smith and the Prospect seek to intervene not years after the lawsuit has ended, but while the lawsuit is still ongoing. Courts have repeatedly held that such motions are timely. *See, e.g.*, *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308,

315 (D. Conn. 2009) ("The present suit remains ongoing, therefore the motion to intervene is timely."); *In re Baycol Prod. Litig.*, 214 F.R.D. 542, 543 (D. Minn. 2003) ("[T]he Court finds that the motion is timely as this MDL proceeding is ongoing."). This Court should do the same.

In addition to filing a timely motion to intervene, Mr. Smith and the Prospect satisfy all other requirements for intervention as of right: They "claim[ ] an interest" in this action: reporting on this lawsuit, which they believe to be of public interest and importance. *Cf. In re NASDAQ*, 164 F.R.D. at 351 (holding newspaper's interest in reporting on lawsuit, and possibility that court records "may be useful to the [newspaper] in fleshing out its coverage of this story and informing public debate on NASDAQ and on governmental regulation of capital markets," sufficient to support intervention under Rule 24(a)); *Katzman v. Victoria's Secret Catalogue*, 923 F. Supp. 580, 583 (S.D.N.Y. 1996) (holding television station's "interest in broadcasting to its viewers an event it deems newsworthy"—a court argument—sufficient to support intervention). Their ability to protect this interest will be impaired if they are unable to intervene and advocate for unsealing the court records. And none of the existing parties adequately represents Mr. Smith and the American Prospect's interests. After all, it is the parties who filed the court records under seal in the first place. *Cf. Schiller*, 2006 WL 2788256, at *3 (holding plaintiff's interest was not "coextensive" with media intervenor because "Plaintiffs' counsel, after all, agreed to the protective order in the first place, and while they now seek to remove the confidentiality designation from certain documents, they are unlikely to take the same position with respect to documents that they deem adverse to their clients' interests"); *Katzman*, 923 F. Supp. at 583 (holding neither party "adequately represent[ed] the interest of" media intervenor because the defendants "vigorously opposed" the intervenor's request and,

while the plaintiff "support[ed] the application," she "possesse[d] an entirely different interest" in the litigation than the media).[3]

Because Mr. Smith and the American Prospect meet Rule 24(a)'s requirements, they "must" be permitted to intervene, Fed. R. Civ. P. 24(a).

**B. Mr. Smith and the American Prospect Satisfy the Standard for Granting Permissive Intervention Under Rule 24(b).**

Many courts sidestep the question of whether members of the press seeking to challenge the sealing of court records have an absolute right to intervene under Rule 24(a), and instead simply grant permissive intervention under Rule 24(b). *See, e.g.*, *Schiller*, 2006 WL 2788256, at *2; *In re Pineapple Antitrust Litig.*, 2015 WL 5439090, at *1 n.2 ("Permissive intervention is the more commonly invoked route."). Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). "In exercising its discretion" to decide whether a prospective intervenor who meets these requirements should be granted permission to intervene, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

---

[3] This makes sense: The parties are primarily concerned with winning their case, not with the public's right of access to the records filed therein. They therefore do not—and cannot— adequately represent Mr. Smith and the Prospect's interest in vindicating the public right of access.  While it appears that the plaintiff now opposes some of the sealing, there is "no reason to believe" its interest in doing so is "coextensive" with that of Mr. Smith and the Prospect— particularly with respect to any documents that may be adverse to the plaintiff's interests. *See Schiller*, 2006 WL 2788256, at *3. "Important interests are best championed by those most directly affected by their impairment." *Katzman*, 923 F. Supp. at 583. Here, with respect to the interest in unsealing court records, those most directly affected by the closure of the court records in this case from the public are Mr. Smith and the Prospect, who need those records to publicly report on this lawsuit. *See also Schiller*, 2006 WL 2788256, at *3 ("[T]he perspective and expertise that the [media intervenor] brings concerning issues of public access may well facilitate determination of these issues.").

Because intervention to unseal court records does not affect the underlying case at all—and therefore cannot prejudice the parties' substantive rights—the "standards articulated in" cases governing motions for permissive intervention on the merits "do not control in cases" where the proposed intervenors seek only to challenge sealing, *Pansy*, 23 F.3d at 780 n.7. *See id.*; *Flynt v. Lombardi*, 782 F.3d 963, 967 (8th Cir. 2015); *supra* page 5. And courts grant members of the press permission to intervene to challenge sealing as a matter of course. *See, e.g.*, *In re Pineapple Antitrust Litig.*, 2015 WL 5439090, at *1 ("The courts have repeatedly recognized that members of the press (and other non-parties) may seek to pursue modification of confidentiality orders that have led to the sealing of documents filed with the court, and that the appropriate procedural mechanism to do so is a motion to intervene."); *Kelly*, 2003 WL 548400, at *3 ("Regardless of whether *The Daily News* is entitled to intervention as of right, the Court agrees that it is, in any event, entitled to permissive intervention, in order to articulate the public interest in access to the records at issue."); *Giuffre v. Maxwell*, 325 F. Supp. 3d 428, 437 (S.D.N.Y. 2018), *rev'd on other grounds by Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) ("Because courts, including this one, have repeatedly recognized that members of the press (and other non-parties) may seek to pursue modification of confidentiality orders that have led to sealing of documents filed with the court, and since the appropriate procedural mechanism to do so is a motion to intervene, the motion of Brown and the Miami Herald to intervene is granted."); *Savitt*, 1996 WL 663888, at *7 (citing cases).

This case is no different. As explained above, Mr. Smith and the Prospect's motion to intervene is timely. And, like all prospective intervenors challenging secrecy orders, they raise a question of law in common with the main action—the propriety of sealing the court records and the public's interest in access to them. *See Flynt*, 782 F.3d at 967 ("[I]t is the public's interest in

the confidential[ity] of the judicial records that—in the language of Rule 24(b)(2)—is a question

of law in common between the Parties to the original suit and the would-be intervener."; *Jessup*

*v. Luther*, 227 F.3d 993, 998 (7th Cir. 2000) (same); *Pansy*, 23 F.3d at 778 (same). That is all

that is required for press intervention to unseal court records. *See Flynt*, 782 F.3d at 967 (citing

cases).

Mr. Smith and the Prospect, therefore, should be granted permission to intervene.

**II.      The Court Records Should Be Unsealed.**

**A.  The Public Has a Presumptive Right to Access Court Records.**

Both the First Amendment and the common law provide the public a right to access court

records. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006). This

right is "integral" to our democracy. *United States v. Erie Cty.*, 763 F.3d 235, 239 (2d Cir. 2014).

"[F]ederal courts, although independent—indeed, particularly because they are independent—

[must] have a measure of accountability," and the public must "have confidence in the

administration of justice." *Lugosch*, 435 F.3d at 119. The public's right to access court records—

to monitor, oversee, and understand the functioning of the courts—is essential to maintaining the

accountability and legitimacy of the judicial system.

Because of the importance of this right, courts have an "obligation to keep [their] records

open for public inspection." *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d

299, 307 (6th Cir. 2016); *see also United States v. Aref*, 533 F.3d 72, 82 (2d Cir. 2008) ("[I]t is

the responsibility of the district court to ensure that sealing documents to which the public has a

First Amendment right is no broader than necessary."); *Uni-Sys., LLC v. U.S. Tennis Ass'n*, No.

17CV147KAMCLP, 2017 WL 4081904, at *6 (E.D.N.Y. Sept. 13, 2017) ("[T]he Court has an

independent responsibility to protect the public's right to access" court records.).

To fulfill this obligation, "courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013). Under either presumption, the party seeking sealing must demonstrate a need for secrecy that outweighs the presumption of access—and the values it protects. *See Lugosch*, 435 F.3d at 120; *United States v. Amodeo*, 44 F.3d 141, 148 (2d Cir. 1995); *New York ex rel. Khurana v. Spherion Corp.*, No. 15-CV-6605 (JMF), 2019 WL 3294170, at *1 (S.D.N.Y. July 19, 2019). And a court cannot seal its records without "review[ing] the documents individually" and making "specific, rigorous findings" on the record that "sealing is necessary." *Khurana*, 2019 WL 3294170, at *1.

1. The common law presumption of access applies to all judicial documents.[4]  *See Lugosch*, 435 F.3d at 119. "[T]he weight to be given" this presumption varies based on "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* "[W]here documents directly affect an adjudication or are used to determine litigants' substantive legal rights"—for example, motions

---

[4] A document filed with the court is a judicial document "if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019). Documents submitted to a court "for the purposes of seeking or opposing adjudication" are judicial documents, regardless of whether the court has even ruled on the motion for which they were submitted, *United States v. Sattar*, 471 F. Supp. 2d 380, 385 (S.D.N.Y. 2006). *See Lugosch*, 435 F.3d at 120–21 (holding district court erred in concluding it could not determine whether to unseal motion papers "until it had ruled on the underlying summary judgment motion" because Second Circuit "precedents indicate that documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment").

for summary judgment—"the presumption of access is at its zenith and thus can be overcome only by extraordinary circumstances." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016); *see id.* (noting that "only the most compelling reasons can justify sealing" summary judgment motions). But even information that plays "only a negligible role in the performance" of a court's "duties"—information, for example, that "come[s] within a court's purview solely to insure [its] irrelevance"—is subject to a common law presumption of public access that cannot be overcome "absent a countervailing reason." *Lugosch*, 435 F.3d at 119, 121; *see Brown*, 929 F.3d at 50 ("[A] court must still articulate specific and substantial reasons for sealing such material.").

Of course, the common law presumption of access is not absolute. *See Lugosch*, 435 F.3d at 120. But it can only be overcome by "a *particular and specific demonstration of fact* showing that disclosure would result in an injury sufficiently serious" to outweigh the public's right of access. *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) (emphasis added) (citing cases). A mere conclusory assertion of harm—for example, the bare assertion that a document contains trade secrets—is insufficient. *See, e.g.*, *id.* at 248; *Nycomed US, Inc. v. Glenmark Generics, Inc.*, No. 08-CV-5023 CBA, 2010 WL 889799, at *6 (E.D.N.Y. Mar. 8, 2010); *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 613 (S.D.N.Y. 1998); *CSL Silicones, Inc. v. Midsun Grp. Inc.*, No. 3:14-CV-1897 (CSH), 2017 WL 4750701, at *3 (D. Conn. July 12, 2017). A party seeking to keep a court record from public view must "*prove*" that disclosure of the information will "in fact" cause "a clearly defined and very serious injury." *Encyclopedia Brown*, 26 F. Supp. 2d at 613 (emphasis added).

And it must do so for each document it seeks to seal. *See Brown*, 929 F.3d at 50–51 (requiring "an individualized review"). Court records may not be sealed wholesale. *See id.*

11

(holding wholesale sealing of "thousands of pages . . . without particularized review" was "abuse of discretion"). And even where documents do contain information that must be kept secret, they may not be sealed in their entirety if the confidential information may be redacted instead. *See Methodist Hospitals, Inc. v. Sullivan,* 91 F.3d 1026, 1032 (7th Cir. 1996) ("To say that particular *information* is confidential is not to say that the entire document containing that information is confidential."); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003) (requiring redaction rather than the wholesale sealing of court records).

**2.** Where the First Amendment presumption of access applies, the showing required to seal court records is even more stringent. Under the First Amendment, sealing can be "justified only with specific, on-the-record findings that sealing is necessary to preserve higher values" than the public's right to access court proceedings "and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124.

The Second Circuit has "applied two different approaches when deciding whether the First Amendment right" of access—and its stringent standard for sealing court records—"applies to particular material." *Newsday*, 730 F.3d at 164. The "experience-and-logic" approach, which applies to all court records, "asks both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* "The second approach—which [applies] only when analyzing judicial documents related to judicial proceedings covered by the First Amendment right—asks whether the documents at issue are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id.*

Based on these approaches, the Second Circuit has held, as a matter of law, that the First Amendment presumption of access applies to, among other things, "summary judgment motions

and documents relied upon in adjudicating them, pretrial motions and written documents submitted in connection with them, and docket sheets." *Newsday*, 730 F.3d at 164. A court, therefore, cannot seal these documents (or any other court records to which the First Amendment applies) "absent the most compelling reasons," *Lugosch*, 435 F.3d at 125. And it cannot seal or redact more information than is necessary to protect any interest that justifies sealing. *See id.* at 120 (requiring any sealing to be "narrowly tailored").

## B. The Parties Have Not Met Their Burden to Justify Sealing Any Court Records in this Case.

Numerous documents filed in this case—including, it seems, all of the briefing and evidence related to the defendant's most recent summary judgment motion—are sealed, many of them in their entirety.[5] Indeed, in many instances, even the *titles* of documents are sealed, so it is impossible to determine exactly what has been filed (and sealed) in the case. Yet, for most of these sealed court records, the docket contains no explanation whatsoever for this sealing—let alone a factual showing demonstrating the kind of "extraordinary circumstances" that warrant the wholesale sealing of court records like summary judgment documents.

Even in the few instances where a party has provided some explanation for its sealing request, the explanation has fallen far short of the particular and specific demonstration of fact the law requires. For example, Citigroup's recent request to redact a portion of the transcript of the May 28, 2019 hearing—a hearing that was held in open court—does not identify *any* harm that will occur if the transcript is not redacted, let alone demonstrate an injury sufficiently serious to warrant sealing. *See* Dkt. No. 321. Nor could it. The public has already had access to the

---

[5] It appears that there may be documents filed—and perhaps sealed—in the case that have not been filed on the docket. To the extent that there are records not on the docket, those records, too, must be unsealed absent a sufficient showing that secrecy is warranted—and they should also be docketed.

information Citigroup seeks to redact, as it was presented in open court. In fact, proposed intervenor and investigative journalist Brandon Smith attended the hearing. *See* Smith Decl. ¶ 3. Citigroup makes no attempt to explain how it could possibly be harmed from disclosure of information that is already public. *Cf. Rambus, Inc. v. Infineon Techs. AG*, No. CIV.A. 3:00CV524, 2005 WL 1081337, at *3 (E.D. Va. May 6, 2005) (refusing to seal slides that were presented at hearing that was open to the public); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 897–98 (E.D. Pa. 1981) ("[P]ortions of documents that are read into the record in an open proceeding enter the public domain, without regard to whether the documents were originally filed on the public record, were filed under seal, or were not filed with the clerk.").

Instead of even attempting to meet the standard for overcoming the public's right of access, Citigroup argues that the information should be redacted simply because, when Citigroup produced it during discovery, the company marked it confidential. Dkt. No. 321, at 3. But court records may *never* be sealed simply because they contain information a party marked confidential during discovery. *See, e.g.*, *Shane*, 825 F.3d at 306-07. Court records have historically been open to the public; discovery has not. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). And because "[m]uch of the information that surfaces during pretrial discovery" may turn out to be entirely "unrelated" to the litigation, *id.*, courts often enter blanket protective orders permitting the parties themselves to designate discovery confidential. *See Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1122-23 (3d Cir. 1986).

But once a document is submitted to the court, "very different considerations apply." *See Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016); *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006); *Joy v. North*,

692 F.2d 880, 893 (2d Cir. 1982). "An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Joy*, 692 F.2d at 893. Judicial decisions may not be based on secret evidence—at least not without a showing that there are compelling reasons that necessitate secrecy. As explained above, to seal court records, a party must make a particular and specific demonstration of fact that disclosure would result in an injury sufficiently serious to outweigh the public's right of access. *See supra* pages 11-12. The bare assertion that court records contain information that a party marked confidential in discovery does not come close to meeting this standard. *See Shane*, 825 F.3d at 306-07 (explaining that courts cannot seal class certification records simply because they contain information a party designated confidential in discovery); *Khurana*, 2019 WL 3294170, at *1 ("mere fact" that material is subject to stipulated protective order "is not a valid basis to overcome the presumption in favor of public access to judicial documents"); *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 705 (S.D.N.Y. 2017) ("Even if material is properly designated as Confidential or Highly Confidential by a protective order governing discovery, that same material might not overcome the presumption of public access once it becomes a judicial document.").[6]

---

[6] Even for unfiled discovery documents, the parties' confidentiality designations pursuant to a blanket protective order are not sufficient to demonstrate that the documents are, in fact, confidential. A party's own confidentiality designations do not substitute for the judicial finding of "good cause" required to force parties to keep discovery secret. *See Cipollone*, 785 F.2d at 1122. A blanket protective order—and the parties' confidentiality designations thereunder— can only protect discovery "*initially*." *Id.* (emphasis added). Once a party (or a third-party intervenor) challenges the confidentiality of the documents, the party seeking to keep them confidential must demonstrate good cause for secrecy—even if they are never filed in court. *See id.* ("[T]he burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn [Federal Rule of Civil Procedure] 26(c) on its head.").

Indeed, it appears that this standard has never been met in this case—for any of the sealed court records. Therefore, every document filed in this case should be unsealed, unless the party seeking sealing can satisfy its burden to demonstrate that the need for secrecy outweighs the presumption of access.

### C. The Documents Should Be Unsealed Without Further Delay.

Courts, including the Second Circuit, have repeatedly stressed that where the public has a right to access court records, such access should be "immediate." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126-27 (2d Cir. 2006) (collecting cases). "The public cannot properly monitor the work of the courts with long delays in adjudication based on secret documents." *Id.* at 127. "To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression." *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (superseded on other grounds). The right of access, therefore, protects not only the public's ability to "review . . . the basis of an important decision of the district court," but the "public's ability to make a *contemporaneous* review." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 664 (3d Cir. 1991) (emphasis added).

The public's right to access the court records in this lawsuit has already been delayed, in some instances, for years. It should not be delayed any longer. This Court, therefore, should require the parties to demonstrate a sufficient basis for sealing immediately or unseal the court records.

### CONCLUSION

For the reasons above, this Court should grant Mr. Smith and the Prospect's motion to intervene.  And with the exception of any information for which the parties sufficiently

demonstrate a need for secrecy that outweighs the presumption of public access, this Court should unseal the court records in this case.

Dated: August 19, 2019

Respectfully submitted,

 */s/ Jennifer D. Bennett*

Jennifer D. Bennett (*pro hac vice pending*)
Public Justice, P.C.
475 14th St., Suite 610
Oakland, CA 94612
Phone: (510) 622-8150
jbennett@publicjustice.net

Stephanie K. Glaberson
Public Justice, P.C.
1620 L St. NW, Suite 630
Washington, D.C. 20036
Phone: (202) 861-5228
sglaberson@publicjustice.net