UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ADVANCED ANALYTICS, INC.,                    :

                        Plaintiff,           :      04 Civ. 3531 (LTS)(HBP)

        -against-                            :      OPINION
                                                    AND ORDER
CITIGROUP GLOBAL MARKETS, INC.,              :
et al.,
                                             :

                        Defendants.          :
----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/4/19

        PITMAN, United States Magistrate Judge:


I.  Introduction


        By notice of motion filed on June 27, 2019 (Docket Item

("D.I.") 313), plaintiff moves pursuant to Fed.R.Civ.P. 56(h) to

strike the declarations submitted by defendants in support of

their motion for summary judgment and for sanctions, claiming

that the declarations contain false and misleading statements and

are not based on personal knowledge.  By notice of motion dated

July 11, 2019 (D.I. 317), defendants move to strike plaintiff's

Rule 56(h) motion and for sanctions.  I construe defendants'

motion to strike as their opposition to plaintiff's 56(h) motion

For the reasons stated below, plaintiff's motion is denied, and

defendants' motion to strike and for sanctions is denied.

II.  Facts

   The facts underlying this litigation are set forth in
my Report and Recommendation of even date.  The reader's famil-
iarity with those facts is assumed.  My recitation of the facts
here will be limited to those facts necessary to resolve the
instant motions.

   Ever since the matter was remanded in 2010 by the
Honorable Laura Taylor Swain, United States District Judge, for
further discovery, plaintiff has persisted in its contention
that defendants have withheld from discovery the computer code
that would demonstrate that defendants did, in fact, steal
plaintiff's sequences when they tested ACE in late 1990's.
Despite the total lack of evidence supporting this belief and
despite attestations by defendants under penalty of perjury that
all relevant code used by defendants has been produced, plaintiff
continues to persist in its belief.

   All the discovery issues concerning plaintiff's theory
that defendants were withholding evidence have been previously
litigated.  On September 5, 2012 I held a protracted discovery
conference in which plaintiff raised its claims that an affidavit
submitted by Dr. Branislav Radak, a former vice president of
defendant The Yield Book Inc. ("TYB") was not based on personal
knowledge, that Dr. Radak had fabricated bogus codes to create
1,000 path sequences, that defendants withheld relevant computer

code and that defendants surreptitiously ran computer code during the testing of ACE that stole plaintiff's sequences (Transcript of Proceedings Conducted on September 5, 2012 (D.I. 175) ("Sept. 5 Tr.") at 20, 38, 90; Plaintiff's Objection to the Magistrate Judge's Denial of Plaintiff's Application to Compel Production of the Yield Book Code and to Compel the Depositions of Robert Russell and Stewart Herman, dated Sept. 28, 2012 (D.I. 197) at 3, 5, 10-11 15).  I rejected these contentions at the conference (Sept. 5 Tr. at 92, 95; Order dated Sept. 25, 2012 (D.I. 174)). Judge Swain subsequently rejected plaintiff's objections to my rulings (Order dated Feb. 8, 2013 (D.I. 214)).

After retaining its current counsel (plaintiff was previously represented by more than six sets of attorneys), plaintiff moved in 2018 pursuant to Fed.R.Civ.P 56(d) to defer consideration of defendants' summary judgment motion and to re-open discovery (Plaintiff's Notice of Motion and Motion under FRCP 56(d), dated Nov. 8. 2018 (D.I. 289)).  I held oral argument on this motion on May 28, 2019 and denied the motion, finding, in principal part, that plaintiff was attempting to make the same arguments that it had unsuccessfully made in 2012 (Order dated May 28, 2019 (D.I. 312)).

Undeterred by its prior defeats, plaintiff has repackaged its claims of discovery misconduct and has now moved for sanctions pursuant to Rule 56(h), claiming that defendants have,

3

in bad faith, filed false declarations and declarations that are not supported by personal knowledge in support of their motion for summary judgment.  Specifically, plaintiff claims that the declarations of Dr. Branislav Radak, Dr. Nathaniel Polish (an expert retained by defendants for the purpose of this litigation) and Dr. Robert Russell contain false and misleading statements and are not based on personal knowledge.  Defendants now claim that plaintiff's 56(h) motion is itself sanctionable as an improper motion for reconsideration of the Court's prior rulings.

## III.  Analysis

### A.  Plaintiff's 56(h) Motion

Rule 56(h) authorizes a district court to impose "appropriate sanctions," including attorney's fees, against a party or counsel who submits "an affidavit or declaration under [Rule 56] in bad faith or solely for delay."  Fed.R.Civ.P. 56(h). "[A]n order to pay expenses pursuant to Rule 56(h) requires a finding of 'bad faith,' which courts have found only when the attorney's conduct is 'egregious,' such as 'where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case.'" Stern v. Regency Towers, LLC, 886 F. Supp. 2d 317, 327 (S.D.N.Y. 2012) (Furman, D.J.), quoting Jaisan, Inc. v. Sullivan, 178 F.R.D. 412, 415-16 (S.D.N.Y. 1998) (Knapp. D.J.).  "Bad faith may

4

be found when an attorney's actions are 'so completely without merit . . . that they must have been undertaken for some improper purpose.'" Jimenez v. City of New York, 666 F. App'x 39, 41 (2d Cir. 2016) (summary order), quoting Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 338 (2d Cir. 1999).

Much of plaintiff's Rule 56(h) motion appears to have little or no connection to the legal requirements for an award of sanctions under Rule 56(h). For example, plaintiff spends several pages claiming, without any evidence, that its former counsel colluded with defense counsel. Although plaintiff's principal may have had disagreements with plaintiff's former counsel about how to litigate the case, those disagreements do not imply that the attorney is colluding with the other side. Moreover, even if I make the assumption that plaintiff's allega-tion of collusion is true, that does not demonstrate that any declarations submitted by defendants were submitted in bad faith or for the purpose of delay.

Nevertheless, read charitably, plaintiff appears to be asserting three bases for its Rule 56(h) motion: (1) defendants are guilty of discovery misconduct; (2) defendants' motion is groundless because plaintiff is entitled to prevail on the merits and (3) defendants have submitted declarations that are not based on personal knowledge and/or are false.

As to the first ground, defendants are largely correct in their contention that plaintiff is improperly seeking to reargue matters that were previously decided adversely to plaintiff. As noted above, plaintiff's claim of discovery misconduct was addressed as recently as the May 28, 2019 conference. There is no basis to revisit it again.

Plaintiff's contention that defendants' summary judgment motion is sanctionable because plaintiff is entitled to prevail on the merits fails because (1) I conclude that defendants are entitled to summary judgment for the reasons set forth in my Report and Recommendation of even date and (2) the putative "facts" that plaintiff now offers to demonstrate that it is entitled to prevail on the merits are not supported by any evidence. Plaintiff's more exorbitant assertions include the following:

- "The undisputed Wang Decl. presented overwhelming evidence, among other things, that beginning approximately in the middle of 2012, Defendants and [plaintiff's former counsel] conspired to deceive the Court, to conceal the evidence of Defendants' fraud." (Plaintiff's Memorandum of Law in Support of Its Motion pursuant to Fed.R.Civ.P. 56(h), dated June 26, 2019 (D.I. 313) ("Pl. 56(h) Mem.") at 1).

- "In other words, whenever TYB is not using its Monte Carlo code, such as when TYB is used exclusively by their internal users, TYB is then using ACE." (Pl. 56(h) Mem. at 2).

- "Defendants directed Radak to concoct certain Monte Carlo Code in 2007 (the 'Radak Code') using the seeds ('decoy seeds') in RCS code from Mortgage Research Dept. ('MR-RCS') to manufacture phony sequences ('Radak

Sequences I', or 'Radak Seq I') (C2-2)[1], that cannot even be generated by TYB, much less used by TYB. (C3-2)." (Pl. 56(h) Mem. at 3).

- "In addition, AAI also has claimed and presented undisputed conclusive evidence that Defendants used the stolen ACE sequences as the target to select derivative sequences ('LDS Seq III'), used by all The Yield Book licensees ('Ace Derivative Use Claim.' Together with ACE Verbatim Use Claim, 'Plaintiff's Claims') (A-2)." (Pl. Mem. 56(h) at 4).[2]

- "After confronted by AAI, Defendants admitted that the July 16 production contained phony sequences, but then they merely replaced it with another production on August 17, 2007, also created by Radak Code (CGM04945), which again consisted of all phony Radak Seq I." (Pl. 56(h) Mem. at 5).

- "Defendants ordered Radak to write bogus Radak Code to create 1000 path sequences. Wang Decl. ¶¶ 75-79." (Pl. 56(h) Mem. at 6).

If plaintiff's assertions were true, it might have a basis for a 56(h) motion. However, at best, plaintiff's assertions of "fact" are really just inferences that plaintiff has drawn, after viewing the evidence in the light most favorable to

--------

[1]"C2-2" refers to an appendix that plaintiff has submitted along with it 56(h) motion. The appendix purports to provide evidentiary support for the factual assertions in plaintiff's memorandum of law.

[2]It is odd that just two months ago, in its 56(d) motion, plaintiff argued that consideration of defendants' summary judgment motion should be deferred because plaintiff needed to take additional, crucial discovery, yet now it claims to have "undisputed conclusive" evidence that defendants stole its sequences. Plaintiff took similarly contradictory positions in 2012 when it argued for additional discovery notwithstanding the fact that its counsel advised the Court that he had "mountains of evidence" of defendants' alleged misappropriation of plaintiff's trade secrets (Sept. 5 Tr. at 20-21).

plaintiff. For example, contrary to in the third bullet point quoted above, there is no evidence that defendants instructed Dr. Radak to manufacture phony sequences; plaintiff merely surmises that is what occurred. Contrary to the fifth bullet point quoted above, defendants never admitted to plaintiff that they produced "phony" sequences in discovery. And in support of its sixth bullet point -- that defendants "ordered Radak to write bogus code" -- plaintiff cites a declaration from its principal. Plaintiff's principal could not possibly have first-hand knowledge of defendants' internal communications. Plaintiff's "factual" assertions do not come close to establishing that the affidavits and declarations defendants submitted in support of their motion for summary judgment were false or submitted in bad faith, for the purpose of delay or are perjurious.

The last ground for plaintiff's 56(h) motion is its contention that defendants submitted affidavits from three individuals that are either not based on personal knowledge, false or both. Again, plaintiff's contentions lack substance.

The case law addressing Rule 56(h) motion based on perjurious affidavits or declarations is sparse. However, one consistent principle in the cases that have granted relief under the Rule is clear proof that the declaration or affidavit is false, usually through admissions of untruthfulness or irreconcilably inconsistent statements from the declarant or affiant.

See 10B Charles A. Wright, Arthur R. Miller, Mary K. Kane,
Federal Practice & Procedure § 2742 at 417-18 (4th ed. 2016).
For example, in Luscier v. Risinger Bros. Transfer, Inc., 13 Civ.
8553 (PKC), 2015 WL 5638063 (S.D.N.Y. Sept. 17, 2015) (Castel,
D.J.), sanctions were imposed pursuant to Rule 56(h) where
counsel admitted that he had fraudulently signed and notarized an
affidavit that had purportedly been signed by the plaintiff.   In
Ansley v. Greenbus Lines, Inc., 96 Civ. 3905 (MBM)(DFE), 1997 WL
426110 (S.D.N.Y. July 30, 1997) (Eaton, M.J.), sanctions were
imposed under the predecessor to Rule 56(h) where counsel admit-
ted that his client's declaration in opposition to the defen-
dants' summary judgment motion was perjurious.  And in Warshay v.
Guiness PLC, 750 F. Supp. 628 (S.D.N.Y. 1990) (Conboy, D.J.),
aff'd, 935 F.2d 1278 (2d Cir. 1991), sanctions were imposed under
the predecessor to Rule 56(h) where the plaintiff submitted an
affidavit in opposition to a summary judgment motion that was
contradicted by his earlier affidavit.

        Conflicting declarations will not support an award of
sanctions under Rule 56(h).  Malkan v. Matua, 699 F. App'x 81, 83
(2d Cir. 2017) (summary order).  Conflicts in testimony, without
more, do not, as a matter of law, prove perjury.  United States
v. Sanchez, 969 F.2d 1409, 1415 (2d Cir. 1992); United States v.
Bortnovsky, 879 F.2d 30, 33 (2d Cir. 1989).  Thus, conflicts
between the affidavits and declarations submitted by defendants

and the affidavits and declarations submitted by plaintiff are not sufficient to warrant the imposition of sanctions pursuant to Rule 56(h).  Horton v. Dobbs, Civil Action No. 1:09CV114, 2011 WL 1899760 at *3 (N.D. W. Va. May 19, 2011) (rejecting 56(h) motion where only evidence of perjury was conflicting affidavit of another individual).

Plaintiff's motion does not come close to the clear demonstration of perjury necessary to warrant the imposition of sanctions under Rule 56(h).

Plaintiff first attacks the declaration of Dr. Radak, a former vice president of TYB and a former vice president within the MBS Term Structure Modeling department of Citigroup Global Markets, Inc.  The declaration plaintiff attacks is a two-page declaration in which Dr. Radak confirms the completeness of defendants' production of TYB sequences in discovery; the complete text of Radak's declaration is set out below in a footnote.[3]

---

[3]Radak's declaration provides:

Branislav Radak declares as follows:

1.  I am employed by defendant Citigroup Global Markets Inc. ("CGMI") as a Vice President within the MBS Term Structure Modeling department.  In that capacity, I am familiar with what are known as the Yield Book sequences.

2.  I have reviewed copies of the computer disks that I understand defendants' counsel produced to
(continued...)

        counsel for plaintiff on July 16 and August 17, which
        bear production numbers CGM 04943, CGM 04945, CGM
        04946. These disks contain the Yield Book sequences
        that I provided to defendants' counsel for production
        to plaintiff in this lawsuit, which I will refer to as
        the "Yield Book Sequence Production."

        3. The Yield Book Sequence Production includes
        all versions of the Yield Book sequences using fewer
        than 1000 paths as of the following dates: October 1,
        1994, November 1, 1999, September 1, 2000, October 1,
        2000, November 1, 2000, February 1, 2005 and June 29,
        2007, in the forms identified in the chart annexed to
        this declaration.

        4. The Yield Book Sequence Production includes
        all versions of the Yield Book sequences using fewer
        than 1000 paths from the creation of the RCS [Revision
        Control System] directory on or about October 1, 1994
        to September 1, 2000, and from that date to June 29,
        2007, every version that is materially different.
        These sequences did not change at all from October 1,
        1994 until what is reflected in the in the November 1,
        1999 version in defendants' production of August 17,
        2007, and they did not change again until what is
        reflected in the September 1, 2000 version in
        defendants' production. Any subsequent material
        changes in the sequences are reflected in the October
        1, 2000, November 1, 2000, February 1, 2005 and June
        29, 2007 versions contained in the Yield Book Sequence
        Production.

        5. The Yield Book sequences produced used 86 time
        intervals until approximately 2000, after which they
        used 106 time intervals. The Yield Book Sequence
        Production includes versions of the sequences for each
        of the dates identified above in the year 2000 using
        both 86 and 106 time intervals.

(Declaration of Branislav Radak, dated Sept. 1, 2007, annexed as
Exhibit 31 to the Declaration of Nathaniel E. Jedrey, Esq. dated
Apr. 5, 2013 ("Jedrey Decl.")). Radak's declaration was
submitted in response to an Order I issued on August 31, 2007 to
resolve a dispute concerning the completeness of defendants'
                                              (continued...)

In support of its claim that Radak's declaration was not based on personal knowledge, plaintiff cites two excerpts from Radak's deposition. In the first excerpt Radak testifies that it was his understanding that the mortgage research department and TYB produces a set of prices on a daily basis and that the results are checked on a daily basis to ensure that both groups are using the same prepayment and default model. Radak then goes on to admit that he does not have first-hand knowledge of the sequences actually used to generate these daily prices.[4]

---

[3](...continued)
document production. It was produced to plaintiff on September 7, 2007 (see Order dated Aug. 31, 2007 (D.I. 81)).

[4]Plaintiff cites the following testimony in support of the proposition stated in the text:

> Q. You testified -- didn't you testify that you got an e-mail with pricing of IOs and POs on a daily basis?
>
> A. There is an e-mail that comes to my address saying that prices are in sync.
>
> Q. Prices are in sync with what?
>
> A. It just says that.
>
> Q. How do you know what that means?
>
> A. My understanding is that that means that mortgage research produces a set of prices on a daily basis just to check the prepayment model, and Yield Book also does the same to make sure that both groups are using the same prepayment model and same default model. That's my understanding.
>
> Q. Do you have personal knowledge of that.

(continued...)

In the second excerpt, Radak states that he does not have access to TYB's revision control system.[5]

The fact that Dr. Radak does not personally know what sequences are used to generate the daily reports he described does not impugn the assertions in his declaration. His declaration identifies several sequences, and the fact that he may not have personal knowledge of the particular sequence used for a particular task does not imply that his attestation as to the completeness of defendants' document production is false.

Similarly, the fact that Dr. Radak did not have access to defendants' revision control system may raise questions as to how he knows the sequences produced by defendants were complete, but such questions are not proof of perjury and certainly not the clear proof of perjury necessary to warrant the imposition of sanctions under Rule 56(h). Given his position, it is possible that Dr. Radak has knowledge of the sequence used by defendants independent of the revision control system. In addition Radak

---

[4](...continued)
    A.   No.

(Transcript of Deposition of Dr. Branislav Radak, taken on Aug. 29, 2012 at 189-90, annexed as an exhibit to the Declaration of Peter J. Toren, Esq., dated June 25, 2019 (D.I. 313)).

[5]"A revision control program is akin to the document management system one finds in a modern law office. It tracks all documents and keeps a revision history showing all changes made to a given document." Lydia P. Loren & Andy Johnson-Laird, Computer Software-Related Litigation: Discovery and the Overly-Protective Order, 6 Fed. Cts. L. Rev. 1, 17 n.38 (2012)

was deposed on two occasions -- in 2007 and 2012 -- _after_ his declaration was produced to plaintiff. Plaintiff had the opportunity to explore the basis for the statement in Dr. Radak's declaration but offers no testimony from the depositions demonstrating that Dr. Radak's lack of access to the revision control system made it impossible for him to confirm the completeness of defendants' document production.

Plaintiff's attack on the declarations of Dr. Polish is similarly flawed.[6] Polish holds a Ph.D. in Computer Science and was retained by defendants to serve as a consultant and expert witness in this matter. In that role, Dr. Polish performed certain tests concerning the capabilities of defendants' computer applications. As an outside expert, his lack of personal knowledge concerning defendants' actual day-to-day operations is immaterial; all specially retained experts render their opinions based on the application of their expertise to the information supplied to them by the party that retained them.

The closest plaintiff comes to attacking the bases for Dr. Polish's opinions is the following statement in its memorandum in support of its 56(h) motion: "The false statements in 1st

---

[6]Defendants obtained five declarations from Dr. Polish, and plaintiff claims that all five are false, not based on personal knowledge and submitted in bad faith (Pl. 56(h) Mem. at vi & n.2). Defendants, however, have submitted only the first, fourth and fifth Polish declarations in support of their motion for summary judgment (Jedrey Decl. Exs. 50, 62, 63).

Polish Decl are repeated in both 2nd and 3rd Polish Decls, even [though] they had been exposed during the vis a vas [sic] call with Plaintiff's expert Hicks. Dr. Polish admitted that he never did any of the steps he had claimed did" (Pl. 56(h) Mem. at 7). In support of this statement, plaintiff first cites a declaration from its expert Dr. Jianqing Fan. At the paragraphs cited by plaintiff, Dr. Fan does not claim to have spoken to Dr. Polish. Thus, even if I assume that Dr. Fan's declaration can be properly considered,[7] it does not support a claim that Dr. Polish "admitted that he never did any of the steps he had claimed he did." In further support of its claim of an "admission" from Dr. Polish, plaintiff also cites a declaration from one of plaintiff's experts, Christian Hicks, that describes a conference call that took place on May 15, 2007 in which Hicks, Dr. Polish and others participated (Declaration of Christian Hicks, dated June 8, 2007, annexed as Ex. 51 to the Jedrey Decl.). Although Hicks is critical in his declaration of the limitations imposed on the questions he posed to Dr. Polish during the call and is critical of some of the conclusions Dr. Polish reached, Hicks' description

---

[7] I previously held the Fan declaration on which plaintiff relies cannot be cited for merits purposes. Advanced Analytics, Inc. v. Citigroup Global Markets, Inc., 301 F.R.D. 31 (S.D.N.Y. 2014), objections overruled, 301 F.R.D. 47 (S.D.N.Y. 2014). That decision is the law of the case, and I am not revisiting it here. However, because the Fan declaration does not support the proposition for which it is cited, it is not necessary to address whether plaintiff's use of the declaration is proper.

of the call actually confirms that Polish performed the testing

he claims.  For example, Hicks asked Dr. Polish detailed ques-

tions about the actions Polish took at certain stages of his

testing, and Polish provided substantive answers.  Hicks does

not describe any admission by Polish that he did not do the work

he claims.

Even more troubling, in the course of arguing that Dr.

Polish submitted false declarations, plaintiff itself misstates

the content of one of Polish's declarations.  Plaintiff states

"In the 1st and 2nd Polish Decls, the 'YB sequences' were defined

as Decoy Seq II" (Pl. 56(h) Mem. at 7).  As noted above, defen-

dants have not submitted the second Polish declaration in support

of their summary judgment motion.  Thus, plaintiff's reference to

that declaration is meaningless.  The first Polish declaration

refers to "Yield Book Numbers," but it contains no mention of "YB

sequences" and it does not define anything as "Decoy Seq II" (see

Declaration of Nathaniel Polish, dated Feb. 28, 2006, annexed as

Ex. 50 to the Jedrey Declaration).  Plaintiff's need to misstate

the content of Dr. Polish's declaration demonstrates the poverty

of its position.

The balance of plaintiff's attack on Dr. Polish's

declarations consist of nothing more than restatements of

plaintiff's disagreements with the conclusions reached by Dr.

Polish, supported by nothing more than the opinions of plain-

tiff's principal or one of plaintiff's experts. Plaintiff offers no prior inconsistent statements from Dr. Polish, nor does it offer any incontrovertible evidence that Dr. Polish lied (either knowingly or innocently) in his declarations.

Finally, plaintiff's claim that Dr. Russell's declaration is perjurious is the weakest of all. Dr. Russell was employed by Citigroup Global Markets, Inc. and its predecessor entity from 1993 through 2007; during his tenure, he worked primarily on computer code that related to mortgage-backed securities (Declaration of Robert A. Russell, dated Feb. 12, 2007, annexed as Ex. 6 to the Jedrey Declaration). In his declaration, Dr. Russell generally describes his employment and his personal involvement in the testing of the ACE sequences and emphatically denies that defendants misappropriated ACE or any aspect of ACE. Plaintiff does not deny Dr. Russell's personal involvement in the testing he describes; rather it merely claims that Dr. Russell's declaration is false and that Russell allegedly installed computer code on the computer that was being used to test ACE that enabled defendants to surreptitiously copy ACE (Pl. 56(h) Mem. at 11-12). All that plaintiff cites in support of this contention are declarations from plaintiff's experts who do not have first-hand knowledge of what occurred during defendants' testing of ACE. As explained above, such conflicts do not, as a matter of law, establish perjury. Again, even if

17

plaintiff's declarations can be properly considered, they are insufficient, as a matter of law, to establish perjury. <u>United States v. Sanchez</u>, <u>supra</u>, 969 F.2d at 1415; <u>United States v. Bortnovsky</u>, <u>supra</u>, 879 F.2d at 33.

Thus, plaintiff's 56(h) motion is really just a mixture of discovery arguments that have already been heard and rejected and argument that defendants' summary judgment motion should be denied. There is no evidence that defendants have knowingly submitted false evidence or that they made their motion to delay the proceedings. Accordingly, plaintiff's motion for sanctions under Fed.R.Civ.P. 56(h) is denied.

B. Defendants' Cross
   <u>Motion for Sanctions</u>

Defendants have responded to plaintiff's 56(h) motion by cross-moving to strike the motion and for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent power.

Title 28 U.S.C. Section 1927 provides that

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The imposition of sanctions under Section 1927 is appropriate "only when there is a finding of conduct constituting or akin to bad faith." <u>Sakon v. Andreo</u>, 119 F.3d 109, 114 (2d Cir. 1997);

accord Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 591 (2d Cir. 2016); Konits v. Karahalis, 409 F. App'x 418, 423-24 (2d Cir. 2011) (summary order); State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 180 (2d Cir. 2004); In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000); Keller v. Mobil Corp., 55 F.3d 94, 99 (2d Cir. 1995); United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehouse-men and Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991).

Before imposing sanctions under 28 U.S.C. Section 1927, a court "must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000); see also Reach Music Publ'g, Inc. v. Protoons, Inc., 718 F. App'x 8, 10 (2d Cir. 2017) (summary order) (party seeking sanctions for bad faith conduct must meet a "demanding standard"); Sorenson v. Wolfson, 683 F. App'x 33, 37 (2d Cir. 2017) (summary order) ("An award of sanctions under this provision requires a showing that an 'attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" (citation omitted)); Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) ("[W]e hold today that an award made under § 1927 must be supported by a finding of bad faith . . .").

Although "[b]ad faith can be inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," Schlaifer Nance & Co. v. Estate of Warhol, supra, 194 F.3d at 338 (internal quotation marks omitted), the Court of Appeals has reversed the imposition of sanctions where "the Court's conclusory determination that [a] motion was filed in bad faith rested almost entirely on its lack of merit." Eisemann v. Greene, 204 F.3d 393, 397 (2d Cir. 2000). Section 1927 "should be construed narrowly and with great caution, so as not to 'stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.'" Mone v. Comm'r, 774 F.2d 570, 574 (2d Cir. 1985), quoting Eastway Construction Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985)

An award of sanctions under the Court's inherent power also requires a finding that the offending party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991). Sanctions under the Court's inherent power may also be imposed made where a litigant has perpetrated a fraud upon the Court. McMunn v. Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002) (Buchwald, D.J.) ("[A] fraud upon the court occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to

interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." (internal quotation marks omitted)).

"[T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is, as noted above, that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." Oliveri v. Thompson, supra, 803 F.2d at 1273; accord Enmon v. Prospect Capital Corp., 675 F.3d 138, 143-44 (2d Cir. 2012).

"When a lower court sanctions a litigant for bad faith, the court must outline its factual findings with 'a high degree of specificity.'" Huebner v. Midland Credit Mgmt., Inc., 897 F.3d 42, 53 (2d Cir. 2018), cert. denied, 139 S. Ct. 1282 (2019), quoting Virginia Props., LLC v. T-Mobile Northeast LLC, 865 F.3d 110, 113 (2d Cir. 2017). In addition, as noted above, there must be "clear evidence" of bad faith conduct. Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009). "The decision to issue sanctions under [either Section 1927 or the Court's inherent power] lies within this Court's broad discretion." United States v. Prevezon Holdings, Ltd., 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018) (Pauley, D.J.), citing Sorenson

v. Wolfson, 170 F. Supp. 3d 622, 634 (S.D.N.Y. 2016) (Koeltl, D.J.).

Although plaintiff's 56(h) motion lacks merit, I conclude that sanctions under either Section 1927 or the Court's inherent power are not warranted. Plaintiff's 56(h) motion was motivated by its belief that it is entitled to prevail in this litigation, and not to vex or oppress defendants; although plaintiff's belief is misguided and its motion meritless, there is no clear evidence that the motion was not motivated by an improper purpose. The principal ground asserted by defendants in support of their sanctions motion is that plaintiff's 56(h) motion was actually an attempt to reargue discovery issues. However, even where a litigant has been advised that its contemplated motion for reconsideration was not likely to succeed, sanctions are inappropriate in the absence of evidence that will support specific findings supporting the conclusion that the motion was made for an improper purpose. See Eisemann v. Greene, supra, 204 F.3d at 397.

A motion's merit or lack of merit is a matter of degree, and plaintiff's 56(h) motion is closer to the red end of the arc than the green end. Nevertheless, plaintiff's motion is not so meritless that I can find that it constitutes clear evidence of an improper purpose. Thus, defendants' motion for sanctions is denied.

IV.  Conclusion

      Accordingly, plaintiff's motion for sanctions pursuant to Fed.R.Civ.P. 56(h) is denied.  Defendants motion to strike plaintiff's 56(h) motion and for sanctions is also denied.  The Clerk of the Court is respectfully requested to mark Docket Items 313 and 317 closed.

Dated:  New York, New York
       September 4, 2019

                  SO ORDERED

                  HENRY PITMAN
                  United States Magistrate Judge

Copies transmitted to:

All Counsel