UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ADVANCED ANALYTICS, INC.,                  :
                                           :
       Plaintiff and Counterclaim-Defendant,    :        No. 04 Civ. 3531 (LTS) (SLC)
                                           :
              v.                           :
                                           :
CITIGROUP GLOBAL MARKETS, INC. f/k/a :
SALOMON SMITH BARNEY, INC., and THE :
YIELD BOOK INC., f/k/a SALOMON              :
ANALYTICS, INC.,                           :
                                           :
       Defendants and Counterclaim-Plaintiffs.    :
--------------------------------------------------------x


**MEMORANDUM OF LAW (I) IN OPPOSITION TO PLAINTIFF'S
MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE'S
ORDER GRANTING DEFENDANTS' MOTION TO STRIKE AND FOR
INJUNCTION AND ORDERS OF FEE SANCTIONS AND (II) FOR AN AWARD OF
<u>SANCTIONS AGAINST PLAINTIFF AND ITS COUNSEL</u>**


CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York  10006
(212) 225-2000

Attorneys for Defendants Citigroup Global Markets,
Inc. and The Yield Book Inc.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND AND PROCEDURAL HISTORY .................................................. 3

    **I.**    **THE COURT REJECTED PLAINTIFF'S CLAIMS OF DISCOVERY MISCONDUCT IN 2012** ........................................................ 3

    **II.**    **THE COURT SANCTIONED PLAINTIFF FOR SERVING AN UNTIMELY AND IMPROPER EXPERT DECLARATION IN SUPPORT OF ALLEGATIONS OF DISCOVERY MISCONDUCT** ........... 4

    **III.**    **THE COURT HAS REPEATEDLY REJECTED PLAINTIFF'S ATTEMPTS TO RAISE THE SAME BASELESS CLAIMS OF DISCOVERY MISCONDUCT** ........................................................... 4

    **IV.**    **THE COURT ISSUES THE CASE MANAGEMENT ORDER (REQUIRING PRE-MOTION CONFERENCES) AND THE FEE AWARD (CALCULATING THE AMOUNT PAYABLE PURSUANT TO THE 2014 SANCTIONS ORDER)** ............................................. 6

    **V.**    **PLAINTIFF SEEKS RECONSIDERATION OF THE CASE MANAGEMENT ORDER AND FEE AWARD** ................................. 7

ARGUMENT .......................................................................................................... 9

    **I.**    **PLAINTIFF'S MOTION FOR RECONSIDERATION IS UNTIMELY** ................................................................................... 9

    **II.**    **PLAINTIFF FAILS TO IDENTIFY ANY BASIS FOR RECONSIDERATION** ...................................................................... 11

        A.    Plaintiff Fails to Identify Any New Evidence to Justify Reconsideration .................................................................. 11

        B.    Plaintiff Fails to Identify Clear Error or Manifest Injustice to Justify Reconsideration .......................................................... 13

        C.    Plaintiff Should Be Required to Pay the Fee Award Immediately .......... 20

    **III.**    **PLAINTIFF'S FILING OF THIS FRIVOLOUS MOTION FOR RECONSIDERATION MERITS AN AWARD OF FEES AND COSTS** .............................................................................. 22

CONCLUSION ........................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Advanced Analytics, Inc. v. Citigroup Glob. Mkts.*,
    2019 WL 4193941 (S.D.N.Y. Sept. 4, 2019)...........................................................................6

*Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*,
    301 F.R.D. 47 (S.D.N.Y. 2014) ............................................................................................4

*Albanese v. Citicorp Vendor Fin., Inc.*,
    2006 WL 8440877 (E.D.N.Y. May 11, 2006) .....................................................................12

*Bmaddox Enterprises LLC v. Oskouie*,
    2018 WL 1229835 (S.D.N.Y. Mar. 6, 2018) .......................................................................14

*CFTC v. Wilson*,
    2016 WL 9632961 (S.D.N.Y. Nov. 2, 2016) ................................................................. 12-13

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)...............................................................................................................22

*Clinton v. Brown & Williamson Holdings, Inc.*,
    652 F. Supp. 2d 528 (S.D.N.Y. 2009)..................................................................................10

*Craig v. UMG Recordings, Inc.*,
    380 F. Supp. 3d 324 (S.D.N.Y. 2019)..................................................................................23

*de la Fuente v. DCI Telecommunications, Inc.*,
    269 F. Supp. 2d 237 (S.D.N.Y. 2003)..................................................................................21

*Enmon v. Prospect Capital Corp.*,
    675 F.3d 138 (2d Cir. 2012).................................................................................................22

*Estate of Davis v. Trojer*,
    287 F. Supp. 2d 455 (S.D.N.Y. 2003)..................................................................................24

*Fox v. Boucher*,
    794 F.2d 34 (2d Cir.1986)....................................................................................................24

*Gibbs v. Bank of America Corp.*,
    2011 WL 6009968 (E.D.N.Y. Nov. 28, 2011) ....................................................................14

*Hunt v. Enzo Biochem, Inc.*,
2007 WL 1346652 (S.D.N.Y. May 7, 2007) ........................................................10

*In re 60 E. 80th St. Equities, Inc.*,
218 F.3d 109 (2d Cir. 2000).................................................................................24

*In re Sendecky*,
315 F.3d 904 (8th Cir. 2003) ..............................................................................17

*Johnson & Johnson Consumer Companies, Inc. v. Aini*,
2009 WL 6055841 (E.D.N.Y. Dec. 1, 2009) .......................................................16

*Keller v. Mobil Corp.*,
55 F.3d 94 (2d Cir. 1995)......................................................................................23

*Knipe v. Skinner*,
999 F.2d 708 (2d Cir. 1993)..................................................................................20

*Lyda v. CBS Corp.*,
838 F.3d 1331 (Fed. Cir. 2016)............................................................................14

*McEarchen v. Urban Outfitters, Inc.*,
2014 WL 2506251 (E.D.N.Y. June 3, 2014) ................................................. 20-21

*McGee v. Dunn*,
940 F. Supp. 2d 93 (S.D.N.Y. 2013)....................................................................12

*McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*,
293 F. Supp. 3d 394 (S.D.N.Y. 2018)..................................................................10

*Microsoft Corp. v. Weidmann Elec. Tech. Inc.*,
2017 WL 3037587 (D. Vt. Jan. 3, 2017) .............................................................21

*Milltex Industries Corp. v. Jacquard Lace Co. Ltd.*,
55 F.3d 34 (2d Cir. 1995)......................................................................................14

*Milton Abeles, Inc. v. Farmers Pride, Inc.*,
2009 WL 1941326 (E.D.N.Y. July 7, 2009) ........................................................10

*Moates v. Barkley*,
147 F.3d 207 (2d Cir. 1998)..................................................................................15

*Moton v. Maplebear Inc.*,
2017 WL 5515943 (S.D.N.Y. Mar. 20, 2017) (McMahon, C.J.)...........................17

*Nat. Res. Def. Council, Inc., v. U.S. Food & Drug Admin.*,
   884 F. Supp. 2d 108 (S.D.N.Y. 2012) ................................................................................ 20-21

*New York v. Vacco*,
   80 F.3d 64 (2d. Cir. 2016) ....................................................................................................... 23

*PAB Aviation, Inc. v. United States*,
   2000 WL 1240196 (E.D.N.Y. Aug. 24, 2000) ........................................................................ 12

*Pentagen Technologies Intern. Ltd. v. United States*,
   172 F. Supp. 2d 464 (S.D.N.Y 2001) ..................................................................................... 22

*Richardson v. W.L. Gore Assocs., Inc.*,
   988 F. Supp. 753 (S.D.N.Y. 1997) ......................................................................................... 10

*Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of New Jersey*,
   894 F. Supp. 2d 288 (S.D.N.Y. 2012) ................................................................................... 13

*S.E.C. v. Daspin*,
   557 F. App'x 46 (2d Cir. 2014) .............................................................................................. 21

*S.E.C. v. Treadway*,
   354 F. Supp. 2d 311 (S.D.N.Y. 2005) ...................................................................................... 2

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*,
   194 F.3d 323 (2d Cir. 1999) .................................................................................................. 22

*Spinale v. United States*,
   277 F. App'x 108 (2d Cir. 2008) ........................................................................................... 17

*Sterling Promotional Corp. v. General Acc. Ins. Co. of New York*,
   86 F. App'x 441 (2d Cir. 2004) ......................................................................................... 13-14

*StreetEasy, Inc. v. Chertok*,
   730 F. App'x 4 (2d Cir. 2018) .......................................................................................... 14, 16

*U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Co.*,
   2007 WL 2327068 (S.D.N.Y. Aug. 13, 2007) ....................................................................... 20

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
   564 F.3d 110 (2d Cir. 2009) ............................................................................................. 21-22

*Youssef v. Halcrow, Inc.*,
   2011 WL 2693527 (S.D.N.Y. June 30, 2011) ............................................................. 8, 14-15

**Federal Statutes**

28 U.S.C. § 1927.................................................................................................22

**Other Authorities**

Fed. R. Civ. P. 11(c)(3)........................................................................................22

Fed. R. Civ. P. 37(b)(2)(C) ..................................................................................19

Fed. R. Civ. P. 72(a) ............................................................................................20

Local Civ. R. 6.1 ..................................................................................................17

Local Civ. R. 6.3 ....................................................................................................9

Defendants Citigroup Global Markets, Inc. and The Yield Book Inc. (collectively, the "Defendants"), respectfully submit this memorandum of law (I) in opposition to Advanced Analytics, Inc.'s ("Plaintiff" or "AAI") Motion for Reconsideration (ECF No. 423) (the "Motion") of the Court's (a) November 12, 2019 order (ECF No. 375) (the "Case Management Order"), and (b) December 5, 2019 opinion (ECF No. 389, as amended by ECF No. 410) (the "Fee Award" and, together with the Case Management Order, the "Orders"), calculating attorneys' fees in connection with a March 26, 2014 order awarding sanctions and striking the Fourth Declaration of Jianqing Fan (ECF No. 235) (the "2014 Sanctions Order") and (II) in support of the imposition of sanctions.

### PRELIMINARY STATEMENT[1]

The Motion for Reconsideration—which claims that two Orders of this Court should be vacated due to years' old, unfounded allegations of discovery misconduct and collusion between the parties' counsel, as well as a fundamental misreading of the law in this Circuit—should be denied. Specifically, the Motion seeks reconsideration of: (i) the Case Management Order, which requires parties to seek a pre-motion conference with the Court before filing requests for relief, and (ii) the Fee Award, which calculated the amount of attorneys' fees and costs due to Defendants pursuant to the 2014 Sanctions Order.

The Court first rejected Plaintiff's allegations of discovery misconduct in 2012—almost eight years ago. Since then, the Court and the District Court have rejected these allegations each of the many times Plaintiff has attempted to relitigate them, including as recently as a motion filed only two months ago. The Motion for Reconsideration is the latest attempt to relitigate these issues, and should similarly be rejected.

---

[1] Capitalized terms used in this preliminary statement have the meaning ascribed to them herein.

First, the Motion is untimely.  Although Local Rule 6.3 requires that a motion for reconsideration must be filed within fourteen days of the order at issue, Plaintiff waited nearly forty days before indicating its intent to seek reconsideration of the Case Management Order and nearly thirty days before indicating its intent to seek reconsideration of the Fee Award. Moreover, with respect to the Fee Award, Plaintiff's request focuses not on the mathematical calculation of fees—which the Court has explained was its sole function in issuing the Fee Award—but on the question of whether Magistrate Judge Pitman's awarding of fees to Defendants <u>nearly six years ago</u> was proper.

Second, the Motion comes nowhere near demonstrating that either of the Court's Orders merit reconsideration—an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."[2]  Indeed, the Motion relies almost exclusively on Plaintiff's claims of discovery misconduct and collusion, which, as noted above, have been reviewed and disposed of by this Court and the District Court multiple times. There is not a <u>single</u> new allegation in the Motion that could warrant a different result here.  To the extent Plaintiff claims this Court erred as a matter of law when issuing either of the Orders, it misreads both the Orders and the law.  Accordingly, the Court should deny Plaintiff's Motion.

The Court should also issue sanctions against Plaintiff and its counsel.  Plaintiff's course of conduct establishes that denial of its requests alone will not deter the repeated filing of motions with the same groundless claims or, consequently, the need for Defendants to continue incurring the expense of responding to Plaintiff's frivolous requests.

---

[2] *S.E.C. v. Treadway*, 354 F. Supp. 2d 311, 313 (S.D.N.Y. 2005).

## BACKGROUND AND PROCEDURAL HISTORY[3]

**I.   THE COURT REJECTED PLAINTIFF'S CLAIMS OF DISCOVERY MISCONDUCT IN 2012**

Fact discovery closed in this case in September 2007.  Order, July 9, 2007 (ECF No. 76) at 2.  Following the District Court's decision accepting in part the Report and Recommendation of Magistrate Judge Pitman, which recommended granting in part Defendants' motion for summary judgment, discovery was partially reopened to permit additional discovery with respect to Defendants' development and testing of relevant sequences.  *See* Order, Nov. 22, 2010 (ECF No. 124) at 5.  Following that decision, Defendants produced tens of thousands of testing and development files and made four witnesses available for deposition.  Plaintiff did not analyze these files and instead, after eighteen months and on the eve of the second close of discovery, sought further discovery.  *See* Pl.'s July 9, 2012 Letter (the "2012 Motion to Compel").  In the 2012 Motion to Compel, Plaintiff argued, among other things, that Defendants had produced "phony" sequences and that Plaintiff should be permitted to take additional discovery to show that an "ACE Theft Code" had been "secret[ly]" created to steal the ACE sequence during testing.[4]

Magistrate Judge Pitman rejected Plaintiff's allegations and denied the Motion to Compel, finding that "plaintiff is seeking to . . . pursue a theory that the defendant has produced fabricated evidence in discovery of which there seems to be really very, very little evidence, if any evidence."  Sept. 5, 2012 Hr'g Tr. (ECF No. 175) at 94:17-20.  The District Court affirmed Magistrate Judge Pitman's findings over the objection of Plaintiff.  *See* Order, Feb. 8, 2013 (ECF No. 214).

---

[3] Except where necessary for the Court's consideration of this Motion, Defendants will not repeat the general facts of this nearly sixteen-year-long case, which are detailed in Defendants' Local Rule 56.1 Statements.  *See* Defs.' L.R. 56.1 Stmt., Apr. 5, 2013.

[4] 2012 Motion to Compel at 18; *see also* Sept. 5, 2012 Hr'g Tr. (ECF No. 175) at 38:8-11, 90:19-22.

## II.   THE COURT SANCTIONED PLAINTIFF FOR SERVING AN UNTIMELY AND IMPROPER EXPERT DECLARATION IN SUPPORT OF ALLEGATIONS OF DISCOVERY MISCONDUCT

In April 2013, Defendants filed their second motion for summary judgment.[5]
Plaintiff's initial opposition attempted to resuscitate the arguments made in its unsuccessful 2012
Motion to Compel, principally relying on the Fourth Declaration of Dr. Jianqing Fan (the
"Fourth Fan Decl.").[6]  Defendants moved to strike the Fourth Fan Decl. on the grounds that it
repeated the same arguments Magistrate Judge Pitman had rejected in the 2012 Motion to
Compel, attempted to revive a previously-stricken report by Dr. Fan, and because it violated a
prior scheduling order and Fed. R. Civ. P. 26(a).[7]  On March 26, 2014, Magistrate Judge Pitman
granted the motion to strike, and, among other things, ordered that the Fourth Fan Decl. could
not be used for any merits purposes and was "grossly untimely" to the extent used to support a
motion for sanctions.  *See* 2014 Sanctions Order at 35.  Magistrate Judge Pitman also awarded
attorneys' fees and costs as a sanction for Plaintiff's violation of Fed. R. Civ. P. 16 and 37.  *Id.*
The District Court affirmed the 2014 Sanctions Order over Plaintiff's objections.  *See Advanced
Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 47 (S.D.N.Y. 2014).  On April 15,
2014, Defendants submitted an application in support of the amount of attorneys' fees and costs
they were entitled to recover pursuant to the 2014 Sanctions Order (the "Fee Application").[8]

## III.   THE COURT HAS REPEATEDLY REJECTED PLAINTIFF'S ATTEMPTS TO RAISE THE SAME BASELESS CLAIMS OF DISCOVERY MISCONDUCT

After Magistrate Judge Pitman struck the Fourth Fan Decl., Plaintiff's
then-current counsel, including Todd Collins of Berger Montague P.C. (Plaintiff's "Prior

---

[5] On September 4, 2019, Magistrate Judge Pitman issued a Report and Recommendation to the District Court recommending that Defendants' motion be granted.  *See* Report and Recommendation, Sept. 4, 2019 (ECF No. 340). Plaintiff filed an Objection, Oct. 28, 2019 (ECF No. 390), and Defendants filed an Opposition to Plaintiff's Objection, Dec. 19, 2019 (ECF No. 392).  The Objection is currently pending before the District Court.

[6] *See* Pl.'s Opp. to Defs.' Motion for Summary Judgment, June 6, 2013 (ECF No. 219).

[7] *See* Defs.' Motion to Strike the Fourth Fan Decl., July 10, 2013.

[8] Defs.' Application, Apr. 15, 2014 (ECF No. 242); Pl.'s Opp. to Defs.' Application, May 5, 2014 (ECF No. 246).

4

Counsel"), sought to withdraw. *See* Order, Mar. 4, 2015 (ECF No. 263). In a January 4, 2017

letter to the Court, Plaintiff's principal, Dr. Xiaolu Wang, claimed that Plaintiff's Prior Counsel

had colluded with defense counsel to thwart Plaintiff's efforts to win its case, including by

"framing" Plaintiff for contempt by filing the Fourth Fan Decl. for an improper purpose. *See* Dr.

Wang's Jan. 4, 2017 Letter. Plaintiff repeated these allegations in a May 31, 2017 letter to the

Court. *See* Dr. Wang's May 31, 2017 Letter. In both letters, Plaintiff's sole "evidence" of the

alleged "collusion" was the uncontroversial fact that, in accordance with the Code of Conduct for

United States Judges which restricts *ex parte* communications between judges and parties,[9] Prior

Counsel and Defendants' counsel jointly called Magistrate Judge Pitman to inform him that

Plaintiff intended to withdraw its motion for sanctions. In granting the motion, Magistrate Judge

Pitman noted that, "based on what [he had] been able to observe," he was "not aware of any

evidence supporting or even suggesting that claims made by plaintiff's principal that counsel

have colluded with adverse counsel." Order, May 31, 2017 (ECF No. 275) at 2 n.2.[10]

Plaintiff's new counsel (its eighth set of lawyers in this matter) appeared in July

2017, and sixteen months later, filed a motion under Fed. R. Civ. P. 56(d) (ECF No. 289) (the

"Rule 56(d) Motion"). Like Plaintiff's prior motions, the Rule 56(d) Motion repeated the same

baseless allegations of discovery misconduct contained in the 2012 Motion to Compel and the

Fourth Fan Decl., and also re-raised Plaintiff's 2017 allegations of collusion. *See* Rule 56(d)

Motion at 21. Defendants moved to strike the Rule 56(d) Motion, citing the many instances in

which Plaintiff had raised—and the Court had rejected—the same claims. *See* Motion to Strike

Rule 56(d) Motion, Dec. 6, 2018 (ECF No. 293) at 5-7. Magistrate Judge Pitman denied the

---

[9] *See* Code of Conduct for United States Judges, Canon 3.A(4).

[10] Plaintiff's claim that this finding in the May 31, 2017 Order should be discounted by the fact that it may have been issued before Magistrate Judge Pitman received Dr. Wang's May 31, 2017 letter ignores that Dr. Wang's letter was merely a rehash of the outlandish allegations made in his January 4, 2017 letter.

Rule 56(d) Motion, finding that its allegations of discovery misconduct "were addressed in 2012 and 2013 by both myself and by Judge Swain," that the disagreement between Plaintiff and its Prior Counsel was not evidence of any collusion between defense counsel and Prior Counsel, and that the Rule 56(d) Motion was untimely.  May 28, 2019 Hr'g Tr. (ECF No. 381) at 13:20-23, 16:2-4, 53:23-55:18.

On June 26, 2019, Plaintiff repeated the same baseless allegations of discovery misconduct and collusion, including all of the allegations raised in the 2012 Motion to Compel, the Fourth Fan Decl., and the Rule 56(d) Motion, in the form of a motion seeking relief under Fed. R. Civ. P. 56(h) (ECF No. 313) (the "Rule 56(h) Motion").  Defendants moved to strike the Rule 56(h) Motion on the ground that it was a procedurally improper attempt to again relitigate Plaintiff's allegations of discovery misconduct and collusion.  *See* Motion to Strike Rule 56(h) Motion, July 11, 2019 (ECF No. 318).  On September 4, 2019, Magistrate Judge Pitman denied the Rule 56(h) Motion, finding, among other things, that the disagreements between Plaintiff and Prior Counsel did "not imply that the attorney is colluding with the other side" and that there was "no basis to revisit" Plaintiff's claims of discovery misconduct, which the Court had previously rejected.  *See Advanced Analytics, Inc. v. Citigroup Glob. Mkts.*, 2019 WL 4193941 (S.D.N.Y. Sept. 4, 2019) (the "Rule 56(h) Opinion").[11]

## IV.   THE COURT ISSUES THE CASE MANAGEMENT ORDER (REQUIRING PRE-MOTION CONFERENCES) AND THE FEE AWARD (CALCULATING THE AMOUNT PAYABLE PURSUANT TO THE 2014 SANCTIONS ORDER)

During the pendency of Plaintiff's objection to the Rule 56(h) Opinion, Plaintiff again attempted to raise the allegations of discovery misconduct and collusion in an attempt to

---

[11] On October 28, 2019, Plaintiff filed objections to the Rule 56(h) Opinion, and on December 19, 2019, Defendants filed its opposition to Plaintiff's objections.  *See* Pl.'s Obj. to Rule 56(h) Opinion, Oct. 28, 2019 (ECF No. 361); Defs.' Opp. to Pl.'s 56(h) Obj., Dec. 19, 2019 (ECF No. 394).  The Objection is currently pending before the District Court.

forestall the Court's consideration of the Fee Application.  *See* Pl.'s Motion to Defer Fee Application, Nov. 8, 2019 (ECF No. 366) (the "Motion to Defer").  Defendants moved to strike the Motion to Defer on the grounds that it was untimely and premised on previously rejected claims of discovery misconduct and defamatory allegations of collusion against Defendants and Plaintiff's Prior Counsel.  In support of the Motion to Strike, Defendants detailed the multiple prior instances in which Plaintiff had repeatedly raised and the Court had rejected the same claims of misconduct and collusion, in many cases for at least the sixth time.  *See* Defendants' Motion to Strike, Nov. 11, 2019 (ECF No. 370) (the "Motion to Strike").[12]  On November 12, the Court denied and struck from the record Plaintiff's Motion to Defer.  Because of Plaintiff's refusal to cease litigating final orders, the Court issued an order requiring the parties to meet and confer and seek a pre-motion conference before seeking further relief from the Court.  *See* Case Management Order.

On December 5, 2019, this Court granted the Fee Application in part, calculating $57,270.91 in recoverable fees and costs and ordering Plaintiff to pay by Monday, January 6, 2020.  *See* Fee Award.  As the Court explained, its purpose in issuing the Fee Award was to engage in a "mathematical calculation" of the attorneys' fees and costs payable to Defendants, rather than to revisit the sanctions imposed by the 2014 Sanctions Order, which was a decision previously "made by Judge Pitman."  Jan. 15, 2020 Hr'g Tr. (ECF No. 421) at 9:9-16.

## V.    PLAINTIFF SEEKS RECONSIDERATION OF THE CASE MANAGEMENT ORDER AND FEE AWARD

On December 19, 2019, Plaintiff filed a letter requesting that the portion of the Case Management Order requiring the parties to have a pre-motion conference before seeking

---

[12] That Defendants have previously sought the imposition of a pre-motion conference requirement does not, as Plaintiff disingenuously claims, render the Motion to Strike an untimely motion for reconsideration.  *See* Motion at 24 (claiming the Motion to Strike is a motion to reconsider Defendants' motion to strike the Rule 56(h) Motion).  Plaintiff's filing of the Motion to Defer, which continued Plaintiff's repetition of rejected factual allegations and meritless legal arguments, provided a new basis on which to seek a pre-motion conference requirement.

relief from the Court be stricken on the ground, among others, that the requirement constituted

an "anti-filing" injunction (ECF No. 394) (the "Dec. 19 Letter").  Defendants responded by letter

dated December 27, 2019 (ECF No. 400), arguing that Plaintiff's contemplated motion to strike

would be an untimely motion for reconsideration—the Case Management Order having been

entered thirty-seven days prior to the Dec. 19 Letter.  At a January 3, 2020 conference, the Court

expressed its disagreement with Plaintiff's position on the Case Management Order, citing

Second Circuit case law holding that "pre-motion letter and conference requirements . . . are not

an injunction."  Jan. 3, 2020 Hr'g Tr. (ECF No. 415) at 10:8-12 (citing *Milltex Industries Corp.*

*v. Jacquard Lace Co. Ltd.*, 55 F.3d 34 (2d Cir. 1995); *Youssef v. Halcrow, Inc.*, 2011 WL

2693527 (S.D.N.Y. June 30, 2011)).  Unpersuaded by the Court's admonition, Plaintiff requested

a briefing schedule for its anticipated motion, which the Court entered.  *See* Order, Jan. 3, 2020

(ECF No. 406).

On January 3, 2020, Plaintiff filed another letter, this time purporting to seek

vacatur of the Case Management Order and Fee Award (ECF No. 402) (the "Jan. 3 Letter") and

attaching a twenty-five page motion for reconsideration, as well as an eight-page appendix.

Among other claims in the Jan. 3 Letter, Plaintiff argued that Defendants should not have been

awarded any fees, recounting (again) Plaintiff's repeatedly litigated claims of discovery

misconduct and collusion.  *See* Jan. 3 Letter at 2-3.[13]  In response, Defendants noted that

Plaintiff's arguments were not properly raised in connection with the Fee Award, but were

arguments to reconsider the 2014 Sanctions Order and as such were both untimely and meritless.

Defs.' Letter, Jan. 8, 2020 (ECF No. 411).  At a January 15, 2020 conference, the Court observed

that its Fee Award was "more of a mathematical calculation," and that while it would entertain

---

[13] The Court entered an order staying Plaintiff's payment obligation on January 8, 2020.  *See* Order, Jan. 9, 2020
(ECF No. 414).

arguments regarding that calculation, "revisiting the fee award all together," i.e., Magistrate Judge Pitman's decision to award sanctions in the 2014 Sanctions Order, was "not [the Court's] charge." Jan. 15, 2020 Hr'g Tr. (ECF No. 421) at 9:11-21. Plaintiff nevertheless proceeded to file a combined motion for reconsideration of both the Orders,[14] which does not challenge the Court's mathematical calculation of the Fee Award.[15]

## **ARGUMENT**

## I.    **PLAINTIFF'S MOTION FOR RECONSIDERATION IS UNTIMELY**

Local Rule 6.3 requires that motions for reconsideration be filed within fourteen days of the order at issue. *See* Local Civ. R. 6.3. Plaintiff did not seek reconsideration of the Orders within that prescribed time period. Instead, Plaintiff first requested a pre-motion conference to discuss reconsideration of the Case Management Order on December 19, 2019, thirty-seven days after the Case Management Order was entered. *See* Dec. 19 Letter. Similarly, Plaintiff submitted its request for a pre-motion conference with respect to its request to reconsider the Fee Award on January 3, 2020, twenty-nine days after the Fee Award was entered. *See* Jan 3. Letter. Moreover, as discussed below, Plaintiff's request for reconsideration of the Fee Award is, in reality, a request to reconsider the 2014 Sanctions Order. *See* Motion at 19-20 (arguing that the Fee Award should be vacated for four reasons, none of which address the substance of the Fee Award); *id.* at 25 ("[T]he [2014 Sanctions] Order . . . should be vacated");

---

[14] *See* Order, Jan. 15, 2020 (ECF No. 420) (setting briefing scheduled for same).

[15] At approximately 7pm ET on February 6, 2020, Plaintiff filed a document titled "Declaration of Xiaolu Wang, Ph.D. in Support of his Motion for Leave to Intervene in Opposition to Plaintiff's Counsel's Motion to Withdraw (Fourth Declaration of Xiaolu Wang, Ph.D)," dated April 23, 2015 (the "Fourth Wang Decl."). This document has not been previously served on Defendants and it is not clear when or if it was previously provided to the Court. Plaintiff has not stated the reason it filed this nearly five-year-old declaration, nor has it responded to Defendants' inquiries with respect to the purpose of the filing. Notably, Plaintiff's notice of motion sets out the evidence the Motion for Reconsideration relies upon and contains no reference to the Fourth Wang Decl. Although the Motion for Reconsideration refers to a "Wang 4th," that reference is accompanied by a citation to a May 31, 2017 letter from Dr. Wang to the Court. *See* Motion at 7 (referring to allegedly new evidence contained "in Ex. 1, and Ex. 2 of the Wang 4th and 5th Decl, (ECF 276)"). For the avoidance of doubt, Defendants reserve all rights in respect of the Fourth Wang Decl. including, without limitation in respect of Plaintiff's filing of, and any purported use of, the Declaration.

9

*see also infra* at 17-19.  Not only is this request nearly six years too late, it represents Plaintiff's underline attempt to avoid the award of fees and costs granted by the 2014 Sanction Order.[16]

Plaintiff's failure to seek timely reconsideration of the Orders is an independent basis on which to deny the Motion.  *See, e.g.*, *McGraw-Hill Global Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 397 (S.D.N.Y. 2018) ("As numerous cases from this Circuit have held, the untimeliness of a motion for reconsideration is reason enough to deny the motion."); *Hunt v. Enzo Biochem, Inc.*, 2007 WL 1346652, at *1 (S.D.N.Y. May 7, 2007) (denying motion to reconsider as untimely where, pursuant to Local Rule 6.3, plaintiffs had until December 26 to file the motion, but waited until January 3 to do so).  This is especially true here, where Plaintiff has frequently failed to meet filing deadlines and has been sanctioned for doing so.  *See, e.g.*, Order, Apr. 11, 2008 (ECF No. 102) at 1 (noting that Plaintiff's delay in making timely filings "has been a recurring problem in this action"); 2014 Sanctions Order at 16 (striking the Fourth Fan Decl. because "it is un-timely under [a] scheduling Order" and served in violation of Fed. R. Civ. P. 26(a)(2)).

That Plaintiff has styled the motion as being under Fed. R. Civ. P. 54(b) ("Rule 54(b)") does not alter this conclusion.  Requests for relief under Rule 54(b) must be made within the time period set out in Local Rule 6.3, except in the limited circumstances "when justice so requires."  *See, e.g.*, *Clinton v. Brown & Williamson Holdings, Inc.*, 652 F. Supp. 2d 528, 530 (S.D.N.Y. 2009).  This narrow exception applies (1) where there was a subsequent change in the law, (2) based on the availability of new evidence, or (3) where there exists the need to correct a clear error or to prevent manifest injustice.  *See Richardson v. W.L. Gore Assocs., Inc.*, 988 F.

---

[16] *See* Motion at 25 (claiming that "it is manifested injustice to reward the master mind of the co-conspirators while to punish the victim of their conspiracy and collusion"); Motion to Defer at 17 (seeking to defer the determination of the Fee Award); *See generally* Pl.'s Obj. to Rule 56(h) Opinion, Oct. 28, 2019 (ECF No. 361) (objecting to the denial of the Rule 56(h) Motion, which sought vacatur of the 2014 Sanctions Order); Rule 56(h) Motion (claiming discovery misconduct and attorney collusion).

Supp. 753, 755 (S.D.N.Y. 1997); *see also Milton Abeles, Inc. v. Farmers Pride, Inc.*, 2009 WL

1941326, at *1 n.1 (E.D.N.Y. July 7, 2009) (noting that Rule 54(b) may only be applied in the

"infrequent harsh case that presents a danger of hardship or injustice").  As explained below,

Plaintiff cannot satisfy any of these bases, which precludes it from claiming the Motion should

be considered despite being untimely under Local Rule 6.3.

## II.   PLAINTIFF FAILS TO IDENTIFY ANY BASIS FOR RECONSIDERATION

Even if Plaintiff's Motion were timely—which it is not—it would fail on the merits.

Plaintiff does not and cannot demonstrate, as it must, that any "new" evidence exists or that

"clear error" or "manifest injustice" justifies reconsideration of either of the Orders.[17]

### A.   Plaintiff Fails to Identify Any New Evidence to Justify Reconsideration

Although Plaintiff uses the term "new evidence" nearly thirty times in its Motion,

it fails to identify what "new evidence" has been allegedly uncovered since the Court's prior

denials of Plaintiff's groundless theories of discovery misconduct in 2012, 2013, 2017, and 2019,

much less since entry of the Orders.  *See generally* Motion.  Instead, it identifies the same claims

of misconduct and collusion that this Court and the District Court have repeatedly rejected since

at least 2017, and in many cases since at least 2012.[18]  Indeed, Plaintiff claims that the "new

evidence" required to meet the Rule 54(b) standard is "contained in the Fan 4th and Wang 6th

Decls" which <u>were filed in 2014 and 2018</u>, respectively—well before the Orders were issued.

Neither is "new."  Plaintiff claims that the Sixth Wang Decl. and the Fourth Fan Decl. should be

considered "new" because the Court has not specifically addressed the documents in its prior

orders.  *See* Motion at 9.  But, Plaintiff ignores that in rejecting the motions that the Sixth Wang

---

[17] The Motion does not claim any "subsequent change in the law" since the Court's issuance of the Orders.

[18] *See supra* at 3-6.

Decl. and Fourth Fan Decl. supported, the Court rejected the factual allegations they contain. *See supra* at 4.

Plaintiff also falsely claims that the Motion to Strike contains a "new" admission—i.e., that Defendants and Plaintiff jointly called the Court in 2013 to inform the Court that Plaintiff would be withdrawing the June 17, 2013 Letter.  Plaintiff refers to this as a "secret" call that demonstrates there was collusion between counsel.  *See, e.g.*, Motion at 12-13. As explained above, the call in question was made in compliance with the Code of Conduct for United States Judges, which generally prohibits *ex parte* communications.[19]  Moreover, the fact of the joint call cannot be "new," because Magistrate Judge Pitman was well aware of the call when he rejected Plaintiff's attempts to use claims of collusion to seek belated relief in 2019. *See supra* at 5 (recounting denials of the Rule 56(d) and Rule 56(h) Motions).

The fact that the allegations "the [P]laintiff argues this Court overlooked" have been repeatedly addressed by the Court not only demonstrates that the Motion fails to "point to any new evidence . . . that would alter this Court's original finding," *McGee v. Dunn*, 940 F. Supp. 2d 93, 105 (S.D.N.Y. 2013), it provides an independent basis on which the Court can, and should, deny the Motion.  *See, e.g.*, *PAB Aviation, Inc. v. United States*, 2000 WL 1240196, at *1 (E.D.N.Y. Aug. 24, 2000) ("Because [movant's] motion involves only reformulations of arguments already considered and rejected, reconsideration is not warranted."); *cf. Albanese v. Citicorp Vendor Fin., Inc.*, 2006 WL 8440877, at *1 (E.D.N.Y. May 11, 2006) (denying motion for reconsideration as untimely and without merit; motions for reconsideration are not "a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion"); *see also CFTC v. Wilson*, 2016 WL 9632961, at *1 (S.D.N.Y. Nov. 2,

---

[19] *See* Code of Conduct for United States Judges, Canon 3.A(4).

2016) (Under Rule 56(b), "a court must be mindful that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'").

B.  Plaintiff Fails to Identify Clear Error or Manifest Injustice to Justify Reconsideration

The Motion does not meet the high bar of establishing that either of the Orders are based upon "clear error" or would result in "manifest injustice."  Relief under Rule 54(b)'s clear error or manifest injustice prongs requires that a movant meet the "highly demanding standard" of "point[ing] to controlling decisions or data that the court overlooked."  *CFTC*, 2016 WL 9632961, at *1; *see also Rockland Exposition, Inc. v. Alliance of Automotive Service Providers of New Jersey*, 894 F. Supp. 2d 288, 339 (S.D.N.Y. 2012) (courts are "loathe" to revise orders under Rule 54(b) except under "extraordinary circumstances").  Here, Plaintiff's reliance on previously rejected theories of discovery misconduct and collusion, its fundamental misreading of the Case Management Order and applicable law, and its arguments regarding an irrelevant dispute between Plaintiff and its Prior Counsel come nowhere near meeting its burden.

1.  *Plaintiff Fails to Identify Any Clear Error or Manifest Injustice in the Court's Decision to Enter the Case Management Order*

The Court's Case Management Order extends the Court's Individual Rule of Practice II.C to all motions and parties, requiring that "any party seeking to file a discovery-related motion first meet and confer with the opposing party and, if a dispute remains, to file a letter motion requesting a conference with the Court."  Individual Rule of Practice of Hon. Sarah L. Cave II.C.2; *see also* Case Management Order at 2.

The Case Management Order was issued pursuant to the Court's power to control the conduct of parties before it.  It is well established that Courts have the inherent power to control their dockets.  *See Sterling Promotional Corp. v. General Acc. Ins. Co. of New York,* 86

13

F. App'x 441, 442 n.1 (2d Cir. 2004) (noting that District Courts "have inherent power to control proceedings"); *Bmaddox Enterprises LLC v. Oskouie*, 2018 WL 1229835, at *4 (S.D.N.Y. Mar. 6, 2018) (recognizing courts' broad, inherent power "to control the disposition of the causes on its own docket with economy of time and effort for itself, for counsel, and for litigants").  This power includes the ability to set individual rules of practice, which govern the manner in which parties litigate before the Court, including before Magistrate Judges.  *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1341 (Fed. Cir. 2016) (affirming denial of leave to amend pursuant to Judge Caproni's individual rules, finding "no reason to disturb the district court's application of its own internal rules, which fall within its broad power to control its docket"); *Gibbs v. Bank of America Corp.*, 2011 WL 6009968, at *3 (E.D.N.Y. Nov. 28, 2011) (approving a Magistrate Judge's pre-motion conference requirements); *see also StreetEasy, Inc. v. Chertok*, 730 F. App'x 4, 6 (2d Cir. 2018) (approving pre-motion letter individual rule).  The Second Circuit has endorsed the uncontroversial practice of requiring parties to meet and confer with their adversaries and to participate in a conference prior to formal motion practice.  *See Milltex Industries Corp.*, 55 F.3d at 39 (noting that "it is within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion"); *Youssef*, 2011 WL 2693527, at *1-2 (noting that the pre-motion conference requirement implements the goals of Fed. R. Civ. P. 1 and 16, and that the "pre-motion conference requirement 'may serve the useful purpose of narrowing and resolving conflicts between the parties and preventing the filing of unnecessary papers'").  The Case Management Order contains the exact requirements approved by the Second Circuit (and routinely used in this District).  *See* Case Management Order at 2. And it was particularly appropriate in this case because Plaintiff has repeatedly filed frivolous

requests for relief based on repeatedly rejected factual allegations and unsupported legal theories. *See supra* at 3-6; *see also* Motion to Strike at 2-6.

Plaintiff is wrong that the Case Management Order is an "anti-filing injunction." *See, e.g.*, Motion at 9, 20, 21-23.  An "anti-filing" injunction constitutes a prohibition from "filing, bringing or otherwise instigating any action in the federal court" without prior approval. *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998).  By contrast, the Case Management Order <u>does not preclude any filings at all</u>, but rather imposes reasonable prerequisites intended to facilitate negotiation and judicial efficiency prior to filing.  *See* Case Management Order at 2.[20] As the Second Circuit has explained, "[t]he letter and conference requirement does not impermissibly foreclose the filing of a motion," rather, it "gives the parties the opportunity to air these matters with the Court before spending the client's resources on submitting a pointless motion."  *Youssef*, 2011 WL 2693527, at *1 (citing *Eisenmann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000)).

That Defendants noted for the Court that other courts have ordered more restrictive relief then pre-motion conferences and letters, *see* Motion at 19, is irrelevant to consideration of whether the Case Management Order constitutes an anti-filing injunction. Contrary to Plaintiff's misleading claim, the Motion to Strike did not "specifically request[ ] that this Court 'enjoin' the Plaintiff from filing new motions."[21]  *Id*.  Quite the opposite.  As the Motion to Strike makes clear, Defendants requested "that the Court extend this Individual Rule of Practice [II(C)(2)] to any further request for relief from Plaintiff."  Motion to Strike at 15.  In fact, the term "enjoin" appears only once in the Motion to Strike—in a parenthetical explaining

---

[20] Plaintiff appears to acknowledge that the modest pre-motion requirements of the Case Management Order cannot be analogized to the requirements at issue in *Moates*, given that the Motion abandons Plaintiff's previous reliance on *Moates*, a case cited heavily in Plaintiff's pre-motion letter.  *See* Dec. 19 Letter at 2-3.

[21] Because the Case Management Order is not an anti-filing "injunction," Plaintiff's argument regarding its views of the authority of a Magistrate Judge to issue injunctions necessarily fails.  *See supra* at 13-14.

15

that courts in this District "have ordered <u>even more restrictive relief</u>" than Defendants' requested extension of the Court's Individual Rule of Practice to all motions.  *Id.* (emphasis added).

Moreover, to the extent the Motion claims that the Court's pre-motion process impermissibly infringes on its ability to seek relief from the Court, Motion at 22, that claim is belied by the course of this matter since entry of the Case Management Order.  Nothing about the Case Management Order or the pre-motion process it requires prevented Plaintiff from seeking the relief requested by the Motion.  The Court has been clear that it "can't preclude [Plaintiff] from filing a motion if [it] wish[es]."  Jan. 3, 2020 Hr'g Tr. (ECF No. 415) at 11:17-18.[22]

Faced with no credible basis to challenge the relief granted by the Case Management Order, Plaintiff resorts to attacking the process by which the Court entered the Order, arguing that the Court "failed to give Plaintiff an opportunity to respond" to the Motion to Strike the Motion to Defer.  Motion at 22.  The Court's rejection and striking of the Motion to Defer were entirely appropriate.

During the November 12, 2019 hearing, the Court heard argument on Plaintiff's Motion to Defer and Defendants' Motion to Strike the Motion to Defer, which the Court construed as "essentially in opposition and request for counter relief to" the Motion to Defer. Nov. 12, 2019 Hr'g Tr. (ECF No. 376) at 12:17-19.  Determining that Plaintiff's request was without merit, the Court denied the Motion to Defer and granted-in-part Defendants' Motion to Strike.  *See* Case Management Order.  There is no basis for Plaintiff's claim that the Court erred by striking "Plaintiff's pleading and fail[ing] to give Plaintiff an opportunity to respond as

---

[22] This is not to suggest that failure to comply with the Court's Order imposing pre-motion filing requirements is without consequence, *see, e.g.*, *Johnson & Johnson Consumer Companies, Inc. v. Aini*, 2009 WL 6055841, at *11 (E.D.N.Y. Dec. 1, 2009), nor that the Court cannot, where appropriate, convert the parties' correspondence into a fully briefed motion.  *See StreetEasy, Inc*, 730 F. App'x at 6.

provided by L.R. 6.1." Motion at 22.[23]  Local Rule 6.1 does not confer rights with respect to motion practice, but merely sets out the generally applicable deadlines by which briefs must be filed.  *See* Local Civ. R. 6.1.  The Court's conversion of the Motion to Strike to an opposition with a request for counter relief, and its issuance of a decision prior to any reply brief from Plaintiff, was well within its discretion, including its discretion to hear and deny motions *sua sponte.  See, e.g.*, *In re Sendecky*, 315 F.3d 904, 906 (8th Cir. 2003) (affirming a lower court's denial of a motion prior to the filing of a reply brief).[24]  Nor can Plaintiff credibly assert that it suffered any prejudice as a result of the procedure by which the Motion to Defer was denied—as the Motion for Reconsideration makes clear, Plaintiff does not, because it cannot, identify any law or facts that this Court overlooked in connection with that ruling.

2.    *Plaintiff Fails to Identify Any Clear Error or Manifest Injustice in the Court's Decision to Enter the Fee Award*

Plaintiff does not even attempt to challenge the Court's calculation of the attorneys' fees and costs awardable pursuant to the 2014 Sanctions Order, which the Court has already explained was its limited charge with respect to the Fee Application.  Instead, Plaintiff's allegations regarding the Fee Award center on untimely arguments regarding the 2014 Sanctions Award and irrelevant, false allegations that Defendants' Motion to Strike contained misrepresentations.  None of those allegations justify the relief Plaintiff seeks.

Plaintiff's first argument, that it should be excused from paying the Fee Award because the 2014 Sanctions Order was "procured" by a so-called "scheme" to deceive the Court

---

[23] Because the Court is entitled to rule on motions in advance of replies, if any, Plaintiff's complaints that it did not have sufficient time to review the Motion to Strike are irrelevant and, in any event, Plaintiff never requested an adjournment of the hearing or asked the Court to defer ruling on the Motion to Strike and was fully capable of addressing Defendants' argument that the Motion to Defer merely repeated previously rejected arguments.

[24] *See Moton v. Maplebear Inc.*, 2017 WL 5515943, at *2 (S.D.N.Y. Mar. 20, 2017) (McMahon, C.J.) (*sua sponte* denial of a "motion to reconsider/vacate" a prior order because, *inter alia*, the motion was untimely under Local Rule 6.3); *cf. Spinale v. United States*, 277 F. App'x 108, 109 (2d Cir. 2008) (affirming decision to deny motion *sua sponte* without waiting for a response or convening a hearing).

and through collusion with Plaintiff's Prior Counsel, is both baseless and irrelevant. *See, e.g.*, Motion at 6. As discussed above, Plaintiff's collateral attack on the 2014 Sanctions Order is nearly six years too late—an error that alone justifies rejection of the Motion. The Court has also ruled repeatedly, based on the same evidence before the Court now, that Plaintiff's allegations of collusion and misconduct have no basis in fact. *See supra* at 4-6. Plaintiff's claim that the Fee Award is "a fruit of the poisonous tree," Motion at 6, is therefore wrong and, in any event, irrelevant to whether the Court correctly carried out its charge to conduct a "mathematical calculation" regarding the reasonableness of the Fee Application. The Court indisputably did so.

Plaintiff next argues that the Court should vacate the Fee Award because it was the result of alleged misrepresentations made by Defendants in the Motion to Strike. Motion at 24. This allegation is likewise both baseless and irrelevant to Plaintiff's request for reconsideration of the Fee Award.

First, Plaintiff argues that Defendants failed to disclose the fact that they had previously moved to strike Plaintiff's Rule 56(d) Motion as well as its Rule 56(h) Motion, and that, because both of Plaintiff's motions were denied on their merits, the motions to strike were moot and therefore denied. *See, e.g.*, Motion at 9, 17. In fact, the Motion to Strike expressly references both motions. *See* Motion to Strike at 5 (referencing Defendants' motions to strike the Rule 56(d) and Rule 56(h) Motions and the Court's denial of both of Plaintiff's Motions). In any event, the disposition of Plaintiff's Rule 56(d) and Rule 56(h) Motions, and Defendants' motions to strike them, is plain from the record and irrelevant to the issues that were raised in the Motion to Strike or the Court's consideration of the Fee Application.

Second, Plaintiff claims that Defendants' motions to strike the Rule 56(d) and 56(h) Motions were filed in order to avoid responding to the substance of Plaintiff's allegations

of discovery misconduct and collusion, and that Defendants "have never responded substantively" to Plaintiff's allegations. *See, e.g.*, Motion at 18. Plaintiff is wrong: Defendants have categorically denied Plaintiff's specious allegations every time they have been raised. *See, e.g.*, Motion to Strike at 11 (stating that "Plaintiff's claims of civil and criminal liability are false, defamatory and based on rejected theories and irrelevant law"); May 28, 2019 Hr'g Tr. (ECF No. 381) at 23:7-14 ("There is simply no evidence of any collusion between defendants [and] prior counsel. No collusion occurred."); Defs.' Jan. 10, 2017 Letter at 1 (Defendants sought the dismissal of Plaintiff's claims "through the provision of undisputed evidence and unrebutted legal arguments, not through any improper means"); *see also* Defs.' July 8, 2019 Letter at 3 (citing examples of Defendants' prior rejection of Plaintiff's Claims); Defs.' L.R. 56.1 Reply Stmt., Feb. 23, 2015 (ECF No. 262) (refuting Plaintiff's claims of discovery misconduct).[25]

Finally, Plaintiff argues that the Court should hold its Prior Counsel entirely responsible for the Fee Award or institute an investigation into the apparent disagreement between Plaintiff and its Prior Counsel. *See* Motion at 25.[26] The 2014 Sanctions Order assigns liability to both Plaintiff <u>and</u> its counsel. *See* 2014 Sanctions Order at 37.[27] Plaintiff does not, and cannot, suggest that the Court lacked authority to sanction both Plaintiff as well as its counsel. *See* 2014 Sanctions Order at 13; *see also* Fed. R. Civ. P. 37(b)(2)(C) (authorizing the

---

[25] Most recently, Defendants have denied any allegations of discovery misconduct or attorney collusion in its opposition to Plaintiff's objections to the Rule 56(h) Opinion, currently pending before the District Court. *See generally* Defs.' Opp. to Plaintiff's Obj. to the Rule 56(h) Opinion, Dec. 19, 2019 (ECF No. 393).

[26] This Court is not the proper forum for Plaintiff to litigate its longstanding dispute with its Prior Counsel—nor does the Fee Award preclude Plaintiff from seeking contribution from its Prior Counsel. Plaintiff's assertion that the Court should "open an investigation of Defendants" on the basis of these same unsupported allegations is similarly yet another effort to delay and multiply these proceedings. *See* Motion at 25. If Plaintiff wishes to take action against its Prior Counsel—something it admits it has not done despite having levied accusations of collusion and misconduct against Prior Counsel for nearly three years—it is free to do so. S*ee* May 28, 2019 Hr'g Tr. (ECF No. 381) at 20:16-25. Plaintiff has an unambiguous obligation to pay the Fee Award, and its dispute with its Prior Counsel provides no basis to set aside or defer its compliance with that obligation.

[27] This Court's January 8, 2020 amendment of the Fee Award clarified that the attorneys' fees and costs it calculated as recoverable pursuant to the 2014 Sanctions Order were to be paid by Plaintiff and its counsel.

issuance of sanctions for violations of orders against "the disobedient party, the attorney advising

that party, or both").  Instead, Plaintiff argues that its allegations of misbehavior against its Prior

Counsel should now absolve Plaintiff of responsibility.  Again, Plaintiff is engaged in an

untimely effort to dispute the 2014 Sanctions Order.  *See supra* at 9, 17.

        C.     <u>Plaintiff Should Be Required to Pay the Fee Award Immediately</u>

        Plaintiff's request to vacate the Fee Award due to its pending appeal of the Rule

56(h) Opinion and for the Court to commence an "investigation" into Plaintiff's Prior Counsel

are transparent and unavailing attempts to delay Plaintiff's compliance with the Fee Award.

        Plaintiff's request that the Fee Award be vacated due to Plaintiff's pending

Objection to the Court's denial of its Rule 56(h) Motion is facially without merit.  Plaintiff

identifies no legal support to justify vacating a court order on the basis of what actions a

reviewing court <u>might</u> take in the future with respect to a separate order.  And to the extent that

Plaintiff intends to request a stay pending its appeal of the Rule 56(h) Opinion in its reply, such a

request would be both untimely and without merit.[28]

        Plaintiff has not and cannot meet the requirements for a stay.  Parties seeking a

stay pending appeal must show (1) a strong showing of likelihood of success on the merits;

(2) irreparable injury absent a stay; (3) a lack of substantial injury to other parties if a stay is

entered; and (4) that public interest favors a stay.  *Nat. Res. Def. Council, Inc., v. U.S. Food &*

*Drug Admin.*, 884 F. Supp. 2d 108, 122 (S.D.N.Y. 2012); *cf. McEarchen v. Urban Outfitters,*

*Inc.*, 2014 WL 2506251, at *1 (E.D.N.Y. June 3, 2014) (applying the same analysis to appeal of

a Magistrate Judge's order).

---

[28] *See Knipe v. Skinner,* 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief.").

First, Plaintiff falls woefully short of demonstrating a likelihood of success on its objection to the Fee Award—an objection that is subject to the "clear error" standard of review. *See* Fed. R. Civ. P. 72(a); *accord. U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Co.*, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007) ("The party seeking to overturn a magistrate judge's decision . . . carries a heavy burden."). In fact, Plaintiff's objections consist of mere disagreement with Magistrate Judge Pitman and the bare repetition of claims analyzed and properly rejected in the Rule 56(h) Opinion. *See* Defs.' Opp. to Plaintiff's Obj. to the Rule 56(h) Opinion, Dec. 19, 2019 (ECF No. 393) at 11-25; *accord McEarchen*, 2014 WL 2506251, at *1.

Second, Plaintiff cannot claim that it would suffer irreparable injury absent a stay. The risk that it might pay the Fee Award only to have the District Court vacate the 2014 Sanctions Order is precisely the sort of "remote," "speculative" injury that is easily "remedied by an award of monetary damages," (i.e., a refund) and cannot be considered "irreparable." *Nat. Res. Def. Council,* 884 F. Supp. 2d at 123. Although Plaintiff's inability to satisfy these two factors alone is sufficient to reject any implied request for a stay,[29] the remaining two factors also weigh against granting a stay: Plaintiff cannot demonstrate that Defendants would not be harmed by a stay—particularly where Defendants have received no proof that Plaintiff can afford to pay, nor any protection against the depletion of Plaintiff's assets during the pendency of a stay[30]—and there is no public interest that is served by staying Plaintiff's compliance with the Fee Award; to the contrary, the public's interest is in "eliminating litigation delays," which Plaintiff's request

---

[29] *S.E.C. v. Daspin*, 557 F. App'x 46, 48-49 (2d Cir. 2014) (finding that where the first two factors weigh against granting a stay, the Court "need not address the remaining factors")

[30] *See de la Fuente v. DCI Telecommunications, Inc.*, 269 F. Supp. 2d 237, 244 (S.D.N.Y. 2003) (finding "defendants . . . are harmed by the entry of an unbonded stay, since that compromises their chances of collecting" the awarded sanctions). Should the Court grant a stay or otherwise delay the payment of the Fee Award, Plaintiff should be required to put the amount awarded by the Fee Award in escrow pending the resolution of its Objection to the Rule 56(h) Motion.

would compound.  *See Microsoft Corp. v. Weidmann Elec. Tech. Inc.*, 2017 WL 3037587, at *4 (D. Vt. Jan. 3, 2017).

## III.   PLAINTIFF'S FILING OF THIS FRIVOLOUS MOTION FOR RECONSIDERATION MERITS AN AWARD OF FEES AND COSTS

This Court has both the inherent and statutory power to impose sanctions where the Court finds the conduct at issue was "(1) entirely without color" and "(2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).[31]  In considering whether conduct is "entirely without color," courts consider "whether a reasonable attorney . . . could have concluded that the facts supporting the claim might be established." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 341 (2d Cir. 1999). An improper purpose can be inferred when a party's actions are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Enmon v. Prospect Capital Corp.,* 675 F.3d 138, 143 (2d Cir. 2012) (citation omitted).

Sanctions are merited where, as here, a plaintiff has "engaged in a pattern of litigation designed to evade previous rulings," including repeatedly filing actions with "factually identical" claims to those previously dismissed, on the basis that such actions reflected a "vexatious litigation strategy and needless occupation of judicial resources." *Pentagen Technologies Intern. Ltd. v. United States*, 172 F. Supp. 2d 464, 473-74 (S.D.N.Y 2001).  Indeed, the Motion is the <u>sixth</u> time Plaintiff has alleged collusion between the parties' counsel,[32] and the

---

[31] *See also* 28 U.S.C. § 1927 (permitting an award of costs, expenses and attorneys' fees against an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously"); Fed. R. Civ. P. 11(c)(3) (granting the Court the power to *sua sponte* "order an attorney, law firm or party to show cause why conduct specifically described in the order has not violated Rule 11(b)"); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (recognizing a court's inherent power to sanction any party that "has acted in bad faith, vexatiously, wantonly or for oppressive reasons").

[32] *See, e.g.*, Dr. Wang's Jan. 4, 2017 Letter at 2 (arguing Defendants "did not and could not dispute their collusion"); Dr. Wang's May 30, 2017 Letter (claiming collusion occurred); Rule 56(h) Motion at 1 (claiming "in collusion with Defendants, the attorney for Plaintiff . . . framed Plaintiff for contempt of court."); Motion to Defer at 1 (alleging collusion "since approximately 2012"); Rule 56(d) Motion at 21 (noting Plaintiff's allegations of collusion "with Defendants to sabotage Plaintiff's case") Opp. to Motion to Strike Rule 56(d) Motion, Jan. 2, 2019 (ECF No. 300) at

eighth time Plaintiff has alleged Defendants engaged in discovery misconduct.[33]  Each of these attempts has been rejected.[34]  *See Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir. 1995) (sanctions warranted where a party "resubmit[s] a motion that had previously been denied; bring[s] a motion based on 'facts' the opposite of which were previously found by the court").

Beyond its repetition of false factual allegations, the Motion's reliance on facially frivolous legal arguments, all of which have been previously rejected by the Court, provides an independent basis for sanctions.  *New York v. Vacco*, 80 F.3d 64, 72 (2d. Cir. 2016); *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 339 (S.D.N.Y. 2019) (sanctions appropriate where counsel filed a motion with an "utter lack of merit" that "forced Defendants to prepare papers opposing [the] motion").

The Court made it clear to Plaintiff that the Motion for Reconsideration would be baseless.  *Compare* Jan. 3, 2020 Hr'g Tr. (ECF No. 415) at 10:4-11 (Court explaining that it "disagree[d] with [Plaintiff's claim that the Case Management Order contains an anti-filing injunction].  I think the Supreme Court gives the district courts, which includes me . . . the authority to impose in particular pre-motion letter and conference requirements and . . . that such requirements are not an injunction."), *with* Motion at 21 (arguing that the Case Management

---

22-23 (arguing that "it is now established . . . that AAI's former counsel colluded with Defendants to damage its own client's interest").

[33] *See, e.g.*, Motion to Defer at 12 (accusing Defendants of hiding "critical evidence of their misappropriation."); Pl's Obj. to Denial of 2012 Motion to Compel, Sept. 28, 2012 (ECF No. 177) at 11 ("[Defendants] misrepresented to the Court that that defendants had produced the *entire* RCS code."); Dr. Wang's May 30, 2017 Letter at 3 (Referring to "conclusive evidence of Pl's ACE Derivative Use Claim and Defendants' massive spoliation"); Rule 56(h) Motion at 20 (Alleging that Defendants "misled the Court that Defendants had produced TYB production code," and attempted "to hide Defendants' spoliation"); Rule 56(d) Motion at 24 ("Defendants have made numerous misrepresentations to the Court"); Pl.'s Revised Opp. to Defs.' Motion for Summary Judgment, May 28, 2014 (ECF No. 251) at 11 (arguing Dr. Radak's declaration was not made with first-hand knowledge); Pl.'s Motion to Reconsider the June 19, 2013 Court Order, July 9, 2013 (ECF No. 224) at 7 ("Defendants submitted false and misleading testimony.").

[34] *See* Order, Feb. 8, 2013 (ECF No. 214) at 4; Order, July 11, 2013 (ECF No. 229) at 1; Order, May 31, 2017 (ECF No. 275) at 2 n.2; Order, Sept. 4, 2019 (ECF No. 339) at 1; Case Management Order at 2; Order, May 28, 2019 (ECF No. 312) at 1; Report and Recommendation, Sept. 4, 2019 (ECF No. 340).

Order is an injunction which the Court does not have authority to issue); *Compare* Jan 15, 2020 Hr'g Tr. (ECF No. 421) at 9:9-21 (Court explaining that "with respect to what its charge was for [the Fee Award, which is that it was] more of a mathematical calculation" and that "as far as revisiting the fee award altogether, that really was not my charge"), *with* Motion at 25 (arguing that the Fee Award should be vacated because the 2014 Sanctions Order was the result of Defendants' discovery misconduct and collusion with Prior Counsel).[35]

Courts have previously imposed sanctions where a party has disregarded the Court's warnings regarding the viability of their arguments, precisely what Plaintiff has done here. *See, e.g., Estate of Davis v. Trojer*, 287 F. Supp. 2d 455, 456 (S.D.N.Y. 2003) (imposing sanctions for the filing of a motion despite the court's admonishment not to do so); *see also In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000) (sanctions appropriate where the litigant was warned that its appeal was frivolous); *Fox v. Boucher*, 794 F.2d 34, 37-38 (2d Cir.1986) (sanctions appropriate for filing a motion "in the face of a written decision by the district judge that concluded plaintiff's action was frivolous and brought in bad faith").

[*The remainder of this page is intentionally left blank*]

---

[35] In fact, despite the Court's express statements, the Motion is substantively identical to the draft motion Plaintiff attached to its Jan 3. Letter. *Compare* ECF No. 402-1 at 24 (The Order "is contrary to several laws, 28 U.S.C § 636(b), 28 U.S.C § 1651, Fed R. Civ. P. 65(d) and Second Circuit authority"), *with* Motion at 24 (repeating verbatim); *compare also* ECF No. 402-1 at 6 (arguing the Fee Award is "a fruit of the poisonous tree of Defendants' collusion with Collins"), *with* Motion at 6 (repeating verbatim). In fact, Plaintiff's only express response to the Court is to claim that its statements with respect to its power to issue the Case Management Conference is "non-sequitur to its jurisdiction as set forth explicitly in 28 U.S.C. § 636(b)(1)(A)." Motion at 21, n.30.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny

Plaintiff's Motion, and submit that sanctions on Plaintiff and its counsel are warranted.


Dated:        New York, New York
              February 7, 2020

                                        Respectfully submitted,

                                        CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                        By: */s/ Jennifer Kennedy Park*
                                             Christopher P. Moore
                                             (cmoore@cgsh.com)
                                             Jennifer Kennedy Park
                                             (jkpark@cgsh.com)
                                             Thomas S. Kessler
                                             (tkessler@cgsh.com)

                                        One Liberty Plaza
                                        New York, New York 10006-1470
                                        (212) 225-2000

                                        *Attorneys for Defendants and Counterclaim-*
                                        *Plaintiffs Citigroup Global Markets, Inc. and The*
                                        *Yield Book Inc.*