**LAW OFFICE OF PETER J. TOREN**
Peter J. Toren
3028 Newark Street NW
Washington, D.C. 20008
(646) 623-4654
ptoren@petertoren.com

Attorneys for Plaintiff and Counterclaim-Defendant
Advanced Analytics, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| -------------------------------------------------x : ADVANCED ANALYTICS, INC. : : Plaintiff and Counterclaim-Defendant, : : v. : : CITIGROUP GLOBAL MARKETS, INC. f/k/a SALOMON SMITH BARNEY, INC., and THE YIELD BOOK INC, f/k/a : SALOMON ANALYTICS, INC., : : Defendants and Counterclaim-Plaintiff. : -------------------------------------------------x | **Case No. 04 Civ. 3531 (LTS) (SLC)** **PLAINTIFF'S REPLY MEMORRANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RECONSIDERATIO OF MAGISTRATE JUDGE'S ORDER GRANTING DEFENDANTS MOTION TO STRIKE AND FOR INJUNCTION AND ORDERS OF FEE SANCTIONS AND FOR AN AWARD OF SANCTIONS AGAINST PLAINTIFF AND ITS COUNSEL** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ....................................................................................................................... 1

I.  Defendants Again Utterly Failed to Dispute Any of the Evidence and Allegations That
    Their 3 Prong Scheme and Collusion with Collins Procured these 4 Orders  from
    2012 to 2014.......................................................................................................... 1

II. Together with the Sep 2012 and March 2014 Orders, The Fee Orders Should Be
    Reversed, Pursuant to FRCP54(b). ...................................................................... 5

    A.  Plaintiff's Motion for Reconsideration is Timely ........................................... 5

    B.  The Availability of New Evidence Justifies Reconsideration ........................... 6

    C.  The Challenged Portions of the 4 Court Orders and Fee Orders Must Be
        Reversed to Correct Clear Errors and to Prevent Manifest Injustice. ............. 6

III. Defendants Filed Motions to Strike and for Injunction for Improper Purposes and in
     Bad Faith. The Court Should Vacate Injunction Order and Grant Mot to Defer. ....... 7

IV.  The Court Should Unseal and Grant the Mot to Defer, and investigate the Evidence
     of Collusion and 3 Prong Scheme. ........................................................................ 9

V.   Defendants Should Pay AAI for the Cost of Opposing Defendants Frivolous Motions
     Filed in Bad Faith ............................................................................................... 10

CONCLUSION ...................................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Laws and Rules**

18 §U.S.C 1512 ................................................................................................................... 9

28 U.S.C §1651 .................................................................................................................. 8

28 U.S.C §636(b) ............................................................................................................... 8

Fed R. Civ. P. 65(d) ........................................................................................................... 8

Fed R. Civ. P.54(b) ............................................................................................................ 5

Local Rule 56.1 .................................................................................................................. 5

**Cases**

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) .................................................. 11

*Chenette v. Kenneth Cole Prods., Inc.,* No. 05 CIV. 4849 (DLC), 2008 WL 3176088, at *7

   (S.D.N.Y. 2008), ......................................................................................................... 5

*Clinton v. Brown & Williamson Holdings, Inc.*, 652 F.Supp.2d 528, 530 (S.D.N.Y. 2019) .......... 6

*Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 (S.D.N.Y. 2011) ................. 5

*Goldstick v. The Hartford, Inc.*, No. 00 CIV. 8577 (LAK), 2002 WL 1906029, at *1 (S.D.N.Y.

   2002). ......................................................................................................................... 5

*Hunt v. Enzo Biochem, Inc.*, 2007 WL 1346652, at *1 (S.D.N.Y. May 7, 2007) .......................... 6

*McGraw-Hill Global Educ. Holdings LLC v. Mathrani*, 293 F.Supp.3d 394, 397 (S.D.N.Y.

   2018). ......................................................................................................................... 6

*Milton Abeles, Inc. v. Farmer's Pride.*, 2009 WL 1941326, at *1 (E.D.N.Y. 2009) ................... 6

*Moton v. Maplebear Inc.*, 2017 WL 5515943, at *2 (S.D.N.Y. Mar. 20, 2017) ......................... 10

*Richman v. W.L. Gore & Assocs.*, 988 F.Supp. 753, 755 (S.D.N.Y.1997)..................................... 5

*Rodriguez v. Schneider*, No. 95 Civ. 4083(RPP,) 1999 WL 459813, *1 n. 3 (S.D.N.Y. 1999). .... 5

*S.E.C. v. Treadway*, 354 F. Supp. 2d 311, 313 (S.D.N.Y. 2005)..................................................... 6

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 341 (2d Cir. 1999). ................. 11

*Spinale v. United States*, 277 F. App'x 108, 109 (2 (2d Cir. 2008)............................................. 10

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992) ................. 5

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009)..................... 11

*Yurman Design, Inc. v. Golden Treasure Imports, Inc.*, 275 F. Supp. 2d 506, 509 (S.D.N.Y.

2003) ..................................................................................................................................... 5

## PRELIMINARY STATEMENT [1]

Defendants' Opposition ("Opp") once again avoided all the substance. Defendants once again do not substantively challenge the evidence of Defendants' 3-Prong scheme, and their collusion with Collins. Accordingly, the Court must accept these allegations as true. It could not dispute AAI's allegations and evidence, because Defendants cannot. This was why Defendants filed motions to strike or for sanction and injunction in response to AAI's every motion. In fact, Defendants' purported rebuttal have confirmed that their 3-Prong Scheme and collusion with Collins procured the September 5, 2012 Order and the contempt order of March 26, 2014 Order. Thus, these Orders are clearly erroneous and constitute manifest injustice. Because the Fee Orders flow from March 26, 2014 Order, which flows from September 5, 2012 Order, so the Fee Orders should be reversed.  Opp did not and could not deny that Nov. 11 Mot is an untimely reconsideration motion to strike and motion for injunction. As Opp conceded, Defs' goal to "enjoin" AAI from filing any papers, is contrary to the laws and the Second Circuit authorities. Thus the Injunction Order should be vacated and Defendants' request for sanctions must be denied. Instead Defendants should reimburse Plaintiff for the cost it incurred in response to Defs' Opp and Nov 11 Mot that was without legal or factual basis and for improper purposes.

## ARGUMENT

### I.    Defendants Again Utterly Failed to Dispute Any of the Evidence and Allegations That 3 Prong Scheme and Collusion Procured the 4 Orders from 2012 to 2014.

Defs have failed for the fifth time since 2018 to dispute a shred of the palpable evidence and allegations of their fraud and conspiracy with Collins. Respectfully, therefore, the Court must consider all of these allegations as true. Defs' mischaracterization of the procedural history confirmed that their reliance on the 3-Prong Scheme and on their conspiracy with Collins led to their procuring the four Court Order entered between 2012 and 2014. Opp cited July 2007 Stipulation and Order (ECF76) which set deadlines for the parties to produce documents under FRCP 26(a). But Defs violated this Order, as well as five other discovery orders. *See e.g.*, Aug.

---

[1] Unless otherwise indicated, capitalized terms retain the definitions from Plaintiff's opening brief.

31 2007 Order (ECF 81)(Defs failed to produce the sequences used by TYB), and June 26, 2008 (ECF 110) (Defs failed to produce the sequence development and testing files). Opp at 3 cited Sep 5 2012 Order denying AAI's motion to compel (filed April and again in July, 2012), as standing for that there was "little evidence" of Defs' fraud. However, at the time of that Order, MJ Pitman did not have access to the evidence because Defs colluded with Collins who blocked Fan July 2012 Decl and other evidence from support of the motion. See ¶¶143,155, Wang 6th Decl, and Wang 7th Decl in 2018-1029, F1-1, App. B of attached to Objection. Also the Court was misled by Defs' 3-Prong Scheme that mischaracterized AAI's claims and misrepresented Defs discovery production and relied on false declarations (Fan 4th Decl of 2013, §§A-D, G).

Opp utterly failed to rebut the evidence of collusion. Defs claimed, avoiding all facts, that "Plaintiff's claims of civil and criminal liability is false." Opp. at 19. Like an Ostrich hiding from danger, Defs completely disregard the mountain of evidence of collusion and conspiracy contained in the Wang 6th Decl, and cite a conclusory statement of "no evidence of collusion" from the May 28, 2019 Hearing by a new attorney, Mr. Thomas Kessler, who had only appeared on the case after 2017 when Collins left the case. So he could not have personal knowledge of their collusion with Collins. Id. Defs cite again "[D]efs.' Jan. 10, 2017 Letter at 1 (Defs sought the dismissal of Plaintiff's claims "through the provision of undisputed evidence and unrebutted legal arguments, not through any improper means"); Id. Yet Defs knew that all AAI's claims had been mischaracterized by Collins in collusion with Defs as Defs False Claims. See Pl's Memorandum of Law ("Memo"), at 5, n.11, and Ex. 1 of Wang 6th Dec. at 3, §176, F7. Defs' purported denials of collusion and fraud have always relied on Collins' collusion. F3, F4, App B2 attached, without exception. Pl's Notice at 1 pointed out

> "The evidence of such collusion includes Collins in collusion with Defendants misrepresentation that the [4[th] Fan Decl.] was drafted in support of [MSJ 2013] without the justification, over the express and explicit objections of Plaintiff. Collins concealed in six sets of court papers..that the 4th Fan Decl. was actually drafted and filed in support of [Rule 37(b) Sanction Motion]. The recent evidence also revealed that Collins secretly withdrew [ Rule 37(b) Sanction Motion] behind Plaintiff's back in collusion with Defendants."

To cover up their collusion, Opp at 4 grossly mischaracterized March 26, 2014 Order as

"THE COURT SANCTIONED PLAINTIFF FOR SERVING AN UNTIMELY AND IMPROPER EXPERT DECLARATION IN SUPPORT OF ALLEGATIONS OF DISCOVERY MISCONDUCT",

despite Defs knew that March 2014 Order only sanctioned AAI for citing 4th Fan in support of MSJBr[2], 32-34, *Id,* not for support of sanction against Defs' discovery misconduct which had been sabotaged by Collins. See Memo at 14-17. To conceal 37(b) Spoliation Motion to frame AAI for contempt, Collins made the same deliberate misrepresentation to Judge Swain that AAI made "the allegations of discovery misconduct" only in MSJBr not in any sanction motion. See Wang 6th Decl ¶¶121, 138, 146. Defs listed AAI's 2012-2014 attempts for relief that had been denied by the 4 Court Orders. See Opp. fn. 33. However, look at the briefs and the 4 Orders will easily confirm that the 4 orders were procured by Collins' collusion embracing Defs 3 Prong Scheme. It listed Pl's Obj.of Sept. 28, 2012 sought the production TYB-RCS code, but the papers revealed that attempt was sabotaged by Collins and Defs 3 Prong Scheme that portrayed TYB-RCS code as irrelevant and the exclusion of Fan 3rd Decl and Wang 3rd Decl by Defs and Collins in collusion. It listed Collins' MSJ Bf at 11 "(arguing Dr. Radak's declaration was not made with first-hand knowledge)." But Collins' MSJ Br embraced the 1st Prong, and mislabeled Decoy Sequences as "Real Sequences" in order to mislead the Court to believe that the Radak's lack of first-hand knowledge is immaterial. See Feb. 8, 2013 Order. *Id.* ¶116, n74, 75. ¶190. Defs termed Collins' collusion as "missteps" and "misbehaviors," but failed to explain why these "missteps" and his "misbehaviors" were in lock-steps with Defs to mislead the Court to block Spoliation Sanctions against Defs and to frame AAI for contempt of court, as exactly Defs intended. See Mot to Defer. After Collins withdrew and Plaintiff learned of his collusion with Defs that embraced Defs 3-Prong Scheme, Defs' defense collapsed. Then Defs resorted to motions to strike and for injunction in response to AAI's motions. To hide this from the Court, Opp shuffled the chronology of the cites in fn. 33. Contrary to Defs' assertion, none of MJ Pitman's rulings addressed the substance of 3-Prong Scheme or the collusion. But Opp cited

---

[2] Opp admitted that the 4tth Fan Declaration could be used for non-merits purposes, at 4 ("On March 26, 2014, Magistrate Judge Pitman … ordered that the Fourth Fan Decl. could not be used for any merits purposes …." This means that Plaintiff can use this declaration in connection with a motion for sanctions, for example.

them, even the Injunction Order itself, as their excuse for their failure to answer the allegations. See Opp n.34. Opp at 19 claimed that Defs had answered the allegations of their discovery misconduct in their Opp to 56(h) Objection of Nov. 2019, 56.1 Reply of Feb. 2015 and their letter of July 8, 2019 to MJ Pitman. None of these is true. Defs' Opp to 56(h) Objection, and their letter of July 8, 2019 to MJ Pitman evaded the substance. Everywhere Defs' pleadings mentioned some facts, it confirmed Collins' collusion. See F3, F4, F5, App. B2. Pl's letter to Judge Swain of December 27, 2019. ECF399.

Defs' 56.1 Reply also confirmed their reliance on the 3-Prong Scheme and collusion with Collins in an attempt to hide their misconduct. For example, Defs never addressed that during the Sept. 5, 2012, hearing, Defs made 14 misrepresentations that the three file Radak Code is the 1000+ TYB-RCS code that Defs withheld. In their 56.1 Reply (¶20, 61), Defs relied on the 1st Prong of their Scheme, to falsely claim that AAI is alleging that the withheld TYB-RCS generate different "YB sequences." See E3-1, App. B and App. B2. Defs rely on their collusion with Collins for failing to address the evidence of their failure to produce the sequences used by TYB. The only explanation for Defs failure is that Plaintiff's allegations are true. After MJ Pitman on June 5, 2014 denied Defs' motion, and the Parties produced the 100+ pages of Joint Report to MJ Pitman of January 2015, (Ex.5 to Andy Pieze Decl,  56(d) Motion of Nov. 11, 2018, ECF289) which affirmed that all the evidence in 56.1 Response to which Defs had objected is factual material that is deemed admissible by the June 5 Order. Collins made no contribution to Joint Report, but intimidated Plaintiff to delete all factual evidence of misappropriation of ACE, such as ACE Use Code and Theft Code, from 56.1 Response of April 25, 2014. Wang 6th Decl, ¶¶127, 202. After Collins' attempts failed, Defs submitted 56.1 Reply.  See App. B of 56(h) Obj, and App. B2. Defs'56.1 Reply relied on the 3-Prong and the collusion, and relied on improper legal arguments citing dozens of cases, intended to make the end run after the Joint Report, to deny the Court's consideration of the evidence of misappropriation, e.g, ACE Use Code. It started off from p.1-7 with three objections supported not by facts but all by lengthy legal

4

arguments, citing 19 cases, in violation of L.R.56.1 and the laws in this Court and CA2 that prohibit any legal arguments in Local Rule 56.1 papers.[3]

## II. Together with the Sep 2012 and March 2014 Orders, The Fee Orders Should Be Reversed, Pursuant to FRCP54(b).

### A. Plaintiff's Motion for Reconsideration is Timely

The Opp argued that AAI's Motion for Reconsideration is untimely because Local Rule 6.3 requires motions for reconsideration be filed within fourteen days. It overlooked that the Mot to Reconsider sought relief under FRCP54(b). Opp disregarded the opening qualifier on the "14 days limitation" of LR 6.3 "[U]nless otherwise provided by the Court or by statute or rule (such as [Fed R. Civ. P.54(b)]"). It is contrary to the case laws and the plaintext of FRCP 54(b) which as cited in *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.1992):

> "The Court has authority under Fed.R.Civ.P. 54(b), as well as the inherent power of the court, to reconsider a prior decision at any time before the entry of final judgment." *Richman v. W.L. Gore & Assocs.*, 988 F.Supp. 753, 755 (S.D.N.Y.1997). Federal Rule of Civil Procedure 54(b) provides, in relevant part, that "any order or other decision ... that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and responsibilities." Fed. R. Civ. P. 54(b). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."

Notably, the court must grant Pl's Mot to Reconsider in the event that it finds the existence of any of the four grounds cited in *Virgin Atl.* In contrast, all of Defs' cases concern L.R. 6.3's 14 day limitation,[4] and do address a motion to reconsider under FRCP54(b). In fact, Defs cases

---

[3] See *Goldstick v. The Hartford, Inc.*, No. 00 CIV. 8577 (LAK), 2002 WL 1906029, at *1 (S.D.N.Y. 2002). *Rodriguez v. Schneider*, No. 95 Civ. 4083(RPP,) 1999 WL 459813, *1 n. 3 (S.D.N.Y. 1999). See also *Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 (S.D.N.Y. 2011) (citeing *Rodriguez* and finding that the parties "are guilty" for having their 56.1 statements "contain legal arguments".); *Chenette v. Kenneth Cole Prods., Inc.*, No. 05 CIV. 4849 (DLC), 2008 WL 3176088, at *7 (S.D.N.Y. 2008), *aff'd*, 345 F. App'x 615 (2d Cir. 2009) ("the 56.1 Statement contains legal argument and conclusory assertions in violation of Local Rule 56.1's requirement…"); *Yurman Design, Inc. v. Golden Treasure Imports, Inc*., 275 F. Supp. 2d 506, 509 (S.D.N.Y. 2003) (same);. *Kruger v. Virgin Atl. Airways, Ltd.,* 976 F. Supp. 2d 290, 309 (E.D.N.Y. 2013), *aff'd*, 578 F. App'x 51 (2d Cir. 2014) (same).

[4] *S.E.C. v. Treadway*, 354 F. Supp. 2d 311, 313 (S.D.N.Y. 2005); *Hunt v. Enzo Biochem, Inc*., 2007 WL 1346652, at *1 (S.D.N.Y. May 7, 2007). Both are not relevant to the present matter because they concerned only L.R. 6.3 and did not address that Plaintiff is preceding under Rule 54(b). Opp also relies on *McGraw-Hill Global Educ. Holdings LLC v. Mathrani*, 293 F.Supp.3d 394, 397 (S.D.N.Y. 2018). But it is totally inapposite. There, the court denied a

actually confirm that 14 day limitation does not apply for Pl's Motion under Rule 54(b). Defs rely *Clinton v. Brown & Williamson Holdings, Inc.*, 652 F.Supp.2d 528, 530 (S.D.N.Y. 2019), in which  the court agreed with *Richman* that "[t]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence or the need to correct a clear error *or prevent manifest injustice*." Id. at 530. (emphasis added). Thus, Defs are incorrect that *Clinton* held that exceptions to L.R. 6.3 exist only "when justice so requires."[5]

### B.  The Availability of New Evidence Justifies Reconsideration

Opp at 11 alleged that AAI has failed to identify any new evidence. This completely mischaracterizes the record: . First, the Fee Orders "flow from" March 26, 2014 Order. In turn, the March 2014 Order relies on Sept. 5, 2012 Order, without which there would not have been no basis for the court to impose sanctions on AAI pursuant to Rule 26(a)(2) and Rule 37(c). Thus Fan 4th Decl and Wang 6th, 7th Decls are part of the new evidence for the reconsideration of Sept. 5 2012 Order, and are also part of the record before as new evidence. They are supporting the pending 56(d), 56(h) Objections before Judge Swain for the first time as new evidence. These undisputed declarations demonstrate that Defs relied on the 3-Prong Scheme and Collins' collusion to procure the 4 Orders in 2012-2014, in which the tainted portions must be vacated.

### C.  The Challenged Portions of the 4 Court Orders and Fee Orders Must Be Reversed to Correct Clear Errors and to Prevent Manifest Injustice.

Defs procured the Sept. 5 Order through reliance on their 3 Prong Scheme and collusion with Collins. For example, the Court's determination to close liability discovery on Sept. 5 was based

---

[5] defendant's motion to dismiss. Thereafter, the defendant moved for reconsideration under F.R.C.P. 59(e). The court denied it, stating that because "[defendants] purports to bring the motion under Rule 59(e), which applies to motions to alter or amend a judgment. See Fed. R. Civ. P. 59(e). ..Here, Rule 59(e) does not apply because the December 12 Order denying [defendant'] motions to dismiss is *397 neither a judgment nor an order from which an appeal lies". The court agreed with plaintiff that since Rule 54(a) does not apply,the motion for reconsideration is untimely under L.R. 6.3.  There the defendants did not claim Rule 54(b) relief, like Defendants here regarding their Nov 11 Mot. Despite Opp mislabeled the reconsidered Orders as "final orders", they are not even "judgment". So they are well within the scope of FRCP54(b).

[5] Defendants also misquote *Milton Abeles, Inc. v. Farmer's Pride.*, 2009 WL 1941326, at *1 (E.D.N.Y. 2009) that "Rule 54(b) may only be applied in the infrequent harsh case that presents a danger of hardship or injustice." Op. at 11. The correct and full quote provides: "a district court's power to order the entry of final partial judgment under Rule 54(b) should be used only in the infrequent harsh case where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." Id. at n. 1 (quotation and citation omitted.). AAI is not at all seeking "to order the entry of final partial judgment" but to correct the clear errors and to prevent manifest injustice. There is no other explanation for Defendants' misquote other than another attempt to mislead the Court.

on Defs' collusion with Collins and their 3 Prong Scheme, *inter alia*, that; (1) their 14 misrepresentations the Radak Code was actually the TYB-RCS code, and capable of "generating interest rate scenarios," (2)AAI's claims were that "YB sequences or Defendants' sequences incorporated ACE" (implying "AAI had stolen ACE from Defs"), and (3) the phony "Defendants sequences" (Decoy Sequences) were what AAI was seeking as the sequences used by TYB.  See C1-2, C2-3, C3-4, App. B. Because each of these assertions are clearly erroneous so are the portions of the four Orders from 2012 to 2014 that rely on these assertions.  It is manifest injustice to punish AAI, the victim of the conspiracy by Defs and reward the co-conspirators Defs and Defense counsel. Accordingly, Plaintiff respectfully submit that the contempt sanction of March 2014 Order and Fee Orders must be reversed.

### III.   Defendants Filed Motions to Strike and for Injunction for Improper Purposes and in Bad Faith. The Court Should Vacate Injunction Order and Grant Mot to Defer.

Defs did and cannot rebut any of AAI's allegations, including that: (1) Defs 3-Prong Scheme and their collusion with Collins procured the Court's four Orders between 2012 and 2014; **(2)** because Defs cannot rebut any of the new evidence and allegations, so Defs relied instead on motions to strike and for injunctive relief in an attempt to silence Plaintiff. Opp did not deny that such an injunction is Defs true intention. Opp  at 15 used  "enjoin,"  and "prohibit" elsewhere. Their refusal to consent to Mot to Reconsider be filed within 14 days, their insistence that a purported denial of pre-motion conference request by MJ Pitman (who did not even aware the Letter-Motion because of Collins' sabotage) "disposed" the 37(b) Sanction Motion and that such a denial has prohibited AAI from filing the formal 37(b) Motion. **(3)** Defs also knew before they filed their motions that their goal "to prohibit" AAI from filing any papers is contrary to the law and Second Circuit authorities before they filed the Motions. So they dressed up their motions for injunction to evade the laws. The ruling granted Defs request for injunctive relief, and indeed adopted the language of Defs' injunction motion. Indeed, the title of the Nov. 12 Mot for Injunction, makes clear that Defs  true intent and purpose was to "prohibit[ ] AAI from filing

7

papers." Injunction Order stroke Mot to Defer for the reason in Mot for Injunction. Defs used

Nov. 12 Order as Injunction Order. See (2) above. Defs did not (and cannot) dispute that their

requests for a magistrate judge to hear and determine their motion for injunction is in violation of

28 U.S.C §636(b), 28 U.S.C §1651, Fed R. Civ. P. 65(d) and Second Circuit laws, regardless of

the Court's intentions when it granted the motion for injunction; **(4) That** Defs had known that

their motions were illegal have been demonstrated by the Second Circuit authorities cited by

Defs' oppositions. See ECF400 to Pl's letter-motion to vacate of Dec, 19, 2019 (ECF394). The

Second Circuit authorities, cited therein, hold that an Article III judge is without authority to

enter the type of injunction sought by Defs. Defs' prior knowledge is confirmed by Opp that

further distinguished the cases of "anti-filing" injunction orders against litigants after the cases

had been dismissed, with the "pre-motion conference" requirement in a court's I. P. Opp at 7-8.

Since all Defs' July 11 Mot, Nov 11 Mot and Opp cited the same cases of "anti-filing" injunction

orders on litigants after the cases had been dismissed, to mislead the Court in granting their

request for injunction and accordingly that Defs filed them improper purposes; (5) Defs' Motions

are intended to obstruct the Court from ordering an investigation into Defs' misconduct and

collusion with Collins in violation of 18 §U.S.C 1512; (6) Defs failed to disclose their Motions

are untimely motions for reconsideration of two prior Motions that had been explicitly denied by

MJ Pitman. Opp at 18 falsely claimed "because both of Plaintiff's motions were denied on their

merits, the motions to strike were moot and therefore denied," so they did not need to disclose

the denials of their Motions to this Court. Pl's motions were denied purely on procedural

grounds, which does not "moot" Defs' motions to strike and for injunctions. That Motion to

Defer could be a "new basis" for reconsideration, is no excuse for their lack of candor, n.12.

Defs knew from the cases cited that the claim of untimeliness alone is "reason enough for the

court to deny the motion." Opp at 10. See fn 4, supra. Defs repeated relied on these cases to

deceive this Court, which took this case over only a few weeks prior to Nov. 11. Defs were

seeking to take advantage of this Court that was not intimately familiar with the facts and long

litigation history of this extremely complicated and old case. (7) Defs also failed to disclose to

the Court in the Nov. 11 Mot. and at the Nov. 12 hearing that they had made 12 previous and unsuccessful attempts to obtain the Fee Award. Each of these attempts were disregarded or had been denied by MJ Pitman to prevent injustice. Opp at 12 again conceded the new evidence of collusion, admitted by Nov 11 Mot, that on June 18, 2013 Collins secretly "withdrew" 37(b) Spoliation Motion without Plaintiff's knowledge and sought to conceal this duplicity form the Court. Defs must have known that Plaintiff would not seek to withdraw this Motion. Dr. Wang furiously urged Collins to file the 37(b) Motion in the strongest possible language. App. B and B2, F2-1, F6-1, Wang 6th, 7th Decl. See ECF402 at 2 and 4th Wang Decl. Until this admission by Defs, Plaintiff did not know that Collins asked the Court to withdraw the motion in collusion with Defs. The call was secret because Plaintiff did not know about the call and the call has no Court records.  MJ Pitman did not know that Collins secretly worked for Defs. Defs attempted to rely on Collins' withdrawal to block AAI's Spoliation Motion. They grossly mischaracterized March 26 Order. See § I. It is a violation of 18 §U.S.C 1512 for Defs to prevent the Court's inquiry. Defs citation to  L.R.6.3 cases  are irrelevant. So the Court should vacate Injunction Order and grant Mot to Defer, pursuant to FRCP54(b) on each of the three grounds of clear error, manifest injustice and new evidence. Nov 11 Mot is an untimely motion for reconsideration, which is  "reason enough" for the Court to deny it *sua sponte*, according to the Opp. n24.[6]

### IV.   The Court Should Unseal and Grant the Mot to Defer, and investigate the Evidence of Collusion and 3 Prong Scheme.

During the May 28 Hrg, MJ Pitman indicated might not have the time to go through Wang 6th and Wang 7th Decl because of their immensity and he was about to retire, to investigate the evidence and then reverse his prior rulings. Defs had warned him that he may not do so because the Orders had been affirmed by District Court.  He observed only that "the disagreement

---

[6] See *Moton v. Maplebear Inc*., 2017 WL 5515943, at *2 (S.D.N.Y. Mar. 20, 2017) cf. *Spinale v. United States*, 277 F. App'x 108, 109 (2 (2d Cir. 2008). It does not apply to Mot to Defer because there is no allegation of "untimely" to seek investigation or to defer.

Defs cannot find any "counter -relief" of opposition to strike opening motion, enjoin all adversary' filings, silence the adversary, while Defs avoided to answer the undisputed allegations of their pervasive fraud and conspiracy. Opp presented no cases and no basis to justify denying Mot to Defer *sua sponte* or to deny Pl's right to file a reply, In re *Sendecky*, 315 F.3d 904, 906 (8th Cir. 2003) is not about a denial of a motion, nothing to do with L.R. but an appeal from a bankcrupcy court.

between Plaintiff and its Prior Counsel" is not collusion. But Opp referred his observation about "disagreement" which is not AAI's allegations and evidence, as rejection of collusion. MJ Pitman never ruled that there was no collusion. AAI's allegations are not just "disagreement" but conspiracy as indicated in AAI's motions. Now to grant Mot to Defer, let justice be served, is the only way to move the case forward.

### V.   Defendants Should Pay AAI for the Cost of Opposing Defendants Frivolous Motions Filed in Bad Faith

It is undisputed that Defs filed the July 11 Mot and Nov 11 Mot for improper purposes, and were deliberately drafted them to evade the laws and to mislead the Court. See §III. This provides ample grounds to sanction Defs,[7] and direct Defs and Defense counsel to reimburse AAI for its cost incurred in defending these Motions and for bringing this Mot to Reconsider. The Court should reverse its Fee Order that flowed from the March 26 Order, which was procured by 3 Prong Scheme and collusion, in light of the conclusive evidence that Defs have not disputed. See §I. The Court should deny Defs' request at 20 to lift the Court's stay order of Fee Orders and to stop the Court' investigation of the evidence of their conspiracy, which was made in bad faith.  Defs claim that the immediate payment for attorney's fees and costs is based on their concern that Plaintiff's may not be able to make this payment also does not make sense. If Defs were actually concerned about Plaintiff's ability to make this payment, then Defs would have wanted to keep Collins and his Firm as the liable party. This Firm is capable of paying this amount. But Defs' prior briefs, and Opp have been doing the exact opposite: they cited inapposite cases[8] to exonerate Collins and his Firm from any liability and to block the investigation. Defs concealed their true intent, which is to stop the Court's investigation of their conspiracy in violation of 18 U.S.C §1512. Defs should be sanctioned for their bad faith.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully request the Court to grant Plaintiff's motion for Reconsideration in its entirety, and grant any other relief it deems just and proper.

---

[7] See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 341 (2d Cir. 1999).
[8] See Defs' Letter of Jan 8, 2020 to MJ Cave, at 3

Dated: February 14, 2020

Respectfully Submitted,

Peter J. Toren
Attorneys for Plaintiff and Counter-
Claim Defendant Advanced Analytics, Inc.

**APPDENIX B2. TOP LEVEL SUMMARY OF DEFENDANTS' AND COLLINS COLLUSION NEW EVIDENCE (2)**

**F3**. Defendants' New Admission of Collins' collusion to sabotage Plaintiff's Rule 37 (b) spoliation sanction letter-motion of June 17, 2013 and to frame Plaintiff for contempt of court. (**F3-1** Continue from **F1-1** of Appendix B filed with Rule 56(h) Objection. **F3-2** is the Original Testimony Distorted by Defendants).

**F4, F5.** Defendants' Some Other New Confirmation from Their Pleadings in 2019-2020 of Their Reliance on Collins' Collusion

**F6, F7.** Collins Collusion Embracing Defs 3 Prong Scheme as Shown by the Undisputed Testimony and Documentary Evidence in Records (Cont. from **F2-1** of Appendix B filed with Rule 56(h) Objection).

| **F** | Defendants Confirmation of Collins collusion to sabotage  Pl's 37 (b) Spoliation Motion and to frame Plaintiff for contempt (Continue from F1-1) | The Truth as Shown by the Record: | |
|---|---|---|---|
| | **F3-1.**  Defs are still relying on Collins' collusion to block 37(b) Spoliation Motion:<br><br>"Plaintiff submitted a June 17, 2013 [Rule 37 (b) Spoliation Sanction Motion] claiming that Plaintiff intended to seek sanctions for its claimed discovery misconduct, using the Fourth Fan Decl. as factual support. *See* June 2013 [Rule 37 (b) Spoliation Sanction Motion] at 1. The next day, Plaintiff's counsel informed Judge Pitman that Plaintiff was withdrawing the [Rule 37 (b) Spoliation Sanction Motion]."<br>**Defendants motion to strike and for injunction of November 11, 2019, ("Nov 11 Mot") at 4, ECF 374**<br><br>".. Plaintiff concedes, Plaintiff's prior counsel withdrew the [Rule 37 (b) Spoliation Sanction Motion] soon after it was filed, rendering it moot. See id. at 4; see also May 28, 2019 Hr'g Tr. at 14:21-15:2 (Plaintiff's current counsel admitting that AAI's prior counsel advised Judge Pitman that he "[did not] | **F3-2.**   "On May 28, 2019, I attended a status conference before Magistrate Judge Pitman. The<br>judge asked me to tell him any evidence supporting the collusion charge, I responded in essence<br>by stating the fact, as evidence of collusion, that the day after Plaintiff filed its letter sanction motion3 upon Dr. Wang insistence supported with the Fourth Declaration of Dr. Jinqiang Fan<br>("Fan 4th Decl."), the former counsel called the Court jointly with Defendants to withdraw the motion from the Court's consideration and then concealed its withdrawal from Dr. Wang4. This maneuver is arguably the foundation of the entire sanction order, which found Plaintiff submitted Fan 4th Decl. for opposing the motion for summary judgment in substance while in fact the<br>declaration was commissioned and submitted upon Dr. Wang' insistence for the spoliation sanction motion, which was secretly withdrawn by the former counsel and never mentioned<br>again, as if it had never been filed. *See* Ex. 2-5. Defendants misquoted my statements, by cutting off the "evidence of collusion" and | |

| **F** | Defendants Confirmation of Collins collusion to sabotage Pl's 37 (b) Spoliation Motion and to frame Plaintiff for contempt (Continue from F1-1) | The Truth as Shown by the Record: | |
|---|---|---|---|

| | need to consider" [the "Rule 37(b) Spoliation Motion"])"<br>**Id, at 7**<br><br>**F4-1**<br>In order to mislead the Court to believe MJ Pitman had known and dismissed the collusion evidence, Opp at 5 deliberately confused the 37(b) Spoliation <mark>Motion</mark> withdrawn by Collins behind Plaintiff' back on June 18, 2013 with an irrelevant <mark>Motion</mark> by Collins to seek withdrawal in 2015 which was granted in MJ Pitman's May 31, 2017 Order, before MJ received the May 31, 2017 letter from Dr. Xiaolu Wang (Ex. 1 of Wang 6th Dec), which listed 15 pieces of evidence of Defendants and Collins conspiracy. Dr. Wang's letters of Jan 4, 2017 to MJ Pitman (Ex. 16, Id) listed little evidence. Neither Letters has ever mentioned Collins' withdrawal of June 17, 2013 Spoliation Motion. Yet Defendants misrepresented Collins' withdrawal of 37(b) Motion was the "only" collusion evidence presented by the Letters, as though MJ had considered and disregarded it:<br><br><br>"In a January 4, 2017 letter to the Court, Plaintiff's principal, Dr. Xiaolu Wang, claimed that [Collins] had colluded with defense counsel to thwart Plaintiff's efforts to win its case, including by "framing" Plaintiff for contempt by filing the Fourth Fan Decl. for an improper purpose. *See* Dr. Wang's Jan. 4, 2017 Letter. Plaintiff repeated these allegations in a May 31, 2017 letter to the Court. *See* Dr. Wang's May 31, 2017 Letter. In both letters, | "without telling Dr. Wang," and mischaracterized it as "plaintiff's counsel admitted" its<br>withdrawal, so that "the court did not need to consider" the 37(b) sanction motion*s*."<br><br>**Dr. James L Li' Letter to J. Swain of Jan. 6, 2020, ECF 407**<br><br>**F4-2**<br>"8 MR. LI: No, Your Honor, to the extent the previous<br>9 counsel acted adversely against his own client, I'm not<br>10 standing on his shoes. It's the agency law, it's very<br>11 clear, we briefed on this issue. And we have evidence --<br>12 unrebutted evidence -- the previous counsel acted adversely<br>13 against Dr. Wang and the AAI since -- after 2012, basically.<br>14 THE COURT: What's the evidence that prior counsel<br>15 acted adversely to plaintiff?<br>16 MR. LI: Well, there -- Dr. Wang submitted huge<br>17 declaration. There's a lot of evidence in there.<br>18 THE COURT: Tell me what -- tell me what it is.<br>19 Tell me -- summarize for me the evidence that prior counsel<br>20 colluded with defense counsel here.<br>21 MR. LI: Well, here's a one. Very relevant, okay,<br>22 to me. Is when this motion for sanction was filed -- letter<br>23 motion filed -- previous counsel called defendant's counsel,<br>24 they got together the very next day, called Your Honor, said, | |

| F | Defendants Confirmation of Collins collusion to sabotage  Pl's 37 (b) Spoliation Motion and to frame Plaintiff for contempt (Continue from F1-1) | The Truth as Shown by the Record: | |
|---|---|---|---|
| | Plaintiff's sole "evidence" of the alleged "collusion" was the uncontroversial fact that … Prior Counsel and Defendants' counsel jointly called Magistrate Judge Pitman to inform him that Plaintiff intended to withdraw its motion for sanctions. In granting the motion, Magistrate Judge Pitman noted that, "based on what [he had] been able to observe," he was "not aware of any evidence supporting or even suggesting that claims made by plaintiff's principal that counsel have colluded with adverse counsel." Order, May 31, 2017 (ECF No. 275) at 2 n.2.<br><br>**Defs' Opposition of February 7, 2020 to Pl's Motion to Reconsider, at 5. ECF427** | 25 Your Honor you don't need to consider that. Okay. So that<br>1 motion completely taken off the calendar as if it was never<br>2 filed. And it was this --<br>3 THE COURT: Counsel, attorneys in cases frequently<br>4 withdraw motions. I mean how is that evidence of collusion?<br>5 And, you know, adverse counsel speak to each other all the<br>6 time.<br>7 MR. LI: Well --<br>8 THE COURT: In certain circumstances they required<br>9 to speak to each other.<br>10 MR. LI: Well, here's the -- okay. Your Honor, I<br>11 think everybody look at this always say why motion for<br>12 sanction was not filed early. Okay. Your Honor just raised<br>13 that question. Why it was that not filed already. And this<br>14 man has told Mr. Collins to file this motion for many years.<br>15 And eventually it was filed by another counsel -- co-counsel<br>16 - and the very next day it was withdrawn by Mr. Collins<br>17 without telling his own client. I think to me that's very<br>18 telling.<br>19 There's many other evidence in there."<br><br>**Excerpts of May 28, 2019 Court Hearing Transcript at 14:8-15:17** | |
| | | | |

| **F 5** | More New Evidence of Defendants Confirmation of Collins collusion | The Truth as Shown by the Record: | |
|---|---|---|---|
| | **F5-1.**<br><br>After Collins already framed Plaintiff for contempt of court and *procured* the March 26, 2014 order, Collins tried this again in May 28, 2014 MSJ Opp Br to frame AAI for violation of March 26, 2014 Order:<br><br>"Dr. Fan shows how Defendants make additional use of ACE". in Table of Contents.<br><br>Collins' collusion is still relied by Defendants:<br><br>● "Russell Declaration: Compare Mot. at 11-12 (alleging that Russell's declaration was false because it failed to disclose the so-called 'Theft Code' and 'ACE Use Code' Plaintiff alleges were used to steal and use Plaintiffs ACE numbers) with Pl.'s MSJ Opp. at 17 (alleging the existence of the 'Theft Code' and 'ACE Use Code'"<br><br>**Defendants' letter of July 8, 2019 to the MJ Pitman, at 2 (No ECF entry)**. | **F5-2.**<br>"Defendants did not and could not dispute the physical evidence in the Rule 56(h) Motion showing that the following claim in Russell Declaration and cited in the MSJ  is false: "[n]either the ACE Numbers nor the interest rate scenarios generated by the ACE Numbers was ever saved." The Theft Code personally designed and written by Russell specifically "saved" the stolen ACE interest rate paths in the last round of ACE tests and backed out ACE. The ACE Use Code Russell personally designed and coded, used the stolen ACE sequences immediately after the theft of ACE. "Pl.'s MSJ Opp. at 17(alleging the existence of the 'Theft Code' and 'ACE Use Code')"[1] is actually:<br><br>As observed immediately above, there are material issues of fact concerning Dr. Teytel's use of ACE[2] during the course of his development of the so-called LDS sequences. **Dr. Fan shows** how Defendants make additional use of ACE - in fact, how Defendants make use of ACE every day for purposes of trading and hedging MBS. (emphasis added)<br><br>Ex. 3. The only possible reason as to why Collins would make this bare bone allegation that "Dr. Fan shows" without citing admissible evidence from the accompanying Rule 56.1statement is that the Court would find AAI in contempt. Collins had already done this and procured the March 26, 2014 order. Collins acted similarly in regard to the Plaintiff's Opposition Brief to MSJ of May 28, 2014, | |

---

[1] Collins' MSJ Opposition Brief of May 28, 2014, Ex. 3.

[2] Collins' draft of MSJ Opposition Brief concealed all material issues. So did the prior paragraph "immediately above" when Collins wrote it. But that prior paragraph has since been moved up, by the paragraph ending in "See Response to Rule 56.1 Statement 20, 46, 49 and 51", inserted last minute before filing by Munves at Dr. Wang's instruction. See Wang 6th Decl, n.100, at 54.

| F 5 | More New Evidence of Defendants Confirmation of Collins collusion | The Truth as Shown by the Record: | |
|---|---|---|---|
| | | to frame AAI for violating the  March 26, 2014 Order, and for Plaintiff to be held again for contempt of court. To ensure that the Court would again take offense with AAI's action, Collins included an allegation that "Dr. Fan shows" into the MSJB's Table of Contents even though that that the sentence is not actually in any section heading of the body of the brief. Defendants apparently removed "Dr. Fan shows" in order to avoid tipping off of this evidence of Collins' collusion. See Ex. 3.." **P. Toren to MJ letter of August 26, 2019, ECF335, p.6 and p16-18** | |
| | | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

| | | |
|---|---|---|
| ADVANCED ANALYTICS, INC., | : | |
| | : | |
| **Plaintiff and Counterclaim Defendant,** | : | |
| | : | |
| v. | : | No. 04 Civ. 3531 (LTS) (HBP) |
| | : | |
| CITIGROUP GLOBAL MARKETS, INC., | : | |
| SALOMON SMITH BARNEY, INC., and | : | |
| THE YIELD BOOK INC., f/k/a/ SALOMON | : | |
| ANALYTICS, INC., | : | |
| | : | |
| **Defendants and Counterclaim-Plaintiffs** | : | |

PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO MAY 7, 2014 ORDER

# **TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................1

      A.     The Real Sequences Are Not the Alleged Sequences that Defendants
            Produced in Discovery ...........................................................................................5

     In View of the Material Issues that Arise over Whether the Alleged Sequences
          Are the Real Sequences, Reasonable Jurors Could Conclude (Indeed,
          Would Be Practically Compelled to Conclude) that the Real Sequences
          Are ACE or ACE Derivatives ..............................................................................12

     Material Factual Disputes Arise over Defendants' *Theft* of ACE .....................................12

     Material Factual Disputes Arise over Defendants' *Use* of ACE .......................................16

     As observed immediately above, there are material issues of fact concerning Dr.
          Teytel's *use* of ACE during the course of his development of the so-called
          LDS sequences.  Dr. Fan shows how Defendants make additional use of
          ACE – in fact, how Defendants make use of ACE every day for purposes
          of trading and hedging MBS.  Material Factual Disputes Arise over
          Defendants' Manipulation and Alteration of the ACE Test Results ....................17

ARGUMENT ........................................................................................................................18

A.    Material Disputes Exist Regarding Defendants' Misappropriation of the ACE
      Sequences ...........................................................................................................19

      1.     Similarity..................................................................................................19

            Derivation ................................................................................................20

            Use of ACE ..............................................................................................20

            Lack of Independent Development ..........................................................21

      B.     Defendants Provide No Basis for Dismissing Plaintiff's Contract Claim ............22

      C.     Court Should Deny Defendants' Motion on the Basis of Their Violation of
           Court Discovery Orders and Spoliation of Relevant Evidence ...........................22

CONCLUSION....................................................................................................................24

REDACTED

Polish  dep. 142:18-145:12  (emphasis added)(Walker Ex. LLLLL).      REDACTED

REDACTED          therefore, no one could determine from looking at the code that the

derivative ACE sequences had been used.

Defendants say they used LDS100 and LDS200 in production.  Rule 56.1 Statements 43

and 45.  The evidence shows that these were derivative ACE sequences.  So Defendants' own

admissions show they were using ACE derivative sequences.   In addition, evidence shows that

they are using ACE verbatim in their arbitrage strategy, not doubt because the targeted original is

more accurate than the derivative sequences that are approximations of ACE.  *See* Response to

Rule 56.1 Statement 20, 46, 49 and 51.

As observed immediately above, there are material issues of fact concerning Dr. Teytel's

*use* of ACE during the course of his development of the so-called LDS sequences.  Dr. Fan

shows how Defendants make additional use of ACE – in fact, how Defendants make use of ACE

every day for purposes of trading and hedging MBS.

17

| F6 | The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §VI, Wang 6th Decl.) |
|---|---|
| | **F6-1.**<br><br>144.   Mr. Collins and Defendants in collusion pulled off the same Scheme again, this time to bury Plaintiff's Rule 37(b) motion and to exclude Fan 4th Decl. Over my repeated and express objections and strongest warnings, in all six(6) sets of papers filed in connection with Defendants' motion to strike the Fan 4th Decl, (a) Collins misrepresented to the Court, with utmost zeal, exactly opposite to my instructions, that the Fan 4th was ***not* for** motion to sanction Plaintiff's pending FRCP 37(b) spoliation sanction motion, ***nor*** for 56(d) or 56(h) nor other procedural purposes; and (b) Collins has further willfully ***removed*** and ***concealed*** the key fact that Plaintiff had already moved in its letter-motion on June 17, 2013 seeking the spoliation sanction supported by Fam 4th Decl. These six sets of papers are |

| | | |
|---|---|---|
| 2013-7-9 | Collins' "Reconsideration". 1st concealment to Magistrate Judge Pitman | Dkt. 223 |
| 2013-7-31 | Plaintiff's opposition to motion to strike Fan 4th Collins' 2nd time to conceal 37(b) letter-sanction of June 17, 2013 | Unclear the docket numbers if it has ever been filed it on the Dockets sealed. No redacted paper filings by either Defendants or Collins on Dockets. |
| 2014-4-9 | Collins' belated reconsideration of impeachment purpose. Collins 3rd time to conceal 37(b) letter motion to sanction of June 17, 2013,  in front of Magistrate Judge Pitman. | Dkts 236, 238-9 |
| 2014-4-9 | Plaintiff's objections to March 26 Order in front of Judge Swain, Collins 4th  time to conceal 37(b) letter motion for sanction of June 17, 2013, in front of Judge Swain. | Not in Dkt. |
| 2014-5-21 | May 7 Order Objection and Refile March 26 Order Objection.<br><br>Mr. Collins altered March 26 Order Objection after 10pm, again deliberately to conceal the fact Fan 4th was filed in support of 37(b) sanction motion and to conceal the pending FRCP 37(b) | March 26 Order Objection Sealed Dkt 249;<br>Redacted Dkt 252<br><br>May 7 Order Objection Sealed Dkt 249;<br>Redacted Dkt 253 |

| F6 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §VI, Wang 6th Decl.)** | |
|---|---|---|
| | | motion from Judge Swain. Collin's 5th time concealment. | |
| | 2014-5-21 | Plaintiff's Objections to May 7 orders is the 6th time concealment, in front of Judge Swain | Judge Swain's order of July 15, 2014 sustained May 7 Order. Dkt. 259. |

145.    When I first found out, contrary to his assurance to me, Mr. Collins repeatedly deleted the key facts wholesale, ¶129, in his filings behind my back, I was surprised and confronted him and asked him why. His initial answers were inadvertence. Yet he deliberately did it again and again.  For example,

(i)  Plaintiff's Objection April 9, 2014 to March 26 Order in front of Judge Swain, to be filed had the opening[1]:

"In opposition to [SJ] and Daubert motions, and in support of Plaintiff application for Rule 37(b) sanction motion against Defendants violation of Court orders and spoliation, Plaintiff submitted [Fan 4th Decl.]". (Underline emphasis added.)

In his final filings behind my back, contrary to his promise to me that he would keep them, Collins **deleted the above underline** emphasis and other key facts to procure and sustain Contempt Order, now for the third and fourth time for the two April 9th filings, ¶142. Collins totally concealed from Judge Swain Plaintiff's **legitimate** real purpose, as to why Fan 4th Decl was prepared and/or submitted: to support motions under FRCP37(b), 56(d)(h). March 26 Order at 32-34 held that Fan 4th Decl *is admissible* to support motions of non-merits including sanction motions, and therefore Plaintiff has committed no violation of any rules or orders, and there was no basis for Contempt Order. Yet Collins deleted the key facts totally clean. Not only Collins did not want the Judges to know sanction motions under FRCP 37(b), 56(d)(h) being the only Plaintiff's purpose as I had instructed Collins all along, Collins did not even allow it to be even one of three purposes. Collins wants the Contempt Order against Plaintiff as is. He had worked very hard in collusion with Defendants to procure and to sustain Contempt Order.

146.    After Collins concealed the key facts for the third and fourth time, and after Collins had sabotaged all of Plaintiff's relief efforts, such as a motion under Rule 56(d), ¶IV.D *infra*, on April 25, 2014 I thanked Mr. Collins for his service and informed him that he was no longer allowed to work on Plaintiff's papers. I sent Mr. Munves the key facts and controlling laws, ¶129. Yet, when **Objection of May 21, 2014** was about due, Mr. Munves informed me that Mr. Collins "voluntarily helped" the Objection brief, which turned out be the same awful "Objection" of April 9, 2014. I again instructed Munves to present the key facts, ¶129, and I sent him some drafts of Objection immediately. Surprisingly, the papers

---

[1] Ex.4-2014-apr 7 AAI Objection draft X-6pm.doc, Ex.4 to Wang Decl in Opp. to Counsel Withdraw.

| F6 | The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §VI, Wang 6th Decl.) |
|----|---|
| | filed behind my back is not even the Objection Munves had agreed to file the night of May 21, 2014. Collins again worked hard that night to delete, cleanse or alter all the key facts from the papers. For example, the opening of the Objection (i), ¶145, has been altered by Collins, this time to: |

<br>

"In opposition to [SJ] and Daubert motions, and in support of Plaintiff's objection to the prohibition against being permitted to file a Rule 37(b) sanction motion for violation of Court orders and spoliation, Plaintiff submitted [Fan 4th Decl.]". (Underline added.)

This alternation is misrepresentation even worse than his prior repeated deletion. Collins mischaracterized "Plaintiff [application for] Rule 37(b) sanction motion" of June 17, 2013 as "Plaintiff's objection to the [future] prohibition against being permitted to file a Rule 37(b) sanction motion" of March 26, 2014. Collins **concealed** Plaintiff's real purpose of Fan 4th Decl: to support sanction motions under Rule 37(b), 56(d)(h), and **concealed** the fact that the Rule 37(b) letter-motion has been filed, on June 17, 2013 supported by Fan 4th Decl and is pending.

147.    Collins' wishful "prohibition" did not even exist when Fan 4th Decl was submitted then, and still cannot exist now. "Prohibition" could only be Collins' and Defendants' wishful thinking and their joint mischaracterization[2] of March 26, 2014 Order, nearly a year after Plaintiff submitted Fan 4th Decl.  Plaintiff's original draft[3] of the objection presented the controlling law that only *granting* (not filing) motion under FRCP16(b)(4), not FRCP37(b), requires court's leave and "good cause", as also indicated by all the cites and reasoning in March 26 Order, 35-36, and that Defendants and Collins' wish of "prohibition against being permitted to file a Rule 37(b) sanction" is clearly erroneous and contrary to law. Collins deleted the controlling precedents all clean, in order to secure Contempt Order and concealed the pending Rule 37(b) sanction motion altogether. Collins' briefs made **no** "objection to the prohibition", ¶149, *infra*. Once Contempt Order was secured, in collusion with Defendants, Collins immediately flipped again and mischaracterized it as blanket injunction on **any and all** Plaintiff' possible sanctions motions against Defendants, ¶151.

148.    (ii) Plaintiff's original Objection drafts pointed out the fact:

March 26, 2014 Order at 25 held "Despite the seriousness of its charges, AAI has not yet sought spoliation sanctions.". It is clearly erroneous, because Plaintiff had already filed FRCP 37(b) letter-motion supported by Fan 4th Decl. on June 17, 2013 to sanction Defendants for spoliation and for violation of existing Orders.

Collins' filing dismissed it to fn. 4, p.22, and altered it to:

---

[2] Collins' misrepresentations, mischaracterizations, positions and goals were the same as Defendants'.
[3] See p.32, Ex. 4, *id.*, AAI Objection draft X-6pm, also see ¶118, Fn. 77.

| F6 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §VI, Wang 6th Decl.)** |
|----|----|
| | The Magistrate Judge criticized Plaintiff for having not yet sought spoliation sanctions. Order at 25 (Dkt. 235). But Plaintiff <u>did seek spoliation sanctions</u> as soon as it had completed the Fan Fourth <u>in its original June 6, 2013 opposition papers to Defendants' pending summary judgment motion (beginning at page 23)</u> which were served on Defendants and filed under seal on June 6, 2013. Because the motion is not fully submitted, it is understandable that the Magistrate Judge did not review it. (Underline added) |

So not only Collins once more ***concealed*** Plaintiff's spoliation sanction motion under FRCP 37(b) filed on June 17, 2013 to sustain the Contempt Order he had procured, but instead *also misrepresented* that Plaintiff ***only*** improperly raised spoliation sanction in its *SJ opposition papers* of June 6, 2013, exactly as the inapposite odd-ball cases he and Defendants cited to mislead the Court, ¶119-147, *Supra*.  In the name of "Permit Plaintiff to Move Under Rule 37", §III.A.3, p.23, *id*. Collins repeated the same misrepresentation, and then used the odd-ball cases to totally mislead the Court, not only to frame Plaintiff for contempt of court but to grant SJ for Defendants.

149.    So in Objection, Mr. Collins once again went out of his way to delete all references to Plaintiff's spoliation motion under FRCP 37(b) filed on June 17, 2013, and concealed from Judge Swain its existence and the key facts ***e.g.,*** Fan 4th Decl was submitted to support it and other motions of non-merits, in order to get Fan 4th Decl excluded and Plaintiff sanctioned. I asked Mr. Collins why did he deliberately and repeatedly do that? Collins' answer was that Rule 37(b) sanction is a "nuclear option" and "a double edge sword". His answer made no sense to me. No one should make any misrepresentation to the Court, for whatever purpose, certainly not for the purpose to conceal 37(b) spoliation motion against Defendants. Collins's answer was only admission to his attempts to block 37(b) motion for Defendants, but still did not answer the question: why did Collins work so hard to frame Plaintiff for violation of schedule orders and contempt of court.

150.    Mr. Collins did not want Plaintiff to file 37(b) motion to cause "nuclear" damage to Defendants, but he thought that the Contempt Order he procured with his misrepresentation "nuked" Plaintiff. On March 27, 2014, **the very next day** after the Contempt Order, he suddenly became alive from his previous stonewalling silence to my strong objections to his citing Fan 4th in 1st SJB, and argued feverishly why the Contempt Order was completely correct and [***his***] ***cites*** of Fan 4th Decl were ***inadmissible and sanctionable***. My question to him was: so you knew this all along, why did you insist to do it over my objections every step of the way? He had no answer. His above-face confirmed that he knew very well, all along, that the Contempt Order would be the natural consequence of all of his actions against my objections: his needless cites of Fan 4th Decl in 1st SJB to frame Plaintiff for violation of orders, his plainly misleading argument and duplicitous behavior in the "opposition" to the 37(c) motion which he set Plaintiff up, *etc.* §III,C,e-f *infra*. Collins believed the Contempt Order he procured with Defendants "nuked" Plaintiff, and told me that now Plaintiff would lose SJ and so I should agree to dismiss the Case for nothing. If Judges had found out Fan 4th Decl was submitted to support pending FRCP 37(b) motion, it would have "nuked" Defendants.  Concealment of Plaintiff's pending FRCP 37(b)

| F6 | The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §VI, Wang 6th Decl.) |
|---|---|

spoliation sanction blocked the "nuke" against Defendants and excluded Fan 4th Decl, instead "nuked" Plaintiff.  Collin's one move accomplished both objectives.  That was why Collins steadfastly and relentless concealed Plaintiff's FRCP 37(b) motion for more than six (6) times. In his proposed Leave for Reply in June 2014 for the Objection to the Contempt Order in front of Judge Swain, for the *seventh (7th) time,* Collins concealed Plaintiff's FRCP 37(b) spoliation sanction filed on June 17, 2013 and all other key facts, *e.g.*, Fan 4th Decl had been filed in support of the sanction motion. It was blocked. See fn. 106.

151.  Collins and Defendants deceived and consent to **deceive the Court** that Plaintiff had *not* sought spoliation sanction under FRCP37(b), had *not* filed Rule 37(b) letter-motion supported by Fan 4th Decl, but only "sought leave for make a motion" under "Rule 16(b)(4) and 37(a)", and procured Contempt Order of March 26, 2014. After securing the Contempt Order in collusion with Defendants, Collins immediately switched position from Plaintiff's "contemplated" sanction motions being "16(b)(4) and 37(a)", and in collusion with Defendants, jointly mischaracterized Contempt Order as blanket **injunction order** on **any** Plaintiff' possible sanctions motions against Defendants, pending or contemplated, **not just FRCP 37(a) but also FRCP 37(b) or 56(h)**, the permanent shackles stripping off all of Plaintiff's rights to seek any relief from Defendants' railroading and  a get-out-of-jail-free card for Defendants.

### e.   Collin's Duplicitous Behavior to Frame Plaintiff for Contempt Regarding Fan July 2012 Declaration

152.  Collins' concealment and misrepresentation of the key facts regarding Fan July 2012 Decl. in Collin's multiple sets of opposition papers to Defendants' Rule 37(c) motion from June 2012 until 2014, prompted Magistrate Judge Pitman to rule on March 26, 2014 in Contempt Order, at 16,

> AAI's attempt to resuscitate the Fan Reply is particularly odd because AAI does not even bother to address the fact that both Judge Swain and myself have ruled that the Fan Reply should be stricken. AAI's papers are completely silent on this issue, suggesting that AAI itself realizes that it has no colorable argument to support its actions.

At 37, *id*.

> I find this sanction to be especially appropriate in light of the fact that AAI attempted to re-incorporate the Fan Reply, despite my Order that it be stricken and Judge Swain's affirmance of that Order. Plaintiff's duplicitous behavior and unjustified submission of the Fourth Fan Decl….

Mr. Collins framed Plaintiff for violation of a schedule order and contempt of court, in collusion with Defendants.

153.  On April 30, 2015, regarding his steadfast refusal against my instruction to explain any of Plaintiff's legitimate basis for submitting Fan 2012 July Decl, Collins

| F6 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §VI, Wang 6th Decl.)** |
|---|---|

declared to Magistrate Judge Pitman that that he could not do so because Fan 2012 July Decl was, "as its title indicated, a reply to the expert opinions of Defendants' experts." Collins did not tell the Court the truth that Collins was the one who changed the title from a declaration to a "reply to the expert opinions of Defendants' experts."

154.    If as Mr. Collins suggested, that [Collins's] change of the title of declaration to "expert report" caused it be stricken, then Collins did so intentionally. **After** Fan 2012 Notice had been excluded, and **after** his concurrence with Defendants to exclude both Third Fan Declaration and Third Wang Decl. of September 27, 2012, Mr. Collins tried to ply the same trick again. He attempted to change the title of Fourth Fan Declaration: replacing "Declaration" by "Expert Report". Mr. Collins gave up his proposal of changing title because his refused to  explain his rationale in face of my strong objection. So its name "Fourth Fan Declaration" stayed. But it made little difference to Mr. Collins, who still relentlessly misrepresented the whole Fourth Fan Declaration was prepared and submitted for trial and for SJ opposition, **not** for support of Plaintiff's 37(b) motion, **nor** FRCP 56(d)/(h) motions. Mr. Collins framed Plaintiff for the Contempt Order, and excluded palpable evidence of Defendants' fraud deliberately.

155.    Because of Collins' silence and refusal to present expert's testimony in support of sanctions, and Defendants' steadfast misrepresentation and mischaracterization, ¶45-47, §III.E.c, Contempt Order at 25 stated

 "After considering the parties' written submissions and hearing oral argument, I found that there was "very, very little evidence, if any evidence" that Defendants had committed fraud and no justification for AAI's belated filing of the Fan Reply (Tr. of Discovery Conference, held on September 5, 2012 (Docket Item 175), at 94). Accordingly, I granted Defendants' motion to strike the Fan Reply,"

156.    Having misled the Court to closing of discovery and to renewal of SJ on September 5, 2012, Collins would then play the same old trick: contrary to my express instructions, instead of for only sanction motions, he would submit experts' declarations for support of SJ opposition and trial ostensibly in violation of the schedule order to establish the excuse for Defendants' sanction. When Plaintiff's 37(b) sanction motion against Defendants was finally filed, Collins  buried it in collusion with Defendants. *Supra* ¶140-146.

### f.    Collins' Plainly Misleading Argument to Frame Plaintiff for Contempt—Misrepresenting Facts in Fan 4th Decl as "Opinions"

157.    Acting in concert with Defendants, Collins maneuvered to exclude Fourth Fan Decl. with "plainly misleading arguments" on the law and misrepresentations of the facts. Mr. Collins misrepresented *e.g.* that Fourth Fan Decl. was "*opinions* within the 4 corners of Fan 2nd Decl.", despite the cites from Fan 4th Dec. were all *facts*, *e.g,* English

| F6 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §VI, Wang 6th Decl.)** |
|---|---|
| | translation of Defendants' code, for impeachment purpose against the falsity of the purported facts or data relied by Defendants' SJ. [4] |

158.    I had expressly and repeatedly warned Collins about Defendants' Deceit. Collins also knew very well Plaintiff's **ACE Verbatim Use Claim**.  *See* p.3, Ex. 3 of Wang Letter to Hon. Pitman of Nov. 30, 2016, Ex.11; Robert Russell 2007 dep. 198: 10-14; para. 20, 46 and 49, 61, of Plaintiff's 56.1 Response of May 28, 2014[5].

159.    But Mr. Collins has totally disregarded my warnings but relentlessly embraced both Defendants' Deceits in all the papers he prepared in "opposition" to 2013 SJ and Defendants' motion under FRCP 37(c), and in all subsequent submissions to the Court. He has blocked all Plaintiff's attempts to seek reliefs.

160.    Totally disregarding my repeated strong warnings and express instruction of citing only the original factual material on the record, and pointing out that any cites of Fourth Fan Decl were merely cites or direct translation of the factual material for impeachment purpose, jointly with Defendants, Mr. Collins misrepresented and insisted the cites of factual material as "opinions",  misled the Court and deprived the Court the help of Plaintiff's experts, e.g., regarding the fact revealed by the programmer's log id recorded in the log file for *each* revision of *each* code file in MR-RCS that Robert Russell is the author of Theft Code and ACE Use Code[6].  Russell's log id is either "RR 06701 or RRussell"[7].

161.    To help the Court to visualize and understand the functions and connections of the Theft Code and ACE Use Code, their flow charts were presented in Fan 4th Decl. Flow charts are of great help for seasoned programmers, even more so for the Court. They are indispensable to fully understand spaghetti code produced by Defendants.  Ex.WW is flow chart of "use-ccoas-correct" function calls. ¶243, *Id.* Fig. 2-3 of Ex. SSS, and Ex. CCC are the flow charts comparison of Theft Code ¶7-16, ¶122, ¶140, and ACE Use Code, ¶174-175, ¶179, ¶190, *Id.*

162.    For a court ruling in a case with complex long history, WestLaw automatically generates a flow chart, to illustrate its connection and relations to other related rulings in appeals and derivative cases. The flow chart is a fact, not opinion produced by WestLaw.  Similarly, generating flow charts from a set of code files is also standard automatic process, can be done by simple software tools. Flow charts generated from a set of code files are also facts, not opinions.  I explained to Collins that. In addition, it is also a fact that Fig 1-3, 5 are Plaintiff's allegations, and Fig. 4 is Defendants' admission.

[4] Contempt Order at 22, "Plaintiff's characterization of the opinions in the Fourth Fan Decl. is plainly misleading."
[5] *See* F8, C of Fourth Fan Decl.
[6] Magistrate Judge Pitman's order of May 9, 2014, Fn. 2, P.8. See Fan 4th Decl. ¶15, p.25, fn 19, ¶¶124. 126-7, fn.31., ¶134(1).
[7] Russell 30(b)(6) Depo of March 2, 2006, Tr. 93:2-18, Ex.6

| F6 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §VI, Wang 6th Decl.)** |
|----|---|
| | 163.    Yet, **Collins concurred with Defendants'** Rule 37 (c) motion to single out the flow charts Ex. WW, Ex. CCC and Ex. SSS for exclusion.  Exclusion of these figures covered up Defendants' Deceits, misleading the Court to believe Plaintiff's allegation as to how ACE is used is illustrated as Fig. 1, even after theft of ACE, when Plaintiff's allegation is Fig. 3 for ACE Verbatim Use Claim. |
| | 164.    Collins' "plainly misleading arguments" and "duplicitous behavior" over Client's express and repeated objections, as correctly found by the Judges, in their briefs filed on behalf of Pl, *succeeded to procure* these ruling against Pl. But Collins turned around to use these rulings to falsely accused Hon. Pitman "obvious hostile" and "has a jaundiced view" of Plaintiff's case and Hon. Swain "doesn't understand and does not care", to dis the Judges, and blamed the Client for objecting Collins' railroading, and to dissuade new lawyers from the Case. |
| | **D.    Collins Blocked Plaintiff's Relief Under FRCP 56(d) Supported by Fan 4th Decl** |
| | 165.    **Summary** In connection with Plaintiff's SJ Opp. papers of June 10, 2013, Mr. Collins blocked Plaintiff's motion to seek relief under FRCP 56(d), arguing that **Plaintiff would still defeat SJ** even *without any* testimonies from Plaintiff's experts, even if Defendants would win their motion of April 4, 2013 ("Daubert Motion") to exclude all testimony by Plaintiff's expert Prof. Fan.  But once he succeeded in procuring the Contempt Order of March 26, 2014 against Plaintiff to exclude Fourth Fan Decl from support of SJ opposition, see IV, the next day, March 27, 2014, he immediately *flipped his position* and argued that **Plaintiff would lose SJ** without Fourth Fan Decl., and told me that I must agree to dismiss the case for nothing now. Yet as soon as Mr. Collins' push for dismissal failed, within a week when I asked to file a motion to seek relief under FRCP56(d) again in connection with Plaintiff's revised SJ Opposition papers to be filed on April 25, 2014, Mr. Collins immediately *flipped his position for the second time* and argued that **Plaintiff would still defeat SJ** without Fourth Fan Decl, again to block Plaintiff's relief under FRCP56(d). After the SJ papers have all been filed on May 28, 2014, Mr. Collins *flipped for the third time*, told me that **Plaintiff would lose SJ**, and asked me to dismiss the Case for nothing. All of *his flip-flop* positions regarding sufficiency of Plaintiff's evidence *always consistently* blocked Plaintiff's reliefs, concealed Evidential Documents and railroaded Plaintiff for Defendants. |
| | 166.    *Whenever* Collins were steadfastly refusing my instruction to file a FRCR 56(d) motion[8], for which Fan 4th  Decl. was not just admissible but required, Mr. Collins assured me that even if *all* of Plaintiff's expert testimonies, including *all* Fan 1st-4th Decl.'s, were to be excluded, Plaintiff would still win SJ because of so much liability evidence, so the relief of FRCR 56(d) was not available to Pl. |

---

[8] In response to Defendants' meritless Daubert motion. Also Client had warned Collins for years that their delay would result Defendants' 37(c) motion to strike Fan 4th unless Pl files 37(b) motion.

| F6 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §VI, Wang 6th Decl.)** |
|----|---|
| | 167.    On March 27, 2014, *One day after* Mr. Collins succeeded to procure Contempt Order to exclude Fan 4th, Mr. Collins changed position immediately, and claimed that the exclusion is fatal so Plaintiff must settle with Defendants *for nothing*. |
| | 168.    In response to Mr. Collins' push of dismissal based on his doom's day prognosis of exclusion of the opinions of Fan 4th in support of SJ opposition, and in view of the holding in March 26, 2014 Order, 33-34, Plaintiff's expert declarations are admissible in support of motions on issues of non-merits as I had predicted and argued a year before in response of Defendants' Daubert motion, I again renewed my instruction of early 2013 to seek relief pursuant to FRCP56(d)/(h) fully supported by Fan 4th  Decl. Mr. Collins again steadfastly refused it. |
| | 169.    In connection to Defendants' SJ of 2013, Mr. Collins prevented Plaintiff from seeking relief under FRCP 56(d) with various excuses that he knew were untrue. He first told me that a non-moving party cannot file both opposition and a motion to seek relief under FRCP 56(d), despite of numerous precedents I had sent to him held otherwise. He knew that this pretext is false when he made it. In fact, in response to Defendants' SJ of 2008, he on behalf of Plaintiff filed both the motion under FRCP56(d) ***and*** SJ opposition papers, *see* Fn 6, P.20, Plaintiff's SJ Obj. Br. of 2008, Dkt. 116. |
| | "In conjunction with this Objection, AAI's counsel submit their Affidavit under Rule 56(f)[9], averting that AAI is unable to present facts essential to justify AAI's opposition to defendants' motion for summary judgment. These facts are contained in the development and testing files for defendants' purported sequences." |
| | 170.    At my strongest objection and protest to Collins' blocking of motion under Rule 56(d), Plaintiff's 2013 SJB finally was inserted, but only as a footnote, Fn 14, p.25, Dkt 219:<br>14 To the extent that this application can be viewed as being made pursuant to F.R.Civ.P. **56(d),** Plaintiff makes such application in the alternative. As stated above, Plaintiff has in this Memorandum set forth extensive grounds for denial of the summary judgment motion. Nonetheless, as a result of Defendants' violation of Court Orders and spoliation, there are additional facts that Plaintiff cannot present to justify its opposition to the motion. In support of this application under Rule **56(d),** Plaintiff relies upon the Fan Fourth Declaration. |
| | 171.    After Collins and Defendants succeeded to exclude Fourth Fan Decl from support SJ Opposition, Collins still blocked Plaintiff to seek relief under FRCP 56(d), and even removed  Fn 14 above altogether, on the excuse that Plaintiff would win SJ without Fourth Fan Decl because Plaintiff still had so much evidence cited in Fan 2rd Decl. Collins ignored Defendants' Daubert motion to exclude all Fan testimony.  Defendants' SJ Reply argued that since Defendants succeeded to exclude Fourth Fan Declaration, and the help to |

---

[9] "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).", Committee Notes on Rules—2010 Amendment.

| F6 | **The Collusion as shown by the undisputed testimony and documentary evidence** (Continue from F2-1, §VI, Wang 6th Decl.) |
|----|--------------------------------------------------------------------------------------------------------------------------|
|    | the Court to understand [ACE Use Code translated by Fan], so the Court may not consider any of the physical evidence of Defendants' misappropriation, such as ACE Use Code. |

172.    Collins' optimistic assessment for SJ has turned out to be only an excuse for blocking Plaintiff's FRCP 56(d) relief.  After 2015, Collins coerced Plaintiff to dismiss the case for *nothing*, because Plaintiff does not have sufficient admissible evidence to defeat SJ according to him, and his alleged "lack of understanding" and "hostility" of Magistrate Judge. Collins has yet to explain, if that is his belief, why has he opposed FRCP 56(d) for 3 years, and why did his 3rd SJB removed material evidence and echoed all of Defendants' deceits to mislead the Court.

**Excerpts from §IV, Wang 6th Decl.**

| F7 | **The Collusion as shown by the undisputed testimony and documentary evidence** (Continue from F2-1, §V, Wang 6th Decl.) |
|----|-------------------------------------------------------------------------------------------------------------------------|
|    | **F7-1.** |

### V.    Echoing Defendants, Collins SJM Opposition Brief Mischaracterized *Plaintiff's* Allegations as *Defendants'* False Claims, Concealed  Material Issues and Evidence of Defendants' Use of ACE

#### Summary

173.    First Collins framed Plaintiff for contempt through his First SJB of 2013, and his six (6) sets of papers "opposing" Defendants' Rule 37(c) sanction motion to strike Fan 4th Decl., §IV.C.  Despite Contempt Order directed Plaintiff to replace the cites from Fan 4th Decl by original factual material, Mr. Collins just deleted all the cites without  appropriate factual material replacement in his Second SJB of April 25 of 2013[10], ¶124-7.

174.    Collins was not done. His uncalled-for revision of Memorandum of Law in Support of Plaintiff's Opposition to SJ submitted May 28, 2014 ("Third SJB" or "SJB") further deleted or mischaracterized all the remaining material issues and facts.

175.    Defendants' SJ of 2013, like their ill-fated SJ of 2008, again relies entirely on **Defendants' Deceit** and **Defendants' Flagrant Deceit**, *i.e.* the mischaracterization of Plaintiff's claims as "[their phony] YB sequences incorporated or were derived from ACE numbers"[11]. ¶45-49, *supra*.

---

[10] Except some insignificant inputs by Mr. Munves and me, and similar for Third SJB.
[11] "…for AAI to succeed on its misappropriation claim it must demonstrate either a 'substantial similarity' between the ACE Numbers and the Yield Book sequences or that the Yield Book sequences were 'substantially derived' from its trade secret." Defendants' SJ Br of 2013, p.1.

| F7 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §V, Wang 6ᵗʰ Decl.)** |
|---|---|

176.    Now Defendants and Mr. Collins' pending SJ briefs and most recent filings with the Court have exposed their joint Scheme:

(**a**) **Defendants** mischaracterized all *Plaintiff*'s claims as *their exact opposite:* the three *Defendants' False* Claims, *see* ¶45-49;

(**b**) **Collins'** SJB concealed or mischaracterized *all* the material issues and conclusive misappropriation evidence, echoed Defendants' deceits and *embraced all* three **Defendants' False** Claims as purported "*AAI's* claims". ¶30, ¶185-196. Defendants' Deceit is culminated in Collins' rendition. According to Collins' SJB, **AAI alleged** that ACE is *not* trade secret and AAI stole ACE from Defendants, ¶187.

(**c**) **Defendants** sought SJ by dismissal of the purported *"AAI's claims"*-- **the straw man** stood up by *Defendants*. *See* 1], 2], of Annex A and Annex B.

177.    To strike Fan 4ᵗʰ Decl, Defendants misrepresented to the Court that "none of [Fan 4ᵗʰ Decl] are of any use to the Court in the context of summary judgment briefing." Fn.66, ¶100.  Later Defendants could not dispute that the original cites in Plaintiff's 56.1 Response are facts. As correctly ruled by Hon. Pitman, Dkts. 256, 261, factual material is admissible. Yet, Collins still attempted to exclude the factual evidence from Plaintiff's Rule 56.1 Response, §V.B.

178.    **After** Defendants and Collins in collusion have stricken Fan 4ᵗʰ Decl and deprived the Court's solely needed experts' help to understand the evidence, Defendants' 56.1 Reply of February 23, 2015 is full of improper legal arguments claiming that **now** because the Court can longer understand these facts without the help from Plaintiff's experts, the Court must discard the **factual** evidence in Plaintiff's Rule 56.1 Response. Therefore, I believe **Evidential Documents are essential to Plaintiff's SJ opposition.**

179.    Mr. Collins presented no material evidence in his briefs, made Plaintiff's experts, e.g., Dr. Fan's declarations as the targets *per se* for exclusion to conceal evidence. He embraced Defendants False Claims as Plaintiff' claims to deceive the Court. For the evidence already in the record, e.g., Fan 2d Report of 2007, Collins altered it to its **exact opposite** to support Defendants False Claims, ¶187. The recent submissions by Mr. Collins and Defendants to the Court and their collaborated efforts subsequent to SJ, in approximately November 2016-2017, confirmed that Mr. Collins and Defendants' deceits were **intentional** to deceive the Court to derail the Litigation, §V.C.

A.    <u>Mr. Collins's Three SJ Opposition Briefs</u>

180.    Over my strong objections, Collins cited Fan 4ᵗʰ Decl as many as forty-four (44) times in the 1ˢᵗ SJB of 2013, Dkt 219,  and procured the Contempt Order to strike Fan 4ᵗʰ Decl, §IV.C.c., ¶150.  Contempt Order, at 32, still held "AAI's application to submit an

| F7 | **The Collusion as shown by the undisputed testimony and documentary evidence** (Continue from F2-1, §V, Wang 6th Decl.) |
|---|---|
| | amended response to Defendant's motion for summary judgment is granted; AAI is directed to serve and file its amended response within thirty days…".  Plaintiff was to replace the cites from Fan Decl in 1st SJB by the original documentary evidence, if it was cited by Fan Decl. |

181.    Yet in Second SJB of April 25, 2014, Collins cleansed all cites from Fourth Fan Decl., ***without*** any replacement of any important original factual evidence cited by Fan 4th Decl. To justify his many cites of Fan 4th in 2013 SJB, Collins stated to me that the evidence was vital for Plaintiff to win SJ opposition.  Further Collins put "if as AAI alleges" before any remaining factual statement of Defendants' misappropriation and made it looks like AAI's speculation. In Second SJB, Defendants' **concealment of Evidence Documents** was covered up and presented as AAI's admission of **no evidence** or even evidence of **non-use** of ACE. *E.g.,* their withholding of entire TYB-RCS code relating to interest rate scenarios generation and Withheld Offline Code from MR-RCS was covered up but phrased as "Defendants have not produced any code that could read in the ACE sequences", at 17, *id.*  MR-RCS files contain environmental variable SFILE which read seed files not in RCS to generate LDS Seq. III was misrepresented as "I, Defendants' Use of ACE Derivative Sequences was not Detectable from the RCS Files Produced by Defendants".

182.    For such a dire Second SJB, and the even worse Third SJB filed behind my back, again Mr. Collins steadfastly blocked Plaintiff's 56(d) relief in defiance of my repeated, express and explicit instructions. He went even further, deleted clean Plaintiff's request for Rule 56(d) relief in Fn 14 in 2013 SJB.

183.    The Second SJB was *already in full compliance* of Magistrate Judge Pitman's orders of March 26 and May 7, 2014. There is no more need to amend other than citing the factual material from revised new 56.1 Response of May 28, 2014. Yet in the amended Memorandum of Law in opposition to  SJ M of May 28, 2014 ("3rd SJB" or "SJB"), Mr. Collins cited nothing but *deleted* and *disavowed* Basic Fact, *concealed or mischaracterized virtually all* **admissible** *material evidence and facts* supporting *Plaintiff*'s claims or exposing Defendants' fraud, including all those presented *correctly*, in the April 25 SJ Opp Br or in Plaintiff's successful 2009 SJ Appeal Brief[12].

184.    Upon my insistence, with the help of Mr. Munves, Plaintiff managed to file a more reasonable Response Under Rule 56.1 of May 28, 2014 which highlighted the disputed issues of facts correctly. Yet Collin's draft of SJB cited ***no factual*** evidence presented in Plaintiff's Response Under Rule 56.1 of May 28 concluding that Defendants ***used*** stolen ACE in trading,

185.    Closely following Defendants' script to mislead the Court, Collins again tried to portray the ***only*** "material" dispute is whether Radak Seq. I are generated by TYB code using Decoy Seeds (as though the fake Decoy Seq. II were "Real Sequences"). See p.5, SJB.

---

[12] Except a few corrections or cites reinserted by Mr. Munves, at my insistence.

| | |
|---|---|
| **F7** | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §V, Wang 6th Decl.)** |

186.    Collins' SJB also failed to address Defendants' deceptive terminology such as referring to both Seq I, the sequences manufactured by Radak entirely for the purpose of litigation and Seq II, the Decoy Sequences as "YB Sequences." Instead SJB parroted Defendants' confusing terminology "YB sequences" for the phony sequences Seg I and Seq II. The SJB insinuated Seq II as the non-produced Seq III LDS sequences and/or Seq IV, ACE sequences.

187.    Collins' SJB **disavowed** Basic Fact, *dismissed* its implications fatal to Defendants' fraud as "red herring" and embraced Defendants' Deceit. SJB, at 13 and 21, Ex. 12.  It altered Fan testimony to *its exact opposite* to support Defendants' False Claim which SJB embraced as Plaintiff's allegation**:**

> Second, "gauss_random.c with fixed long seeding" (p. CGM00238 in Walker ex. SS). As explained in the 2nd Fan Dec. paras. 44-45 (Walker ex. E), *Defendants did not possess seeds to generate ACE sequences, meaning that they could not generate ACE by simply feeding seeds into their random number generator.* ..

> Thus, the Teytel Notebook reference to "gauss_random.c with fixed long seeding" was a reference to the gauss_random.c modified to use the ACE sequences during the testing of ACE, because that version of gauss_random.c had a "long" seed, ***That [Redacted]***
> *code file* would not be used to generate Ids100. ***It would be used only generate ACE64.*** (Emphasis added)

188.    In truth, the falsity of Defendants' False Claim shows that Defendants' Deceit was designed to exclude ACE from discovery and to conceal ACE, ¶46. **Relying on Defendants' Deceit** to turn logic to its head, Defendants *cited* Basic Fact to deceive the Court that (i) since TYB code do not *generate* ACE, so the purported "AAI's claim" (in reality Defendants' False Claim) is refuted[13]; and (ii) the TYB production code files concealed by Defendants were irrelevant to the purported "AAI's claim". **So the diabolic Defendants' Deceit turned evidence of *ACE Verbatim Use* by Defendant into "*non-use*"** by Defendants as (i), see ¶27-29, and turned ***Defendants' admitted concealment* of key evidence --** TYB production code reading ACE---**into "*red herring*"** as (ii). *See* ¶51, ¶181, ¶178(c).

189.    Third SJB has cleansed out from Second SJB not just ACE Verbatim Use Claim, but also cleansed out Plaintiff's ACE Derivative Use Claim altogether with its *remaining* supporting evidence, *e.g.*, Fan's finding that Teytel's one and only algorithm used the stolen ACE as the target to select all the "LDS" sequences (**Seq III**) and that Seq III are ACE derivative sequences. To divide-and-conquer, Teytel Algorithm selects eight small sequences, each targets a portion of ACE, then pieces them together to get one LDS.

---

[13]  Defendants' SJ Br of April 5, 2013 at 21, Defendants' SJ Reply of 2015, at 6.

| F7 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §V, Wang 6th Decl.)** |
|---|---|

Defendants *concealed* all seeds of LDS100 and LDS200 (which are **_not_** the **decoy** mixed seeds in MR code but input through "sfile". Annex A,  5]), *spoliated* development files and testing records, and *withheld* key code files from MR-RCS from discovery production in 2005, and again in 2011 in their production of development and testing records to purportedly comply Magistrate Judge Pitman's order of June 26, 2008 and Judge Swain's order of Nov. 22, 2010.  Consequently, Plaintiff's expert, Prof. Fan can build nothing, **not** even one single TYB system, for testing a sequence.

190.    A comparison of the Table of Contents of 2nd SJB (Ex.5 attached to Wang Letter to Hon. Pitman dated Nov.30, 2016, Ex.10) *vs* the Table of Contents of 3rd SJB, Ex. 12, shows that 3rd SJB *swept clean* or mischaracterized all the 10 material issues (as twisted and watered down as they were already) in §B-L, p.3-20 in 2nd SJB. In 3rd SJB, only three (3) sections remain in the "Background":

- A. "The Real Sequences Are Not the Alleged Sequences that Defendants Produced in Discovery"

  Where the "Real Sequences" are again confused with the fake Decoy Seq. II. The misdirection is again on that Radak Seq I, are not Decoy Seq II. Relying on Defendants' Deceit, Collins and Defendants already misled the Court and then Judge Swain to procured the orders of February 8, 2013 and July 15, 2014, Dkts 214. Judge Swain already correctly ruled that Plaintiff's experts can generate Decoy Seq II, and therefore that [under Defendants' Deceit] the dispute Radak Seq I are not Decoy Seq II is not material. The material issues are that Decoy Seq II, not just Radak Seq I, are not the sequences used by Defendants, and Defendants' False Claim is not Plaintiff's claim. Yet Collins steadfastly refused to expose Defendants' semantic game of confusing "YB sequences" as the sequences used by YB, continue to mislead the Court that the patently garbage Decoy Seq. II were the "Real Sequences".  Instead SJB introduced *new* semantic game which confused both phony Radak seq I and Decoy Seq. II as "Real Sequences", confused ACE derivative Seq. III as "Alleged Sequences", and confused ACE sequences with "YB sequences".

- [B][*sic*] "Material Factual Disputes Arise over Defendants' *Theft* of ACE",

  SJB concealed conclusive admissible evidence of ACE Verbatim Use Claim and ACE Derivative Use Claim, embracing Defendants' Deceit. Collins packed the remaining evidence of Defendants' *use* of ACE into "Defendants' *Theft* of ACE".   I had repeatedly informed Collins that Defendants' Deceit led to R&R's holding that only LDS200 is material while theft of ACE is *not* material, and that all the precedents cited by R&R were based on Restatement 2nd of 1968, all prior to the implementation of Restatement 3rd, of 1998, which hold that theft of trade secret alone

| F7 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §V, Wang 6th Decl.)** |
|----|----|

constitutes misappropriation of trade secret, regardless of use. Collins refused to point it out, while SJB called theft of ACE as "material issue" ostensibly contrary to both Judges' holdings, in order to set up Plaintiff as easy target to be slammed again.

- [C][*sic*]"Material Factual Disputes Arise over Defendants' *Use* of ACE", which has been cut to nothing left but an ostensible skeleton title devoid substance, to mislead the Court to the wrong conclusion: "No evidence of use".

191.    Worse, not only 3rd SJB concealed both Plaintiff's ACE Verbatim Use Claim and ACE Derivative Use Claim, but also brazenly embraced Defendants' Deceit, and **directly** misrepresenting Defendants' False Claim, "YB Monte Carlo code generated ACE" as purported "*AAI's*" allegation, over my repeated and express objections (whereas Defendants played their semantic game to mislead the Court to Defendants' Deceit). Mr. Collins refused my suggestion to expose Defendants' semantic game of "Yield Book sequences", but created a new confusing semantic game of "Real Sequences" and "Alleged Sequences" to cover it up.

192.    In the chapter of "Argument", SJB embraced Defendants' deceits that Plaintiff could not show Radak Seq. I and Decoy Seq II are similar or derived from ACE, without pointing out both Seq I and Seq II are fake sequences. It embraced Defendants' Flagrant Deceit and confused Decoy Seq II with "Real Sequences" (ACE and LDS Seq III), and deliberately confused all the ***three distinct*** sequence categories Seq I, Seq II and Seq III as ***one*** category of "LDS" sequences: "LDS100" and "LDS200" *etc*. Then it falsely represented ***Defendants' 2d & 3d False* Claims** (the fake Radak Seq I & Decoy Seq II, *resp*, were derived or similar to ACE, ¶48) as ***Plaintiff's*** claims, and misrepresented discredited analysis of Polish about Radak Seq I  as about LDS Seq III. SJB misrepresented that it "clashed with Fan's finding [about LDS Seq III]", while SJB concealed Fan's undisputed finding in Fan 2nd Decl that Polish's testimony is misleading and totally irrelevant to Fan's finding.

193.    SJB concealed Radak' s testimony of his lack first-hand knowledge of ***all*** sequences used by TYB ***except*** Radak 1000 Paths of March 2006 and Defendants' denial his access to TYB-RCS. To cover up Defendants' violation of the court order of August 2007, to white-wash Radak's testimony damaging to Defendants that Radak knew from MR-RCS code that the Russell 1000 Paths did not exist but was just the code-name of Super ACE, SJB painstakingly altered Radak's admission of lack of knowledge to *only* "[W]ith respect to an alleged 1000 path sequence purportedly created in 1999"; and "when it came to the Yield Book code, Dr. Radak lacked *first-hand* knowledge.", 17, *id*.  SJB deleted from 2nd SJB all of Polish's testimony that he has no knowledge of what sequences were used by TYB, and that Polish Declarations about "YB sequences" were misleading and meaningless.

| F7 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §V, Wang 6th Decl.)** |
|---|---|
| | 194.    Collaborating with Moore's letter of Dec. 6, 2016 to the Court, **Collins**' letter of December 12, 2016 to the Court *reaffirmed and expounded* **Defendants' Flagrant Deceit** and **Defendants' Deceit** over my express objection, *see* P.8 and Sec. C of Wang letter of Jan 4, 2017 to the Court.<br><br>195.    SJB deleted Defendants' witness testimony cited in 2nd SJB that admitted Seq. II to be phony. SJB misrepresented Polish Decl about the fake Radak Seq. I as about "LDS" to confuse Radak Seq. I with ACE Derivative LDS Seq III.  It misrepresented that *all* material issues were *only* relevant to either theft of ACE or that "Alleged Sequences" (Seq I) are not Seq II. It concealed Plaintiff's allegation supported by authentic evidence, *e.g.*, Fan and Defendants witnesses' testimonies concluding (the *falsity of  Seq II*):<br><br>(\*) YB Monte Carlo code generated <u>LDS</u> sequences (Seq III), but *Plaintiff* cannot generate <u>LDS</u> because <u>Defendants</u> never gave <u>Plaintiff</u> the seeds necessary to generate <u>LDS</u>[14];<br><br>----so that Fan can generate ***only*** the *phony* Seq I or Seq II, *not* Seq III because of (\*).<br><br>196.    Then in "Argument", SJB <u>echoed Defendants' SJ</u> to misdirect the Court to the lack of "similarity" between the *garbage* Seq I, Seq II and ACE. SJB bolstered Polish's misleading argument about the 100 paths of *phony* Seq I, calling it "clashed" with the *undisputed* Fan's calculation of more than 99.5% certainty that Teytel's Algorithm (which Defendants admitted to be one and the same algorithm selected all LDS sequences) targeted ACE, as confirmed by the "best seed" for LDS64, the only authentic LDS sequence. *Id*. 20, n.9.  SJB even *flipped the truth (\*) to its false opposite*, literally: "Defendants" to "Plaintiff", "LDS" to "ACE":<br><br>"YB Monte Carlo code generated <u>*ACE*</u> sequences, but <u>*Defendants*</u> cannot generate <u>ACE</u> because <u>Plaintiff</u> never gave <u>Defendants</u> the seeds necessary to generate <u>ACE</u>."<br><br>as *Plaintiff's* allegation.  Collins repeatedly and deliberately **used specific manipulation of language** to mislead the Court to believe Defendants' Deceit.<br><br>197.    **Both Collins and Defendants** *knew* that their misrepresentations to the **Court are** *flat-out false*, and that *all three* Defendants' False Claims are the exact opposite to Plaintiff's claims and the evidence. This has been pointed out explicitly in p3-4, Sec. B of 2nd SJB and Defendants 56.1 Statement of 2013.  See Basic Fact, ¶27. Yet, not only Collins 3rd SJB of May 28 put Defendants' lies into Plaintiff's mouth, for good measure, it even *fabricated and altered* Plaintiff's expert's testimony *to its exact opposite to support Defendants'* Deceit and *to dispute Plaintiff's* ACE Verbatim Use Claim. Section A of Argument in 3rd SJB called LDS100 and LDS200 as "100LDS" and "200LDS". This gibberish in the 3rd SJB was no typo, because Collins deliberately inserted back the exact |

---

[14] Except Teytel's notebook identified the "best seed" for LDS64.

| F7 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §V, Wang 6th Decl.)** |
|---|---|
| | same gibberish in the finals of 1st SJB and 2nd SJB **after** it had been corrected to LDS100 and LDS200 in the drafts, and **after** Collins had been explained that the gibberish would undermine a key step of the syllogistic proof of ACE Derivative Use Claim, that LDS100 and LDS200 used the same Target Algorithm as LDS64. Mr. Collins told me before that he had no typos because he would go through a brief "word by word".

198. Prof. Fan's testimony was that ACE sequences represented "an incredible mathematical feat" and solved an "extremely challenging problem", cannot possibly be generated by any Monte Carlo code but are *read* in by YB code as data files; In contrast "Defendants' sequences" must be "generated from the seeds fed into (YB) public domain Monte Carlo code each time", and when any sequences used by YB is *not* generated by their Monte Carlo code, such as all the sequences used exclusively by Defendants' traders, *as admitted by Defendants' programmers*, then the sequences are definitely *not* "Defendants sequences" but read from data files and is definitely ACE sequences, *by Defendants' admission*, Sec. H, 2nd SJB.

199. The finding of Fan 2nd Decl ("ACE is an incredible mathematical feat" in contrast to all sequences generated by YB Monte Carlo code) was also *correctly* cited at 13, Plaintiff's Obj. Br. to R&R in September 2009, Dkt 116. That was *before* the discovery of a mountain of undisputed *physical evidence* of misappropriation, such as (i) Defendants' Theft Code used in stealing ACE and their ACE Use Code installed immediately after the theft of ACE detailing how their traders exclusively and surreptitiously relied on the stolen ACE for arbitrage, proving ACE Verbatim Use Claim; and (ii) other undisputed conclusive evidence of Plaintiff's ACE Verbatim Use and Derivative Use and Defendants' massive spoliation including their witnesses' admissions.

200. Collins' SJB, at 13, *altered* this crystal clean testimony in Fan 2nd Decl *to its exact opposite* statement as the purported Fan's testimony **to purportedly support Defendants' False Claim.** Collins's intentional fabrication over my express objection, served multiple goals of Defendants' fraud: to *dispute* Defendants' programmers' admission of use of ACE, to *dispute* both Judges' undisputed finding that ACE *is* a valuable trade secret owned by AAI[15], to *undermine* the palpable undisputed misappropriation evidence such as Theft Code and ACE Use Code, and to cover up Defendants' semantic game of "YB sequences". From Contempt Order, at 22 and 37, Mr. Collins knew that his plainly misleading argument and duplicitous behavior had misled the Court and successfully framed Plaintiff for contempt of court, and that should the Court |

---

[15] R&R, p.9-10, found "the record here does establish that there is no genuine issue of fact that" ACE is "Dr. Wang's proprietary invention", is AAI's Confidential Software Information protected by two valid NDA's which Defs breached, is "a faster production sequence than anything the defendants had" and Defs offered significant fees to license ACE. Therefore, ACE is "valuable and secret to afford an actual or potential economic advantage over others." Restat. 3rd. Defendants' False Claim would imply that ACE is *not* much a trade secret. Collins did not know what is a trade secret *before* Dr. Wang educated them in 2007-2009. Their mischaracterization of Plaintiff's claims over Plaintiff's objection was unlikely due to their misunderstanding of the law.

| F7 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §V, Wang 6th Decl.)** |
|---|---|
| | discover Mr. Collins' fabrication, the Court might again mistake it as evidence of Collins' "utmost zeal" in representing *Plaintiff* instead of representing *Defendants*' Deceit[16], and punish Plaintiff even more for Collins' more plainly misleading argument and duplicitous behavior, so that whether Collins' fabrication is discovered or not, either way, Plaintiff would be fatally injured by Defendants' and Collins' deceits and collusion. |

      **B.**    **<u>After Magistrate Judge Pitman' Order of June 5, 2014 Correctly *Denied* Defendants' Request to Strike Factual Material from 56.1 Response *and* Defendants Had withdrawn Failed Request, Mr. Collins Attempted to Do Defendants' Bidding and Remove Factual Material</u>**

      201.     Before Mr. Collins could file his usual "opposition", Magistrate Judge Pitman's order of June 5, 2014 correctly denied Defendants request of June 2, 2014 to strike admissible factual material from 56.1 Response. Mr. Collins seemed to be Defendants' favorite lawyer. Defendants asked Plaintiff to replace Mr. Munves by Mr. Collins to represent Plaintiff in the meet-and-confer directed by June 5 Order. I refused since Mr. Munves was the one drafted 56.1 Response. Then Mr. Munves and Defendants produced the Joint Report, Ex. A attached to Plaintiff's Letter to Magistrate Judge Pitman of January 15, 2015. In Joint Report, Defendants had to concede all of the 65 points of their objection except one, that are factual materials rather than opinion material, as stipulated by June 5 Order. And Defendants withdrew their baseless objection entirely.

      202.     **After** Defendants' request of June 2, 2014 to strike had been ***denied*** by the order of June 5, 2014, **and even after** Defendants had already conceded their failure and formally withdrawn their request of June 2 in February 2015, **Collins still intimidated** Plaintiff to "voluntarily" ***remove all*** the *factual material* of misappropriation evidence in Plaintiff's Response Under Rule 56.1 of May 28, 2014 (*e.g*., factual evidence of ACE Verbatim Use and Defendants' concealment (i)(ii), ¶181, ¶188), that had been ruled *admissible* by both the orders of Judge Pitman on June 5, 2014 and Jan. 21, 2015, Dkts. 256, 261, exactly as the ***failed*** Defendants' request of June 2.

      203.     Mr. Collins also knew very well the grave consequence to Plaintiff from his concealment of misappropriation evidence on behalf of Defendants in SJ Opp Br.. He had admitted to me that Defendants' attempt of removing these factual materials from Plaintiff's 56.1 Response was "to tear the guts out of [Plaintiff's SJ] opposition". Yet, Mr. Collins tried to accomplish exactly that goal for Defendants, even ***after*** Defendants' attempt had been denied by Magistrate Judge Pitman ***and after*** Defendants had withdrawn their attempt. Since he was flipped by Defendants, his actions are consistent attempts to achieve Defendants' ultimate goal: railroad Plaintiff to dismissal.

---

[16] Magistrate Judge Pitman's order of May 31, 2017, at 1.

| F7 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §V, Wang 6th Decl.)** |
|----|----|
|    | **C.    Defendants' and Collins's Submissions in 2016-2017 Confirmed Their Collusion to Intentionally Deceive the Court**<br><br>204.    **2016-2017** I have educated Collins countless time about Basic Fact. Both Messrs. Collins and Munves understood it completely, from me and Plaintiff's other experts, as shown by 2009 SJ Appeal of R&R, and both SJ Opposition Briefs of 2013 and April 25, 2014, and by their recent admissions, e.g., on January 5, 2017, ¶210, Ex. 18, *infra*.  Thus Collins' deletion and disavowal of Basic Fact, and embracement of Defendants' Deceit in Collins' SJB of May 28, 2014 was intentional. Here as shown **in the Court's records** in 2016, I had clearly explained to Collins these key facts numerous times, and confronted them for their embracing of Defendants' Deceit. Yet, instead of correcting, Collins and Defendants in collusion relentlessly continued to cover up Defendants' Deceit in various ways, in order to deceive the Court to dismiss the Case.<br><br>205.    Acting in concert with Defendants, in 2016, Collins used Defendants' SJ *supported* by his SJB and the Contempt Order he procured, to intimidate me and new lawyers to "walk away" from the Case for nothing. In response, I confronted Mr. Collins repeatedly regarding his presentation of Defendants' Deceit to deceive the Court, *e.g.,* his fabrication of fictitious "the 2nd Fan Dec. paras. 44-45" purportedly "explained [Defendants' False Claim]", and his embracement of Defendants' Deceit in his SJB at 13, Ex. 12, e.g., my emails to Collins on **May 9, and June 3, 2016**[17]. Mr. Collins knew very well that Defendants' False Claim in fact is the *opposite to* Fan's findings and that Defendants' Deceit had already misled the Court to the wrong prior rulings and derailed the Litigation. He knew the fatal consequence of his embracing Defendants' Deceits and concealment of the evidence, §IV.C. Yet **Collins again stonewalled, relentlessly presented Defendants' Deceit and refused to correct**.<br><br>206.    **December 6, 2016**  As soon as their collusion faced danger of exposure by my letter of **November 30, 2016** to Magistrate Judge Pitman, Ex.10, *both* Defendants *and* Collins sprang into action to intimidate me to withdraw my letter and to silence me. I declined. Then **Moore's letter of December 6, 2016**, at 2, Ex. 13, and letter of **December 14, 2016**  to Magistrate Judge Pitman, at 1, Ex.15. again misrepresented *"AAI's* claim" as *Defendants' False Claim* and that "[Collins embracing *Defendants' Deceit*] raised serious questions about *AAI's* conduct". *See* X.Wang's letter of **January 4, 2017** to Magistrate Judge Pitman, at 6. see §C, Ex. 16.<br><br>207.    Instead of correction, under the *ruse* of opposing Defendants' "access to privileged attorney-client material", **Collins's letter of December 12, 2016** to Magistrate Judge at 1, Ex. 14, willfully and intentionally *reaffirmed and expounded Defendants' Deceit* in their SJ and "Opp" briefs to mislead the Court, over my express objection, to further cover up Defendants' Deceits exposed in my letter of November 30, 2016. Collins' December 12 Letter doubled down to misrepresent Defendants' False Claim to the Court to |

---

[17] Ex. 3 to Wang's letter of November 30, 2016 to Magistrate Judge, Ex.10.

| F7 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §V, Wang 6th Decl.)** |
|----|----|
|  | be Plaintiff's claim and **to be *true***, and misrepresented "Plaintiffs opposition brief contained no statements that could be materially misleading", at 2, Ex. 15. *See* P.6, Ex. 17.<br><br>208.   **Collins' December 12, 2016** Letter, Ex.15, not only embraced Defendants' False Claim "gauss_random.c generated ACE64" as Plaintiff's claim but misrepresented Defendants' Deceit is not "materially misleading, nor does it creates any prejudice". For ***three (3) times, and in three ways***, it attempted to mislead the Court to infer Defendants' False Claim: "Defendants' sequence generator *can* generate ACE sequences", without explicitly stating it because Collins knew it is flat-out **false**. ***First,*** Collins December 12 Letter cited and reiterated SJB, taking out from SJB the leading sentence to conceal his knowing fabrication of Fan testimony: "As explained in the 2nd Fan Dec. paras. 44-45 (Walker Ex. E)":<br><br>"Defendants did not possess seeds to generate ACE sequences, meaning that they could not generate ACE by simply feeding seeds into their random number generator."<br><br>209.   To pound the message (Defendants False Claim is "Plaintiff's claim") home, **twice more** by language manipulation, Collins' December 12 Letter carefully crafted the deception to mislead the Court further to infer Defendants' False Claim as "Plaintiff's claim":<br><br>Defendants could not generate ACE, because Plaintiff never gave Defendant's access to the seeds necessary to generate any ACE sequence. This is undisputed. It is also undisputed that Defendants could only read-in ACE numbers, rather than generate them, because they did not have the seeds necessary to generate them. (Emphasis added)<br><br>Collins December 12 Letter cited Undisputed Fact 18 of Defendants' 56.1 Statement, the half-truth *before* "because", to infer Defendants' False Claim inserted *after* the two "because" is "undisputed". See 6-8, §C, Ex. 17.<br><br>210.   According to **Collins' letter of January 5, 2017** to Magistrate Judge Pitman, Ex. 18, "[Collins] have vigorously prosecuted this very contentious case for ten years…, including undertaking thorough analysis…conducting exhaustive fact and expert discovery; and making and defending against numerous motions, among them two separate [SJ's]", *id* at 1. *See* p.9, Ex.1.  Therefore Collins had become intimately familiar about the Case, at minimal about the Basic Fact, Plaintiff's claims regarding its trade secrets and misappropriation, when Collins fully embraced Defendants' Deceits (of misrepresenting Defendants' False Claims as Plaintiff's allegations), in all of their briefs filed over my objections and behind my back post 2012 including SJB, Annex A and B.  Defendants False Claims imply "ACE are ***not*** trade secret" and "Defendants did ***not*** misappropriate ACE"), are exactly the **opposite** to Plaintiff's claims. |

| F7 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §V, Wang 6th Decl.)** |
|---|---|
| | **(i)** So Collins knew their representations of Defendants False Claims as Plaintiff's claims were false while making these misrepresentations to the Court. |
| | Collins also admitted "[Collins'] strong belief" "that Plaintiff's claims [Defendants misappropriated Plaintiff's trade secret] are meritorious", at 2, Ex.17, and at 2, **Collins' letter of December 1, 2016** to Magistrate Judge Pitman, Ex.19. [18] Collins had to alter Fan testimony to support Defendants' False Claim, ¶205. After the fabrication was exposed, Collins removed the fabricated Fan's cites, but doubled down on Defendants' False Claim, ¶206-207. |
| | **(ii)** So Collins also knew very well Defendants False Claims are flat-out false, while making these misrepresentations to the Court that they are true. |
| | Defendants Deceit is the basis of Defendants' defense and SJ, ¶¶46, 56, 175-6. After Collins' embracement of Defendants Deceits was exposed, Collins attempted to cover it up, claiming "[Defendants' Deceit] is not "materially misleading, nor does it creates any prejudice", ¶208. |
| | **(iii)** So Collin's repeated embracement of Defendants' Deceits was intentional to mislead the Court to dismiss the Case. |
| | 211.    **January 10, 2017** <u>Acting in concert with Collins</u>, not only C. Moore's letter of January 10, 2017 to Magistrate Judge Pitman, Ex. 19, continued misrepresenting Defendants' False Claims as "AAI's claims", but deliberately made two **new** misrepresentations (i), (ii) to cover up *Collins'* collusion: |
| | **(i)** It misrepresented the revelation by Wang Letters, Ex. 10, Ex. 16, as "AAI's counsel had included 'false claims' in its summary judgment opposition papers and expert reports", *id.* 2d para, p.3 and last para, p.4, to ***mislead*** the Court to believe that Collins did *not* fabricate but cited *bone fide* "**expert reports**". It is trying to use ***Defendants'*** Deceit and Collins's collusion to discredit **not just** Plaintiff **but also** Prof. Fan. Moore December 6, 2016 Letter at 3 & n. 3, Ex.13, had already conceded |

---

[18] Mr. Munves stated that this Case is "extremely meritorious". Collins concealed from the Court what had transpired leading to their withdrawal. In January 2015 Mr. Collins conspired with co-counsel and coerced me to make *false* written statements such as "**all previous filings and letters were sent or filed with your authorization**", and that I must agree that "**the attorneys can use their best judgment as to what papers get filed or what letters get sent – are papers that are authorized to be filed or sent by you.** " "as a condition of [Collins'] continued representation" (bold emphasis added), in order to avert dismissal of the Case from their joint prompt withdrawal. Collins clearly knew that they filed papers over my express and explicit objections behind my back and these statements were flat-out false, §IV-V, ¶148-9. Yet Collins thought they had me on a barrel, after Collins excluded all of experts' declarations, procured Contempt Order in collusion with Defendants and filed SJB echoing Defendants' Deceits. Collins explicitly warned me that when they withdrew the Case would be dismissed. See Dkt. 275. However I refused to lie.  I would never lie to the Court even that meant dismissal of the Case. So Collins moved to withdraw.

| F7 | **The Collusion as shown by the undisputed testimony and documentary evidence (Continue from F2-1, §V, Wang 6th Decl.)** |
|---|---|
| | that Defendants' False Claim is ***not*** in Fan reports[19]. Wang January 4, 2017 letter to Magistrate Judge Pitman, para 3, 6, p.6, Ex.16, again pointed out that to explain Defendants' False Claim, Collins' SJB fabricated the purported Fan citation. So **Defendants' new deceit is deliberate.** |
| | **(ii)** Moore letter of December 6, 2016 to Magistrate, Ex.13, is so rife with deceits that it self-contradicted *all of its own positions* except one: <u>Defendants' False Claim</u> is false[20]. This is undisputed fact and law of the case, both Defendants and Collins knew it, fn.11 at 7, Ex. 16. **To cover up Collins' deceit**, Moore letter of January 10, 2017 to Magistrate Judge, Ex. 20, resurrected ***Defendants' False*** Claim, which had been dismissed as "undisputedly false" by Defendants in order to seek SJ, and referred it as "AAI's ***alleged*** false claim" instead of "AAI's false claim". So ***Defendants abandoned undisputed falsity of the purported "AAI's claim",*** *i.e. (c), ¶176, and (c), ¶3(D) supra,  despite which is the basis of their SJ, in order to cover up* <u>***Defendants' Deceit***</u> *and Collins' collusion* in (a) (b), ¶176, and ¶3(D). |
| | **Excerpts from §V, Wang 6th Decl.** |

---

[19] "Dr. Wang's emails also note that while AAI's brief cites to paragraphs 44-45 of the Second Declaration of Jianqing Fan, that source does not support [Defendants'] 'false' claims. Ex. 3 at 1, 4." *Id*.

[20] Bottom of p.2, "It appears that AAI now agrees [Defendants' False Claim is false]", 2, *id*. With whom "AAI now agrees"?  Not with Collins, because Collins has been misrepresenting Defendants' False Claims as *true*. So it was Defendants, with whom "AAI now agrees" Defendants' False Claim is *false*.