**LAW OFFICE OF PETER J. TOREN**
Peter J. Toren
3028 Newark Street NW
Washington, D.C. 20008
(646) 623-4654
ptoren@petertoren.com

Attorneys for Plaintiff and Counterclaim-Defendant
Advanced Analytics, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ------------------------------------------------------x<br>:<br>ADVANCED ANALYTICS, INC.  :<br>:<br>    Plaintiff and Counterclaim-Defendant,  :<br>:<br>        v.  :<br>:<br>CITIGROUP GLOBAL MARKETS, INC. f/k/a  :<br>SALOMON SMITH BARNEY, INC., and  :<br>THE YIELD BOOK INC, f/k/a  :<br>SALOMON ANALYTICS, INC.,  :<br>:<br>    Defendants and Counterclaim-Plaintiff.  :<br>------------------------------------------------------x | **Case No. 04 Civ. 3531 (LTS) (SLC)**<br><br>**PLAINTIFF'S  RESPONSE AND MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE TO INTERVENORS BRANDON SMITH AND THE AMERICAN PROSPECT'S MOTION TO UNSEAL COURT RECORDS AND THEIR NOTICE OF WITHDRAWAL** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iv

PRELIMINARY STATEMENT ............................................................1

LEGAL STANDARD ..........................................................................2

FACTUAL BACKGROUND................................................................6

    I. From the Start of Litigation Defendants Blanket-designated Judicial Documents Confidential and even Highly Confidential to Block Public Access and to Hinder Plaintiff's Litigation................................................................6

    II. Defendants Designate Public Information as Confidential and Highly Confidential, and Litigated to Seal It to Make Judicial Documents and Proceedings Incoherent in Several Dozens of Motions/Briefs in 2015-2019.......8

    III. After 18 extensions by the Counsel of Defendants and Intervenors between 2019 and 2020, Defendants Coerced Intervenors to Withdraw their Motion to Unseal In Violation of the Court Order to Renew Motion to Unseal on the Outstanding Court Records. ..........................................................................9

    IV. While Coerced Intervenors to Withdraw Motion to Unseal, Defendants Still Improperly Sealed Nearly All of the Hundreds Court Records and Judicial Documents ................................................................................................12

    V. Defendants Unsealed only one small paragraph in all the six sets 56.1 Papers in Support of MSJ, and redacted public material in this paragraph and made it totally incomprehensible, in order to cover up their 3 Prong Scheme .........14

ARGUMENT.......................................................................................16

    I. Defendants Sealing of Judicial Documents is in Contravene to Second Circuit Authorities and First Amendment....................................................16

    II. Defendants Abused the Protective Order to Cover-up Their Fraud from the Public. .......................................................................................................18

    III. Plaintiff has Even More Interest than Intervenors in Unsealing the Judicial Documents and in the Public Ability to Monitor the Litigation for a Just Outcome.....................................................................................................18

    IV. The Coerced Settlement Agreement and Its Exhibit Notice of Withdrawal Violated the Court Orders, Local Rules and Pertinent Federal Code. ...........19

        A. The Settlement Agreement and the Notice of Withdraw Violated Court Orders......................................................................................................19

        B. The Settlement Agreement and the Notice of Withdraw Violated the Local Rules .............................................................................................20

        C. The Settlement Agreement and the Notice of Withdraw Infringed Intervenors' Constitutional Rights and Violated 42 U.S.C 1983.............22

**V.   The Court Should Void the Illegal and Improper Settlement Agreement and the Notice of Withdrawal of Intervenors and Their Counsel, but Rule on the Motion to Unseal** ...............................................................................................**23**

**VI. The Court Records Should be Unsealed Without Further Delay** ........................**25**

**CONCLUSION** ...................................................................................................................**25**

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Laws and Rules**

42 U.S.C §1983 ......................................................................................................24

Fed R. Civ. P 26(c) ...............................................................................................24

Local Civil Rule 1.4 ..............................................................................................22

**CASE LAW**

*Bernstein v. Bernstein Litowitz Berger& Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) ......5

*Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) ............................................................4

*Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) ....................................................16

*Citizens United v. Federal Election Com'n*, 558 U.S. 310 (2010), 130 S.Ct. 876, 883 ...............6

*Doe v. Lerner*, 688 F. App'x 49, 50 (2d Cir. 2017) .......................................................5

*Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc*., 26 F. Supp. 2d 606, 613 (S.D.N.Y. 1998) ....................................................................................................................3

*First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 778, n. 14, 98 S.Ct. 1407 ............................18

*First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 778, n. 14, 98 S.Ct. 1407, 55 L.Ed.2d 707....6

*Grove Fresh Distrib., Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir.1994) ..................24

*In re Gen. Motors LLC Ignition Switch Litig.,* No. 14-MD-2543 (JMF), 2015 WL 4750774 ........4

*In re New York Times Co.,* 828 F.2d 110, 116 (2d Cir. 1987)) ........................................5

*In re Parmalat Sec. Litig.,* 258 F.R.D. 236, 244 (S.D.N.Y. 2009) .................................3

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp*., 97 F. Supp. 3d 485, 511-12 (S.D.N.Y. 2015) ....................................................................................................................17

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d. Cir. 2006) ...................................2

*Nebraska Press Ass'n,* 423 U.S. at 1329, 96 S.Ct. 251 ............................................................25

*Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978) ................................................4

*Turner Network Sales, Inc. v. DISH Network L.L.C.*, No. 17-cv-7499(RA), 2019 WL 147372, at

  *1 (S.D.N.Y. Jan. 9, 2019) .....................................................................................18

*U.S. v. Graham*, 257 F.3d 143, 153 (2d Cir. 2001)...................................................................18

*Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 468 (S.D.N.Y. 2017).........................................5

*Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 469 (S.D.N.Y. 2017)......................................17

*United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) .....................................................2

*United States v. Antar,* 38 F.3d 1348, 1363 (3d Cir.1994)........................................................25

## PRELIMINARY STATEMENT

Court records are public documents. Under both the First Amendment and common law, the public has a right to access. Therefore, absent a particular and specific demonstration of facts showing certain "narrowly tailored" information in an individual document must be sealed to avoid "severe and specific injury," courts have an obligation to keep their records open to the public.

Citing the Second Circuit authorities, the I.P. of both this Court and Judge Swain hold that the existence of protective orders does not defeat presumption of public access to judicial documents under First Amendment and common law. Yet, Defendants improperly blanketed nearly all materials "Confidential" or "Highly Confidential," and sealed nearly all judicial documents in their entirety in this case, with no justification. Defendants have offered *no* valid reasons for sealing these documents required by law, let alone a showing of a "substantial probability of harm to a compelling interest."  The Court never made findings "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest," Yet most of documents in this case have remained under seal by Defendants for 16 years with no justification required by law.

Defendants relied on their sealing to block Plaintiff from litigating the case, the public from monitoring the litigation, and covering up their systematic fraud.  Defendants even designed public information as Highly Confidential in multiple motions and briefs. Because of the impact and great public interest, journalists like Mr. Brandon Smith and the American Prospect are attempting to report on this lawsuit. But they are unable to do so because the court records are sealed. Plaintiff also has First Amendment right and has an even more compelling need to present the information to the relevant public authorities but has been hampered and prevented by the lack of any material public filings in this case. Plaintiff and justice suffered greatly from the lack of transparency on this case resulted from Defendants' improper sealing of all the juridical documents. After the Intervenors filed motion to intervene and to unseal in

August 2019, the Court permitted the intervention, and Plaintiff fully supported the motion to unseal and proposed join the negotiation and motion to unseal. The Court granted Plaintiff's petitions, and repeatedly overruled Defendants attempts to keep Plaintiff out in the proceedings regarding the motion to unseal. Defendants engaged deliberate procrastination tactics and sought extension of response to the motion to unseal for approximately 18 times, and stalled for over a year. The Court's order of August 4, 2020, expressly and explicitly directed the Intervenors to file renewed motion to unseal by September 7, 2020, tailored to court records outstanding from the parties' joint efforts to resolve the motion to unseal. While there are still large court records outstanding, through Intervenors' counsel, Defendants coerced Intervenors not to file the renewed motion but into an illegal and improper settlement agreement on September 5, 2020, which mandated the Intervenors to file next day, the notice to withdraw the motion to unseal that deprived the Intervenors' constitutional right and in violation of the Court orders. Defendants' attempts to prevent the Court to consider and to rule the motion to unseal, and to prevent the Court to discharge its duty and fulfill its obligation are totally improper. In compliance of the Court's order of August 4, 2020, Plaintiff filed this response to report the vast outstanding court records and judicial documents including the exhibits are still seal in contravention to the law. All of the records should be unsealed with minimal redaction in accordance with the law. Defendants' improper redactions should be removed.

## LEGAL STANDARD

The right of public access to judicial documents is "firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d. Cir. 2006). Without this access, the public would have "no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). In order to seal judicial documents, a party must make "most compelling arguments", "a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious" to outweigh the public's right of access. *In re Parmalat Sec. Litig.*, 258

F.R.D. 236, 244 (S.D.N.Y. 2009). A mere conclusory assertion of harm—for example, the bare

assertion that a document contains trade secrets—is insufficient. See, e.g., id. at 248;

*Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc*., 26 F. Supp. 2d 606, 613 (S.D.N.Y.

1998); A party seeking to keep a court record from public view must "prove" that disclosure of

the information will "in fact" cause "a clearly defined and very serious injury." Encyclopedia

Brown, 26 F. Supp. 2d at 613. And it must do so for each document it seeks to seal. See Brown,

929 F.3d at 50–51 (requiring "an individualized review"), in light of the strong presumption of

public access.

The courts have an obligation to keep their records open to the public as required by law,

and to protect the First Amendment right and the common law right of the public, even there is no

challenge or request from either the parties or from any individuals from the public. See the

authorities and citations in of MJ Pitman's order of October 23, 2012, ECF192 (denying

Defendants unopposed motion for redaction). See Wang 6th Decl, ¶103.

There is an outdated Stipulated Protective Order ("SPO") entered in 2005 in this case to for

the parties to designate Confidential ("C") or Highly Confidential ("HC") on documents for only

a procedural purpose. ECF 25. The SPO set forth that "the burden of proof shall be as set forth in

the Federal Rules of Civil Procedure and shall not be affected by this Stipulation and Order." SPO

§ 17. The SPO of 2005 is not an adequate substitute for the on-the record findings mandated by

the First Amendment. This Court's and Judge Swain's Individual Practices, §A, set forth in part:

**A. Redactions and Filing Under Seal**. Notwithstanding any provision to the
contrary in a confidentiality order or stipulation, any party wishing to file
in redacted form and/or under seal any document, or any portion thereof,
must make a specific request to the Court by letter
explaining the particular reasons for seeking to file that information under
seal.

To be approved, redactions must be narrowly tailored to serve whatever
purpose justifies them and otherwise consistent with the presumption in
favor of public access to judicial documents. See, e.g., *Lugosch v.
Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006). In
general, the parties' consent or the fact that information is subject to a
confidentiality agreement between litigants is not, by itself, a valid basis to
overcome the presumption in favor of public access to judicial documents.

See, e.g., *In re Gen. Motors LLC Ignition Switch Litig.,* No. 14-MD-2543 (JMF), 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015)…

Courts in this Circuit have recently upheld the procedures set forth in this Court and Judge Swain's Individual Practices, and determined that orders like SPO – that seal documents without a particularized review of the documents – are impermissible. For example, in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019), the Second Circuit vacated the District Court's sealing order that "disposed of the requirement that the parties file individual letter briefs to request sealing and prospectively granted all of the parties' future sealing requests." the Second Circuit also vacated the lower court' order which denied the public subsequent motion to unseal documents. Brown, 929 F.3d at 46.

The Second Circuit faulted the District Court for its "failure to conduct an individualized review of the sealed materials," ordered documents related to dispositive motions unsealed, and remanded the case to the District Court to conduct this analysis as to other judicial documents. *Id.* at 51; *see also New York ex rel. Khurana v. Spherion Corp.,* 15-cv-6605 (JMF), 2019 WL 3294170, at *1 (S.D.N.Y. Jul. 19, 2019), at *2 ("A protective order authorizing the parties themselves to designate confidential material and to file such material under seal — without prior 'individualized review' and 'specific, on-the record findings' by the Court that such sealing or redaction is warranted — is inappropriate.").

In *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978), the United States Supreme Court explained that there is a "general right to inspect and copy public records and documents, including judicial records and documents." This presumption of access is "based on the need for federal courts, although independent . . . to have a measure of accountability and for the public to have confidence in the administration of justice." Amodeo, 71 F.3d at 1048. The presumption is derived from two sources: the common law and the First Amendment to the United States Constitution.

Under common law, in order to determine whether the presumption of access applies, a court must engage in a two-part inquiry. First, it must determine whether the document sought to be unsealed is a "judicial document." *Lugosch,* 435 F.3d at 119. If it is, the court must then

determine the weight of the presumption. Id. The weight is a function of: "(1) the role of the material at issue in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts, balanced against competing considerations such as the privacy interests of those resisting disclosure." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016). Importantly, the weight of the presumption is unaffected by the reason a party has for seeking the records. See Amodeo, 71 F.3d at 1050. Where documents "directly affect an adjudication or are used to determine litigants' substantive legal rights, the presumption of access is at its zenith, and thus can be overcome only by extraordinary circumstances." *Bernstein*, 814 F.3d at 142.

In addition, the First Amendment "gives rise to a higher burden on the party seeking to prevent disclosure than does the common law presumption." *Lugosch*, 435 F.3d at 126. Courts use two approaches to determine whether the First Amendment presumption applies. *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 468 (S.D.N.Y. 2017)  First, courts consider whether the documents are those that "have historically been open to the press and general public" and "for which public access plays a significant role in the functioning of the particular process in question." Id. Second, courts consider whether the documents are "derived from or a necessary corollary of the capacity to attend the relevant proceedings." Id. In other words, the court must decide "whether the documents are necessary to understand the merits of the proceeding." Id. (quoting *Doe v. Lerner*, 688 F. App'x 49, 50 (2d Cir. 2017)). Once the court determines that the First Amendment presumption of access applies, it can only be overcome if the party seeking to seal demonstrates that there is a "substantial probability of harm to a compelling interest" and if the court makes "specific, on the record findings . . . demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. at 469 (quoting Lugosch, 435 F.3d at 120). "'Broad and general findings' and 'conclusory assertion[s]' are insufficient to justify deprivation of public access to the record." Id. (quoting *In re New York Times Co.,* 828 F.2d 110, 116 (2d Cir. 1987)).

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." "First Amendment standards must give the benefit of any doubt to protecting rather than stifling speech."  "Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints, and prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others. " "The Court has recognized that the First Amendment applies to corporations, *e.g., First Nat. Bank of Boston v. Bellotti,* 435 U.S. 765, 778, n. 14, 98 S.Ct. 1407, 55 L.Ed.2d 707" *Citizens United v. Federal Election Com'n*, 558 U.S. 310 (2010), 130 S.Ct. 876, 883.  The Supreme Court "holding that corporations have a First Amendment right to free speech because they are 'associations of citizens' and hold the collected rights of the individual citizens who constitute them." *Id.* Thus a corporation such as Plaintiff Advanced Analytics, Inc, has the same standing and the interest as the Intervenors, if not more because of being already a party in the litigation, to vindicate its First Amendment right to seek unseal the court records, to join-in the pending motion to unseal or to intervene under Fed R. Civ. P. 24(a) for the purpose of unsealing records.

## FACTUAL BACKGROUND

### I.   From the Start of Litigation Defendants Blanket-designated Judicial Documents Confidential and even Highly Confidential to Block Public Access and Hinder Plaintiff's Litigation

Defendants abused the Stipulated Protective Order ("SPO") entered in 2005 in this case and blanket-designated judicial documents and proceedings as C or even HC to hinder Plaintiff's litigation.  Defendants abused SPO as a club to harass Plaintiff. On December 3, 2007, Defendants wrote to the Court claiming that Plaintiff's former counsel's Highly Confidential ("HC") redaction of Dr. Fan's 2007 Expert Report contained (1) a seed 13812 for Defendants' LDS64 sequence, and (2) "even more seriously" a half-sentence of the fabricated Teytel Algorithm.[1] Defendants requested an emergency hearing, claiming that the half-sentence of the

---

[1] As Fan Report of 2007 exposed, the purposed "Teytel Algorithm" was phony. It is not the real algorithm used by Teytel, to select the seeds for "LDS sequences", by targeting stolen ACE sequences.

fabricated "Mixed Seed Algorithm" was Defendants' "most highly confidential and valuable trade secret information". They feigned outrage that Dr. Wang would not be able "to unlearn" this purported "Citigroup's most valuable trade secret," and demanded searching Dr. Wang's emails and computers, and misled this Court, ECF 92 & 93.

On August 5, 2009, however, when Defendants thought that they had won their summary judgment motion of 2008 by their Three Prong Scheme, Defendants allowed the "most valuable trade secret" including both seed 13812 and a detailed description of "Mixed Seed Algorithm" in R&R 2009 published on the public docket for the world to see[2]. This shows that Defendants' previous outrage that consumed so much of the parties' and the Court's resources, was for the purpose of harassing and hampering Plaintiff, which is an abuse of the Protective Order.

Defendants' attitude took another turn later. On November 22, 2010, Judge Swain denied Defendants' 2008 summary judgment motion, and directed discovery be reopened and Defendants produce the sequence development files and testing files that Defendants had fought hard to withhold for 5 years. Defendants then again picked them up as a club to hinder, delay, and hamper Plaintiff's discovery and communication with its counsel and experts. They sealed everything and anything possible as and fought hard to claw back public information that had been on the docket, including the two phrases "environmental variables" and "sfile". They redacted these and other public information in judicial documents to make them totally incoherent and unreadable. *Infra.*

After 17 rounds of extensions and negotiations, Defendants listed redacted Teytel Notebook, EX. SS of Fan 4th Decl, as one of the three exhibits to coerced Intervenors to withdraw their motion to useal. Yet, the redacted Teytel Notebook produced by Defendants in September 2020 is almost a blank document. Even the public phony Teytel Algorithm published in 2009 R&R is all redacted by Defendants again in August, 2020. Ex.2.

---

[2] See *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc*., No. 04 CIV. 3531 LTS HBP, 2009 WL 7133660, (S.D.N.Y. Aug. 5, 2009) at p.23 and p.4-5 (describing the phony "Mixed Seed Algorithms")

**II.    Defendants Desginitated Public Information as Confidential and Highly Confidential, and Litigated to Seal It to Make Judicial Documents and Proceedings Incoherent in Several Dozens of Motions/Briefs in 2015-2019**

From later 2012 until 2017, with the collusion of Collins, Defendants abused SPO to seal off judicial documents as Confidential or Highly Confidential to block public access and to harper Plaintiff's prosecution, and to cover up their fraud. In particular, Collins agreed with Defendants opposition to Plaintiff's letter-motions to modify SPO after Collins moved to withdraw. The sealing of judicial documents made Plaintiff's attempts to recruit replacement counsel nearly impossible from 2015-2017.

Defendants' tactics of improperly sealing or redacting information from judicial documents or proceedings that should be made public can be illustrated by their totally frivolous, persistent and vexatious litigations in 2018-2019. Defendants designated plainly public information such as "environmental variable" as "Confidential" and "seed files" i.e., "sfile" as "Highly Confidential" and asked the Court to keep them away from the public and even Plaintiff. Such information "environmental variable" and "seed files" was published by Defendants more than a decade ago in ECF dockets this case. Yet, Defendants filed about a dozen motions and briefs in January 2018-November 2019 and asked the Court to place such information under seal. See Defendants Motion for Redaction, of August 19, 2019, ECF.330. Defendants' purposes of filing these motions were not for protecting any confidential information, but to make the judicial documents and the Court hearing transcripts incomprehensible for the public to monitor and understand the case, and to harass Plaintiff's litigation.

MJ Pitman denied these motions and published "environmental variable" and "seed files" in R&R of September 4, 2019. Defendants filed yet another Motion to Seal on September 5, 2019, which MJ Pitman promptly denied on September 6, 2019, ECF344, which again put the "environmental variable" and "seed files" in R&R 2019 decidedly in the public domain. Yet without informing this Court that Defendants motion of Redaction of August 2019 has been denied together with their Sep 2019 motion, Defendants sought again from this Court to consider and grant motion of Redaction of August 2019, in several briefs in October-November 2019, as soon

as MJ Cave took the bench at the beginning of October. Defendants raised the motion for redaction during the Court Hearing of November 11, 2019, without informing the Court the motion for redaction had been denied by MJ Pitman, and misled the Court to grant it in the order of November 11, 2019. Defendants' practice prejudiced the public' right, but also severely hindered Plaintiff on its prosecution of this case. Plaintiff has a compelling need to present the information to the relevant public authorities but has been hampered and prevented by the lack of any material public filings in this case.

### III. After 18 extensions by the Counsel of Defendants and Intervenors between 2019 and 2020, Defendants Coerced Intervenors to Withdraw their Motion to Unseal In Violation of the Court Order to Renew Motion to Unseal on the Outstanding Court Records.

The Intervenors, investigative journalist Brandon Smith and the American Prospect filed motion to intervene and unseal in August 2019. ECF328. Deploying delay tactics and the same tenacity to seal the public information as in §B supra, Defendants sought extensions for filing responses of the parties approximately eighteen (18) times from August 2019 until September 2020. Defendants wore down Intervenors' efforts to unseal judicial documents.

Defendants salami disclosure started with only redaction of a few briefs, with no supporting documents and no exhibits. ECF 350.  Plaintiff asked for the supporting documents in summary judgment proceedings, Defendants produced little in response. For example, Defendants redacted only the first 8 pages of Fan 4th Decl. consisting of a summary of Dr. Fan's public CV. Defendants refused to unseal the vast majority of court records, including nearly all the hundreds of exhibits of the Fan 4th Decl. Finally, as the "consideration" of unsealing just two exhibits to Fan 4th Decl, the Intervenors were coerced into a secret "Settlement Agreement" that would force them to withdraw.

The motions to intervene and to unseal are premised on the public's constitutional right of access to court records, thus "this Court should unseal its records, so that Mr. Smith, the Prospect, and the public can view them as the law requires." "The public" includes Plaintiff, and Dr. Xiaolu Wang. Plaintiff fully supports motion to unseal. The motion to Intervene correctly

argued that the Intervenors have the right to intervene and the Court agreed. It is pursuant to Fed

R. Civ. P. 24(a), which was not cited by the motion to intervene. Under the same Rule, Plaintiff

has the right to seek unsealing of the Court records since the First Amendment applies to

Plaintiff not just to Intervenors. Plaintiff petitioned to join. While Defendants attempted to

mischaracterize the motion to unseal as dispute between the Intervenors and Defendants, the

Court recognized that Plaintiff has First Amendment right just like the Intervenors. The Court

granted Plaintiff's petition. It repeatedly overruled Defendants' objections and directed both the

parties *including Plaintiff* to discuss with Intervenors regarding motion to unseal.

In particular, the Court recognized that Plaintiff has the same interest as Intervenors, and

the common goal as set forth the motion to unseal.  Thus, Judge Cave overruled Defendants'

objection, and denied the proposed stipulations by Intervenors and Defendants (ECF350), and

directed "(1) Include Plaintiff in the first paragraph of the document where the stipulating parties

are listed",  ECF380. Then in more than a dozen of subsequent orders, e.g., ECF387, para.7,

Judge Cave again overruled Defendants' objection and directed Defendants **and Plaintiff** and the

Intervenors to file a joint status report.  "In the event that Plaintiff, Defendants, and the Proposed

Intervenors are not able to resolve the motion to unseal amicably, Plaintiff, Defendants, and the

Proposed Intervenors are ORDERED to jointly notify the Court ." This includes the order of

August 4, 2020. ECF 451,

> "The parties and Proposed Intervenors are directed to file a joint status report, by Monday,
> August 17, 2020, notifying the Court whether the motion to intervene has been resolved."

Thus, the Court's repeated and express addition of "Plaintiff"  "to resolve the motion to unseal"

and in the joint status reports, cannot be circumvented and set aside by either a joint report or a

Notice by Intervenors alone and with Defendants, without participation of Plaintiff.

In violation of the Court's repeated, express and explicit directions, Defendants and

Intervenors' counsel did not share their negotiation for a secret settlement agreement with

Plaintiff. Their agreement received no prior approval of the Intervenors, until it was done and the

Intervenors were told the agreement negotiated by their counsel is binding on their client, the Intervenors. Only after Intervenors filed the Notice of Withdrawal on September 6, 2020, at Plaintiff repeated requests, Ex.1, Intervenors' counsel disclosed this Agreement to Plaintiff, and Plaintiff found out that the Notice of Withdrawal was an attachment to the Settlement Agreement. Ex.2. Then for more than a week, both Intervenors' Counsel and Defendants were nonresponsive to Plaintiff's repeated requests for them to share Defendants' emails to Intervenors post August 4, 2020 that attached the unseal or further de-redacted documents. See Ex.1 and Ex.3. Not until yesterday afternoon, September 21, 2020, after Plaintiff informed its pending Response of today, Defendants finally produced just one such email of August 19, 2020 ("Transmittal Email"), which gave just a glimmer of their secret negotiation leading to the Settlement Agreement. Ex.4. *Infra.*

It turned out, after Defendants have worn down the Intervenors' counsel with their procrastination tactics, Defendants were permitted to seal the hundreds of court records, to redact Fan 4th Decl to make it completely incoherent and with most of the misappropriation evidence including the hundreds of exhibits completely removed, other than three. The three exhibits, one is Teytel Notebook, and two flow charts Ex. WW and Ex. CCC . Defendants redacted all of the three documents to total blank documents. Defendants was allowed to choose to unredact Teytel's Notebook or the two exhibits, Ex. WW and Ex.CCC, while sealing hundreds of documents, in order to coerce Intervenors to surrender their First Amendment right and "to withdraw the motion to intervene and motion to unseal] with prejudice, and, for the avoidance of doubt, will not make any request to (1) unseal any documents filed in the Action as of the date of this notice or (2) modify or remove any redaction applied to any document filed in this Action or provided to the Proposed Intervenors." Defendants still failed to properly unredact the first of the three, Teytel's Notebook which is redacted to almost blank. Supra.

There are still almost no redaction and unsealing of the key judicial documents, e.g., the two MSJ, and supporting documents, 56.1, Fan 4th Decl. Despite that the law calls for unsealing all of them, with minimal redaction narrowly tailored ("To be approved, redactions must be

narrowly tailored to serve whatever purpose justifies them and otherwise consistent with the presumption in favor of public access to judicial documents. See, e.g., Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119–20 (2d Cir. 2006).", Judge Swain I.P. A.5.)

Defendants' salami disclosure put pressure on Intervenors to reduce their request less and less for redaction and unsealing of documents.  By August 19, 2020, Intervenors' counsel asked only certain paragraphs to be unredacted, Ex.4. Intervenors' Counsel informed Intervenors that Defendants absolutely refused to unredact any more documents including these paragraphs, because they are trade secret, and if Intervenors would insist, Defendants would produce an affidavit by an engineer to declare that they are all trade secret and it is certain "[Intervenors] would lose." The next section demonstrates that this is false. Intervenors' counsel could not know what Even if Defendants would lose, Defendants would appeal and for years Intervenors would get no documents at all. So Intervenors must accept, as is, the Settlement Agreement agreed by the lawyers from Defendants and Intervenors. Ex. 2.

### IV.    While Coerced Intervenors to Withdraw Motion to Unseal, Defendants Still Improperly Sealed Nearly All of the Hundreds Court Records and Judicial Documents

The Court order of August 4, 2020, directed Intervenors to file a renewed motion "tailored to court records outstanding from the parties' joint efforts to resolve the motion." Yet, coerced by Defendants, Intervenors failed to comply the court order and submitted a Notice of Withdrawal. Plaintiff is obliged to report to the court the court records outstanding from the parties' joint efforts during the last year. In a nutshell, in violation of the Rules and Second Circuit authorities, Defendants still sealed off nearly all of the hundreds of court records and judicial documents, including all the summary judgment motion papers from 2008-2009, the 6 sets of Local Rule 56.1 Statements, Response and Replies from both summary judgment proceedings of 2008-2009 and 2013-2019, and the parties' meet-and-confer reports of 2015 filed in connection with summary judgment proceedings, all of the motions including sanction motions, Daubert motion and supporting papers.

The Transmittal Email of August 19, 2020, stated:

> "attached is a further revised version of the Fourth Fan Declaration that un-redacts the paragraphs you requested below, subject only to certain portions of paragraphs 44, 45, 55, 56, 72, and 93 that contain confidential, commercially sensitive information about the source code, its sequences, and techniques." Ex.2.

Defendants' asserted that they redacted information and sealed the documents because they "contain confidential, commercially sensitive information." The Intervenors were told that Defendants would produce affidavits to testify their assertion for all the sealed documents, including these six paragraphs. Their assertion is false. By way of example, the redacted "certain portions of paragraphs 44, 45, 55, 56, 72, and 93" are public information. They like other redactions in Fourth Fan Decl are made to make the redacted Fourth Fan Decl, Ex.6, totally incoherent or to conceal the misappropriation evidence and to cover up their fraud.

- ¶44. The number "thousands" of the RCS files is redacted. However, it is public information that there are thousands of RCS code files, while Defendants misrepresented the 3 code files in Radak Code as the thousands of RCS code files withheld by Defendants. Wang 6th Decl, ¶¶51, 86, 93.

- ¶45. The redacted phrase "variance reduction" is in public domain, R&R 2019 at 4.

- ¶55-¶56. Defendants ordered Radak to manufacture phony sequences as many as possible, and produced 15 Radak Sequences by chopping off the 5 phony Radak Sequences of 116 dimension short into phony dimensions 86, 106 to cover up their prior misrepresentation of "burden" that misled MJ Pitman into granting Defendants' resistance to producing the sequences used by the Yield Book. Defendants redacted "116" and the phony dimension numbers, "86" and "106." But all these numbers 86, 106, and 116 are in R&R 2019 at 36.

- ¶72. Defendants redacted the two phrases "the antithetic variance reduction technique" and the path number "896" of Super ACE sequence which Defendants programmer code-named "1000 path sequence". The phrase is in public, and is left unredacted in ¶60. The number "896" can be found in ¶60 and R&R 2019. Unless the "1000 path sequence" has 896 paths, and is Super ACE sequences is true, then Defendants cannot allege this is their trade secret. Regardless, Defendants using 896 paths cannot be their trade secret but little

dirty secret.

Defendants refused to unseal most of the 163 exhibits of Fan 4th Decl. These a few exhibits

Defendants did produce were redacted in order to cut out the key evidence and to make Fan

4th Decl. totally incoherent. For example, Fan 4th Decl, Para. 13 states:

> 13. The ACE Use Code confirms that Defendants began to rely on the stolen ACE sequences for production right after the ACE theft in June 1998, until May 2005 when the RCS code files CGM0176 and CGM0177 were produced. This is shown in the Sequence Chronology in *Fig. 6, Id*. This discovery confirmed Plaintiff' allegations of theft and use of ACE, as shown in *Fig. 5, Id*, and exposed defendants' misrepresentation of the sequences used by The Yield Book as shown in Fig. 4, *Id*, which reflects Defendants' representations of which sequences were used when made in their interrogatory responses (Ex. W, Response 1-4) and 1000 path sequence transmittal letter, p.1 (Ex. Z).

However, all the key figures, Fig. 4, and Fig 5, of Ex. SSS to Fan 4th Decl, and the exhibits Ex.

W, Ex. Z are sealed in their entirety, to conceal the smoking gun evidence of misappropriation,

despite they disclose no legitimate confidential information.

- Sealed pathogen() and pathogen_cover() in ¶15 to make it incoherent, despite they are not confidential information and appeared in ¶16.

- Sealed "Inner Circle" in Para, to cover up the fact that only Inner Circle has access to ACE. Unless Dr. Fan's finding that only Inner Circle has access to ACE sequences is true, then Defendants cannot allege this is their trade secret.  Regardless, this cannot be their trade secret but little dirty secret. Defendants sealed off the entire Fan 2012 July Decl, Ex. A of Fan 4th Decl, excerpt one paragraph.

We listed just a few examples. All of Defendants redactions are for the purpose to conceal

evidence and to make the few documents unsealed totally incoherent and incomprehensible.

## V. Defendants Unsealed only one small paragraph in all the six sets 56.1 Papers in Support of MSJ, and redacted public material in this paragraph and made it totally incomprehensible, in order to cover up their 3 Prong Scheme

As indicated above, Defendants still sealed off all the 6 sets of Local Rule 56.1 Statements,

Response and Replies from summary judgment proceedings of 2008-2009 and 2013-2015, and

the parties' meet-and-confer reports of 2015 filed in connection with summary judgment

proceedings. There is only one small paragraph in all the six sets 56.1 Statements is produced at

the specific request of Intervenors. Defendants redacted public material in this paragraph and made it totally incomprehensible, in order to cover up their 3 Prong Scheme.  This redaction illustrated that Defendants' sealing and redaction are not for the purpose to protect any trade secret or confidential information, but to cover up their fraud.

MJ Pitman's R&R 2009 and R&R 2019 recommended dismissal of AAI's misappropriation claim relied on Defendants' 1st Prong of the Three Prong Scheme: both R&R's mistook *Plaintiff*'s claim of misappropriation of trade secret as *Defendants* False Claim (which implies *AAI* has stolen ACE from *Defs*) is undisputedly false. R&R 2019 at 36 quoted a purported "cite in Pl' 56.1 Stat. 61" as:

- "At no point have Defs advanced admissible evidence to the effect that during the relevant period Defs did not use an environmental variable for the purpose of generating ACE sequences.".

But the three last words in the pertinent part of Pl'. 56.1 Stat. 61 actually reads "*ACE derivative sequences*", not "*ACE sequences*" See Pl. 56.1 Stat. 61 at p89 (redacted by Defs), Ex.5.   R&R 2019 omitted the keyword "*derivative"* from the term "ACE derivative sequences" in its quote of Pl. 56.1 Stat. 61. This omission "*derivative"*  in R&R 2019 supplanted AAI's claim of misappropriation by Defendants False Claim.[3] The entire sentence above is published by R&R 2019, except the missing word "*derivative*". Defs moved to seal R&R 2019 on September 5, 2020. MJ Pitman denied it on September 6, 2019, ECF344.

Defendants filed to motion to seal R&R 2019 but was denied by MJ Pitman. So by law, the published sentence in Pl. 56.1 Stat. 61 cannot be redacted by Defendants but must be produced in its entirety. Intervenors had requested this Pl. 56.1 Stat. ¶61 specifically since September 2019. However, to unseal this Pl. 56.1 Stat. ¶61 but redact the keyword "*derivative"*

---

[3] This is not an isolated instant. R&R 2019 relies entirely on Defs' Three Prong Scheme, adopted three Defs' False Claims as Plaintiff's claims and focused on whether the three Defs' False Claims were true for each of the 3 phony "Yield Book sequence". It treated the 15 phony Radak sequences and 2 Decoy sequences as the same "Yield Book sequences". MJ Pitman did not even understand why the undisputed fact that "the 1999 1,000 paths" only existed as a code name in TYB code referring to the Super ACE sequence of 896 paths used by Yield Book is evidence of misappropriation, Wang 6th Decl.¶ 78, fn 56. Defendants sealed off the number "896" published in R&R as HC.

would have make it high light the key omission and make it stick out like a sore thumb. To cover up the fact that R&R relies on their Three-Prong Scheme, Defendants redacted much of the public information in the sentence, in both of the redacted versions for HC and C, which Defendants produced on June 19, 2020, to make them totally incomprehensible Ex.2.

## ARGUMENT

### I.   Defendants Sealing of Judicial Documents is in Contravene to Second Circuit Authorities and First Amendment.

The two sets of summary judgment motion papers and objections in 2008-2009, and 2013-2019, all the supporting papers, the Local Rule 56.1 statements, responses, replies, the meet-and-confer reports of 2015, the sanction motions and their subsequent proceedings of 2012-2015, 2018-2020, the Daubert motion of 2013, are unquestionably "judicial documents" to which the presumption of access under both common law and the First Amendment applies. See *New York ex rel. Khurana*, at *1 (S.D.N.Y. Jul. 19, 2019). The Second Circuit has explained that documents filed with a court are deemed "judicial documents" when they are "relevant to the performance of the judicial function and useful in the judicial process." *Amodeo*, 44 F.3d at 145. Documents are "relevant to the performance of the judicial function" when they "reasonably have the tendency to influence a district court's ruling on a motion or in exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019). Accordingly, courts in this Circuit have explained that "[g]enerally, the presumption of access applies to all documents filed with the court." *Under Seal,* 273 F. Supp. 3d at 469. In fact, just recently, the Second Circuit found that materials filed in connection with a summary judgment motion and various motions in limine qualify as judicial documents. "[i]t is well-settled that documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." Brown, 929 F.3d at 47. In addition, the court found that motions to compel testimony, and to exclude expert testimony for

sanction, "at least on their face, call upon the court to exercise its Article III powers." Id. at 50. As a result, they were also judicial documents "subject to at least some presumption of public access." Id. Similarly, in *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp*., 97 F. Supp. 3d 485, 511-12 (S.D.N.Y. 2015), the court concluded that exhibits filed in connection with Daubert motions constituted judicial documents, explaining that the "public interest in each is high.." All these motion papers are clearly judicial documents to which the presumption of access applies.

Under well-established Second Circuit precedent, the First Amendment presumption of access is "highest" when applied to "documents used by parties moving for, or opposing summary judgment." *Lugosch*, 435 F.3d at 123. These documents "should not remain under seal absent the most compelling reasons." Id. This is true regardless of whether the court actually relied upon the documents in resolving the motion for summary judgment. Brown, 929 F.3d at 48 ("[W]e have expressly rejected the proposition that different types of documents might receive different weights of presumption based on the extent to which they were relied upon in resolving [a] motion [for summary judgment].")

Thus the Court should unseal all the two sets of summary judgment motion proceedings and all the supporting documents from 2008-2010 and, 2013-2019 with minimal redaction that as set forth in *Brown*. "[T]he presumption of public access in filings submitted in connection with discovery disputes or motions in limine is generally somewhat lower than the presumption applied to . . . dispositive motions." Id. at 50. The sanction motions are inextricably linked to Plaintiff's opposition to Defendants summary judgment motion; In accordance with the First Amendment, Defendants are required to articulate "compelling reasons" for keeping these documents under seal and the Court was obliged to make specific, on-the-record findings that these reasons could overcome the stringent public right of access. *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 469 (S.D.N.Y. 2017)

Therefore, the Court should direct that all the judicial documents be unsealed, unless Defendants submit the individual basis the evidence of more compelling reason that to narrowly redact the content to preserve a higher value.  These judicial documents include the motions for

sanctions, under FRCP37(c), motions to compel, and related objections and opposition papers. Neither the Defendants nor the Court undertook the particularized showing to seal judicial documents required by the First Amendment.

All the sealed court records and judicial documents relate directly to the issues at the center of the motions for summary judgment. See *Turner Network Sales, Inc. v. DISH Network L.L.C.*, No. 17-cv-7499(RA), 2019 WL 147372, at *1 (S.D.N.Y. Jan. 9, 2019) (holding that the common law presumption of public access is "particularly strong . . . not only because the documents were submitted in connection with a motion for summary judgment, but also because the portions of the submissions that the parties seek to seal are critical to the Court's adjudication of that motion."). Bernstein, 814 F.3d at 143. Thus, the sealed motions, the exhibits "directly affect [the] adjudication" and play a "significant role in determining litigants' substantive rights." *U.S. v. Graham*, 257 F.3d 143, 153 (2d Cir. 2001) (citing *Amodeo*, 71 F.3d at 1049).

## II.     Defendants Systematically Abused the Stipulation and Protective Order to Cover-up Their Fraud from the Public.

The records demonstrated that Defendants systematically abused the SPO to seal judicial documents, to hinder Plaintiff's prosecution of the case, to cover up their fraud, and to block the public' monitoring and scrutiny of the litigation. Plaintiff has suffered severe damage from Defendants' abuse. See the Sections I-V in the Factual Background.

## III.    Plaintiff has Even More Interest than Intervenors in Unsealing the Judicial Documents and in the Public Ability to Monitor the Litigation for a Just Outcome.

Dr. Xiaolu Wang has just much as the First Amendment right as the Intervenors, if not more, in seeking to unseal the judicial documents. So does Plaintiff Advanced Analytics, Inc. "The Court has recognized that the First Amendment applies to corporations, e.g., *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 778, n. 14, 98 S.Ct. 1407, 55 L.Ed.2d 707" *Citizens United v. Federal Election Com'n,* 558 U.S. 310 (2010), 130 S.Ct. 876, 883.  Therefore, without any need to intervene by Dr. Wang, the harm on Plaintiff and deprivation of First Amendment right from the sealing judicial documents alone justifies that Notice of Withdraw Motion to Unseal coerced by

18

Defendants on the Intervenors does not negate the Court's obligation to unseal judicial documents.

**IV.   The Coerced Settlement Agreement and Its Exhibit Notice of Withdrawal Violated the Court Orders, Local Rules and Pertinent Federal Code.**

The Settlement Agreement and the accompanying Notice of withdrawal violated the Rules, Code and orders in at least three ways:

**A.   The Settlement Agreement and the Notice of Withdraw Violated Court Orders**

The Court recognized the motions of intervene and unseal are not based on any ordinary dispute between Intervenors and Defendants as two private parties, which could be extinguished by an agreement between the Intervenors and Defendants. The motions are premised on the public's constitutional right of access to court records.  The Court granted the motion to intervention and recognized that the motion to unseal proceedings must be participated by Plaintiff. Plaintiff fully supported the motion to unseal and proposed to participation in the negotiation and join-in the motion to unseal. The Court granted Plaintiff's petitions, and repeatedly overruled Defendants attempts to keep Plaintiff out in the proceedings regarding the motion to unseal.

Thus the Court denied the proposed stipulations by Intervenors and Defendants (ECF350), and directed "(1) Include Plaintiff in the first paragraph of the document where the stipulating parties are listed", ECF380. Then in the more than a dozen of subsequent orders, e.g., ECF387, para.7. the Court, again and again, overruled Defendants' objection and directed Defendants *and Plaintiff* and Proposed Intervenors  to file a joint status report.  "In the event that Plaintiff, Defendants, and the Proposed Intervenors are not able to resolve the motion to unseal amicably, Plaintiff, Defendants, and the Proposed Intervenors are ORDERED to jointly notify the Court ."This includes the order of August 4, 2020. ECF 451, which set forth:

> The parties' and Proposed Intervenors' joint request for an extension of
> time (ECF No. 450) is GRANTED. The parties and Proposed Intervenors are
> directed to file a joint status report, by Monday, August 17, 2020, notifying
> the Court whether the motion to intervene has been resolved. If the
> motion is not resolved, Proposed Intervenors are directed to file a new

motion to intervene, by Monday, September 7, 2020, tailored to court
records outstanding from the parties' joint efforts to resolve the motion
without Court intervention. The parties must respond to the new motion
by Tuesday, September 22, 2020. Any reply must be filed by Tuesday,
September 29, 2020.

The parties filed joint report on August 17, 2020, and reported that "[Intervenors], therefore, will

file a renewed motion to unseal, identifying the documents or portions of documents still in

dispute by September 7, 2020 as directed in this Court's August 4 order". ECF.455.

The Court's repeated and express addition of "Plaintiff" "to resolve the motion to unseal"

and in the joint status reports by "the parties and Intervenors", cannot be circumvented and set

aside by either a joint report by only the Intervenors with Defendants, or by a Notice by

Intervenors alone, without participation of Plaintiff.

The Notice of Withdrawal violated the order of August 4, 2020, which require filing

renewed motion to unseal "[the] court records outstanding from the parties' joint efforts." As

presented in prior sections, the vast majority of the court records, including most summary

judgment motion proceedings, and nearly all of supporting papers such as 56.1 Statements,

Daubert motions, and sanction motions are still sealed. Even these few unsealed documents are

still so heavily redacted to make them totally incoherent, in contravene to the law.  This is the

status report should have been presented in a renewed motion to the Court. Yet, Defendants

coerced Intervenors to submit this Notice mandated by the Settlement Agreement imposed on the

Intervenors that is improper and illegal.

Now Intervenors and Defendants not only failed to file renewed motion to unseal, but are

trying to stop the Court's ruling on the pending motion to unseal. By withdrawing the pending

motion to unseal, the Court may no longer make the ruling on the motion, while the issue of

sealed records is still pending. The Notice violated both the letter and spirit of the Court orders.

**B.  The Settlement Agreement and the Notice of Withdraw Violated the Local Rules**

They violated the Local Rule which holds that after making an appearance in the Court, an

attorney's withdrawal from litigation requires the court's leave. If their clients, Intervenors have

withdrawn and disappeared without leave of the Court, their attorneys representing the client have

no one to represent in the litigation and have automatically withdrawn and disappeared too, without leave of the Court. Despite Intervenors referred themselves "Proposed Intervenors", both Intervenors and their counsel have already made appearances in the Court, and their counsel' motion for pro hac vice has been granted.  The withdrawal of any attorneys, e.g., the Intervenors' counsel from the Court requires the leave of the Court. See Local Civil Rule 1.4. It goes without saying, that withdrawal of their client also requires the Court's leave. Otherwise, their attorneys would represent nobody and automatically disappear with their clients. Intervenors' counsel believed "no order of the Court prohibits Brandon or the American Prospect from choosing to withdraw their motion or requires them to litigate." This is mistaken: their clients, Intervenors do not litigate. Their attorneys do. The Court directed the attorneys to litigate and file papers, and therefore require their clients to stay in the litigation. Even if the Settlement Agreement were legal and proper, and not in violation of the orders, rules and code, it is improper for Intervenors' counsel simply file the Notice of Withdrawal mandated by Settlement Agreement to disappear.  Intervenors' counsel would be required to file a motion for leave to withdraw their appearance, and report that the parties and Intervenors have failed to reach agreement to unseal court records and set forth the "outstanding court records" that remain unseal after the parties and Intervenors' efforts to resolve the motion to unseal, to seek the Court's approval. The proper course is for the Court to solve the motion to unseal. The Intervenors do not oppose litigation when their sole goal is to unseal the document.  The result of the litigation on their motion will be to unseal more documents, not to seal documents.

Intervenors' counsel's assertion that Brandon and the American Prospect "choos[ing] to withdraw their motion" is belied by the settlement agreement which mandated that the Intervenors must withdraw their motions if they received the three documents. They have no choice under the agreement which the Intervenors' counsel and Defendants counsel executed.  Defendants were allowed to choose to unredact either Teytel' Notebook, Ex.SS, or the two exhibits, Ex. WW and Ex.CCC, of the 4th Fan Decl., while keep all the hundreds of judicial documents sealed, in order to coerce Intervenors to surrender their First Amendment right and "to withdraw the motion [to

intervene and motion to unseal] with prejudice, and, for the avoidance of doubt, will not make any request to (1) unseal any documents filed in the Action as of the date of this notice or (2) modify or remove any redaction applied to any document filed in this Action or provided to the Proposed Intervenors." This Agreement deprived Intervenors' First Amendment right.

It is improper and illegal for Defendants to use the two exhibits to coerce Intervenors to withdraw their motion to unseal with prejudice or to deprive their constitutional right. Clearly, if the Intervenors have had a choice, they would rather be able to access all the documents as provided by law, instead of only the two. Brandon or the American Prospect did not "choose" to withdraw their motion to unseal, they were coerced to do so. Therefore,

### C. The Settlement Agreement and the Notice of Withdraw Deprived Intervenors' Constitutional Rights and Violated 42 U.S.C 1983

The negotiation between the counsel of Defendants and Intervenors resulted the Settlement Agreement of September 5, 2020 which they imposed on Intervenors. The Notice of Withdrawal is the exhibit of the Agreement. The 4th Fan Decl is just one of the hundreds of court records improperly sealed by Defendants. Defendants sealed off hundreds of exhibits of Fan 4th except three in contravene to law. The Agreement mandated that within one calendar day of Defendants provision of only three exhibits of Fourth Fan Decl,  Intervenors must "file with the Court the attached agreed-upon notice withdrawing their Motion to Intervene and Unseal with prejudice" "and, for the avoidance of doubt, will not make any request to (1) unseal any documents filed in the Action as of the date of this notice or (2) modify or remove any redaction."

The Agreement and the Notice deprived the Intervenors' First Amendment right, and violated 42 U.S.C §1983, which set forth：

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, …, subjects, or causes to be subjected, any citizen of the United States or other person thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress,..."

The Intervenors were told by the lawyers that pursuant to the Stipulation and Protective Order of 2005 under Fed R. Civ. P 26(c), Defendants would not unseal the court records, and would win if Intervenors litigate and even if Defendants would lose in this Court, Defendants would appeal which would take many months and even years, according to the custom and precedents. So Intervenors had no choice but to accept the Agreement.

The Court has an obligation to unseal judicial documents anyway, with/out intervention. Defendants are required to unredact the two documents under the law, so they cannot use the two documents coerce Intervenors to surrender their First Amendment right.  The Motions to Intervene and to Unseal is premised on vindication of the First Amendment right of the public including the Intervenors and Plaintiff, and the Court's obligation to keep the records public mandated by the First Amendment.  It may not be extinguished by a private agreement, let alone an illegal agreement coerced by Defendants imposed on the Intervenors that violated the court orders, rules and Federal code, and abridged the First Amendment right of the Intervenors. It is ironic that the Intervenors walked in the Court to intervene in the case to vindicate their First Amendment right, but coerced into a "settlement agreement" to walk away from the Court having their First Amendment right deprived.

## V.  The Court Should Void the Illegal and Improper Settlement Agreement and the Notice of Withdrawal of Intervenors and Their Counsel, but Rule on the Motion to Unseal

Because the Settlement Agreement coerced by Defendants and imposed on the Intervenors are illegal and improper, so is its attached Notice of Withdrawal. Both the Settlement Agreement and Notice of Withdrawal are void and null. As indicated above, Defendants have an obligation to unseal the two exhibits of Fan 4th Decl anyway,  Intervenors were coerced to surrender their First Amendment right for nothing[4].

---

[4] One of the Intervenors called reporting the litigation as "the biggest story of my life" Access to the court records is the Intervenors' life blood to their reporting.  Even if , for the sake of *arguendo*, the Intervenors had not been coerced but willingly surrendered their constitutional right—it is hard to imagine how this could have happened---, and that there had been some valuable consideration for the Intervenors in exchange for their silence and willful deprivation of their First Amendment right, e.g., "catch and kill" or "hush money", that Settlement Agreement

Further, Plaintiff Advanced Analytics, Inc, has the same First Amendment right and common law right protection as the Intervenors. Plaintiff has the same standing and the identical interest as the Intervenors, if not more because of being already a party in the litigation, to vindicate its First Amendment right to seek unseal the court records, to join-in the pending motion to unseal or to intervene under Fed R. Civ. P. 24(a) for the purpose of unsealing records. Plaintiff fully supported the motion to unseal and join-in the negotiation in the resolution of the proceedings to unseal the court records in connection to motion to unseal. The Court fully recognized that and granted Plaintiff's petitions, and repeatedly overruled Defendants attempts to keep Plaintiff out in the proceedings regarding the motion to unseal. Of course, Plaintiff would not have filed an identical motion to unseal but simply join-in the proceedings for sake of judicial economy and efficiency.

If the Court would, unfortunately, grant the improper and illegal Notice of Withdrawal of motion to unseal, the Intervenors will lose their First Amendment right and common law right, and would be prejudiced,  the vast majority court records are still unsealed and outstanding,  and Plaintiff (and/or third party intervenors) will have no choice but to file an essentially identical motion to unseal to seek the identical relief. That will create more work for the Court and more undue delay. Defendants already have delayed the unsealing court records for many years. They have prevented the responses to the motion to unseal for over one year. The Second Circuit held

Because holding the intervention motion in abeyance was a delay that was effectively a denial of any right to contemporaneous access—where "[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment," *see Grove Fresh Distrib., Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir.1994) (quoting *Nebraska Press Ass'n,* 423 U.S. at 1329, 96 S.Ct. 251)—the district court erred not only in failing to make the specific, on-the-record findings required in order to justify its denial but also in failing to act expeditiously. *Cf. United States v. Antar,* 38 F.3d 1348, 1363 (3d Cir.1994) ("From the record before us, the district judge appears not to have recognized that maintaining the transcripts under seal, though a passive act, was an active decision requiring justification under the First Amendment.

would still be improper and could not be the basis to prevent the Court to fulfill its obligation and discharge it duty to keep its records open. The Court still should not grant the leave to grant the withdrawal and permit Intervenors and their counsel to disappear before it issues the ruling on the motion to unseal.

See *Lugosch*. Thus the Court should fulfill its duty by considering and ruling on the pending motion to unseal which is joined-in by Plaintiff now. Plaintiff is in a unique position to assist the Court to accomplish this task to unseal the court records according to the law, once and for all. Plaintiff believes that during the last year, Defendants have been served ample notice that Plaintiff is a party to join the motion to unseal.  At the Court's discretion, if the Court believes that a notice of joinder to join is required, Plaintiff will file a notice and a joinder or even a separate motion to unseal, at the Court's direction.  If the Court will treat this Response as a joinder motion to the pending motion to unseal, and if Defendants fail to comply with the Court's order of August 4, 2020 to file a response that is due September 22, 2020, but still wish to file a response, Plaintiff does not object, so long Plaintiff is allowed to file a reply to Defendants' response.

### VI. The Court Records Should Be Unsealed Without Further Delay

As indicated above, the Court should unseal all the judicial documents in this case, including the two sets of summary judgment motion papers, all 56.1 statements, responses, replies, the meet-and-confer reports of 2015, the sanction motions, the Daubert  motion, with minimal redaction of information narrowly tailored in individual document supported by declarations from Defendants engineers to "prove" that such information is trade secret or other confidential commercial information that its public disclosure will result in specific and severe injury to Defendants, as required by the CA2 authorities, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d. Cir. 2006) and *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019). As demonstrated above, Defendants have never carried this burden required by the law.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the Court should unseal all the court records and judicial documents with minimal redaction, and grant any other relief it deems just and proper.

Dated: September 22, 2020

Respectfully Submitted,

/s/ Peter J. Toren
Peter J. Toren
Attorneys for Plaintiff and Counter-
Claim Defendant Advanced Analytics, Inc.