UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

ADVANCED ANALYTICS, INC.,

        Plaintiff,

  -v-                                            No.  04-CV-3531-LTS-SLC

CITIGROUP GLOBAL MARKETS INC., et al.,

        Defendants.

-------------------------------------------------------x

<u>MEMORANDUM ORDER ADOPTING REPORT AND RECOMMENDATION</u>

Plaintiff Advanced Analytics, Inc. ("Plaintiff" or "AAI") has filed objections to the Report and Recommendation of Magistrate Judge Pitman, dated September 4, 2019 (docket entry no. 340 (the "Report")), which recommends that the motion for summary judgment filed by Defendants Citigroup Global Markets, Inc. and The Yield Book, Inc. ("Defendants") be granted; to the Opinion and Order of Judge Pitman, also dated September 4, 2019 (docket entry no. 339 (the "Rule 56(h) Ord.")), which denied Plaintiff's related motion pursuant to Federal Rule of Civil Procedure 56(h); and to the Opinion and Order of Magistrate Judge Cave, dated June 9, 2020 (docket entry no. 438 (the "Reconsideration Ord.")), which denied Plaintiff's motion for reconsideration of two of Judge Cave's non-dispositive orders in the above-captioned action. The Court has jurisdiction of this case pursuant to 28 U.S.C. section 1332.

The Court has reviewed thoroughly the parties' submissions on the objections as well as the papers filed in connection with the underlying motions and, for the following reasons, overrules each of Plaintiff's objections and adopts the Report in its entirety.

BACKGROUND

The factual background of this case has been discussed in prior orders of the Court; the parties' familiarity with them is assumed. Plaintiff alleges that Defendants misappropriated number sequences developed by Plaintiff's principal, Dr. Xiaolu Wang (the "ACE Sequences"), during Defendants' testing of those sequences, which were then incorporated into a software product ("the Yield Book") or used to create new sequences of numbers for use in the Yield Book. On May 7, 2004, Plaintiff filed its Complaint (docket entry no. 1) asserting claims for breach of contract, misappropriation of trade secrets, breach of the duty of good faith and fair dealing, quantum meruit, unjust enrichment, and constructive trust. On July 1, 2004, Defendants filed an Answer and counterclaim (docket entry no. 11) asserting their entitlement to an award of attorneys' fees and costs, in the event they prevailed in this action, under the terms of the parties' January 7, 1997, non-disclosure agreement ("NDA").

On February 15, 2008, the parties filed cross-motions for summary judgment. On August 5, 2009, Judge Pitman issued a report and recommendation (docket entry no. 112 (the "2009 Report")) recommending that judgment be entered in favor of Plaintiff on Plaintiff's claim that Defendants breached the NDA, to the extent that claim arose from Defendants' admission that their sequence developer, Teytel, had used outputs from Defendants' testing of the ACE Sequences (but not the sequences themselves) to compare the accuracy of outputs from sequences allegedly developed by Teytel, but only to the extent of a nominal damages award of one dollar, based on a conclusion that Plaintiff had failed to proffer evidence of damages flowing from Teytel's "research (i.e. non-investment)" misuse of the ACE outputs. The 2009 Report recommended that judgment be entered in favor of Defendants in all other respects, including to the extent that Plaintiff's breach of contract claim asserted that Teytel used or targeted the ACE

Sequences themselves (rather than merely the outputs of Defendants' testing of those sequences) in developing his own sequences on behalf of Defendants.  See Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc., No. 04-CV-3531-LTS-HBP, 2009 WL 7133660, at *7-25 (S.D.N.Y. Aug. 5, 2009), report and recommendation adopted in part, rejected in part, 04-CV-3531-LTS-HBP, 2010 WL 4780772 (S.D.N.Y. Nov. 22, 2010).  The 2009 Report also recommended that the Court enter judgment in favor of Defendants on their counterclaim for an award of fees and costs, given that Defendants had "prevailed with regard to the central relief sought" for purposes of the NDA.  Id. at *24.

In a Memorandum Order dated November 22, 2010 (docket entry no. 124 (the "2010 Order")), the Court adopted the 2009 Report in several respects and entered judgment in favor of Defendants on Plaintiff's claims for breach of the duty of good faith and fair dealing, quantum meruit, and unjust enrichment.  Advanced Analytics, 2010 WL 4780772, at *3.[1]  However, the Court declined to adopt the 2009 Report's recommendations "regarding the character of Teytel's use of the output and the significance of that use as to the appropriate measure of damages," id. at *2, and therefore granted Plaintiff's motion for summary judgment, to the extent it claimed that Teytel's use of the ACE test results was in violation of the parties' NDA, as to liability only, leaving open the question of the appropriate measure of damages.  As to the remainder of Plaintiff's breach of contract claim—regarding Plaintiff's allegations that Teytel used or targeted the ACE Sequences in developing his own—the Court denied both

---

[1]  The 2010 Order also necessarily disposed of Plaintiff's claim for "constructive trust," which is an equitable remedy, not a separate cause of action, Blank v. TriPoint Glob. Equities, LLC, 338 F. Supp. 3d 194, 220 (S.D.N.Y. 2018), and which depends on the party seeking the trust establishing a claim for unjust enrichment.  Id.; In re First Cent. Fin. Corp., 377 F.3d 209, 212 (2d Cir. 2004) ("The fourth element [unjust enrichment] is the most important since 'the purpose of the constructive trust is prevention of unjust enrichment.'") (citation omitted).

parties' motions for summary judgment, explaining that, on the then-existing record, evidence of references to ACE in a notebook maintained by Teytel (the "Teytel Notebook") and the expert evidence proffered by Plaintiff "would be sufficient to support a reasonable jury's determination in Plaintiff's favor on this aspect of the breach of contract claim." Id. The Court also noted, however, that "apparently relevant discovery (in the form of Defendants' development and testing records) requested by Plaintiff and ordered produced by the Magistrate Judge has not yet been produced," rendering summary judgment inappropriate. Id. Similarly, the Court concluded as to Plaintiffs' timely[2] misappropriation claims that summary judgment in favor of Defendants was "premature as well as unwarranted on the current record because there [was] a genuine issue of material fact as to whether Defendants' sequences were derived from the ACE sequence," and because "the outstanding testing and development discovery may be relevant to whether Plaintiff can frame a genuine issue of material fact as to whether Defendants' disclosed practices were a front for actual use of the ACE sequence in generating Yield Book outputs." Id. at *3. Having so concluded, the Court also declined to adopt, as "premature," the 2009 Report's recommendation that the Court grant Defendants' motion for summary judgment on their counterclaim for attorneys' fees under the parties' NDA because "genuine issues of material fact preclude[d] the resolution at this stage of most of the parties' dispute concerning breach of the NDA." Id. at *4.

On or about March 7, 2011, Defendants produced the testing and development files discussed in the 2010 Order. (Report at 18; Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, dated April 5, 2013 ("Def't 56.1 Stmt.") ¶ 67.) Defendants

---

[2] The Court adopted the 2009 Report's recommendation that Plaintiffs' misappropriation claim, to the extent premised on Defendants' development and use of a 100-path sequence, was barred by the statute of limitations. Id. at *3.

subsequently produced evidence from their retained expert, Dr. Nathaniel Polish, who analyzed the testing and development files and opined that they reflect, consistent with Teytel's Notebook and testimony, Teytel's independent development of Defendants' sequences, and that there was not "any data or code in the Sequence Development and Testing Files to suggest that Dr. Teytel relied upon, targeted or had access to the ACE Numbers or any product of the ACE Numbers," while he was developing Defendants' sequences.  (Second Expert Report of Dr. Nathaniel Polish, dated June 18, 2012 (Exhibit 35 to the Declaration of Nathaniel E. Jedrey dated April 5, 2013) ("Second Polish Report") at 15; Report at 29-30.)  Plaintiff did not timely produce any contrary expert opinion evidence analyzing the testing and development files produced by Defendants on March 7, 2011.  (Report at 29-30; Def't 56.1 Stmt. ¶ 79.)

        Against that backdrop, Defendants renewed their motion for summary judgment as to Plaintiff's remaining claims[3]; Plaintiff separately moved for sanctions pursuant to Federal Rule of Civil Procedure 56(h), based on Plaintiff's claim that Defendants submitted affidavits in support of summary judgment in bad faith.  On September 4, 2019, Judge Pitman issued an Opinion and Order denying Plaintiff's Rule 56(h) motion, as well as the Report, recommending that the Court grant Defendants' motion for summary judgment in its entirety.  On June 9, 2020, Judge Cave—who was assigned the pretrial management of this action after Judge Pitman's retirement in 2019—issued an Opinion and Order resolving Plaintiff's motion for reconsideration as to Judge Cave's resolution of two ancillary disputes between the parties.  Plaintiff has filed objections to all three decisions.

---

[3]    Defendants did not renew their motion for summary judgment as to Defendants' counterclaim for costs and fees, which remains pending, as discussed below.

DISCUSSION

When reviewing a report and recommendation, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C) (Westlaw through P.L. 117-41). The Court must make a de novo determination to the extent that a party makes specific objections to a magistrate judge's findings. Soley v. Wasserman, 823 F. Supp. 2d 221, 228 (S.D.N.Y. 2011) (citing United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997)). "However, when a party makes only conclusory or general objections, or simply reiterates his original arguments, the court reviews the report and recommendation strictly for clear error." Piligian v. Icahn Sch. of Med. at Mount Sinai, 490 F. Supp. 3d 707, 715 (S.D.N.Y. 2020) (citation and internal quotation marks omitted).

When a party objects to a magistrate judge's non-dispositive order, the Court must review the objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). A decision is clearly erroneous where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Gualandi v. Adams, 385 F.3d 236, 240 (2d Cir. 2004) (citation omitted). An order is "contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 444 F. Supp. 3d 484, 487 (S.D.N.Y. 2020) (citation omitted). This standard of review is "highly deferential"; magistrate judges "are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic, 924 F. Supp. 2d 508, 511-12 (S.D.N.Y. 2013) (citation omitted).

Plaintiff's Objections to the Report

The Court turns first to Plaintiff's objections to the Report, which recommends that the Court grant Defendants' renewed motion for summary judgment as to Plaintiff's remaining claims for misappropriation of trade secrets and breach of contract. (Docket entry no. 390 ("Report Objs.").)

As set forth in greater detail in the Report, Judge Pitman concluded—in light of Defendants' production of their testing and development records and unrebutted expert testimony analyzing those records and comparing Defendants' sequences to the ACE Sequences—that Plaintiff has failed to introduce evidence that Defendants' sequences were similar to or derived from Plaintiff's sequences. Advanced Analytics, 2019 WL 9466011, at *8-10. The Report also rejected Plaintiff's argument that summary judgment should be denied because of Plaintiff's allegations of discovery misconduct—including that Defendants "fabricated" certain of the sequences they produced in discovery, "modified" their testing and development records before producing them, and withheld the true "production" sequences used by the Yield Book. Id. at *11-14. The Report further concluded that, on the current record, "the three ambiguous references to ACE in Teytel's notebook . . . [are] not sufficient evidence of misappropriation" to defeat Defendants' motion for summary judgment, id. at *14, and rejected Plaintiff's new theory that Defendants' development of portfolio hedging abilities around the same time as Defendants conducted the ACE testing raised a genuine dispute of fact as to whether Defendants' sequences were derived from the ACE Sequences. Id. at *14-15. The Report therefore recommended entry of judgment in favor of Defendants on Plaintiff's remaining misappropriation and breach of contract claims.

The first fourteen pages of Plaintiff's objections, which purport to detail the means by which Defendants stole and used the ACE Sequences, rely almost exclusively on Plaintiff's counsel's interpretation of raw computer code produced by Defendants in discovery, unsupported by lay or expert witness testimony concerning the meaning of that code. Plaintiff's counsel's unsupported conclusions about Defendants' code are insufficient to raise a genuine dispute of fact. Paone v. Microsoft Corp., 881 F. Supp. 2d 386, 415 (E.D.N.Y. 2012) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony." (citation omitted)); Demarco v. Ouellette, No. 04-CV-0440-RJH, 2005 WL 2170557, at *6 (S.D.N.Y. Sept. 7, 2005) (quoting Lavine v. Town of Lake Luzerne, 296 A.D.2d 793, 794 (3d Dep't 2002)) ("non-expert attorney's opinion has 'no probative value'").[4] Counsel's interpretation of Defendants' "theft code" and "use code" therefore does not provide a basis for rejection of the Report.

Next, Plaintiff objects to Judge Pitman's "finding of no discovery abuse by Defendants." (Report Objs. at 18-20, 24-25.) Magistrate judges are afforded "broad discretion in resolving discovery disputes," In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., 336 F.R.D. 400, 403 (S.D.N.Y. 2020) (citation omitted), however, and Plaintiff's claims of discovery misconduct by Defendants largely recycle arguments which have already been presented to, and rejected by, this Court. See, e.g., Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc., No. 04-CV-3531-LTS-HBP, 2013 WL 489061, at *2 (S.D.N.Y. Feb. 8, 2013) ("For substantially the reasons stated by Judge Pitman at the September 5, 2012, hearing, and in light of the evidence proffered by Defendants that Plaintiff has everything it needs to compare

---

[4] Several of Plaintiff's responses to Defendants' Local Civil Rule 56.1 statement suffer from the same deficiency. (See, e.g., Plaintiff's Revised Responses to Defendants' Statement of Undisputed Facts, dated May 28, 2014 ¶¶ 16, 20, 51, 68.)

Defendants' sequences, analyze the code that Defendants use to generate their sequences to determine whether this process could have been derived from Defendants' alleged exposure to the Plaintiff's product and determine whether the Plaintiff's product played any role in the development of Defendants' sequences, the Court does not find any basis for overturning Judge Pitman's decision to deny Plaintiff's application for additional production of Defendants' code."); (Rule 56(h) Ord. at 2 ("All of the discovery issues concerning plaintiff's theory that defendants were withholding evidence have been previously litigated.").)

    Finally, Plaintiff notes that the Court's 2010 Order concluded that the "Teytel notebook and the expert evidence proffered by Plaintiff in this connection . . . would be sufficient to support a reasonable jury's determination in Plaintiff's favor" on Plaintiff's claim that Defendants breached the NDA by using Plaintiff's confidential information to develop the Teytel sequences, Advanced Analytics, 2010 WL 4780772, at *2, and on Plaintiff's remaining misappropriation claims. Id. at *3 ("The recommended grant of summary judgment in Defendants' favor is, accordingly, premature as well as unwarranted on the current record[.]") (emphasis added). (See Report Objs. at 15-18, 21-24.) However, the Court reached that conclusion on a different record which did not include the development and testing records reflecting Teytel's development of Defendants' sequences, or Defendants' unrebutted expert testimony that those records confirm that Teytel developed his sequences in accordance with the methodology described in the Teytel Notebook, and not through reliance upon, targeting, or accessing the ACE Sequences. (See Report at 18, 27, 29-30; see also Second Polish Report § II(A) (opining, based on his review of the sequence development and testing files produced by Defendants after the Court's 2010 Order, that "Defendants developed their 200 path mixed-seed sequence in accordance with the methodology described by Dr. Mikhail Teytel in his notebook,"

and that nothing in those files "suggest[s] that Dr. Teytel relied upon, targeted or had access to the ACE Numbers while he was developing the 200 path mixed-seed sequence"); Def't 56.1 Stmt. ¶¶ 66-67, 78-79.)  In light of this record, the Court agrees with, and adopts, the Report's conclusion that the few references to ACE in the Teytel Notebook and the expert evidence proffered by Plaintiff are insufficient to meet Plaintiff's prima facie burden of demonstrating similarity or derivation in the first instance.  (See Report at 24-45.)  Moreover, they are also insufficient to raise a genuine issue of material fact as to the independent development of the Teytel sequences in light of the additional unrebutted evidence in the augmented record.  See Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 476 (1974) ("trade secret law, however, does not offer protection against discovery by fair and honest means, such as by independent invention"); Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 732 F. Supp. 370, 377-78 (S.D.N.Y. 1989) ("It is a well-recognized principle that, where a defendant in a trade secret case claims independent development, the burden shifts to the defendant to show that this was in fact the case."), aff'd, 920 F.2d 171 (2d Cir. 1990); AEB & Assocs. Design Grp., Inc. v. Tonka Corp., 853 F. Supp. 724, 734 (S.D.N.Y. 1994) ("A plaintiff cannot recover for misappropriation absent a showing that its ideas were actually used by the defendant.").[5]

---

[5]  In the last half-page of Plaintiff's objections to the Report, Plaintiff objects to Judge Pitman's separate Order, dated May 28, 2019 (docket entry no. 312), denying a motion Plaintiff filed pursuant to Federal Rule of Civil Procedure 56(d), which was also principally based on Plaintiff's claims of discovery misconduct by Defendants.  (Report Objs. at 25.)  As Defendants correctly argue, Plaintiff's objections to Judge Pitman's May 28, 2019, Order are late, see Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (failure to timely object to a magistrate judge's decision waives further judicial review), as was Plaintiff's motion pursuant to Rule 56(d), see Turner v. McDonough, No. 18-CV-4038-AEK, 2021 WL 965626, at *2 (S.D.N.Y. Mar. 15, 2021) ("Relief under Rule 56(d) is not available when summary judgment motions are made after the close of discovery." (citation omitted)), and the Court therefore declines to review Plaintiff's summary objections to that Order.

The Court has reviewed Plaintiff's remaining arguments and finds none of them meritorious.  Accordingly, the Court overrules Plaintiff's objections to the Report and adopts the Report in its entirety.

Plaintiff's Objections to Judge Pitman's Opinion and Order dated September 4, 2019

The Court next addresses Plaintiff's objections to Judge Pitman's Opinion and Order dated September 4, 2019.  (Docket entry no. 361 ("Rule 56(h) Objs").)

In that Opinion and Order, Judge Pitman denied Plaintiff's motion which sought an order striking the declarations submitted by Defendants in support of their motion for summary judgment and imposing related sanctions.  After noting that "[m]uch of plaintiff's Rule 56(h) motion appears to have little or no connection to the legal requirements for an award of sanctions under Rule 56(h),"[6] Judge Pitman rejected the three bases he discerned for Plaintiff's motion: that "(1) defendants are guilty of discovery misconduct; (2) defendants' motion is groundless because plaintiff is entitled to prevail on the merits[;] and (3) defendants have submitted declarations that are not based on personal knowledge and/or are false."  (Rule 56(h) Ord. at 5.)

Rule 56(h) provides that a court, "[i]f satisfied that an affidavit or declaration" filed in connection with a motion for summary judgment "is submitted in bad faith or solely for delay," "may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result," and may also hold an offending party or attorney in contempt or subject them to other appropriate sanctions.  Bad faith "may be found when an

---

[6]   For instance, Judge Pitman noted that "plaintiff spends several pages claiming, without any evidence, that its former counsel colluded with defense counsel," but explained that plaintiff's principal's "disagreements with plaintiff's former counsel . . . [did] not imply that the attorney [was] colluding with the other side."  (Rule 56(h) Ord. at 5.)

attorney's actions are 'so completely without merit . . . that they must have been undertaken for some improper purpose.'" Jimenez v. City of New York, 666 F. App'x 39, 41 (2d Cir. 2016) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 338 (2d Cir. 1999)).  Such a finding may be appropriate where an attorney's conduct is "egregious," Jaisan, Inc. v. Sullivan, 178 F.R.D. 412, 415 (S.D.N.Y. 1998); "even [where] the Court finds [a party's] arguments meritless," however, "it does not necessarily follow that they were made in bad faith," Creusot-Loire Int'l, Inc. v. Coppus Eng'g Corp., 585 F. Supp. 45, 52 (S.D.N.Y. 1983).

        The Court has reviewed Plaintiff's objections and concludes that Plaintiff has not met its burden to show that Judge Pitman's denial of Plaintiff's Rule 56(h) motion was clearly erroneous or contrary to law.  Contrary to Plaintiff's contention (Rule 56(h) Objs. at 6-7), Judge Pitman did not misunderstand the appropriate standard; he accurately recited that "an order to pay expenses pursuant to Rule 56(h) requires a finding of 'bad faith,' which courts have found only when the attorney's conduct is 'egregious,' *such as* 'where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case.'"  (Rule 56(h) Ord. at 4 (quoting Stern v. Regency Towers, LLC, 886 F. Supp. 2d 317, 327 (S.D.N.Y. 2012)) (emphasis added; internal citations omitted).)  Similarly, Judge Pitman did not err by "fail[ing] to apply" Federal Rule of Civil Procedure 54(b) (see Rule 56(h) Objs. at 7-8), which Plaintiff raised only in passing in its underlying motion papers.  (See docket entry no. 313 at 24 & 24 n.45.)  Moreover, none of Plaintiff's specific challenges to Defendants' declarants suggest that Defendants submitted their declarations in support of summary judgment in bad faith.  (See Rule 56(h) Ord. at 10-18.)

        The Court has reviewed Plaintiff's remaining arguments and finds none of them meritorious.  Accordingly, the Court finds that Plaintiff fails to identify any clear error or

erroneous application of the law by Judge Pitman with regards to the Rule 56(h) Order and the Court overrules Plaintiff's objections as to that Order.

Plaintiff's Objections to Judge Cave's Opinion and Order dated June 9, 2020

The Court next addresses Plaintiff's objections to Judge Cave's Opinion and Order dated June 9, 2020. (Docket entry no. 442 ("Reconsideration Objs.").)

In her June 9, 2020, Opinion and Order, Judge Cave denied Plaintiff's motion for reconsideration of two orders: a Case Management Order dated November 12, 2019 (docket entry no. 375 (the "CMO")), and an Order calculating the amount of attorneys' fees due to Defendants (docket entry no. 389, as amended at docket entry no. 410 (the "Fee Award")) by virtue of an Opinion and Order issued by Judge Pitman on March 26, 2014—as to which Plaintiff filed, and the Court overruled, objections, in 2014. See Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc., 301 F.R.D. 31, 44 (S.D.N.Y. 2014), objections overruled, 301 F.R.D. 47 (S.D.N.Y. 2014).

With one exception discussed below, Plaintiff does not object to the specific conclusions reached by Judge Cave in the CMO, Fee Award, or Reconsideration Order. For example, Plaintiff does not object to the Reconsideration Order's denial of reconsideration of Judge Cave's prior "pre-authorization" orders as moot (see Reconsideration Ord. at 17-18), or to any of Judge Cave's mathematical calculations in the Fee Award. (See id. at 18-20.) Instead, Plaintiff's objections detail alleged collusion between Defendants and Plaintiff's prior counsel and what Plaintiff believes are Defendants' "three levels of fraud" perpetuated on the Court in this action; claim that the collusion and fraud call into question the rulings issued by this Court from the "latter part of 2012 until 2014"; and ask the Court to conduct an investigation into that fraud and collusion. These claims, many if not all of which seek to relitigate issues already

decided by the Court, are only tangentially related to the challenged orders issued by Judge Cave, and, to the extent they are, do not satisfy Plaintiff's burden to show that Judge Cave's Reconsideration Order was clearly erroneous or is contrary to law.[7]

Plaintiff's sole objection specifically tailored to the rulings in Judge Cave's Reconsideration Order is that Judge Cave erred in "impos[ing] fees on AAI and its [current] counsel, instead of [AAI's former counsel], the lawyer [who] procured" the March 26, 2014, Order from Judge Pitman "in collusion with" Defendants. (Reconsideration Objs. at 23-25.) However, the Reconsideration Order referred to Plaintiff's "joint liability with its former counsel" (id. at 19 (emphasis added))—i.e., as provided in Judge Pitman's March 26, 2014, Order, "AAI and its counsel" as of March 26, 2014. Advanced Analytics, 301 F.R.D. at 44. The Court therefore declines to disturb the Reconsideration Order on that basis.

The Court has reviewed Plaintiff's remaining arguments and finds none of them meritorious. Accordingly, the Court finds that Plaintiff fails to identify any clear error or erroneous application of the law by Judge Cave with regards to the Reconsideration Order and the Court overrules Plaintiff's objections as to that Order.

Order to Show Cause

For the reasons set forth above, the Court has concluded that Defendants are entitled to summary judgment on each of Plaintiff's claims, except as to Plaintiff's breach of

---

[7] Plaintiff claims that the Reconsideration Order "failed to apply" Federal Rule of Civil Procedure 54(b) (Reconsideration Objs. at 20-23), which permits a Court to reconsider a prior decision at any time before the entry of final judgment. However, Judge Cave considered and applied Rule 54(b) (see Reconsideration Order at 8-9), and concluded that Plaintiff had failed to "point to an intervening change in controlling law, new evidence that just became available, any showing that reconsideration is needed to correct clear error, or any showing that reconsideration is needed to prevent manifest injustice," in connection with Plaintiff's allegations of collusion. (Id. at 14-16.)

contract claim, to the extent that claim is based on Teytel's use of outputs from Defendants' testing of Plaintiff's ACE Sequences (but not the sequences themselves) to compare the accuracy of outputs from sequences developed by Teytel. In light of this conclusion, the Court will direct Plaintiff to show cause why the Court should not adopt Judge Pitman's 2009 Report to the extent that the 2009 Report recommended (1) an award of nominal damages in favor of Plaintiff on its breach of contract claim, based on that use, and (2) entry of judgment in favor of Defendants on their counterclaim for an award of fees and costs under the NDA. See Advanced Analytics, 2010 WL 4780772, at *2 (declining to adopt the 2009 Report's recommendation that Plaintiff be awarded nominal damages in the amount of one dollar as "premature" given unresolved questions concerning the character of Teytel's access to and use of ACE); id. at *3-4 (declining to adopt the 2009 Report's recommendation that Defendants be awarded fees and costs under the NDA as "premature" given unresolved issues of material fact as to the parties' disputes concerning breach of the NDA).

CONCLUSION

For the reasons set forth above, the Report (docket entry no. 340) is adopted in its entirety, and Plaintiff's objections to the Report, as well as to Judge Pitman's Opinion and Order dated September 4, 2019 (docket entry no. 339), and to Judge Cave's Opinion and Order dated June 9, 2020 (docket entry no. 438), are overruled.

ORDER TO SHOW CAUSE

Plaintiff is directed to show cause in a written submission not to exceed ten pages, no later than **October 22, 2021**, why, in light of this Memorandum Order, the Court should not

adopt the 2009 Report's recommendations concerning Plaintiff's entitlement to nominal damages and Defendants' counterclaim and enter judgment in favor of Plaintiff on its breach of contract claim, to the extent that claim is based on Teytel's limited use of the outputs of Defendants' testing of ACE, and award Plaintiff damages in the nominal amount of $1; and otherwise enter judgment in favor of Defendants as to the remainder of Plaintiff's claims and as to Defendants' counterclaim for fees and costs under the NDA.

This Memorandum Order resolves docket entry nos. 361 and 442.

SO ORDERED.

Dated: New York, New York
      September 30, 2021

      /s/ Laura Taylor Swain
     LAURA TAYLOR SWAIN
     Chief United States District Judge