UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ADVANCED ANALYTICS, INC.,

        Plaintiff,

    -v-                                       No. 04-CV-3531-LTS-SLC

CITIGROUP GLOBAL MARKETS INC., et
al.,

        Defendants.

--------------------------------------------------------x

<u>ORDER DIRECTING ENTRY OF JUDGMENT</u>

        On September 30, 2021, the Court issued a Memorandum Order (docket entry no.

461 (the "Sept. Ord.")), adopting a Report and Recommendation dated September 4, 2019

(docket entry no. 340 (the "2019 Report")), which recommended granting summary judgment in

Defendants' favor on all but one aspect of Plaintiff's claims for misappropriation of trade secrets

and breach of contract.  The September Order also directed Plaintiff to show cause why the

Court should not, in light of that decision, adopt certain portions of a Report and

Recommendation dated August 5, 2009 (docket entry no. 112 (the "2009 Report")), which the

Court previously declined to adopt as "premature," and which recommended (1) that Plaintiff be

awarded nominal damages in the amount of one dollar on the one aspect of Plaintiff's breach of

contract claim as to which the Court granted partial summary judgment in Plaintiff's favor (2009

Report at 34-40; docket entry no. 124 ("2010 Ord.") at 3), and (2) that judgment be entered in

favor of Defendants on all of the parties' other claims, including Defendants' counterclaim

seeking attorneys' fees, as the "prevailing party" in this action, under the terms of the parties'

Non-Disclosure Agreement (docket entry no. 462-1 ("NDA")).  (2009 Report at 72-73.)

On October 22, 2021, Plaintiff filed a response to the order to show cause (docket entry no. 462 ("OSC Resp.")), and on October 25, 2021, Defendants filed a reply (docket entry no. 463).  This Order addresses the issues raised by Plaintiff and directs the entry of judgment.

Plaintiff's OSC Response opposes the entry of judgment as contemplated by the September Order on four principal bases: (1) that the September Order was in error, based on arguments previously litigated in this action; (2) that Defendants' limited breach of contract also amounted to a misappropriation of Plaintiff's trade secrets; (3) that Plaintiff should be permitted further damages discovery before the contemplated entry of judgment; and (4) that Plaintiff, rather than Defendants, is the "prevailing party" under the terms of the parties' NDA.  The Court concludes that none of these arguments counsels against the entry of judgment as recommended in the 2009 and 2019 Reports, and as contemplated in the September Order.

First, to the extent Plaintiff's repetition of arguments previously litigated by the parties and rejected by the Court (see OSC Resp. at 2-7) seeks reconsideration of the September Order under Local Civil Rule 6.3, the Court denies that request as untimely, Komatsu v. City of New York, No. 18-CV-3698-LGS, 2020 WL 4586279, at *1 (S.D.N.Y. Aug. 10, 2020) (subsequent history omitted) ("These motions are untimely, and on that basis alone the applications are denied."); Johnson v. Riverhead Cent. Sch. Dist., 420 F. Supp. 3d 14, 34 n.1 (E.D.N.Y. 2018) ("The Court would be well within its discretion to deny Plaintiff's motion for reconsideration based solely on Plaintiff's untimely filing."), and for failure to identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992), so as to warrant reconsideration.

Second, Plaintiff argues that the admitted conduct which gave rise to the portion of Plaintiff's breach of contract claim on which the Court granted partial summary judgment in Plaintiff's favor—the evaluation of outputs from Defendants' testing of Plaintiff's number sequences (the "ACE Sequences"), but not of the ACE Sequences themselves, by Defendants' sequence developer Teytel, to compare the accuracy of outputs from sequences developed by Teytel—also constituted a misappropriation of Plaintiff's trade secrets.  (OSC Resp. at 8-9.) Any such misappropriation claim based on Teytel's limited reference to the outputs of Defendants' testing of the ACE Sequences, however, is time-barred under the plain terms of the 2009 Report and the 2010 Order adopting it in part, which held that any misappropriation claim based on Defendants' "use" of Plaintiff's claimed trade secret before May 7, 2001, was barred by the applicable statute of limitations.  (2009 Report at 47-55; 2010 Ord. at 5.)  Because Teytel's limited use of the outputs of Defendants' testing of the ACE Sequences occurred in connection with his development of Defendants' "100-path mixed seed" sequence in 1998 and/or 1999, and the "last arguable use of the 100-path mixed seed sequence occurred more than three years prior to the commencement of this action, any claim of misappropriation based on that claimed use," even assuming such a claim were otherwise viable, "is time-barred."  (2009 Report at 48.)

Third, Plaintiff's request for more time to conduct fact and expert discovery regarding its alleged damages stemming from Teytel's limited use of the testing outputs referenced above (OSC Resp. at 1 n.1, 9) does not warrant reopening discovery in this long-running action.  In the 2009 Report—issued after this action had already been pending for more than five years—Judge Pitman concluded that while "Defendants' improper use of the ACE test results violated plaintiff's restitutionary interest," Plaintiff had "offered no evidence quantifying the damage to its restitutionary interest" from Teytel's limited use of those test results.  (2009

Report at 37.)  The Court initially declined to adopt that recommendation, reasoning that the

2009 Report "resolve[d] the issue of damages prematurely," in light of unresolved issues

"regarding the character of Teytel's use of the output and the significance of that use as to the

appropriate measure of damages."  (2010 Ord. at 3.)  Since then, however, Defendants

demonstrated, based on an augmented record, their entitlement to summary judgment on the

question of the "character" of Teytel's use, given Defendants' showing that "Teytel developed

[Defendants'] sequences in accordance with the methodology described" in his records and "not

through reliance upon, targeting, or accessing the ACE Sequences."  (Sept. Ord. at 9.)  Given this

determination, the 2009 Report's conclusion that Plaintiff had failed to identify evidence

quantifying its damages specifically resulting from Teytel's limited reference to the outputs of

Defendants' testing of ACE—a defect which is not cured by Plaintiff's general references to the

"millions of lost license fees from Defs alone, and the millions attorney fees Pl. suffered from

having to bring this action to protect its trade secret" (OSC Resp. at 9)—is no longer premature

and will be adopted.[1]

Finally, Plaintiff objects to the Court's proposed adoption of the 2009 Report's

recommendation that Defendants are the "prevailing party" in this dispute, as defined in the

parties' NDA, so as to entitle Defendants to an award of fees and costs incurred in this action.

(OSC Resp. at 7-8.)  As set forth in the 2009 Report, that NDA provides that "[i]f any legal

---

[1]     Plaintiff writes that "the damage discovery is [not] even complete."  (OSC Resp. at 9.)
        The Court understands Plaintiff to refer to Judge Pitman's Order dated September 25,
        2012 (docket entry no. 174), which deferred resolution of Plaintiff's application for
        additional discovery concerning Defendants' profits pending resolution of Defendants'
        renewed motion for summary judgment.  Given the Court's subsequent holdings
        regarding the limited nature of Teytel's use of the outputs from Defendants' testing of the
        ACE Sequences, Defendants' profits from the use and licensing of their own sequences
        would not inform Plaintiff's purported damages resulting from that limited use.

action arises relating to this Agreement, the prevailing party shall be entitled to recover all court

costs, expenses and reasonable attorney's fees, in addition to any other relief to which it might be

entitled." (2009 Report at 72 (quoting NDA ¶ 21).) Under New York law applying similar

contractual terms, "the prevailing party is the party that prevailed with respect to the central

relief sought." (2009 Report at 72 (quoting Arbordale Hedge Invs., Inc. v. Clinton Group. Inc.,

99-CV-4452-MBM, 1999 WL 1000939 at *2 (S.D.N.Y. Nov. 4, 1999) (internal quotation marks

omitted))); accord Blinds to Go (U.S.), Inc. v. Times Plaza Dev., L.P., 191 A.D.3d 939, 942 (2d

Dep't 2021) ("Such a determination requires an initial consideration of the true scope of the

dispute litigated, followed by a comparison of what was achieved within that scope." (citation

omitted)). Especially in light of the 2019 Report and September Order, the Court agrees with,

and adopts, the 2009 Report's conclusions that "[a]lthough plaintiff has prevailed on its first

breach of contract claim alleging the improper use of the ACE test results to validate Teytel's

sequence, that claim is a relatively insignificant part of the case and has yielded a right to recover

only nominal damages," and therefore that "[D]efendants have prevailed with regard to the

central relief sought and, [ ] under the NDA, are entitled to recoup reasonable attorneys' fees and

costs." (2009 Report at 72-73); see also Zamora v. Morphix Co., Ltd., No. 15-CV-6532-NRB,

2019 WL 4221558, at *5 (S.D.N.Y. Sept. 5, 2019) ("Even if . . . Morphix had received nominal

damages and thus won its breach of contract claim, such relief would hardly have constituted the

'substantial relief' required for an award of contractual attorneys' fees in New York."); 25 E. 83

Corp. v. 83rd St. Assocs., 213 A.D.2d 269, 269 (1st Dep't 1995) ("by successfully defending

against plaintiff's lawsuit, defendant must be regarded as the prevailing party").[2]

---

[2]     Plaintiff's reference to the unclean hands defense (OSC Resp. at 9) does not warrant
        deferral of entry of judgment on Defendants' claim for attorneys' fees. Initially,
        "[u]nclean hands is a defense only to equitable, not legal, claims." Chevron Corp. v.

CONCLUSION

For the reasons set forth above, in the Court's September Order, and in the 2009

Report and 2019 Report, the Court adopts the 2009 Report's recommendations concerning

Plaintiff's entitlement to nominal damages and Defendants' counterclaim for attorneys' fees.

The Clerk of Court is respectfully directed to (1) enter judgment in Plaintiff's

favor on its breach of contract claim (to the extent that claim is based on Teytel's limited use of

the outputs of Defendants' testing of ACE) and to award Plaintiff damages on that claim in the

nominal amount of $1, (2) enter judgment in favor of Defendants as to the remainder of

Plaintiff's claims and as to Defendants' counterclaim for fees and costs under the parties' Non-

Disclosure Agreement, and (3) close the case.  The Court shall retain jurisdiction over this action

for the purpose of calculating and awarding the fees and costs to which Defendants are entitled.

Defendants shall file a declaration setting forth the fees and costs to which they

claim entitlement by the earlier of (1) 45 days from the date of this Order, or, in the event of an

appeal, (2) 30 days from the date of the Second Circuit's mandate resolving such appeal.

This Memorandum Order resolves docket entry no. 462.

SO ORDERED.

Dated: New York, New York
      November 4, 2021

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

---

Salazar, No. 11-CV-0691-LAK, 2011 WL 3628843, at *6 (S.D.N.Y. Aug. 17, 2011).  In any event, Defendants' admitted minor breach of the parties' NDA does not prohibit them from recovering fees as the prevailing parties in this action, Matsumura v. Benihana Nat. Corp., No. 06-CV-7609-NRB, 2014 WL 1553638, at *5 (S.D.N.Y. Apr. 17, 2014), although it may affect the amount of "reasonable" fees the Court ultimately awards.

Finally, the Court rejects Plaintiff's suggestion that the question of which party prevailed in this action should be decided by a jury.  (OSC Resp. at 8.)  The NDA's language is unambiguous, as is Defendants' status as the "prevailing part[ies]" on the central relief at issue in this action.