# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------x
                                            :
ADVANCED ANALYTICS, INC.                    :
                                            :
        Plaintiff and Counterclaim-Defendant, :
                                            :
                v.                          :
                                            :
CITIGROUP GLOBAL MARKETS, INC. f/k/a        :
SALOMON SMITH BARNEY, INC., and
THE YIELD BOOK INC, f/k/a
  :
SALOMON ANALYTICS, INC.,                    :
                                            :
     Defs and Counterclaim-Plaintiff.       :
------------------------------------------------------x
```

Case No. 04 Civ. 3531 (LTS) (SLC)

---

## PLAINTIFF'S NOTICE OF MOTION PURSUANT
## TO FEDERAL RULES OF CIVIL PROCEDURE 59(e) AND 60(b)
## FOR RECONSIDERATION AND RELIEF FROM JUDGMENT;
## MEMORANDUM OF LAW

---

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................iv

STANDARD OF REVIEW ....................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................2

    I.    The Court Relied on Defendants' Mischaracterization of Plaintiff's Claims as Defendants False Claims and Their 3-Prong Scheme. ................................2

    II.   The Court Overlooked Undisputed Admissible Material Facts Supporting ACE Verbatim Use Claim: Defs' Theft of ACE During the Last ACE Test, and Defs' Installation of ACE Sequences for Trading Immediately After Theft ....................6

    III.  The Court Overlooked Undisputed Material Facts Supporting ACE Derivative Use Claim: Teytel's "Mixed Seed Algorithm" is Phony and His Real Algorithm that Selected all the LDS Sequences Targeted Stolen ACE Sequences ...........................8

    IV.  The Court Overlooked Undisputed Material Facts: Defs Spoliated and Then Fabricated Sequence Records that Are the Basis of 2nd Polish Report, Which Again Confirms ACE Derivative Use Claim ............................................9

    V.   The Court Overlooked Undisputed Conclusive Evidence of Defs' 3 Prong Scheme and Collusion with Collins Procured the Orders of Sep 5, 2012 and Feb 8, 2013...11

    VI.  The Court Overlooked Undisputed Conclusive Evidence That Collins' and Defs' collusion Procured the March 26, and July 15, 2014 Orders...............................11

ARGUMENT ........................................................................................................13

    I.    Defs' MSJ Must Be Denied As a Matter of Law Because Defs Utterly Failed to Meet Their Initial Burden Required by FRCP56(a) of Showing No Genuine Dispute as to Any Material Fact. The Court Treated Pl as Movant and Required Pl to Show All *Defs' False* Claims Are *True*.  Defs' MSJ Must Also Be Denied on the Merits.........................................................................................................13

    II.   The Court Committed Clear Error When It Embraced Defs' False Claims "Defs' Sequences Incorporated or Infringed ACE sequences" as Pl's Claim of Trade Secret Misappropriation. ..............................................................................15

    III.  The Court Committed Clear Error When It Overlooked the Admissible Factual Material and Expert Testimony of Translation That Proved ACE Verbatim Use Claim........................................................................................................17

    IV.  The Court Committed Clear Errors When It Relied Defs 3 Prong Scheme and Collusion to Excluded All Admissible Factual Evidence and Prohibited Pl from Filing Motions Provided by FRCP. ............................................................19

ii

**V.   The Court Also Committed Clear Error on Both Law and Fact on Damage from Defs' Breach of NDA, When It Adopted 2009 R&R, Treated Pl as Movant but Granted Defs MSJ on the Issue of Damage as $1 When it is Undisputed Fact that the Damage is Substantial and Plaintiff is the Prevailing Party According to the NDA and the Law.**......................................................................................................21

**VI.   The Court Committed Clear Error When It Disregarded the Direct Evidence of Defs and Collins' Conspiracy that Led to Feb. 8, 2013 Ord and the Exclusion of Pl's Expert Testimony and Judgment. Pl is Entitled to Relief from the Orders and Judgment Procured by Defs' Three Level Fraud Under Rules 59(e) and 60(b).** ....23

**CONCLUSION** ....................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Laws and Rules**

Fed R. Civ. P.  60(b)(1)(3) and (6) ............................................................................. vi

Fed R. Civ. P. 59(e) ................................................................................................... vi

Fed. R. Civ. P. 59(e) ....................................................................................................1

Fed. R. Civ. P. 60(b)(1)(2)(3) and (6) ..........................................................................1

Fed.R.Civ.P. 60(b)(3) .................................................................................................24

Fed.R.Civ.P. 83 ..........................................................................................................20

FRCP54(b). ..................................................................................................................6

FRCP56(a) ..................................................................................................................13

S.D.N.Y. Local Rule 6.3 ..............................................................................................1

**Cases**

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970) ...................................................14

*Agostini v. Felton*, 521 U.S. 203, 236, 117 S. Ct. 1997 ............................................15

*Amaker v. Foley*, 274 F.3d 677 (2d Cir. 2001) (SOTOMAYOR) .........................14, 20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..............................................14

*Antonick v. Electronic Arts, Inc., 841 F.3d 1062 (2016)* ..........................................18

*Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 ......................15

*Burberry Ltd. v. Euro Moda, Inc.*, No. 08 CIV. 5781 (CM), 2009 WL 1675080, at *17 (SDNY.

2009) ........................................................................................................................22

*Cap Export, LLC v. Zinus, Inc.,* 996 F.3d 1332, 1341 (Fed, Cir., 2021). ...................24

iv

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................................................................14, 18

*Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996) ........................................................14

*Colvin v. Keen*, 900 F.3d 63, 68 (2d Cir. 2018)....................................................................15

Computer Associates Intern., Inc. v. Altai, Inc., 982 F.2d 693, 717 (1992). ............................23

Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447 ......................................18

*DiLaura v.Power Auth. of State of N.Y.*, 982 F.2d 73, 76–77 (2d Cir. 1992) ...........................15

*DiPirro v. United States*, 189 F.R.D. 60, 65–66 (W.D.N.Y. 1999)................................................1

*Dow Jones & Co., Inc. v. WSJ Inc.,* 133 F.3d 906, 1998 WL 2370 (2d Cir.1998)......................24

*Eisemann v. Greene*, 204 F.3d 393, 397. (2d Cir. 2000)........................................................20

Farez- Espinoza v.Napolitano, No. 08 Civ. 11060(HB), 2009 WL 1118098, at *3 (S.D.N.Y. 2009)............................................................................................................................1

*Fleming v. New York Univ.,* 865 F.2d 478, 484 (2d Cir.1989)................................................24

*Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ........................................................18

*Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 383, (1974) ...................................22

Gey Assocs. Gen. P'ship v. 310 Assocs., 346 F.3d 31, 34-35 (2d Cir. 2003)...............................1

*Gomez v. City of New York*, 805 F.3d 419 (2015) .....................................................................24

*Gomez v. City of New York*, 805 F.3d 419 (CA2, 2015) ..........................................................25

*Green v. Foley,* 856 F.2d 660, 665 (4th Cir.1988).....................................................................24

Henderson v. Metropolitan Bank & Trust Co., 502 F. Supp. 2d 372, 375-76 (S.D.N.Y. 2007).....1

In re BDC 56 LLC, 330 F.3d 111, 123 (2d Cir. 2003)................................................................1

*Jones v. Aero/Chem Corp.*, 921 F.2d 875, 879 (9th Cir. 1990)................................................24

*Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974) ...................................................16

*Kinsman Transit Co. v. City of Buffalo*, 388 F.2d 821, 825 n. 9 (2d Cir.1968) ..........................15

*Lendino v. Trans Union Credit Information Co*., 970 F.2d 1110 (CA2 1992) ............................14

*Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir.1995)....................................................24

*Lucente v. Int'l Bus. Machines Corp.,* 310 F.3d 243 (2d Cir. 2002)................................23

*Matsumura v. Benihana Nat'l Corp.* 2014 WL 1553638, at *4 (S.D.N.Y. 2014).......................23

*McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) ................................................15

*Medinol Ltd. v. Bos. Sci. Corp.,* 346 F. Supp. 2d 575, 600 (S.D.N.Y. 2004) ...........................22

*Meteor Ag v. Federal Exp. Corp*., (SDNY 2009) 2009 WL 3853802, at p.2................................2

*Meteor Ag v. Federal Exp. Corp.,* 2009 WL 3853802 (SDNY, 2008)..........................................1

*Miranda v. Bennett*, 322 F.3d 171, 175 (2d Cir.2003)..................................................14

Music Deli & Groceries, Inc. v. I.R.S., 781 F.Supp. 992, 995 (S.D.N.Y.1991) ....................1, 25

*Oxley v. City of New York,* 923 F.2d 22, 24 (2d Cir.1991) ..........................................14

*Paone v. Microsoft Corp.,* 881 F. Supp. 2d 386, 415 (E.D.N.Y. 2012)..................................18

*Pichardo v. Ashcroft,* 374 F.3d 46, 55-56 (CA2, 2004)................................................1

*Plattner v. Strick Corp.,* 102 F.R.D. 612, 614 (N.D.Ill.1984) ......................................24

*PMC, Inc. v. Atomergic Chemetals Corp.,* 122 F.3d 1057, 1995 WL 595557 (2d Cir.1995).......24

*Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991)................................................14

*Raymond Weil, S.A. v. Theron*, 585 F. Supp. 2d 473, 488 (SDNY 2008)...................................22

*Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir.1978) .................................24

*Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) .............................................18

Sigala v. Spikouris, 345 Fed.Appx. 636, 637 (2d Cir. 2009) ......................................1

*Sit-Up Ltd. v. IAC/InterActiveCorp.,* 2008 WL 463884, at *15 (SDNY. 2008)..........................22

Sloane v. Getz, 150 Fed.Appx. 86 (CA2, 2005)....................................................14

*Smith v. City of New York,* 697 F. App'x 88, 89 (2d Cir. 2017) ..................................18

*Smith v. City of New York,* 697 F. App'x 88, 89 (2d Cir. 2017). ................................................18

*Stridiron v. Stridiron,* 698 F.2d 204, 207 (3d Cir.1983) ............................................................24

*Taylor v. Riojas*, 141 S.Ct. 52 (U.S.S.Ct. 2020) ........................................................................8

*Taylor v. Texgas Corp.,* 831 F.2d 255, 259 (11th Cir.1987) ......................................................24

*Thomas v. City of New York*, 293 F.R.D. 498, 503–04 (S.D.N.Y. 2013) .....................................1

*Thomas v. McAullife*, 691 F. App'x 671 (2d Cir. 2017) ...............................................................1

Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 729 (2d Cir. 1998) ........................1

*Vermont Teddy Bear Co. v. 1-800 Beargram Co.,* 373 F.3d 241, 246 (2d Cir. 2004)....................2

*Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004) ...........................14

*Whimsicality, Inc. v. Rubie's Costume Co.,* 836 F. Supp. 112, 116–17 (E.D.N.Y. 1993), 1993 WL
661161 ..................................................................................................................1, 25

# NOTICE OF MOTION

PLEASE TAKE NOTICE that pursuant to Fed R. Civ. P. 59(e) and Fed R. Civ. P. 60(b)(1)(3) and (6), based on the accompanying Memorandum of Law, and the pleadings and prior proceedings in this matter, Plaintiff Advanced Analytics, Inc. ("Plaintiff," "Pl," or "AAI"), respectfully moves this Court to reconsider, vacate and/or otherwise obtain relief from the Judgment entered on November 5, 2021 (ECF465), based on the Court's Order dated November 4, 2021 (the "Nov Ord," ECF 464), and the Memorandum Order of September 30, 2021 Order (the "Mem Ord," ECF 461, together the "Orders"), which adopted the report and recommendation of Magistrate Judge Henry B. Pitman, dated September 4, 2019 (ECF. 340, the "2019 R&R," or the "R&R"), recommending that the motion for summary judgment ("MSJ") filed by Defendants Citigroup Global Markets, Inc. and The Yield Book, Inc. ("Defendants," or "Defs") be granted, overruling Plaintiff's Objections for Report and Recommendations to MJ Pitman's 9/4/19 Denial of AAI's Motion Pursuant to Rule 56(d) of the FRCP (ECF. 361-362); affirming the Opinion and Order of Magistrate Judge Pitman,  dated September 4, 2019 (docket entry no. 339, the "FRCP 56(h) & 54(b) Ord." or "56(h) Ord")), which denied Plaintiff's motion pursuant to Fed. R. Civ. P. 56(h) and Fed. R. Civ. P. 54(b) (docket entry no. 313, the "FRCP 56(h) & 54(b) Ord. Mot" "56(h) Mot"); and affirming the Opinion and Order of Magistrate Judge Cave, dated June 9, 2020, (ECF. 438, the "Mot to Reconsider and FRCP 54(b) Ord." or "54(b) Ord"), which denied Plaintiff's motion pursuant to Fed. R. Civ. P. 54(b) and Local Rule 6.3 (ECF. 423, the "Mot to Reconsider and FRCP 54(b) Mot."); for reconsideration in connection with Judge Cave's fee sanction orders based on Magistrate Judge Pitman's order of March 26, 2014, in the above-captioned action.

Plaintiff respectfully requests the Court to alter or amend its September 30 Order, in following aspects and hold that

(1) Reaffirm the Court's Order of November 22, 2010 that Plaintiff has presented sufficient evidence to support a reasonable jury's determination in Plaintiff's favor on

its breach of contract claim that Defendants misappropriated or misused Confidential Software Information for their production in violation of the binding NDA;

(2)  Plaintiff has presented sufficient evidence to support a reasonable jury's determination in Plaintiff's favor on its claim ("ACE Verbatim Use claim") that through the code installed immediately after the last round of ACE test ("ACE Use Code"), Defendants Yield Book systems read misappropriated ACE sequences to generate interest rate paths for Defendants' trading.

(3) Plaintiff has presented sufficient evidence to support a reasonable jury's determination in Plaintiff's favor on its claim ("ACE Derivative Use claim") that Defendants selected seeds the sequences used by all TYB licensees, ("the LDS sequences" or "LDS Seq"), are selected by the algorithm targeting the stolen ACE sequences, and are all ACE derivative sequences. LDS Seq are distinct from the "Defendants' sequences" which no one can verify because Defendants withheld the Yield Book code.

(4) Vacate or amend accordingly the Court's Orders of September 5, 2012 (ECF173), February 8, 2013 (ECF 214), March 26, 2014 (ECF 235) and July 15, 2014 (ECF 259) as explained in the accompanying Memorandum;

(5) Magistrate Judge Cave's June 9, 2020, Order (ECF 438) regarding the Fees (the "Fee Sanction Orders," "Fee Orders"), is stayed *sine die* pending the outcome of investigation of the collusion allegation between one of Plaintiff's former counsel and Defendants.

Plaintiff also respectfully request other relief that the Court deems appropriate and just.

In support of this Motion, Plaintiff relies on the evidence presented before this Court, including the Third Declarations of Dr. Jianqing Fan, of September 26, 2012 ("3RD Fan Decl", ECF 177, Redacted ECF. 199), and Fourth Declarations of Dr. Jianqing Fan, of June 4, 2013 ("Fan Decl" Exh. 8 of in the Declaration of Peter J. Toren ("Toren Decl") submitted in support of Plaintiff's 56(h) Motion, Redacted ECF. 459.), the Fourth Wang Decl. (ECF426), the Sixth Declaration of Dr. Xiaolu Wang, of November 12, 2018 ("6th Wang Decl" Exh. 9, Toren Decl.

ECF. 373), Seventh Declaration of Dr. Xiaolu Wang  (ECF 302) the Parties' Meet-and-confer

Report of Jan. 2015, the compendium of evidence submitted in support of Plaintiff's Objections

to MJ Pitman's R&R 2019 and the Motion Pursuant to Fed. R. Civ. P. 56(d),  (ECF Nos. 289,

Plaintiff's Objection and related motion under Fed R. Civ. P. 56(h) and 54(b) (the "Rule 56(h)

Motion", ECF 313, 56(h) Obj. ECF. Nos. 362, 363), the Objection to MJ Cave and related

motion to reconsider under Fed R. Civ. P. 54(b) and L.R 6., (ECF Nos. 367, 423, 442)  and other

such evidence before the Court.

Pursuant to Rule A(2)(b)(ii) of the Court's Individual Practice Rules, Plaintiff's

Counsel certifies that due to the procedural posture of the current action, informal resolution was

not possible. Nonetheless, Plaintiff's Counsel and Counsel for Defendant continue to attempt to

resolve this matter, including e-mail correspondence and at least two (2) telephone conferences

in last month.

(The remaining part of the page is intentionally left blank.)

x

Pursuant to Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60(b)(1)(2)(3) and (6), as well as S.D.N.Y. Local Rule 6.3[1], Plaintiff Advanced Analytics, lnc. ("AAl", "Plaintiff" or "Pl") respectfully requests the Court to reconsider, vacate, alter, amend and/or otherwise grant reliefs from the Judgment entered on November 5, 2021, based on the Court's Order dated November 4, 2021 (the "Nov Order"), and the Memorandum Order of September 30, 2021 Order (the "Mem Order"), to correct the clear errors and to prevent manifest injustice.

## STANDARD OF REVIEW

A motion for reconsideration is appropriate to correct errors of law or fact. *See Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729 (2d Cir. 1998); *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003); *Gey Assocs. Gen. P'ship v. 310 Assocs.*, 346 F.3d 31, 34-35 (2d Cir. 2003); *Henderson v. Metropolitan Bank & Trust Co.*, 502 F. Supp. 2d 372, 375-76 (S.D.N.Y. 2007). "Reconsideration [under Rule 59(e)] is justified by, among other factors, 'the need to correct a clear error or prevent manifest injustice.'" *Henderson*, 502 F. Supp. 2d at 376. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Sigala v. Spikouris*, 345 Fed.Appx. 636, 637 (2d Cir. 2009). See *Meteor Ag v. Federal Exp. Corp.,* 2009 WL 3853802 (SDNY, 2008), 08 Civ. 3773(JGK) at p.2 . *Farez- Espinoza v.Napolitano*, No. 08 Civ. 11060(HB), 2009 WL 1118098, at *3 (S.D.N.Y. 2009). *Pichardo v. Ashcroft*, 374 F.3d 46, 55-56 (CA2, 2004). See *Thomas v. City of New York*, 293 F.R.D. 498, 503–04 (S.D.N.Y. 2013) (standard for FRCP 60(b)(3) relief, collecting cases), *aff'd sub nom. Thomas v. McAullife*, 691 F. App'x 671 (2d Cir. 2017) See *DiPirro v. United States*, 189 F.R.D. 60, 65–66 (W.D.N.Y. 1999) ("[The rule 60(b)(3)] applies to both intentional and unintentional misrepresentations.*")* *Whimsicality, Inc. v. Rubie's Costume Co.,* 836 F. Supp. 112, 116–17 (E.D.N.Y. 1993), 1993 WL 661161. ("Rule 60(b) should be broadly construed to do substantial justice. E.g., *Music Deli & Groceries, Inc. v. I.R.S.*, 781 F.Supp. 992, 995 (S.D.N.Y.1991)").

---

[1] Plaintiff's motion is timely since it was filed "no later than 28 days after the entry of the judgment." *See* FRCP 59(e); L.R 6.3 provides the exceptions for motions filed pursuant to FRCP.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### I.  The Court Relied on Defendants' Mischaracterization of Plaintiff's Claims as Defendants False Claims[2] and Their 3-Prong Scheme.

Defs mischaracterized the claim "the Yield Book system incorporated (i.e. directly used) ACE sequences" as "Defs' sequences incorporated ACE sequences" ("Defs False Claim" or "DFC"). Defs knew DFC is false and that ACE sequences can never be generated by Monte Carlo code using any seeds, but are read by the Yield Book ("YB") as input data files at run time. See Defs Stmt. 56.1 of 2013, ¶¶12, 18; Defs Stmt. 56.1 of 2008, ¶ 54, ¶144. So the only possible way ACE could have been "incorporated" in any sequences generated by Defs' code would be if *Pl* had somehow stolen *Defs*' code to generate ACE. Thus, DFC implies that "ACE is *not* AAI's trade secret" and "*Pl* stole ACE from *Defs*." Defs also mischaracterized Pl's ACE Derivative Use Claim (*Defs used* ACE to develop sequences) as  "*Defs' [phony] product* infringed ACE" (together with Defs False Claim, "Defs False Claims" or "DFCs")[3]  Defs changed Pl's claims of <u>Defs'</u> misappropriation of trade secret to a copyright infringement claim of Pl's product by some phony even none-existent "<u>Defs products.</u>"  2019 R&R committed clear errors by holding that ACE were generated by YB Monte Carlo code with "ACE seeds," citing "Pl. 56.1 Stat. 61; Pl. Memo at 16-17."[4]  *Id* at 35. *First,* its misquote of "Pl's 56.1 Stat 61" at 36, altered Plaintiff's claims to DFC. See p.8 ECF.442; *Second,* he has been forewarned many times that "Pl. Memo at 16-17" is evidence of Collins' collusion with Defs, as his embracing Defs'

---

[2] The Mem Ord directed Pl to show cause "before Oct 22, 2021, as to why the Court should not adopt 2009 R&R…" Naturally, the main cause as to why, is the clear errors in the prior rulings procured by Defs' fraud, that is the subject of Pl's motions and Objections under FRCP54(b).  The Court's order of Nov. 4, 2021 (ECF. 464) at 2 declined considering all of these clear errors presented in Pl's letter of Oct. 22 (the "SC Letter") p2-7, on the basis that a request to reconsider is untimely under L. R. 6.3. (Which provides "[u]nless otherwise provided by the Court or by statute or rule (such as Fed. R. Civ. P. …59,) motion for reconsideration … shall be served within fourteen (14) days.). Here, the Mem Ord provided the deadline Oct 22, 2021, and did not prohibit Pl to identify these clear errors. Further, FRCP 54 (b) provides these prior orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Second Circuit held that "it is axiomatic that the Federal Rules of Civil Procedure trump inconsistent interpretations of local rules. (U.S. code citations omitted)" *Vermont Teddy Bear Co. v. 1-800 Beargram Co.,* 373 F.3d 241, 246 (2d Cir. 2004). See also *Meteor Ag v. Federal Exp. Corp.,* (SDNY 2009) 2009 WL 3853802, at p.2 (construing letter as a FRCP motion. Cites omitted).
[3] See the Glossary and Appendix, again attached for the Court's convenience.
[4] This holding by 2019 R&R is belied by The 2009 R&R, *10 ("ACE is the product of a complex series of mathematical computations.")

Mischaracterization of Pl's claims as DFC in collusion with Defs.[5] The Mem Ord cited MJ Pitman that "[Pl's 56(h) Mot] spends several pages claiming, without any evidence, that [Collins] colluded with defense counsel," *Id*, fn.6. This Collins' "Pl' Memo 16-17" was just one of approximately more than a hundred pieces of collusion evidence cited by Pl's 56(h) Mot. The Court and MJ Pitman overlooked the evidence of collusion while relying on Collins' collusion with Defs to exclude Pl's evidence exposing Defs' fraud and to dismiss Pl's case. This is a clear error. The Court adopted in its entirety of the 2019 R&R, including Defs' Mischaracterization of all of Pl's claims as DFCs. <u>See</u> Mem Ord at 2, 5, and 7-9. As a result, the Court required Pl to show *Pl* stole ACE from *Defs* in order to show ACE were incorporated in TYB, and to show that all the phony "Defs' sequences" were "substantially similar to or derived from ACE" in order to show the ACE Derivative Use Claim. Defs' Mischaracterization is the 1st Prong of <u>Defs 3-Prong Scheme</u>. Defs have never produced nor offered any sequences as a "product." Defs relied on the other two prongs of their 3-Prong Scheme to misrepresent the phony sequences were Defs' products. As their 2nd Prong, Defs misrepresented their production of documents, which is in turn supported by the filing of false declarations which is their 3rd Prong. These declarations filed by Defs omitted the material  "issues central to the resolution of the case," that the "Yield Book sequences" referred in the declarations are not the sequences used by Defs.[6] Defs misrepresented that the phony "Yield Book sequences" were the sequences used by TYB *via* semantic tricks. R.

---

[5] <u>See</u> Pl's 56(h) Mot of June 27, 2019, pp13-14. ECF.313. "[Dr. Wang's letter of Jan 4, 2017] has claimed, … that [Collins] colluded with defendants' counsel to file deficient papers in opposition to defendants' motion for summary judgment." MJ Pitman's Order of May 31, 2017, at 2.  This was how their conspiracy worked: (a) Defs mischaracterized Pl's claims as their exact opposite: Defs' False Claims; (b) Collins Memo concealed all the material issues, but embraced all Defs' False Claims as Pl's claims; then (c) Defs won SJ by dismissal of the purported "AAI's claims"--- "through the provision of undisputed evidence and unrebutted legal arguments. as Moore Letter put it." <u>See</u> Dr. Wang's letter of May 31, 2017 to MJ Pitman at 3, Ex. 1. This last quote is the only purported denial of collusion by Defense counsel who has personal knowledge. But it confirmed collusion. Defs could have won SJ by simply agreeing with, instead of dismissing the purported "AAI's claims." That would have saved everyone from all the work in Step (c). <u>See</u> Dr. Wang's letter of May 31, 2017 to MJ Pitman at 3, Ex. 1, and Ex.16, ¶176, 6th Wang Decl, filed in support of Pl's three Mot's and Obj's. VI *infra*.
[6] Russell Decl stated that TYB "did not save sequences nor interest rate paths." It was contradicted by the Theft Code he designed. MJ Pitman dismissed Russell' perjury, and held that Dr. Fan could not "divine the authorship" Fn. 2, the Order of May 7, 2014, ECF 248. MJ Pitman did not understand that the login id in RCS code identified the author of Theft Code and ACE Use Code, and it is Robert Russell. See ¶¶128, 132, 134, fn's 19, 31, 38; 4th Fan Decl. Robert Russell testified his log id, Ex. 6, 6th Wang Decl.

Russell's Decl is blatantly false.  See Pl's 56(h) Mot 16-17, and Obj. at p5. So Defs submitted these declarations in bad faith. Mem Ord at 12 overlooked it.

Defs refused to produce the key files needed to compile a YB system to allow a sequence to be tested, and refused to produce YB production code in violation of five discovery Orders. Yet, Defs have made 14 misrepresentations that the three concocted Monte Carlo code files listed in the Radak Declaration of 2007 are the 1000+ RCS production code files "that can generate interest rate paths," to procure the Sep 5, 2012 Ord. *See* Appendix. When the other two Prongs, Misrepresentations of their production and the false declarations have been exposed, Defs relied on their 1st Prong. See SC Letter at 2. Mem Ord cited the Feb 8, 2013 Ord:

> "For substantially the reasons stated by Judge Pitman at the September 5, 2012, hearing, and in light of the evidence proffered by Defs that Plaintiff has everything it needs to compare Defs' sequences, analyze the code that Defs use to generate their sequences to determine whether this process could have been derived from Defs' alleged exposure to the Plaintiff's product and determine whether the Plaintiff's product played any role in the development of Defs' sequences, the Court does not find any basis for overturning Judge Pitman's decision to deny Plaintiff's application for additional production of Defs' code."

This holding embodied Defs' 3 Prong Scheme.

> (i)   "Plaintiff has everything it needs to compare Defs' sequences, … to determine whether the Plaintiff's product played any role in the development of Defs' sequences."

This is the 1st Prong. Defs' programmer admitted that the code used exclusively by their internal users do not even use any of "Defs' sequences," but ACE sequences. II, *infra*.

> (ii) "For substantially the reasons stated by Judge Pitman at the September 5, 2012, hearing, and in light of the evidence proffered by Defs.." This reflected the 2nd and the 3rd Prongs: Defs' Misrepresentations supported by the false/misleading declarations.

(iii) All of Pl's evidence were all blocked by Collins from in support of Pl's motions to compel, and then all excluded by Collins in collusion with Defs. What remained was only "the evidence proffered by Defs," "the record before Judge Pitman" in the Hrg of Sep 5, 2012. *i.e.,* Defs' Misrepresentations and False Decls, the 2nd and 3rd Prongs of Defs 3 Prong Scheme. The 3rd Fan Decl. and the 3rd Wang Decl of Sep 28 2012 were also excluded by Collins in collusion with Defs from the Court's consideration in connection with Pl's Obj to Sep 5 Ord as indicated by "from review of the evidence in front of Judge Pitman and in light of the briefings submitted in connection with this objection," Feb 8 2013 Ord at 4.  Defs' collusion with Collins is the Level 3 Fraud of Defs. See VI *Infra* and Appendix.

Misdirected by Defs' Mischaracterization to focus on the phony and nonexistent "Defs sequences", MJ Pitman was unable even to understand Pl's claim and evidence of ACE Verbatim

Use, as shown by the 2019 R&R, 30-32. He failed to understand all of Pl's new evidence post 2012, including the admissions by Defs and Russell conclude that the "1000 paths" in the ACE Use Code is only a code-name of a combination of the stolen ACE, to wit, the super ACE sequence. See II *infra*. The conclusion that Defs withheld the ACE sequences, is not based on Pl's claim, but is based on undisputed evidence including Defs' programmers' admissions. *Id.* Defs evaded all the evidence, and argued that Defs' failure to produce the trading sequences was inferred only by the allegation of ACE Verbatim Use Claim instead of by the evidence, *via* a "circular argument." The 2019 R&R embraced Defs' arguments wholesale (fn. 7, at 32), and held that Pl must prove Defs' False Claims that "[the *nonexistent* Russell '1000' paths] was derived from ACE,"[7] and ignored all the undisputed conclusive evidence of ACE Verbatim Use Claim as "an argument." *Id*, 30-32. In sum, Defs False Claims were adopted as "Pl.'s claims" by R&R's (Columns 2), and by the Mem Ord (Column 5). Defs False Claims are are opposite to Pl.'s Claims (Column 1), *see* the Comparison Chart., Annex 1.    Since Pl's current counsel entered the case, and based on the massive new evidence, Pl has repeatedly sought relief, to correct the clear errors and to prevent manifest injustice under FRCP, *e.g.* Rule 54(b). In all of more than 15 sets of their Court papers, Defs have avoided the substance but instead relied on mischaracterizations of the procedural history and the very same clear erroneous rulings which was the subject to reconsider. Defs have also argued that the MJ Pitman and MJ Cave do not have the authority to grant relief because the prior orders [based on 3 Prong Scheme in] was endorsed by the Court. As a result, every MJ Pitman's denial of the relief sought by Pl, and 2019 R&R cited this Feb 8, 2013 Ord as the basis. For 56(d) Mot, he cited this order as his "fundamental problem."[8] The Feb 8 2013 Ord was cited in MJ Pitman's 2019 R&R at p. 28, and in his 56(h) denial at p.3, and in MJ Cave' order on 54(b) Mot at 14[9].

In their papers filed in this Court, Defs again avoided the substance, but relied on

---

[7] "Plaintiff is ..asking me to conclude that a reasonable jury could find [that nonexistent Russell "1000" paths was] derived from the ACE sequences despite the fact that the jury will not see or hear anything about the content of these alleged sequences." See R&R 2019 at 32.

[8] See May 28, 2019 Hr Tr. 13:19-23.  "the Court:  problem I have -- the fundamental problem I have is I think these issues were addressed in 2012 and 2013 by both myself and by Judge Swain." MJ Pitman also cited procedural grounds, that L.R. 6.3. has 14-day time limit and does not allow new declarations. Both are contrary to FRCP54(b).

[9] MJ Cave ruling on 54(b) Motion copied and relied on Defs' mischaracterizations of procedural history contradicted by the records, without checking the cited Pl's briefs. See ECF. 442, at 12.

mischaracterizations of the procedural history. E.g., MJ Pitman stated history <u>in the past</u> (e.g., in Sep 5, 2012 Hr or even earlier in 2009, his finding of "very little evidence" of "fraud occurred" was "based on the record" "at that time" <u>without</u> any of the new evidence). But Defs misrepresented these statements of the past as his rulings <u>after</u> having considered the massive new evidence such as 4th Fan Decl and 6th Wang Decl. ECF. 448, p.17. In turn, Mem Ord at 8-9 cited the same Feb 8, 2013 Ord, and MJ Pitman's 56(h) order based on this Feb 8, 2013 Ord:

> (Rule 56(h) Ord. at 2 ("All of the discovery issues concerning plaintiff's theory that Defs were withholding evidence have been previously litigated.").)

*Id.* "Rule 56(h) Ord. at 2" refers to the Sep 5, 2012 Hr, which did not include any of Pl's new evidence submitted after May 2012. Mem Ord also failed to consider any of Pl's new admissible evidence, in contrary to FRCP54(b). In sum, Defs avoided Pl's allegations and evidence of Defs' 3-Prong Scheme and the 3 Level Fraud. As a result of their wholesale adopting Defs' briefs, neither MJ Pitman, nor MJ Cave ever considered let alone determined the validity of Pl's allegations supported by a mountain of undisputed new evidence.

## II.  The Court Overlooked Undisputed Admissible Material Facts Supporting <u>ACE Verbatim Use Claim</u>: Defs' Theft of ACE During the Last ACE Test, and Defs' Installation of ACE Sequences for Trading Immediately After Theft

Mem Ord at 8 disregarded the direct evidence of ACE Verbatim Use Claim, Defs' Theft Code and ACE Use Code, because it held that Pl's counsel, Dr. Li's explanation of Theft Code and ACE Use Code is no "substitute for competent, substantiated expert testimony." The fact is, Pl has submitted the 3rd, 4th Fan Decl, the 3rd and 6th Wang Decl, that contain competent, substantiated expert testimony of translations of these Theft Code and ACE Use Code, filed in support of the papers submitted in connection with all three motions and three Objections, under Rules 56(d), 56(h) and 54(b), all based on <u>issues of Defs misconduct</u>. SC Letter, pp3-4.

The March, 2014 Ord, at 33, ECF 235, correctly held that these entire declarations including the 4th Fan Decl, are admissible for support of motions on issues of Defs' misconduct. The June 5, 2014 Ord denied Defs' motion to strike and ruled that the factual material in Fan 4th is admissible for all purposes and directed the parties to meet-and-confer to "separating the factual material from the opinion material", ECF. 256. The parties' meet-and-confer joint report of 100 pages confirmed that all these translations are uncontroverted and are undisputed facts. So are the Pl's 56.1 56.1

Response, e.g., ¶¶ 16, 20, 51, 68. MJ Pitman denied Defs' motions to strike 4th Fan Decl in support of Pl's 56(d) and 56(h) Mots, ECF 312 at1-2; ECF 339 at 1. SC Letter at 3-4. Since Obj to the ruling on Pl's 56(d) Mot is part of R&R Obj, the Fan testimony cited in 56(d) Mot is before the Court. Dr. Li's explanation only supplemented not substituted Fan testimony.

In fact, MJ Pitman considered the 4th Fan Decl together with some of the code, e.g., `hedge.c`. Unfortunately, instead of as evidence supporting Defs used ACE verbatim for trading and arbitrage, he mistakenly held that Pl must use `hedge.c` to prove DFCs.[10] It never occurred to MJ Pitman that TYB used ACE verbatim by Defs' admission, and that it is Pl's ACE Verbatim Use Claim. See Fig. 1, Ex. SSS. Walker Decl. The 2019 R&R overlooked the allegations and all the hard facts evidence that Defs stole ACE with the Theft Code, `pathogen_cover.c`, installed in the 4th ACE test system, using the self-evident functions with names "`save_seq`" and "`get_seq`". SC Letter at 5. For Theft Code, <u>see</u> a mountain of the undisputed *factual* material that a jury can understand, including Defs' witness depositions, emails, programmers' admissions, explanations and comments, and their code files and Dr. Fan's testimony about the English translation of the code, cited in the 4th Fan Decl, ¶¶ 125-176, and <u>See</u> Pl' 56(d) Mot. pp 4-8, the Compendium of evidence attached. For ACE Use Code, see the 4th Fan Decl, ¶¶ 178-259, cited in Pl' 56(d) Mot. pp 9-14. Defs' programmers' English explanations in the ACE Use Code are Defs' direct admission that the code used exclusively by Defs traders did *not* use *any* "Defs sequences," but only the *multiple* ACE sequences for pricing. See 56(d) Mot, ECF 289, pp10-12. These pricing ACE sequences are "subsets" of the sequence of "1000 paths" used for calibration, as Russell explained in English in `nts_monte_calibration.c`, ¶¶73-76. "Teytel sequence of 200 paths," and the 2nd Polish Report, are totally irrelevant to Pl's ACE Verbatim Use Claim."[11]

---

[10] "Even if …[t]he hedge.c establishes that Defs' improperly stole ACE, plaintiff fails to show how Defs used it in the development of the 200-path and 1, 000-path sequences the only sequences relevant to the misappropriation claim." *2019 R&R*, 43-45.

[11] See SC Letter at 3-4. Pl's 56(d) Mot p.9-12, ACE Verbatim Use, in Glossary. ACE Use Code is self-evident.

### III. The Court Overlooked Undisputed Material Facts Supporting <u>ACE Derivative Use Claim</u>: Teytel's "Mixed Seed Algorithm" is Phony and His Real Algorithm that Selected all the LDS Sequences Targeted Stolen ACE Sequences

Defs have withheld TYB code to prevent Pl from verifying "Defs sequences." Despite this, based on the only authenticated sequence, using an undisputed calculation Fan proved that Teytel's "Mixed Seed Algorithm" is phony and the Real Algorithm that selected all of the LDS Sequences targeted stolen ACE sequences. <u>See</u> Pl's 56.1 Stmt. ¶¶108, 111, citing the 2nd Fan Decl, ¶¶87, 88. R&R 2009, at 20, cited Fan's findings that "the sequence generated from (the "best seed") contained in Teytel's notebook-Seed 13812-'bore an unusually close similarity [FN35] from a statistical standpoint to (ACE64)';" they are "extremely similar," 1st Fan Report at 16-19, "the chance that such a close match would result by chance is only 0.05% (2nd Fan Decl. ¶ 79.)" R&R. fn.35. *See also* the citations in R&R. Fan found: "[T]his is crystal clear evidence that Teytel had possession of the ACE64 sequence." "Teyetl was using ACE for his development work." 2nd Fan Decl. ¶¶43, 45. This has now been confirmed with 100% certainty: Theft Code revealed that Defs had stolen all the ACE sequences. 2009 R&R listed "(6) Teytel's mixed-seed algorithm does not make sense and would have taken (89) years to complete.<u>FN39</u>" *Id.* Teytel testified that it would take two hours to test each seed. That amounts to approximately 89 years for running the 600,000+ seeds listed in Teytel Notebook for LDS64. Thus, Teytel's Mixed Seed Algorithm could not have possibly been used because the LDS64 was developed in two months.  In contrast, his Real Algorithm comparing a sequence with ACE64 took milliseconds, *e.g.,* to calculate their correlation, instead of two hours on the portfolio of CMO's.  2009 R&R viewed the evidence in the light most favorable <u>to Defs</u> <u>instead of to nonmovant Pl,</u> [12] and noted that "Teytel testified that it would take 'two hours or less' to test each seed." *Id*, fn. 39. A jury would conclude that it took slightly less than two hours to complete this process. Passengers traveling from Chicago to N.Y.C upon hearing from the pilot that the trip would take "two hours or less" would not conclude that they would be in N.Y.C. in 20 seconds or less. The fact alone exposes that that Teytel's "Mixed Seed Algorithm" is phony, and his Real Algorithm targeted

---

[12] "[A]t the summary-judgment stage, facts that are subject to genuine dispute are viewed in the light most favorable to the plaintiff's claim." See *Taylor v. Riojas*, 141 S.Ct. 52 (U.S.S.Ct. 2020) (judgment vacated.)

ACE. 2009 R&R also stated; "(5) Fan believes that Teytel was unqualified for the difficult mathematical problem of developing a new sequence;" *Id.* at 20. A jury could verify Fan's finding, e.g., "the experiments and analysis Teytel described in the Algorithm to support the Algorithm (Teytel Dep. Exhibit 4, CGM 178-9)" is fabricated,"[13] *e.g.*

> Analysis shows that the correlation between seed's accuracy for different sets of securities stays above 90% . For example, the correlation between two large sets of securities is 97-98%...

Where different sets are unrelated, a correlation cannot be defined between the two sets. For the *same set* of students, there is correlation between their SAT and ACT scores. However, a correlation between whatever scores for *different sets* of students makes no sense. Yet Teytel boasted his sampling scores were so accurate that his nonsensical correlation for *different* sets "stays above 90%" and "is 97-98%". Fan opined that ACE "reflect the incredible mathematical feat" and solved "an extremely difficult mathematical problem." 2nd Fan Decl. ¶¶32, 40. Teytel was not capable even to understand the basic mathematical concepts, let alone the problem.

## IV. The Court Overlooked Undisputed Material Facts: Defs Spoliated and Then Fabricated Sequence Records that Are the Basis of 2nd Polish Report, Which Again Confirms <u>ACE Derivative Use Claim</u>

Defs' Mischaracterization led the Court to hold that "the independent development of the Teytel sequence" is a "material fact", when in fact, it is not. Neither Fan nor Polish, could ever run TYB system to check this purported Teytel sequence of 200 paths. Polish testified that he had never run "cmoopt" to price a CMO, nor did he ever verify any of the outputs of cmoopt, that he could not even verify the Development Production from the files produced to Plaintiff. *See* Polish July 16, 2012 Dep. 116:8-19, Ex.  XX. Walker Decl.  By their Mischaracterization, Defs dictate that Pl must prove that Defs *False* Claims were *true*. Whether Defs could "independently develop some fake "Teytel sequence" is just "a front," and is totally irrelevant and no defense to Pl's claims of misappropriation based on Defs' use of the stolen ACE sequences for trading. Again, even the 2nd Polish Report based on the fabricated records revealed that Teytel's Mixed Seed Algorithm could not have been used for "Teytel sequences".

First, Mem Ord held that Pl did not "timely produce any contrary expert opinion evidence" regarding the 2nd Polish Report. *Id*, at 5. This is a clear error. The rebuttal evidence

---

[13] 1st Fan Expert Report of October 15, 2007 at 9. Ex. Of Munves Decl of 2008.

includes the Fan Rebuttal of July 17, 2012, the 3rd Fan Decl of Sep. 28, 2012, and §D of the 4th
Fan Decl. These declarations were all admissible in support of Pl's three Motions and three
Objections and have presented conclusive evidence of Defs' spoliation of sequence records. Fact
II *supra* and Arg. III. *Infra.* Teytel testified that he deleted from his home directory in Defs'
server the entire sequence records from which the production was purportedly copied in July
2015. Teytel's excuse for his wholesale destruction upon receiving Pl's subpoena, after he had
kept them for 6 years, was that Defs did not have sufficient computer storage space for the files.
It is ridiculous. The only credible inference is, at Defs' direction Teytel destroyed the evidence to
cover up his fabrication of the sequence records *and* his use of ACE sequences with his
development of sequences. Teytel August 23, 2012 dep. 95:8-16, 96:5-8, Walker Decl. Ex. TT,
Walker Decl. of 2013. Russell testified that he destroyed all of ACE test system in June 1998,
but this was proven to be false by Teytel's testimony that Russell provided him with all of the
ACE test systems---and the stolen ACE sequences, that were in Teytel's home directory
destroyed by him. Radak also testified that he destroyed all of the sequence development files
and testing files used in 2006 for the Radak 1000 paths, Radak August 29, 2012 Dep. 42:17-
43:15, Ex. DD. Their destruction of evidence was willful. For "Teytel sequence" of 200 paths,
the fabricated records listed 50,000+ seeds, that Teytel had run, see 2nd Report of Polish p.11-
12, listing the ranges of all the seeds tested, and also 4th Fan Decl, at ¶112. He purportedly ran
these seeds over 56 CMO bonds, under nine yield curve scenarios. *Id.* at ¶113. *See* 2nd Polish
Report at p5. "Dr. Teytel ran tests using nine yield curve scenarios" *Id.*at p7. After Fan's had
exposed that it would have taken Teytel 89 years to compute LDS64, Polish speculated that
Teytel may have used up to 23 computers to compute the Teytel sequence of 200 paths. Even
assuming that Teytel had used 23 computers in selecting the Teytel sequence, if his "Mixed Seed
Algorithm" in pricing CMO's had been followed, it would still have taken 7.8 years to complete
this work. See 4th Fan Decl. ¶115. Defs admitted that Teytel did it within several months in early

2000.  Defs 2nd Interrop.  Jeydrey Decl 30.   So this again confirmed that Teytel's "Mixed Seed Algorithm" is phony.[14] See SC Letter at 10.

## V.  The Court Overlooked Undisputed Conclusive Evidence of Defs' 3 Prong Scheme and Collusion with Collins Procured the Orders of Sep 5, 2012 and Feb 8, 2013.

Defs relied on their 3-Prong Scheme to launch MSJ's in 2008 MSJ, <u>relied on collusion with Collins</u> to procure orders of Sep, 2012, Feb, 2013, and March 2014. See the procedural history and the undisputed testimony in the attached Appendix, which was filed in Pl's 54(b) Mot ECF410, and 56(h) Obj. During the hearing of Jan. 17, 2012, while steadfastly withholding the key evidence, Defs asked *foreclosing* liability discovery "very quickly" ***before the start of*** damage discovery. ¶104, Appendix.  MJ Pitman rejected Defs' request. *Id.* Pl submitted Fan's Rebuttal Expert Report of July 17, 2012 ("Fan Rebuttal") within 30 days in full compliance to FRCP 26(a)(2)(D), to rebut the reports by Defs experts, Polish, Johannes and Sanders, all dated June 18, 2012. The *timely* Fan Rebuttal exposed that Johannas' Report relied on massively tampered with test results production (§C), that Defs heavily tempered with and fabricated the sequence records which 2nd Polish Report relied (§§E, F), that Defs withheld key evidence, and the code to make test sequences impossible (§§G,H). Collins refused to present Fan Rebuttal in support of Pl's motion to compel, but colluded with Defs to exclude it. Argument III. *Infra.* Soon after Defs produced Teytel, Radak and Polish for depositions, which confirmed the massive spoliation, Pl submitted the 3rd Fan Decl, and 3rd Wang Decl on Sep. 28, 2012. ECF Nos. 199, 200. Again Collins colluded with Defs to prevent the evidence be considered by the Court. Relying solely on Polish's misleading 2nd Report based on the fabricated records, the Court overturned its correct Nov. 20, 2010 Order, and granted MSJ. II Supra.

## VI.  The Court Overlooked Undisputed Conclusive Evidence That Collins' and Defs' collusion Procured the March 26, and July 15, 2014 Orders.

Since 2018, Pl has presented undisputed evidence alleging Defs' fraud of the Three-Levels of fraud in more than ten sets of papers.[15] Defs have avoided all substance and utterly failed to

---

[14] A jury could see additional facts and conclude Defs' spoliation from many facts. e.g. Of the 8 seeds for the Teytel sequence, there is only one seed, i.e. 13333, had CMO prices calculated. All of the other 7 seeds have not been chosen by the phony Mixed Seed Algorithm.  Id, 112; See also ¶92, D2, p35; Id.¶111; No one would believe Teytel who purportedly had 23 computers but did not have the storage capacity to store the five disks.
[15] See Pl's 56(h) Mot, pp 12-14, ECF 313; APPDENIX B2. TOP LEVEL SUMMARY OF DEFENDANTS' AND COLLINS COLLUSION NEW EVIDENCE (2), ECF 428.

dispute any of the evidence. None of the attorneys who have personal knowledge, Moore, Park and Collins, have ever directly *denied* Collins' *personal* collusion. Defs' Opp to Pl's 54(b) Obj, ECF 427 at 19 and fn. 25, feigned a denial, citing Moore's Jan 10, 2017 Letter at 1, which *confirmed* Defs and Collins' conspiracy, Fn. 5 *Supra*. Its other cites are by Kessler who has no personal knowledge. It then cited Defs' Opp to Pl's 56(h) Obj, ECF 427. But again the same "denial" there,[16] p. 21, fn. 25, *Id*.

In order to block Pl's renewed Rule 37(b) Motion in Oct. 2019-2020, <u>Park had to admit the direct key evidence of Collins' collusion and conspiracy with Defs</u>, i.e., Collins called MJ Pitman jointly with Park and Moore, and secretly withdrew Pl's motion of Rule 37(b) sanction and Pl's Opposition to Defs Rule 37(c) sanction, in the early morning of June 18, 2013 after Pl filed them the night; Collins concealed his call and withdrawal from Dr. Wang. Collins **clandestine' withdrawal** sabotaged Pl's 37(b) sanction, and set up Pl for Defs' 37(c) sanction unopposed. Then Collins relentlessly deleted the fact that this 37(b) motion had been filed in all six sets of papers "opposing" 37(c) motion before both MJ Pitman and Judge Swain.  See ECF361 at 23. Collins and Defs colluded and conspired to procure the orders of March 26, and July 15, 2014. ECF. 423, pp 11-12. ECF. 428 at 9.

To cover up the direct admission evidence, Defs misrepresented to MJ Cave that this call was "the only evidence of collusion" in Dr. Wang's letters of Jan. 7, and May 31, 2017--contrary to the records, and that MJ Pitman's May 31, 2017 Ord "had considered it and rejected it." MJ Cave' June 9, 2020 Ord copied and relied on Defs' mischaracterizations and denied Pl's Motion to Reconsider. *See* ECF. 442, at 12.

To cover up their new mischaracterization to MJ Cave, Defs mischaracterized to this Court instead of Dr. Wang's letter, the 4th Wang Decl had alleged the call. After Pl pointed out the 4th Wang Decl did not mention the call and Dr. Wang did not suspect collusion at the time, Defs were forced to admit the 4th Wang Decl *is* evidence of collusion (this is also MJ Cave' holding. *Id.* ), retracting their prior misrepresentation that even the 6th Wang Decl was not collusion

---

[16] Defs cited the purported "denial" in Collins's Dec. 1, 2016 Letter to "…accusation to …improper behavior at Mr. Munves and myself."). No one ever accused Mr. Munves for collusion.

evidence. ECF449 at 2. ECF 453 at 2. Therefore, based on the existing evidence, **the Court must consider Pl's allegations and evidence of collusion, <u>to be true and undisputed</u>**, including that Defs and Collins colluded to procure the orders of March 26, and July 15, 2014, in MSJ proceedings to exclude the 4th Fan Decl leading to the two Orders and Judgment. I *Supra*. Thus, the Court should vacate or amend these two Orders accordingly. Arg. II, V, *Infra*.

Mem Ord recognized Pl "detailed allegations of Defs 3 Level Fraud perpetuated the Court," but considered no evidence, regarding the collusion and conspiracy. *First,* Mem Ord cited MJ Pitman's order, at 11, Fn. 6, that Pl "spends several pages claiming without evidence, [Collins] colluded with defense counsel" "appears to have little or no connection to Pl's 56(h) Motion." <u>Regarding evidence</u>, MJ Pitman's order ignored the several pages of collusion evidence, when it cited and relied on Collins collusion, "Pl Mem 16-17," to dismiss Pl's case.  I *Supra*. <u>Regarding connection</u>, his Sept 5, 2012 Ord was procured by collusion, which led him to hold "little evidence" of fraud; his orders of March 26, 2014 was procured by collusion.[17] MJ Pitman cited the "fundamental problem" for Pl's motions, 56(d), 56(h) etc, was Feb 8, 2013 Ord which was also procured by collusion.[18]  *Second,* the holding of "tangential" is untrue. See the Obj to Mot to Reconsider: §A.

## ARGUMENT

**I.    Defs' MSJ Must Be Denied <u>As a Matter of Law</u> Because Defs Utterly Failed to Meet Their Initial Burden Required by FRCP56(a) of Showing No Genuine Dispute as to Any Material Fact. The Court Treated Pl as Movant and Required Pl to Show All *Defs' False* Claims Are *True*.  Defs' MSJ Must Also Be Denied on the Merits.**

(a) Because this Court erroneous adoption of Defs' Mischaracterization of Pl's claims of trade secret misappropriation as DFCs (that "Defs' (phony) sequences infringed ACE sequences."), *see* Fact I. Mem Ord required Pl to "meet Plaintiff's *prima facie* burden of demonstrating similarity or derivation [of Defs sequences from ACE sequences]" *Id.* at 4. The

---

[17] Collins' secret withdrawal let MJ Pitman to erroneously held "[d]espite the seriousness of its charges, AAI has not yet sought spoliation sanctions," as the basis for him to exclude 4th Fan Decl. *Id.*

[18] Since MJ Pitman was soon to retire, not in a position to investigate the conspiracy, so "disagreement is not collusion" was nonsequitar, not his finding. In fact, MJ Pitman suggested that Pl why not file "complaint against the prior counsel with the Bar Association or with the disciplinary committee in the first department" "some kind of administrative grievance against [Collins]." May 28, 2019 Hr Tr.  20:16-21:8. If it had only been only "disagreement", MJ Pitman would have never even made these suggestions.

Court required Pl to show "ACE is not Pl's trade secret" and "Pl stole ACE from Defs" in order to prevail on Pl's claim that Defs used ACE stolen from Pl. Defs MSJ argued nothing more than DFCs are false. Defs could have easily won MSJ by *agreeing* with DFCs disguised as purported "Pl's claims", but it would have exposed Defs' conspiracy with Collins. Fn. 5, VI Supra.

Relying on its 1st Prong, Defs avoided their initial burden required by FRCP56(a) of showing "absence of genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." When the movant "does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." See *Adickes v. S. H. Kress & Co*., 398 U.S. 144 (1970). The *genuine disputes* are about Pl's claims of misappropriation of trade secrets, not Defs False Claims. See *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).[19] Under SC Letter at 2. The Orders cited no standard of granting summary judgment and applied none.[20][21]  It is a clear error and manifest injustice to dismiss *Pl's* misappropriation claim of trade secret, simply because *Defs'* False Claims are false. Defs avoided the initial burden imposed on them on FRCP56(c), and all of the material facts supporting Pl's claims, Facts I-IV, *sufra*. Thus Defs MSJ must be denied as matter of law, without further inquiry.

   (b) The Court also committed other clear errors on both law and facts. In granting <u>Defs'</u> MSJ, the Court treated <u>Pl</u> as the movant of Defs MSJ[22]  and required <u>Pl</u> to show *all* of DFCs are

---

[19] "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes,* 398 U.S., at 158–159," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986). and Sloane v. Getz, 150 Fed.Appx. 86 (CA2, 2005)

[20] *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir.2004) (Under Rule 56(c), in addition to showing the absence of a genuine issue of material fact, the moving party must show that he is "entitled to a judgment as a matter of law." An unopposed summary judgment motion may also fail where the undisputed facts fail to " 'show that the moving party is entitled to judgment as a matter of law.' " *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996). Where the order granting summary judgment is insufficiently clear to permit this Court to determine whether the grounds for granting the motion are valid, remand is appropriate. See *Miranda v. Bennett*, 322 F.3d 171, 175 (2d Cir.2003); *Amaker,* 274 F.3d at 681 n. 1) *Sloane v. Getz*, 150 Fed.Appx. 86 (CA2, 2005)

[21] *Amaker v. Foley*, 274 F.3d 677 (2d Cir. 2001) (SOTOMAYOR)(As explained by the Supreme Court…, the burden of the nonmovant to respond arises only if the motion is properly "supported." If the evidence adduced in support of the summary judgment motion does not meet this burden, " 'summary judgment must be denied *even if no opposing evidentiary matter is presented.* ' " *Id.* at 160, 90 S.Ct. 1598.) *Lendino v. Trans Union Credit Information Co*., 970 F.2d 1110 (CA2 1992) "not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." *See also Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991); *Oxley v. City of New York,* 923 F.2d 22, 24 (2d Cir.1991)

[22] Even if Pl were the movant, the Court should still grant MSJ to Pl, not to Defs. One reason is that it is undisputed Defs withheld the system and other files to preventing Pl to verify a sequence in violation of five orders by the

*true* and that there is no genuine dispute as to any of Defs' False Claims as *true*. E.g. as a result of Defs' Mischaracterization, the Court held that Pl needs "to raise a genuine issue of material fact as to the independent development of the Teytel sequences," despite it is *not* a material fact relevant to Pl's claims of misappropriation. It is irrelevant to either Pl's ACE Verbatim Use Claim or ACE Derivative Use Claim. Pl' has presented undisputed evidence of misappropriation, II-IV *supra*. It is no defense to Pl's claims for Defs to create some random sequence by "independent development," regardless of whether the "independent development" of this random sequence is true or false. It is just "a front for actual use of the ACE sequence in generating Yield Book outputs." Mem Ord at 4. Conclusive evidence demonstrated that Teytel's Real Algorithm, which selected all the LDS sequences, targets stolen ACE sequences, and that Teytel's proffered "Mixed Seed Algorithm" is totally phony. The 2nd Polish Report Based on fabricated records further supported Prof. Fan's finding. Fact III-IV, *Supra*. The Court committed clear error when it granted *Defs* instead of *Plaintiff* summary judgment, chose the fabricated events portrayed by 2nd Polish Report over Fan's undisputed findings and other evidence that the "Mixed Seed Algorithm" is phony. he Orders and Judgment must be vacated under FRCP59(e).[23]

## II.   The Court Committed Clear Error When It Embraced Defs' False Claims "Defs' Sequences Incorporated or Infringed ACE sequences" as Pl's Claim of Trade Secret Misappropriation.

R&R 2019 ignored the collusion evidence but relied on the collusion and fraud. The Court committed the same clear errors when it endorsed R&R 2019 in its entirety. I, VI. *Supra*. All of MJ's decisions were based on the Court's Feb 8, 2013 Ord, which is Exhibit A of Defs' 3- Prong Scheme and conspiracy with Collins. Fact I. Defs called it "law of the case."[24] The Mem Ord

---

Court. At best, "Teytel sequences are real" is unverifiable irrelevant conjecture and speculation of Defs. See 2019 R&R at 31, "…conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Neither should spoliation and violation of court orders.

[23] *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006)([c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir.1997). The failure of the District Court to heed this rule caused it to fall into error, as will be seen.)

[24] See *Agostini v. Felton*, 521 U.S. 203, 236, 117 S. Ct. 1997, 2017, 138 L. Ed. 2d 391 (1997)("The doctrine does not apply if …[its prior decision] is clearly erroneous and would work a manifest injustice.").See *Colvin v. Keen*, 900 F.3d 63, 68 (2d Cir. 2018) (same) *DiLaura v.Power Auth. of State of N.Y.*, 982 F.2d 73, 76–77 (2d Cir. 1992) (same) *Kinsman Transit Co. v. City of Buffalo*, 388 F.2d 821, 825 n. 9 (2d Cir.1968); accord *Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318.")

cited it as the basis to adopt R&R, and MJ's declining Pl's requests for reconsideration based on new evidence conclusory as "relitigation." The Court declined to consider with a conclusory reasoning that "These claims, many if not all of which seek to relitigate issues already decided by the Court. are only tangentially related to the challenged orders issued by Judge Cave,.." **This conclusory denial is contrary to FRCP54(b).**

First, these claims as requested in Pl's Mot to Defer of Nov. 8, 2019 (ECF. 366),  are central to Defs 3 Level fraud, which has misled the Court to the wrong decisions, Sep 5, 2012, March 26, 2014, and two R&R's, and these two Orders and the Judgment. But that is why Rule 54(b) is for. Motions cannot be denied only on the basis of  "relitigation." In fact,  Defs' 1st and 2nd Prongs of 3 Prong Scheme, Defs' Mischaracterization of Pl's claims, and Misrepresentations, have never been decided by any order, including this Court. Feb. 8, 2013 Ord should be vacated, or amended to indicate that "Defs sequences infringed ACE" was only Defs' False Claims, not Pl's claims of misappropriation. the Court overlooked all the undisputed evidence concluding ACE Verbatim Use Claim and ACE Derivative Use claim submitted by Pl. *See* Fact II-IV *supra*. That established liability.

Mem Ord cited *Kewanee Oil Co. v. Bicron Corp*., 416 U.S. 470, 476 (1974) to justify "Defs independent development of trade secret." However, Defs did not develop ACE, and Pl's demonstration of ACE derivative claim does not rely on any of the Defs' sequences. As the 2nd Declaration of Prof. Fan stated, IV *supra*, his focus was on the two material facts: whether Defs had stolen ACE and what is the Real Algorithm that selected all the LDS sequences. The answer to the first issue is resounding "yes!" Pl has already demonstrated that the purported "Mixed Seed Algorithm" is total phony, and that the Real Algorithm targeted ACE. II-IV. *Supra.* This alone demolishes "the independent development of the Teytel sequences," and Defs' MSJ. The phony Teytel sequence is just a front of their misappropriation. Defs did not independently discover the stolen ACE sequences. So *Kewanee Oil* and *Integrated Cash Mgmt. Servs*  totally are inapplicable as Defs' defense for their Real Algorithm developing LDS200 paths by targeting

ACE.[25]  Defs refused to produce any system that would allow the sequences to be verified. Defs'

"independent development" is not a defense to Pl's ACE Derivative Use Claim, but to DFCs.

Defs' misappropriation[26] of Pl's trade secret is a threat to one of the most fundamental human

rights. The Court condones and awards Defs' thievery but punishes their theft victim, Pl.

### III.  The Court Committed Clear Error When It Overlooked the Admissible Factual Material and Expert Testimony of Translation That Proved ACE Verbatim Use Claim

Under trade secret laws, either Defs' theft or use of Pl's trade secret in violation of NDA, is

liable to misappropriation. Nov Ord stated that the SOL of misappropriation applies to the theft

*per se*. But Defs' theft of ACE, is well within the six year SOL of breach of NDA. R&R 2009.

Therefore, Defs is liable to materially breach of NDA, and the reliance damage including the

loyalties. Defs' theft of ACE is also strong evidence of use. After Defs had gone all the trouble,

designed and revised the theft code so many times over 1 ½ years, in order to breach such

carefully designed security protection measures established by Pl and succeed theft of ACE in

the fourth and last test, why would Defs *not* use of the stolen ACE? The "super-natural results

from the tests lasted over 1 ½ years. In their internal emails,  Defs admissions of the goal of ACE

Use Code is to prevent "others steal from us [after Defs stole ACE from AAI]" because of ACE

"high value," have established the motive of both theft and use. ¶174, 4th Fan, Ex.PPP. ACE Use

Code installed right after the theft is conclusive evidence of ACE Verbatim Use.  Fact II, Supra.

Each use by Defs, whether ACE verbatim or other Confidential Software Information constituted

a new cause of action. See R&R 2009 at 16. Now the Court held that expert testimony is

essential, then it should view the Fan testimony for the translation of the codes, and the other

factual material, and the entire 4th Fan for all the Motions and all the Objections.  See the cites in

SC Letter, 4-5. A lay jury is capable to decipher and analyze computer code even in hexadecimal

assembly code languages—without need for expert witnesses, to decide the copyright disputes.

---

[25] *AEB & Assocs.* is inapposite. There the "ideas" were not trade secret, and no NDA. Here, Pl's two claims
conclusively established misappropriation. *Integrated Cash* supports R&R's finding that ACE is AAI's trade secret
[26] See the US S. Court held in *Kewanee, at 487: "*In addition to the increased costs for protection from burglary,
wire-tapping, bribery, and the other means used to misappropriate trade secrets, there is the inevitable cost to the
basic decency of society when one firm steals from another. A most fundamental human right, that of privacy, is
threatened when industrial espionage is condoned or is made profitable;[16] the state interest in denying profit to such
illegal ventures is unchallengeable."

See *Antonick v. Electronic Arts, Inc., 841 F.3d 1062 (2016)*. A jury can understand source Theft Code and ACE Use Code, which contain only simple functions to save and read ACE sequences and rate paths, written in English based C-language.  (See SC Letter, pp 6-7). Mem Ord relied on *Paone v. Microsoft Corp.,* 881 F. Supp. 2d 386, 415 (E.D.N.Y. 2012) to grant MSJ. But applying the CA2 standard cited by *Paone*, even if the Court would disregard Prof. Fan's testimony, the Court must still deny Defs' MSJ because unlike Microsoft's attorney, Defs' attorneys do not even have any argument against the hard evidence of Theft Code and ACE Use Code. Defs 56.1 reply did not have any facts to controvert Pl's 56.1 Response ¶¶ 16, 20, 51, 68. According to L.R. 56.1(c) or FRCP56(e)(2), Pl's undisputed facts are admitted. SC Letter 6-7. Mem Ord did not explain why the Court did not consider (a) the 3rd, the 4th Fan Decl, the 3rd, 6th Wang Decl decl. in support of all 6 sets of proceedings adjudicated by Mem Ord; or (b) the admissible expert testimony about the translation of Theft Code and ACE Use Code presented 6 times, when the June 5, 2014 Ord held they are admissible for all purposes. This alone is basis for remand[27]. If the Court would overrule MJ Pitman's rulings on either (a) or (b), then it is abuse of discretion.[28] "Non-moving party need *not* produce evidence or affidavits in a form that would be admissible at trial in order to avoid summary judgment."[29] "Rather, so long as the evidence in question 'will be presented in admissible form at trial,' it may be considered on summary judgment. *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001); see also *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). Here [the Theft Code and ACE Use Code] in question could readily be reduced to admissible form at trial through the testimony of [experts].."[30]. *Smith v. City of New York,* 697 F. App'x 88, 89 (2d Cir. 2017). All of

---

[27] *Vermont Teddy Bear Co.* ("Where the order granting summary judgment is insufficiently clear to permit this Court to determine whether the grounds for granting the motion are valid, remand is appropriate.")

[28] *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724 (1998) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990);..")

[29] *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ("Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing to which we have referred.")

[30] *Smith v. City of New York,* 697 F. App'x 88, 89 (2d Cir. 2017)

Pl's Decls are in full compliance to Rule 56(c) but were disregarded by the Court. All of Radak and Polish Decls violated 56(c)(h), because they were referring sequences used by Defs which they have no personal knowledge, and they were submitted for Defs Mischaracterization—for improper purpose, i.e. in bad faith, and to withhold the sequences used by Defs in violation of court orders, i.e. in bad faith (see SCOTUS *Chambers*). Russell's Decl is blatant perjury. Yet, Mem Ord relied on these false Decl's to dismiss Pl's case. It is clear error.

## IV.   The Court Committed Clear Errors When It Relied Defs 3 Prong Scheme and Collusion to Excluded All Admissible Factual Evidence and Prohibited Pl from Filing Motions Provided by FRCP.

Mem Ord overlooked all of Pl's new evidence filed after May 2011. The prohibitions in the Orders of March 2014 and July 2014 (and June 9, 2020 excluding new evidence after 2012) are contrary to law. Pl submitted Fan's Rebuttal Expert Report of July 17, 2012 ("Fan Rebuttal") in full compliance to FRCP 26(a)(2)(D)(ii) which MJ Pitman disagreed with and overruled. See Sep 5, 2012 Hr. Tr. 3:17-22. which was also endorsed by the Court. The Feb. 8, 2013 Ord mistakenly held Fan Rebuttal as a "supplemental report," despite it was clearly presented and marked as "Rebuttal Report." It held the Fan Rebuttal was "filed two weeks after the close of discovery," despite the discovery was still ongoing because Defs refused to produce their witnesses for depositions. See Sep 25. 2012 Ord ECF.174. While the Court had denied Defs' motions to close discovery, in the afternoon of August 17, 2012, Defs ***and Collins*** (*without knowledge of Pl*) ***jointly*** called Hon. Pitman's Chambers to grant Defs' motion to rush the discovery a premature close, so Defs could launch MSJ while concealing the smoking gun evidence. ECF Nos. 163, 168. See ¶108, Appendix. Soon after Defs produced their witnesses for depo, Pl submitted the 3rd Fan Decl, and 3rd Wang Decl on Sep. 28, 2012. ECF Nos. 199, 200. Again Collins colluded with Defs to prevent the declarations be considered by the Court. VI. *Supra*.

   March 2014 Ord ruled that 4th Fan Decl is not subjected under Rule 26(a)(2) requirement but admissible for support of issues "such as…whether an adversary has engaged in discovery misconduct". *Id,* pp32-33. Then it cited cases under FRCP 16(b)(4) to reopen discovery to prohibit "sanction motion contemplated by Plaintiff" (which he did not know it was a spoliation motion, fn 7.) and self-contradictorily ruled that 4th Fan could *not* be used for support of sanction

motion. His June 5, 2014 Ord reversed his prohibition against "sanction motion" only allowed Section G. It is incoherent. March 2014 Ord confusingly stated "little evidence of Defs fraud" in Sep 5, 2012 Hr, as his basis to exclude 4th Fan Decl, despite the mountain of new evidence of Defs' fraud, 4th Fan Decl, is before his eyes. This is clear error. He also prohibited the use of 4th Fan Decl as impeachment evidence, overruling FRCP 26(a)(3), calling it provided "a backdoor [to Pl's admissible evidence]." ECF 248 at 5. He held that only Defs' misconduct "on collateral matters but with respect to the merits" could be impeached. His triple prohibition declared an open season to Defs' fraud after the discovery was rushed closed by collusion. It is contrary to FRCP 1, fatally flawed.[31] MJ Pitman is not better equipped than Prof. Fan to understand what the false facts need to be impeach. See re Russell's perjury. Fact II Supra. The July 15, 2014 Ord endorsed March 26 Ord in its entirety. MJ Cave's order, ECF 438, reversed her prohibition, ECF 375, "because a court has no power to prevent a party from filing motions authorized by the Federal Rules of Civil Procedure.' *Eisemann v. Greene*, 204 F.3d 393, 397. (2d Cir. 2000)." *Id*. 17. Mem Ord, at 18, affirmed MJ Cave's reversal, and called Pl's Obj against MJ's prohibition "moot." Therefore, the prohibition by March 26, and July 15, 2014 orders are erroneous, and must be vacated. Consequently, the "limitation" on the use of 4th Fan Decl resulted from MJ Pitman's prohibition must be lifted.  This lifting has already implicitly and partially affirmed by MJ Pitman in his repeatedly denying Defs' motions to strike 4th Fan Decl and for sanctions in response to Pl's 56(d) and 56(h) motions. See ECF Nos. 312, 339.  However, June 9, 2020 Ord was misled by Defs' mischaracterization of the procedural history, and erroneously excluded the 4th Wang Decl (which was in response to Collins' declaration, pursuant to MJ Pitman's order ECF265), because it "is dated April 23, 2015—over three years after Judge Pitman ordered the completion of discovery". Id, at 12. Her new prohibition is contrary to FRCP, e.g., FRCP54(b) cited by her same Order. Mem Ord held, at fn. 7, that MJ Cave had applied Rule 54(b). If so then, she would not have held that Pl may not submit *any* declarations after May 2012, because

---

[31] See *Amaker v. Foley*, 274 F.3d 677 (2d Cir. 2001) (SOTOMAYOR) ("While a district court has the power to create motion procedures and to impose consequences for failure to comply with those procedures, any such directives must nevertheless be consistent with the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 83")

any new evidence for reconsideration needs to be submitted by a new declaration.  Indeed, MJ Cave did not consider any new evidence, even she agreed that the 4th Wang Decl is evidence of collusion but she excluded 4th Wang Decl "because it alleged collusion," after she embarced Defs mischaracterization of history. Clearly, the cite of the 54(b) in MJ Cave's Order was only perfunctory without any application and consideration.  Therefore, the Court should vacate and amend the orders of March 26, and July 15, 2014, and June 9, 2020. The Court should consider the entire 4th Fan Decl submitted in support of 56(d), 56(h) and 54(b) Mot's and Obj's. Then the Court should vacate its Mem ord, because it is based on Feb 8, 2013 Ord and based only on the same record before MJ Pitman in Sep 5, 2012, as Mem Ord held, without consideration of any new evidence; to vacate the Match 26, July 15, 2014 Orders and  R&R, Mem Ord, Judgment.

**V.   The Court Also Committed Clear Error on Both Law and Fact on Damage from Defs' Breach of NDA, When It Adopted 2009 R&R, Treated Pl as Movant but Granted Defs MSJ on the Issue of Damage as $1 When it is Undisputed Fact that the Damage is Substantial and Plaintiff is the Prevailing Party According to the NDA and the Law.**

As to liability of breach NDA, as demonstrated III and IV supra, Teytel's Real Algorithm in selecting LDS200 is not the phony Mixed Seed Algorithm. The Court erred relied on the false Second Polish Report based on the fabricated documents.  This alone, the Court should vacate the Orders and restore the 2010 Order. The Court denied Pl an opportunity to gather the evidence for all of these three measures of damage from breach of NDA: restitution damage, reliance damage and statutory damage. It permitted only 10 pages of written submission in 22 days and no extension. Plaintiff has no time to gather evidence for its damage experts' review to prepare testimony. This is no full and fair litigation. In contrast, the Court provided more than double of that time, 45 days for Defendants to submit their proof of fees, with no page limits and then further extended this time. ECF. 466. **The Court's decisions deprived Plaintiff's rights under FRCP 56 and constitutional due process**.

Report of MANGUM, III, of October 8, 2007, (see 2009 R&R *3), calculated as a part of reliance damage to Plaintiff, the lost partial licensee fees from Defs due to breach of NDA is approximately $33,977,000 from January 1999 through February 2007, based on the parties' license negotiation and agreement for the very restricted license before Defs misappropriated

21

AAI's trade secret. *Id,* pp8-9, fn. 35.  2009 R&R, at 11, held: "I conclude that even if actual damage is an element of a breach of contract claim in New York, plaintiff has satisfied that element here by proving the fact of damage;" Then the Court must permit Pl to discover and prove its damage to a jury, and then award Pl the damage and the attorney fees according to NDA ¶19[32] "the compensation from [Defs to Pl,] shall be no less than the actual or potential damage caused to the Disclosing Party,"  and ¶ 21. Defs might dispute Mangum's calculation in a trial, but the Court may not play fact finder, first take Defs' position of "limited breach" on liability and then dismiss the Pl's damage expert's estimated figure on damage as a matter of law. The Court erroneous treated Pl as the movant in granting Defs' damage figure from breach of NDA when it should have treated Pl's evidence as the facts.[33] R&R2009 held that Defs' misappropriation of Confidential Software Information owned by Pl violated Pl's reliance interest. The Court abused its discretion. See *Transaero, Inc.* R&R2009 *13 cited *Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 383, (1974).  But this case is for the damage award post trial, not for MSJ. All of the remaining cases cited by2009 R&R held that "plaintiff must be given discovery and the opportunity to prove damage at trial." This is Pl's position.  Its holding that Pl is only entitled to $1 is contradicted by every case it cited, and by its own finding "Pl has proved actual damage", at *12.[34] The 2009R&R and Orders are again contrary to law.

**Plaintiff is the prevailing party according to the NDA and the law.** Defs did *not* prevail on these claims for breach of the duty of good faith and fair dealing, quantum meruit, and unjust

---

[32] 19.**BREACH:REMEDIES**. ..In any event of actual or potential breach involving Confidential Software Information, the compensation from the Receiving Party shall be no less than the actual or potential damage caused to the Disclosing Party. Nothing in this Agreement shall be construed as preventing the Disclosing Party from pursuing any remedy at law or in equity for any breach or threatened breach of this Agreement.

[33] Anderson, 477 U.S. at 269 ("the nonmovant's evidence is to be taken as fact for purposes of the motion. Inferences and construction of the facts are drawn in the light most favorable to nonmovant. "Ambiguities" must be resolved in favor of the nonmovant." "All doubts are resolved in favor of existence of triable issues of fact.") See *Taylor v. Riojas* (same) and *McClellan v. Smith* (same).

[34] "Since [plaintiff] is entitled to partial summary judgment on the issue of breach, it has the right to go to trial to prove whatever damages it can prove." *Raymond Weil, S.A. v. Theron*, 585 F. Supp. 2d 473, 488 (SDNY 2008); *Burberry Ltd. v. Euro Moda, Inc.*, No. 08 CIV. 5781 (CM), 2009 WL 1675080, at *17 (SDNY. 2009) (same); *Sit-Up Ltd. v. IAC/InterActiveCorp.,* 2008 WL 463884, at *15 (SDNY. 2008) (same). *Medinol Ltd. v. Bos. Sci. Corp.,* 346 F. Supp. 2d 575, 600 (S.D.N.Y. 2004)(Same. "The issue of contract damages must be left for trial..A person violating his contract should not be permitted entirely to escape liability because the amount of the damage which he had caused is uncertain. This principle has been restated by the Supreme Court." Detailed cites from CA2 and SCOTUS omitted)

enrichment. These claims were superseded by the main claim: the breach of NDA claim, which Pl has prevailed. Thus Pl prevailed on all of its claims.[35] It is one clear error compounded to another clear error, in a vicious circle: because of the clear error of prejudging $1 damage, disregarding all evidence, the Court erroneous made the perpetrators, the Defs, the prevailing party, and awarded Defs fees in tens of $millions. Nov Ord relied on *Zamora v. Morphix*, which held the prevailing party must receive "the 'substantial relief' required for an award of contractual attorneys' fees in New York." As the breacher of the NDA, Defs is entitled to no relief, $0. Thus Defs cannot be the prevailing party by law. Under the case law and "two strong equitable considerations" cited by *Zamora*[36] Pl is also the prevailing party for this instance case.

Further ¶19 of NDA confirms that only
the Disclosing Party has the right under NDA to pursue the pursuing any remedy at law or in equity for any breach or threatened breach of this Agreement. In any event of actual or potential breach involving Confidential Software Information, the compensation from the Receiving Party shall be no less than the actual or potential damage caused to the Disclosing Party,

So AAI is entitled to attorneys fees if it prevails on the breach of NDA claim even for only nominal damage. Defs' misconstruing the ¶21 to mean the admitted violator of NDA may be rewarded to fees that clearly meant to "preventing the Disclosing Party from pursuing any remedy at law or in equity for any breach or threatened breach of this Agreement", and contrary to NDA ¶19, in addition to the laws. Thus Nov Ord is a clear error.[37]

## VI. The Court Committed Clear Error When It Disregarded the Direct Evidence of Defs and Collins' Conspiracy that Led to Feb. 8, 2013 Ord and the Exclusion of Pl's Expert Testimony and Judgment. Pl is Entitled to Relief from the Orders and Judgment Procured by Defs' Three Level Fraud Under Rules 59(e) and 60(b).

It is undisputed that Collins colluded with Defs to procure the orders of March 26, and July 15, 2014. Fact I, VI *supra*. The Court failed to consider any of Pl's allegations of Defs 3 Prong

---

[35] "[T]he defendant's breach of duty is the gravamen of such trade secret claims," Computer Associates Intern., Inc. v. Altai, Inc., 982 F.2d 693, 717 (1992). See SC Letter, p.8.

[36] *Matsumura v. Benihana Nat'l Corp.* 2014 WL 1553638, at *4 (S.D.N.Y. 2014). " 'two strong equitable considerations' " – first, "that a plaintiff [AAI] bringing a statutory claim 'is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority,' " and second, that attorneys' fees "awarded to a prevailing plaintiff in the statutory context are awarded 'against a violator of federal law' [Defs]. "

[37] *Lucente v. Int'l Bus. Machines Corp.,* 310 F.3d 243 (2d Cir. 2002) (If there is admissible evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable; to this end, the district court is charged with the function of issue-finding, and not issue-resolution.)

Scheme and collusion with Collins, and Pl's request for investigation, but endorsed the orders relying on these 3 Prong Scheme and the Three Level Fraud (See Glossary), and rushed the Judgment. This is clear error. The Court should amend these orders of Feb 8, 2013 and July 15, 2014, and the Orders.[38] "Rule 60(b)(3) provides that a court may grant relief in the case of 'fraud ..., misrepresentation, or other misconduct of an adverse party.' Fed.R.Civ.P. 60(b)(3)." "[E]ven an accidental failure to disclose or produce materials requested in discovery can constitute 'misconduct' within the purview of Rule 60(b)(3)." *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 286 F. Supp. 2d 309, 314–15 (S.D.N.Y. 2003) (collecting cases). "The misconduct need not be nefarious to warrant action under 60(b)(3)."[39] Rule 60(b)(3) applies to the withholding of information called for by discovery.[40] "The rule applies to both intentional and unintentional misrepresentations."[41] See *Whimsicality, Inc. v. Rubie's Costume Co.*, 836 F. Supp. 112, 116–17

---

[38] See *Gomez v. City of New York*, 805 F.3d 419 (2015). (FRCP59(e) motion granted. Even for lesser allegations of mistakes, "courts generally require the holding of an evidentiary hearing.")

[39] *Thomas v. City of New York*, 293 F.R.D. 498, 503–04 (S.D.N.Y. 2013), *aff'd sub nom. Thomas v. McAullife*, 691 F. App'x 671 (2d Cir. 2017).(Although the scope of "misconduct" is not defined, it certainly evinces a wider scope than fraud or misrepresentation lest it be redundant. *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir.1988) ("For the term to have meaning in the Rule 60(b)(3) context, it must differ from both 'fraud'and 'misrepresentation.' Definition of this difference requires us to take an expansive view of 'misconduct.' "). The misconduct need not be nefarious to warrant action under 60(b)(3). *Id.* If, however, the misconduct was intentional, "the movant is entitled to a presumption that the misconduct substantially interfered with the movant's preparation of its case ... [which] may only be overcome by clear and convincing evidence to the contrary." *Anderson v. Beatrice Foods Co.,* 127 F.R.D. 1, 2 (D.Mass.1989). Substantial interference is established "if a party shows that the concealment precluded inquiry into a plausible theory of liability, denied it access to evidence that could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination." *Id.* (quoting *Anderson,* 862 F.2d at 925).)

[40] *Cap Export, LLC v. Zinus, Inc.,* 996 F.3d 1332, 1341 (Fed, Cir.→ 2021). ([W]hen the case involves the withholding of information called for by discovery, the party need not establish that the result in the case would be altered." *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 879 (9th Cir. 1990). The Ninth Circuit has suggested that "showing 'the material's likely worth as trial evidence or by elucidating its value as a tool for obtaining meaningful discovery' " could establish that the withholding of the material deprived the movant of a full and fair opportunity to present its case. *Id.* at 879 (quoting *Anderson*, 862 F.2d at 926).)

[41] *DiPirro v. United States*, 189 F.R.D. 60, 65–66 (W.D.N.Y. 1999) (Under Rule 60(b)(3), "the court may relieve a party ... from a final judgment, order, or proceeding for ... fraud..., misrepresentation, or other misconduct of an adverse party..." if "the conduct complained of prevented the moving party from fully and fairly presenting his case." *Taylor v. Texgas Corp.,* 831 F.2d 255, 259 (11th Cir.1987) *see also Stridiron v. Stridiron,* 698 F.2d 204, 207 (3d Cir.1983) (same); *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir.1978) (same). The rule applies to both intentional and unintentional misrepresentations. *Lonsdorf v. Seefeldt,* 47 F.3d 893, 897 (7th Cir.1995); *Plattner v. Strick Corp.,* 102 F.R.D. 612, 614 (N.D.Ill.1984). *Dow Jones & Co., Inc. v. WSJ Inc.,* 133 F.3d 906, 1998 WL 2370 (2d Cir.1998); *PMC, Inc. v. Atomergic Chemetals Corp.,* 122 F.3d 1057, 1995 WL 595557 (2d Cir.1995); *Fleming v. New York Univ.,* 865 F.2d 478, 484 (2d Cir.1989); *Green v. Foley,* 856 F.2d 660, 665 (4th Cir.1988).)

(E.D.N.Y. 1993), 1993 WL 661161 ("Rule 60(b) should be broadly construed to do substantial justice. *E.g., Music Deli & Groceries, Inc. v. I.R.S.,* 781 F.Supp. 992, 995 (S.D.N.Y.1991)."

Pl has demonstrated by clear and convincing evidence that (1) Defs engaged in systematic fraud, misrepresentations, spoliation and fabrication of records and other misconduct, and conspiracy with Collins and that (2) such misconduct substantially interfered with Pl's ability to fully and fairly present its case, e.g. by (i) blocking Pl's spoliation sanction motions against Defs' violation of five discovery orders seeking relief and (ii) by framing Pl for Defs 37(c) sanction for allegedly violating a schedule order. Fact VI. Defs' misconduct includes but not limited to

1. The 1st Prong of Defs' 3 Prong Scheme: Mischaracterization of Pl's claims of trade secrets misappropriation as DFCs to withhold relevant evidence and derail the litigation; I Supra.

2. The 2nd Prong: Defense counsel made numerous representations to the Court, Fact I.

3. Defs withheld 5 categories of direct key evidential documents in violation of five discovery orders; See Pl's 56(d) Mot at 2-3, ECF289, and the 6th Wang Decl. ¶212. See Glossary.

4. Defs' spoliation and fabrication of sequence records; IV Supra.

5. The 3rd Prong:Defs submitted 7 false or misleading declarations in support of MSJ's, including the 2nd Polish Decl based on falsified records; See I, III, IV. 56(h) Mot.

6. **Third Level Fraud**. Defs colluded with Collins to mislead the Court step by step to dismiss Plaintiff's case. He sabotaged all of Plaintiff's attempts to expose Defs' fraud but embraced Defs' Three Prong Scheme to cover-up Defs' fraud. See I, VI supra and Glossary. They are critical factors leading to the Judgment.

Pl is also entitled to relief under FRCP60(1) and (6). See *Gomez v. City of New York*, 805 F.3d 419 (CA2, 2015). Respectfully Pl is entitled to relief under FRCP60(1)(3) and (6).

## CONCLUSION

For the forgoing reasons, Plaintiff respectfully requests that this Court grant the Motion under FRCP 59(e) and 60(b), and vacate the portion of Mem Ord that granted MSJ on claims of misappropriation of trade secrets; vacate the Nov Order; vacate the Judgment and reopen the case to investigate Defs' fraud and collusion with Collins perpetrated on the Court, and amended the orders as specified in this Motion accordingly,

**LAW OFFICE OF PETER J. TOREN**


By _____

Peter J. Toren
ptoren@petertoren.com
40 East 80th Street
New York, N.Y. 10075
Telephone: (646) 623-4654

Attorneys for Plaintiff and Counterclaim-Defendant
Advanced Analytics, Inc.

26