**LAW OFFICE OF PETER J. TOREN**
Peter J. Toren
40 East 80th Street
New York, N.Y. 10075
(646) 623-4654
ptoren@petertoren.com

Attorneys for Plaintiff and Counterclaim-Defendant
Advanced Analytics, Inc.

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ------------------------------------------------------x<br>:<br>ADVANCED ANALYTICS, INC.　　　　　:<br>　　　　　　　　　　　　　　　　　　　:<br>　　　Plaintiff and Counterclaim-Defendant,　:<br>　　　　　　　　　　　　　　　　　　　:<br>　　　　　　　　v.　　　　　　　　　　:<br>　　　　　　　　　　　　　　　　　　　:<br>CITIGROUP GLOBAL MARKETS, INC. f/k/a<br>SALOMON SMITH BARNEY, INC., and<br>THE YIELD BOOK INC, f/k/a<br>:<br>SALOMON ANALYTICS, INC.,　　　　　:<br>　　　　　　　　　　　　　　　　　　　:<br>　　Defendants and Counterclaim-Plaintiffs.<br>:<br>------------------------------------------------------x | **Case No. 04 Civ. 3531 (LTS) (SLC)** |

---

**PLAINTIFF'S NOTICE OF MOTION AND REQUEST FOR JUDICIAL NOTICE
OF DOCUMENTS AND FACTS  PURSUANT TO F. R. E. 201 AND  IN SUPPORT OF
MOTIONS UNDER F.R.C.P 59(e) AND 60(b); MEMORANDUM OF LAW**

---
---

i

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

I.  FACTUAL BACKGROUND ..................................................................................1

    A.  Defendants Mischaracterized MJ Pitman's 2017-5-31 Order to Cover Up Their Admission Evidence of Collusion, and then Altered Evidential Documents Submitted to Chambers in 2021 to Cover It Up. .............................. 1

    B.  New Variant of Defendants' Mischaracterization of Plaintiff's Claims of Misappropriation of Trade Secrets .................................................................. 6

    C.  Collins and Defendants Colluded to Silence Plaintiff's Witness, and to Persecute Plaintiff with the Orders of March 26, 2014 They Procured in Collusion to Turn Defendants' Thievery into Court Endorsed Robbery ........ 13

II.  THE COURT SHOULD TAKE JUDICIAL NOTICE OF FACTS THAT ARE NOT SUBJECT TO REASONABLE DISPUTE WHERE THEIR ACCURACY CAN BE DETERMINED BY RELIABLE SOURCES .................................................................18

III.  COURT RECORDS ARE SUBJECT TO JUDICIAL NOTICE ...............................18

IV.  THE UNDISPUTED FACTS AND SOURCE DOCUMENTS THAT THE COURT SHOULD TAKE JUDICIAL NOTICE ....................................................................20

III. CONCLUSION.....................................................................................................23

ANNEX A   1

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Laws and Rules**

Chief Judge Laura T Swain's Individual Rules of Practices A(5).................................................. 2

Fed. R. Evid. 201(b)(2) .............................................................................................................. 19

Fed. Rules Evid. 201(b) ............................................................................................................... 1

Federal Rule of Evidence 201(c)(2).......................................................................................... 20

Federal Rule of Evidence 201(d) .............................................................................................. 18

Federal Rules of Evidence 201 ................................................................................................... 1

Local Rule 6.3 .............................................................................................................................. 1

Rule 201 of the Federal Rules of Evidence ................................................................................. 1

Rule 201(b)(2) and 201(c)(1) of the Federal Rules of Evidence .............................................. 18

the Fourteenth Amendment to the United States Constitution ................................................... 17

the Seventh Amendment, the Constitution of the United States................................................. 10

**Cases**

*A.I. Trade Finance, Inc. v. Centro Internationale Handelsbank AG*, 926 F. Supp. 378, 387

    (S.D.N.Y. 1996)..................................................................................................................... 19

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc*., 316 F.Supp.3d 635, 640 (SDNY, 2018) ... 19

*Christa McAuliffe Intermediate School PTO, Inc. v. de Blasio*, 364 F.Supp.3d 253 (2019)........ 18

*Cleary Gottlieb Steen & Hamilton LLP v. Kensington Intern. Ltd.,* 284 Fed.Appx. 826 (CA2,

    2008). ..................................................................................................................................... 17

Cooper v. Aaron. 358 U.S. 1 (1958). ........................................................................................ 18

*Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) ..................................................... 19

*Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir.2006))............ 19

*Rates Tech. Inc. v. Speakeasy, Inc.,* 685 F.3d 163, 167 (2d Cir. 2012) ......................................... 19

*Roe v. Johnson*, 334 F. Supp. 2d 415, 419-20 (S.D.N.Y. 2004)................................................. 19

*U.S. v. Akinrosotu*, 637 F.3d 165 (2d Cir., 2011) ....................................................................... 18

# NOTICE OF MOTION

PLEASE TAKE NOTICE that pursuant to Fed Rule of Evidence 201, based on the accompanying Memorandum of Law, and the pleadings and prior proceedings in this matter, Plaintiff Advanced Analytics, Inc. ("Plaintiff," "Pl," or "AAI"), respectfully requests this Court to take judicial notice of certain undisputed facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

These facts are relevant to <u>Plaintiff's Motions Pursuant To Federal Rules Of Civil Procedure 59(e) and 60(b) For Reconsideration And Relief From Judgment</u>, ("<u>Plaintiff's FRCP 59(e) and 60(b) Motions</u>," or "<u>Pl's Rule 59(e) Mot</u>") filed on December 3, 2020 (ECF No. 467), pending before this Court, and to Plaintiff's potential appeals.

Plaintiff respectfully requests that this Court take judicial notice of all of the undisputed facts as set forth in the Memorandum of Law and the documents, Exhibits A-K to the attached Declaration of Peter J. Toren.

(The remaining part of the page is intentionally left blank.)

# MEMORANDUM OF LAW

Pursuant to Federal Rules of Evidence 201, Advanced Analytics, Inc. (the "Plaintiff,"

"Pl" or "AAI") respectfully submits its Request for the Court to take Judicial Notice to the

undisputed facts and the source documents listed and attached as exhibits hereto (the "Request").

Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of

facts that are "not subject to reasonable dispute" because they are "capable of accurate and ready

determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. Rules

Evid. 201(b). The electronic documents attached to this Request are court filings, mostly in the

submissions to Chambers by Defendants in March 2021.  Plaintiff respectfully requests that this

Court take judicial notice of the attached source documents and the undisputed facts, in support

of <u>Plaintiff's Motion Pursuant To Federal Rules Of Civil Procedure 59(e) and 60(b) For

Reconsideration And Relief From Judgment</u>, filed on December 3, 2020 (ECF No. 467), pending

before this Court.

## I.        FACTUAL BACKGROUND

A factual background is necessary to explain and highlight the significance of the

undisputed facts set forth in Annex as summarized in Section IV hereinafter, for the convenience

not only this Court but potentially for other courts including appellate courts, which may not be

familiar with the long procedural history of this case, especially in light of Defendants' objection

in Parties' meet-and-confer regarding Plaintiff's Request for judicial notice. Defendants could

not and cannot dispute the facts and the source documents that exposed their misrepresentations,

but Defendants objected on the basis that they were "frivolous." However, Defendants'

"frivolous" misrepresentations have since misled the Court and directly led to the Court's Mem

Ord, Nov.4, 2021 Ord and the Judgment, and made this Request and recitation of the factual

background necessary with regard to the pending Plaintiff's Rule 59(e) and 60(b) Motion and

potential appeals.

**A. Defendants Mischaracterized Dr. Wang's Letters and MJ Pitman's 2017-5-31 Order to Cover Up Their Admission of Collins' Collusion, and Altered Evidential Documents Submitted to Chambers in 2021 to Cover It Up.**

On January 26, 2021, during the height of the pandemic, the Court  emailed the counsel for  both parties [1] and requested that Defense counsel send all the documents relevant to Plaintiff's three pending Objections[2] and relevant to the three Motions in electronic forms to Chambers.

Defendants made their first production to Chambers on March 1, 2021, and then a supplemental production on March 18, 2021. Despite Plaintiff's counsel repeated requests for Defendants to produce all the relevant electronic text documents, that were not available to the Court in the ECF system or in unredacted form, but the two productions were still deficient.  The information included mostly documents selected by Defendants, *e.g.,* Collins' briefs after 2012 in collusion with Defendants, purportedly filed "to oppose" but actually supported Defendants 2013 MSJ and their motions to strike all of Plaintiff's experts declarations and for sanctions against Plaintiff, the "opposition" briefs filed without Plaintiff's approval over Plaintiff's objection. But they omitted important relevant Plaintiff's filings before Collins was flipped by Defendants in 2012, including Plaintiff's Memorandum of 2008-4-24 in Opposition to Defendants MSJ (Ex. B) and Plaintiff's 56.1 Response of 2008-4-24 to Defendants' Alleged Undisputed Fact Under L.R. 56.1. (Ex. C). [3]  The 2008 Memo Opp Brief authored by Collins before he was flipped by Defendants, faithfully quoted Prof. Fan's testimony, e.g., that no random number generators, such as the one used by Defendants (Yield Book Monte Carlo code) can achieve the results he has seen in ACE. *Id.*  p.21. None of these electronic files existed in

---

[1] Ex. A of Peter J Toren's Decl. attached to this Motion ("Ex. A," in abbreviation; similarly, for other exhibits to Toren's Decl hereinafter, unless indicated otherwise.) Despite their repeated requests to Collins, Plaintiff's counsel has not received all the case files, and has not received any emails between Collins and Defense counsel since 2012. Only these emails could contain and determine the sealed filings.

[2] MJ Pitman's Report and Recommendation ("R&R") dated September 4, 2019 (ECF No. 340), MJ Pitman's Opinion and Order dated September 4, 2019 (ECF No. 339), and MJ Cave's Opinion and Order dated June 9, 2020 (ECF No. 438).

[3] Although there is no basis, Defendants have not allowed these papers be filed in public ECF, nor have they produced redacted versions for ECF. Plaintiff is asking Defendants to agree that these papers be all filed in ECF pursuant to Chief Judge Laura T Swain's Individual Rules of Practices A(5).

ECF or in sealed court filings, whether unredacted or redacted.[4]  Collins and Defendants also colluded to exclude Prof. Fan's Rebuttal Expert Report of July 17, 2012 which based on Defendants' own expert's report, Prof. Fan further discovered Defendants' massive tampering of ACE test results to cover up that ACE is not just faster but uniformly more accurate than the Yield Book Monte Carlo sequences by magnitudes.  Yet, after he had been flipped by Defendants, in the 2014-5-28 MSJ "Opp" Brief and other Court filings, Collins deliberately embraced Defs False Claim "Yield Book Monte Carlo code generated ACE sequences" ("DFC") as purported "Plaintiff's claim" over Plaintiff's express objections, and misrepresented Prof. Fan's testimony to its exact opposite as the source to support the DFC. *Infra.*

Defendants' flawed productions led directly to the Court's entry of Mem Order of Sept 30, 2021 that disposed the three Objections, (ECF 461) and the Nov. 4 Ord (ECF 464), in which the Court endorsed in its entirety MJ Pitman's 2009 R&R and 2019 R&R, while completely failed to view, much less "to view in the most favorable lights" the evidence from Plaintiff's submissions in the 2008 MSJ proceedings, *e.g.,* the undisputed evidence of Defendants' reliance of the stolen ACE sequences in the development of "their" sequences. *See* Pl's Mot of 59(e) and 60(b) of December 3, 2021, Fact III, ECF 467.

Defendants' oppositions to Plaintiff's three Objections and three Motions avoided all the substance but relied again on mischaracterizations of the procedural history and Plaintiff's allegations. For example, Collins' collusion with Defendants was directly confirmed by Jennifer Park's admission in October 2019 that Collins *behind Plaintiff's back* colluded with Defense counsel to call MJ Pitman on June 18, 2013 to withdraw *both* Plaintiff's Rule 37(b) letter motion against Defendants *and* Plaintiff's opposition to Defendants 37(c) Motion, in order to procure the contempt order against Plaintiff. See ECF366 at 4.

To cover up the Defendants' admission evidence of collusion, Defendants Oppositions to Plaintiff's Requests for Investigation of Collin's Collusion under Rule 54(b) (ECF. 423 at 6)

---

[4] They should be unsealed completely. MJ Pitman rejected offhand Defendants' motions to redact judicial documents on September 6, 2019. ECF 344.

misrepresented that the joint call of June 18, 2013 (the "Joint Call") was "the only collusion evidence" in Dr. Wang's Letters of Jan. 4, and May 31, 2017 to MJ Pitman (despite neither Letters referred the Joint Call), and that MJ Pitman's May 31, 2017 Order "had considered it and rejected it" (despite Defendants knew that Wang May 31 Letter was filed after MJ Pitman's May 31 Order had been issued). MJ Cave's order of June 9, 2020 copied and relied on Defendants' blatant misrepresentation as the basis to decline to consider Plaintiff's requests[5] by Plaintiff's Rule 54(b) Motion, despite that the June 9, 2020 Order (and even Defendants) admitted that the 4th Wang Decl of 2015 presented evidence of collusion.

The June 9 Order at p.12 excluded the 4th Wang Decl., because "[T]he Wang Declaration is dated April 23, 2015—over three years after Judge Pitman ordered the completion of discovery." As the title indicated the 4th Wang Decl is not an expert report and has nothing to do with the discovery scheduling order.  The June 9 Order at 16 denied the use of the 4th Wang Decl "because of its untimeliness and reliance on AAI's collusion allegations" (the 4th Wang Decl did *not* allege collusion, because at that time Dr. Wang did not even know Collins' collusion).[6] In other words, the June 9 Order declined to consider the 4th Wang Decl as collusion evidence *because* it is evidence of collusion. Yet, the Mem Ord rubber-stamped the June 9 2019 Order, avoided the requests in Plaintiff's Objections as "tangential."  Further, it did not explain what could be the "heavy burden" placed on Plaintiff to ever get any of its requests, allegations and evidence to *be ever heard*. The Court again avoided the allegation and evidence of collusion. Thus, in light of the Court's Mem Ord, Defendants' misrepresentation of the contents of Dr. Wang's Letters, and that what may have been considered by MJ Pitman's May 31, 2017 order is material for the following reasons. <u>*First,*</u> it is clear error of facts and law for MJ Cave and the Court to adopt Defendants' misrepresentation. This alone is sufficient basis to grant the requests

---

[5] Even if Defendants' misrepresentation had been true, it was still contrary to Rule 54(b) for June 9 Order to cite "Judge Pitman had considered it" as the basis to deny Plaintiff's Request under Rule 54(b).

[6] See ECF442 at 12, ECF467 at 12. MJ Cave's order of June 9, 2020 also copied other obvious mischaracterizations by Defendants wholesale, including that "since 2012 Plaintiff (via Collins) has made the same collusion allegation (which would have only been against himself before 2017) but rejected by both Judge Pitman and Judge Swain" (who had not received the collusion allegation until the three Objections.) Defendants' mischaracterization was repeated in Defendants' Opposition to 59(e) Mot. See ECF 477 at 8.

in Plaintiff's Objection under Rule 54(b) and Motion under Rule 59(e). *Second,* Defendants'

misrepresentation alone is sufficient basis to overturn the Mem Ord and the Nov. 4 Ord under

Rule 60(b)(3).

Starting in the early morning of June 1, 2017, Defendants colluded with Collins in

attempt to silence the witness and intimidated Dr. Wang to withdraw his May 31, 2017 Letter to

MJ Pitman. When Dr. Wang refused,[7] Collins acted on Defendants' threat and wrote to MJ

Pitman twice on June 1, and June 5, 2017, reporting Dr. Wang's violation of MJ Pitman's 2017-

5-31 order, tried to strike the 2017-5-31 Letter and got Dr. Wang sanctioned.[8] Thus the records

demonstrated that Defendants and Defense counsel, including Ms. Park and Mr. Moore knew

very well, that Dr. Wang submitted his May 31, 2017 Letter *after* MJ Pitman's 2017-5-31 order

had been issued, and that their misrepresentations after 2019 that MJ Pitman' 2017-5-31 Order

had considered Dr. Wang's May 31, 2017 Letter is flat-out false.[9]

To further cover up this misrepresentation, Defendants' Production of March 1, 2021 to

Chambers altered the date of Dr. Wang's Letter of May 31, 2017 to Judge Pitman to "May 30,

2017."[10]  Plaintiff contacted Defendants about their altercations. In response, Defendants

promised that they would correct it in their forth coming production (of March 18, 2021) to

Chambers. Yet, Defendants declined Plaintiff's request for a copy of their hand-delivered

production to Chambers of March 18, 2021. To the contrary, Defendants Opposition of

December 17, 2021 to Plaintiff's 59(e) and 60(b) Motion ("Defs Opp to Pl's 59(e) Mot") still

referred "[Dr. Wang's] **May 30**, 2017 Letter." Defendants have made no correction. See

ECF467, p13. To further cover up their intentional altercation of the evidence, Defendants even

---

[7] See Dr. Xiaolu Wang's letter to MJ Pitman of  June 2, 2017, Ex.F, Toren Decl.
[8] See Todd Collins' letters to MJ Pitman of June 1, 2017, and of June 5, 2017, Ex. E, and Ex.G, Toren Decl. *resp.*
[9] See Dr. Xiaolu Wang's letter to MJ Pitman of June 7, 2017, cc'ed to Judge Laura T. Swain which attached in separate pdf files, the letters of Dr. Wang to MJ Pitman dated "May 31, 2017"(in a pdf file named "2017-5-31 Wang 2 Judge Pitman.pdf,") 2017-6-2, and 2016-11-30, 2017-1-4; Todd Collins letters to MJ Pitman of 2017-6-1 & 6-5; 2016-12-1, 2016-12-12 and 2017-1-5; Christopher Moore letters to MJ Pitman of 2016-12-6, 2016-12-14 and 2017-1-10; all these letters above are in chronological order. Ex. H, Toren Decl.
[10] See 2021-3-1 Defendants Production Index03, Ex. I, Toren Decl. and 2021-3-1 Defendants Production File Names,  Ex. J,  Toren Decl.

changed the date of MJ Pitman's Order of May 31, 2017 to "May 30, 2017," and the date June 1, 2017 of ECF 267 to either "May 31, 2017" or "May 30, 2017."[11] Defendants' misrepresentation and their altercation of the evidence were deliberate and intentional.

**B. New Variant of Defendants' Mischaracterization of Plaintiff's Claims of Misappropriation of Trade Secrets**

Because Collins concealed the Joint Call of June 18, 2013 with Defense counsel from Plaintiff, the Joint Call is totally absent in all of Dr. Wang's Letters to Judge Pitman and declarations and filings, contrary to Defendants' misrepresentations. Far from Defendants' blatant misrepresentation to the Court that the Joint Call was the "sole evidence of collusion" in Dr. Wang's two Letters, Dr. Wang's May 31, 2017 Letter to Judge Pitman presented as many as 12 pieces of undisputed collusion evidence. *Id,* p2-7. In particular, the Letter exposed Defendants' Mischaracterization in collusion with Collins (referred as Defs' Deceit therein):

> **1.** Undisputed ***Basic Fact*** is that ACE sequences can***not*** be generated by any YB Monte Carlo code (sequence generator), but are created involving calculations by complex formulas and ***read as data files by Yield Book*** (YB). Defendants' entire defense relies on misrepresenting ***Defs' False*** Claim: "YB Monte Carlo code generated ACE" as "***AAI***'s claim" (***Defs' Deceit***)**,** ¶6, with intent ***to deceive the Court:*** i) to limit discovery scope to only Monte Carlo code, in order to conceal ACE (***not*** generated by YB) used by their traders and other smoking gun evidence, ¶5, Annex B; and ii) to dismiss misappropriation claim on the basis: "AAI's claim" is false. Collins SJ "Opp" Br (of May 28, 2014 filed behind my back) concealed Pl's ACE Verbatim Use Claim, embraced [Defs' Mischaracterization]**,** and represented "gauss_random.c generated ACE" as "AAI's claim". Since the YB code gauss_random.c preexisted ACE tests, Collins perfected Defs' Deceit to deceive the Court to infer "ACE were not trade secret, Defendants did not misappropriate ACE, but Plaintiff misappropriated Defendants' Monte Carlo code." Man Bites Dog.

> ***2. Their concerted deceit***: (***a***) Defendants mischaracterized Plaintiff's claims as their exact opposite: Defs' ***False*** Claims; (***b***) ***Collins*** concealed all the material issues, but echoed and embraced all ***Defs' False*** Claims as "***AAI's*** claims"; then (***c***) Defendants sought SJ by dismissal of "AAI's claims"-- ***the straw man*** stood up by Defendants, "through the provision of undisputed evidence and unrebutted legal arguments," as [1 above] Moore Letter [of Jan 10, 2017] put it. See 1], 2], ¶1, ¶6.

> Logic dictates the undisputed falsity of these "AAI's claims" ("ACE are ***not*** trade secret, Defendants ***neither*** misappropriated ACE ***nor*** withheld the key evidence" in disguise) ***does not dismiss***, as their SJ misrepresents, but ***supports***: ACE ***are*** trade secret, Defendants ***used***

---

[11] See Defs Opp to Pl's 59(e) Mot at 15, and Ex. I, Toren Decl.

stolen ACE and **withheld** key evidence, as concluded by undisputed admissible factual evidence, which was **all concealed** by Collins SJ "Opp" Br. Defendants could have sought SJ by **agreeing with**, instead of dismissing "AAI's claim," ¶1. That would have saved everyone from **all** the work (**c**). Why Defendants did **not** do it? It would have exposed their **agreement**, i.e., **collusion**. Their entire SJ is a work of deceit. So is their entire defense which is hanging on Defs' Deceit, **Annex B**. Moore Letter abandoned undisputed falsity of "AAI's claim", (**c**) and SJ, see7.2, Fourth, to hang onto Defs' Deceit in (**a**) (**b**), ¶5 in order to save their **entire** defense from crash and burn.

**3.** Both Collins and Defendants **knew** that their misrepresentations to the Court are **totally false**, and that all Defs' False Claims are **exactly the opposite** to Plaintiff's claims and evidence. Pl.'s ACE Verbatim Use Claim, 3], and Derivative Use claims, 5], were presented, **e.g.** in 1-2, Pl Obj. Br. Hon Swain of 2009. The finding of Fan 2d Report "ACE is an incredible mathematical feat" in contrast to all sequences generated by YB Monte Carlo code) was correctly cited at 13, *id*.

Dr. Wang's May 31, 2017 Letter to Judge Pitman, p3. Further evidence of collusion at p4, *Id*:

**5.** But as soon as their collusion faced danger of being exposed to the Court, both Defendants and Collins sprang into action to intimidate me to withdraw my Nov. 30 Letters and to prevent communication to the Court of information relating to commission of Federal offense. When it failed, Moore Dec. 6 Letter tried to silence witness, misrepresented Defs False Claim as "AAI's claim" and "[Defs' Deceit] raised serious questions about AAI's conduct"…**Collins** Dec. 12 Letter **reaffirmed and expounded Defs' Deceit**, ¶1, Wang Jan 4 Letter, C. They rushed to cover up, Annex B, because **they rely on Defs' Deceit to conceal**: (**i**) ACE sequences, ¶1; (**ii**) the YB code which read ACE; Now it is undisputed Defendants **surgically deleted the entire set** of all hundreds code files relating to sequences generating interest rate paths (which reads ACE) from CGM00177---the source code production from The Yield Book, Inc. From the start of the case, they had lied they had produced all the deleted code, by disguising either the incompilable code cleansed from Mortgage Research Dept (MR) of CGMI, or the few Monte Carlo code files of Radak, as the deleted code; 2] and (iii) the import[ance] of monumental physical evidence of ACE Verbatim Use Claim, **e.g**., ACE Use Code and their programmers' admissions that the sequences relied by traders are **not** generated by Monte Carlo code (as such they are ACE per Defendants' admission and Basic Fact), 3]. Acting in concert with Defendants, Collins SJ "Opp" Br, p21 **disavowed** Basic Fact and its implications fatal to Defendants' fraud as "red herring." In truth, the falsity of Defs False Claim showed that Defs' Deceit was intended to exclude and to conceal ACE, ¶1.Relying on Defs' Deceit to turn logic to its head, Defs' SJ Br, p21, **cited** Basic Fact to deceive the Court that (i) since YB code do not **generate** ACE, so the "AAI's claim" (Defs False Claim) is refuted; and (ii) the concealed TYB production code were irrelevant to the "AAI's claim." So the diabolic Defs' Deceit turned evidence of **ACE Verbatim Use** into "**non-use**" as (i) **and their admitted concealment** of key evidence into **"red herring"** as (ii), ¶2(c).

In addition, Dr. Wang's letter to MJ Pitman of January 4, 2017 presented compelling evidence that Collins' and Defendants' collusion was deliberate to deceive the Court:[12]

Collins' Dec. 12 Letter misrepresented that Defs' False Claim "gauss_random.c generated ACE64" is not "materially misleading, nor does it creates any prejudice". For *three (3) times,* it set forth deception to mislead the Court to infer Defs' False Claim: "Defendants' sequence generator *can* generate ACE sequences".

First, Collins Dec. 12 Letter cited SJ "Opp." Memo of May 28, taking out the leading sentence to conceal their fabrication of Fan testimony: "As explained in the 2nd Fan Dec. paras. 44-45 (Walker ex. E)":

> "Defendants did not possess seeds to generate ACE sequences, meaning that they could not generate ACE by simply feeding seeds into their random number generator."

To pound the message home, twice more Collins' Letter carefully crafted the deception to mislead the Court to infer Defs' False Claim inserted *after* the two "because", and is "undisputed":

> Defendants could not generate ACE, *because Plaintiff never gave Defendant's access to the seeds necessary to generate any ACE sequence. This is undisputed. It is also undisputed* that Defendants could only read-in ACE numbers, rather than generate them, *because they did not have the seeds necessary to generate them.* (Emphasis added)

Collins Letter cited Undisputed Fact 18 of Defendants' 56.1 Statement, the half-truth *before* "because", to infer Defs' False Claim inserted *after* the two "because".

Both Defendants and Plaintiff's counsel knew all along that Defs' False Claim is entirely false[13], and Defendants' sequence generators can *never* generate any ACE sequences. Feeding *any* seeds (or any crops, grains or nuts) in the world won't matter. There could have never existed any of their purported "seeds necessary to generate any ACE sequence". They knew the reason that Defendants' sequence generators cannot generate ACE, is *not at all* "because they did not have the seeds necessary to generate them" but the following **Basic Fact**, clearly presented in Sec. B, p4, of Pl's SJ Opp. Memo of April 25 Revision, see Exhibit 1:

> When they were not using ACE verbatim, Defendants fed selected numbers or "seeds" into their Sequence Generator to generate "their" sequences. The difference between the sequences generated by The Yield Book and the ACE sequences is that the

---

[12] Dr. Xiaolu Wang's letter to MJ Pitman of January 4, 2017, pp6-7, Ex. 6, and ¶¶205-211, the 6th Wang Decl.
[13] Defs' False Claim is also contrary to R&R, at 10, "[ACE is] a faster production sequence than anything the defendants had…". (Cites omitted) "This testimony constitutes a compelling admission that ACE was not known to defendants…. ACE is the product of a complex series of mathematical computations;"--- Not the product of Defendants' public domain random number generator.

sequences generated by The Yield Book are generated by the Sequence Generator, which uses arbitrarily selected seeds. The ACE sequences are "low discrepancy sequences" generated by complex mathematical formula[s] that is a fundamentally different process than using the Sequence Generator. Rule 56.1 Statement para.10 and 12.

SJ "Opp." of May 28 deleted all the material issues, Sec B- L of Pl's SJ Opp. Memo of April 25 Revision[14], including the **Basic Fact** above. **It presented *only* Defendants' false claims as AAI's claims**, in order to get Defs' SJ granted.

The forgoing evidence is just one of over a hundred pieces of collusion evidence from the 6th Wang Decl presented in Pl's 56(h) Motion of April 26, 2019. But the Magistrate turned a blind eye. Instead, the 2019 R&R cited Collins' embracement of ***Defs False*** Claim: "gauss_random.c (YB Monte Carlo code) generated ACE sequences" as "***AAI***'s claim," *not* as collusion evidence as exposed in Para. 2 **(b)** of Dr. Wang's 2017-5-31 Letter *supra*, but cited it as the pervert "***AAI***'s claim," as the basis to grant Defendants' MSJ, faithfully following Defendants' diabolic Deceit to the Tee.  Just as astonishing, the 2019 R&R also misquoted "Pl's 56.1 Stat 61" and altered the *correct* AAI's claim to Defs False Claim.[15] In turn, the Mem Ord and Nov 4 Ord rubber-stamped the 2019 R&R, and again cited and relied on Defendants' Mischaracterization. *Id,* p.4.

In short, Defendants relied on their Mischaracterization to withhold the key relevant evidence during discovery and then to seek MSJ on the basis that Defs False Claims ("DFC"s) are false. Defendants and Collins knew that Defs False Claims are contrary to the undisputed Basic Facts and are the opposite to Plaintiff's claims.[16] But they mischaracterized all of Plaintiff's claims as their DFCs, and then Defendants' MSJ's cited the Basic Facts to refute their purported "Plaintiff's claims (their DFCs)" in their diabolic scheme. [17] In summary judgment proceedings, the court is charged with the function of issue-finding, and not issue-resolution. As

---

[14]  *All* cites and evidence from Fan 4th Decl. had already been wiped clean in Pl's April 25 Opp. Memo. It presented only very limited admissible samples from the mountain of evidence of Defendants' fraud and use of ACE.

[15] AAI submitted 56.1 Response through another counsel, not Collins. See Plaintiff's Rule 59(e) Mot. pp 2-3.

[16] Plaintiff's Reply to Rule 59(e) Mot, pp 2-3.

[17] In July 2007, Defendants repeatedly asked that the orders to compel their production of sequences used by Yield Book be limited to "sequences used in connection with a Monte Carlo simulation…" among the limitations dove-tailed to exclude ACE sequences from the scope of production. Even after Plaintiff refused their requests, Defendants asked MJ Pitman to grant the limitations, misrepresenting that Plaintiff had consented. See Christopher Moore July 11, 2007 Letter to Alan Loewinsohn (Ex. X) and Alan Loewinsohn's July 13, 2007 letter response to Moore (Ex. Y), Walker Decl, and ¶¶51-52, 4th Fan Decl. <u>See</u> also ¶63, the 6th Wang Decl.

the direct result of Defendants and Collins' diabolical scheme, the R&R's identified all the wrong issues regarding Plaintiff's claims of misappropriation trade secrets and breach of contract, mistook Plaintiff's claims as that Defendants phony "product" ("Defendants' sequence") copyright-infringed ACE sequences. Then in R&R's and the Mem Ord, MJ Pitman and the Court impermissibly donned the hats of issue-resolver and even advocates for the MSJ movant Defendants, and adopted their arguments wholesale, (*e.g.* "only limited breach for research purpose," ignoring the non-movant Plaintiff's undisputed conclusive factual evidence of misappropriation)[18] and even ignoring the controlling authorities acknowledged by the 2009 R&R, (e.g. after prevailing breach on nominal damage, the court must allow plaintiff for discovery and trial to prove its damage). Miraculously, even the Defendants' theft of ACE concluded by undisputed physical evidence disappeared in R&R's and Mem Ord as a material issue for either claims of misappropriation or breach of contract.[19]  These decisions are not just contrary to the controlling laws and FRCP56, but also to the Seventh Amendment, Constitution of the United States,[20] Right to a Trial by Jury in Civil Cases, a part of the Bill of Rights.

There could be no dispute that Defendants' purported "Plaintiff's claims" would imply "*Plaintiff* stole *Defendants*' code," but this posed no problem for the resourceful creator of the purported "Plaintiff's claims." To cover up the absurdity of their Mischaracterization,[21] before other courts including potentially appellate courts, Defendants simply switched their purported "Plaintiff's claims" to "Defendants stole Plaintiff's *code*."  ACE sequences are not code and there is no basis for the new variant of their Mischaracterization, but Defendants had the audacity

---

[18] See Fact II-IV, 59(e) Mot. see Fig.4-6, Ex. SSS of Walker Decl, ECF.459 (Ex. K of Toren Decl). ¶16, the 4th Fan Decl. As objective descriptions of the records, they are admissible pursuant to MJ Pitman's Order of June 5, 2014, ECF. 256

[19] R&R's and Mem Ord totally ignored the undisputed conclusive evidence of Defendants' theft of ACE. Nov. 4 Ord mistakenly held Defendants' theft of ACE sequences is beyond SOL. See Pl's 59(e) Not at 17.

[20] The Preservation Clause ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved") sets out the types of cases juries are required to decide, while the Re-examination Clause ("[N]o fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.") prevents federal judges from overturning jury verdicts on fact findings. The Court held that the claims in this case are legal claims under common law, not equitable claims. Nov. 4 Ord, Fn 2. ECF 464.

[21] And to cover up Defendants and their programmers' admission evidence, *e.g.*, that The Yield Book used exclusively by their internal users do not use Monte Carlo code but ACE data files.

to misrepresent "*AAI I*, 2010 WL 4780772, *1-2" *i.e.,* this Court's Nov. 22, 2010 Order as the source, despite that this Order never even mentioned the word "code." To the contrary, the Court recognized that "[p]laintiff alleges that Defendants misappropriated number sequences developed by Plaintiff's principal, Dr. Xiaolu Wang (the 'ACE Sequences'), during Defendants' testing of those sequences." ECF 461, at 2. Defendants also confused "sequences" to "code" everywhere else including their Mischaracterization of  Plaintiff's "indirect use" claim, to cover up their misrepresentation was intended for ACE Verbatim Use Claim. This appears to be a pattern. Defendants also deliberately changed other "May 31, 2017" to "May 30, 2017," with their altercation of evidence in their productions, *supra*.

Plaintiff demanded Defense counsel to correct their misrepresentations as required by the Rules, in the records in the case AAI-II before Judge Gardephe.[22] Defendants refused, but doubled-down and misrepresented that "ACE sequences are software code," in AAI-II, to further confuse the data files with code files,[23] to confuse sequences with code.[24]  Defendants indicated that "ACE is sequences of numbers." Thus Defendants knew that the new variant of their Mischaracterization is blatantly false and self-contradictory on its face.

<u>Before this Court,</u>  Plaintiff also demanded Defense counsel in their forthcoming Opposition to 59(e) Mot to correct their Mischaracterization under the Rules:[25]

Defense counsel is duty-bound to correct Defendants' Mischaracterizations for the Court in their response. A starting point is to confirm

"When the Yield book system use ACE sequences (either during ACE tests or according to Plaintiff's claim of ACE Verbatim Use) to generate interest rate paths, it reads ACE sequences as data files at run time. Plaintiff's claim of ACE Verbatim Use is not that "Defendants sequences incorporated ACE."

---

[22] See Fn. 3, Plaintiff's Reply in 59(e) Mot, ECF 477.

[23] It is common sense that code are instructions to computers. To visualize the difference between a sequence generator, e.g., Monte Carlo code, and a sequence of numbers—the product, generated by code—a generator, see ¶26, Fn.15, the Sixth Declaration of Dr. Xiaolu Wang, of November 12, 2018 ("6th Wang Decl" ECF. 373). For a sample of Monte Carlo sequence look like, see ¶79, Ex 5, *Id* . When Yield Book uses its sequence generator (Monte Carlo code), see Fig.1, Ex. SSS of Walker Decl, (Ex. K of Toren Decl). For ACE test system where the Theft Code was discovered, see Fig.2. Where the ACE Use Code was discovered, see Fig.3. *Id.* the 4th Fan Decl, ¶¶12-15, 21.

[24]  In both AAI-II, the case pending before Judge Gardephe and in this case. See Fn.3, and Fn.5,  Pl's 59(e) Reply.

[25] P. Toren's email to T. Kessler of December 14, 2021, in Ex. 1 to Plaintiff's Letter of December 16, 2021 to the Court, ECF. 473.

Defendants were compelled to abandon their *direct* Mischaracterization in their Opposition to the Rule 59(e) Motion, but still relied on their same Mischaracterization adopted by the R&R's, Mem Ord and Nov 4 Ord to continue to mislead the Court. This is no defense to their Deceit but has underscored that these tainted orders critically relied on their Mischaracterization, and must be vacated together with their abandoned Mischaracterization. The R&R's adopted Defendants' Mischaracterization in its entirety, and referred Defs False Claim ("Yield Book sequences" generated by YB Monte Carlo code incorporated ACE sequences) as "Plaintiff's claim of direct misappropriation." The 2019 R&R dismissed the conclusive direct evidence of ACE Verbatim Use Claim, and the evidence Defendants used ACE verbatim for arbitrage, e.g., `hedge.c,v`, because it did not support Defs False Claim to be *true*. Yet, Defendants misrepresented MJ Pitman's "direct misappropriation" of ACE as Plaintiff's ACE Verbatim Use claim, playing a semantic trick.[26]

Not only have Defendants spun new variants of their Mischaracterization in other courts in the name of this Court's orders, Defendants also deliberately changed "sequences" to "code" in their Opposition to Rule 59(e) Motion in this Court to create maximum confusion.[27] Defendants intentionally changed "the independent development of their sequences" in the 2019 R&R at 30, to "independent development of their code."

Accordingly, the Court should take judicial notice of these filings in the other court, to call out Defendants' misrepresentations, not only for the proceedings pending in this Court but also to correct the records for other courts including potential appellate courts. The new evidence confirmed that Defendants' fraud has been permeated not only in this case but exhibited a pattern that is wide-spread, pervasive and systematic. *First,* it is clear error of facts and law for the Court to adopt Defendants' Mischaracterization. This alone is sufficient basis to vacate the Mem Ord and Judgement under Rule 59(e). *Second,* Defendants' mischaracterization alone is sufficient

---

[26] See Fig.1, 2 of Ex. SSS of Walker Decl (Ex. K. Toren Decl).   Pl's Reply to Rule 59(e) Mot, p6.
[27] Defs' Opp to Rule 59(e) Mot at both p4 and p7. See 59(e) Mot Reply, fn.3. ECF 477.

basis to vacate Mem Ord and Judgement under Rule 60(b)(3). Defendants defrauded this Court and procured the tainted rulings and orders.

### C.    Collins and Defendants Colluded to Silence Plaintiff's Witness, and to Persecute Plaintiff with the Orders of March 26, 2014 Which They Procured in Collusion to Turn Defendants' Thievery into Court Endorsed Robbery

Collins colluded with Defendants and embraced their 3-Prong Scheme, to support Defendants' MSJ, and to exclude the 4th Fan Decl, to undo all of Plaintiff's experts' discovery, to block all sanctions against Defendants' spoliation, to procure the Orders of March 26, 2014 from which the fee orders flow, and then to use it to further persecute Plaintiff, and to coerce Plaintiff and new counsel to "walk away" from the case, and to turn Defendants thievery into robbery.[28]

In October 2019, Defendants misdirected MJ Cave not to investigate the undisputed evidence of Defendants' and Collins' collusion and conspiracy, but to persecute the victim of their collusion, Plaintiff for the fee sanction procured by Defendants and Collins' collusion.[29] MJ Cave adopted Defendants misrepresentation of that the July 18, 2013 Call was the "only Collusion evidence" presented in Dr. Wang's Letters of Jan 4, 2017, and May 31, 2017  to MJ Pitman, and that MJ Pitman's Order of May 31, 2017 considered and rejected "the sole evidence." Cite: Pl's 54(b) Obj, and Letter to J Swain.

Collins' collusion was instrumental in every aspect of Defendants' 3 Prong Scheme. Unfortunately, none of the rulings and decisions addressed or ever considered any of the evidence. During the May 28, 2019 Hearing, MJ Pitman indicated that the 6th and 7th Wang Declarations were too voluminous, and he was not able to read and understand them, given the very limited time since he was about to leave office in September, 2019.[30] MJ Pitman denied the

---

[28] See Wang's letter to MJ Pitman of May 31, 2017, ¶¶8-12, pp 6-7, Ex. D, Toren Decl;  Wang letter to MJ Pitman of June 7, 2017, of 2017-6-2, and of 2016-11-30, 2017-1-4; cites of Collins' emails to Dr. Wang and letters to MJ Pitman of 2017-6-1 & 6-5; 2016-12-1, 2016-12-12 and 2017-1-5; Moore's letters to MJ Pitman of 2016-12-6, 2016-12-14 and 2017-1-10. Ex. H, Toren Decl.

[29] See Pl's 54(b) Motion and the Objection, ECF Nos. 423 and 442.

[30] May 28, 2019 Hr Tr. 52:7-25 "the Court: the Seventh [Wang] Declaration is approximately 20 pages single spaced…The Sixth Wang Declaration is I think even longer if I recall correctly… And it's single spaced. The notion that the Court should go through that…. There are so many hours in a day and so many days in a week."

13

request to consider the 3 Prong Scheme and collusion in Plaintiff's Rule 56(h) Mot on the three bases: (1) the Court's Feb 8, 2013 Order (the embodiment of the 3 Prong Scheme and collusion) prevented his consideration of Defendants' misconduct (the 3-Prong Scheme and collusion); (2) his 2019 R&R (based on 3-Prong Scheme and collusion) decided that Defendants are entitled to prevail on the merits; and (3) MJ Pitman did not consider the evidence of collusion or Defendants' bad faith because he deemed there was no connection between the evidence and Defendants submission of misleading declarations in support of MSJ in bad faith (the 3rd Prong). MJ Pitman ignored all of the evidence supporting the Rule 56(h) Mot, including the facts that both Collins' MSJ "Opp" and Defendants submission of the misleading declarations in bad faith (the 3rd Prong) served Defendants' one common improper purpose: to support Defendants Mischaracterization (the 1st Prong), which misled his decision (2) of the 2019 R&R.

In fact, Collins full embracement of the 1st Prong, Defs False Claim, was cited by the 2019 R&R as the basis for granting Defs MSJ;[31] Collins' collusion with Defendants to withdraw 37(b) Motion and Plaintiff's Opposition to Defendants 37(c) Motion, to procure March 26, 2014 Order which (a) led Mem Ord to mistakenly state that "Plaintiff' experts did not submit rebuttal reports or testimony." and (b) Collins and Defendants colluded to relied on the fee sanction to coerce Plaintiff to dismiss the case, and turn Defendants' theft of Plaintiff trade secret into a court-sanctioned robbery.

Apparently after Collins has withdrawn from the case, Defendants and Defense counsel still kept contacts with Collins, to apprise him about the progress of the case, e.g., the seeking of sanction fees from Plaintiff and the deadlines Defendants obtained from the Court. Defendants and Defense counsel never asked Collins/ Collins' firm to pay the attorneys' fees, and opposed Plaintiff's requests for Collins to produce his communications with Defendants and Defense counsel.  Continuing to this day, Collins and Defendants still colluded to persecute Plaintiff, use the fee sanction to coerce Plaintiff to walk away, and to silence Plaintiff's witness.

---

[31] See Rule 59(e) Mot at 2-4;

On December 14, 2021, Defendants filed two letter requests in connection with Plaintiff's 59(e) Mot. ECF Nos. 468, 469. One requested yet another stay of the Courts' order to submit fee application; the other rushed the Court to set a hearing for the fee application, under ECF 389. Plaintiff opposed both requests, but Defendants reported to the Court that "Plaintiff took no positions," and the Court granted within hours, ECF 470.  Plaintiff wants Defendants to submit their fee application, and provide the figures of their fees from the start of litigation in a declaration. It is undisputed that Defendants have spoliated the sequence records and produced massively fabricated sequence development files in 2011.

First, most of fees Defendants' spent were to resist the production of obviously relevant evidence, e.g., the sequences used by Yield Book and the sequences records. Defendants have eventually lost on both from Plaintiff's motions to compel. By law, not only Defendants may not seek reimbursement from Plaintiff, but at the minimum, Defendants must reimburse Plaintiff for its cost and fees to compel their production.[32] This demonstrated that  Mem Ord and Nov Ord were clearly erroneous, contrary to law.

Second, Defendants productions of the phony Radak sequences, and their spoliated sequence records explained perfectly that why Defendants have been spent many millions in 6 years to fight teeth-and-nail against their productions. Defendants' spoliation may be even worse offense than their misappropriation. Fact III-IV of 59(e) Mot.  No one would believe that Defendants would have spent many millions to resist their production, which supposedly would have supported the independent development of "Teytel sequences," unless the sequence records demonstrated their misappropriation or have been spoliated.  If it were indeed the case as

---

[32] See Pl's Show Cause Letter of Nov. 22, 2021, p. 9-10, ECF 462. This Letter is timely, in compliance with L.R.6.3, FRCP54(b), 59(e) and the Show Cause Order. See Fn. 2 of Rule 59(e) Mot. Regardless, because Defendants failed to carry its initial burden to show absence of a genuine issue of a material fact or the undisputed facts or failed to show that the movant is entitled to judgment as a matter of law-------both were demonstrated by the Letter (and 59(e) Mot.) beyond any doubt, the MSJ must be denied even if the nonmovant has defaulted in the opposition or the objection, much less filed an allegedly untimely objection. See the controlling CA2 authorities, Fn.20, Rule 59(e) Mot. Defendants' Annex listed scores of genuine issues that Defendants have never disputed, but rubber-stamped them all with "untimely," as many as 8 times. Any one of the issues demonstrated that Defendants evaded its burden through fraud. See Annex of Pl's Reply to Rule 59(e) Mot. ECF 477.

Defendants portrayed, Defendants would have been most foolish litigant, and Cleary Gotlieb would have committed malpractice to their client CGMI, which both Cleary and CGMI would have rightfully disavowed.[33]   Defendants CGMI is one of the most sophisticated litigants. Therefore, no one would believe that the sequences records withheld by Defendants for many years at the cost of so many millions of fees would have somehow demonstrated "independent development," or otherwise should have helped Defendants. This is one more reason that Mem Ord and Nov Ord are clearly erroneous, contrary to not just to law and also contrary to a reasonable jury's common sense.

It has turned out that Defendants have wholesale spoliated the sequences records, and have massively fabricated the produced development files. They further supported the Court's Nov. 22, 2010 Order which correctly held "the Teytel notebook and the expert evidence proffered by Plaintiff in this connection, which is described at some length in section III.C.2.b. of the Report, would be sufficient to support a reasonable jury's determination in Plaintiff's favor on this aspect of the breach of contract claim." Defendants' massive spoliation of evidence could not possibly the most compelling reason which is required for the Court to overturn its own correct 2010 Order.

In connection of its order of December 5, 2019 (p11, ECF 389) MJ Cave took judicial notice of the website of Defense counsel, Cleary Gottlieb, with the titles:

> Litigation and Arbitration
> Recognized as one of the top litigation and arbitration groups in the world, Cleary Gottlieb has helped governments, corporations, financial  institutions and individuals in cases that have dominated world business  and legal news.

So the Order held "[C]leary is a well-regarded firm known for its expertise in commercial litigation." The disclosure of the website is "Attorney Advertising, Cleary Gottlieb Steen & Hamilton LLP."  MJ Cave considered the ad to be true, and allowed $825/hour for Moore, and

---

[33] From Cleary' ads cited by MJ Cave's order of Dec. 5, 2019, ECF 389, "Our lawyers are committed to providing clients with creative and result-oriented litigation and arbitration counsel. This ethos permeates everything we do in the pursuit of innovative, sustainable results."  See other purported accolades of Cleary, ECF 478.

$725/hour for Park for fees. Cleary's ad should not be taken as true. Several of Cleary's lawyers, including a managing partner in its Executive Committee, have been sanctioned for *one failed* attempt to obstruct the deposition of a witness.[34]

Moreover, in granting Defendants' fee application, MJ Cave stated "[a]nd while I too have not had a chance to check every quote that [Defense counsel] cite, I have no reason to believe that their citations to Judge Pitman's orders and Judge Swain's orders are not correct." As the records indicated I(A)(B) *supra*, Defense counsel's briefs were full of misrepresentations and mischaracterizations of the quotes of both MJ Pitman and Judge Swain.

In reaching Mem Ord and Nov.4 Ord, the Court has overlooked the entire undisputed records evidence that Defense counsel, including Park and Moore, relied on Defendants' 3 Prong Scheme, made as many as 14 misrepresentations that the 3 code files of Monte Carlo code concocted by Radak is the same as the 1000+ code files of uncompilable RCS code withheld by Defendants, in the Court Hearing, and procured the Orders of September 5, 2012, and then February 8, 2013.  Defendants are arguing that the sanction fees should be billed solely to Plaintiff, the victim of their misrepresentations, and the conspiracy, and opposed to imposing fees to their co-conspirator, Collins who procured and see sanction with Defendants.

As the Court recognized, this case is a small business vs "the top litigation and arbitration groups in the world" representing one of the biggest "financial  institutions that have dominated world business  and legal news." A classic example of David vs Goliath. Yet, the Court only listened to the BIG law firm and BIG corporation---the conspirators, not listened to their victim, not even its claims. As a result, the Court also fell a victim to their conspiracy. Plaintiff submits that in administration of justice in this case, more relevant than Cleary's advertisement is the Due Process Clause and the Equal Protection Clause in the Fourteenth Amendment to the United States Constitution. The forgoing Court rulings based on big law firm Cleary's ads and purported

---

[34] *Cleary Gottlieb Steen & Hamilton LLP v. Kensington Intern. Ltd.,* 284 Fed.Appx. 826 (CA2, 2008). See Pl's Rule 54(b) Motion of Jan. 17, 2020, ECF 423, at p24,

"reputation," favoring BIG law firm and BIG bank against small businesses and small firms disregarding truths, are contrary to the principal of Equal Justice Under Law, engraved above the front entrance of the United States Supreme Court building.[35]

## II. THE COURT SHOULD TAKE JUDICIAL NOTICE OF FACTS THAT ARE NOT SUBJECT TO REASONABLE DISPUTE WHERE THEIR ACCURACY CAN BE DETERMINED BY RELIABLE SOURCES

Pursuant to Rule 201(b)(2) and 201(c)(1) of the Federal Rules of Evidence, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it…can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Rule 201(c)(2) mandates that, "the court must take judicial notice if a party requests it and the court is supplied with the necessary information." See *Christa McAuliffe Intermediate School PTO, Inc. v. de Blasio*, 364 F.Supp.3d 253 (2019).

Rule 201 "governs judicial notice of an adjudicative fact only, not a legislative fact." *Id.* at 201(a). Adjudicative facts are defined in the Notes of Advisory Committee for Rule 201:

> "What, then, are 'adjudicative' facts? Davis refers to them as those 'which relate to the parties,' or more fully: 'When a court or an agency finds facts concerning the immediate parties—who did what, where, when, how, and with what motive or intent—the court or agency is performing an adjudicative function, and the facts are conveniently called adjudicative facts. * * *…They relate to the parties, their activities,...' 2 Administrative Law Treatise 353."

Federal Rule of Evidence 201(d) sets forth: "Timing. The court may take judicial notice at any stage of the proceeding." See *U.S. v. Akinrosotu*, 637 F.3d 165 (2d Cir., 2011) (taking judicial notice *sua sponte*.)

## III. COURT RECORDS ARE SUBJECT TO JUDICIAL NOTICE

The Courts should take judicial notice of these documents that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." See *Finn v.*

---

[35] "The Constitution created a government dedicated to equal justice under law. The Fourteenth Amendment embodied and emphasized that ideal." Cooper v. Aaron. 358 U.S. 1 (1958).

*Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (quoting Fed. R. Evid. 201(b)(2)). Pleadings and court filings are the type of documents that are not subject to reasonable dispute and are capable of accurate and ready determination under Rule 201(b)(2) of the Federal Rules of Evidence. This is true for court filings in other courts, even in foreign courts, certainly for court submissions and filings in this Court and another court in SDNY. Accordingly, it is proper for courts to take judicial notice of the existence of such documents. See *Rates Tech. Inc. v. Speakeasy, Inc.,* 685 F.3d 163, 167 (2d Cir. 2012) (Courts may "take judicial notice of a document filed in another court ... to establish the fact of such litigation and related filings." *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 157 (2d Cir.2006)).  *CBF Industria de Gusa S/A v. AMCI Holdings, Inc*., 316 F.Supp.3d 635, 640 (SDNY, 2018). Same. Also see *Roe v. Johnson*, 334 F. Supp. 2d 415, 419-20 (S.D.N.Y. 2004) (recognizing that a court, pursuant to Rule 201(b), may take notice of the public record, including complaints and court filings); see also *A.I. Trade Finance, Inc. v. Centro Internationale Handelsbank AG*, 926 F. Supp. 378, 387 (S.D.N.Y. 1996) (in taking judicial notice of a judgment in Vienna, Austria, the court pointed out that "[t]he Second Circuit has noted that Rule 201 permits a court to take judicial notice of a foreign judgment").

Based on the foregoing, Plaintiff requests the Court to take judicial notice of the existence of related parties' certain statements and timelines in the specific court filings identified in Annex, publically available in the case 20-cv-07034-PGG, 20 Civ.7034-PGG, Advanced Analytics, Inc vs Citigroup, Inc. and London Stock Exchange Group Plc., FTSE International, Ltd, and Frank Russell Company ("AAI-II") in Southern District of New York. There is no dispute regarding the existence of these statements and these documents. See 21B Wright & Graham, Federal Practice and Procedure: Evidence 2d § 5106.4 (noting that, in contrast to facts discussed within court documents, it is proper to take judicial notice of the fact that the court documents exist).

### IV.   THE UNDISPUTED FACTS AND SOURCE DOCUMENTS THAT THE COURT SHOULD TAKE JUDICIAL NOTICE

Based on the foregoing, Plaintiff respectfully requests that the Court, pursuant to Federal Rule of Evidence 201(c)(2) take judicial notice of the facts listed below, which are "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," which are court filings and submissions by the Parties, as listed in the accompany timeline.[36] Those source documents that are not yet available in public ECF in electronic form are attached as Exhibits A-K to the Declaration of Peter J. Toren, filed concurrently in support hereof this Request, pursuant to Chief Judge Laura T Swain's Individual Rules of Practices A(5) These facts can and should be judicially noticed because they are "not subject to reasonable dispute," as they are party-admissions, come directly from Defendants' filings, and may greatly facilitate the adjudication of the pending proceedings by this Court and appellate courts. From these documents, the undisputed facts which Plaintiffs are seeking to be judicially noticed, are easily verifiable and crystal clear. Briefly, these significant adjudicative facts include:

(1) Defendants admitted directly in their Court filings between October 2019 and October 2020 made by their lead counsel, Ms. Jennifer Kennedy Park, to the following collusion evidence: that in a call of June 18, 2013 to Magistrate Judge Henry B. Pitman, jointly with Defense Counsel but behind Plaintiff's back, Collins "withdrew" Plaintiff's FRCP 37(b) Letter Motion to sanction Defendants for their spoliation and violations of the Court discovery orders, which Plaintiff filed the night before through its co-counsel; Plaintiff's principal, Dr. Xiaolu Wang's letters and filings to the Court: his letters to Mj Pitman in 2017, and his 4th declaration in 2015,  and 6th Decl of Dec. 2018, 7th Decl of 2019 were not aware that Collin's withdrawal in the Call.

---

[36] In accordance with the Notes of Advisory Committee for Rule 201 cited in the prior page, following each of the undisputed facts and source documents concerning the immediate parties, "with what motive or intent" may also be found in the last column in the list, together with the affected rulings by a magistrate judge to elucidate the significance of the facts, for the Court's convenience. Defendants may present their motives if different.

(2) Defendants knew that Dr. Xiaolu Wang's letter of May 31, 2017 to MJ  Pitman was filed in the evening *after* MJ Pitman's order of May 31, 2017 had been filed in the afternoon. Together with Collins, on June 1, 2017, Defendants and Defense counsel including Moore and Park, demanded that Dr. Wang withdraw his Letter filed the previous night, or else Defendants would seek to sanctions Dr. Wang for purported violation of May 31, 2017 Order that directing him make submission only through new counsel;

(3) Neither Dr. Wang's letters of January 4, 2017 and May 31, 2017 referred any call. But Defendants repeatedly claimed to MJ Cave, *e.g.,* in their Opposition to Plaintiff's Motion to Reconsider of February 7, 2020 before MJ Cave, that "[i]n both letters, Plaintiff's sole 'evidence' of the alleged 'collusion' was [the call (1) above]" and which MJ Pitman had considered and rejected in his May 31, 2017 Order. MJ Cave's Opinion and Order dated June 9, 2020 relied on Defendants' claims, so did her other opinions and orders, e.g., denials of Plaintiff's Motion to Defer, Motion to Reconsider, and refusal to consider Plaintiff's allegation and evidence of collusion and her granting Defendants' November 11, 2019 Motion to Strike and for Injunction, and for fee application.

(4) Plaintiff pointed out, e.g., in its Objection of MJ Cave's Opinion and Order dated June 9, 2020, that "when MJ Pitman issued his May 31, 2017 Order, he had not even received Dr. Wang's May 31, 2017 letter." "The records demonstrated that Dr. Wang did not know about the call and did not mention the call in the two letters, and that MJ Pitman had not received the collusion evidence when he issued May 31, 2017 Order." ECF. 442. Defendants' Opposition to Plaintiff's objection to MJ Cave's orders obfuscated that "[Dr. Wang's May 31, 2017 letter was not received until after Magistrate Judge Pitman's order was docketed] which is far from clear." ECF 446 at 6.

(5) To make the clear fact "unclear" and to support their claims in (3), in their most recent filings in the Chambers of Judge Swain in 2021, Defendants altered the evidence submitted to Chambers on March 1, 2021, and changed the date May 31, 2017 of "Dr. Wang's May 31, 2017 Letter to Judge Pitman" to "May 30, 2017."

(6) Defendants refused Plaintiff's request to correct their altercations. Following the meet-and confer with Plaintiff regarding this Request for Judicial Notice, Defendants are running away from their claims (3), started "taking no position", but still refused to retract their claims (3) and their altercations (5), and to clarify the undisputed facts (1), (2), (3) and (4) for the Court, under the excuse of "unimportance". Their altercations (5) were not inadvertent errors but were intended to mislead the Court's rulings on the pending proceedings.

(7) Defendants and Collins joint efforts, based May 31, 2017 Order to demand Dr. Wang from making submissions and withdraw May 31, 2017 Letter filed after the MJ Order; and to enforce the fee based on March 26, 2014 Order and to dismiss Plaintiff's case.

Plaintiff also requests that the Court take judicial notice of the existence of the Timeline and the filings in the case of  20 Civ.7034-PGG ("AAI-II").

(8) Defendant Citigroup's alleged the purported "Plaintiff's claims" to be "Defendants 'stole' Plaintiff's proprietary code and used it to enhance a product called The Yield Book, either by directly incorporating the ACE Numbers into The Yield Book's code (the 'Direct Use Claim'), or indirectly by deriving new computer code for The Yield Book using the ACE Numbers (the 'Indirect Use Claim'). Fn 7 See AAI I, 2010 WL 4780772, at *1-2 (S.D.N.Y. Nov. 22, 2010)."

(9) Plaintiff's emails to Defense counsel on Dec. 14, and 15, 2021 (in Ex. A of AAI-II Defendants' Letter of 2021-12-15 to Judge Paul Gardephe), demanding Defense counsel to correct the new variant of Defendants Mischaracterizations of Plaintiff's claims and misrepresenting Judge Swain's order, e.g., calling ACE sequences as "software code." Defs refused.

(10) AAI-II Defendant double-downed on their allegation of purported "Plaintiff's claims" in this case and that the sequences are "code."

Whereas the undisputed facts and the source documents, *e.g.* (1), (3), (4), and (7) are in the public ECF records, for the Court's convenience they are only listed in the timeline in the 1st Column of Annex without attachments to provide the factual background to elucidate their key

22

significance to the pending proceedings, those not yet in public ECF records, e.g. (2), (5), (6) are attached in the source documents in Toren Declaration hereto.

### III. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant, in its entirety, the Request for Judicial Notice of Facts and Documents.

Dated: February 1, 2022

Respectfully Submitted,

Peter J. Toren
Attorneys for Plaintiff and
Counter-Claim Defendant Advanced
Analytics, Inc.

**ANNEX A**

| Timeline | Undisputed Facts Or Acts (& Source Documents) |
|---|---|
| 2016-11-30. | Through emails by Collins, Defendants asked Dr. Xiaolu Wang to "walk away" from the case, in exchange to Defendants to drop their demand for attorney fees.<br><br>(Exhibit 2 to Dr. Xiaolu Wang's Letter of November 30, 2016 to MJ Pitman, Ex.H of Toren Decl) |
| 2017-1-4 | Dr. Xiaolu Wang's Letter of January 4th, 2017 to MJ Pitman contains no word "call."  The Letter mentioned no "call" at all and nor joint call by Collins and Defendants. Instead, it states: "Defendants set up straw men and *misrepresented* Plaintiff's claims to be patently false claims (e.g., Defs' False Claim: ACE are *not* trade secret and Defendants could *not* have misappropriated ACE) that are *contrary* to Plaintiff's claims. [Collins] embraced Defendants' misrepresentations. Then Defendants argued that because it is undisputed that these purported *AAI's* claims‖ are false, so SJ should be granted. There is absolutely no evidence to support Defs' False Claim. So SJ Opp. Memo of May 28 resorted to fabrication of Prof. Fan's testimony to explain [Defs' False Claim]." *Id.* at 6.<br><br>"Moore Letters of Dec. 6 at 2 and Dec. 12 misrepresented again *Defs' False Claim* as —*AAI's* claim...*Then* Collins' Dec. 12 Letter doubled down to misrepresent Defs' False Claim to the Court to be Plaintiff's claim and to be *true... [f]or three (3) times." Id.* at 6.   (Ex. 13, 14, 15, and 16, Sixth Wang Decl. ECF.443; Collins' Opp to MSJ of May 28, 2014; Second Declaration of Dr. Jianqing Fan of April 24, 2008, Ex. E of Kimberly Walker Decl, ECF.313 and ECF.459. Dr. Xiaolu Wang's Letter of January 4, 2017 to MJ Pitman in Ex.H of Toren Decl) |
| 2017-5-31 Order docketed during business hours. | MJ Pitman responded that "plaintiff's principal has claimed, without citing any evidence, that plaintiff's current counsel colluded with defendants' counsel to file deficient papers in opposition to defendants' motion for summary judgment." (MJ Pitman's Order of 2017-5-31 at 2, ECF. 275) |
| 2017-5-31 evening | (1) In the evening of May 31, 2017, Dr. Wang emailed simultaneously to all counsel, in particular Defense counsel, including Jennifer Park and Christopher Moore,  and faxed to MJ Pitman's Chambers, his Letter in a pdf file named "2017-5-31 Wang 2 Judge Pitman." (Ex. 1, Sixth Wang Decl. ECF.443, also Ex.F of Toren Decl)<br><br>This 2017-5-31 Letter lists "[Collins' and Defendants'] acts ¶1-12 [that] injured the integrity of adversary process, and subverted the bedrock of our judicial system," P.2-7, *id*, but it contains no words "call" and references no joint call by Collins and Defendants. |

| | |
|---|---|
| | This <u>2017-5-31 Wang 2 Judge Pitman</u> letter was docketed with other files as ECF276 on June 1, 2017. |
| 2017-6-1 and 6-2 | (2) Early in the next morning of June 1, 2017, Collins and Defense counsel exchanged emails. In an email by associate Nathaniel E. Jedrey of Defense counsel, to Plaintiff's former counsel Collins *et al*, cc'ed to both Park and Moore, Defendants demanded that Dr. Wang withdraw his 2017-5-31 letter filed the previous night or else Defendants would seek sanctions on him for purported violation of the May 31, 2017 Order; (See <u>2017-6-1 Collins ltr to Judge Pitman</u>, Ex. E, Toren Decl. and <u>2017-6-2 Wang2Judge Pitman</u>, Ex. F, Toren Decl. both are in Defendants' 2nd Production to the Court on March 18, 2021.) (3) Then, at approximately 7 a.m. on 2017-6-1, Collins forwarded Jedrey's email to Dr. Wang and demanded him to withdraw <u>Letter of</u> 2017-5-31 Wang 2 Judge Pitman; Dr. Wang refused, and then Collins' email reported Dr. Wang's refusal back to Park, Moore and Jedrey; (<u>2017-6-2 Wang2Judge Pitman</u>, Ex. F, Toren Decl.) (4) Shortly after 10 a.m. on June 1, 2017, Collins sent his letter to MJ Pitman to report Dr. Wang's purported willful violation of the May 31, 2017 Order to MJ Pitman; (Ex. E, Ex. F, Toren Decl.*)*<br><br>(5) The next day, on June 2, 2017, Dr. Wang responded with a letter to MJ Pitman, which states "[w]ithout the benefit of [Dr. Wang's letter] of May 31, 2017, the [May 31, 2017 Order] criticized that [Dr. Wang] had not cited evidence of collusion." (Ex. F, Toren Decl.)<br><br>All the documents: Defendants and Collins' emails to Dr. Wang, Collins and Dr. Wang's letters to MJ Pitman, unequivocally confirmed that Dr. Wang' May 31, 2017 Letter was filed after MJ Pitman May 31, 2017 Order had been issued. (*Id.*) |
| 2017-6-5 | (6) Having seen no action from MJ Pitman, Collins followed up with his June 5, 2017 Letter to MJ Pitman, ("that on May 31, [Collins] sent the Court's Orders of that date to Dr. Wang within minutes of my receipt of them through the ECF system" and "re-sent it to Dr. Wang 40 minutes later in order to ensure that he received it. The next day, following receipt of Dr. Wang's communication with Chambers on the evening of May 31, I again emailed Dr. Wang, specifically addressing the subject matter of the portion of the Order at Docket 275 that pertains to pro se communications with Chambers.") (<u>Collins June 5, 2017 Letter to MJ Pitman</u>, Ex. G, Defendants' 2nd  Production to the Court, March 18, 2021, and Ex. I, Toren Decl.) |
| 2017-6-7 | (7) on June 7, 2017 Dr. Wang responded with a letter to MJ Pitman, stating "as *citizen witness* to report a crime against the Court and Judge Swain. Mr. Collins' letter of June 5, 2017 confirmed that his email (of 7 am, June 1, to my current address) attempted to silence me."<br><br>(Dr. Wang's letter of June 7, 2017 to Magistrate Pitman;<br>cc'ed to Judge Laura T. Swain, including a folder containing the following letters in separate pdf files:<br>the letter of Dr. Wang to MJ Pitman of 2017-5-31 (the file with original name "2017-5-31Wang 2 Judge Pitman.pdf"); |

| | |
|---|---|
| | the letters of Dr. Wang to MJ Pitman of 2017-6-2, and 2016-11-30, 2017-1-4; Todd Collins letters to MJ Pitman of 2017-6-1 & 6-5; 2016-12-1, 2016-12-12 and 2017-1-5; Christopher Moore letters to MJ Pitman of 2016-12-6, 2016-12-14 and 2017-1-10.  **Ex. H, Toren Decl**.) |
| From 2015-11 Through 2019-9 | Between November 2015 and September 2019, Defendants have made at least twelve (12) fee applications with MJ Pitman seeking the sanction fees provided from MJ Pitman's order of March 26, 2013, which, Plaintiff alleges, was procured by Defendants and Collins' collusion. All of the fee applications have either been disregarded or denied by MJ Pitman, including:<br><br>• 2015-11-11Christopher Moore Letter to MJ Pitman<br><br>• 2015-11-24 Christopher Moore Letter to MJ Pitman<br><br>• 2016-11-11 - Christopher Moore Letter to MJ Pitman<br><br>• 2016-12-6 - Christopher Moore to Magistrate Judge Pitman<br><br>• 2016-12-14 - Christopher Moore to Magistrate Judge Pitman<br><br>(The foregoing five (5) letters, together with Dr. Wang's oppositions, were unsealed in ECF 404, as <u>Ex. 1 to Plaintiff's Application to file Mot to Reconsider of Jan. 3, 2020, ECF 402.</u> Collins did *not* oppose Defendants' fee applications.)<br><br>• 2017-1-10 - Christopher Moore to Magistrate Judge Pitman (Ex.19. of 6th Wang Decl. Plaintiff's Mot to Defer, ECF 373)<br><br>• ECF307, Filed & Entered: 01/16/2019 Letter to MJ Pitman by Park, Jennifer<br><br>• ECF311, LETTER to MJ Pitman from Jennifer Kennedy Park dated April 17, 2019 re: Defendants' January 16, 2019 letter motion.<br><br>• Court Hearing of May 28, 2019, MJ Pitman denied Defendants' renewed attempt.<br><br>• ECF 326 8/14/2019 LETTER addressed to MJ Pitman from Jennifer Kennedy Park dated August 14, 2019<br><br>• ECF 334  8/26/2019  LETTER MOTION addressed to MJ Pitman from Jennifer Kennedy Park<br><br>• ECF 336 8/27/2019 LETTER addressed to MJ Pitman from Jennifer Kennedy Park |
| 2019-10-17 | Defendants filed a joint status report to MJ Cave, signed by their lead counsel, Jennifer Park (ECF355), where in response to <u>Plaintiff's request for the Court's leave to file Rule 37(b) spoliation motion</u>, "[s]tatement from Defendants: [Plaintiff's 37(b) letter Motion] is not pending before the Court." "[Collins |

| | |
|---|---|
| | withdrew the letter in a call with Judge Pitman in 2013." Jennifer Park participated in the call and has personal knowledge of the call. |
| 2019-11-8 | AAI filed <u>Plaintiff's Motion to Defer Fee Application</u> (until Judge Swain's ruling on the pending <u>Plaintiff's Objection to Magistrate Judge Pitman's Opinion and Order of September 4, 2019 Denying Rule 56(h) Motion,</u> and to seek the communications withheld from Plaintiff between Plaintiff's former counsel Collins and Defendants, *i.e.*, all their emails post 2012 when allegedly their collusion started.) AAI's Motion to Defer cited Defendants' admission evidence of 2019-10-17 that "[Collins] withdrew the letter in a call with Judge Pitman in 2013', Defendants wouldn't say when Collins' 'withdrew' the motion (which was the next morning of June 18, 2013)" in addition to the new evidence of collusion presented in the 6th and 7th Wang Decl supporting AAI's allegation that Collins's collusion with Defendants procured the Contempt Order.<br><br>Exhibits Wang 6th Decl, Ex.1, and Ex. 2 filed on 2019-11-11, ECF 371-373. ECF 366-367, which first were stricken by MJ Cave order of 11-12, 2019, ECF375, then unstricken and unsealed by MJ Cave's order of June 9, 2020. |
| 2019-11-11 | On 2019-11-11, Defendants filed <u>Motion to (i) Strike Plaintiff's Motion to Defer (ECF No. 366), and (ii) to require the Court's preauthorization for any future filings by Plaintiff.</u> (ECF369-370), which further admitted "[Collins] withdrew [the June 17 2013 Spoliation Motion] soon after it was filed." ("Defs' Nov 11 Mot to strike and for injunction", ECF 370). MJ Cave granted Defendants' Nov. 11 Mot in part in the Court hearing on November 12, 2019, without allowing Plaintiff to file a response. (ECF374-375). |
| 2020-1-17 | AAI file <u>Motion for Reconsideration of parts of MJ Cave's orders,</u> of November 12, 2019 (ECF374-375) and December 5, 2019 (ECF389) as amended on January 8, 2020 (ECF 409 and ECF410).<br><br>This AAI's Motion states "Defs' Nov 11 Mot has provided new evidence of Collins' collusion with Defendants. For example, on June 18, 2013, immediately after AAI filed its *Letter Motion to Sanction Defendants for Spoliation and Violation of the Court's Express Discovery Orders Pursuant to FRCP 37(b) and Inherent Power* on the night of June 17, 2013 ("Rule 37(b) Spoliation Motion"), supported by the evidence contained in the 4th Fan Decl, Collins and Defendants, intentionally concealed from Dr. Wang and without his knowledge, jointly called MJ Pitman and requested that the Court "defer" the consideration of the Rule 37(b) Spoliation Motion." (ECF. 423) |
| 2020-2-7 | In <u>Opposition to</u> <u>Plaintiff's Motion for Reconsideration of parts of MJ Cave's orders</u> (ECF 427), Defendants stated "In a January 4, 2017 letter to the Court, Plaintiff's principal, Dr. Xiaolu Wang, claimed that Plaintiff's Prior Counsel had colluded with defense counsel to thwart Plaintiff's efforts to win its case, including by 'framing' Plaintiff for contempt by filing the Fourth Fan Decl. for an improper purpose. *See* Dr. Wang's Jan. 4, 2017 Letter. Plaintiff repeated these allegations in a May 31, 2017 letter to the Court. *See* Dr. Wang's May 31, 2017 |

| | |
|---|---|
| | Letter. In both letters, Plaintiff's sole 'evidence' of the alleged 'collusion' was the uncontroversial fact that, …, Prior Counsel and Defendants' counsel jointly called Magistrate Judge Pitman to inform him that Plaintiff intended to withdraw its motion for sanctions. In granting the motion, Magistrate Judge Pitman noted that, 'based on what [he had] been able to observe, I was not aware of any evidence supporting or even suggesting that claims made by plaintiff's principal that counsel have colluded with adverse counsel. Order, May 31, 2017 (ECF No. 275 at 2)."  (Defendants' Opposition at 5, and at 10-11. ECF 427).<br><br>Defendants' claims were cited as the basis for MJ Cave's ruling of 2020-6-9: "On January 4 and May 31, 2017, Dr. Wang filed letters with the Court alleging that Collins colluded with Defendants' counsel 'to thwart [AAI's] efforts to win its case, including 'framing' [AAI] for contempt by filing the Fourth Fan Decl[aration] for an improper purpose.' (ECF No. 427 at 10). In support of the collusion theory, Dr. Wang argued that Collins 'and Defendants' counsel jointly called Magistrate Judge Pitman to inform him that [AAI] intended to withdraw' a motion for sanctions. (Id. at 11). In granting Collins' motion to withdraw, Judge Pitman noted that Dr. Wang's claim failed to cite 'any evidence, that [Collins] colluded with [D]efendants' counsel to file deficient papers in opposition to [D]efendants' motion for summary judgment.' (ECF No. 275 at 2)…and 2017 letters alleging collusion—all of which Judge Pitman had considered and rejected. (ECF No. 427 at 11)." (MJ Cave's Order of June 9, 2020 at 15, ECF438, at 15). |
| From 2017-6-1 until and before March, 2021 | Since June 1, 2017 until March, 2021, in all of Defendants' pleadings and submissions, Defendants unequivocally referred to Dr. Wang's letter they received in the evening of May 31, 2017 entitled "2017-5-31 Wang 2 Judge Pitman.pdf" *correctly* as "Dr. Wang's May 31, 2017 letter," and admitted that this Letter was "submitted on May 31." (See, e.g. "Dr. Wang's January 4 and May 31 letters," Defendants' letter of August 7, 2020 to J. Swain at 2, ECF. 452; and "Dr. Wang also submitted letters on January 4, 2017 (ECF No. 443-16) and May 31, 2017 (ECF No. 276)," Defendants' Opposition to Objection at 5, July 23, 2020, ECF 448.) |
| 2021-1-26 | Chambers of Judge Laura T. Swain email to the counsel of both parties, and directed that Defense counsel send all the documents relevant to Plaintiff's three pending Objections and three Motions in electronic forms to Chambers, (Ex. A of Peter J Toren's Decl.) |
| 2021-3-1 and 2021-3-18. | In both Defendants' productions of March 1, 2021 and March 18, 2021 to Chambers, numerous Plaintiff's important relevant papers were missing, including <u>Plaintiff's Memorandum of 2008-4-24 in Opposition to Defendants MSJ</u>, (Ex. B of Toren Decl.), and <u>Plaintiff's 56.1 Response of 2008-4-24 to Defendants' Alleged Undisputed Fact Under Local Rule 56.1.</u> (Ex. C of Toren Decl.) |
| 2021-3-1 | In Defendants' March 1, 2021 production to the Court, in the file lists and file names, the date of Dr. Wang's May 31, 2017 Letter has been all altered to "2017- |

| | |
|---|---|
| | 5-30," and the date of the Docket entry ECF 276 has been changed from 2017-6-1 to "2017-5-30," by Defendants.<br><br>Defendants made the following alterations on the case files contrary to the undisputed facts given by the records 1-3 above:<br>In so-called "Documents requested by Plaintiff", zip file 1c,  Defendants altered the date of "2017-5-31" in "2017-5-31 Wang to Judge Pitman Letter" to "2017-5-30" in at least three places:<br>    1.  The name of the 2017-5-31 Wang to MJ Pitman Letter; See file list; Ex. C (Source: Ex. C , File List produced by Defendants; Toren Decl.)<br>    2.  The date of the entry ECF276 in the summary "00.index". Ex.D. (Source: Ex. D; Toren Decl.)<br>    3.  The entry of document the 2017-5-31 Wang to MJ Pitman Letter; Ex.D.<br>    4.  The date of ECF276 in connection to <u>2017-5-31 Wang to Judge Pitman Letter</u> was changed from 2017-6-1 to 2017-5-30<br>(Source:<br>The Summary of Defendants 1st Production to  Chambers of Judge Laura T. Swain.<br>ExI-2021-3-1 DefendantsProducitonIndex03, Ex. I, and<br>ExJ-2021-3-1 DefendantsProducitonFileNames, Ex.J, Toren Decl.) |
| | |
| 2020-11-25 | Plaintiff Advanced Analytics Inc. Amended Complaint against Defendants Citigroup and London Stock Exchange Group plc., FTSE International, Ltd, and Frank Russell Company alleged *inter alia*:<br><br>¶72 After they backed out the ACE sequences from the secretly stolen ACE interest rate paths on June 3, 1998, Defendants immediately started frantic efforts to install the large suites of code to use ACE ("ACE Use Code") for the exclusive use of the stolen ACE by their internal users, especially all of their traders for trading and arbitrage ("**ACE Verbatim Use Claim or ACE Direct Use Claim**"). For their traders, the ACE Use Code surreptitiously dumped the interest rate paths generated by Defendants' Production Sequence of 200 paths and switched to the interest rate paths generated by ACE, playing daily ball-cup trick undercover. Similar to the ACE test system, the Offline ACE Use Code read in ACE sequences, generated ACE interest rate paths, which Defendants appropriately named as "Xfiles" (a.k.a, "Xiaolu's Files" which Defendants referred to ACE during ACE testing), and saved them in a hidden directory, using code files appropriately named as "pathogen_cover.c" and "Xfiles.c". Then Online ACE Use Code used exclusively by Defendants traders surreptitiously read in the ACE interest rate paths retrieved from the hidden directory under cover, again using "pathogen_cover.c" and "Xfiles.c", for accurate pricing, trading and risk-free arbitrage operation in global fixed income markets. |

| | |
|---|---|
| | ¶115 (**ACE Derivative Use Claim**)<br><br>¶164 *First Prong* (Mischaracterizations of Plaintiff's Claims as Defendants' False Claims). Defendants' willfully mischaracterized *Plaintiff's* misappropriation claim that The Yield Book systems used verbatim stolen ACE sequences6, absurdly as "The Yield Book code files contain ACE data files," and alternatively "the Yield Book Monte Carlo code generated ACE sequences" ("*Defendants* False Claim"), which obviously implies that "ACE is *not* Plaintiff's trade secret" and that "*Plaintiff* stole ACE from *Defendants*." Defendants repeatedly misrepresented that all the evidence pertinent to Plaintiff's claims, such as the sequences used by TYB and TYB production code using sequences, "are irrelevant (to Defendants' False Claims)", to stonewall discovery. Even after the Court has granted Plaintiff's motions to compel them, Defendants withheld the sequences used by TYB and TYB production code in direct violation of five Court's orders.<br>(20 Civ.7034-PGG, ECF. No. 21) |
| 2021-1-4 | Defendant Citigroup's Show Cause Letter of 2021-1-4 to Judge Paul Gardephe, stated at p2:<br><br>Plaintiff first asserted claims against Citi-affiliate, Citigroup Global Markets Inc. and then-Citi-affiliate, the Yield Book Inc.[5] (together, the "<u>AAI I Defendants</u>") in AAI I, nearly sixteen years ago.[6] In that case, Plaintiff alleges – and the AAI Defendants emphatically deny – that the AAI I Defendants "stole" Plaintiff's proprietary code and used it to enhance a product called The Yield Book, either by directly incorporating the ACE Numbers into The Yield Book's code (the "<u>Direct Use Claim</u>"), or indirectly by deriving new computer code for The Yield Book using the ACE Numbers (the "<u>Indirect Use Claim</u>"). Fn 7 *See AAI I*, 2010 WL 4780772, at *1-2 (S.D.N.Y. Nov. 22, 2010).<br>(20-cv-07034-PGG, ECF. No. 30) |
| 2021-1-7 | Plaintiff's response to Citigroup's Show Cause Letter No. 30, 2021, at 1-2, stated: "Defendants have also mischaracterized Plaintiff's ACE Verbatim Use Claim as that the 'ACE numbers were incorporated or inserted into the Yield Book software product.' See e.g., Defs' Nov 11 Mot at 1. Fn 8 This is another of Defendants' false claims, and which can never be true because their code files never contain data files. Defendants have repeatedly conflated source code files with software systems. In order to resist discovery. and to support their two motions for summary judgement, Defendants submitted five false Polish declarations. Defendants misrepresented Polish's meaningless 'findings' that he could not 'find' the 'ACE numbers' in 'TYB production code files' to mean that 'TYB does not use ACE.' However, the truth is that ACE sequences are never 'inserted or incorporated' into TYB code, but that TYB systems read and use ACE sequences when TYB systems are run." (20-cv-07034-PGG, ECF. No.32) |

| | |
|---|---|
| 2021-1-12 | Plaintiff's response to Judge Gardephe's Show Cause Order (20-cv-07034-PGG ECF No. 33) |
| 2021-10-7 | In Parties' Joint Report of 2021-10-7 to Judge Paul Gardephe, p2, <u>Defendants AAI-II (Citigroup Inc., London Stock Exchange Group plc., FTSE International, Ltd, and Frank Russell Company)'s Position</u> stated "Plaintiff's claims in Advanced Analytics I" are<br>"Citi (or its affiliates) misappropriated Plaintiff's proprietary software code (the 'ACE Numbers' or the 'ACE Sequences') and either incorporated the ACE Sequences into Citi's products ('Direct Use') or used them to develop new computer code for Citi's use. *See* Letter, 20-cv-7034, ECF No. 30 (Jan. 4, 2021) at 4."<br><br>(20-cv-07034-PGG ECF No. 42) |
| 2021-10-7 | Plaintiff's  Statement in Parties Joint Report to Judge Paul Gardephe, pp4-7,<br><br>The purported "Plaintiff's claims" as misrepresented by both Defendants' Motions for Summary Judgement in 2008 and in 2013 ("Defendants' MSJ's") are Defendants' False Claims. See ¶164, Am. Compl. They are unrelated to Plaintiff's Claims in the Am. Compl. in Advanced<br>Analytics II. Defendants' False Claims would imply that Plaintiff had stolen ACE sequences from Defendants. See ¶164, *Id.*.<br>(20-cv-07034-PGG ECF No. 42) |
| 2021-12-14 | Ex. A to Defendants AAI-II's Letter to Judge Gardephe of 2021-12-15, Peter J Toren's emails to Thomas Kessler on Dec. 14, 2021:<br><br>As Plaintiff repeatedly pointed out, "[Defendants'] Letter, 20-cv-7034, ECF No. 38 (Oct. 7, 2021) at 2-3 and Letter, 20-cv-7034, ECF No. 30 (Jan. 4, 2021) at 4" are Defendants' mischaracterizations of purported "factual and legal claims made by Plaintiff," in their efforts to cover up Defendants' Mischaracterization of Plaintiff's claims as Defendants' False Claims. See 20-cv-7034, ECF No. 38 (Oct. 7, 2021) at 5-6, and Plaintiff's Letter, 20-cv-7034, ECF No. 31 (Jan. 7, 2021) at 1- 2.<br>Defense counsel is duty-bound to correct Defendants' mischaracterizations in their two Letters sent to<br>Judge Gardephe. Here are some points to consider:<br><br>The Letters made all the claims "indistinguishable," e.g., made code files and data files "indistinguishable." Defendants improperly referred to ACE sequences (numerical formula coefficients contained in data files) as "computer software code." When the Yield book system used ACE sequences (either during ACE tests or<br>according to Plaintiff's claim of ACE Verbatim Use) to generate interest rate paths, it read ACE sequences as data files at run time. Plaintiff's claim of ACE Verbatim Use is not that "Defendants sequences incorporated ACE." See ¶¶72, 164, Amended Complaint, ECF 21.<br>(Ex.A to 20 Civ.7034-PGG, ECF. No. 44) |

| 2021-12-15 | Ex. A to Defendants' Letter of 2021-12-15 to Judge Paul Gardephe, Peter J Toren's emails to Thomas Kessler on Dec. 15, 2021: <br><br> [T]here are no such "Plaintiff's allegations" in AAI I, 2010 WL 4780772, at *1-2 or anywhere else. As Defendants well know (see below), ACE sequences are not "Plaintiff's proprietary code,"…Defense counsel has an obligation to correct the mischaracterization in their submissions under the Rules,… <br> (Ex. A to 20 Civ.7034-PGG, ECF. No. 44) |
| --- | --- |