1050 George St. 5M, New Brunswick, NJ 08901

June 7, 2017
Xiaolu Wang, PhD
(848)702-1435

**By Facsimile to (212)805-6111**

Hon. Henry **PITMAN**
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 750
New York, New York 10007-1312
(212) 805-6105

Re: *Advanced Analytics, Inc. v. Citigroup Global Capital Market, Inc. et al.*
*04 Civ. 3531 (LTS)(HBP)*

Dear Magistrate Judge Pitman,

My letters to the Court are in my *individual* capacity as *citizen witness* to report a crime against the Court and Judge Swain. Mr. Collins' letter of June 5, 2017 confirmed that his email (of 7 am, June 1, to my current address) attempted to silence me and mischaracterized my letters as "pro se communications". On May 31, 2017 he communicated *not with* me, but *to* an old email address (suspended due to reports of failed hacking attempts).

I regret that Mr. Collins has led the Court into such nuisance, in contrast to his deafeningly silence on his embracing Defendants' deceits (misrepresentation of all AAI's claims as Defendants' false claims), *see* ¶1- ¶6, Wang Letter to Hon. Pitman of May 31, 2017. Defendants' deceits are all covered up by Mr. Collins, as reflected by the specific allegations of misappropriation in Report and Recommendation of August 5, 2009, cited as recently as in the Order of 2017-5-31, 1st *para*.

Respectfully submitted,

*[signature]*

_____
Xiaolu Wang, PhD

cc hand delivered to: Hon. Laura T Swain, with the letter of Xiaolu Wang to Hon. Pitman of 2017-5-31 (with the letters of all counsel and Xiaolu Wang to Hon. Pitman from 2016-11-30 to 2016-1-10, for the records) and of 2017-6-2; and Todd Collins' letters to Hon. Pitman of 2017-6-1 & 6-5.

cc via email to: Christopher Moore
Jennifer Kennedy Park
Russell Munves
Todd Collins



# ADVANCED ANALYTICS, INC.

1050 George St. Suite 5M,  New Brunswick  NJ 08901  Phone (732) 729-0696 Fax (732) 729-0679

May 30, 2017
Xiaolu Wang, PhD

**By Facsimile to (212)805-6111**

Hon. Henry **PITMAN**
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 750
New York, New York 10007-1312
(212) 805-6105

> Re: _Advanced Analytics, Inc. v. Citigroup Global Capital Market, Inc. et al._
> _04 Civ. 3531 (LTS)(HBP)_

Dear Judge Pitman,

Respectfully, I submit that[1] the Court could be aided from the exposure of the _new_ misrepresentations in Christopher Moore's letters of Jan. 10, 2017 on behalf of Defendants (Moore Letter) and Todd S. Collins and Russell D. Munves' letter of Jan. 5, 2017 _pro se_ or on behalf of their firms (Collins Letter, together "Defs and Collins Letters").

From the very start, Collins Letter mischaracterized Wang letter of Jan. 4, 2017 to the Court (Wang Letter): "In the Wang Letter, Dr. Wang accuses our firms of 'collusion' with Defense counsel….". Wang Letter never accused their **firms**. To the contrary, my opening disclaimer **excluded the firms**, _see_ fn.2 at 2 of Wang Letter:

> The term "Plaintiff's counsel" in this Letter will only refer to Mr. Collins, or jointly with Mr. Munves if he also actively participated the specific act [] discussed _in situ_. **It does _not_ refer to their supervisor(s) or their Firms** (emphasis added).

---

[1] Again in my individual capacity, n.1 & p.1 in Wang Jan. 4 Letter to the Court apply here.

1

Collins knew but *deleted* this disclaimer: "Footnote deleted", see 2ⁿᵈ Para. of p.2, *id*. So his mischaracterization is intentional, and his purported denial of collusion is fake--- it was on behalf of the **firms** ("We ["*our firms*", or Messrs Collins and Munves *together*] have had no communication with Defense counsel [Cleary Gotlieb LLC] that has not been fully disclosed to Dr. Wang."). Defendants or Defense counsel needed to communicate with neither *their firms,* nor *both* Messrs Collins *and* Munves *together,* regarding their collusion. Their collusion is secretive and could *not* have been endorsed by the two Firms. Moore Letter, A, p.1, also gave fake denial of collusion.  To avoid their deliberate confusion, the term **"Plaintiff's counsel"** defined *supra,* and Defendants and/or Defense counsel, will be referred as "**Collins**" and "**Defendants**", *resp.*

## A.  The Deceit and Collusion by Defendants with Collins are undisputed

Defs and Collins Letters evaded ***entirely*** the irrefutable conclusive evidence of their deceit and collusion*,* as presented in C, p.6-8, Wang Letter, and 2-4, Wang Nov. 30 Letter to Moore (Wang Letters). Defendants and Collins evaded altogether even the words: *deceit* and *deceptions*. They could not deny but confirmed their deceit caught on the record, ¶1-7. Answering certification of questions by *Amalfitano v. Rosenberg,* 533 F.3d 117 (2d Cir, 2008), NY Ct. App 12 NY3d 8, 903 NE2d 265, 874 NYS2d 868 (2009) cited "from [counsel] the law exacts a reasonable degree of skill, and the utmost good faith in the conduct and management of the business intrusted to them... To mislead the court or a party is to deceive it; and, if knowingly done, constitutes criminal deceit…".

Now it is undisputed that **both Defendants and Collins committed deceit, with intent to deceive the Court**. They are committing deceits to obstruct justice *in Federal* proceedings. Federal statutes criminalize even mere such effort, whether successful or not, consistent with NY law §487[2].  The Court has inherent power to investigate *sua sponte* or upon the suggestion of strangers, to preserve the integrity of the adversary system of justice.  **Their conspiracy to obstruct justice and collusion to defraud are** *separate* **offenses from their deceit and fraud**[3]**, which is a crime** *per se, i.e,* without further inquiry. Defs and Collins Letters conflated all the offenses together as *only* collusion, and argued as though that their fake denial of collusion somehow absolved them from deceit and fraud. They are wrong.

Defs and Collins Letters could *not* challenge any of the irrefutable evidence on record concluding their collusion, see **Annex A**, but *confirmed* collusion, p.7. They have been caught *in flagrante delicto,* to defraud the Court:

---

[2] NY Ct App cited 428 FSupp2d 196, 210 (SDNY 2006), affd, 572 F.3d 91 (2d Cir. 2009) "…an attempted act of deceit, though unsuccessful, would merit both criminal punishment and civil liability". It held "[F]urther, to limit forfeiture under section 487 to successful deceits would run counter to the statute's evident intent to enforce an attorney's special obligation to protect the integrity of the courts and foster their truth-seeking **5 function."
[3] "[The court] cannot avoid the well-established rule that 'a conspiracy to commit a crime is a separate offense from the crime itself'"[citation], *United States v. Hernandez*, No. 09 CR 625 (HBP), 2009 WL 3169226, at *7 (SDNY, 2009), also in *Black's Law Dictionary* (10th ed. 2014), **conspiracy** *n.* **collusion**  *n.* and **defraud** *vb.*.

1. U*ndisputed **Basic Fact*** is that ACE sequences can**not** be generated by *any* YB Monte Carlo code (sequence generator), but are created involving calculations by complex formulas and **read as data files by Yield Book** (YB). Defendants' *entire* defense relies on misrepresenting ***Defs*** False Claim: "YB Monte Carlo code *generated* ACE" as "***AAI****'s* claim" (**Defs' Deceit**), ¶6, with intent **to deceive the Court:** i) to limit discovery scope to only Monte Carlo code, in order to conceal ACE (**not** *generated* by YB) used by their traders and other smoking gun evidence, ¶5, Annex B; and ii) to dismiss misappropriation claim on the basis: "AAI's claim" is false. Collins SJ "Opp" Br (of May 28, 2014 filed behind my back) concealed Pl's ACE Verbatim Use Claim, embraced Defs' Deceit and represented "gauss_random.c generated ACE" as "*AAI's* claim". Since the YB code gauss_random.c preexisted ACE tests, Collins perfected Defs' Deceit to deceive the Court to infer "ACE were *not* trade secret, Defendants did *not* misappropriate ACE, but *Plaintiff* misappropriated *Defendants'* Monte Carlo code". Man Bites Dog.

**2. Their concerted deceit**: (**a**) Defendants mischaracterized *Plaintiff*'s claims as *their exact opposite: Defs' **False*** Claims; (**b**) **Collins** concealed *all* the material issues, but echoed and *embraced all* **Defs' False** Claims as "***AAI's*** claims"; then (**c**) Defendants sought SJ by dismissal of *"AAI's claims"-- **the straw man** stood up by Defendants*, "through the provision of undisputed evidence and unrebutted legal arguments", as 1, Moore Letter put it. *See* 1], 2], ¶1, ¶6.

Logic dictates the undisputed falsity of these "AAI's claims" ("ACE are **not** trade secret, Defendants **neither** misappropriated ACE **nor** withheld the key evidence" in disguise) ***does not dismiss***, as their SJ *misrepresents*, but ***supports***: ACE **are** trade secret, Defendants **used** stolen ACE and **withheld** key evidence, as concluded by undisputed *admissible factual* evidence, which was **all concealed** by Collins SJ "Opp" Br. Defendants could have sought SJ by ***agreeing with***, instead of dismissing "AAI's claim", ¶1. That would have saved everyone from *all* the work (**c**). Why Defendants did **not** do it? It would have exposed their ***agreement***, *i.e., collusion*. Their *entire* SJ is a work of deceit. So is their *entire* defense which is hanging on Defs' Deceit, **Annex B**. Moore Letter abandoned undisputed falsity of "AAI's claim", (**c**) and SJ, *see* 7.2, **Fourth**, to hang onto Defs' Deceit in (**a**) (**b**), ¶5 in order to save their *entire* defense from crash and burn.

3. **Both Collins and Defendants *knew* that their misrepresentations to the Court are *totally false***, and that all Defs' False Claims are ***exactly the opposite*** to Plaintiff's claims and evidence. Pl.'s ACE Verbatim Use Claim, 3], and Derivative Use claims, 5], were presented, *e.g.* in 1-2, Pl Obj. Br. Hon Swain of 2009. The finding of Fan 2d Report ("ACE is an incredible mathematical feat" in contrast to all sequences generated by YB Monte Carlo code) was correctly cited at 13, *id*. That was *before* the discovery of a mountain of undisputed *physical evidence* of misappropriation, such as (i) ACE Theft Code used in and ACE Use Code installed immediately after ACE theft detailing how their traders exclusively and surreptitiously relied on the stolen ACE for arbitrage, proving ACE Verbatim Use Claim; and (ii) other undisputed conclusive evidence of Pl's ACE Derivative Use Claim and Defendants' massive spoliation including their witnesses' admissions. Collins SJ "Opp" Br of May 28 removed Basic Fact and all material issues, B-L in SJ Opp Br of April 25, which *had been cleansed all* cites of Fan 4th.

4. Acting in concert with Defendants, Collins used Defendants' SJ **supported** by his SJ "Opp" Br to coerce me and new lawyers to "walk away" from the case, ¶11. He was confronted re his misrepresentation, *e.g.,* his fabrication of fictitious "the 2nd Fan Dec. paras. 44-45"

"explained [Defs' False Claim, ¶1]" *opposite to* Fan's findings, see ¶4, ¶7, *and* its consequences, Ex. 3, Wang Nov. 30 Letter.  **Collins stonewalled and refused to correct**.

 5. But as soon as their collusion faced danger of being exposed to the Court, *both* Defendants *and* Collins sprang into action to intimidate me to withdraw my Nov. 30 Letters and to prevent communication to the Court of information relating to commission of Federal offense. When it failed, Moore Dec. 6 Letter tried to silence witness, misrepresented *Defs* False Claim *as "AAI's"* claim" and "[*Defs' Deceit*] raised serious questions about *AAI's* conduct". It is a new deceit to cover old. Instead of correction, under the *ruse* of opposing Defendants' "access to privileged attorney-client material", **Collins** Dec. 12 Letter *reaffirmed and expounded* **Defs' Deceit**, ¶1, Wang Jan 4 Letter, C. They rushed to cover up, **Annex B,** because **they rely on Defs' Deceit to conceal**: (i) ACE sequences, ¶1; (ii) the YB code which read ACE[4]; Now it is undisputed Defendants **surgically deleted the *entire* set** of all hundreds code files relating to sequences generating interest rate paths (which *reads* ACE) from CGM00177---the source code production from The Yield Book, Inc.  From the start of the case, they had lied they had produced all the deleted code, by disguising either the incompilable code cleansed from Mortgage Research Dept (MR) of CGMI, or the few Monte Carlo code files of Radak, as the deleted code; 2] and (iii) the import of monumental physical evidence of ACE Verbatim Use Claim, *e.g.*, ACE Use Code and their programmers' admissions that the sequences relied by traders are ***not*** generated by Monte Carlo code (as such they are ACE per Defendants' admission and Basic Fact), 3]. Acting in concert with Defendants, Collins SJ "Opp" Br, p21 *disavowed* Basic Fact and its implications fatal to Defendants' fraud as "red herring". In truth, the falsity of Defs False Claim showed that Defs' Deceit was intended to exclude and to conceal ACE, ¶1. **Relying on Defs' Deceit** to turn logic to its head, Defs' SJ Br, p21, *cited* Basic Fact to deceive the Court that (i) since YB code do not *generate* ACE, so the "AAI's claim" (Defs False Claim) is refuted; and (ii) the concealed TYB production code were irrelevant to the "AAI's claim". **So the diabolic Defs' Deceit turned evidence of *ACE Verbatim Use* into "*non-use*" as (i) *and their admitted concealment* of key evidence into "*red herring*" as (ii), ¶2(c).**

 6. From SJ Opp Br of April 25, Mr. Collins cleansed Pl's ACE Derivative Use Claim together with *all* undisputed conclusive evidence, *e.g.*, Fan's finding that Teytel's one and only algorithm used the stolen ACE as the target to select all the "LDS" sequences (Seq III) and that Seq III are ACE derivative sequences. To divide-and-conquer, Teytel Algorithm selects several small sequences, each targets a portion of ACE, then pieces them together to get one LDS. Defendants *concealed* all seeds of LDS100 and LDS200 (which are ***not*** the *decoy* mixed seeds in MR code but input through "sfile", 5]), *spoliated* development files, and *withheld* key MR code so that Fan can compile nothing, ***not*** even one YB system for testing.

 In order to misdirect discovery *away* from *all* the sequences used by YB, *i.e.,* both ACE ***and*** Seq III, Defendants played a semantic **game**, and deceitfully named the *undisputedly phony* sequences generated from the *decoy* mixed seeds by MR Monte Carlo code (Decoy **Seq II**), and later by the few Monte Carlo code files concocted by Radak in a ruse of purportedly complying the Court Orders (Radak **Seq I**), as "Yield Book sequences" *aka* "Defendants' sequences",

_____
[4] Para. 20, Rule 56.1  Reply, p.44,

masqueraded as the only sequences *used by* Yield Book, misrepresenting *Defendants'* masquerade as *Plaintiff*'s claim (**Defs' Flagrant Deceit**).

Collins' SJ "Opp" Br embraced Defs' Flagrant Deceit. It covered up Defendants' semantic game by deliberate confusing Decoy Seq II with "Real Sequences" (ACE and Seq III), and all the ***three distinct*** sequence categories I, II and III as ***one*** "LDS" . It falsely represented *Defs'* 2d & 3d ***False*** Claims (the garbage Seq I & Seq II, *resp,* were derived or similar to ACE) as *Plaintiff*'s claims. It misrepresented that ***all*** material issues were ***only*** relevant to either theft of ACE or that "Alleged Sequences" (Seq I) are not Seq II. It concealed ***all*** material evidence, *e.g.*, Fan and Defendants witnesses' testimonies concluding the ***falsity of  Seq II***:

YB Monte Carlo code generated LDS sequences (Seq III), but *Plaintiff* cannot generate LDS because Defendants never gave Plaintiff the seeds necessary to generate LDS; (*)

so that Fan can generate ***only*** the *phony* Seq I or Seq II, *not* Seq III because of (*). Then it echoed SJ to misdirect the Court to the lack of "similarity" between the ***garbage*** Seq I & Seq II and ACE. It bolstered Polish's misleading argument about the 100 paths of ***phony*** Seq I, call it "clashed" with the *undisputed* Fan's calculation of 99.5% certainty that Teytel's Algorithm targeted ACE, as confirmed by the "best seed" for LDS64, *id*, 20, n.9.  It even ***flipped the truth (*) to its opposite falsity***, literally: "Defendants" to "Plaintiff", "LDS" to "ACE":

"YB Monte Carlo code generated *ACE* sequences, but *Defendants* cannot generate ACE because Plaintiff never gave Defendants the seeds necessary to generate ACE."

Collins has also been confronted about Defs' deceits in his SJ "Opp" Br, Ex. 3, but he stonewalled, ¶5. Collaborating with Moore Dec. 6 Letter, **Collins** Dec. 12 Letter ***reaffirmed and expounded* Defs' Flagrant Deceit,** confirmed that **they were deliberate to mislead the Court to act in reliance upon their deceits**, *see* P.8 of Jan 4 Letter.

7. Acting in concert with Collins, not only Moore Letter continued misrepresenting Defs' False Claims as "AAI's claims", but deliberately made two *new* misrepresentations 7.1-7.2 to **cover up Collins' collusion**. **7.1** It misrepresented the revelation by Wang Letters as "AAI's counsel had included 'false claims' in its summary judgment opposition papers and expert reports", *id,* 2d para, p.3, last para*,* p.4, to deceive the Court that Collins did *not* fabricate but cited *bone fide* **expert reports**. It is trying to discredit **both** Plaintiff **and** Prof. Fan using ***their*** Deceit. Moore Dec. 6 Letter at 3 & n. 3 had conceded that Defs false claim is ***not*** in Fan reports[5]. Wang Jan. 4 Letter, para 3, 6 p.6 pointed out that Collins fabricated Fan citation. So **the new deceit is deliberate. 7.2** Moore Dec. 6 Letter was so rife with deceits that it self-contradicted *all of its own positions* except one: Defs' False Claim is false[6]. This is undisputed fact and law of the case, and they knew it, Wang Jan 4 Letter, n.11 at 7, (c), ¶2.  To cover up Collins' deceit, it

---

[5] "Dr. Wang's emails also note that while AAI's brief cites to paragraphs 44-45 of the Second Declaration of Jianqing Fan, that source does not support [Defendants'] 'false' claims. Ex. 3 at 1, 4." *Id*.

[6] Bottom of p.2, "It appears that AAI now agrees [Defs' False Claim is false]", 2, *Id*. With whom "AAI now agrees"?  Not with Collins, because Collins has been misrepresenting Defs' False Claims as *true*. So it was Defendants, with whom "AAI now agrees" Defs' False Claim is *false*.

resurrected ***Defs' False*** Claim dismissed by their SJ and referred it as "AAI's ***alleged*** false claim" instead of "AAI's false claim", Second.

Controlling precedent in SDNY, *e.g. Amalfitano,* 428 FSupp2d at 207 & n 36, held "[a] single act or decision, if sufficiently egregious and accompanied by an intent to deceive, is sufficient to support liability [under § 487. Citations]."[7], affd, 572 F3d 91 at *123* & n 6. Defendants and Collins' acts are *far more* egregious than that of Rosenberg sanctioned in *Amalfitano.* Rosenberg did *not* commit collusion to *defraud* the court or his client, did not cover up his deceit after a complaint was filed in SDNY, in contrast to Collins and Defendants, whose conduct subverted the adversary system of justice, and are still committing *more* deceits to cover up their deceit and to obstruct justice *in **Federal*** proceedings.  In hindsight **Collins and Defendants or Defense counsel** colluded to derail the litigation step by step, **engaged in a chronic, extreme pattern of legal delinquency**:

8. Acting in concert with Defendants, contrary to my express instructions that Fan 4th Decl be *only* used for support of motions under FRCP 37(b) and FRCP 56(d)/(h), Collins **deliberately misrepresent**ed that  Fan 4th Decl. was prepared for SJ in willful violation of Court schedule orders *without* justification, to exclude Fan 4th Decl., to procure contempt order against Plaintiff, and to block the 37(b) motion against Defendants,  by concealing all the key facts *e.g.* Fan 4th Dec. ***had been prepared and submitted*** to support the spoliation and violation of Court Orders sanction letter-motion under FRCP 37(b), ***and which had been filed*** on June 18, 2013, *see* Wang Nov. 30 Letter to Moore at 2-3.

9. Acting in concert with Defendants, Collins maneuvered to exclude Fan 4th Decl. with plainly misleading misrepresentations *e.g.* that Fan 4th Decl. was "***opinions*** within the 4 corners of Fan 2nd Decl." when the cites in SJ from Fan 4th Dec. were all ***facts***, *e.g,* translation of code. **After** Court Order of June 5, 2014, Dkt.256, had correctly ruled that *factual material* evidence *is admissible* for SJ, and **after** Defendants had *withdrawn* their absurd objections in Jan. 2015, Mr. Collins still tried, although failed, to persuade me and Mr. Munves to ***withhold all*** the *factual material* evidence, *e.g.*, of ACE Verbatim Use and Defendants' concealment (i)(ii)(iii), ¶5 , ***remove all*** of it, "to tear the guts out off" Pl's Response Under Rule 56.1 of May 28, 2014.

10. After ***Collins*** filed these perverted briefs to frame Plaintiff for contempt, and to deliberately mislead both Hon. Pitman and Hon. Swain to derail and to dismiss the case in collusion with Defendants, under the threat of abandoning the case, Collins intimidated me to falsely affirm that all of their briefs filed behind Plaintiff' back and over Plaintiff's objection had been "preauthorized by [me]"; I refused and Plaintiff counsel moved to withdraw. Then Defendants and Collins blamed their fraud victims to deter new counsel. Collins alleged the Court "not understand" and "extreme skepticism", and "hostility", and steadfastly refused to challenge Defendants' block on prospective counsel's access to the necessary documents[8].

---

[7] "Intentionally withholding information may also constitute an act of deception. See *Schindler*, 262 A.D.2d at 229, 692 NY.S.2d at 363 (finding liability under § 487…)." *Id.*

[8] Collins demanded that any challenge must be *simultaneous* with a hearing on his SJ "Opp" Br in collusion with Defendants to grant Defendants' SJ, *and* also to grant the withdrawal motion--- *i.e.*, to get the case dismissed *before* new counsel could even assess the case.

6

11. <u>Acting in concert with Defendants,</u> relying on the deceits and the big hole they dug, despite "strongly believe the case has merit", Collins coerced me and new prospective counsel to "walk away" from the case *for nothing* from Defendants, while at the same time asked *for many millions fees* from new counsel, if new counsel would dare to take over the case and win.

12. <u>Acting in concert with Collins,</u> Defendants made numerous misrepresentations  to prevent and hinder the Court' investigation into Collins' conduct, see Wang Letters of Nov. 30, and Jan 4 to Court. Their requests, if granted, will deprive the Court's power to investigate and sanction their deceit and collusion.

Their acts ¶1-12 injured the integrity of adversary process, and subverted the bedrock of our judicial system. Their briefs were intended to be to mislead the Judges, to cover Defendants' concealment of key evidence and to prevent the case be resolved by merits. It "undermines or is intended to undermine the integrity of the judicial proceeding."

**Defendants and Mr. Collins committed conspiracy to defraud the Court**. In *Gelboim v. Bank of America Corp.,* 823 F.3d 759 (2d Cir. 2016), the accused business transactions by defendants were *not* criminal *per se,* in contrast to the deceits ¶1-12. There 2d Cir. found, at 781: "conspiracies are rarely evidenced by explicit agreements" and "nearly always must be proven through 'inferences that may fairly be drawn from the behavior of the alleged conspirators.' " (The line separating conspiracy from parallelism is indistinct, but may be crossed with allegations of "interdependent conduct," "accompanied by circumstantial evidence and plus factors." [Citation] These plus factors include: (1) "'a common motive to conspire'";(2)" 'evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators' "; and (3) " 'evidence of a high level of interfirm communications.'") (Citations omitted). Applying three Plus Factors permits the Court "to infer the existence of an agreement". In fact, the interdependent conducts ¶1-12 by Defendants and Collins:

 (<u>1</u>) revealed that Collins intended to mislead the Court to achieve Defendants' goal every step of the way, that Defendants and Collins perpetrated the ***same*** deceit in concert in furtherance of their agreement; confirmed their <u>common objective</u> and meeting of their minds;

(<u>2</u>) were absolutely against the *apparent* individual economic self-interest of Collins; Without flipping Collins with ***unapparent*** overwhelming interest by collusion, how else Defendants could have flipped Collins' submissions to present Defendants' deceits to cover up their fraud, to fabricate evidence and to serve their criminal objectives against his *apparent* self-interest?  Cassius was in the habit to ask: c*ui bono*? The elephant in the room is Defendants.

(<u>3</u>) indicated that the evidence pertinent to collusion is "evidence of a high level of interfirm communications", *between* Mr. Collins and Defendants or Defense counsel or all the lawyers or person(s) or agents representing or acting on behalf of, or serving the interests of Defendants in connection with this litigation, and Mr. Munves (together "Pertinent Communication"). It is ***not at all*** the communication between Collins and me. *See* <u>Seventh</u>. **This obvious fact was also pointed out by Collins Letter at 1. Defendants, Defense counsel and**

**Collins clearly understood their obligation to preserve all of these communications and the relevant records**.

In violation of **18 U.S.C. §1503[9], and §1512(c)(1)(2)**, *Defendants* (1) altered, destroyed, mutilated, or concealed sequence development files and testing files ¶5-6, and colluded with ***Mr. Collins***, concealed key evidence, ACE and ACE derivative sequences, YB production code, (¶5 i)(ii), with the intent to impair the integrity and availability of these documents sought by subpoenas and Court orders for use in the litigation; (2) through deceits, and obstructed, derailed, influenced, and impeded this litigation, ¶1-7, 8-12.

In violation of **18 U.S.C. §1512(b)(1)(2)(A),(3) and (d)**, *Collins* attempted to intimidate Wang to submit false written affirmation, and ***Defendants*** knowingly intimidated, threatened Wang, colluded with ***Mr. Collins***, corruptly persuaded and engaged in misleading conduct, *e.g,* deceits toward Judge Pitman and Judge Swain with intent to—
**(1)** influence, delay, or prevent the testimony of Wang in an official proceeding; ¶5,  11-12;
**(2) (A)** through Defense counsel, cause or induce Wang to withhold testimony, or withhold a record, document, or other object, from an official proceeding; ¶5, 8, 10-12;
**(B)** through their employees, alter, destroy, mutilate, and conceal sequence development files and testing files ¶5-6, and conceal an object— ¶5 i)(ii) key evidence, ACE and ACE derivative sequences, YB production code  (which uses ACE), with intent to impair the object's integrity or availability for use in an official proceeding; ¶1-7, 8-12;
**(3)** through Defense counsel, *etc*, hinder, delay, or prevent the communication [by Wang] to a judge of the United States of information relating to the commission or possible commission of a Federal offense. ¶5, 8-12.

"In a prosecution for an offense under [18 U.S. Code § 1512] no state of mind need be proved with respect to the circumstance—(1) that the official proceeding ... is before a judge or court of the United States, a United States magistrate judge,..", (g), *id*.  The purported rebuttal in **Collins Letter actually *confirmed* his *intent* to deceive the Court for Defendants, *i.e.*, collusion**. After "[Collins] have vigorously prosecuted this very contentious case for ten years…, undertaking thorough analysis…exhaustive fact and expert discovery; and making and defending … two [SJ's]", *id* at 1, they have become intimately familiar of the case. How could Collins suddenly become so totally ignorant of all of the Basic Fact, what are Plaintiff's claims, trade secret and misappropriation? And *deliberately, repeatedly misrepresenting*  **Defs' False Claims** (designed to imply "ACE are *not* trade secret" and "Defendants did *not* misappropriate ACE"), which Collins knew to be **exactly the opposite** to Plaintiff's claims and to all evidence, as **Plaintiff's claims** to deceive the Court? How could Collins fabricate fictitious "evidence" to "explain" Defs' False Claim? As the court in *Amalfitano* 428 F. Supp. 2d 196, 211 (S.D.N.Y. 2006) at 208 analyzed, "**I. Intent**. If [Collins'] representation of [AAI just] had commenced…, [Collins] actions might demonstrate a lack of competence, common sense, or rationality. However, in light of the knowledge he gained in the course of ["this very contentious case for ten

---

[9] *United States v. Jahedi,* 681 F. Supp. 2d 430, 434–35 (S.D.N.Y. 2009), held that the offense: "corruptly ..conceal[ing] a record, a document.." violated *both* §1503 "[Defendants] corruptly intended to impede the administration of the judicial proceedings" *and* §1512(c)(1).

years…"], we have no hesitancy in concluding that [Collins]' actions evince a deliberate intent to deceive both [Judges]." Defendants and Mr. Collins' intent was corrupt.

*While steadfastly* **deceiving the Court** with Defendants, Collins Letter at 2 **claimed he does not know what he is doing**: "It is difficult for Plaintiffs counsel to understand the basis of these claims". Collins showed *not the slightest interest* to understand "the basis", because he already knew "the basis" after "10 years of vigorous prosecution" and had been informed of the malicious implications of his misrepresentations[10], ¶5, ¶6.

Their firms' prosecution in the **prior** years is no defense for Collins' **later** collusion. That argument in Collins Letter at 2 only underscores the impossibility to detect his corrupt intent, his ultimate deceit of surreptitiously and cunningly doing Defendants' bidding in Plaintiff's name, ¶8. It explains his audacity of increasingly more plainly misleading argument and duplicitous behavior to harm Client, ¶2-8. Now his letters of Dec. 12, 2016 and Jan. 5, 2017 evinced his deliberate intent to deceive the Court and Client, in betray of their full trust and reliance.

If Defendants had not committed the conspiracy of misappropriation, why did they commit the deceit and collusion to conceal the smoking gun evidence in violation of the Court Orders? ¶5. It showed *Defendants*' desperation. Their new and on-going deceits and cover up, ¶1-8, are separated offenses from their previous fraud e.g., in (i)-(iii) ¶5, Annex B. Although their collusion with Collins hindered sanctions on their prior fraud, each new deceit is a new independent cause of action and an offense *separate* from the issues of the underlying case. In *Savattere v. Subin Associates, P.C.,* 261 A.D.2d 236 (1999), Subin deceived the court and *colluded* with the opposing party to procure filiation order at the detriment of his client to get higher fees. The appellate court affirmed that his misconduct, violation of Section 487 and fraud *etc*, are all separate causes of actions from the disposed underlying case. There the motion to vacate the filiation order was *denied* because Subin had arguably helped *to discover the truth* and obtained justice for the adversary. Collins and Defendants colluded in a diabolic scheme to *cover up Defendants' fraud*, to conceal *the truth and to cause manifest injustice*. It is much worse than Subin.

## B. Defendants' Maneuvers for Compelling Attorney-Client Privileged Communications Further Confirmed Their Deceit.

Wang Jan 4 Letter at 9 presented seven reasons, **any one of the seven** suffices to quash Defendants' request[11]. Moore Letter could rebut **none**:

First, pervasive **deceit**, undisputed. Their collusion is a **separate offense**. Their request is based entirely on deceits (i) Defs' Deceit: Defs' False Claim were "*AAI's* false claim"; and (ii) "[*Defs' Deceit*] raised serious questions about AAI's conduct in this case", ¶1, ¶5. A principle of

---

[10] Collins' self-contradictory incredulous claim showed consciousness of guilt. It is difficult to get a man to acknowledge the truth, when his intention is to deceive and his reward depends on his deceit.
[11] If the Court has denied or disregarded Defendants' maneuvers, please omit Section B.

public policy is the doctrines *ex dolo malo non oritur actio*. No court will lend its aid to Defendants who found their cause of request upon deceit.

Second, irrelevance: the "questions" in (ii) is *not* "AAI's conduct" but is Defs' Deceit and collusion. In response Moore Letter **switched** the purported issue from (ii) "AAI's conduct" in Moore Dec. 6 Letter to (i) the falsity of Defs' False Claims, making the *undisputed fact* an issue. Defendants could not even find an issue that would be relevant to their request, much less to demonstrate requisite relevancy. **Defendants *are* playing games**[12]**.** Defendants' SJ Br relied on[13] (c) Defs' False Claim is false, ¶2. Having flipped their positions by calling the undisputed fact a disputed "issue" means **Defendants must withdraw SJ.** Defendants cannot play games with the Court *and* have it both ways.  In addition, Moore Letter at D stated "[discovery] with respect to the merits of this action, is long over". So before reopening discovery at Defendants' request for irrelevant attorney-client privileged communication, Defendants must first produce **the direct evidence pertinent to** both Defs' False Claim and Plaintiff's ACE Verbatim Use Claim: the sequences used by Defendants, and the concealed production code relating to sequences from Yield Book Inc, ¶5.

Third, deceits about the subject matter and purpose of my disclosure.  Wang Jan 4 Letter at 10, Para.3, exposed Moore Dec. 14 Letter at 2 misrepresented **my statement** of the goal "to serve for the purpose of good faith settlement negotiation" as "to serve Plaintiff's goal' of demonstrating that AAI's summary judgment opposition papers contained a 'false claim.'" Explaining more on **Defendants'** belief does not explain away Defendants' deceits of putting Defendants' belief into **my** mouth. Moore Letter could not dispute but twisted my purported goal to "demonstrating that AAI's counsel had included 'false claims' in its summary judgment opposition papers and expert reports". Defendants' **new misrepresentation** "and expert reports" is intended to deceive the Court to believe that Plaintiff's expert reports had false claims, to discredit Prof. Fan and to cover up their collusion with Collins, ¶7.2.  Everything said in Defendants' letters was intended to deceive.  The truth presented in Wang Nov. 30 Letter to Moore and the communications obviously could facilitate settlement negotiation. **If** Defendants had any conscience, then they would know that the exposure of their deceit, collusion and conclusive evidence of misappropriation means that justice *will* prevail, and Defendants' purported settlement proposal for Plaintiff to "walk away" for *nothing* is not only manifestly unjust but unrealistic. Game over. The Truth is more powerful than Defendants. Their sensible choice is not more deceits but good faith negotiation.

Fourth, no waiver of Plaintiff's attorney-client privilege Wang Jan 4 Letter at 5  which already demolished the self-contradictory mischaracterization in Moore Dec. 6 Letter that my letters to the Court and to Moore on my individual capacity were "behalf of AAI".  Moore Letter could *not* dispute, but rehashed the same demolished mischaracterization, *n*.2-4, and misrepresented **their** purported belief as **my** statement. It searched out *all* the terms "Plaintiff"

---

[12] [t]o harass, to derail the litigation, *to prevent* discovery of truth and "a full and fair adjudication on the merits", "[t]o seek information that has no or minimal relevance to the claims or defenses; if discovery is abused in this manner, monetary sanctions can be imposed." "[a] lawsuit is not a game but a search for the truth."  *Vaigasi v. Solow Mgmt. Corp.,*  11Civ. 5088 (RMB-HBP), 2016 WL 616386, at *7 (SDNY 2016).
[13] See "Second",  p.22, *id*, citing Defendants' 56.1 Statement of Undisputed Fact No.10 and 12.

and "Defendants", and claimed that the usage of these terms means Wang Letters was on behalf of Plaintiff. According to Defendants, any submissions by any *non*-party, *amicus curiae* or intervenor may not mention any party by name and may not weigh in for any party. So there could have been no intervenor, and no *amicus* briefs. It is sheer nonsense. All of Wang Letters pointed out that *the truth* that the False Claim is *Defs'* False Claim. While insisting these same Wang Letters were "on behalf of AAI", Defendants still insisted Defs' Deceit: Defs' False Claim *were* "AAI's claim" or "AAI's alleged claim", see First, ¶2. It further confirmed that Defs' Deceit to deceive the Court is *intentional*.

Fifth, no "selective" disclosure The subject of the emails is "Chris Moore Called", the settlement negotiation. Defendants knew that the courts held that negotiations involved pre-trial matters, not evidence, and that positions taken during negotiations did not have to be supported by proof. It is meaningless for Defendants to argue "selective" disclosure of positions. Defendants' game playing still failed "*select*" a subject matter to make it stick and relevant to their request, *see* First, Second and Seventh. So how could they allege my disclosure "*selective*"? To what subject matter? Even if Defendants could make falsity of Defendants False Claim an "issue", "there is no use of the [emails] by the party holding the privilege" for the "issue", *Mitre Sports Intern,* 373, Fifth of Wang Jan 4 Letter. All the communications will only confirm that Defs' False Claims are all flat-out lies, and I objected. *Without any need of the Court's intervention*, after I received the responses, see Seventh *infra*, I will be happy to disclose all the relevant communications *to the Court under seal*, see last para. at 9, Jan. 4 Letter.

Sixth, moot. Because of Defendants admitted violation of Protective Order, and the other Court Orders and deceits to the Court, Defendants are obliged to return the attorney-client privileged documents, see Wang Letter to Moore of April 11.

Seventh, Defendants' flip-flops on purported subject matters found no relevance, see First and Second. It still does not make Exhibits an issue, because the Exhibits cannot be cited to show Defs False Claim is false and not even be evidence for the case. Here Defendants switched the purported issue for the 3rd time, trying to weasel out their admission, Moore Letter at 1, that the issue is collusion *between* Collins *and Defendants*. So the **direct evidence is the Pertinent Communication** *between* Collins *and* Defendants and/or Defense counsel, **not** with Dr. Wang, see p.7 Plus Factor (3). Accordingly, Defendants and Defense counsel must produce the Pertinent Communications first. I have also been asking Messrs Collins and Munves to produce Pertinent Communications. After their responses, I will report to the Court. Then it will be easier for the Court to direct.

Eighth, violation of Fed. R. Civ. P 37(a)(1), which requires Defendants to provide the required certificate of meet-and-confer in good faith. Defendants totally failed. The Court held "[t]he failure to meet and confer mandates denial of a motion to compel." *Vaigasi* at 11, citing eight controlling cases and the civil practice guidelines in SDNY.

## C. Conclusion

Defendants and Collins have been given ample opportunity but they could not deny their deceit in record. So there is no reason for any hearing for Defendants to spawn more deceits with Collins' collusion, where the Court has no sufficient time and records on hand to refute. In

addition **Defendants willfully and brazenly violated four Court Orders with no justification**, *see* Wang Letter to Moore of April 20, 2017. For the foregoing reason, all the requested relief proposed in E, Wang Letter of Jan. 4, 2017 ***should be granted***.

Respectfully submitted,

_____

Xiaolu Wang, PhD

cc via email to: Christopher Moore
Jennifer Kennedy Park
Russell Munves
Todd Collins

## ANNEX A. Comparison: Truth v. Deceit

| **Truth: Undisputed Factual Evidence Concludes Plaintiff's Claims**, concealed by Collins SJ Opp Br. | **Deceit: Collins** embraces all Defendants' Deceits | **Deceit: Defendants' Deceits** |
|---|---|---|
| **1]Truth** Collins and Defendants knew that Defs' False Claims are false, designed to deceive "ACE are *not* trade secret", "Defendants did *neither* misappropriate ACE *nor* conceal key evidence". | **(b) ¶2 Collins** embraces all *Defs' False* Claims as "*AAI's* claims"; | **(a) ¶2 Defendants** misrepresent Plaintiff's claims as ***their opposite*--** Defs False Claims; **(c)** seek SJ by dismissing these "AAI's claims" *i.e.*, Defs' False Claims; |
| **2]Basic Fact** Defs Rule 56.1 Statement para.10 and 12 (ACE seq are generated by complex mathematical formulas, fundamentally different than YB Monte Carlo code.) "ACE is an incredible mathematical feat" that YB Monte Carlo code cannot touch, para.31-2, Fan 2d Report (Ex.15 2013 SJ); p.4, Ex. 3 of Wang Nov. 30 Letter to Moore; Wang Jan. 4 Letter, at 7. **Truth: Basic Fact exposed Defendants semantic game** defining "YB seq." to conceal ACE from discovery, and their surgical deletion of *entire* set of all the hundreds code files relating to sequences generating interest rate paths, from CGM0177, the source code production from The Yield Book Inc., because the code *reads* ACE[14]. | **(b) Collins 1** Embraces Defs' Deceit, misrepresents Defs' False Claim "gauss_random.c generated ACE" as "AAI's claim"; **2** refuses to expose **Defs' semantic game** of confusing "YB sequences" with sequences[15] used by YB, **covers up** Defs' concealment of ACE and the entire production code from Yield Book, Inc, which read ACE seq. to generate interest rate paths for traders. **3** Play Duet in switched roles: *disavows* Basic Fact, *supports* Defs False Claim with *fictitious* "Fan 2d Report cites", Collins SJ "Opp." of May 28, at 13; Collins Dec. 12 Letter at 2. | **(a) ¶1 Defendants 1** Defs' Deceit: misrepresent Pl's (ACE Verbatim Use) Claim as Defs' False Claim: "TYB (Monte Carlo) code generated ACE"[16]; **2** play **semantic game**, *define* "YB seq." generated by Monte Carlo code *to exclude and conceal* ACE seq. which are not generated by Monte Carlo code but read by YB; play **semantic game** to masquerade "YB seq" as seq. used by YB[17]; **(c)3** *cite* Basic Fact to refute Defs False Claim disguised as "AAI's claim", semantic game to deceive the Court ("YB seq" does not contains ACE") meant "YB does not use ACE seq." |

---

[14] Para. 20, Rule 56.1 Reply of 2014, p.44,

[15] A **sequence** is a table of decimals: columns are paths, rows are time steps (the number of rows is the **dimension**). They are the key to calculate future interest rate paths (from the current market), thereby prices of all fixed income instruments. Feeding any integer, known as "seed", into Monte Carlo code, it generates a random sequence for given path number and dimension, whereas ACE sequences are created by very complex formulas and can produce extremely accurate prices.

| **Truth: Undisputed Factual Evidence Concludes Plaintiff's Claims**, concealed by Collins SJ Opp Br. | **Deceit: Collins** embraces all Defendants' Deceits | **Deceit: Defendants' Deceits** |
|---|---|---|
| **3]ACE Verbatim Use Claim**: TYB production code used exclusively by their traders **do not use** Monte Carlo code but **_read_** the stolen ACE seq. from data files. Defs' traders relied on ACE Seq for arbitrage, p.3, Ex. 3.  Russell 2007 dep. 198: 10-14,  F8, C of Fan 4th, para. 20, 46 and 49, 61, of 56.1 Response. | Collins conceals ACE Verbatim Use Claim, but embraces **Defs' False Claim** ("gauss_random.c generated ACE) as "AAI's claim". | **Defs' False Claim** ("YB Monte Carlo code generated ACE"), which is misrepresented by Collins and Defendants as perverted "AAI's claim". |
| **4]Truth**: _Defendants_' Monte Carlo code generated <u>LDS</u> seq., but _Plaintiff_ cannot generate <u>LDS Seq. III</u> used in production because <u>Defendants</u> never gave <u>Plaintiff</u> the seeds necessary to generate them, nor a single TYB system to test them. | **(b) Collins enbraces Defs' Deceit**, conceals Truth, misrepresents AAI's Claim as **Defs False Claim**: "Gauss_random.c generated _ACE_ , but _Defendants_ cannot generate ACE because <u>Plaintiff</u> never gave <u>Defendants</u> the seeds necessary to generate them" | **(a) Defs' Deceits**: conceal Truth, misrepresent AAI's (ACE Verbatim Use) Claim as **Defs False Claim**: "Defendants' Monte Carlo code generated ACE sequences." |
| **5]ACE Derivative Use Claim**, Teytel's one and the same algorithm[18] which selected all the LDS sequences **(Seq III)**, targeted the stolen ACE, _i.e.,_ selected the seeds feeding YB Monte Carlo code to generate LDS. These seeds are **not** decoy seeds in MR code but read in through "sfile",  p.4 of Ex. 3. | **(b) Collins embraces Defs' 2nd False Claim** "Radak Seq **I** are Real seq." and "are similar to  ACE sequences", as perverted "AAI's claim",  Collins SJ "Opp." of May 28, at ___; Collins Dec. 12 Letter at 2. | **(c)Defendants refute Defs' 2nd False Claim** "Radak Seq **I** are Real seq." and "are similar to  ACE sequences", Collins SJ "Opp." of May 28, at ___; Collins Dec. 12 Letter at 2. |

---

[16] "**AAI** asserts that …the sequences of numbers generated by The Yield Book ..incorporate ... ACE", 4, Defs' 2013 SJ Br. "The gravamen of AAI's complaint is that the YB Numbers incorporate the ACE Numbers", 3, Friedman Letter to the Court, Jan. 25, 2006.

[17]"Defendants had produced to **AAI** copies of (Radak Seq I, masqueraded as) the actual sequences used in The Yield Book"  2, Defs' 2013 SJ Br. "After almost **10** years…,AAI cannot support …its claim that [YB sequences] was derived from [ACE]." at 1, _id_.

[18] An **algorithm** is a series of procedures to achieve a goal. Teytel's goal was to select LDS sequence from many sequences of the same path number (64, 100 or 200), generated by YB Monte Carlo code. Teytel testified that he used **_one and same_** algorithm to select all the three: LDS64, LDS 100 and LDS200. Defendants concealed all the seeds for LDS Seq.III, except the "best seed" for LDS64 in Teytel's notebook.

| **Truth: Undisputed Factual Evidence Concludes Plaintiff's Claims**, concealed by Collins SJ Opp Br. | **Deceit:** **Collins** embraces all Defendants' Deceits | **Deceit:** **Defendants' Deceits** |
|---|---|---|
| Radak Seq **I** are generated by Radak Monte Carlo code, but cannot even be generated by any YB code, and cannot be any seq. used by Defendants. | | |
| **6|ACE Derivative Use Claim**, Decoy Seq **II** cannot be any seq. used by Defendants. p.4 of Ex. 3, Defendants never gave Plaintiff the seeds necessary to generate the real LDS sequences nor the code to validate any seq. | **(b) Collins embraces Defs 3$^{d}$ False Claim as "AAI's claim":** "Decoy Seq **II** are Real seq." and "are similar to ACE sequences" Collins SJ "Opp." of May 28, at __; Collins Dec. 12 Letter at 2. | **(c)Defendants refute Defs' 3d False Claim** "Decoy Seq **II** are Real seq." and "are similar to ACE sequences" Collins SJ "Opp." of May 28, at ___; Collins Dec. 12 Letter at 2. |

## ANNEX B.  Fraud Hanging by a Thread



Collins

Defendants

Defs' False Claim is **not** "AAI's claim"

Collusion to jointly misrepresent *Plaintiff's* Claim as *Defs'* **False** Claim "YB Monte Carlo code *generated* ACE", ¶5, in order to cover up:

(i) their semantic game of confusing "YB sequences" ***generated*** by YB Monte Carlo code with sequences ***used*** by YB in order to exclude & conceal ACE.  ACE sequences are read by YB as data files.  ACE can**_not_** be generated by any Monte Carlo code;

(ii) their concealment of **_all_** the YB production code relating to sequence generating interest rate paths, because the production code reads ACE sequences.  Defendants surreptitiously deleted **_all these_** hundreds of code files from the source code produced from Yield Book, Inc.;

(iii) *admissible* conclusive evidence of ACE Verbatim Use Claim and programmers' admissions that the sequences relied by traders are **_not_** generated by Monte Carlo code, but are ACE sequences.

16

1622 LOCUST STREET  |  PHILADELPHIA, PA 19103-6305  |  PHONE: 215/875-3000  |  FAX: 215/875-4604  |  WWW.BERGERMONTAGUE.COM

# Berger&Montague,P.C.
ATTORNEYS AT LAW

**TODD S. COLLINS**

| | |
|---|---|
| **WRITER'S DIRECT DIAL** | 215/875-3040 |
| **WRITER'S DIRECT FAX** | 215/875-5715 |
| **WRITER'S DIRECT E-MAIL** | tcollins@bm.net |

June 1, 2017

**Via Fax:  (212) 805-6111**
The Honorable Henry Pitman
U.S. Magistrate Judge
Daniel Patrick Moynihan
U.S. Court House
500 Pearl Street
New York, NY  10007-1312

Re:   *Advanced Analytics, Inc. v. Citigroup Global Market, Inc., et al.*
       **No. 04-cv-3531 (LTS) (HBP)**

Dear Magistrate Judge Pitman:

With respect to the Court's Orders of yesterday, I promptly communicated with plaintiff's principal, Dr. Wang, as the Court directed.

In his letter of yesterday evening, Dr. Wang makes outrageous and entirely false accusations against former counsel.  I think it neither necessary nor appropriate to respond point by point, but I will, of course, provide to the Court any information that it may request.

Respectfully,

BERGER & MONTAGUE, P.C.

Todd S. Collins
1622 Locust Street
Philadelphia, PA  19103

TSC/dlg
cc:   Dr. Xiaolu Wang (via email)
       All Counsel (via email)

kal7685816_920_1

1622 LOCUST STREET  |  PHILADELPHIA, PA 19103-6305  |  PHONE: 215/875-3000  |  FAX: 215/875-4604  |  WWW.BERGERMONTAGUE.COM

# Berger&Montague,P.C.
## ATTORNEYS AT LAW

TODD S. COLLINS

WRITER'S DIRECT DIAL | 215/875-3040

WRITER'S DIRECT FAX | 215/875-5715

WRITER'S DIRECT E-MAIL | tcollins@bm.net

June 5, 2017

**Via Fax:  (212) 805-6111**
The Honorable Henry Pitman
U.S. Magistrate Judge
Daniel Patrick Moynihan
U.S. Court House
500 Pearl Street
New York, NY   10007-1312

> Re:   *Advanced Analytics, Inc. v. Citigroup Global Market, Inc., et al.*
>        **No. 04-cv-3531 (LTS) (HBP)**

Dear Magistrate Judge Pitman:

I hesitate to take the Court's time with this, but in light of certain representations contained in Dr. Wang's letter of June 2, I feel it appropriate to state that on May 31, I sent the Court's Orders of that date to Dr. Wang within minutes of my receipt of them through the ECF system.  In a cover email to Dr. Wang attaching the Orders, which included the word "Urgent" in the re line, I addressed in specific terms the subject matter of the Order at Docket 275. In light of the importance of this Order, I re-sent it to Dr. Wang 40 minutes later in order to ensure that he received it. The next day, following receipt of Dr. Wang's communication with Chambers on the evening of May 31, I again emailed Dr. Wang, specifically addressing the subject matter of the portion of the Order at Docket 275 that pertains to pro se communications with Chambers.

Respectfully,

BERGER & MONTAGUE, P.C.

Todd S. Collins
1622 Locust Street
Philadelphia, PA  19103

TSC/dlg
cc:   Dr. Xiaolu Wang (via email)
      All Counsel (via email)

kal7686185_920_1

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

D: +1 212 225 2000
cmoore@cgsh.com

LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
LEE C. BUCHHEIT
JAMES M. PEASLEE
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
ANDRES DE LA CRUZ
DAVID C. LOPEZ
JAMES L. BROMLEY
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND

DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA

ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
HUGH C. CONROY, JR.
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
GRANT M. BINDER
JOHN V. HARRISON
CAROLINE F. HAYDAY
RAHUL MUKHI
NEIL R. MARKEL
HUMAYUN KHALID
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

November 11, 2016

BY FACSIMILE

Hon. Henry B. Pitman
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 750
New York, New York 10007-1312

> Re:  Advanced Analytics, Inc. v. Citigroup Global Markets Inc.,
> No. 04 Civ. 3531 (LTS)(HBP)

Dear Magistrate Judge Pitman:

I write to respectfully reiterate the requests by Defendants Citigroup Global Markets, Inc. and The Yield Book Inc. ("Defendants"), initially made in a letter dated November 11, 2015, for (i) a ruling on the amount and timing of payments due to Defendants under the Court's March 26, 2014 Order sanctioning Plaintiff Advanced Analytics, Inc. ("AAI") and its counsel for the untimely submission of the Fourth Declaration of Jianqing Fan and (ii) a status conference to address AAI's apparent inability to find replacement counsel in light of its current counsel's pending motion to withdraw.

With respect to the first request, the briefing on Defendants' motion to strike the Fourth Fan Declaration was completed more than three years ago and the Court issued its Order granting Defendants' motion and awarding Defendants one half of their expenses, including attorneys' fees, more than two and a half years ago.  Defendants therefore request that the Court resolve the sole outstanding issue, namely the precise amount that AAI and its counsel owe to Defendants, so that they can promptly recover this amount.

As for Defendants' second request, it has now been more than twenty months since AAI's current counsel sought permission to file an *ex parte* motion to withdraw and more than fifteen months since the Court modified the Protective Order at AAI's request to permit AAI to share certain confidential information with prospective counsel to aid in its efforts to replace its current counsel.  Though a small number of firms have executed the undertaking

Magistrate Judge Pitman, p. 2

required to review confidential material, none have appeared on record as counsel for AAI.
Defendants therefore request a status conference to set a deadline for AAI to retain new counsel.

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Christopher P. Moore

cc:     Russell D. Munves (via e-mail)
        Todd S. Collins (via e-mail)
        Dr. Xiaolu Wang (via e-mail)



# ADVANCED ANALYTICS, INC.

1050 George St. Suite 5M,   New Brunswick   NJ 08901   Phone (732) 729-0696 Fax (732) 729-0679

November  30,  2016

Xiaolu Wang, Ph.D.

<u>**Confidential**</u>

**By Facsimile to (212)805-6111**

Hon. Henry **PITMAN**
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 750
New York, New York 10007-1312
(212) 805-6105

Re: <u>*Advanced Analytics, Inc. v. Citigroup Global Capital Market, Inc. et al.*</u>
<u>*04 Civ. 3531 (LTS)(HBP)*</u>

Dear Judge Pitman,

A year ago, exploiting the unfortunate *emergency* health event just suffered by Plaintiff's principal, Defendants requested an *urgent* Court hearing under the pretext of their feigned fear that Plaintiff's counsel would become deadbeats to the fees, to rush the Court to dismiss this case in collaboration with Plaintiff's counsel but without warning to Plaintiff.   The Court rightfully disregarded and denied Defendants' improper request.

Defendants and their counsel should have apologized to the Court for their lack of candor, and their improper attempt to fatally prejudice Plaintiff and to interfere with the Court's investigation.

Now again in the busy Holiday Season, Defendants sought to get a second bite of the apple, and requested a reconsideration of their denied requests. Then Defendants could not refute the facts presented in Dr. Wang's letters of November 19, and December 5, 2015 to Your Honor.

And now Defendants' frivolous new Letter of November 11, 2016 again presented no arguments at all. The Honorable Court should again simply disregard it.

Tellingly Defendants' new Letter is again conspicuously silent on their consultation with other parties before seeking judicial intervention, because looking into that could only confirm *Plaintiff*'s counsel are working hand in glove with *Defendants*' counsel in concerted effort to push the case to dismissal and to dissuade prospective new counsel from taking the case, see the attached letter of Dr. Wang to Mr. Moore[1].

In a hearing they requested in collaboration, the counsel of both Defendants and of Plaintiff will again collaborate to argue for Defendants to dismiss the case. Preventing the resolution by merits in contravene to Your Honor's orders and concealing the key evidence, Defendants are seeking to cause irreparable prejudice to Plaintiff and manifest injustice.

As Defendants like to have it, since Defendants and Plaintiff's counsel' plainly misleading arguments and duplicitous behavior have derailed the litigation long enough, Defendants should be allowed to interfere the Court's disposition of Plaintiff's counsel's withdrawal and to dismiss the case. In the event Defendants and Plaintiff's counsel continue their collaboration to dismiss the case and to prevent new prospective counsel to take the case, Plaintiff reserves its right to petition the Honorable Court to exercise its authority and inherence power to conduct a full investigation and/or at the Honorable Court's pleasure to direct Plaintiff's counsel to represent Plaintiff diligently and faithfully, before new counsel make appearance and the final disposition of the withdrawal motion. Mr. Collins now admitted that "the evidence is clear that defendants stole[2] from you and are liable to you in the many millions of dollars", see the Letter of Wang to Moore, at 3. Mr. Munves admitted that "the case is extremely meritorious". So Plaintiff's counsel should have no objection.  It is patently improper for Defendants to interfere and to deprive the Court's options and their adversary's rights to litigate.

In contrast, it will not prejudice Defendants in any way to allow the new prospective counsel and also the Honorable Court sufficient time to overcome the huge obstacles the counsel of both Defendants and Plaintiff created in collaboration, and to unravel the plainly misleading arguments they jointly stuffed into Plaintiff's and even its expert's mouth. In due course,

---

[1] Defendants in clandestine collaboration with Plaintiff's counsel are threatening to terminate my efforts to secure new counsel and to push the case to dismissal.   Thus the Court has the right to be informed pursuant to, e.g., Fed. R. Civ. P. 24(a)(2). My Letter to Mr. Moore could serve as a notice under Fed. R. Civ. P. 24(c).   If I am mistaken, I apologize, but I am confident that the Court is fully capable to disregard any part of the attached letter if it falls outside the limit.

[2] Mr. Collins neglected the evidence Defendants **used** ACE, as in his revision of SJ Opp. Memo of May 28, 2014, and Defendants' Letter of to the Court of November 11, 2015 at 2 suggested, see my Letter to the Court of November 20, 2015 at 4.

Plaintiff's new counsel will submit Plaintiff's own sanction motions against Defendants, and render Defendants fee sanction against Plaintiff moot without the extra burden and wasteful work Defendants are trying to impose on the Court.

      I apologize for the delay and the enormous difficulty in this case caused by Defendants and Plaintiff's counsel confronting not just new prospective lawyers but the Honorable Court. I hope that no party will see it fit to burden the Court further before full consultation with all the other parties in good faith.

      Thank Your Honor's consideration.   I wish Your Honor and every one in Your Honor's Chambers all have a wonderful Holiday Season!

Respectfully submitted,

_____

Xiaolu Wang, Ph.D.,

cc via email to:
Christopher Moore
Jennifer Kennedy Park
Nathaniel E. Jedrey
Russell Munves,
Todd Collins



# ADVANCED ANALYTICS, INC.

1050 George St. Suite 5M, New Brunswick    NJ 08901    Phone (848) 702-1435 Fax (732) 729-0679

November  30,  2016

Xiaolu Wang, Ph.D.

**Confidential**

email to cmoore@cgsh.com

Christopher Moore
Cleary Gottlieb
City Place House
55 Basinghall Street
London EC2V 5EH

Re: _Advanced Analytics, Inc. v. Citigroup Global Capital Market, Inc. et al._
_04 Civ. 3531 (LTS)(HBP)_

Dear Chris,

For the same undisputed reasons in my letters of November 19, and December 5, 2015 to Hon. Pitman, Defendants' requests reiterated in their letter of November 11, 2016 are clearly improper.

**Defendants' feigned concern of Plaintiff's counsel becoming deadbeat is a pretext for their improper attempt to stop Plaintiff' effort to recruit new attorneys and to preempt the Court's investigation.**

Your new Letter asked the Court to reconsider Defendants' request to rule on "the precise amount" of fees due to Defendants from sanctioning Plaintiff "and its counsel for the untimely submission of the Fourth Declaration of Jianqing Fan".

Surely Defendants would require the Court to determine precisely from whom, "so that they can promptly recover this amount", *i.e.* to determine what transpired to "the untimely submission" and who were responsible.

Plaintiff certainly will not waive attorney-client privileged protection on its communications between its counsel.   But Defendants may be aware the likelihood that Plaintiff asked that expert's declarations, such as Fan 4th Declaration, be prepared and submitted only for support of the motions pursuant to FRCP 37(b) to sanction Defendants for their massive spoliation and systematic violation of the *existing* discovery orders; To sanction Defendants for submitting false declarations in support of SJ motion in bad faith; And other motions of issues of non-merits, and use ***only*** citations of the original factual evidence discovered in Fan 4th   Decl. in its opposition to SJ motion.

The Court's March 26, 2013 Order *correctly* held, at 32-34, that the use of experts' declarations such as Fan 4th   Decl. for all these non-merits purposes would *not* violate either the schedule order of Jan. 2012 or FRCP 16(a) or 26(a). The Court's Order of June 5, 2014 also correctly held that the factual material cited from Fan 4th Decl. are admissible in summary judgment opposition papers.

Therefore Defendants may be aware that very likely Plaintiff would not be sanctioned and Defendants could only look to penalize Plaintiff's counsel under March 26, 2013 Order. The obvious question is: *why would Defendants want to do that*?

Despite of the warning written on the wall: claiming violation of schedule order to submit Fan 4th Decl. in supporting SJ opposition without justification could be setting up Plaintiff for sanctions, unfortunately Plaintiff's counsel *insisted to do* exactly that.

Completely *independent of and before* the SJ opposition, Fan 4th Decl. was provided to Defendants accompanying Plaintiff's letter of June 4, 2013 to Moore, Ex. 1, to satisfy the meet-and-confer requirement for the support of forth-coming Plaintiff's FRCP 37(b) sanction letter-motion filed on June 17, 2013.

Yet in all briefs, with *Defendants' collaboration and consent*, Plaintiff's counsel misstated to both Judge Pitman and Judge Swain that Plaintiff prepared and submitted Fan 4th Decl. *not* for the support of Plaintiff's FRCP 37(b) spoliation sanction motion, and *deleted* the fact that Plaintiff had already moved in its letter-motion on June17, 2013 for the spoliation sanction.   Defendants and Plaintiff's counsel collaborated in preventing both Judges from consideration of Plaintiff's FRCP37(b) sanction letter-motion, and misrepresented that Plaintiff only argued for spoliation sanction improperly *within* SJ opposition brief, and that (despite of Plaintiff's pending FRCP 37(b) sanction letter-motion) Plaintiff only applied for a leave for a motion to reopen discovery under FRCP 16(b) and 37(a). Plaintiff's counsel succeeded with their plainly misleading arguments

echoing Defendants', and duplicitous behavior suggested by Defendants.   **Plaintiff's counsel did and achieved exactly what Defendants wanted them to do.**   To be fair to Plaintiff's counsel, Defendants should reward Plaintiff's counsel, big time. **So why would Defendants want to penalize Plaintiff's counsel?**   And Defendants repeatedly insisted the Court to work to determine "the precise amount" of the penalty. **What is Defendants' real purpose?**

Unless Defendants were involved, caused, in addition to consent to, Plaintiff's counsel's plainly misleading arguments and duplicitous behavior that derailed the litigation and injured Plaintiff, it is clearly improper for Defendants to request for participating the hearing to intervene the Court's investigation relating the events relating to Plaintiff's counsel's behavior and withdrawal.   If Defendants were involved, then Defendants, instead of Plaintiff, should be sanctioned together with Plaintiff's counsel, not be permitted to benefit from their misconduct. Plaintiff is the victim, and should be protected from further railroading and prejudice.

Either way, Defendants' request for the fees is a ruse. Its real aims are to mislead the Court, to interfere the Court's investigation, and to stop Plaintiff's effort to recruit new counsel.

## Defendants' consultation/negotiation could only confirm Defendants and Plaintiff's counsel's concerted effort to push the case to dismissal, to dissuade prospective new counsel from taking the case.

Plaintiff pointed out, e.g., in my letter of Nov. 20, 2015, 2-3 to Hon. Pitman, that the fees would never become an issue, even if it were *not* a ruse and all of Defendants' wishful "if's" would become true, because of many easy solutions without ever effecting the Court's schedule.

Defendants ignored all the easy solutions, but through Pl's counsel, made certain settlement proposals to tie the release of the relatively small amount of the fees to Plaintiff's agreement to "walk away" from the entire case for nothing.

As Todd's email of Nov. 11, 2016 to me, Ex. 2, *correctly* pointed out: Defendants' offer was *not* meaningful. Todd added "the evidence is clear that defendants stole from you and are liable to you in the many millions of dollars, and that the settlement offer they have presented to you represents nothing." Russ confirmed that "if the Court understands, then they will deny SJ", and "based on the records, the Court could find misappropriation against Defs in summary judgment."

Yet, as you know, *before* November 10, 2016 when Todd reported that Defendants would write to the Court on either Nov. 11th or 14th,   for "many months" from the very start Plaintiff's counsel have represented Defendants' meaningless settlement offers—whatever they are, *to be real*, and *urged* Plaintiff to accept these settlement offers and "walk away" from the

case for nothing, see *e.g.*, Ex. 3, Dr. Wang's email to Plaintiff' Counsel on June 3, 2016 and Ex. 4, Plaintiff's counsel email to Dr. Wang on March 24, 2016, because of their concern of "the Court's obvious hostility" to Plaintiff and "extreme skepticism" about Plaintiff's briefs.

Plaintiff does *not* believe *at all* so-called "hostility". As indicated above, obviously the "skepticism" was inevitably resulted from the plainly misleading argument and duplicitous behavior by Plaintiff's counsel who echoed Defendants. The counsel jointly procured the rulings. There was absolutely no ways either the Judges could have known exactly who were responsible for the plainly misleading argument and duplicitous behavior.

The Court issued the correct ruling on June 5, 2014 which denied Defendants' improper request of June 2, 2014 to exclude the factual material cited in Plaintiff's 56.1 Response. The absolutely correct ruling was issued within 3 days, before Plaintiff's counsel could have submitted their usual opposition brief. So Defendants should not blame Plaintiff's counsel.

As you know, contrary to the assertion of Todd's email of Nov. 11, Ex.2, Defendants' negotiation proposals as represented by Plaintiff's counsel are unclear, comparing Ex. 2 with Ex. 4, Plaintiff's counsel's email to Dr. Wang on March 24, 2016.   Despite Defendants' proposals were not meaningful, Plaintiff in good faith negotiation effort asked Defendants to put their settlement proposal in writing, around noon of Nov. 11, see Ex. 1.   But Defendants rushed your Letter to the Court later in the afternoon.   Todd informed Plaintiff that Plaintiff's counsel only presented Defendants' oral proposals to Plaintiff, but did not present Plaintiff's responses or requests to Defendants, see Ex. 2.

If Defendants are serious about negotiation/consultation with Plaintiff before seeking judicial intervention, please write to Plaintiff's counsel, and ask them to forward your written proposal/settlement offers to Plaintiff to try to solve the issues.

**This Letter with the exhibits also serve Plaintiff's goal of good faith negotiation, and are designated <u>Confidential</u>. All privileges are expressly preserved.**

If the Court has "extreme skepticism about" the SJ Opposition Memorandum revised on May 28, 2014, it is because this brief again stuffed *Defendants'* plainly misleading arguments and false claims, into *Plaintiff*'s mouth like previous briefs, and also into *Plaintiff*'s expert' mouth, that could mislead the Court to dismiss the case and deter new prospective counsel from taking the case, see Ex. 3.

As you know, in Plaintiff's April 25, 2014 Revision of SJ Opp Memo*, all* citations from Fan 4th Decl. *had already been* expunged clean. Yet the May 28 Version of SJ Opp Memo revised *all* of the following 10 material issues out of existence: Sec. B-L, p.3-20 presented in Plaintiff's April 25 Revision, see Ex. 5, Table of Contents.

One huge obstacle confronting new prospective counsel and the Court is to unravel the voluminous misleading arguments that both Defendants and Plaintiff's counsel put into Plaintiff's and even Plaintiff expert's mouths. That is obviously a time-consuming daunting task.

Obviously, it is improper for Defendants to participate in a hearing involving attorney-client privileged communication, such as the hearing requested by Defendants, as indicated by this Letter.

Sincerely yours,

_____

Xiaolu Wang, Ph.D.

cc
via Facsimile to Hon. Henry **PITMAN**
via email to :
Jennifer K. Park
Nathaniel E. Jedrey
Russell D. Munves
Todd S. Collins

**EX. 1**

1622 LOCUST STREET   |   PHILADELPHIA, PA 19103-6305   |   PHONE: 215/875-3000   |   FAX: 215/875-4604   |   WWW.BERGERMONTAGUE.COM

# Berger&Montague,P.C.

ATTORNEYS AT LAW

**Todd S. Collins**

WRITER'S DIRECT DIAL   215/875-3040

WRITER'S DIRECT FAX   215/875-5715

WRITER'S DIRECT E-MAIL   tcollins@bm.net

June 4, 2013

**VIA E-MAIL**
Christopher Moore, Esq.
Cleary, Gottlieb, Steen & Hamilton, LLP
1 Liberty Plaza
New York, New York 10006

Re:  **Advanced Analytics, Inc. v. Citigroup Global Markets Inc.**, *et al.*
**No. 04 CIV. 3531 (LTS)(HBP)**

Dear Chris,

We believe that Defendants have violated the Court's discovery Orders of July 3, 2007 (Dkt.75 (July 5, 2007)) (requiring  Defendants "to produce the Yield Book sequences for the period from April, 1999 through the present.", ¶1.);  August 31, 2007 (Dkt.81 ) (requiring Defendants "to produce an affidavit or affirmation pursuant to 28 U.S.C. §1746 from an individual or individuals with first-hand knowledge attesting to the authenticity of the sequences that have been produced.",  ¶2., and "to produce the 1000-path sequence discussed at the August 21, 2007 conference." ¶3.) ; and June 2008 (Dkt. 110) ("Defendants are directed to produce their development and testing files to plaintiff". Page 8).

Defendants violated these Orders  by failing to produce the sequences that Defendants actually used for production, including the ACE sequences and sequences derived from ACE; by producing sequences that were represented to be, but were not, sequences used by The Yield Book; by failing to produce sequence development and testing documents; by failing to produce documents and code identified in Dr. Teytel's Notebook; by failing to put forward a person with first-hand knowledge to give a sworn statement as to the authenticity of the sequences in discovery; and by failing to produce other documents and code.  We intend to move for sanctions under Rule 37 and the inherent power of the Court.

We also believe that Defendants engaged in spoliation by destroying or materially altering relevant documents that Defendants had a duty to preserve, and doing so with a culpable state of mind.

# Berger&Montague,P.C.
### ATTORNEYS AT LAW

Christopher Moore, Esq.
June 4, 2013
Page 2

We would like to conduct with you a conference regarding the motion that we intend to file.  Are you available, please, sometime tomorrow afternoon?  Thanks very much.

Sincerely,

Todd S. Collins

TSC/dlg

cc:    Russell D. Munves, Esq. (via e-mail)
       Jennifer Kennedy Park, Esq. (via e-mail)

kal5802503_920_1.docx

**Ex.2**

From:  Todd Collins tcollins@bm.net
To: Xiaolu Wang
Cc: 'Russell Munves'; Todd Collins

Subject: RE: AAI v. Citigroup

My response was that I would communicate with you about what Jedrey said.  I added that, while I would of course relay Jedrey's message to you,  the evidence is clear that defendants stole from you and are liable to you in the many millions of dollars, and that the settlement offer they have presented to you represents nothing.

You ask what defendants' proposal is.  It is simply what I set forth below and what Russ and I communicated to you when the offer was first made many months ago:  in exchange for defendants dropping the claim for costs, you release defendants.  There was no mention of defendants releasing you on the counterclaim and the claim for attorney's fees, though of course we could discuss that with defendants.  I did not address defendants' release of you, since I did not want to create the impression that you have any interest in accepting defendants' offer [redact].

You ask that I request that defendants put their offer in writing. I will do so if you insist, but I strongly advise against that.  I have told you what their offer is.  Asking defendants to put the offer in writing could give the impression you consider the offer substantial or meaningful.

I did not tell Jedrey that Russ is away, as that is not Jedrey's business.   I do not know Russ's schedule.

[Redacted].

_____
Todd Collins
Berger&Montague,P.C.

From: Xiaolu Wang [mailto:xiaolu@wangresearch.com]
Sent: Friday, November 11, 2016 12:24 PM
To: Todd Collins <tcollins@bm.net>
Cc: 'Russell Munves' <munves@samlegal.com>; Xiaolu Wang <xiaolu@wangresearch.com>
Subject: re: AAI v. Citigroup


Todd,

What were your responses to Jedrey on each of the issues he raised?

I have replied to your advice but got no responses in substance since.  What exactly is defendants' proposal? If Defendants are serious about resolving the issues through consultation and negotiation, they should put their proposal in writing.  Ask them to do so, please.  Then you can forward their

proposal to everyone and we can discuss.  Defs should not ask you write proposals for them, because you are Plaintiff's lawyer, not defendants' lawyer.

Did you tell Jedrey that Russ is traveling on vacation?  Will Russ be back from travel next week?

Xiaolu

From: Todd Collins [mailto:tcollins@bm.net]
Sent: Thursday, November 10, 2016 2:23 PM
To: xiaolu@wangresearch.com
CC: Russell Munves
Subject: AAI v. Citigroup

Jedrey, one of the attorneys working for defendants, called today to say that defendants will write to Judge Pitman tomorrow or Monday to ask, as they did in a letter to the court a year ago, that the court enter an order regarding the costs owed with respect to the ruling on the Fan Declaration, and also to ask that the court schedule a hearing on plaintiff's failure to hire new counsel.  Jedrey also reiterated defendants' proposal of several months ago, to which plaintiff never responded, that defendants drop the claim for costs in exchange for plaintiff's release of defendants.

Xiaolu, I am available to discuss this at your convenience.  Russ is traveling, but we can try to arrange a time when he could join us on a call.

_____
Todd Collins
Berger&Montague,P.C.

# Ex.3

**From:** Xiaolu Wang [mailto:xiaolu@wangresearch.com]
**Sent:** Friday, June 3, 2016 11:47 PM
**To:** Russell Munves <munves@samlegal.com>; 'Todd Collins' <tcollins@bm.net>
**Subject:** re: AAI - Chris Moore Call

Todd and Russ,

Glad to hear that Russ agrees with me on the undisputed facts regarding the merits of the case in my email of May 9, at 5:07pm, resent on 11:35pm as below, and that Russ believes "AAI should win summary judgment if the Court fully comprehends the evidence".

Regarding your SJ Opp. Br., I still have heard nothing from either of you to the 2 simple questions in blue.

1. Please explain your basis for your False Claim that YB Monte Carlo code could generate ACE, e.g., "gauss_random.c generated ACE64". Your Br. cited the 2nd Fan Dec. as support. But I found no such purported cites there or anywhere.

Defs mischaracterized Pl' claim as the False Claim. Then Defs argued that they should be awarded SJ because their False Claim is false. Defs' 56.1, Para. 9, 18, 19 admitted that ACE are low discrepancy seq., cannot be generated by YB Monte Carlo code, and consequently ACE must be *read* from data files.

I had urge you to present Pl' claims, and that Defs' admission exposed "YB seq" by their definitions, are not the seq. used by TYB, and the reason why Defs surgically deleted the entire YB production code relating to seq. from discovery—the code read ACE, and Defs' programmers' admission that the seq. used by their traders were not generated by Monte Carlo code but are ACE seq read from data files.

Your Br. rejected all, but covered up Defs' admissions and claimed the reason YB Monte Carlo code could not generate ACE during the testing, was "As explained in the 2nd Fan Dec. paras. 44-45 (Walker ex. E), Defendants did not possess seeds to generate ACE sequences, meaning that they could not generate ACE by simply feeding seeds into their random number generator." Once modified, presumably with "seeds to generate ACE seq.," their Monte Carlo code gauss_random.c "could be used only to **generate** ACE seq.", at 13.

Contrary to the False Claim, Para. 43 of Fan 2nd Decl. cited Teytel notebook: under "ACE64 comparison for Ids 100",  Teytel used the code gauss_random.c modified with a code line "***to read in*** the ACE sequences. This is crystal clear evidence that Teytel had possession of the ACE64 sequence." Para. 44 stated "gauss_random.c program [was] modified by Robert Russell ***to read in*** the ACE sequences during testing."  Ditto for  para. 45, so "Teytel was using ACE in his development work."

I had explained to you, that the False Claim is not our claim but Defs', and in addition (1) the False Claim would imply ACE seq. not a trade secret, contrary to the holdings of both Judges, see R&R, Sec.1-3, p7-10; (2) It would preempt ACE theft claim, both ACE Verbatim Use Claim and ACE Derivative Use Claim. Why Defs would prepare and install ACE Theft Code to steal ACE seq. if their public domain Monte Carlo code could generate ACE seq.?

2.  Why did your Br. not expose that all the "YB seq.", aka "Defs' seq", especially all Decoy Seq. II are phony?

We cannot blame the Court for "extreme skepticism about our case" while putting false claims into Pl and Pl's experts' mouths and covering up Defs' fraud.

Todd proposed "Tell us if you or your prospective new counsel need more information on which to base your decision."  Please just explain the 2 simple questions. This is "what is important now".

Regards,

Xiaolu


**Sender:** Xiaolu Wang [mailto:xiaolu@wangresearch.com]
**sent:** Monday, May 9, 2016 11:35 PM
**to:** 'Russell Munves'; 'Todd Collins'
**Subject:** re: AAI - Chris Moore Call


Todd and Russ,

You advised me that we should take Moore's proposal and walk away from the case for nothing because the Court will grant SJ for Defs. So before we respond to Moore, we should assess the posture of SJ., the undisputed facts and your Opp. Br. You cannot possibly " bring prospective new counsel up to speed" if you are not up to speed, but tell them we will lose SJ.

So please answer the two simple questions in blue. They are based on your Br.. If you think the assessment on Br. are inaccurate, then it is easy for you to say so and point out a counter-example from your Br. why. Otherwise the statements from Br. on Pl's behalf are baseless, and may mislead the Court. We should correct. Then we will win SJ, rather than to lose the case as you proposed.

Undisputed facts.

You agree that the 56.1 papers demonstrated two undisputed facts: (a) Defs concealed all the Yield Book production code relating to sequences, and (b) that code read in ACE sequences to

generate interest rate paths for their traders. Under FRCP 56, the Court may consider Pl's claim of misappropriated trade secret established.

A mountain of additional physical evidence and Defs' employees' admissions, admissible but *not* cited in the 56.1 papers, also proved the two facts (a), (b) and:

***ACE Verbatim Use Claim***: TYB production code used exclusively by their internal users do not use TYB generators (i.e. YB Monte Carlo code) but ***read in*** the stolen ACE seq. from data files. Defs' traders relied on ACE Seq for arbitrage.

Defs mischaracterized Pl's Verbatim Use Claim as " 'YB seq.' incorporated ACE seq.", p.1 , p.8, SJ Memo; where in Defs' semantic game, the term "YB seq." aka "Defs' seq.", is, as *defined* in Radak Decl, the seq. generated either by the Radak Monte Carlo code created in 2007 ( "**Radak Seq. I**" ), or in Polish decl's, by YB Monte Carlo code ("**Decoy Seq. II**"), from the decoy mixed seeds. So *Defs'* mischaracterization of *Pl's* claim always implies: "YB Monte Carlo code can generate ACE Seq.." ("False Claim")

Defs knew their False Claim is false, i.e., TYB code cannot generate ACE Seq.. Defs' semantic game translated this fact to "'YB seq.' cannot contain ACE", as in Polish Decl., and cited as "evidence" for "TYB does not use ACE", despite Defs' 56.1 St., Para. 18, 19 admitted TYB don't generate ACE but *read in* ACE as data files. Their SJ is based on their laughable semantic game, see "Second", p. 21, SJ Memo.

So Defs' admission that when using ACE, TYB read in ACE as data files, did not rebut but supported Pl's Verbatim Use Claim. In addition their admission exposed Defs' misdirection to "Defs' seq." from the seq. used by TYB, and that Defs *defined* "Defs' seq" *to exclude* ACE seq. not generated by YB Monte Carlo code.

Defs' admission also demolished Defs' "irrelevant" excuse to their concealment of YB production code. That YB code reads in ACE. This was why from the start of litigation Defs misrepresented that they had produced the entire YB production code when they withheld all of them, and why Defs misrepresented 15 times in Sep. 5, 2012, the Radak Monte Carlo code of 3 files as the concealed YB production code of hundreds files generating interest rate paths.

Defs' programmers admitted that TYB code for their traders do *not* use their Monte Carlo code to generate seq., *i.e.*, do not use any of "YB seq.", but only read in seq (as such, the seq. cannot be "theirs" but can only be ACE seq. as admitted by Russell 2007 dep. 198: 10-14). For Defs' admission that the seq. used for calibration is super ACE seq, see F9 and Sec. C of Fan 4th.; for Defs' admission that all the seq. used for pricing are subseq of the super ACE seq., and are ACE Seq., see Sec. F8 and Sec. C of Fan 4th.; See para. 20, 46 and 49, 61, of 56.1 Response.

Your SJ Opp. Br.

You asked me to read our SJ papers. Your Opp. Br. of May 28, 2014 avoided Pl's claims and the undisputed evidence (a), (b), p.19, but made the False Claim that Defs' Monte Carlo code could "generate ACE", e.g., "gauss_random.c generated ACE64", see the Second para., p.13.

Your Br. dodged Defs' admissions and all the evidence to Defs' ACE Verbatim Use, calling "it is red herrings", P. 21.

Please explain your basis for this False Claim. Your Br.. P.13 cited para. 44-45 of Fan 2nd Decl. as support. But I found no such alleged cite there or anywhere.

Contrary to False Claim, para. 31-32 of Fan 2nd Decl stated that ACE seq. are "an incredible mathematical feat involved...mathematical calculations", could not generated by TYB code but read in by TYB; in contrast "Defs' seq" must be "generated from the "seeds fed into public domain pseudo-random number generator (i.e., the Monte Carlo code), each time", i.e., if any seq. used by TYB is *not* generated by their Monte Carlo code, then the seq is read in and is an ACE seq.

Fan Report, 1st and 2nd Decl, citing a mountain of evidence also proved:

> ***ACE Derivative Use Claim***: Teytel's one and the same algorithm targeted the stolen ACE to select all the LDS sequences ("**ACE Derivative Seq. III"**), which are generated by TYB Monte Carlo code using not decoy seeds but seeds read in through environmental variable "sfile".

Defs' argument that "Pl cannot show similarity or derivation of 'YB seq' to ACE" also failed to rebut ACE Derivative Use Claim, because both Radak and Polish testified that they had no firsthand knowledge to the seq. used by TYB, and Defs' 56.1 papers could not dispute the fact that all the "YB seq" are phony.

Why did your Br. not expose that all the "Defs' seq" and all Decoy Seq. II are phony?


Thanks,

Xiaolu

# Ex. 4

Plaintiff's counsel's email to Dr. Wang on March 24, 2016

Xiaolu,

    Chris Moore called. He proposed to settle on the basis of what he called a "walk-away" – no payment to either side, and the case is over.  Included in that proposal is that Citigroup would not collect on the fees that the court awarded on Citigroup's motion for sanctions.

    We did not discuss with Chris whether AAI would need to pay fees under paragraph 21 of the Non-Disclosure Agreement (attached); if we were to enter into a walk-away type settlement, we would insist on no such payment.

    [redacted]

## **TABLE OF CONTENTS**

I.    FACTUAL BACKGROUND ...................................................................2

      A.    What the Yield Book Is and Does and the Role of Sequences ...............................2

      B.    Defendants Test ACE Sequences, the Results Show ACE Is Superior, but
            Defendants Do not License ACE............................................................3

      C.    Shortly After the Last Test of ACE, Defendants Hired Dr. Teytel to Create
            ACE Derivative Sequences for Use in Production .................................................5

      D.    Perhaps the Most Direct Evidence that Dr. Teytel's Real Algorithm Was
            to Target ACE, and not the supposed Teytel Algorithm, Is a Statistical
            Test Performed by Dr. Fan on a Sequence Disclosed in Dr. Teytel's
            Notebook......................................................................................8

      E.    Defendants' Production of (or Failure to Produce) Sequence Testing and
            Development Files Supports the Conclusion that Defendants
            Independently Developed No Sequences Used in Production and that
            Instead They Use ACE and ACE Derivative Sequences. ........................................8

      F.    Just Prior to the Last Test of ACE, Defendants Began Installing a Large
            Suite of Code Files to Permit Their Traders to Perform Portfolio Hedging..........10

      G.    Other Evidence of the Theft and Use of ACE .......................................................11

      H.    In View of the Material Issues that Arise over Whether the Alleged
            Sequences Are the Real Sequences, Reasonable Jurors Could Conclude
            (Indeed, Would Be Practically Compelled to Conclude) that the Real
            Sequences Are ACE or ACE Derivatives............................................................13

      I.    Defendants' Use of ACE Derivative Sequences Was Not Detectible from
            the RCS Files Produced by Defendants. ...............................................................14

      J.    Despite Being Ordered to Do So, Defendants Failed to Produce
            Competent Evidence that the Sequences They Produced in Discovery Are
            the Sequences They Use ........................................................................15

      K.    Failure to Compare ACE to the Sequences Defendants Produced in
            Discovery is Dispositive of Nothing, Because the Record Demonstrates
            that Defendants Made Material Misrepresentations Concerning those
            Sequences and They Do not Even Constitute Competent Evidence.....................16

L.     Likewise, Failure to Compare ACE to the Sequences Plaintiff Could Generate from the RCS Code Produced in Discovery Is Dispositive of Nothing, Because There Is No Competent Evidence that the Sequences that Defendants Used Were Generated by The Yield Book Code Produced in Discovery, Using the Seeds   Contained in That Code.............................17

II.    ARGUMENT ...........................................................................................................20

A.    Material Disputes Exist Regarding Defendants' Misappropriation of the ACE Sequences.................................................................................................21

B.    Defendants Provide No Basis for Dismissing Plaintiff's Contract Claim ............23

C.    Court Should Deny Defendants' Motion on the Basis of Their Violation of Court Discovery Orders and Spoliation of Relevant Evidence ...........................23

III.   CONCLUSION.......................................................................................................25

1622 LOCUST STREET   |   PHILADELPHIA, PA 19103-6305   |   PHONE: 215/875-3000   |   FAX: 215/875-4604   |   WWW.BERGERMONTAGUE.COM

# Berger&Montague,P.C.
### ATTORNEYS AT LAW

**TODD S. COLLINS**

| | |
|---|---|
| **WRITER'S DIRECT DIAL** | 215/875-3040 |
| **WRITER'S DIRECT FAX** | 215/875-5715 |
| **WRITER'S DIRECT E-MAIL** | tcollins@bm.net |

December 12, 2016

<u>**Via Fax:  (212) 805-6111**</u>
The Honorable Henry Pitman
U.S. Magistrate Judge
Daniel Patrick Moynihan
U.S. Court House
500 Pearl Street
New York, NY   10007-1312

      Re:    *Advanced Analytics, Inc. v. Citigroup Global Market, Inc., et al.*
            No. 04-cv-3531 (LTS) (HBP)

Dear Magistrate Judge Pitman:

      We write in response to Mr. Moore's letter of December 6.

      Mr. Moore argues that Dr. Wang's letters of November 30, 2016 violate the Court's August 5, 2015 Order.  In view of our pending motion for leave to withdraw, we do not feel it appropriate for us to address the substance of Mr. Moore's argument, apart from pointing out that, of course, Dr. Wang is a non-lawyer, and in writing these letters, and in assessing the impact of the August 5, 2015 Order, Dr. Wang, as far as we know, did not have the benefit of legal advice.  With respect to Dr. Wang's November 30 letters, we will address Dr. Wang's compliance with that Order if the Court wishes us to do so.

      Defendants have demanded that Dr. Wang's produce certain attorney-client communications on the grounds that Dr. Wang has waived protections afforded by the attorney-client privilege concerning Dr. Wang's allegations of false statements on behalf of Plaintiff in Plaintiff's opposition brief to the pending summary judgment motion.  As a preliminary matter, Defendants are improperly attempting to use a dispute between Dr. Wang and counsel as a wedge to allow them access to privileged attorney-client material.  Defendants have no need for this material, and it would gravely prejudice Plaintiff if they were allowed access to it.

      Moreover, in order to evaluate Dr. Wang's claim of false statements, there is no need to delve into privileged materials on the alleged ground that "it now appears that AAI *agrees* that

# Berger&Montague,P.C.
### ATTORNEYS AT LAW

The Honorable Henry Pitman
December 12, 2016
Page 2

certain of the allegations underlying [Plaintiff's] claims were false." Mr. Moore's letter, page 2 (emphasis added).

An examination of Plaintiff's opposition brief itself is sufficient to establish that Plaintiff's opposition brief contained no statements that could be materially misleading. The language that Dr. Wang complains about in Plaintiff's brief states, "It [code file gauss_random.c] would be used only [to] generate ACE64" (opposition brief at p. 13, bottom of the paragraph starting with the word "Second"). What is meant by "generate" in this context is explained just above that statement in the same paragraph. The second sentence of that paragraph explains that gauss_random.c was modified by Defendants' employee Robert Russell during the testing of ACE to permit gauss_random.c to read in the ACE numbers rather than actually generate them. As the brief clearly states:

> Defendants did not possess seeds to generate ACE sequences, meaning that they could not generate ACE by simply feeding seeds into their random number generator. To use ACE, they had to take the ACE sequence numbers themselves, which had to be stored in an off-line data file, and read them into The Yield Book to generate interest rate paths. To accomplish this for purposes of the ACE tests, Dr. Wang helped Robert Russell modify gauss_random.c, which had as its default seed the integer-23271753. See Walker ex. PPPP p.2.

Defendants could not generate ACE, because Plaintiff never gave Defendant's access to the seeds necessary to generate any ACE sequence. This is undisputed. It is also undisputed that Defendants could only read-in ACE numbers, rather than generate them, because they did not have the seeds necessary to generate them. See Undisputed Fact 18 of Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 submitted with the pending motion which states:

> 18. Each of the four ACE Tests was conducted on a standalone computer, unconnected to Defendants' network. Russell Sept. 17-18, 2007 Dep. Tr. 3 04:4-22 (Ex. 6) ("Q....What do you remember about the tests? Everything you can recall. A. The tests were done on a standalone machine. Xiaolu would come in with his disk of numbers and the program would be set up. Insert the disk, the machine had been disconnected from the network. **And I'm not sure whether the program read the numbers directly from the disk or whether the disk file was copied to the hard disk of the standalone machine and it read it from there.** (Emphasis added.)

In light of the clear, undisputedly accurate explanation that ACE was "read in" rather than "generated", we do not believe that the isolated use of the term "generate" complained of by Dr. Wang is materially misleading, nor does it creates any prejudice. Clearly, there is no need to reference any other documents, much less privileged documents, to verify this.

# Berger&Montague,P.C.
### ATTORNEYS AT LAW

The Honorable Henry Pitman
December 12, 2016
Page 3

As for Dr. Wang's allegation that the opposition papers failed to argue that the sequences Defendants produced in discovery were not the real sequences they used, this claim is contradicted by the argument of "Similarity" on page 19 of the opposition brief.

We prefer not to burden the Court at this time with a more detailed explanation. However, if the Court has concerns, we would be happy to provide such further information as the Court deems appropriate.

Moreover, the latest round of letters to the Court simply underscores the complete breakdown of the attorney client relationship, which has made continued representation untenable.

Respectfully,

BERGER & MONTAGUE, P.C.

By _____
      Todd S. Collins
1622 Locust Street
Philadelphia, PA  19103

And

STORCH AMINI & MUNVES P.C.

By _____
      Russell D. Munves
Two Grand Central Tower, 25th Floor
140 East 45th Street
New York, NY  10017

*Co-Counsel for Plaintiff*

TSC/dlg

cc:    All Counsel (via email)
       Dr. Xiaolu Wang (via email)

kal7611972_920_1

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

D: +1 (212) 225-2000
cmoore@cgsh.com

VICTOR I. LEWKOW
LESLIE N. SILVERMAN
LEE C. BUCHHEIT
JAMES M. PEASLEE
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
ANDRES DE LA CRUZ
DAVID C. LOPEZ
JAMES L. BROMLEY
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND

DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN

MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
RESIDENT PARTNERS

SANDRA M ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
HUGH C. CONROY, JR.
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
GRANT M. BINDER
JOHN V. HARRISON
CAROLINE F. HAYDAY
RAHUL MUKHI
NEIL R. MARKEL
HUMAYUN KHALID
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

December 14, 2016

BY FACSIMILE

Hon. Henry B. Pitman
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 750
New York, NY 10007-1312

> Re:   Advanced Analytics, Inc. v. Citigroup Global Markets Inc., et al.,
> No. 04 Civ. 3531 (LTS) (HBP)

Dear Magistrate Judge Pitman:

I write on behalf of Defendants Citigroup Global Markets Inc. and The Yield Book, Inc. (together, "Defendants") in response to the letter dated December 12, 2016 (the "December 12 Letter") sent by Todd S. Collins and Russell D. Munves.

In letters of November 30, 2016 and exhibits thereto sent by Xiaolu Wang on behalf of Advanced Analytics, Inc. ("AAI") (the "November 30 Letters"), AAI alleged that its summary judgment opposition papers contained a "false claim."[1] In their December 12 Letter, AAI's counsel attempt to explain the basis for their disagreement with Dr. Wang's position, in essence arguing that "generate," as used in AAI's summary judgment opposition papers, does not, in fact, mean "generate."[2] The December 12 Letter does not alter the fact that AAI believes that there is a "false claim" in its summary judgment opposition papers, nor does it "establish" that AAI's summary judgment opposition papers contain no such "false claim."[3]

Moreover, AAI has waived privilege over communications with its counsel concerning the "false claim." The arguments to the contrary offered by AAI's counsel in the

---

[1]   November 30 Letters, p. 7 and Exhibit 3.

[2]   December 12 Letter, p. 2.

[3]   December 12 Letter, p. 2.

Magistrate Judge Pitman, p. 2

December 12 Letter are unavailing. Indeed, the December 12 Letter only serves to further demonstrate that a finding of waiver is appropriate here on the basis that AAI has (i) put "at issue" legal advice or other privileged communications, and (ii) selectively disclosed such communications.[4] *First*, the November 30 Letters and now the December 12 Letter have both put at issue the substance of AAI's communications with counsel about the alleged "false claim." *Second*, although Dr. Wang is not a lawyer, he clearly understood that the communications he disclosed were privileged and confidential, which he noted in bold, underlined text in the November 30 Letters,[5] and nevertheless chose to disclose selections therefrom in order to "serve Plaintiff's goal"[6] of demonstrating that AAI's summary judgment opposition papers contained a "false claim."

        For the reasons set forth in Defendants' November 11, 2016 letter and above, Defendants respectfully reiterate their request that the Court schedule a status conference to resolve these and the other issues that Defendants have raised.

        Respectfully submitted,

        CLEARY GOTTLIEB STEEN & HAMILTON LLP

        Christopher P. Moore

cc:    Russell D. Munves (via e-mail)
       Todd S. Collins (via e-mail)
       Dr. Xiaolu Wang (via e-mail)

---

[4]    <u>See</u> Defendants' letter dated December 6, 2016.

[5]    <u>See</u> November 30 Letters, p. 7.

[6]    <u>See</u> November 30 Letters, p. 7.

1622 LOCUST STREET   |   PHILADELPHIA, PA 19103-6305   |   PHONE: 215/875-3000   |   FAX: 215/875-4604   |   WWW.BERGERMONTAGUE.COM

# Berger&Montague,P.C.
ATTORNEYS AT LAW

TODD S. COLLINS

| WRITER'S DIRECT DIAL | 215/875-3040 |
| WRITER'S DIRECT FAX | 215/875-5715 |
| WRITER'S DIRECT E-MAIL | tcollins@bm.net |

December 1, 2016

**Via Fax:  (212) 805-6111**
The Honorable Henry Pitman
U.S. Magistrate Judge
Daniel Patrick Moynihan
U.S. Court House
500 Pearl Street
New York, NY   10007-1312

Re:    *Advanced Analytics, Inc. v. Citigroup Global Market, Inc., et al.*
No. 04-cv-3531 (LTS) (HBP)

Dear Magistrate Judge Pitman:

In his letters to the Court and to defense counsel of November 30, Dr. Wang levels false accusations of improper behavior at Mr. Munves and myself.  While Mr. Munves and I do not wish to burden the Court, we would gladly address these accusations, preferably on an ex parte basis (copying Dr. Wang, of course).

Further, we have cooperated fully with Dr. Wang's efforts to find new counsel by providing prospective counsel who contacted us with the documents permitted by the Court's Order, and Mr. Munves spent many hours explaining the case to them. We remain available to assist incoming counsel.

# Berger&Montague,P.C.
## ATTORNEYS AT LAW

The Honorable Henry Pitman
December 1, 2016
Page 2

 

 

 

 

For the record, we do not seek, and have never sought, dismissal of the case.  We believe
it is meritorious.  We simply seek to withdraw because of a breakdown of communications with
Dr. Wang, a breakdown that is further demonstrated by Dr. Wang's November 30 letter to the
Court.

Respectfully,

BERGER & MONTAGUE, P.C.

By _____
      Todd S. Collins
1622 Locust Street
Philadelphia, PA  19103

*Co-Counsel for Plaintiff*

 

TSC/dlg

 

cc:   All Counsel (via email)
      Dr. Xiaolu Wang (via email)

 

kal7608636_920_2

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

D: +1 (212) 225-2000
cmoore@cgsh.com

VICTOR I. LEWKOW
LESLIE N. SILVERMAN
LEE C. BUCHHEIT
JAMES M. PEASLEE
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
ANDRES DE LA CRUZ
DAVID C. LOPEZ
JAMES L. BROMLEY
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND

DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BARSFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN

MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID F. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
HUGH C. CONROY, JR.
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
GRANT M. BINDER
JOHN V. HARRISON
CAROLINE F. HAYDAY
RAHUL MUKHI
NEIL R. MARKEL
HUMAYUN KHALID
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

December 6, 2016

BY FACSIMILE

Hon. Henry B. Pitman
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 750
New York, NY 10007-1312

Re:   Advanced Analytics, Inc. v. Citigroup Global Markets Inc., et al.,
      No. 04 Civ. 3531 (LTS) (HBP)

Dear Magistrate Judge Pitman:

I write on behalf of Defendants Citigroup Global Markets Inc. and The Yield Book, Inc. (together, "Defendants") in response to the letters dated November 30, 2016 (the "November 30 Letters") and December 2, 2016 (the "December 2 Letter") sent by Xiaolu Wang on behalf of Plaintiff Advanced Analytics, Inc. ("AAI"), and to reiterate Defendants' request for (i) a ruling on the amount and timing of payments due to Defendants under the Court's March 26, 2014 Order sanctioning AAI and its counsel for the untimely submission of the Fourth Declaration of Jianqing Fan (the "Fourth Fan Declaration") and (ii) a status conference to address AAI's apparent inability to find replacement counsel in light of its current counsel's pending motion to withdraw.

## A.   AAI's November 30 Letters Violate The Court's August 5, 2015 Order

Dr. Wang sent the November 30 Letters in violation of the Court's August 5, 2015 Order, which directed Dr. Wang "to cease making any submissions to [the Court] that are not limited to plaintiff's efforts to secure new counsel or the pending motion of plaintiff's present counsel to withdraw." Order 2 (ECF No. 273). AAI's November 30 Letters were sent and signed by Dr. Wang and improperly purport to address subjects well beyond the limits prescribed in the August 5, 2015 Order, including the merits of Defendants' motion to strike the Fourth Fan Declaration (which, as noted, the Court granted on March 26, 2014) and Defendants' motion for summary judgment. Defendants respectfully request that the Court again direct Dr.

Magistrate Judge Pitman, p. 2

Wang not to communicate with the Court on subjects outside the scope of the August 5, 2015 Order.  These communications are wasteful of the Court's – and Defendants' – time and resources.[1]

Relatedly, Defendants note that one of AAI's November 30 Letters and AAI's December 2 Letter are both addressed to Defendants' counsel.  Mindful of their obligations under Rule 4.2(a) of the New York Rules of Professional Conduct, Defendants do not intend to respond to these letters and request that the Court direct Dr. Wang to cease communicating directly with Defendants' counsel on behalf of AAI.

**B.**     **AAI Has Exhibited Communications With Counsel To Its November 30 Letters That Raise Serious Questions About AAI's Conduct In This Case**

Exhibit 3 to AAI's November 30 Letters contains two emails from Dr. Wang that accuse AAI's counsel of including a "false claim" in AAI's summary judgment opposition brief, raising serious questions about AAI's conduct in this case:

- May 9, 2016 email:  asserting that AAI's opposition to Defendants' motion for summary judgment dated May 28, 2014 "made the *False Claim* that Defs' Monte Carlo code could 'generate ACE', e.g., 'gauss_random.c generated ACE64', see the Second para., p.13." Ex. 3 at 3 (emphasis added).[2]

- June 3, 2016 email:  requesting AAI's counsel to "[p]lease explain your basis for your *False Claim* that YB Monte Carlo code could generate ACE, e.g., 'gauss_random.c generated ACE64'" and asserting that AAI's counsel have "put[] *false claims* into Pl and Pl's experts' mouths …." Ex. 3 at 1, 2 (emphasis added).[3]

These are troubling charges.  While Defendants have already demonstrated in the memoranda of law submitted in support of their motion for summary judgment that AAI's claims are entirely unsupported by the evidentiary record in this case, it now appears that AAI *agrees* that certain of the allegations underlying these claims were false.

Given the seriousness of AAI's allegations, Defendants respectfully request that the Court order AAI to disclose unredacted and unedited copies of Exhibits 2, 3 and 4,[4] as well

---

[1]     AAI's November 30 Letters also violated the Court's Individual Practices in that they are dated November 30, 2016 (and were presumably sent to the Court on that date) but were only provided to Defendants on December 1, 2016.  See Individual Practices Of Magistrate Judge Henry Pitman (Apr. 8, 2016), Section 1.A (specifying that "communications with chambers shall be by letter, with copies *simultaneously* delivered to all counsel" (emphasis added)).

[2]     Defendants have appended to this letter a copy of Exhibit 3 with page numbers added for ease of reference.

[3]     Dr. Wang's emails also note that while AAI's brief cites to paragraphs 44-45 of the Second Declaration of Jianqing Fan, that source does not support AAI's "false" claims.  Ex. 3 at 1, 4.

[4]     Like Exhibit 3, Exhibits 2 and 4 are communications between Dr. Wang and AAI's counsel and AAI has waived privilege as to these communications for the same reasons set forth below.

Magistrate Judge Pitman, p. 3

as copies of all other communications with its counsel concerning the "false claims" allegedly contained in AAI's summary judgment opposition papers and expert reports.

AAI cannot be heard to say that any of the information sought by Defendants is protected from disclosure on the basis of privilege. Under New York law,[5] if a party (i) puts "at issue" legal advice or other privileged communications, or (ii) selectively discloses such communications, that party waives privilege as to all communications on the same subject matter addressed in the disclosed communications.[6] Here, AAI has done both. *First*, AAI's November 30 Letter to Defendants' counsel makes repeated references to Exhibits 2, 3 and 4 in support of its arguments and Exhibit 2 is likewise quoted in AAI's November 30 Letter to the Court. *Second*, AAI's disclosure of potentially privileged communications was selective. For example, AAI has withheld portions of the emails it has appended to its November 30 Letters, as indicated by the words "redact" or "redacted."[7] AAI also appears to have edited the email chain in Exhibit 3 by omitting the responses of its counsel, which are referenced in the first paragraph of the top email in the chain but are not included in the exhibit.[8]

Accordingly, by disclosing the communications reflected in Exhibits 2, 3 and 4 to Defendants and the Court, AAI waived any privilege that would otherwise have applied to them. AAI has also waived privilege as to any other communications with its counsel concerning the alleged "false claims" in AAI's summary judgment opposition papers and expert reports.

**C.     Defendants Respectfully Request A Ruling On The Amount Due To Them Under The Court's March 26, 2014 Order And A Status Conference**

For the reasons set forth in Defendants' November 11, 2016 letter, Defendants respectfully reiterate their request that the Court rule on the amount due to them under the Court's March 26, 2014 Order and schedule a status conference to set a deadline for AAI to retain new counsel in light of its current counsel's pending motion to withdraw.

---

[5]     New York law governs questions of attorney-client privilege in federal cases where, as here, jurisdiction is based upon diversity of citizenship. Fed. R. Evid. 501; Fed. R. Evid. 501 advisory committee's note to 1974 enactment (providing that state privilege law applies to diversity cases in federal court); N.Y. C.P.L.R. 4503 (McKinney 2016); Comprehensive Habilitation Servs. v. Commerce Funding Corp., 240 F.R.D. 78, 86 (S.D.N.Y. 2006) (noting that, where the court's "subject matter jurisdiction is based upon diversity," "state law provides the rule of decision concerning the claim of attorney-client privilege").

[6]     Am. Re-Ins. Co. v. U.S. Fid. & Guar. Co., 40 A.D.3d 486, 492 (N.Y. App. Div. 2007); Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp., 240 F.R.D. 78, 86 (S.D.N.Y. 2006). Moreover, a party is not permitted to disclose privileged communications that are helpful to its positions while withholding others that are harmful. In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000).

[7]     See November 30 Letters, Exhibits 2, 4.

[8]     AAI cannot rely upon the cases involving limited waiver, such as inadvertent disclosure in document production, extrajudicial disclosure of privileged communications, or disclosures by an employee without the authority to act on behalf of his employer. See, e.g., In re Grand Jury Proceedings, 219 F.3d 175, 183 (2d Cir. 2000). Dr. Wang, as the signatory to AAI's November 30 Letters, acted on behalf of AAI and not in his personal capacity, and thus waived on behalf of AAI any privilege that it otherwise may have been entitled to claim. See, e.g., November 30 Letter to Magistrate Judge Pitman, at 1, 3 (Dr. Wang claiming potential prejudice to "Plaintiff," not himself; addressing letters to the court on AAI letterhead; and purporting to act on behalf of AAI only until he retains counsel).

Magistrate Judge Pitman, p. 4

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Christopher P. Moore

cc:   Russell D. Munves (via e-mail)
       Todd S. Collins (via e-mail)
       Dr. Xiaolu Wang (via e-mail)

# Ex.3

**From:** Xiaolu Wang [mailto:xiaolu@wangresearch.com]
**Sent:** Friday, June 3, 2016 11:47 PM
**To:** Russell Munves <munves@samlegal.com>; 'Todd Collins' <tcollins@bm.net>
**Subject:** re: AAI - Chris Moore Call

Todd and Russ,

Glad to hear that Russ agrees with me on the undisputed facts regarding the merits of the case in my email of May 9, at 5:07pm, resent on 11:35pm as below, and that Russ believes "AAI should win summary judgment if the Court fully comprehends the evidence".

Regarding your SJ Opp. Br., I still have heard nothing from either of you to the 2 simple questions in blue.

1. Please explain your basis for your False Claim that YB Monte Carlo code could generate ACE, e.g., "gauss_random.c generated ACE64". Your Br. cited the 2nd Fan Dec. as support. But I found no such purported cites there or anywhere.

Defs mischaracterized Pl' claim as the False Claim. Then Defs argued that they should be awarded SJ because their False Claim is false. Defs' 56.1, Para. 9, 18, 19 admitted that ACE are low discrepancy seq., cannot be generated by YB Monte Carlo code, and consequently ACE must be *read* from data files.

I had urge you to present Pl' claims, and that Defs' admission exposed "YB seq" by their definitions, are not the seq. used by TYB, and the reason why Defs surgically deleted the entire YB production code relating to seq. from discovery—the code read ACE, and Defs' programmers' admission that the seq. used by their traders were not generated by Monte Carlo code but are ACE seq read from data files.

Your Br. rejected all, but covered up Defs' admissions and claimed the reason YB Monte Carlo code could not generate ACE during the testing, was "As explained in the 2nd Fan Dec. paras. 44-45 (Walker ex. E), Defendants did not possess seeds to generate ACE sequences, meaning that they could not generate ACE by simply feeding seeds into their random number generator." Once modified, presumably with "seeds to generate ACE seq.," their Monte Carlo code gauss_random.c "could be used only to **generate** ACE seq.", at 13.

Contrary to the False Claim, Para. 43 of Fan 2nd Decl. cited Teytel notebook: under "ACE64 comparison for Ids 100", Teytel used the code gauss_random.c modified with a code line "*to read in* the ACE sequences. This is crystal clear evidence that Teytel had possession of the ACE64 sequence." Para. 44 stated "gauss_random.c program [was] modified by Robert Russell *to read in* the ACE sequences during testing." Ditto for para. 45, so "Teytel was using ACE in his development work."

I had explained to you, that the False Claim is not our claim but Defs', and in addition (1) the False Claim would imply ACE seq. not a trade secret, contrary to the holdings of both Judges, see R&R, Sec.1-3, p7-10; (2) It would preempt ACE theft claim, both ACE Verbatim Use Claim and ACE Derivative Use Claim. Why Defs would prepare and install ACE Theft Code to steal ACE seq. if their public domain Monte Carlo code could generate ACE seq.?

2. Why did your Br. not expose that all the "YB seq.", aka "Defs' seq", especially all Decoy Seq. II are phony?

We cannot blame the Court for "extreme skepticism about our case" while putting false claims into Pl and Pl's experts' mouths and covering up Defs' fraud.

Todd proposed "Tell us if you or your prospective new counsel need more information on which to base your decision." Please just explain the 2 simple questions. This is "what is important now".

Regards,

Xiaolu

```
Sender: Xiaolu Wang [mailto:xiaolu@wangresearch.com]
sent: Monday, May 9, 2016 11:35 PM
to: 'Russell Munves'; 'Todd Collins'
Subject: re: AAI - Chris Moore Call
```

Todd and Russ,

You advised me that we should take Moore's proposal and walk away from the case for nothing because the Court will grant SJ for Defs. So before we respond to Moore, we should assess the posture of SJ., the undisputed facts and your Opp. Br. You cannot possibly " bring prospective new counsel up to speed" if you are not up to speed, but tell them we will lose SJ.

So please answer the two simple questions in blue. They are based on your Br.. If you think the assessment on Br. are inaccurate, then it is easy for you to say so and point out a counter-example from your Br. why. Otherwise the statements from Br. on Pl's behalf are baseless, and may mislead the Court. We should correct. Then we will win SJ, rather than to lose the case as you proposed.

Undisputed facts.

You agree that the 56.1 papers demonstrated two undisputed facts: (a) Defs concealed all the Yield Book production code relating to sequences, and (b) that code read in ACE sequences to

generate interest rate paths for their traders. Under FRCP 56, the Court may consider Pl's claim of misappropriated trade secret established.

A mountain of additional physical evidence and Defs' employees' admissions, admissible but *not* cited in the 56.1 papers, also proved the two facts (a), (b) and:

***ACE Verbatim Use Claim***: TYB production code used exclusively by their internal users do not use TYB generators (i.e. YB Monte Carlo code) but ***read in*** the stolen ACE seq. from data files. Defs' traders relied on ACE Seq for arbitrage.

Defs mischaracterized Pl's Verbatim Use Claim as " 'YB seq.' incorporated ACE seq.", p.1 , p.8, SJ Memo; where in Defs' semantic game, the term "YB seq." aka "Defs' seq.", is, as *defined* in Radak Decl, the seq. generated either by the Radak Monte Carlo code created in 2007 ( "**Radak Seq. I**" ), or in Polish decl's, by YB Monte Carlo code ("**Decoy Seq. II**"), from the decoy mixed seeds. So *Defs' mischaracterization of Pl's* claim always implies: "YB Monte Carlo code can generate ACE Seq.." ("False Claim")

Defs knew their False Claim is false, i.e., TYB code cannot generate ACE Seq.. Defs' semantic game translated this fact to "'YB seq.' cannot contain ACE", as in Polish Decl., and cited as "evidence" for "TYB does not use ACE", despite Defs' 56.1 St., Para. 18, 19 admitted TYB don't generate ACE but *read in* ACE as data files. Their SJ is based on their laughable semantic game, see "Second", p. 21, SJ Memo.

So Defs' admission that when using ACE, TYB read in ACE as data files, did not rebut but supported Pl's Verbatim Use Claim.   In addition their admission exposed Defs' misdirection to "Defs' seq." from the seq. used by TYB, and that Defs *defined* "Defs' seq"  *to exclude* ACE seq. not generated by YB Monte Carlo code.

Defs' admission also demolished Defs' "irrelevant" excuse to their concealment of  YB production code. That YB code reads in ACE. This was why from the start of litigation Defs misrepresented that they had produced the entire YB production code when they withheld all of them, and why Defs misrepresented 15 times in Sep. 5, 2012, the Radak Monte Carlo code of 3 files as the concealed YB production code of hundreds files generating interest rate paths.

Defs' programmers admitted that TYB code for their traders do *not* use their Monte Carlo code to generate seq., *i.e.*, do not use any of "YB seq.", but only read in seq (as such, the seq. cannot be "theirs" but can only be ACE seq. as admitted by Russell 2007 dep. 198: 10-14.) For Defs' admission that the seq. used for calibration is super ACE seq, see F9 and Sec. C of Fan 4th.; for Defs' admission that all the seq. used for pricing are subseq of the super ACE seq., and are ACE Seq., see Sec. F8 and Sec. C of Fan 4th.;  See para. 20, 46 and 49, 61, of 56.1 Response.

<u>Your SJ Opp. Br.</u>

You asked me to read our SJ papers.  Your Opp. Br. of May 28, 2014 avoided Pl's claims and the undisputed evidence (a), (b), p.19, but made the False Claim that Defs' Monte Carlo code could "generate ACE", e.g., "gauss_random.c generated ACE64", see the Second para., p.13.

Your Br. dodged Defs' admissions and all the evidence to Defs' ACE Verbatim Use, calling "it is red herrings", P. 21.

Please explain your basis for this False Claim. Your Br.. P.13 cited para. 44-45 of Fan 2nd Decl. as support. But I found no such alleged cite there or anywhere.

Contrary to False Claim, para. 31-32 of Fan 2nd Decl stated that ACE seq. are "an incredible mathematical feat involved...mathematical calculations", could not generated by TYB code but read in by TYB; in contrast "Defs' seq" must be "generated from the "seeds fed into public domain pseudo-random number generator (i.e., the Monte Carlo code), each time", i.e., if any seq. used by TYB is *not* generated by their Monte Carlo code, then the seq is read in and is an ACE seq.

Fan Report, 1st and 2nd Decl, citing a mountain of evidence also proved:

> ***ACE Derivative Use Claim***: Teytel's one and the same algorithm targeted the stolen ACE to select all the LDS sequences ("**ACE Derivative Seq. III**"), which are generated by TYB Monte Carlo code using not decoy seeds but seeds read in through environmental variable "sfile".

Defs' argument that "Pl cannot show similarity or derivation of 'YB seq' to ACE" also failed to rebut ACE Derivative Use Claim, because both Radak and Polish testified that they had no firsthand knowledge to the seq. used by TYB, and Defs' 56.1 papers could not dispute the fact that all the "YB seq" are phony.

Why did your Br. not expose that all the "Defs' seq" and all Decoy Seq. II are phony?


Thanks,

Xiaolu

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

D: +1 (212) 225-2000
cmoore@cgsh.com

VICTOR I. LEWKOW
LESLIE N. SILVERMAN
LEE C. BUCHHEIT
JAMES M. PEASLEE
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
ANDRES DE LA CRUZ
DAVID C. LOPEZ
JAMES L. BROMLEY
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND

DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN

MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
HUGO C. CONROY, JR.
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
GRANT M. BINDER
JOHN V. HARRISON
CAROLINE F. HAYDAY
RAHUL MUKHI
NEIL R. MARKEL
HUMAYUN KHALID
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

January 10, 2017

BY HAND

Hon. Henry B. Pitman
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 750
New York, NY 10007-1312

   Re: Advanced Analytics, Inc. v. Citigroup Global Markets Inc., et al.,
     No. 04 Civ. 3531 (LTS) (HBP)

Dear Magistrate Judge Pitman:

   I write on behalf of Defendants Citigroup Global Markets Inc. and The Yield Book, Inc. (together, "Defendants") in response to the letters dated January 4, 2017 sent by Xiaolu Wang on behalf of plaintiff Advanced Analytics, Inc. ("AAI"). Sections A through D below deal with AAI's letter to the Court and Section E deals with AAI's letter to Defendants' counsel (which AAI copied to the Court).

## A. Defendants' Counsel Have Not Colluded With AAI's Counsel

   AAI's assertion that Defendants' counsel have colluded with AAI's counsel is the same sort of baseless conspiracy theory on which AAI has built its entire case. AAI's Jan. 4, 2017 Letter to Magistrate Judge Pitman at 2. While Defendants have certainly sought the dismissal of AAI's claims, they have done so through the provision of undisputed evidence and unrebutted legal arguments, not through any improper means. The Court should therefore reject AAI's desperate effort to attribute its position in this case to collusion, rather than a simple failure of proof.

Magistrate Judge Pitman, p. 2

**B.**     **AAI Is Not Permitted To Share Documents With Prospective Counsel Beyond Those Identified In The Court's July 30, 2015 Order**

        AAI wrote to Defendants' counsel on December 2, 2016 requesting that Defendants give it permission to share two categories of documents with prospective new counsel.  We did not respond directly to this letter, but instead wrote to the Court on December 6, 2016, copying AAI and its counsel, explaining that our obligations under Rule 4.2(a) of the New York Rules of Professional Conduct did not permit us to correspond directly with AAI.  Neither AAI nor its counsel took issue with our position at that time.

        In its January 4, 2017 letter to the Court, AAI now argues that our refusal to respond directly to the December 2, 2016 letter somehow constituted a violation of, or objection to, the Court's June 26, July 30 and August 5, 2015 Orders.  AAI's Jan. 4, 2017 Letter to Magistrate Judge Pitman at 3-4.  AAI is mistaken.  As background, these Orders related to a request by AAI "to show material that is subject to the protective order [i.e., the Stipulation and Protective Order Governing Confidential Material (Mar. 22, 2005), Dkt. No. 25] to counsel who are considering appearing for plaintiff."  Order at 1 (June 26, 2015), Dkt. No. 269.  In its June 26, 2015 Order, the Court set forth a process for resolving AAI's request, directing AAI "to identify … in writing, the individual to whom plaintiff seeks to make disclosure and the specific information plaintiff seeks to disclose."  Id.  Following the Court's issuance of the June 26, 2015 Order, AAI sent a letter stating that it wished to disclose three categories of documents to two sets of prospective new counsel.  AAI's July 10, 2015 Letter at 3.  Defendants responded to this letter on July 24, 2015 and the Court ruled on AAI's request on July 30, 2015, granting it permission to provide the three categories of documents to prospective counsel who executed the undertaking prescribed in the Order.[1]  Order at 5-6 (July 30, 2015), Dkt. No. 272.  As the Court later explained in its August 6, 2015 Order, the "July 30 Order set out a reasonable and practical method for plaintiff to make the disclosures prospective new counsel may need to consider; I do not believe it needs any further alteration."  Order at 1 (Aug. 6, 2015), Dkt. No. 273.

        Thus, the Court's July 30 and August 5, 2015 Orders fully resolved AAI's request to share material designated confidential under the Protective Order with prospective counsel.  Nothing in these two Orders suggested that the Court intended to provide AAI an open invitation to request the disclosure of documents beyond the three categories covered by the July 30, 2015 Order or to grant blanket permission for direct correspondence between AAI and Defendants' counsel.  Accordingly, AAI was not entitled under these Orders to address its December 2, 2016 letter directly to us and we acted consistent with both the Court's Orders and our obligations under Rule 4.2(a) of the New York Rules of Professional Conduct in not responding to this letter.

---

[1]     Defendants note that the Court's July 30, 2015 Order gives AAI permission to disclose to prospective counsel who execute the prescribed undertaking "both rounds of summary judgment briefing," which is the first category of documents identified in the December 2, 2016 letter.  AAI's Dec. 2, 2016 Letter at 1.  AAI claims in its letter that "Plaintiff's counsel should have but not yet provided all of these documents," but that complaint is between AAI and its counsel and cannot be resolved by Defendants.

**C.    The Court Should Grant Defendants' Request For Disclosure Of Communications Concerning AAI's Alleged "False Claims"**

AAI puts forward seven reasons why the Court should deny Defendants' request for disclosure of communications between AAI and its counsel concerning the "false claims" allegedly contained in AAI's summary judgment opposition papers and expert reports.  AAI's Jan. 4, 2017 Letter to Magistrate Judge Pitman at 9-11.  Not one has merit.

First, as stated above, Defendants' counsel did not collude with Plaintiff's counsel.  Second, the correspondence that Defendants seek is clearly relevant because it may substantiate AAI's allegations about the falsity of portions of its submissions currently under consideration by the Court.  Third, there can be no question that AAI disclosed the communications contained in Exhibit 3 to its November 30, 2016 letters for purposes of demonstrating that AAI's counsel had included "false claims" in its summary judgment opposition papers and expert reports.  That is the entire thrust of these communications and the primary purpose for which AAI cites them.  Nor is there any basis for AAI's assertion that it disclosed these communications pursuant to confidential settlement negotiations, given that they were copied to the Court.  Indeed, AAI makes no effort to explain how the disclosure of these communications could possibly facilitate a settlement between the parties.  Fourth, Dr. Wang's assertion that he sent the two November 30, 2016 letters and the December 2, 2016 letter in his individual capacity, rather than on AAI's behalf, is nonsense:  these letters (i) sought relief on behalf of AAI;[2] (ii) made statements on behalf of AAI;[3] and (iii) complained about purported prejudice to AAI.[4]  Thus, Dr. Wang plainly sent these letters – and waived privilege – on AAI's behalf.[5]  Fifth, AAI misunderstands the nature of selective disclosure.  AAI's disclosure was selective both in that it redacted the emails it disclosed and in that it disclosed only a subset of the emails that it exchanged with its counsel on this subject (for example, AAI does not appear to have included the responses from its counsel to the emails that it sent).  Defs.' Dec. 6, 2016

[2]    AAI's Nov. 30, 2016 Letter to Magistrate Judge Pitman at 2 (requesting that the Court "simply disregard" Defendants' request for a hearing on AAI's failure to retain new counsel and a ruling on the amount due from AAI and its counsel under the March 26, 2014 Order); AAI's Dec. 2, 2016 Letter at 2 (seeking disclosure of confidential documents on the basis that "Plaintiff's prospective counsel must review these documents ….").

[3]    AAI's Nov. 30, 2016 Letter to Magistrate Judge Pitman at 2 ("Plaintiff reserves its right to petition the Honorable Court to exercise its authority and inherence power to conduct a full investigation …."); AAI's Nov. 30, 2016 Letter to Christopher Moore at 2 ("Plaintiff certainly will not waive attorney-client privileged protection on its communications between its counsel."); id. at 3 ("Plaintiff pointed out, e.g., in my letter of Nov. 20, 2015, 2-3 to Hon. Pitman, that the fees would never become an issue …."); id. at 4 ("Plaintiff does not believe at all so-called 'hostility'."); id. ("This Letter with the exhibits also serve Plaintiff's goal of good faith negotiation  ….").

[4]    AAI's November 30, 2016 Letter to Magistrate Judge Pitman at 1, 2 (complaining about Defendants' "improper attempt to fatally prejudice Plaintiff" and stating that "Defendants are seeking to cause irreparable prejudice to Plaintiff"); AAI's Nov. 30, 2016 Letter to Christopher Moore at 3 ("Plaintiff is the victim, and should be protected from further railroading and prejudice."); id. ("Defendants' request for the fees is a ruse. Its real aims are to mislead the Court, to interfere the Court's investigation, and to stop Plaintiff's effort to recruit new counsel."); AAI's Dec. 2, 2016 Letter at 2 ("Without access to these documents, Plaintiff will be severely prejudiced.").

[5]    AAI also argues that, because Dr. Wang sent the December 2, 2016 letter in his individual capacity, Defendants' counsel could have responded without breaching their ethical duties because Dr. Wang is not represented.  AAI's Jan. 4, 2017 Letter to Magistrate Judge Pitman at 3.  However, for the same reasons stated above, AAI is wrong.

Magistrate Judge Pitman, p. 4

Letter at 3.  Sixth, as explained above, Defendant did not violate the Court's June 26, July 30 and August 5, 2015 Orders and, as explained below, Defendants did not violate the Protective Order. Seventh, the Court's conclusion in Mitre Sports Intern. Ltd. v. Home Box Office, Inc. that no subject matter waiver had occurred hinged on the fact that the party accused of waiver in that case had not used or put in issue the privileged material that it disclosed.  304 F.R.D. 369, 372-75 (S.D.N.Y. 2015) (Pitman, M.J.).  Here, AAI has put its selectively disclosed communications with counsel at issue by using them as support for arguments about its counsel's alleged misconduct.

## D.   Defendants Did Not Violate The Protective Order

We do not intend to respond directly to the letter AAI sent to us (and copied to the Court) on January 4, 2017, consistent with the position stated above and in Defendants' December 6, 2016 letter.  Defs.' Dec. 6, 2016 Letter to Magistrate Judge Pitman at 2.  However, Defendants strongly dispute AAI's assertion that their December 2016 letters to the Court in any way violated the Protective Order.  The Protective Order on its face applies to confidential material produced in **discovery** and papers filed with the court that make reference to confidential **discovery** material.  See, e.g., Protective Order, Preamble, ¶¶ 1, 11.  AAI's unilateral and voluntary disclosure of correspondence with its counsel in the November 30, 2016 letters was not made during discovery (which, with respect to the merits of this action, is long over) and is therefore not subject to the Protective Order.  Accordingly, the Protective Order did not require Defendants to designate their December 2016 letters as "Confidential".  Nevertheless, solely in the interest of avoiding the burden and costs associated with debating this issue further, Defendants have affixed hereto as Exhibit A versions of their December 2016 letters marked "Confidential" and confirm that they have not disseminated the contents of AAI's November 30, 2016 letters or the exhibits thereto apart from in connection with their letters to the Court.[6]

\*     \*     \*     \*

Defendants continue to believe that a status conference on the issues raised in this letter, as well in Defendants' prior letters, would be beneficial and respectfully request that the Court schedule such a conference.  In addition, Defendants respectfully reiterate their request for an order directing AAI to produce all communications with its counsel concerning the alleged "false claims" in AAI's summary judgment opposition papers and expert reports.

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Christopher P. Moore

---

[6]     AAI has provided no basis for its demand that Defendants "return and delete all Plaintiff's Confidential and/or privileged information" contained in its November 30, 2016 letters and there is none.

Magistrate Judge Pitman, p. 5


cc:     Russell D. Munves (via e-mail)
        Todd S. Collins (via e-mail)
        Dr. Xiaolu Wang (via e-mail)

# EXHIBIT A

**CONFIDENTIAL - SUBJECT TO COURT ORDER**

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

VICTOR I LEWKOW
LESLIE N. SILVERMAN
LEE C. BUCHHEIT
JAMES M. PEASLEE
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E AUSTIN
SETH GROSSHANDLER
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
ANDRES DE LA CRUZ
DAVID C LOPEZ
JAMES L. BROMLEY
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND

DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM R. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN

MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
    RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID F. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
HUGH C. CONROY, JR.
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
GRANT M. BINDER
JOHN V. HARRISON
CAROLINE F. HAYDAY
RAHUL MUKHI
NEIL R. MARKEL
HUMAYUN KHALID
    RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

D: +1 (212) 225-2000
cmoore@cgsh.com

December 6, 2016

BY FACSIMILE

Hon. Henry B. Pitman
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 750
New York, NY 10007-1312

Re:   Advanced Analytics, Inc. v. Citigroup Global Markets Inc., et al.,
      No. 04 Civ. 3531 (LTS) (HBP)

Dear Magistrate Judge Pitman:

I write on behalf of Defendants Citigroup Global Markets Inc. and The Yield Book, Inc. (together, "Defendants") in response to the letters dated November 30, 2016 (the "November 30 Letters") and December 2, 2016 (the "December 2 Letter") sent by Xiaolu Wang on behalf of Plaintiff Advanced Analytics, Inc. ("AAI"), and to reiterate Defendants' request for (i) a ruling on the amount and timing of payments due to Defendants under the Court's March 26, 2014 Order sanctioning AAI and its counsel for the untimely submission of the Fourth Declaration of Jianqing Fan (the "Fourth Fan Declaration") and (ii) a status conference to address AAI's apparent inability to find replacement counsel in light of its current counsel's pending motion to withdraw.

## A.   AAI's November 30 Letters Violate The Court's August 5, 2015 Order

Dr. Wang sent the November 30 Letters in violation of the Court's August 5, 2015 Order, which directed Dr. Wang "to cease making any submissions to [the Court] that are not limited to plaintiff's efforts to secure new counsel or the pending motion of plaintiff's present counsel to withdraw." Order 2 (ECF No. 273). AAI's November 30 Letters were sent and signed by Dr. Wang and improperly purport to address subjects well beyond the limits prescribed in the August 5, 2015 Order, including the merits of Defendants' motion to strike the Fourth Fan Declaration (which, as noted, the Court granted on March 26, 2014) and Defendants' motion for summary judgment. Defendants respectfully request that the Court again direct Dr.

Magistrate Judge Pitman, p. 2

Wang not to communicate with the Court on subjects outside the scope of the August 5, 2015 Order. These communications are wasteful of the Court's – and Defendants' – time and resources.[1]

Relatedly, Defendants note that one of AAI's November 30 Letters and AAI's December 2 Letter are both addressed to Defendants' counsel. Mindful of their obligations under Rule 4.2(a) of the New York Rules of Professional Conduct, Defendants do not intend to respond to these letters and request that the Court direct Dr. Wang to cease communicating directly with Defendants' counsel on behalf of AAI.

### B.   AAI Has Exhibited Communications With Counsel To Its November 30 Letters That Raise Serious Questions About AAI's Conduct In This Case

Exhibit 3 to AAI's November 30 Letters contains two emails from Dr. Wang that accuse AAI's counsel of including a "false claim" in AAI's summary judgment opposition brief, raising serious questions about AAI's conduct in this case:

- May 9, 2016 email:  asserting that AAI's opposition to Defendants' motion for summary judgment dated May 28, 2014 "made the *False Claim* that Defs' Monte Carlo code could 'generate ACE', e.g., 'gauss_random.c generated ACE64', see the Second para., p.13." Ex. 3 at 3 (emphasis added).[2]

- June 3, 2016 email:  requesting AAI's counsel to "[p]lease explain your basis for your *False Claim* that YB Monte Carlo code could generate ACE, e.g., 'gauss_random.c generated ACE64'" and asserting that AAI's counsel have "put[] *false claims* into Pl and Pl's experts' mouths …." Ex. 3 at 1, 2 (emphasis added).[3]

These are troubling charges.  While Defendants have already demonstrated in the memoranda of law submitted in support of their motion for summary judgment that AAI's claims are entirely unsupported by the evidentiary record in this case, it now appears that AAI *agrees* that certain of the allegations underlying these claims were false.

Given the seriousness of AAI's allegations, Defendants respectfully request that the Court order AAI to disclose unredacted and unedited copies of Exhibits 2, 3 and 4,[4] as well

---

[1]    AAI's November 30 Letters also violated the Court's Individual Practices in that they are dated November 30, 2016 (and were presumably sent to the Court on that date) but were only provided to Defendants on December 1, 2016. See Individual Practices Of Magistrate Judge Henry Pitman (Apr. 8, 2016), Section 1.A (specifying that "communications with chambers shall be by letter, with copies *simultaneously* delivered to all counsel" (emphasis added)).

[2]    Defendants have appended to this letter a copy of Exhibit 3 with page numbers added for ease of reference.

[3]    Dr. Wang's emails also note that while AAI's brief cites to paragraphs 44-45 of the Second Declaration of Jianqing Fan, that source does not support AAI's "false" claims. Ex. 3 at 1, 4.

[4]    Like Exhibit 3, Exhibits 2 and 4 are communications between Dr. Wang and AAI's counsel and AAI has waived privilege as to these communications for the same reasons set forth below.

Magistrate Judge Pitman, p. 3

as copies of all other communications with its counsel concerning the "false claims" allegedly contained in AAI's summary judgment opposition papers and expert reports.

AAI cannot be heard to say that any of the information sought by Defendants is protected from disclosure on the basis of privilege. Under New York law,[5] if a party (i) puts "at issue" legal advice or other privileged communications, or (ii) selectively discloses such communications, that party waives privilege as to all communications on the same subject matter addressed in the disclosed communications.[6] Here, AAI has done both. *First*, AAI's November 30 Letter to Defendants' counsel makes repeated references to Exhibits 2, 3 and 4 in support of its arguments and Exhibit 2 is likewise quoted in AAI's November 30 Letter to the Court. *Second*, AAI's disclosure of potentially privileged communications was selective. For example, AAI has withheld portions of the emails it has appended to its November 30 Letters, as indicated by the words "redact" or "redacted."[7] AAI also appears to have edited the email chain in Exhibit 3 by omitting the responses of its counsel, which are referenced in the first paragraph of the top email in the chain but are not included in the exhibit.[8]

Accordingly, by disclosing the communications reflected in Exhibits 2, 3 and 4 to Defendants and the Court, AAI waived any privilege that would otherwise have applied to them. AAI has also waived privilege as to any other communications with its counsel concerning the alleged "false claims" in AAI's summary judgment opposition papers and expert reports.

### C.    Defendants Respectfully Request A Ruling On The Amount Due To Them Under The Court's March 26, 2014 Order And A Status Conference

For the reasons set forth in Defendants' November 11, 2016 letter, Defendants respectfully reiterate their request that the Court rule on the amount due to them under the Court's March 26, 2014 Order and schedule a status conference to set a deadline for AAI to retain new counsel in light of its current counsel's pending motion to withdraw.

---

[5]    New York law governs questions of attorney-client privilege in federal cases where, as here, jurisdiction is based upon diversity of citizenship. Fed. R. Evid. 501; Fed. R. Evid. 501 advisory committee's note to 1974 enactment (providing that state privilege law applies to diversity cases in federal court); N.Y. C.P.L.R. 4503 (McKinney 2016); Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp., 240 F.R.D. 78, 86 (S.D.N.Y. 2006) (noting that, where the court's "subject matter jurisdiction is based upon diversity," "state law provides the rule of decision concerning the claim of attorney-client privilege").

[6]    Am. Re-Ins. Co. v. U.S. Fid. & Guar. Co., 40 A.D.3d 486, 492 (N.Y. App. Div. 2007); Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp., 240 F.R.D. 78, 86 (S.D.N.Y. 2006). Moreover, a party is not permitted to disclose privileged communications that are helpful to its positions while withholding others that are harmful. In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000).

[7]    See November 30 Letters, Exhibits 2, 4.

[8]    AAI cannot rely upon the cases involving limited waiver, such as inadvertent disclosure in document production, extrajudicial disclosure of privileged communications, or disclosures by an employee without the authority to act on behalf of his employer. See, e.g., In re Grand Jury Proceedings, 219 F.3d 175, 183 (2d Cir. 2000). Dr. Wang, as the signatory to AAI's November 30 Letters, acted on behalf of AAI and not in his personal capacity, and thus waived on behalf of AAI any privilege that it otherwise may have been entitled to claim. See, e.g., November 30 Letter to Magistrate Judge Pitman, at 1, 3 (Dr. Wang claiming potential prejudice to "Plaintiff," not himself; addressing letters to the court on AAI letterhead; and purporting to act on behalf of AAI only until he retains counsel).

Magistrate Judge Pitman, p. 4

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Christopher P. Moore

cc:    Russell D. Munves (via e-mail)
        Todd S. Collins (via e-mail)
        Dr. Xiaolu Wang (via e-mail)

## Ex.3

**From:** Xiaolu Wang [mailto:xiaolu@wangresearch.com]
**Sent:** Friday, June 3, 2016 11:47 PM
**To:** Russell Munves <munves@samlegal.com>; 'Todd Collins' <tcollins@bm.net>
**Subject:** re: AAI - Chris Moore Call

Todd and Russ,

Glad to hear that Russ agrees with me on the undisputed facts regarding the merits of the case in my email of May 9, at 5:07pm, resent on 11:35pm as below, and that Russ believes "AAI should win summary judgment if the Court fully comprehends the evidence".

Regarding your SJ Opp. Br., I still have heard nothing from either of you to the 2 simple questions in blue.

1. Please explain your basis for your False Claim that YB Monte Carlo code could generate ACE, e.g., "gauss_random.c generated ACE64". Your Br. cited the 2nd Fan Dec. as support. But I found no such purported cites there or anywhere.

Defs mischaracterized Pl' claim as the False Claim. Then Defs argued that they should be awarded SJ because their False Claim is false. Defs' 56.1, Para. 9, 18, 19 admitted that ACE are low discrepancy seq., cannot be generated by YB Monte Carlo code, and consequently ACE must be *read* from data files.

I had urge you to present Pl' claims, and that Defs' admission exposed "YB seq" by their definitions, are not the seq. used by TYB, and the reason why Defs surgically deleted the entire YB production code relating to seq. from discovery—the code read ACE, and Defs' programmers' admission that the seq. used by their traders were not generated by Monte Carlo code but are ACE seq read from data files.

Your Br. rejected all, but covered up Defs' admissions and claimed the reason YB Monte Carlo code could not generate ACE during the testing, was "As explained in the 2nd Fan Dec. paras. 44-45 (Walker ex. E), Defendants did not possess seeds to generate ACE sequences, meaning that they could not generate ACE by simply feeding seeds into their random number generator." Once modified, presumably with "seeds to generate ACE seq.," their Monte Carlo code gauss_random.c "could be used only to **generate** ACE seq.", at 13.

Contrary to the False Claim, Para. 43 of Fan 2nd Decl. cited Teytel notebook: under "ACE64 comparison for Ids 100", Teytel used the code gauss_random.c modified with a code line "*to read in* the ACE sequences. This is crystal clear evidence that Teytel had possession of the ACE64 sequence." Para. 44 stated "gauss_random.c program [was] modified by Robert Russell *to read in* the ACE sequences during testing." Ditto for para. 45, so "Teytel was using ACE in his development work."

I had explained to you, that the False Claim is not our claim but Defs', and in addition (1) the False Claim would imply ACE seq. not a trade secret, contrary to the holdings of both Judges, see R&R, Sec.1-3, p7-10; (2) It would preempt ACE theft claim, both ACE Verbatim Use Claim and ACE Derivative Use Claim. Why Defs would prepare and install ACE Theft Code to steal ACE seq. if their public domain Monte Carlo code could generate ACE seq.?

2.  Why did your Br. not expose that all the "YB seq.", aka "Defs' seq", especially all Decoy Seq. II are phony?

We cannot blame the Court for "extreme skepticism about our case" while putting false claims into Pl and Pl's experts' mouths and covering up Defs' fraud.

Todd proposed "Tell us if you or your prospective new counsel need more information on which to base your decision." Please just explain the 2 simple questions. This is "what is important now".

Regards,

Xiaolu

Sender: Xiaolu Wang [mailto:xiaolu@wangresearch.com]
sent: Monday, May 9, 2016 11:35 PM
to: 'Russell Munves'; 'Todd Collins'
Subject: re: AAI - Chris Moore Call

Todd and Russ,

You advised me that we should take Moore's proposal and walk away from the case for nothing because the Court will grant SJ for Defs. So before we respond to Moore, we should assess the posture of SJ., the undisputed facts and your Opp. Br. You cannot possibly " bring prospective new counsel up to speed" if you are not up to speed, but tell them we will lose SJ.

So please answer the two simple questions in blue. They are based on your Br.. If you think the assessment on Br. are inaccurate, then it is easy for you to say so and point out a counter-example from your Br. why. Otherwise the statements from Br. on Pl's behalf are baseless, and may mislead the Court. We should correct. Then we will win SJ, rather than to lose the case as you proposed.

Undisputed facts.

You agree that the 56.1 papers demonstrated two undisputed facts: (a) Defs concealed all the Yield Book production code relating to sequences, and (b) that code read in ACE sequences to

generate interest rate paths for their traders. Under FRCP 56, the Court may consider Pl's claim of misappropriated trade secret established.

A mountain of additional physical evidence and Defs' employees' admissions, admissible but *not* cited in the 56.1 papers, also proved the two facts (a), (b) and:

***ACE Verbatim Use Claim***: TYB production code used exclusively by their internal users do not use TYB generators (i.e. YB Monte Carlo code) but ***read in*** the stolen ACE seq. from data files. Defs' traders relied on ACE Seq for arbitrage.

Defs mischaracterized Pl's Verbatim Use Claim as " 'YB seq.' incorporated ACE seq.", p.1 , p.8, SJ Memo; where in Defs' semantic game, the term "YB seq." aka "Defs' seq.", is, as *defined* in Radak Decl, the seq. generated either by the Radak Monte Carlo code created in 2007 ( "**Radak Seq. I**" ), or in Polish decl's, by YB Monte Carlo code ("**Decoy Seq. II**"), from the decoy mixed seeds. So *Defs'* mischaracterization of *Pl's* claim always implies: "YB Monte Carlo code can generate ACE Seq.." ("False Claim")

Defs knew their False Claim is false, i.e., TYB code cannot generate ACE Seq.. Defs' semantic game translated this fact to "'YB seq.' cannot contain ACE", as in Polish Decl., and cited as "evidence" for "TYB does not use ACE", despite Defs' 56.1 St., Para. 18, 19 admitted TYB don't generate ACE but *read in* ACE as data files. Their SJ is based on their laughable semantic game, see "Second", p. 21, SJ Memo.

So Defs' admission that when using ACE, TYB read in ACE as data files, did not rebut but supported Pl's Verbatim Use Claim.  In addition their admission exposed Defs' misdirection to "Defs' seq." from the seq. used by TYB, and that Defs *defined* "Defs' seq" *to exclude* ACE seq. not generated by YB Monte Carlo code.

Defs' admission also demolished Defs' "irrelevant" excuse to their concealment of  YB production code. That YB code reads in ACE. This was why from the start of litigation Defs misrepresented that they had produced the entire YB production code when they withheld all of them, and why Defs misrepresented 15 times in Sep. 5, 2012, the Radak Monte Carlo code of 3 files as the concealed YB production code of hundreds files generating interest rate paths.

Defs' programmers admitted that TYB code for their traders do *not* use their Monte Carlo code to generate seq., *i.e.*, do not use any of "YB seq.", but only read in seq (as such, the seq. cannot be "theirs" but can only be ACE seq. as admitted by Russell 2007 dep. 198: 10-14).  For Defs' admission that the seq. used for calibration is super ACE seq, see F9 and Sec. C of Fan 4th.; for Defs' admission that all the seq. used for pricing are subseq of the super ACE seq., and are ACE Seq., see Sec. F8 and Sec. C of Fan 4th.;  See para. 20, 46 and 49, 61, of 56.1 Response.

Your SJ Opp. Br.

You asked me to read our SJ papers.  Your Opp. Br. of May 28, 2014 avoided Pl's claims and the undisputed evidence (a), (b), p.19, but made the False Claim that Defs' Monte Carlo code could "generate ACE", e.g., "gauss_random.c generated ACE64", see the Second para., p.13.

Your Br. dodged Defs' admissions and all the evidence to Defs' ACE Verbatim Use, calling "it is red herrings", P. 21.

Please explain your basis for this False Claim. Your Br.. P.13 cited para. 44-45 of Fan 2nd Decl. as support. But I found no such alleged cite there or anywhere.

Contrary to False Claim, para. 31-32 of Fan 2nd Decl stated that ACE seq. are "an incredible mathematical feat involved...mathematical calculations", could not generated by TYB code but read in by TYB; in contrast "Defs' seq" must be "generated from the "seeds fed into public domain pseudo-random number generator (i.e., the Monte Carlo code), each time", i.e., if any seq. used by TYB is *not* generated by their Monte Carlo code, then the seq is read in and is an ACE seq.

Fan Report, 1st and 2nd Decl, citing a mountain of evidence also proved:

> ***ACE Derivative Use Claim***: Teytel's one and the same algorithm targeted the stolen ACE to select all the LDS sequences ("**ACE Derivative Seq. III**"), which are generated by TYB Monte Carlo code using not decoy seeds but seeds read in through environmental variable "sfile".

Defs' argument that "Pl cannot show similarity or derivation of 'YB seq' to ACE" also failed to rebut ACE Derivative Use Claim, because both Radak and Polish testified that they had no firsthand knowledge to the seq. used by TYB, and Defs' 56.1 papers could not dispute the fact that all the "YB seq" are phony.

Why did your Br. not expose that all the "Defs' seq" and all Decoy Seq. II are phony?


Thanks,

Xiaolu

**CONFIDENTIAL - SUBJECT TO COURT ORDER**

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

VICTOR I. LEWKOW
LESLIE N. SILVERMAN
LEE C. BUCHHEIT
JAMES M. PEASLEE
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
HOWARD S. ZELBO
DAVID E. BROD SKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
ANDRES DE LA CRUZ
DAVID C. LOPEZ
JAMES L. BROMLEY
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND

DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN

MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
HUGH C. CONROY, JR.
KATHLEEN M. EMBERGER
WALLACE L. LARSON, JR.
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
GRANT M. BINDER
JOHN V. HARRISON
CAROLINE F. HAYDAY
RAHUL MUKHI
NEIL R. MARKEL
HUMAYUN KHALID
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

D: +1 (212) 225-2000
cmoore@cgsh.com

December 14, 2016

BY FACSIMILE

Hon. Henry B. Pitman
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 750
New York, NY 10007-1312

> Re:   Advanced Analytics, Inc. v. Citigroup Global Markets Inc., et al.,
>       No. 04 Civ. 3531 (LTS) (HBP)

Dear Magistrate Judge Pitman:

I write on behalf of Defendants Citigroup Global Markets Inc. and The Yield Book, Inc. (together, "Defendants") in response to the letter dated December 12, 2016 (the "December 12 Letter") sent by Todd S. Collins and Russell D. Munves.

In letters of November 30, 2016 and exhibits thereto sent by Xiaolu Wang on behalf of Advanced Analytics, Inc. ("AAI") (the "November 30 Letters"), AAI alleged that its summary judgment opposition papers contained a "false claim."[1]  In their December 12 Letter, AAI's counsel attempt to explain the basis for their disagreement with Dr. Wang's position, in essence arguing that "generate," as used in AAI's summary judgment opposition papers, does not, in fact, mean "generate."[2]  The December 12 Letter does not alter the fact that AAI believes that there is a "false claim" in its summary judgment opposition papers, nor does it "establish" that AAI's summary judgment opposition papers contain no such "false claim."[3]

Moreover, AAI has waived privilege over communications with its counsel concerning the "false claim."  The arguments to the contrary offered by AAI's counsel in the

---

[1]   November 30 Letters, p. 7 and Exhibit 3.

[2]   December 12 Letter, p. 2.

[3]   December 12 Letter, p. 2.

Magistrate Judge Pitman, p. 2

December 12 Letter are unavailing.  Indeed, the December 12 Letter only serves to further demonstrate that a finding of waiver is appropriate here on the basis that AAI has (i) put "at issue" legal advice or other privileged communications, and (ii) selectively disclosed such communications.[4]  *First*, the November 30 Letters and now the December 12 Letter have both put at issue the substance of AAI's communications with counsel about the alleged "false claim." *Second*, although Dr. Wang is not a lawyer, he clearly understood that the communications he disclosed were privileged and confidential, which he noted in bold, underlined text in the November 30 Letters,[5] and nevertheless chose to disclose selections therefrom in order to "serve Plaintiff's goal"[6] of demonstrating that AAI's summary judgment opposition papers contained a "false claim."

        For the reasons set forth in Defendants' November 11, 2016 letter and above, Defendants respectfully reiterate their request that the Court schedule a status conference to resolve these and the other issues that Defendants have raised.

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Christopher P. Moore

cc:    Russell D. Munves (via e-mail)
       Todd S. Collins (via e-mail)
       Dr. Xiaolu Wang (via e-mail)

---

[4]     See Defendants' letter dated December 6, 2016.

[5]     See November 30 Letters, p. 7.

[6]     See November 30 Letters, p. 7.



# ADVANCED ANALYTICS, INC.

1050 George St. Suite 5M,  New Brunswick  NJ 08901  Phone (732) 729-0696 Fax (732) 729-0679

January 4, 2017
Xiaolu Wang, PhD

**By Facsimile to (212)805-6111**

Hon. Henry **PITMAN**
United States Magistrate Judge
Southern District of New York
500 Pearl Street, Room 750
New York, New York 10007-1312
(212) 805-6105

Re: _Advanced Analytics, Inc. v. Citigroup Global Capital Market, Inc. et al._
_04 Civ. 3531 (LTS)(HBP)_

Dear Judge Pitman,

Respectfully, I am writing[1] to seek Your Honor's leave to respond to Christopher Moore's letters of Dec. 6 and 14, 2016 to the Court ("Moore Letters") and Todd S. Collins and Russell D. Munves' letter of Dec. 12, 2016 ("Collins Dec. 12 Letter"). These three Letters ("Defs and Collins' Letters") made new misrepresentations to deceive the Court and to prevent prospective counsel to take the case.

Pursuant to the mechanism and method specified by three Court's orders of June 26, July 30, affirmed on August 5, 2015 modifying the Protective Order, Wang Letters to Moore on Nov. 30 and Dec. 2, 2016 ("Wang Letters to Moore" ) requested Defendants' response on the disclosure of two categories of documents ("Disc Request"), with the explanation why Plaintiff's prospective counsel need these documents, in light of the collusion by Defendants' and Plaintiff's counsel to push the case to dismissal and Moore's Letter of Nov. 11, 2015, and why Defendants will suffer no prejudice from the proposed disclosure.

---

[1] Again in my individual capacity, Fn.1  in my November 30, 2016 Letter to the Court applies here. I am a witness to report the collusion and deceit by Defendants' and Plaintiff's  Counsel to the Court, or as a third party to intervene pursuant to FRCP. 24(a)(2) and FRCP.1.  I am confident that the Court is fully capable to disregard any part of this letter if it falls outside the limited purposes.

Moore Letters played an ostrich game of burying its head in the sand, stonewalled Disc Request. Defendants defied and violated the Protective Order entered in this case and each of three Court orders, Dkts. 25, 269, 270, 272 and 273 ("the Court Orders"), *see* Sec.A. Now Defendants have defaulted. The Court should grant the Disc Request.

Unable to refute the palpable evidence, Defs and Collins Letters did not and could not dispute their collusion. Instead Moore's Dec. 6 Letter asked the Court not to "wasteful of time and resource" to read Wang Letters to Moore. But it asked the Court to waste time and resource, on litigating on discovery of irrelevant attorney-client privileged communication in connection to one Exhibit of the very Letter it asked the Court to ignore, *see* Sec. D.

Moore Letters not only asked the Court to look the other way, but also asked the Court for ringing endorsement and rewards for Defendants' deceit. To suppress the evidence of Defendants' deceit and to silence the witness, Moore Letters grossly mischaracterized every aspect of Wang Letters. The mischaracterizations are all contradicted by the same Moore Letters where Defendants piled up more deceptions, *see* Sec. B.

Defendants and Plaintiff's counsel[2] *colluded* to misrepresent **Defendants' False Claims** ("ACE are *not* trade secret" and "Defendants could *not* have misappropriated ACE", *etc.* in disguise) as "*AAI's* claim". It is an ultimate deception perpetrated on the Court by *Defendants*, but Moore Dec. 6 Letter charged that it raised "serious questions about *Plaintiff's* conduct in the case", as the basis for Defendants' new request for fishing expedition. At least Moore's Dec. 6 Letter, at 2, admitted that the issues raised in Wang Letter to Moore of Nov. 30 are *conduct not merits*. So are the same regarding the issues in this Letter.

While Moore Dec. 6 Letter moved to silence the witness and suppress evidence of their collusion and deceit, Collins Dec. 12 Letter to the Court again misrepresented *Defs' False Claim* as *Plaintiff's* claim, despite Messrs. Collins and Munves knew that Defs' False Claim is flat-out lie and Plaintiff explicitly opposes their misrepresentation, see Sec. C. From Defendants and Plaintiff's counsel's audacity to continue their collusion to deceive the Court to dismiss the case, it is easy to see their tenacity to prevent the prospective counsel from taking the case, and why Disc Request is necessary.

Moore's Dec. 14 Letter identified Collins Dec. 12 Letter "sent by Todd S. Collins and Russell D. Munves", on behalf of either their Firms or *pro se*, *not* on behalf of AAI, but voiced *no* objection. Neither Collins or Munves or their Firms is a party in the case. There is no basis for Defendants to argue that the Court should allow Collins and Munves' letters not on behalf of AAI, to deceive the Court for Defendants, but should prohibit my letters also not on behalf of AAI,  to expose their deceit. Through their collusion, Defendants dictated *what* Plaintiff's claims were and what the Court could hear. Now they want to dictate from *whom* the Court may hear. It is a citizen's right and duty to report their ongoing collusion and deceit[3]. Their intended victims

---

[2] The term "Plaintiff's counsel" in this Letter will only refer to Mr. Collins, or jointly with Mr. Munves if he also actively participated the specific act in discussed *in situ*. It does not refer to their supervisor(s) or their Firms.

[3] For starters, New York Judiciary Law § 487(1) specified sanctions to "An attorney or counselor who: (1) is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;". Defendants and Plaintiff's counsel also violated FRCP 11(b) and many other rules and statutes.

include the Honorable Court. The Honorable Court has the full authority and inherent power to investigate the attorneys' conduct, *independent* of the merits of the case. Defendants' request to grant Messrs. Collins and Munves' withdrawal motion to prevent the investigation must be denied. *See* Sec. E

## A. Defendants violated each and every of the four Court Orders. Their violations are willful and have no justification.  Disclosure Request must be granted.

### A1.  Defendants willfully violated and defied the Protective Order.

Both Wang Letter to the Court and Wang Letter to Moore of Nov. 30, 2016[4] were designated "Confidential" pursuant to Protective Oder, Para. 1, 2, in my individual capacity *not* on behalf of Plaintiff, as "the producing person" of the Confidential information. *See* Wang Letter to Moore of Jan. 4, 2017.

Moore Dec. 14 Letter admitted that the Exhibits of Wang Letter to Moore are "clearly understood" to be "confidential and privileged".  Moore Dec. 6 Letter attached Exhibit 3 which Defendants admitted to be Plaintiff's Confidential and attorney-client privileged information.  So pursuant to Protective Order, Moore Dec. 6 Letter *must* be designated as "Confidential" and subjected to the strict protective measures.

Yet Defendants simply ignored all of the "Confidential" designation, refused to designate Moore Letter of December 6 as "Confidential", in direct violation of and open defiance to Protective Order, *inter alia*, Paras. 1, 2 and 17.

### A2. Defendants completely ignored their obligation under the Court Orders and baselessly objected the Court Order of June 26, 2015.

The Court's June 26 Order at 3 expressly directed Defendants to respond to request of disclosure, "within ten (10) business days".  Defendants ignored their obligation under June 26 Order and *have defaulted*. So Disc Request must be granted.

Moore's Dec. 6 Letter baselessly objected June 26 Order, and claimed, at 2, that to respond to Disc Request would somehow make Defendants' counsel fail "their obligations under Rule 4.2(a) of the New York Rules of Professional Conduct".  Defendants' objection fails:

*First*, contrary to Defendants' misrepresentation, Wang Letters to Moore were all clearly submitted in Xiaolu Wang's individual capacity, *not* "on behalf of Plaintiff Advanced Analytics, lnc.", see B(2). I was not and I am not represented by counsel. *Second*, even if Defendants' misrepresentation were true—which is false, Rule 4.2 (a) states expressly the exception "unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law." Defendants

---

[4] Fn.1 of Moore's Dec. 6 Letter insinuated that Defendants received the two Letters one day later than the Court. These two letters were simultaneously faxed to the Court and emailed to all counsel, in the wee hours of earl morning of Dec. 1.  Defendants had several hours earlier start than when the Court opened door. Defendants' nit-picking serves no purpose but to distract the Court from issues and waste time, and should be ignored in the future.

had *both*[5]. The Court's June 26 Order is the law of the case. It expressly directed Defendants to respond to my request.  *Third*, if Defendants had been willing to comply with June 26 Order, they would have responded to Disc Request, to the Court or to Plaintiff's counsel.  Defendants responded to none but stonewalled. Defendants' objection is nonsensical. Their violation is willful.


### A3. Defendants violated the Court Orders of July 30 and August 5, 2015.

The new objection in Moore's Dec. 6 Letter at 2 to the Court Orders is also grossly untimely and improper.   June 26 Order set forth the practical and reasonable mechanism and method that now have shown to be *prescient*, given what has been revealed since: the collusion between the counsel of Defendants and Plaintiff to prevent prospective counsel from access the necessary documents and to push the case to dismissal.  Defendants had accepted June 26 Order without any objection[6]. Defendants baselessly objected it on July 24 and the Court July 30 Order denied it. Defendants objected again and the August 5 Order denied "with finality."[7] Moore Dec. 6 Letter objected it yet again, in violation of August 5 Order. Collins Dec. 12 Letter is totally silent on Defendants' violation of all the Court Orders[8], but misdirected the focus to "Dr. Wang's compliance of August 5 Order". The three Court Orders, Dkt. 269, 272 and 273 have carefully set out the reasonable and practical mechanism and method, and resolved the issues with finality. Defendants' new objection must be rejected off-hand.

### B.  To silence the witness and to conceal their deceit and collusion, Moore Letters grossly mischaracterized *every aspect* of Wang Letters to Moore.

*First*, Moore's Dec. 6 Letter on p.1 grossly mischaracterized all aspects of Wang Letters to Moore:  to whom, by whom, and on what subject, in order to stretch Wang Letters to the scope of August 5 Order and to mislead the Court into a wasteful fishing expedition. It then at p.2 contradicted all of its own mischaracterizations. August 5 Order addresses letters to the Court, not to Moore; by Plaintiff's principal[9] and *ex parte*, not by me in individual capacity. Clearly Wang Nov. 30 Letter does not belong to the scope of August 5 Order.

(1)      **To whom** Defendants misrepresented Wang Letter of November 30 *to Moore* as a letter addressed *to the Court.*   Then at p.2, Moore Letter admitted that both of Wang Letters to

---

[5] See Tel. Conf. Hrg Tr. before Hon. Pitman on June 26, 2015, Dkt. 270. P. 14:19-21, I'm not foreclosing you, Dr. Wong.  I'm simply setting up a mechanism by which we  can resolve this dispute.

p14:1-5: The Court: Dr. Wong, I think you need to … identify what it is you want to show … and why you want to show the material...P15:5-11: Collins: I gather this submission going to defendants should be prepared by Dr. Wong and I presume it's to be served on the court at the same time it goes to defendants. THE COURT: Correct. .. COLLINS: Yes, Your Honor.

[6] P15: 20-21, MR. MOORE: Your Honor, **that approach is acceptable to defendants.**(Emphasis added)

[7] August 5 Order at 1, "I adhere to [July 30 Order] in all respects." "My July 30 Order set out a reasonable and practical method for plaintiff to make the disclosures prospective new counsel may need to consider".

[8] July 30 Order: "permitting the modification plaintiff seeks", at P. 5;  "plaintiff, or its counsel, may disclose to the prospective new counsel [the 3 Categories (i)(ii) and (iii) of documents requested by my Letter of July 10, 2015 at 3, p.1 of My Letter to Moore of Dec. 2, 2016]", P. 6, *Id.*

[9] In p.2 of August 5 Order, there were eight references of "plaintiff's principal". The objected letters, as the ex parte letter attached, were all from "President of AAI".

Moore of Nov. 30 and Dec. 2 were "addressed to Defendants' counsel" ***not*** addressed to the Court.

       (2)    **By whom** Contrary to Moore Letters' misrepresentation of all of my letters as "on behalf of Plaintiff AAI", anyone can eyeball the truth: all of the three letters---the two Wang Letters to Moore of November 30 and Dec. 2, and Wang Letter to the Court on November 30--- were clearly signed and sent from "Xiaolu Wang", strictly in *individual capacity*. Nowhere any of the three letters contained an official title, or suggested any official capacity. Wang letter to the Court of November 30 at 1 expressly stated it is on individual capacity, on behalf of Xiaolu Wang as "a third party" to this case, pursuant to FRCP24(a), see fn1, Id.

       Mr. Moore's misrepresentation "on behalf of AAI" is based on Wang "addressing letters to the court on AAI letterhead", fn.8, *Id.*. *First*, Moore miscounted Wang Letter to Moore as "to the court". *Second*, according to his logic, since Moore always uses the letterhead of Cleary Gottlieb Steen and Hamilton LLP, does he mean that for all the letters he wrote, Moore "acted on behalf of" the Cleary Gottlieb Firm, *not* on behalf of CGMI? If so, in the future he ought to use letterheads from CGMI or Yield Book, Inc. instead of Cleary Gottlieb.

       Moore Dec. 6 Letter, fn. 8, claimed that "at 1, 3" of Wang Letter to the Court on Nov. 30, "Dr. Wang claiming potential prejudice to 'Plaintiff,' not himself". Yet, there is no such reference on p.3. On p.1, 2, the sentences were "Defendants are seeking to cause irreparable prejudice to Plaintiff and manifest injustice" and "improper attempt to fatally prejudice Plaintiff and to interfere with the Court's investigation." They are statements of facts. Moore's logic that the reference to Plaintiff meant Wang represented Plaintiff implies Wang would represent the Court, because the statement next referenced the Court. It is absurd.[10]

       Moore's remaining claim "[Wang] purporting to act on behalf of AAI only until he retains counsel." can no way be found in my letters. It is totally false and contradicted by Defendants' another claim on the same page, P.2, where Defendants' deception on behalf whom my letters were submitted is directly contradictory to their deception to misrepresent Defs' False Claim as "AAI's claim". Wang Letter to Moore of Nov. 30 exposed that the False Claim was Defs' False Claim not "AAI's claim". So clearly Defendants admitted Wang Letter to Moore was *not* "on behalf of AAI" but in my *individual capacity*. Defendants cannot have it both ways.

       (3)    **On what subject**: Contrary to its misrepresentation on p.1, Moore's Dec. 6 Letter at 2 *correctly* admitted that the issue raised by Wang Letters to Moore was *not about merits* on the motions, but *about the conduct* in this case ---- Obvious it is not about "Plaintiff's conduct", but the conduct of Defendants and Plaintiff's counsel.

       Opposing Defendants and Plaintiff's counsel's deceit and collusion to block new counsel and to push the case to dismissal is manifestly central "to plaintiffs efforts to secure new counsel or the pending motion of plaintiff's present counsel to withdraw". This was the subject of Wang Letters to Moore, in response to Defendants' requests, and obviously is within the subjects expressly permitted by August 5 Order, *even if* Defendants' misrepresentations regarding by

---

[10] The word "reserves" was a typo. It is a statement of facts: "Plaintiff reserved…" in order not to burden the Court until such investigation becomes necessary.

<u>whom</u> and <u>to whom</u> were both true—they are both false. Wang Nov. 30 Letter to Hon. Pitman at 2 pointed out that new counsel, not Dr. Wang, in due time will respond to Defendants' fee request and will submit Plaintiff's own motions of sanction.

### C. Moore Letters asked to suppress the evidence of their deceit and collusion, while Defendants and Collins Letters are continuing their deceit and collusion

Defendants set up straw men and *misrepresented* Plaintiff's claims to be patently false claims (e.g., Defs' False Claim: "ACE are *not* trade secret" and "Defendants could *not* have misappropriated ACE") that are *contrary* to Plaintiff's claims. Plaintiff's counsel embraced Defendants' misrepresentations. Then Defendants argued that because "it is undisputed" that these purported "*AAI's* claims" are false, so SJ should be granted.

There is absolutely no evidence to support Defs' False Claim. So SJ "Opp". Memo of May 28 resorted to fabrication of Prof. Fan's testimony to "explain [Defs' False Claim]". See Wang Letter of Nov. 30 to Moore, Ex. 3. It showed why Disc Request is necessary.

Moore Letters of Dec. 6 at 2 and Dec. 12 misrepresented again *Defs' False Claim* as "*AAI's* claim", and claimed that "…including *[Defs']* false claim in AAI's summary judgment opposition brief raised serious questions about *AAI's* conduct in this case"(emphasis added). Defendants relied on this ludicrous claim to seek attorney-client privileged communication, and moved *to silence witness and to suppress evidence of their collusion and deceit*. *Then* Collins Dec. 12 Letter doubled down to misrepresent Defs' False Claim to the Court to be Plaintiff's claim and to be *true,* and "Plaintiffs opposition brief contained no statements that could be materially misleading", *Id* at 2.

Collins' Dec. 12 Letter misrepresented that Defs' False Claim "gauss_random.c generated ACE64" is not "materially misleading, nor does it creates any prejudice". For *three (3) times,* it set forth deception to mislead the Court to infer Defs' False Claim: "Defendants' sequence generator *can* generate ACE sequences".

First, Collins Dec. 12 Letter cited SJ "Opp." Memo of May 28, taking out the leading sentence to conceal their fabrication of Fan testimony: "As explained in the 2nd Fan Dec. paras. 44-45 (Walker ex. E)":

> "Defendants did not possess seeds to generate ACE sequences, meaning that they could not generate ACE by simply feeding seeds into their random number generator."

To pound the message home, twice more Collins' Letter carefully crafted the deception to mislead the Court to infer Defs' False Claim inserted *after* the two "because", and is "undisputed":

> Defendants could not generate ACE, *because Plaintiff never gave Defendant's access to the seeds necessary to generate any ACE sequence. This is undisputed. It is also*

*undisputed* that Defendants could only read-in ACE numbers, rather than generate them, *because they did not have the seeds necessary to generate them*. (Emphasis added)

Collins Letter cited Undisputed Fact 18 of Defendants' 56.1 Statement, the half-truth *before* "because", to infer Defs' False Claim inserted *after* the two "because".

Both Defendants and Plaintiff's counsel knew all along that Defs' False Claim is entirely false[11], and Defendants' sequence generators can *never* generate any ACE sequences. Feeding *any* seeds (or any crops, grains or nuts) in the world won't matter. There could have never existed any of their purported "seeds necessary to generate any ACE sequence". They knew the reason that Defendants' sequence generators cannot generate ACE, is *not at all* "because they did not have the seeds necessary to generate them" but the following **Basic Fact**, clearly presented in Sec. B, p4, of Pl's SJ Opp. Memo of April 25 Revision, see <u>Exhibit 1</u>:

When they were not using ACE verbatim, Defendants fed selected numbers or "seeds" into their Sequence Generator to generate "their" sequences. The difference between the sequences generated by The Yield Book and the ACE sequences is that the sequences generated by The Yield Book are generated by the Sequence Generator, which uses arbitrarily selected seeds. The ACE sequences are "low discrepancy sequences" generated by complex mathematical formula[s] that is a fundamentally different process than using the Sequence Generator. Rule 56.1 Statement para.10 and 12.

SJ "Opp." of May 28 deleted all the material issues, Sec B- L of Pl's SJ Opp. Memo of April 25 Revision[12], including the **Basic Fact** above. **It presented *only* Defendants' false claims as AAI's claims**, in order to get Defs' SJ granted.

Strictly sticking to Defs' script as in SJ "Opp." Memo of May 28, Collins Letter at 2 went on to further mislead:

As for Dr. Wang's allegation that the opposition papers failed to argue that the sequences Defendants produced in discovery were not the real sequences they used, this claim is contradicted by the argument of "Similarity" on page 19 of the opposition brief.

<u>First,</u> the argument of "Similarity" on p.19 of the "Opp." Memo mischaracterized *Plaintiff's* ACE Derivative Use Claim[13] to be the *Defs' second false claim* that the sequences Defendants produced in discovery ("Radak Sequences", which are *undisputedly phony*) are similar to ACE. <u>Second,</u> "Opp." Memo also embraced *Defendants' third false claim* that the sequences generated by the decoy LDS seeds ("Decoy Sequences", which are indisputably phony) in the code of Mortgage Research Dept. were the sequences used by Defendants.

---

[11]  Defs' False Claim is also contrary to R&R, at 10, "[ACE is] a faster production sequence than anything the defendants had…". (Cites omitted) "This testimony constitutes a compelling admission that ACE was not known to defendants…. ACE is the product of a complex series of mathematical computations;"--- Not the product of Defendants' public domain random number generator.

[12]  *All* cites and evidence from Fan 4th Decl. had already been wiped clean in Pl's April 25 Opp. Memo. It presented only very limited admissible samples from the mountain of evidence of Defendants' fraud and use of ACE.

[13]  P. 4 of Ex. 3 of Wang Nov. 30 Letter to Moore.

Defendants and Plaintiff's counsel knew that Defendants withheld the real LDS sequences they used in production and that Defs' Second and the Third False Claims are both entirely *false*, **and are not AAI's claims**. They knew that while *Defendants' sequence generator* can generate "their" sequences, *Plaintiff* cannot, because Defendants have withheld the seeds[14], as shown in Sec. I-L, of the April 25 Revision, swept clean by the May 28 Revision.

This was Defendants' playbook[15] when they concealed "their" sequences from discovery, by concealing the seeds. Now they replaced "their" sequences by ACE sequences, "Plaintiff" by "Defendants", the seeds for "their" sequences by the nonexistent purported "seeds necessary to generate ACE". *Voilá:* Defendants' False Claim was born.

To wit, in collusion with Defendants, Plaintiff's counsel concealed from the Court **the undisputed fact**:

Defendants' Sequence Generator generated LDS sequences, but Plaintiff cannot generate the real LDS sequences used in production because Defendants never gave Plaintiff the seeds necessary to generate the real LDS sequences.

Instead, they stuffed into Plaintiff and its expert's mouths with **Defendants' False Claim** which they knew is flat-out lies:

"Defendants' Sequence Generator generated ACE sequences, but Defendants cannot generate ACE sequences because Plaintiff never gave Defendants the seeds necessary to generate ACE sequences."

Defendants and Plaintiff's counsel designed Defs' False Claim to imply "ACE sequences are *not* trade secret for Defendants" and "Defendants could *not* have misappropriated ACE", to cover up Defendants' concealment of smoking gun evidence and their semantic game of confusing "their" sequences with the sequences used by TYB, to cover up Defendants' programmers' admission that Defendants' traders relied on the sequences not generated by their generators, i.e., ACE sequences, and to undermine the mountain of physical evidence of ACE Verbatim Use Claim[16]:ACE Theft Code and ACE Use Code. One stone five birds, Brilliant. Their scheme has just one problem: their "continued representation" of Def's False Claim as AAI's claim not just "is untenable" but is sanctionable, *see* Collins Dec. 12 Letter at 3. It is deceit and collusion, plain and simple.[17]

---

[14] Except the seed for first segment common to all the LDS64 candidates. Despite of Defendants' aspiring misnomer, LDS are *not* low discrepancy sequences. They are the pseudo-random number sequences selected by targeting (i.e., the ones closest to) the stolen ACE sequences. As ACE derivative sequences, they are also trade secret owned by AAI.

[15] In Moore's Dec. 14 Letter, P.1, the inventor gave away the glue to Defendants' playbook: Defendants' sequence generators "generate," does not, in fact, mean Plaintiff can "generate."

[16] P. 3 of Ex. 3 of Wang Nov. 30 Letter to Moore.

[17] Messrs. Collins and Munves can have good attorney-client relationship, if they can recognize their client is Plaintiff not Defendants. Before completion of the investigation and new counsel enter into appearance, the Court should keep all of its options open including the option for making that direction.

It underscores the need of Disc Request and the danger if allowing them to silence witnesses and to suppress evidence of their collusion.

### D. Defendants' *new* request to discover attorney-client privileged communication is irrelevant but to harass and burden. It must be denied.

For **any one** of the following seven (7) reasons alone, Defendants' request to discover attorney-client privileged communication must be denied off-hand.

1.    Defendants' request is based on deceptions (i) and (ii), and 3 *infra*:  Moore Letter of Dec. 6 at 2, ludicrously misrepresented (i) **Defs' False Claim** "Defendants' random number generator could generate ACE" ("ACE are *not* trade secret") is "**AAI's** claim"; and  (ii) that AAI's SJ Opposition brief contains **Defs' False Claim** "raised serious questions about **AAI's** conduct in this case". Obviously it revealed **Defendants' and Plaintiff's counsel's** collusion and deceit. Defendants made the two deceptions to the Court even after Wang Letter to Moore of November 30 exposed that *Defendants* designed and advanced Defs' False Claim in collusion with Plaintiff's counsel.

Defendants' deceit to the Court must be punished, not be condoned.

2.    Irrelevance. It is incumbent upon Defendants to show their request is relevant to Plaintiff's claim or their defense as required by FRCP26(b)(1), even before any consideration of the prohibition of attorney-client privilege under FRCP26(c). However Defendants totally failed to do so. Moore Letter of Dec. 6 stonewalled Disc Request and at 2, averted that it is "wasteful to the Court –and Defendants' time and resource" to even consider Wang Letters to Moore. Therefore there is no basis for Defendants to burden the Court to compel discovery on even more irrelevant information based on the exhibits to the *same* Wang Letter to Moore that Defendants are asking the Court to ignore, let alone attorney-client privileged communication, because there will be no conceivable relevance of this information according to Defendants. Defendants cannot have it both ways.

Moore's Dec. 6 Letter at 2 agreed that Defs' False Claim is false. Certainly Defendants cannot cite the falsity of their false claim (*e.g.,* "ACE are *not* trade secret") for their defense. Messrs. Collins and Munves misrepresented Defs' False Claim as Plaintiff's claim for Defendants, to mislead the Court to dismiss the case, see Sec. C, and 5.

Moore Letters also totally failed to show their discovery request is responsive to any investigation. Defs' False Claim and other plainly misleading arguments, and other evidence in Wang Letter to Moore of Nov. 30 are, *inter alia*, reasons for Disc Request and necessary response to Defendants' requests. Defendants have not requested an investigation on Defendants and their counsel's conduct, and have not answered to "the allegation". Their mischaracterization of the allegation to be about "AAI's conduct." is no answer. No one could compel discovery before answering the complaint.

The investigation relates to Plaintiff's counsel's motion to withdraw is *ex-parte*,   as Plaintiff's counsel requested and the Court granted on March 12, 2015, Dct. 264, *see* Todd S.

Collins' Letter to the Court of Dec. 1, 2016. It is improper for Defendants to intervene in the investigation or to seek discovery.

    3.    <u>Defendants' misrepresented the subject matter and purpose of the disclosure.</u>  The subject matter of the Exhibits is identified in *Subject* of the very emails:  "Chris Moore called".  I made explicitly clear, in bold face, *on p.4 of Wang Letter to Moore* of Nov. 30, that the Letter including the disclosure of the emails, Ex. 1-4, were sent to Moore "**to serve for the purpose of good faith settlement negotiation**", in response to the purported settlement proposals by Moore.

    Moore Letter of Dec. 14 at 2 misrepresented that the said sentence were "in bold, underlined text in *the November 30 Letters, 5*", and were in order "**to serve Plaintiff's goal' of demonstrating that AAI's summary judgment opposition papers contained a 'false claim.**" (Emphasis added).

    Defendants' misrepresentations were deliberate, because they ***knew*** well that such limited disclosure for settlement purpose does not constitute a waiver of attorney-client privilege.  Many courts have held that no waiver of the attorney client privilege occurs when confidential or privileged information is disclosed for negotiation purposes, because to deny protection would destroy the attorney-client privilege whenever a party entered into negotiations, and thus would defeat the policy of encouraging parties to resolve their differences through negotiation. The common law has recognized that disclosures of confidential matters may be made during negotiations which, due to the policy of favoring negotiated settlements, will not be considered a waiver of the attorney-client privilege.

    4.    <u>No waiver of Plaintiff's attorney-client privilege</u> could result from Wang Letter of November 30 to Moore, because the Letter was sent by Wang in *individual capacity*, *not* as "Plaintiff's principal", and certainly *not* "on behalf of Plaintiff", *see* <u>B(2)</u>.

    As Moore's Dec. 6 Letter admitted, at fn 8, p. 3, it is undisputed that a corporation's officers or directors acting in their individual capacities could ***not*** waive the corporation's attorney-client privilege.  In case of a corporation as client, the attorney–client privilege belongs to the corporation and may be waived only by the corporation, not by an individual. The power to waive the corporate attorney-client privilege rests with the corporation, not an individual.  I will be happy to provide more controlling precedents.

    5.    <u>There was no "selective" disclosure</u>, contrary to Moore Dec. 6 Letter at 3 claimed, as the redacted contents for Ex. 2 and Ex. 4 to Wang Letter to Moore of Nov. 30 requested by Defendants demonstrated, see <u>Exhibit. 2</u> attached.  Ex. 2 indicated:  "I have replied [Ex. 3] to [Plaintiff's counsel's] advice but got no responses in substance since."  Yet, using the pretext of opposing Defendants' request for privileged communication, Collins Dec. 12 Letter bolstered Defs' False Claim ("ACE are not trade secret") as true and again mischaracterized it as "AAI's claim", to mislead the Court to dismiss the case for Defendants, <u>Sec. C</u>. So Defendants have already got more than they had asked.  Defendants' request is improper and also moot.

    6.    <u>Defendants' request is improper but is also moot.</u> Because of Defendants' violation of Protective Order and other Court Orders and deceptions to the Court, 1-5 *supra*,

Wang Jan. 4 Letter to Moore asked the return of the attorney-client privileged documents, the Ex. 1-3 of Wang to Moore Letter of Nov. 30.

7.  <u>There is no subject matter waiver</u>, even if the Court would overlook—of course the Court must not--- all of Defendants' transgressions 1-6 above.  In a well-reasoned ruling, <u>Mitre Sports Int'l Ltd. v. Home Box Office, Inc., 304 F.R.D. 369, 373 (S.D.N.Y. 2015)</u>, the Court held "disclosure of privileged material in discovery, without more, does not result a subject-matter waiver", citing a wealth of controlling precedents and Advisory Committee Notes to FRE502.  Even if the subject matter were what Defendants misrepresented, Moore Letters did not and could not assert, much less explain, that exposing Plaintiff's summary judgment brief contains a "false claim" would be unfair to Defendants, as required by FRE502. Moore Letters suggested the exact opposite to deceive the Court[18]. The simple reason is that Defendants want to conceal the truth: the "false claim" is *Defs' False Claim* and their collusion with Plaintiff's counsel is not just unfair but extremely injurious to Plaintiff and subverted the administration of justice.

## E.  Respectfully, the Court should grant Discovery Request and deny all of Defendants' requests

For all the reasons set forth above and in Wang Letter to Moore of Nov. 30,  respectfully the Court should grant Disc Request, in light of the ironclad evidence of Defendants and Plaintiff's counsel's collusion and deceit recently surfaced, <u>Sec.C</u>, ***affirmatively deny*** all of Defendants' requests, and in particular, issue the following rulings:

1.  Disclosure Request as summarized in Wang Letter to Moore of  Dec. 2, 2016 be granted, due to Defendants' default and violation of the Court Orders; Defendants' renewed objection to June 26, 2015 Order is denied because it is untimely and has no merits. *See* Sec. A.

2.  Defendants' request for discovery to attorney-client privileged communication be denied, for the reasons in Sec. D, *Supra*.

3.  Defendants' request for ruling on the amount due to Defendants under the Court's March 26, 2014 Order be denied. The consideration of that ruling be adjourned until Plaintiff's motion(s) to sanction Defendants, through its new or existing counsel, have been filed and briefed, and the Court has examined the new evidence indicating Defendants and Plaintiff counsel's collusion and deceit to the Court coming to light recently.

4.  Defendants requested for granting Plaintiff's counsel's withdrawal motion and for a status conference for setting a deadline for recruiting new replacement counsel. The request be denied. It is patently improper for Defendants to interfere with the Court's disposition on the withdrawal motion of their *adversary*'s counsel, to prevent the Court's investigation and the recruitment of their *adversary*'s new counsel, especially in light of the irrefutable evidence of Defendants and Plaintiff' counsel's collusion and deceit recently surfaced in this case.

---

[18] Bottom of p.2, "It appears that AAI now ***agrees***….", Moore's Dec. 6 Letter at 2.

Respectfully submitted,

_____
Xiaolu Wang, PhD

cc via email to:

Christopher Moore
Jennifer Kennedy Park
Russell Munves
Todd Collins

Exhibit 1.  p.4  of Plaintiff's SJ Opp. Memo. of April 25, 2014

Defendants' researcher whom they hired allegedly to independently develop sequences soon after they had decided not to license ACE.  Report and Recommendation, Section B, p. 9 (Dkt. 112).

In connection with the testing, Defendants received a disk from Dr. Wang containing the ACE Sequences. These were read in on a standalone computer rather than being generated by the Sequence Generator.  56.1 Stmt, 8, 19. When they were not using ACE verbatim, Defendants fed selected numbers or "seeds" into their Sequence Generator to generate "their" sequences. The difference between the sequences generated by The Yield Book and the ACE sequences is that the sequences generated by The Yield Book are generated by the Sequence Generator, which uses arbitrarily selected seeds.  The ACE sequences are "low discrepancy sequences" generated by a complex mathematical formula that is a fundamentally different process than using the Sequence Generator. Rule 56.1 Statement 10 and 12.[2]

Defendants tested ACE by comparing the accuracy of their production sequence of 200 paths, which they had used since 1994, to the accuracy of ACE.  Their testing protocol involved using each sequence to value the same set of securities against a benchmark valuation obtained by using a sequence consisting of a very large number of interest rate paths.  Rule 56.1 Statement, 22, 27. Defendants' produced test results demonstrated that the ACE sequences were significantly more accurate and faster than Defendants' 200 path production sequence. Fan

---

[2] However, both of the resulting sequences – the ACE sequence and the sequence generated by the Sequence Generator -- were used by the third component of The Yield Book, the term structure interest rate model, to generate the interest rate scenarios or paths that are used by the fourth component, the prepayment and default model, to value securities.

4

**Exhibit 2**

**Redacted texts in Exhibits to Wang Letter to Moore of November 30**

**[Redacted] in Ex. 2 is:**

Finally, I just forwarded to you defendants' letter to Pitman.  Consider what if any response you want to make, either personally or through Russ and me.   I caution you against contacting the court directly in response to defendants' letter without first discussing the matter with Russ and me.

**Ex. 3 is complete.**

**[Redacted] in Ex. 4 is:**

From: Russell Munves <munves@samlegal.com>
To: xiaolu@wangresearch.com
Cc: Collins, Todd (tcollins@bm.net)
Subject: AAI - Chris Moore Call

If you would like to discuss this with us, we are available tomorrow till about 1pm or Monday.

Regards,

Russ

Russell D. Munves, Esq.
(212) 497-8279
(516) 360-0084 Skype
(212) 497-8228 Fax
www.samlegal.com

**Confidentiality and Tax Advice:**
**[Redacted again but available if Defendants really want and send their request]**

1622 LOCUST STREET    |    PHILADELPHIA, PA 19103-6305    |    PHONE: 215/875-3000    |    FAX: 215/875-4604    |    WWW.BERGERMONTAGUE.COM

# Berger&Montague,P.C.
### ATTORNEYS AT LAW

**TODD S. COLLINS**

**WRITER'S DIRECT DIAL** | 215/875-3040

**WRITER'S DIRECT FAX** | 215/875-5715

**WRITER'S DIRECT E-MAIL** | tcollins@bm.net

January 5, 2017

**Via Fax:  (212) 805-6111**
The Honorable Henry Pitman
U.S. Magistrate Judge
Daniel Patrick Moynihan
U.S. Court House
500 Pearl Street
New York, NY   10007-1312

　　　　Re:　*Advanced Analytics, Inc. v. Citigroup Global Market, Inc., et al.*
　　　　　　　**No. 04-cv-3531 (LTS) (HBP)**

Dear Magistrate Judge Pitman:

　　　　We are writing in response to the January 4, 2017, letter ("Wang Letter") of Dr. Xiaolu Wang to the Court.  In the Wang Letter, Dr. Wang accuses our firms of "collusion" with Defense counsel to the detriment of Plaintiff.

　　　　We categorically deny any collusion.  We have had no communication with Defense counsel that has not been fully disclosed to Dr. Wang.  We have vigorously prosecuted this very contentious case for ten years to the best of our ability, including undertaking thorough analysis of the complicated technology at issue; conducting exhaustive fact and expert discovery; and making and defending against numerous motions, among them two separate summary judgment motions.   We respectfully submit that the record does not begin to support Dr. Wang's wild accusations of collusion.

　　　　Specifically, with respect to "collusion", Dr. Wang makes the following assertions:

- "the collusion by Defendants' and Plaintiff's counsel to push the case to dismissal". Wang Letter p. 1, second paragraph.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

- "Unable to refute the palpable evidence, Defs and Collins Letters did not and could not dispute their collusion." Wang Letter p. 2, second paragraph.

No rebuttal.

- "Defendants and Plaintiff's counsel *colluded* to misrepresent **Defendants' False Claims** ("ACE are *not* trade secret" and "Defendants could *not* have misappropriated ACE", *etc.* in disguise) as '*AAI's* claim'". Wang Letter p. 2, fourth paragraph (emphasis in original; footnote deleted).

- "While Moore Dec. 6 Letter moved to silence the witness and suppress evidence of their collusion and deceit, Collins Dec. 12 Letter to the Court again misrepresented *Defs' False Claim* as *Plaintiff's* claim, despite Messrs. Collins and Munves knew Defs' False Claim is flat-out lie and Plaintiff explicitly opposes their misrepresentation". Wang Letter p. 2, fifth paragraph (emphasis in original).

No rebuttal.

It is difficult for Plaintiff's counsel to understand the basis of these claims. As noted above, and as the Court is aware from the long history of this case, our firms have vigorously prosecuted the litigation. We have done so fully consistent with our ethical obligations, and reflecting our strong belief, which we continue to hold despite our inability to work with Dr. Wang anymore, that Plaintiff's claims are meritorious.

As for the Dr. Wang's allegation that we misrepresented Plaintiff's claims to the Court, the Collins December 12, 2016 Letter itself demonstrates that this is simply not true.

What the Wang Letter plainly shows, once again, is that it is impossible for our firms to continue to represent AAI. Accordingly, we respectfully request that the Court grant our motion to withdraw.

Respectfully,

BERGER & MONTAGUE, P.C.

By _____
Todd S. Collins
1622 Locust Street
Philadelphia, PA 19103

And

# Berger&Montague,P.C.
### ATTORNEYS AT LAW

STORCH AMINI P.C.

By _Russell Munves /sc_

Russell D. Munves
Two Grand Central Tower, 25th Floor
140 East 45th Street
New York, NY  10017

*Co-Counsel for Plaintiff*

TSC/dlg

cc:     All Counsel (via email)
        Dr. Xiaolu Wang (via email)

kal7623219_920_1