

- 40 East 80th Street, New York, New York, U.S.A 10075  •646-623-4654  • ptoren@petertoren.com  www.petertoren.com • Admitted: CA, D.C., N.Y. Bars

February 24, 2022

<u>VIA ECF</u>

Chief Judge Laura Taylor Swain
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 702
New York, NY 10007
VIA ECF ELECTRONIC FILING

  <u>**Re. Advanced Analytics, Inc. v. Citigroup Global Markets Inc. et al,
04 Civ. 3531 (LTS) (SLC)**</u>

Dear Chief Judge Swain:

  We represent Advanced Analytics, Inc. (the "Plaintiff"). We do not fully understand the Court's intention from its endorsement (the "Order," ECF No. 487) of Defendants' response and application (the "Application," ECF No. 485) containing numerous improper and confusing requests regarding *Plaintiff's* FRE 201 Motion (ECF No. 479). And we are concerned that the two sentences in our letter of February 9, 2022 (ECF486) may be misunderstood by the Court. Accordingly, Plaintiff respectfully seeks for the Court to clarify or modify its Order, pursuant to Local Civil Rule 6.3 and Fed. R. Evid. 201(c)(2) and (e). As set forth below in more detail, the Application presented no basis to deny the FRE 201 Motion in support of the Rule 59(e) and 60(b) Motion.

  As an initial matter, contrary to the claim in the Application, Plaintiff have used best efforts to resolve informally the matters but were not successful, and have acted in full compliance with the Court's I.R.P 2(b). See p.1, also §I, FRE 201 Motion. The Factual Background provided the essential context, the direct relevance for the undisputed facts to be judicially noted. Section §I, *Id.* Every undisputed fact in Annex A has been discussed with Defendants. For example, pp1-2 of Annex A (1)-(7) were presented in Toren's email of March 15, 2021, to Defendants. See Ex. 1 for the email chain. A meet-and-confer request to Defendants regarding Plaintiff's contemplated FRE201 motion, can be found in Toren's emails to Defendants as early as April 26, 2021. *Id.* Neither Ms. Park nor Mr. Moore spoke, but Mr. Kessler and Ms. Dahrouge spoke in the call on April 30, 2021. Subsequently, the parties discussions regarding their Mischaracterization and new variant are self-evident in the documents pp.8-9, Annex A. They are filings by Defendant Citigroup in AAI-II, the case before

the Honorable Paul G. Gardephe.[1] The Sept. 30, and Nov. 4, 2021 Orders provided the compelling reason for the FRE 201 Motion. Defendants successful misrepresentations and their new variant made FRE 201 Motion necessary. *Id,* at 1.

In their Application, Defendants continued their practice of avoiding the substance by mischaracterizing the issues. During the meet-and-confer, Defendants argued that FRE 201 motion should point out the "request for relief before the court that is relevant to [these facts]." The undisputed facts requested by FRE 201 Motion clearly directly support the Rule 59(e)60(b) Motion. Yet, the Application recycled the same mischaracterization of "surreply" and even the same inapposite cases in their prior ill-fated motions to strike and sanctions, e.g., against Rule 56(d) motion of 2018, and in the other briefs before this Court. This time Defendants mischaracterized the FRE 201 Motion as an "untimely surreply" or "untimely application of a leave for a surreply," to the Rule 59(e) and 60(b) Motion. Based on this mischaracterization, "Defendants would request the Court to hold Defendants' time to respond in abeyance pending the Court's resolution of [the Rule 59(e) and 60(b) Motion], which could moot the Rule 201 Motion to the extent if the Court were to determine that the relief in the Rule 201 Motion requests, even if granted, would not alter the outcome of [Plaintiff's Rule 59(e) and 60(b) Motion]." There are a number of fatal errors in Defendants' request.

First, Plaintiff' FRE 201 Motion is not at all a "surreply" or "application for surreply" contrary to Defendants mischaracterization. In fact, the Court's resolution of [the Rule 59(e) and 60(b) Motion] would not moot the FRE 201 Motion. The FRE 201 Motion is designated not just for this Court, but potentially for appellate courts, and the Court of AAI-II. See FRE 201 Motion at 1. In fact, if the Court were to deny the Rule 59(e) and 60(b) Motion, it would make the FRE 201 Motion even more important for the Second Circuit. The judicial noticed evidence and other documents would still be necessary to create a complete set of the records to be transmitted to the appeallate courts to review the Court's decisions on the FRE 201 Motion, FRCP 59(e) and 60(b) Motion, and other rulings.

In contrast, a surreply or leave to file a surreply filed in support or in opposition of a motion proceeding would become moot in this Court after the Court adjudication of the motion. This alone exposes Defendants' mischaracterization of FRE 201 Motion as a "surreply," or "leave for surreply." Plaintiff's Rule 201 Motion, for all intent and purposes is a *bona fide* Fed R. of Evidence Rule 201 Motion. Relying on their mischaracterization of FRE201 Motion as "surreply," the Application also made the timing of the FRE201 Motion an important issue. However, according to Fed R. of Evidence Rule 201 (d) Timing. "The court may take judicial notice at any stage of the proceeding." There is again a sharp contrast between the FRE 201 Motion seeking judicial notice and a "surreply." FRE 201 sets forth:

"(c) Taking Notice. The court: (1) may take judicial notice on its own; or

(2) must take judicial notice if a party requests it and the court is supplied with the necessary information."

When the court takes judicial notice on its own in adjudication of a motion it is generally after the matter has been fully briefed. For example, this Court cited such authority, took judicial

---

[1] The Application mischaracterized AAI-II as Plaintiff's "more recently filed suit (which nakedly attempts to avoid the judgments of this Court)." Fn. 4, *Id.* In fact, AAI-II was filed more than a year before the surprising judgment misled by Defendants' fraud, to protect Plaintiff's legitimate rights violated by Defendant Citigroup continued and renewed acts of misappropriation and sale of Plaintiff's trade secret to foreign entities.

notice of a variety of documents, some provided by *Citigroup Inc*, in a motion to dismiss, *In re CITIGROUP, INC* (2011 WL 744745). *Finn v. Barney*, 471 Fed.Appx. 30 (2d Cir. 2012), **1. In *Brown v. Board of Education*, 347 U.S. 483, 493-95 (1954), the Supreme Court took judicial notice from dozens of briefs of *Amici Curie*, and changed the outcome, *e.g.*, *Id.*, at 494-95 & n.11. Most of the briefs were filed after the proceedings have been completed. "The parties were given an opportunity to comment on the propriety of our taking notice... See supplemental briefs filed by the parties." *Massachusetts v. Westcott*, 431 U.S. 322, 323, 97 S. Ct. 1755, 1756, (1977). See also *Bourbia v. S.C. Johnson & Son, Inc*., 375 F.Supp.3d 454, 460 (SDNY, 2019). The Application did not suggest that the court could only take judicial notice before all the filings, nor did it cite a single case making timing an issue. The Court should not deny the FRE 201 Motion based on Defendants improper Application which presented no valid basis at all.

**Second,** the Application requested that even if "the Court were to determine that the relief the Rule 201 Motion requests, even if granted, [it] would not alter the outcome of [the Rule 59(e) 60(b) Motion]," before the Court could consider the FRE 201 Motion, e.g., the undisputed facts and documents, and Defendants' motives and intents in the context. However, it is not possible before the Court to deny the Rule 59(e) 60(b) Motion, before it considering the undisputed facts. The Application touted their *universally applicable formula* in their playbook, that had worked every time so far, that would guaranteed to defeat any and all motions for reconsideration under the universe that have exposed their fraud: whatever orders their fraud had procured and is the subject of motion to reconsider, Defendants just cited the same orders as defense and the Court should follow Defendants' misdirection to deny the motion by a rubber-stamp.² See bottom at p.2, *Id.* Thus it would not matter that the orders are contrary to laws and are clearly erroneous on the facts and that the facts have never been considered. The Application simply asked the Court to disregard the undisputed conclusive factual evidence of collusion, because the Court has denied collusion. *Id* at 3. Under these circumstances, there is no reason for the Court to hold the FRE 201 Motion in abeyance. The FRE 201 Motion identifies and distills the undisputed facts supported by the reliable source documents, and aids the Court in its resolution of Rule 59(e) and 60(b) Motion.

Even if Defendants were to file "a fulsome briefing," and propose different motives and intents for their undisputed misrepresentations exposed by FRE 201 Motion, this would not alter the correct outcome of [the Rule 59(e) 60(b) Motion], i.e., to grant the Motion. For example, the Motion exposed that according to Defendants' the MSJ granted by the Court, since it is undisputed *Plaintiff* did not steal *Defendants' software code*, *so Defendants* are entitled to dismiss *Plaintiff's* claim that Defendants stole Plaintiff's ACE sequences. The undisputed facts in the FRE 201 Motion are that in response, Defendants created a new variant of the Mischaracterization "ACE sequences are software code." If Defendants could offer some non-nefarious motive or intent for their new variant, this would ***not*** defeat the Rule 60(b) Motion, because the controlling authority under FRCP60(b)(3) does not even require the Court to find Defendants' misrepresentations to be intentional in order to grant the FRCP 60(b)(3) relief. If the Court were to make such determination, all the briefing issues could be solved easily. If Defendants would now change their position but oppose filing "fulsome briefing," that would be Defendants' prerogative.

---

² Defendants' successes of their fraud established the "injury [to their adversary and the Court]" factor of a civil fraud claim under New York law. Every brief by Defendants contains material misrepresentations and mischaracterization of facts, which the Court should not condone.

The Application cited only two inapposite cases relating to the FRE 201. *Braun v. United Recovery Sys.*, and *Columbia Cas. Co. v. Neighborhood Risk Mgmt.* Not surprisingly, both are in the pleading stage unlike the present case.

The *Columbia* court declined a motion to take judicial notice, because the documents were "testimony from a deposition rather than another judicial proceeding", or "the content of emails obtained in discovery." Whereas, here, the source documents requested by Plaintiff's FRE 201 Motion are all from judicial proceedings[3], the quintessential documents for judicial notice, and already in the possession of Defendants and the Court. Defendants' Application conceded that they "do not object" the Court takes judicial notice on the source documents.

The *Braun* court correctly held that "The court ... must take judicial notice if a party requests it and the court is supplied with the necessary information." "But Defendant has not provided the Court with specific documents or information related to either [facts disputed by the plaintiff] … where and when this document is or was located on [the defendant's] website." *Id.* *169. In contrast, the FRE 201 Motion has provided the necessary information, so the Court should take judicial notice. Furthermore, the Application does dispute even a single fact listed in Annex A. The Application claimed "Annex A at 1 (seeking judicial notice that "There is absolutely no evidence to support Defs' False Claim.")." *Id* at 3. This is a brazen misrepresentation. Annex A at 1 seeks judicial notice of the undisputed fact of what was stated in Dr. Xiaolu Wang's Letter of January 4th, 2017 to MJ Pitman, without addressing the truth of such statements:

> Dr. Xiaolu Wang's Letter of January 4th, 2017 to MJ Pitman contains no word "call."  The Letter mentioned no "call" at all and nor joint call by Collins and Defendants. Instead, it states: "Defendants set up straw men and *misrepresented* Plaintiff's claims to be patently false claims (e.g., Defs' False Claim: ACE are *not* trade secret and Defendants could *not* have misappropriated ACE) that are *contrary* to Plaintiff's claims. [Collins] embraced Defendants' misrepresentations. Then Defendants argued that because it is undisputed that these purported "*AAI's* claims" are false, so SJ should be granted. There is absolutely no evidence to support Defs' False Claim. So SJ Opp. Memo of May 28 resorted to fabrication of Prof. Fan's testimony to explain [Defs' False Claim]." *Id.* at 6.

The Application culled out the sentence "[t]here is absolutely no evidence to support Defs' False Claim," from the statement in the Letter, to dispute the truth of this statement.  Because Both Defendants' motions for summary judgment (the "MSJ") rely on "Defendants False Claim[4] is false." Therefore, Defendants' MSJ must be denied and the judgment must be vacated. Defendants changed its position in order to cover up their 3 Prong Scheme, but will lose their MSJ. Defendants are facing the dilemma: to cover up their fraud or to save the MSJ?

This example illustrates that the benefit of judicial notice to the Court: Defendants cannot keep evading the facts and must respond to the facts. Adjudication of the FRE 201 will clarify the facts without any undue burden to the Court. The Court respectfully  should  take judicial notice of the undisputed facts and source documents in Annex A.

In sum, the Application presented no substantive opposition to the FRE 201 Motion in any substance. Plaintiff respectfully submits that the Court should resolve the FRE 201 Motion

---

[3] The Application cited Plaintiff's Memo. in Support of its Opposition to MSJ in 2008, which was before Defendants' 1st and 2nd Level fraud and ACE Use Code and Theft Code were discovered. The Memo was noted to compare the filings by Collins before and after the collusion.

[4] Defendants mischaracterized Plaintiff's claim as Defs False Claim (*i.e.* "Defendants' sequences" incorporated ACE sequences.)

before or at least with the Rule 59(e) and 60(b) Motion, and grant the Application's request to the extent that Defendants file their opposition brief within 14 days from endorsement of this Letter, and Plaintiff may file reply within 7 days afterwards.

        Respectfully submitted,

        /s/ Peter Toren
        Peter J. Toren