# EXHIBIT D

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| ADVANCED ANALYTICS, INC., | |
| Plaintiff-Counter-Defendant | |
| Appellant, | |
| v. | Case No. 22-1718 |
| CITIGROUP GLOBAL MARKETS, INC., ET AL., | |
| Defendants-Counter Claimants-Appellees. | |

## PLAINTIFF'S OPPOSITION
## TO DEFENDANTS' MOTION TO SET BRIEFING SCHEDULE AND REQUIRE
## LEAVE OF COURT FOR FUTURE LETTER FILINGS BY AAI

Citigroup Global Markets, Inc. *et al* ("Defendants" or "Appellees")'s April 7, 2023

Motion (the "Motion") purportedly was filed "[p]ursuant to Federal Rules of

Appellate Procedure (the 'Federal Rules') 27 and 30, and Second Circuit Local

Rules (the 'Local Rules') 27.1 and 31.2." *Id* at 1. Yet, the Motion clearly and

materially violated each and every of these four forgoing Rules, numerous other

Federal Rules ("FRAP") and the Local Rules ("L.R."), (together the "Rules"), and

relevant statutory authorities.[1] Even a single violation of any of the Rules by

---

[1] The Motion in the Court also violated pertinent ABA Rules. *See* Plaintiff's letter
of April 24, 2023, to Ms. Jennifer Park. Ex. A, to the attached Declaration of Peter
J. Toren ("Toren Decl.").

Defendants is ground for denial of the Motion, let alone the willful violation of all these Rules. Defendants have withheld essential judicial documents from Advanced Analytics, Inc. ("Plaintiff" or "AAI") and from the Court that are necessary to complete the record for appeal, in violation of the Federal Rules, and the Local Rules, and Chief Judge Swain's order.[2] Plaintiff has been diligently pursuing the numerous issues with Defendants regarding their failure to comply with their obligation to cure the deficiency of the current court records, and has served notification on Appellees that it is going to file motions ASAP in the Southern District of New York pursuant to the Federal Rules 10(a)(c)(e), 11(b)(2) etc.[3] In response, Defendants filed the Motion to seek to unlawfully prevent Plaintiff from completing and correcting court record. Plaintiff respectfully asks The Court to deny the Motion, for this and other reasons set forth in this brief.

## PRELIMINARY STATEMENT

While preventing the record to be completed, Defendants moved to burden the Court and Plaintiff with substantive motions. This litigation before the Southern District of New York (the "District Court") resulted from Defendants' clandestine theft of extremely valuable trade secret (the numerical "ACE"

---

[2] *See e.g.,* Plaintiff's letters to Defendants of Feb. 2, 2023 (D.I. 61-1), Nov. 2, 2022 (D.I. 43-1), and Sept. 6, 2022 (D.I. 35-1).
[3] See Plaintiff's letters to the Clerk of the Court and to Defendants on April 5, 2023, D.I. 70-1, 70-2.

sequences determining MBS pricing formulas coefficients) created and owned by Plaintiff. that has enabled Defendants arbitrage trading to reap riskless huge profits, in breach of the NDA's between the parties. This is **Level 1** of Defendants' **3-Level Fraud**.

      **Level 2 Fraud** consists of a 3 Prong Scheme to defraud the Court and Plaintiff: In the *The 1st Prong*, Defendants mischaracterized Plaintiff' claims of misappropriation of trade secrets, as " 'Defs product' (nonspecific fake sequences) misappropriated or infringed ACE." ("Defendants False Claims," implying "Plaintiff stole ACE from Defs").

The *2nd Prong*. Defendants massively spoliated and fabricated their sequence records, misrepresented their discovery production, and withheld "apparently relevant" information, such as the sequences used by TYB (ACE and ACE derivative seq" the TYB-RCS production code.

The *3rd Prong*, Defendants submitted false declarations to mislead the Court.

      **Level 3 Fraud.** In the middle of 2012, Defendants bought off Plaintiff's former lead counsel (Todd S. "Collins"), in collusion and conspiracy to mislead the Court. Collins misled the Court to suddenly close discovery while allowing Defendants to withhold direct key evidence in violation of five court orders by relying on Defendants' 3 Prong Scheme, and which procured the orders of Sept. 5, and Feb. 8, 2013.

When Plaintiff's new counsel attempted to move for a formal Rule 37(b) spoliation sanction motion in October 2019, Defense counsel finally admitted that Collins secret withdrew *Plaintiff's* Rule 37(b) spoliation sanction against Defendants and  supported by the 4th Fan Decl. in a joint-call with Defense counsel and the Court during the morning of June 18, 2013,  after it had been filed by another attorney of *Plaintiff's* the night before, in order to exclude the evidence of Level-1 and Level 2- fraud as described in the 4th Decl. of Dr. Jianqing Fan, and framed Plaintiff for contempt for the purported violation of a scheduling order, and procured the orders of March 26, and July 15, 2014

Since 2018, when Plaintiff's current counsel filed motions and objections under FRCP 56(d), 56(h) and 54(b) seeking, reconsideration of the Sept. 5, 2012 and Feb. 8, 2013, orders, Defendants have never addressed the substance of any allegations in these motions that supported by the undisputed evidence of the 4th Fan Decl of June 2, 2013, but opposed with the same "relitigation" objection. Defendants willfully misrepresented to M.J. Cave and C.J. Swain that M.J. Pitman had considered and rejected the Rule 37(b) Spoliation Sanction Motion of June 17, 2013, and which contained the same allegations and evidence. Defense counsel admitted that Collins had secretly withdrawn the entire motion in a joint call with them on June 18, 2017.

The allegations and new evidence of the 3-Level-Fraud are admissible, but has never been considered by the District Court. Defendants and Collins' conspiracy and collusion misled the District Court to dismiss the purported "Plaintiff's" claim (in reality, Defendants' False Claim) and this Litigation. In other words, the court dismissed Plaintiff's claim because it is undisputedly *Plaintiff* did not steal *Defendants*' code to generate ACE sequences. Defendants have admitted that they breached NDA between the parties, but the court, nonetheless awarded attorneys' fees, that was contrary to the NDA and the laws protecting trade secrets. Thus, the appeal follows.

Defendants and Collins also colluded to deny Plaintiff's current counsel to have the essential court documents for the litigation and now for the appeal. As early as 2021, C.J. Swain noted that only Defense counsel has the missing essential court records and directed Defense counsel to produce them.

We have been diligently pursuing the numerous issues with Defendants regarding their failure to comply with their obligation, first and foremost, to cure the deficiency of the current court records and the current index in the District Court. Defendants in collusion with Collins, withheld essential judicial documents from Plaintiff and the Court that are necessary to complete the record for appeal, in violation of the Federal Rules, the Local Rules, and C.J. Swain's order. Defendants have totally avoided all issues raised claiming that they do not understand

Plaintiff's requests. Plaintiff specifically listed the essential judicial documents

missing in the record and the index that Plaintiff does *not* have and must have to

complete the index and to include in the Joint Appendix. Defendants produce none

of these files which are all in their possession, but instead produced "100+ files"

which are either from public ECF files or the filings by Plaintiff's *current* counsel.

Plaintiff have made the issues as simple as possible for Defendants to provide a

straight-forward answer and production, in as many as 16 letters by Defendants'

count. Defendants have stonewalled all the issues raised in Plaintiff's letters and

confirmed their refusal to assist the S.D.N.Y Clerk to complete and to correct the

court record in violation of their obligations under the Rules and C.J. Swain's

order.

Accordingly, Plaintiff has served notifications to Defendants that Plaintiff

intends to motions in the S.D.N.Y. pursuant to the Federal Rules 10(a)(c)(e),

11(b)(2) etc. In response, Defendants filed this Motion to burden the Court and

Plaintiff with substantive motions before the record is complete, to prevent

Plaintiff from completing and correcting the court recordContrary to Defendants'

blocking " any concrete steps to move forward" Plaintiff has made the issues as

concrete and as simple as possible in numerous letters (sixteen by Defendants'

count), Defendants did not respond to these letterstonewalled them all in all of

their letters (six by Defendants' count), belying their claim of "good-faith efforts to

progress this matter." Instead, they revealed their purported response belatedly only in the Motion and only to the smallest issue. Still this underscored underscored that Defendants have been obstructing Plaintiff's effort to complete and correct the record, by filing a Motion that is in violation of the Rules. In what we hope to be the last letter, Plaintiff has completed the required meet-and-confer with Defense counsel and will move with the S.D.N.Y. *See* Ex. A to the Declaration of Peter J. Toren in Opposition to Appellee's Motion to Set Briefing Schedule and Require Leave of Court for Future Letter Filings by AAI ("Toren Decl.").

Defendants' Motion again seeks an injunction to prevent Plaintiff form exposing Defendants' fraud. The Motion failed to attached none of the rulings denying their injunction requests, but only one ruling granting injunction they fraudulently procured, concealing from this Court that the subsequent rulings by the Court has completely reversed and vacated that one ruling referred by the Motion.

## BACKGROUND

Contrary to Defendants' claim, the record in this matter establishes that Plaintiff has worked diligently to complete the record while Defendants has blocked Plaintiff's efforts.

### A. The Deficient Court Record and Index

Regarding the missing court records, Defendants and Defense counsel's obligation includes:[4]

(1) Providing of the essential court files that are missing from the court records or missing from the Index. Before the record is transmitted to the Second Circuit, the district court record must be complete, pursuant to F.R.A.P. Rule 30(a)(1) and Rule 11(b)(2). As C.J. Swain's order correctly found, Defense counsel are the only entities who have these court files. Defendants may locate the files from the email record with Collins.[5] Pursuant to the above requirements, we have asked Defendants to produce the specific missing documents to complete the Index and which are in Defendants' possession but are not in Plaintiff's possession. *See e.g., See* P. Toren Ltr. to J. Park dated January 12, 2023 [D.I. 53-1 at 1] (Plaintiff "has pointed out that numerous court documents are still missing from the Index of the court records, which are important for this appeal, . . .").

---

[4] *See e.g.*, Ltr from Peter J. Toren to J. Park dated February 22, 2023 ("Feb. 22 Letter") [D.I. 61-1]. *See* Ltr. from Peter J. Toren to O'Hagan Wolfe dated September 6, 2022 ("Sept. 6 Letter") [D.I. 34 at 1] and Ltr from P. Toren to C. O'Hagan Wolfe date November 2, 2022 ("Nov. 2 Letter") [D.I. 43-1].
[5] FRAP 10(a) requires that the court records be complete in order for the appeal brief to be prepared. However, the Feb 10 Letter argued conversely and mischaracterized Rule 10(a) and turned the Federal Rules of Appellate Procedure on its head. Defendants are not only blocking Plaintiff's efforts to complete the records but are also attempting to limit the appeal record to incomplete and deficient records.

(2) Permission and provision of the file names and identifications, and reasonable file summaries, for all files in the completed Court records and the Index, regardless, if Defendants still insist that these files must be sealed.[6] *See e.g.,* Nov. 2 Letter [D.I. 43 at 6]; Sept. 6 Letter [D.I. 34 at 1]. Pleadings without entries in Index are not available for review by the Second Circuit. Further, providing an ECF Index number with no identification whatsoever also fails to comply with Rule 11(b)(2) of the F.R.A.P. (documents must be "reasonably identified"). *See e.g.*, Feb. 22, Ltr [D.I. 61 at 2-3].

(3) Defendants must remove their blanket and baseless designations of "confidential" or "highly confidential" on all the court documents, that are contrary to C.J.Swain's standing order, IRP A(5), and the controlling authorities of Second Circuit, *see e.g*., *Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). See e.g,* Nov. 2 Letter [D.I. 43 at 2-3]; Ltr. from P. Toren to O'Hagan Wolfe dated November 30, 2022 [D.I. 46]; and Feb. 22 Ltr [D.I. 61 at 2-3].

(4) For the court files that Defendants still insist should be designated as HC or Defendants must produce motions in good faith supported by affidavits pursuant to the IRP5(A) of C.J. Swain, the Federal Rules of Appellate Procedure and Second Circuit authorities; and Defendants must produce the text-searchable redacted

---

[6] *See* Local Rule 11.1 (a).

versions for these files pursuant to the Local Rules 25.1, 25.1(j)(2), and 25.2. *See e.g,* Nov. 2 Letter [D.I. 43 at 2-3]; Feb. 22, Ltr [D.I. 61 at 2-3].

## B.  Defendants have avoided all of these issues and Plaintiff's requests .

First, regarding (1), Defendants claimed that they have produced "over 100 files," that were requested by Plaintiff**.**[7]  But, all of these files were downloaded from the public ECF system or had been previously filed by Plaintiff's current counsel. To be clear, we were not requesting that Defendants download ECF files for us or send us files that had been filed by us. *See e.g.*, Ltr. from P. Toren to O'Hagan Wolfe dated November 30, 2022 [D.I. 46]

Regarding (2) above, Defendants have never responded to our requests whether they would agree to unseal all the names in Index and to provide summaries or identification of the sealed files. *See* Feb. 22, Ltr [D.I. 61 at 2-3].

Regarding (3) above, Defendants have totally ignored our requests. Defendants still rely on blanket HC designations willy-nilly that are designed to prevent Plaintiff from assisting its counsel complete the records and the Index. Defendants have made no efforts to identify let alone establish that the HC designation for the documents is justified under the foregoing Authorities. Indeed,

---

[7] *See* Ltr from J. Park to P. Toren dated February 10, 2023 ("Feb. 10 Ltr") [D.I. 59-2 at 2].

"[t]he mere fact that information is subject to a confidentiality agreement between litigants, however, is not a valid basis to overcome the presumption in favor of public access to judicial documents." *Id.* Because Defendants have not complied with the specific requirements regarding the continued sealing of so-called "HC" documents, Defendants must immediately de-designate all "HC" Documents.

Regarding (4) above, Defendants again totally ignored our requests, and have produced no redacted files, let alone text-searchable redacted files with any of their sealed filings. Defendants have simply ignored all of their obligations. To the extent that Defendants are clinging to the notion that "Highly Confidential" documents should be treated as such, we asked Defendants to produce text-searchable redacted versions pursuant to Local Rules 25.1 and 25.2, and 25.1(j)(2). (4). To date, Defendants have not produced a single redacted file. With regard to Plaintiff's request to produce a text searchable version of the redacted 4th Fan Decl., Defendants produced the unredacted 4th Fan Decl filed by the undersigned, and then in the second production in response to our request, Defendants downloaded and produced from the public ECF system image files that were increased in size by 100 times by Defendants, which were also filed by the undersigned with great difficulty. Only in Motion, Defendant responded that they could be "OCR"ed. However, these image files created by Defendants are not proper input files and not amenable even for OCR. Only Defendants may produce

text-searchable pdf files for the Joint Appendix. Defendants completely avoid the three simple issues raised in in Plaintiff's February 3, 2023 email. *See* Feb. 10 Ltr [D.I. 59-2 at 2].

*First,* the Park Feb. 10 Ltr for the first time, purportedly addressed the issue of the pleadings and letters relating to the missing 2014 motion for summary judgment (ECF No. 246) which includes at least the four sets of documents (*See* Nov. 2 Ltr [D.I. 43 at 4), the four sets of briefs Motion for Summary Judgment, April 25, 2014.

Defendants still have not produced a single document. The Feb 10 Ltr did not provide the reason for Defendants' refusal. It simply made an opaque and elusive claim that "[w]ith respect to the first set of documents related to the 2013 motion for summary judgment, [Defendants] were unable to locate any docketed items in our records corresponding to those dates." Feb. 10 Ltr [D.I. 59-2 at 2]. The Motion gave another excuse that the briefs are not included in the Appendix unless they have "independent value." First, they must be included in the Index and record, regardless in the Appendix. Second, Plaintiff already pointed out that these files do have independent value for appeal, and are essential court documents Plaintiff must have to include in the Appendix. The briefs are part of the evidence of Collins' collusion, in contrast with the May 28, 2015 MSJ briefs.

On April 5, 2023, Plaintiff informed the Court that the issues raised by Plaintiff "all require Defendants to respond in writing and to produce the specific judicial documents. Yet all of Defendants' responses have repeatedly avoided the substance. Defendants have stonewalled our requests to complete the court record, to deprive the rights of the Second Circuit and Plaintiff to the complete record for appeal. *See* Ltr. from P. Toren to O'Hagan Wolfe dated April 5, 2023 [D.I. 70-1 at 2].

On April 18, the parties met and conferred but were not able to bridge their differences. Defendants simply reiterated their untenable position that they are under no constraints by any Rules in either the SDNY or this Court or any authorities, and get to designate or re-designate any public documents as HC or C, beyond Plaintiff's challenge.

In short, the record establishes that Plaintiff has moved with due speed to complete the record of this 20-year-old case, while Plaintiff needs the specific judicial documents that are missing from the record that are essential for the appeal. Plaintiff made the questions as simple as possible, e.g., three simple raised in our letters at least six times. Defendants have stonewalled all of the requested missing documents and have avoided our questions, including the three simple issues.

Plaintiff have requested, no less than six-time times to agree to authenticate the August 15, 2007 Transcripts, and Defendants' consent to include the Hearing and Transcripts to the Index, which are not presently included. in the index forwarded to Second Circuit the District Court (the "Current Index", D.I. 6). Defendants have not previously responded to this request six times by their count during the last five months. Now in their Motion, they finally revealed, that "[I]n the proceedings below, AAI filed the transcript in connection with its September 18, 2009 Objection to Magistrate Judge Pitman's R. & R. of August 5, 2009," (*Id*. at pg.10) and stated: "AAI's Objection was filed under seal in the District Court. For the Court's convenience, the docket number for the Objection is ECF No. 119."  Fn. 6.

However, ECF 119 of the Current Index" states only

| 10/23/2009 | 119 | SEALED DOCUMENT placed in vault.(jri) (Entered: 10/26/2009) |
|---|---|---|

However, the date "10/23/2009" of ECF No. 119 does not match the date, September 18, 2009 of the Objection. The Court will not and the Plaintiff does not know what documents are contained in ECF 119 which is sealed except that it cannot contain the August 15, 2007 Transcripts. Even it did match, the sealed entries identify no documents. Accordingly, only Defendants know their identity

and they have refused to produce and identify them in violations of Rule 12(b) of the Federal Rules of Appellate Procedure.

Defendants' belated responses in the Motion regarding to the identities of ECF No. 246, the 2014 MSJ papers, and the reduction of sealed documents are also irresponsive. *Supra.*

## ARGUMENT

Defendants have withheld missing court documents from Plaintiff and the Court, prevented the record from being completed, marked public documents as HC to prevent Plaintiff's principal from assisting its counsel, prevented AAI from filing FRAP 10(c)(e) motions, which will add their admission evidence of collusion with Collins to the record, and their attempt to mislead the Court to issue an injunction to prevent AAI from exposing their fraud.

**I.** **Defendants Motion must be denied for willful violation of FRAP 27(a)(B) and ABA 3.3**

Defendants' Motion seeks an order, *inter alia*, requiring "AAI to obtain leave of court before filing any further letters on the public docket."  Motion at . In essence, this would prevent AAI from making any filings whatsoever, because to forbid AAI from a filing "in the public ECF" is tantamount to preventing AAI from making any filing, since a filing must be filed in the ECF, according to the Court's Rules. Defendants' requested order would block Plaintiff from communicating with the Court which is necessary for appeal.

Rule 27(a)(B) of the FRAP requires that "(iii) A motion seeking substantive relief must include a copy of the trial court's opinion or agency's decision as a separate exhibit."

Defendants have sought a number of injunctions against AAI in the SDNY, but were denied. Defendants now seek to impose an injunction on Plaintiff that the trial court already has repeatedly *denied*, but the Motion insinuated that Defendants are seeking an injunction that would sustain a lower court order that *granted* an injunction.

To mislead the Court, the Motion included five trial court's opinions as separate exhibits, however the only relevant one is Ex. E, M.J. Cave's ruling of Nov. 12, 2019 ,which granted Defendants' injunction motion[8]. The Motion concealed from this Court that the cited ruling, Ex. E, was *completely reversed* by M.J. Cave. The Motion concealed that M.J Cave's Order granting Defendants' injunction, Ex. E, was *completely reversed* by Magistrate Judge Cave during the hearing of January 3, 2020, before M.J. Cave, denying Defendants' "motion for

---

[8] *Id* at 18. "Lynch Decl., Ex. E, Order of Mag. Judge Cave, ECF No. 375, at 2 (Nov. 12, 2019) (requiring pre-motion letters prior to the filing of motions at the request of Appellees)." All the other citations and the rulings attached by the Motion (Id. p. 17) are entirely irrelevant. None of these rulings, including Ex. B of Lynch Decl, "has placed limits on AAI's ability" on filing a letter or a pleading, contrary to the brazen misrepresentation by the Motion.  The Ex. C, and Ex. D, *i.e*., the of Aug. 6, 2015 and May 31, 2017, Orders of Magistrate. Judge Pitman pertained only his prior orders *permitting* Plaintiff's principal to make submissions directly to Chambers.

preauthorization"; and in M,J. Cave's Order of June 9, 2020 (ECF No. 438),

affirming the Court's denial of Defendants' "motion for preauthorization",

vacating Ex. E, the "case management order," at 17-18: *See* Ex. B, Toren Decl. M.

J. Cave's June 9, 2020 Order at 17-18 stating:

> "The Second Circuit has noted that, '… the judge may not require that
> the court's permission be secured at such a conference before a party may file
> its motion" because a court has no power to prevent a party from filing
> motions authorized by the Federal Rules of Civil Procedure.' *Eisemann v.*
> *Greene*, 204 F.3d 393, 397 (2d Cir. 2000) …The Court, in the January Stay
> Order, ultimately granted AAI's Motion to Defer, …and Defendants' Motion
> for Preauthorization was denied as noted in the January 3 Conference."

To procure Ex. E, Defendants concealed from M.J. Cave when she took the

bench from MJ Pitman in Oct 2019 that Defendants' prior two motions seeking to

strike Plaintiff's motions and for an injunction had been denied by M.J. Pitman.

Defendants' tactics of concealing items from the record and lack of candor before

this Court are reminiscent of its tactics below. *See* M.J. Pitman's order of May 28, 2019,

ECF No. 292, "ORDER denying ECF No. 292 Motion to Strike [of 12/06/2018]" and

another order ECF No. 339 by M.J. Pitman denying Defendants' motion to strike

and for injunction are in the Docket:

| | | |
|---|---|---|
| 07/11/20 19 | | MOTION to Strike \ *Notice of (I) Motion to Strike Plaintiff's Motion Under FRCP 56(h), and (II) Motion for Sanctions by Defendants* |
| 09/04/20 19 | | MEMORANDUM AND OPINION re: 317 MOTION to Strike \ Notice of (I) Motion to Strike Plaintiff's Motion Under FRCP 56(h), and (II) Motion for Sanctions by Defendants Accordingly, ..Defendants motion to strike |

|  |  | plaintiff's 56(h) motion and for sanctions is also denied. |
|--|--|--|

Defendants Motion cited only Ex. E, the single ruling, but again concealed the Second Circuit controlling authorities adverse to their request and the rulings that denied all of Defendants motions for an injunction in the Southern District of New York, including Mag. J. Cave's orders reversing Ex.E, in an attempt to mislead the Court in imposing an injunction on Plaintiff from filing letters with the Court.

In violation of FRAP 27(a)(B), Defendants lacked candor in requesting the relief to reverse the lower court's rulings, but failed to include the lower court's rulings that are adverse to their position. The Motion respectfully should be denied for violation of Rule of FRAP 27(a)(B) alone. Defendants' lack of candor towards the courts appear to be a pattern. [9] Defendants and defense counsel have also intimidated Plaintiff's witness and counsel for exposing their fraud on the court. See Ex. A.

In addition, Appellees have completely failed to make any showing that they are entitled to injunctive relief under Rule 65 of the Federal Rules of Civil Procedure and relevant Second Circuit authority.

---

[9] Ex. A, Toren's Letters to J. at 1-6, and of 3/31/2023, D.I. 70-1, p. 5, Fn. 4.

## II. Defendants Motion must be denied for violation of numerous Rules, including FRAP Rule 30(a)(1), Rule 11(b) , Rule 10(a)(c)(e), Rule 32(a)(b), and Local Rule 11.1(a). L.R. 25.1 (b)(3), L.R. 25.1 (e), and L.R. 25.2 (h), L.R. 32.1.

The Motion violated numerous Federal Rules and Local Rules. Defendants and Collins colluded to withhold missing court documents from Plaintiff and the Court. Plaintiff has notified Defendants that it is seeking the assistance of SDNY to obtain the documents. After Plaintiff has obtained the possession of the missing court documents, Plaintiff will assist the Clerk of SDNY to assemble the record and complete the Index.

Defendants Motion requested relief, *e.g*., to declare that "the [current] index is complete" and "the Ready Date" has come, is contrary to fact that the record and the index are woefully incomplete, and is in clear violation of numerous Rules. For example, Rule 30(a)(1) of the F.R.A.P. states that the documents cited by appendix must have "(a) the relevant docket entries in the proceedings below." *i.e*., that the Ready Date must be after the index is complete and only then may the Appendix be created. Before the completion of the records, pleadings without entries in Index are not part of the record and are not available for review by the Second Circuit. The "list of the documents correspondingly numbered and reasonably identified" in the record is "the Index of dockets entries instead of the entire record," Local Rule 11.1(a). This means that all the documents in the Index

"must be reasonably identified." When there is no entry in the Index, then document cannot be identified in the records. In short, the material must be docketed in the District Court below and identified on the docket sheet, the Index.

Here, it is a fact that the current Index is not complete, and none of the sealed documents in the current index can be reasonably identified. It would be impossible for Plaintiff to prepare the Appendix. No one, including the Second Circuit can identify and locate these court documents. Defendants Motion requests also violate L.R. 32.1(b).[10]

The Motion claimed Defendants produced a purported "100+ documents," in response to Plaintiff's requests, but they are all either already in the possession and had been filed by Plaintiff's *current* counsel or were downloaded from the public ECF system. Notably Defendants continued to designate documents as "Highly Confidential" or "Confidential", even if they are publicly documents, in order to hinder Plaintiff's principal from helping its counsel with the appeal.

For example, Plaintiff have requested, no less than six-time times to agree to authenticate the August 15, 2007 Transcript (that had been discovered by Plaintiff), and to consent to include the Hearing and Transcripts in the Index, Defendants

---

[10] "*L.R. 32.1(b)(6).* An appendix, .., must contain a detailed table of contents, where each document can be located, ..is sufficient to inform the court of its nature; … exhibit number or letter is insufficient."

have avoided answering this request for the last five months. Now the gave a

belated wrong response, which is still in violation of Rule 12(b). Plaintiff and the

Court have an absolute right to know the contents of the Index and to have a

complete record. The Index cannot be complete without this information.

Even if Defendants belated disclosure in the Motion was correct, Defendants

have not explained how the Appendix could cite the August 15, 2007, Transcript.

ECF No. 119 would still not be the Transcript but would likely contain other

unknown files This totally fails to meet the requirement that pursuant to F.R.A.P.

Rule 11(b)(2), that all documents in the index must be numbered and reasonably

identified.[11] *See* Plaintiff's letter of February 22, 2023 (D.I. 61-1, 61-2). Pursuant

to F.R.A.P 10(a), (c) and F.R.A.P 10(e)(2)(C), Defense counsel and Defendants

must, together with Plaintiff, assist the District Court Clerk in completing the

record and the index for the Second Circuit.

Further as CJ Swain's order has held, Defense counsel is the only entity

which can identify and provide the sealed filings to the current incomplete index

---

[11] F.R.A.P. Rule 11(b)(2) ..("When the record is complete, the district court must number the documents … and send them ..together with a list of the documents numbered and reasonably identified.")

(and the missing judicial documents, in particular, include the four sets of Motion for Summary Judgment documents contained in ECF No. 246. *Id.*).

Therefore, as Plaintiff has notified Defendants, Plaintiff will move in the Southern District of New York under FRAP 10(a)(c)(e) to complete the record. Yet the Motion is attempts to block Plaintiff's motion and its best efforts to comply with L.R. 11.1(a) and FRAP 11 (b)(2). The Motion's requests that the Second Circuit set a schedule order for SDNY and to supplant the trial court authority.

**Defendants Motion's requests are in violation L.R. 25.1 and 25.2.** Defendants Motion insists to re-designate public documents as HC in order to hinder Plaintiff's appeal and violates L.R. 25.1(a)(E), 25.1(j)(2)[12], and L.R. 25.2. Most of the documents re-blanketed HC by Defendants needed byy Plaintiff for the Appendix are not covered by a protective order, and are to be unsealed by the District Court pursuant to the Protective Order of 2005 because Defendants cannot meet the heavy burden to seal them. Their confidentiality must be decided by SDNY.  Defendants Motion seeks to force Plaintiff to seal these public documents for Defendants is  contrary to the law, and to force Plaintiff to file a motion "within

---

[12] L.R. 25.1 (a)(E) (1) "Sealed document".
 L.R. 25.1(j)(2) ..Within 7 days after the sealed document is filed, a redacted version of the document must be electronically filed on the docket,...

"7 days" after the filing of the Brief and Appendix to seal them in this Court, is in violation of the law.

The Motion has insisted that Defendants' redactions consisting of only image files of sizes up to hundreds times bigger the text files *violated of* L.R. 25.1 (e), L.R. 25.2 (h)[13] and L.R. 25.1 (b)(3), and the briefs and Joint Appendix will also be in violation of Rules 32(a)(b) and 27 of FRAP.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully request that the Court deny Defendants Motion in its entirety.

Dated:   April 24, 2023
             New York, New York

                                    Respectfully submitted,

---

[13] "L.R. 25.1 (b)(3) Format. *A PDF must be text-searchable."*
"L.R. 25.2 (h) Submission of an Appendix. *...must submit ..a text-searchable PDF of every appendix..."*

/s/PeterJ.Toren
(ptoren@andersonkill.com)
Anderson Kill
1251 Avenue of the Americas
New York, N.Y. 10020

*Attorneys for Plaintiff-Appellant*
*Advanced Analytics, Inc*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume requirements of Fed. R. App. P. 27(d)(2) (A) because it contains 5177 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Office Word in 14-point Times New Roman.

*/s/ Peter J Toren*
Peter J. Toren

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

ADVANCED ANALYTICS, INC.,

     *Plaintiff-Counter-Defendant Appellant,*

     v.

CITIGROUP GLOBAL MARKETS, INC, ET AL.,

     *Defendant-Counter-Claimants-Appellees.*

Case No. 22-1718

---

**DECLARATION OF PETER J. TOREN IN OPPOSITION TO APPELLEE'S MOTION TO SET BRIEFING SCHEDULE AND REQUIRE LEAVE OF COURT FOR FUTURRE LETTER FILINGS BY AAI**

I, Peter J. Toren, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1. I am a member of the bar of this Court and a shareholder of the law firm of Anderson Kill, counsel for plaintiff Advanced Analytics, Inc. ("Appellant") in the above captioned matter. I respectfully submit this declaration in opposition to Appellees Motion to Set Briefing Schedule and Require Leave of Court for Future Letter Filings by AAI (the "Opposition").

2. Attached hereto as Exhibits and B are true and correct copies of the following documents, which are referenced in the Motion:

Exhibit A: Letter from Peter J. Toren to Jennifer A. Park dated April 21, 2022.

Exhibit B: Opinion and Order, Advanced Analytics, Inc. v. Citigroup Global Markets, Inc. *et al.* No. Civ. No. 4 Civ. 3531 (LTS) (SLC), dated June 9, 2020.

Dated: April 21, 2023       /s/ Peter J. Toren

(ptoren@andersonkill.com)
Anderson Kill
1251 Avenue of the Americas
New York, N.Y. 10020

*Attorneys for Plaintiff-Appellant*
*Advanced Analytics, Inc.*

# Exhibit A

# ANDERSON KILL P.C.

Attorneys and Counselors at Law

1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020
TELEPHONE: 212-278-1000 ■ FAX: 212-278-1733
www.andersonkill.com

Peter Toren, Esq.
Ptoren@andersonkill.com
212-278-1093

_VIA ECF_                                                     April 24, 2023

Jennifer Kennedy Park, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006

Re:    Advanced Analytics, Inc. v. Citigroup Global Markets,
          Inc., et al, Docket #22-1718

Dear Jennifer:

We represent Advanced Analytics, Inc. ("Plaintiff"). We have raised numerous issues concerning the failure of Citigroup Global Markets, Inc. _et al_ ("Defendants") to comply with their obligation to cure the deficiency of the current court records. _See_ our numerous letters to Defendants and to the Clerk, cited in our letter to you of February 23, 2023 (D.I. 61-1, 61-2), (collectively, "Plaintiff's Letters").[1] These issues require Defendants to provide written responses and to provide the missing court documents that Plaintiff's former counsel ("Collins"), withheld from Plaintiff in collusion with Defendants, pursuant to CJ Swain's order. Yet Defendants have willfully avoided all the issues and have confirmed their refusal to cure deficiencies in the court records and to comply with their obligations under CJ Swain's order, the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure.

We have repeatedly called your attention to the numerous material misrepresentations by you and defense counsel in the briefs and hearings that have misled the lower court and which have never been corrected. This is the purpose of Plaintiff's FRAP10 (c) Statement of Evidence. Yet, Mr. Kessler's letter of January 26, 2023 (the "Kessler Letter," D.I. 47), not only failed to correct but contained new material misrepresentations.

We have notified Defendants that in order to complete and correct the court record and the index, we have no choice but would move ASAP in Southern District of New York, and on the undisputed procedural issues (that may be decided by the Clerk of Second Circuit), pursuant

---

[1] "[D.I.]" refers to the above-captioned appeal and "ECF No." refers to the case 04 Civ. 3531 (LTS)(SLC) (S.D.N.Y.), unless in quotes or otherwise noted.

New York, NY ■ Los Angeles, CA ■ Denver, CO ■ Stamford, CT ■ Washington, DC ■ Newark, NJ ■ Philadelphia, PA

**Anderson Kill P.C.**

Letter to Defendants
April 24, 2023
Page 2

to Rules 10(a)(e), 11(b)(2) of the Federal Rules of Appellate Procedure, and under Local Rules 25.1 and 25.2 of the Second Circuit.[2]

In response, after stonewalling Plaintiff's questions and strenuous efforts to complete the record, Defendants filed a 75-page motion on April 7, 2023 (Defendants "Motion") that is intended to preempt and block Plaintiff from being able to complete and correct the record, and to impose an injunction on Plaintiff's filings in the Second Circuit, in effect, to prevent Plaintiff's appeal and efforts to expose Defendants fraud.

Since you are lead defense counsel and have personal knowledge, we bring your attention to your obligation to correct misrepresentations made by you and defense counsel at your direction ("you" or "defense counsel"), pursuant to both the Rules of Professional Conduct of New York State and the American Bar Association and ("Ethical Rules") and other court rules, and to cease and desist from further misleading the Court.

<u>Defense Counsel Repeatedly Have Violated Ethics Rules</u>

As officers of the court, you and other defense counsel have the obligation under the Ethical Rules,[3] first and foremost, to present the truth to the Court and to avoid misrepresentations in all hearings or filings. For example:

ABA Rule 3.3 (Candor Toward the Tribunal) [4] provides *in part* that (a) A lawyer shall not knowingly:(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer" or "(3) offer evidence that the lawyer knows to be false…." (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or (3) offer evidence that the lawyer knows to be false….

Further, ABA Rule 8.4 Misconduct provides that :A lawyer or law firm shall not:(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;(b) engage in illegal conduct that adversely reflects on the lawyer's honesty, trustworthiness or fitness as a lawyer; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice; (f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law;

Defendants' misrepresentations led to incorrect orders and judgment in the District Court include, but are not limited to, the following:

1. Defendants consistently mischaracterized Plaintiff's claim of misappropriation of trade secrets as Defendants' False Claim (*i.e.*, the "Yield Book code generated ACE

---

[2] See Plaintiff's letters to the Clerk and to you on April 5, 2023, D.I.s 70-1, 70-2.
[3] RULES OF PROFESSIONAL CONDUCT, NEW YORK STATE UNIFIED COURT SYSTEM.
https://www.nycourts.gov/legacypdfs/rules/jointappellate/NY-Rules-Prof-Conduct-1200.pdf
[4]New York State rules have the identical provision. .

**Anderson Kill P.C.**

Letter to Defendants
April 24, 2023
Page 3

sequences," which implies that ACE is not trade secret and that Plaintiff stole Defendants' code).[5]

2. During the Sept. 5, 2012, court hearing, you and defense counsel repeatedly misrepresented that the Radak Code[6] which consists of approximately 3 C-code files (that generate only the phony Radak sequences), as the Yield Book production code ("TYB-RCS") that consists of 1000's of code files that were withheld by Defendants and that would "generate interest rate paths and prices," and procured the Sept. 5, 2012, Order. *Id.*

Intentional and deliberate misrepresentations by attorneys to deceive the court are generally considered as fraud upon the court. The Ethical Rules define "'Fraud'" or "'fraudulent'" denotes conduct that is fraudulent under the substantive or procedural law of the applicable jurisdiction or has a purpose to deceive, … or knowing failure to correct misrepresentations that can be reasonably expected to induce detrimental reliance by another." *See* ABA Rule 1.0 Fraud.

Controlling authorities hold that the detrimental reliance on attorney's misrepresentation by a court in its disposition of a case, is a quintessential type of fraud upon the court.

Defense counsel have been repeatedly made aware of their misrepresentations to the Court and the erroneous rulings procured by their misrepresentations. Defense counsel have never corrected their misrepresentations, but further deliberately misled the Court with their misrepresentations cited by the erroneous rulings, and have even made new misrepresentations in order to cover up the exposed prior misrepresentations. For example,

3. Your responses to Plaintiff's exposure of Defendants' Mischaracterization (1) again cited MJ Pitman's "direct misappropriation claim" as Plaintiff's claim, despite knowing very well that the purported "direct misappropriation claim" is not Plaintiff's claim but is Defendants' False Claim, because MJ Pitman's "direct misappropriation claim" cited your Mischaracterization (1) above .[7] Defendants' Opposition Plaintiff's Rule 59(e) and 50(b) Motion repeated Defendants' Mischaracterization that had misled MJ Pitman, and further induced detrimental reliance by the District Court to deny Plaintiff's Rule 59(e) and 50(b) Motion.

4. In order to further cover-up Defendants' Mischaracterizations (1). that were exposed by Plaintiff, Defendants further misled the Court with new variation of the prior misrepresentations, *e.g.,* Defendants' pleadings misrepresented numerical sequences

---

[5] *See e.g.,* Plaintiff's Notice of Motion pursuant to FRCP 59(e) and 60(b) for Reconsideration and Relief from Judgment; Memorandum of Law, ECF No. 467 at 2. *See also* Plaintiff's Reply Memorandum of Law in Support of its Motion for Reconsideration of Motion Pursuant to FRCP 59(e) and 60(b) for Reconsideration and Relief from Judgment, ECF No. 476 at 1.

[6] Radak Decl of August 1 2007, at 1-2, which Defense counsel held in their hands during the Sept 5, 2012, Hearing. *See* cites from Sept. 5, 2012 Hr Tr. ¶94, The Sixth Decl of Xiaolu Wang.

[7] Plaintiff's Reply of 59(e) 60(b) Motion at 1.

**Anderson Kill P.C.**

Letter to Defendants
April 24, 2023
Page 4

as "software code," and further misrepresented CJ Swain's ruling in order to support your new misrepresentations to the court in AAI-II.[8]

Defendants have claimed that that their Sequences Development and Testing Records would be helpful to Defendants' defense. However, Defendants refused to produce these Records based on their Mischaracterization (1) above. C.J. Swain called these Records "apparently relevant," and directed Defendants to produce them. In response, Defendants produced mostly fabricated records. Defendants' witnesses Teytel and Radak testified that they had destroyed the original Records after receiving Plaintiff's Subpoena and Requests For Documents, as Plaintiff's Rule 37(b) Spoliation Sanction Motion[9] of June 17, 2013 supported by the 4th Fan Decl revealed.

5. On June 17, 2013, Plaintiff filed a Rule 37(b) Spoliation Sanction Motion by another counsel. The next day, behind Plaintiff's back Collins in collusion with Defendants jointly called MJ Pitman and withdrew the Rule 37(b) Spoliation Sanction Motion.[10]

6. In October 2019, when Plaintiff's current counsel sought to file the formal spoliation motion under Rule 37(b) to sanction Defendants, Defendants were forced again to rely on Collins' collusion to block Plaintiff from filing the motion, and admitted the direct evidence of collusion (5) above, that the day after Plaintiff filed its Rule 37(b) Spoliation Sanction Motion on June 17, 2013, Collins with Defense counsel including you jointly called MJ Pitman and immediately withdrew the Rule 37(b) Spoliation Sanction Motion.

7. Collins concealed from secret withdrawal of Plaintiff's Rule 37(b) Sanction Motion from Plaintiff. *Id.* Collins also concealed from the Court his deceit to his client and that his withdrawal went against Plaintiff's express instructions. Accordingly, Plaintiff alleged that Collins' deceit to his client and to the Court, and Collins' collusion with Defendants were violation of New York Judicial Law §487 and constituted obstruction of justice by atttorneys.Yet, your briefs mischaracterized the alleged issues as "Judge' ethics."[11]

8. Obviously, since Collins has withdrawn Plaintiff's Rule 37(b) Spoliation Sanction Motion of June 17, 2013, supported by the 4th Fan Decl., the Court could not have considered Plaintiff's Rule 37(b) Spoliation Sanction Motion and supporting evidence contained in the 4th Fan Decl.

---

[8] Plaintiff's Request for Judicial Notice Documents and Fact Pursuant FRE201, ECF. No. 479 p.11.
[9] Plaintiff's Rule 37(b) Motion to Sanction Defendants for Spoliation and Violation of the Court Discovery Orders and Opposition to Defendants 37(c) Sanction Motion of June 17, 2013. Redacted, Ex. 11, the 6th Wang Decl. filed in support of Plaintiff's Motion to Defer, ECF no. 373. 04 Civ. 03531.
[10] *See* Statement of the Evidence Under Rule 10(c) of the Federal Rules of Appellate Procedure (D.I. 53-2), and the 8th Declaration of Xiaolu Wang (D.I. 53-3).
[11] Plaintiff's letter to Park, I.D. ???. *See also* Plaintiff's Rule 10(c) Statement (D.I. 53-2) and EighthWang Decl. (D.I. 53-3).

Anderson Kill P.C.

Letter to Defendants
April 24, 2023
Page 5

You were aware of this, but in subsequent oppositions to Plaintiff's motions to seek reliefs after 2018, Defendants in their filings misrepresented to MJ Cave and CJ Swain that MJ Pitman had considered Plaintiff's 37(b) sanction motion and the 4th Fan Decl., and therefore Plaintiff's motions should all be denied as "relitigations."

9. Since October 2019, when Plaintiff sought the Court's consideration of this Joint Call of Defendants' admission and other direct collusion evidence, Defendants made multiple new misrepresentations to the Court, *e.g.,* that (a) this admitted direct evidence of collusion of the joint call was the "sole evidence of collusion" in Dr. Wang's January 4, 2017 and May 31, 2017 Letters to MJ Pitman, and (b) MJ Pitman had considered and denied it in his Order of May 31, 2017.

10. To cover up this and other new evidence of admitted collusion, and to prevent the District Court from considering other evidence of Defendants' fraud including Defendants' Mischaracterization of Plaintiff's claims that were actually contained in Dr. Wang of the Jan 4, and May 31, 2017 Letters to MJ Pitman, Defendants' filings with both MJ Cave and CJ Swain misrepresented that (a) the "sole evidence" of collusion contained in the two Letters to MJ Pitman, was Collins' withdrawal of the Rule 37(b) during the joint call of June 18, 2013 and (b) MJ Pitman had considered and rejected the "sole evidence" contained in the two Letters in his May 31, 2017 Order.

11. We have reminded you that these forgoing misrepresentations are flatly contradicted by the record:

(a) neither the Jan 4, and May 31, 2017 Letters referred to the joint call or withdrawal because Collins' concealed his withdrawal from Plaintiff. And
(b) you knew that MJ Pitman never saw Dr. Wang's May 31, 2017 letter when he issued the May 31, 2017 Order. In fact, Defense counsel and Collins emailed Dr. Wang to intimidate him to withdraw his May 31, 2017 Letter for violating the May 31, 2017 Order.

Despite this, you made no efforts to correct the record.

As a result of Defendants' misrepresentations, MJ Pitman, MJ Cave and CJ Swain have never considered the direct collusion evidence admitted by Defendants. Moreover, MJ Cave June 9, 2020 Order relied and cited Defendants' misrepresentations (10), to deny Plaintiff's motions. As the result of Defendants' misrepresentations, the Court has never considered the new evidence of Level 2, 3 fraud, and the new admissible evidence of Level 1 fraud in the six affidavits that became available after September 2012.

Therefore, the FRAP 10(c) Statement is evidence of reversible error, and is essential to appeal.

The Kessler Letter made new misrepresentations to cover up the fraud that is exposed by Plaintiff's FRAP 10(c) motion.

**Anderson Kill P.C.**

Letter to Defendants
April 24, 2023
Page 6

Defendants first claimed that "… if Rule 10(c) permits the reconstruction of the June 18, 2013 phone call, the reconstruction unnecessary here because the existing record adequately reflects that:

(1) On June 17, 2013, AAI "submitted a letter . . . requesting a conference in connection with an anticipated motion for sanctions  . . ." [MJ Pitman 3/26/2014 Order, ECF 235 at 6], objections overruled, [CJ Swain Order of 7/15/2014, ECF 259]" Id. at 4."

(2) On June 18, 2013, there was a phone call between Magistrate Judge Pitman, AAI's prior counsel, and Appellees' counsel, in which AAI's prior counsel withdrew AAI's letter. See, e.g., Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc., 2020 WL 3056450, at *7–8 (S.D.N.Y. June 9, 2020) ("In support of the collusion theory, Dr. Wang argued that Collins 'and Defendants' counsel jointly called Magistrate Judge Pitman to inform him that [AAI] intended to withdraw a motion for sanctions.").

*Id*. at 4.  (1) above underscores the necessity of the Rule 10(c) Statement for a number of reasons:

First, MJ Pitman's 3/26/2014 Order did not reveal that Collins had secretly withdrawn Plaintiff's Rule 37(b) Spoliation Sanction Motion and Opposition to Defendants Rule 37 (c) Sanction Motion during the June 18, 2013, Joint Call.  Second, because of the  withdrawal by Collins MJ Pitman did not know that "Plaintiff's anticipated motion for sanction" was a motion for spoliation sanction seeking a default judgment ( "Despite the seriousness of its charges, AAI has not yet sought spoliation sanctions." *Id* at p.25). Instead, he mistakenly thought that it was   a FRCP 16(b) motion seeking to reschedule discovery that would require "good cause," *Id* at. 35-36.  Further collusion between Defendants' and Collins' also totally concealed from CJ Swain the existence of Plaintiff's 37(b) Spoliation Sanction Motion, and the 4th Fan Decl. *See* ECF. No. 220, and the 8th Wang Decl. ¶19. D.I.53-3.  Further, MJ Pitman did not know that Collins repeatedly, explicitly and expressly concealed from Plaintiff the withdrawal of the Rule 37(b) Spoliation Sanction Motion, until Defense counsel admitted to it in October 2019. ¶22.

Paragraph (2) above contains new misrepresentations that are intended to cover up the following prior misrepresentations that are in Defendants' filings with MJ Cave and which were copied verbatim by MJ Cave in her June 9, 2020 ruling: (a) Collins' withdrawal of the Rule 37(b) Spoliation Motion in the joint call before MJ Pitman was the "sole evidence of collusion" in Dr. Wang's two letters of Jan 4, and 5-31-2017 (Truth: this withdrawal evidence of collusion is Ms. Park's admission, *not* in Dr. Wang's two letters); (b) MJ Pitman had considered  the withdrawal as evidence of collusion, and had rejected it in his 5-31-2017 Order. (Truth: MJ Pitamn did not even receive Dr. Wang's 5-31-2017 Letter when he issued his 5-31-2017 order).

The Kessler Letter misleadingly states that "[o]n June 18, 2013, there was a phone call between Magistrate Judge Pitman, AAI's prior counsel, and Appellees' counsel, in which AAI's prior counsel withdrew AAI's letter," as coming from MJ Cave's ruling of June 9, 2020 ("In support of the collusion theory, Dr. Wang argued that Collins 'and Defendants' counsel jointly called Magistrate Judge Pitman to inform him that [AAI] intended to withdraw a motion for sanctions.")" The Kessler Letter, however, did not reveal that the entire paragraph containing the quotes reads as follows

**Anderson Kill P.C.**

Letter to Defendants
April 24, 2023
Page 7

On January 4 and May 31, 2017, Dr. Wang filed letters with the Court alleging that Collins colluded with Defendants' counsel "to thwart [AAI's] efforts to win its case, including 'framing' [AAI] for contempt by filing the Fourth Fan Decl[aration] for an improper purpose." (ECF No. 427 at 10 [Defendants' brief]). In support of the collusion theory, Dr. Wang argued that Collins "and Defendants' counsel jointly called Magistrate Judge Pitman to inform him that [AAI] intended to withdraw" a motion for sanctions. (Id. at 11). In granting Collins' motion to withdraw, Judge Pitman noted that Dr. Wang's claim failed to cite "any evidence, that [Collins] colluded with [D]efendants' counsel to file deficient papers in opposition to [D]efendants' motion for summary judgment." (ECF No. 275 at 2)

Thus, MJ Cave was quoting the misrepresentation verbatim from Defendants' brief ("Id. at 11") that "[i[n support of the collusion theory, Dr. Wang argued that Collins 'and Defendants' counsel jointly called Magistrate Judge Pitman to inform him that [AAI] intended to withdraw a motion for sanctions. "

The misquote in (2) above omits the critical part "in Dr. Wang's Letters of Jan 4, May 31, 2017" from MJ Cave's ruling, and is intended to mislead the Second Court into making the following potential wrong conclusions:

First, Defendants mischaracterized Collins' withdrawal of Rule 37(b) sanction motion in the Joint Call as the citation from MJ Cave's rulings, when in reality this withdrawal in the Joint Call is direct evidence of collusion as admitted by Defendants.

Second, by omitting "in Dr. Wang's Letters of Jan 4, May 31, 2017. " from MJ Cave's ruling, Defendants covered up their misrepresentation that the joint call was "the sole evidence [of collusion] in Dr. Wang's Letters of Jan 4, May 31, 2017. " Not only did Defendants still fail to correct their prior misrepresentations to MJ Cave and CJ Swain that "the joint call was the sole evidence in the two Letters," after Plaintiff has exposed the misrepresentation numerous times, but Defendants doubled-down their misrepresentations to further mislead the Second Circuit.

Third, the Kessler Letter's partial quote purportedly from MJ Cave (which was copied verbatim from Defendants' brief) misrepresented that MJ Cave had also considered the joint call as evidence of collusion, when in reality MJ Cave was misled by the Defendants' misrepresentations and mistakenly thought MJ Pitman had considered this sole evidence in the two Letters and, accordingly, MJ Cave explicitly failed to consider it in her June 9, 2020 Ruling.

Defendants misled MJ Cave to believe that: (1) the January 4 and May 31, 2017, letters[12] contained the withdrawal evidence of collusion, whereas in fact, neither referred to it. Only through the admission of Defense counsel, in October of 2019, did Dr. Wang learn for the first time that Collins had withdrawn the Rule 37(b) sanctions motion; and that (2) MJ Pitman's May 31, 2017 Order had rejected it. Thus MJ Cave found,"[a]ccordingly, and because the Court (MJ

---

[12] The Jan 4, 2017, Letter contained evidence that Collins' embracement of Defendants False Claim as Plaintiff's claim in his MSJ "Opposition" brief of May 28, 2014, on which MJ Pitman mistakenly relied on in order to dismiss Plaintiff's claim. The May 31, 2017 Letter contained numerous pieces of collusion evidence that have never been considered by the Court, and have been covered up by Defendants' misrepresentations. See ¶¶29-33, The 8th Wang Decl, D.I. 53-3.

**Anderson Kill P.C.**

Letter to Defendants
April 24, 2023
Page 8

Pitman) has already rejected AAI's collusion allegations, see *supra* Section III.A.3.a, the portion of the Motion for Reconsideration with respect to the Amended Award of Attorney's Fees is DENIED." *Id.* at 20.

In sum, the Kessler Letter's new misrepresentations "doubled down" and further covered up prior misrepresentations by Defendants in the record. Paragraph (2) above underscores even more the necessity of the Rule 10(c) Statement of Evidence.

The Authorities in the Kessler Letter actually support that the filing of Plaintiff's FRAP10(c) motion and Wang's 8th Decl is entirely appropriate, necessary and essential for the appeal.

Not only did the Kessler Letter fail to present any valid legal or factual basis to oppose Plaintiff's proposed Statement of Evidence under FRAP 10(c),[13] it completely failed to rebut Plaintiff's authorities. *See* Plaintiff's Jan. 12, 2013, Letter.

The Kessler's Letter relied a single case: "it is far from clear whether Rule 10(c) permits the reconstruction of such a call. *See, e.g..,* Thomas v. City of New York, 1997 WL 639242, at *1 (S.D.N.Y. Oct. 16, 1997) (noting that Rule 10(c) is designed to apply to the types of proceedings at which evidence is taken and which are typically stenographically recorded)." Id at 4,"

However, for a number of reasons, this case provides no support to Defendants' position. First, Defendants failed to note that this case was decided under a prior version of Rule 10(c) of FRAP. Rule 10(c) that was amended in 1998.

Second, even if we would apply the language of the prior version, *Thomas* is limited to the situation of only "oral arguments." *Thomas* noted that Rule 10(c) "is designed to apply to the types of proceedings at which evidence is taken and which are typically stenographically recorded." *Id.* Even according to *Thomas*, FRAP 10(c) still covers the Joint Conference Call and the rulings in this instance case, because "the evidence" – the 4th Fan Decl. has been *taken [out]* of the consideration because of the withdrawal of key evidence by Collins, and the collusion evidence of that withdrawal by Collins must also be covered by FRAP10(c) Statement of Evidence. As Thomas court indicated, when the evidence is presented for the court and implicated as in this instance, FRAP 10(c) is necessary, whereas in *Thomas* only arguments and no evidence was involved. Here, by contrast, little or no recollection is required, simply evidence that during the Joint Conference Call, Collins withdrew the Rule 37(b) sanctions motion that included evidence contained in the 4th Fan Decl. This is very different from a oral argument.

The other cases cited in footnotes in the Kessler Letter actually support Plaintiff that that FRAP10(c) covers the Joint Conference Call, all the subsequent court rulings, and all of our FRCP 10(c) Statement of Evidence, and the evidence as set forth in the 8th Wang Declaration.

In *United States v. Garcia–De La Rosa*, 832 F.3d 128, 131–32 (2d Cir. 2016), the court stated: "inexplicably, [Degante-Galano] has taken no steps, available to him under Rule

---

[13] (Plaintiff's September 6, 2022 letter (ECF no. 35-1), January 12, 2023 letter (ECF no. 47) and on December 28, 2022 letter (ECF no. 49)),

**Anderson Kill P.C.**

Letter to Defendants
April 24, 2023
Page 9

10(c) of the Federal Rules of Appellate Procedure, to accommodate the fact that the complete transcript is unavailable.[2] Had he done so when the problems with the transcript first came to light, it is highly likely the parties and the district court would have been able to fill in the material gaps in the record of what transpired at the Rule 11 proceedings." Of course, that is exactly what Plaintiff is seeking to do

Second, citing *United States v. Weisser*, 417 F.3d 336, 342–43 (2d Cir. 2005), the court held that Garcia-De La Rosa also failed to demonstrate "'specific prejudice to his ability to perfect an appeal.'" Here, by contrast, this is exactly what Plaintiff's FRCP 10(c) Statement of Evidence and the 8th Wang Declaration are necessary. All the contents in Plaintiff's FRCP 10(c) Statement of Evidence and the 8th Wang Declaration are evidence demonstrating the specific prejudice to Plaintiff. Therefore, they are all required. Some are direct evidence of Collins' fraud and collusion with Defendants, e.g., Collins' withdrawal of 37(b) Spoliation Motion and Opposition to Defendants' 37(c) Motion in the Joint Call was concealed by Collins from Plaintiff and against Plaintiff's express instructions.

Further, according to *Weisser*, "[p]rejudice exists if the record is "so deficient that it is impossible for the appellate court to determine if the district court has committed reversible error." *Id.* (internal quotation marks omitted). Moreover " inability to raise an ineffective assistance claim due to gaps in the record may support a claim of specific prejudice. *See Todd,* 287 F.3d at 1163–64." *United States v. Weisser*, 417 F.3d 336, 343 (2d Cir. 2005)

Collins' secret withdrawal of the Rule 37(b) sanction motion and supporting evidence is evidence of collusion as admitted by Defendants. Defendants subsequent misrepresentation that the court had already considered this evidence prevented the Court from granting relief to Plaintiff, and is extremely prejudicial. Accordingly, the events transpired in connection to the Joint Call and the subsequent court rulings are proper subjects under FRAP10(c), all confirmed by the specific prejudice.

*Weisser* also cited *United States v. Todd*, 287 F.3d 1160, 1162–65 (D.C. Cir. 2002), in which the parties and the *Todd* court determined that many of Todd's claims rely at least in part on facts neither fully litigated nor part of the appellate record." "Todd's ineffective assistance claim likewise depends on facts missing from the record." *Id*. Thus, the court relied on the affidavits of the FRAP 10(c) movant: "In an affidavit submitted to the district court, [the movant ] recalled that "at no time did the subject of Special Parole come up," nor was he "advised by the court ... of the essential elements of the second of the two counts." Here, by contrast most of Plaintiff's claims have never been litigated, let alone "fully litigated," and accordingly, Plaintiff's Rule 10(c)statement is necessary.

"Todd's ineffective assistance claim likewise depends on facts missing from the record." *Id,* while as here, Defendants admission is critical evidence of collusion that missing from the record. Therefore, the FRAP 10(c) Statement is essential to Plaintiff's appeal.

**Anderson Kill P.C.**

Letter to Defendants
April 24, 2023
Page 10

"If we do not vacate the plea, Todd urges us to remand the record in this case (i.e., his appeal) to the district court for evidentiary proceedings. … We agree with the parties that many of Todd's claims rely at least in part on facts neither fully litigated nor part of the appellate record." *Id.*

Because of Defendants' misrepresentations as listed above, the evidence, even Plaintiffs' claims of misappropriation have never been litigated, much less "fully litigated" and Plaintiff has been denied its constitutional rights for trial. In sum, based on this alone, the case must be remanded."

Defendants also cited *United States v. Fackrell*, 991 F.3d 589 (5th Cir. 2021) which is totally inapposite. It involved testimony regarding a jury charge conference that was not even included in the Opening Brief, nor contained in the Appendix. "Furthermore, Defendants have not demonstrated that these omissions are substantial or significant." Whereas our FRAP10(c) and the 8th Wang Declarations include the evidence showing substantial prejudice. In fact, the *Fackrell* court held:

Where the defendant has new counsel on appeal, the court will reverse if (1) a missing portion of the record is substantial and significant, and (2) the trial court's reconstruction is not a substantially verbatim account. *See United States v. Pace*, 10 F.3d 1106, 1124–25 (5th Cir. 1993).

In comparison, here the issues are not insubstantial and insignificant "conference of witness testimony by a government witness," but are substantial and significant, leading to the suppression of key evidence, including the 4th Fan Decl, Plaintiff's 37(b) spoliation sanction motion, the unopposed Defendants' 37(c) sanction motion against Plaintiff, Defendants Mischaracterization of Plaintiff's Claims and the dismissal of Plaintiff's case. The District Court did not reconstruct let alone provide "a substantially verbatim account" but it conducted a trial, and relied on all of Defendants' misrepresentations in subsequent rulings, and never considered any evidence of Defendants' fraud.

In the last case cited by Defendants, *Chestnut v. Hall, 284* F.3d 816, 820–21 (7th Cir. 2002), the appeallate court upheld a decision by the district court to accept a FRAP10(c) statement, despite that it involved a immaterial issue, "so as to afford[] the appellants the full opportunity to alert the court to their objections so that any errors could be corrected prior to deliberations." :

Lastly, the appellants filed a Statement of Proceedings pursuant to Rule 10(c) of the Federal Rules of Appellate Procedure in order to incorporate an objection they made to proposed Instruction No. 23 at a pre-trial conference into the record on appeal. After the appellees filed a Verified Response, the district court entered an order settling the record that acknowledges the appellants' objection to proposed Instruction No. 23

There the court described that the Rule 10(c) statement was "only a tangential insubstantial, insignificant conference regarding Instruction 23 to support its objection in

**Anderson Kill P.C.**

Letter to Defendants
April 24, 2023
Page 11

violation of FRCP51, yet the Appellee submitted a Response to FRAP10(c) and Court settled FRCP 10(c) Statement. In contrast, Plaintiff's Rule 10(c) statement and supporting evidence contain evidence about the the admitted collusion of Collins' secret withdrawal of the 37(b) Motion and supporting evidence. Plaintiff has been denied its constitutional right to the trial.

<u>Defendants have confirmed that they intend to continue to block the Second Circuit from obtaining a complete set of court records and prevent Plaintiff's principal from assisting counsel</u> in violation of the Federal Rules of Appellate Procedure, Second Circuit Authorities and CJ Swain's Order.

Defendants have sought to use a decades old protective order to prevent Plaintiff's principal from assisting counsel throughout this litigation. They pervasively abused the protective order to block Plaintiff's principal from help its counsel. According to Defendants, they do not need to comply with the Federal Rules of Civil Procedure, and CJ Swain's IRP, because the matter is before Second Circuit, and thus there is no reason to comply with Second Circuit authorities and the FRAP, because of a procedural convenience for initial designation of initial discovery provided in an obsolete protective order entered 17 years ago in the District Court. Under this theory, Defendants in essence would be beyond the law, and able to designate public information as Highly Confidential in order to hinder Plaintiff's efforts to complete the records and to prepare for appeal. Defendants' position is untenable and is even contrary to the protective order. We have no choice but to move to challenge Defendants designations.

<u>Defendants have stated no factual or legal basis either to prevent Dr. Wang from assisting counsel with the appeal.</u>

The Kessler Letter did not address the substantial merits in Plaintiff's January 12, 2023, Letter, but made the baseless allegation of "unauthorized practice law" against Plaintiff's principal, without providing any substance in facts or law. Kessler's Letter questioned improperly counsel's "lack of involvement" in January 12, 2023 filing accompany the Eighth Wang Declaration. A more appropriate question is Defense counsel' "involvement" in the declarations by Defendants witnesses, Radak, N. Polish and R. Russell that have been shown to be false or misleading.

It is yet again an improper attempt to intervene and hamper Plaintiff's principal's help to its counsel. Defendants totally failed to find any rules, any laws or any cases or any orders to support their objection to the totally appropriate help from Plaintiff's principal to its counsel.

Certainly, Plaintiff's principal has a right to assist its counsel in this case that was originally filed in 2004, and current counsel only entered an appearance in 2019. Defendants have raised this issue a number of times without providing any authority and without success which should settle the issue once and for all. The apparent real reason for Defendants to raise this issue yet again is to seek to block Dr. Wang from assisting counsel in the appeals. Further,

**Anderson Kill P.C.**

Letter to Defendants
April 24, 2023
Page 12

there is no doubt that the communications between counsel and Plaintiff are protected by the attorney-client privilege.

Defendants' tactics are nothing new. Defendants pervasively abused the protective order to block Plaintiff's principal from help its counsel, during the entire litigation. Defendants' attempts should be viewed as attempts to silence a potential witness, Dr. Xiaolu Wang, from exposing Defendants' fraud on the Court. This may raise the concern of violation of the code prohibiting obstruction of justice. The Court has rejected and denied all of Defendants' prior repeatedly attempts more than 7 times. Indeed, Defendants made same attempts \to strike the 4th, 6th, 7th Declarations of Dr. Wang, but have all been flatly rejected and denied by the Court, including by MJ Pitman, MJ Cave and finally CJ Swain. The latest denial by CJ Swain called Defendants' attempts seeking "injustice".[14] Now Defendants' continuation of this abuse and violation are part and parcel of their attempts to block Plaintiff's appeal.

Defendants previously relied only on MJ Pitman May 31, 2017 Order, and claimed that this Order directed "Dr. Wang [to] submit briefs only through an attorney." However, this has blown up on them. Defendants and Collins had already sought for MJ Pitman to sanction Dr. Wang for filing the May 31, 2017 Letter on June 1, and 5th, 2017, but MJ Pitman ignored and denied Defendants and Collins' requests.

Finally, in order to cover up that Defendants have admitted that they and Collins colluded and Defendants retracted their prior accusation that Dr. Wang's May 31, 2017 Letter violated May 31, 2017 Order. *See* Plaintiff's letter of February 22, 2023, to Defendants, at 5, Fn.9. Also see Para. 11, *supra*.

++++++++++++++++

Plaintiff also proposes the following additional paragraph to the Rule 10(c) Statement of Evidence:

"Plaintiff states that Collins concealed from Plaintiff his withdrawal of <u>Plaintiff's Rule 37(b) Spoliation Sanction Motion and Opposition to Defendants Rule 37(c) Letter Motion</u>. Collins also concealed from the Court his deceit to this client and that the withdrawal was against Plaintiff's express instructions, as supported by the 8th Declaration of Xiaolu Wang and attached communications between Collins and Dr. Wang therein."

Pursuant to Rule 10(c), please let us know if Defendants consent to or object to this statement, and their position on each and every other statement, within 14 days before we file the FRAP 10 (c) Motion with the Southern District of New York.

We expect that this reply letter is the last letter to fulfill our obligation under CJ Swain's I.R.P before our filing the FRAP10(c)(e) motions before Her Honor. Since FRAP 10(c) requires us to serve this letter and Defendants have rejected our repeated request for consent of service by emails, we have no choice but to file this Letter on ECF.

_____

**Anderson Kill P.C.**

Letter to Defendants
April 24, 2023
Page 13

Sincerely,

Anderson Kill, P.C.

/s/Peter Toren

Peter Toren

Attorneys for Plaintiff-Appellant
Advanced Analytics, Inc.

cc: All counsel of record (via ECF)

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADVANCED ANALYICS, INC.,

                      Plaintiff,

    against

CITIGROUP GLOBAL MARKETS, INC. et al.,

                  Defendants.

CIVIL ACTION NO.:  4 Civ. 3531 (LTS) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

Before the Court is the Motion of Plaintiff Advanced Analytics, Inc. ("AAI") for reconsideration of two of the Court's pretrial orders in this action (the "Motion for Reconsideration").  (ECF No. 423).  In support of its Motion for Reconsideration, AAI filed the Fourth Declaration of Xiaolu Wang, Ph.D., dated April 23, 2015 (the "Wang Declaration").  (ECF No. 426).  Defendants subsequently sought a conference regarding their anticipated motion to exclude the Wang Declaration ("Defendants' Conference Motion").  (ECF No. 429).  The parties each assert that their adversary's filings are frivolous and seek their respective fees and costs arising from the current briefing.  (ECF Nos. 427–28).

For the reasons set forth below:  (1) AAI's Motion for Reconsideration is DENIED; (2) Defendants' request to exclude the Wang Declaration is GRANTED IN PART AND DENIED IN PART; (3) the parties' requests for costs and fees are DENIED; and (4) Defendants' Conference Motion is DENIED.

# I.    BACKGROUND

### A.    Factual Background

Given the lengthy history of this action, the Court assumes the reader's familiarity with the background of this case and references, where appropriate, those facts relevant and necessary to explain this Opinion & Order.  A comprehensive recitation of the events giving rise to this action is set forth in the Honorable Henry B. Pitman's Opinion & Order dated March 26, 2014 granting Defendants' motion for expenses.  (ECF No. 235) (the "March 2014 Order").

This action has been pending for over sixteen years and stems from AAI's allegations that Defendants misappropriated AAI's sequences of numbers used to aid in pricing mortgage-backed securities and incorporated them into Defendants' software, known as the Yield Book, or used them to create new sequences for use in the Yield Book.  (ECF No. 235 at 3).

### B.    Procedural Background

In January 2012, Judge Pitman set a revised discovery schedule ordering the submission of AAI's expert disclosures by May 17, 2012 and completion of all discovery by July 17, 2012; he also admonished the parties to raise discovery disputes promptly.  (ECF No. 235 at 3).  Despite these instructions, on July 18, 2012, past the May 17, 2012 deadline, AAI attempted to submit a "reply expert report from Dr. Jinqing Fan" (the "Fan Reply").  (Id. at 3–4; see ECF No. 226 at 121, 146–49).  Defendants moved to strike the Fan Reply as untimely and not constituting "a proper 'reply,' because it contained new information and opinions that were not within the scope of either parties' prior expert disclosures."  (ECF No. 235 at 4).  Judge Pitman granted Defendants' motion to strike the Fan Reply (ECF No. 174), AAI objected, and on February 8, 2013, the

Honorable Laura T. Swain, United States District Judge, terminated AAI's objections pending Judge Pitman's ruling on a pending motion for reconsideration (ECF No. 241).

The parties then briefed Defendants' "motion for summary judgment and their Rule 702/<u>Daubert</u> motion to exclude Dr. Fan's initial report and testimony based on that report." (ECF No. 235 at 5). AAI's "opposition to both motions included the Fourth Fan" Declaration (the "Fourth Fan Declaration"), which incorporated by reference and relied on the entire stricken Fan Reply. (<u>Id.</u> at 6). On June 10, 2013, Defendants requested a conference for their "anticipated motion to strike the Fourth Fan [Declaration] on the grounds that it was untimely and contained entirely new bases for AAI's claims." (<u>Id.</u>) On June 17, 2013, AAI requested a conference for its "anticipated motion for sanctions against defendants . . . based on allegations of discovery misconduct set forth in the Fourth Fan [Declaration]." (<u>Id.</u>) AAI sought to use the Fourth Fan Declaration in support of its motion for sanctions. (<u>Id.</u> at 15). On June 19, 2013, Judge Pitman "directed the parties to complete their briefing on Defendants' motion to strike the Fourth Fan [Declaration] and . . . deferred consideration of AAI's contemplated motion for sanctions until the dispute concerning the Fourth Fan [Declaration] was resolved." (<u>Id.</u> at 7).

On July 10, 2013, "pursuant to Rules 16, 26, and 37 of the Federal Rules of Civil Procedure," Defendants moved to strike the Fourth Fan Declaration, to "exclude Dr. Fan's 2007 Report and testimony concerning the opinions set forth in that report," and for an award of "their expenses, including attorney's fees and costs, incurred in connection with" the motion. (ECF No. 235 at 1–2).

In the March 2014 Order, Judge Pitman held that AAI was precluded from using the Fourth Fan Declaration to oppose Defendants' motion summary judgment "or in connection with any

other dispute involving the merits of the claims and defenses" because it was "untimely under

[his] scheduling Order[,] was served in violation of Rule 26(a)(2)," and went "beyond Dr. Fan's

timely produced expert disclosures."  (ECF No. 235 at 16, 23, 30–31).  Judge Pitman permitted

AAI the limited use of "section G, ¶¶ 257–73" of the Fourth Fan Declaration only to respond to

"Defendants' rule 702/Daubert motion," and

> [g]iven the age of this matter, the fact that the Fourth Fan [Declaration did] not
> rely on information first produced after the close of discovery, [his] admonition in
> January 2012 that discovery disputes be raised promptly and the almost year-long
> gap between the close of discovery and the earliest date on which a sanctions
> motion could possibly have been made,

he precluded AAI from using the Fourth Fan Declaration in support of its motion for sanctions.

(Id. at 32, 34–36).  Finally, Judge Pitman found that Defendants were "entitled to recover some

of their attorney's fees and costs" from "AAI and its counsel," but only half of "the fees and costs

incurred in making" their motion "as a result of AAI's failure to comply with the Scheduling Order

and Rule 26(a)(2)."  (Id. at 36–37).

Judge Pitman ordered Defendants to submit their application for fees and costs within

20 days of his order, with AAI's response due 20 days thereafter.  (ECF No. 235 at 38).  Defendants

timely submitted their application for fees and costs under seal requesting an award of

$91,246.55 (the "Fee Application") (ECF No. 242), and AAI timely submitted a response under

seal (ECF No. 246).

On July 29, 2020, Defendants moved to redact the parties' May 28, 2019 transcript (the

"Motion to Redact") to shield confidential material subject to the parties' Stipulation and

Protective Order Governing Confidential Material, dated March 14, 2005.  (See ECF Nos. 314,

320–21, 330).  On August 12, 2019, AAI opposed the Motion to Redact.  (ECF No. 325).  On

November 8, 2019, AAI requested that the Court defer ruling on the Fee Application and instead first investigate alleged collusion between its prior counsel, Mr. Todd S. Collins, ("Collins") and Defendants' counsel ("Motion to Defer"). (ECF Nos. 366–7, 371). On November 11, 2019, Defendants moved to require AAI's preauthorization by the Court for future filings ("Motion for Preauthorization") and to strike AAI's Motion to Defer. (ECF Nos. 369–70).

On November 12, 2019, the Court issued an order: (1) granting Defendants' Motion to Redact and striking AAI's opposition; (2) denying AAI's Motion to Defer and granting Defendants' motion to strike the Motion to Defer; and (3) granting in part and denying in part Defendants' Motion for Preauthorization, ordering that "[b]efore **any party to this action** may file **any** motion for **any** relief, including but not limited to discovery disputes, the party must" first hold a meet and confer and, "if the parties are unable to resolve their dispute, the party seeking to make a motion must file a Letter-Motion requesting a Local Civil Rule 37.2 Conference" (the "Case Management Order"). (ECF No. 375).

On December 5, 2019, the Court granted Defendants' Fee Application in part, ordering AAI to pay Defendants $57,270.91 in attorney's fees ("First Award of Attorney's Fees"). (ECF No. 389). On December 19, 2019, AAI filed a letter-motion for leave to file a motion for reconsideration of both the Case Management Order and the First Award of Attorney's Fees ("AAI's First Request for Reconsideration"). (ECF No. 394). On December 27, 2019, Defendants filed their opposition (ECF No. 400), and AAI replied on January 2, 2020 (ECF No. 401). On January 3, 2020, AAI filed a second letter-motion for leave to file a motion for reconsideration of the Case Management Order and First Award of Attorney's Fees, with more focus on the Case Management Order ("AAI's Second Request for Reconsideration"). (ECF No. 402). On January 3,

2020, the Court held a Telephone Conference (the "January 3 Conference") in which it granted AAI leave to file a motion for reconsideration of the Case Management Order and denied AAI's request to stay payment of attorney's fees as directed in the First Award of Attorney's Fees. (ECF No. 406).

On January 6, 2020, AAI filed a letter-motion directed to Judge Swain requesting a stay of the First Award of Attorney's Fees, arguing that it was incorrect in part because the March 2014 Order required that AAI and its former counsel be jointly responsible for the payment of the award ("AAI's Motion to Stay"). (ECF No. 407 at 2). On January 8, 2020, this Court issued (1) an Amended Opinion & Order replacing the First Award of Attorney's Fees (ECF No. 410) (the "Amended Award of Attorney's Fees"), directing "AAI and its counsel" to reimburse Defendants' attorney's fees (id. at 15); and (2) an order staying the Amended Award of Attorney's Fees "pending the Court's consideration and ruling as to AAI's anticipated motion for reconsideration" ("January Stay Order") (ECF No. 409 at 2). On January 9, 2020, Judge Swain denied AAI's Motion to Stay as moot. (ECF No. 414).

On January 8, 2020, Defendants filed their opposition to AAI's Second Request for Reconsideration (ECF No. 411) and on January 9, 2020 AAI filed its reply (ECF No. 417). During a Telephone Conference on January 15, 2020, the Court terminated AAI's Second Request for Reconsideration as moot given AAI's confirmation that its forthcoming motion for reconsideration would address both the Case Management Order and the Amended Award of Attorney's Fees. (ECF No. 420).

On January 17, 2020, AAI filed the Motion for Reconsideration. (ECF No. 423). On February 6, 2020, in support of its Motion for Reconsideration, AAI filed a redacted version of the

Wang Declaration. (ECF No. 426). On February 7, 2020, Defendants filed their opposition to the

Motion for Reconsideration. (ECF No. 427). On February 14, 2020, AAI filed its reply. (ECF

No. 428). On February 24, 2020, Defendants filed Defendants' Conference Motion. (ECF

No. 429). On February 27, 2020, AAI filed its opposition. (ECF No. 430). On February 28, 2020,

Defendants filed their reply. (ECF No. 431). On March 30, 2020, the Court denied AAI's request

to file a sur-reply. (ECF Nos. 432, 434).

## II.    APPLICABLE LEGAL STANDARD

### A.  Motion for Reconsideration

Local Civil Rule 6.3 and Federal Rule of Civil Procedure 60(b) govern motions for

reconsideration. Local Civil Rule 6.3 specifies timing, giving the moving party fourteen days after

an entry of judgment to file a motion for reconsideration. Local Civ. R. 6.3. Rule 60(b) provides

> On motion and just terms, the court may relieve a party or its legal representative
> from a final judgment, order, or proceeding for the following reasons: (1) mistake,
> inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that,
> with reasonable diligence, could not have been discovered in time to move for a
> new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or
> extrinsic), misrepresentation, or misconduct by an opposing party; (4) the
> judgment is void; (5) the judgment has been satisfied, released or discharged; it is
> based on an earlier judgment that has been reversed or vacated; or applying it
> prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Rule 60(b) affords "'extraordinary judicial relief'" that "can be granted 'only upon a

showing of exceptional circumstances.'" Kubicek v. Westchester Cty., No. 08 Civ. 372 (ER), 2014

WL 4898479, at *1 (S.D.N.Y. Sept. 30, 2014) (quoting Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir.

1986)). The reconsideration standard "is strict," and reconsideration is generally only granted

upon a showing of "controlling decisions or data that the court overlooked—matters, in other

words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).

A motion for reconsideration is not "an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." Associated Press v. U.S. Dep't of Def., 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). It is not a way to "advance new facts, issues or arguments not previously presented to the Court." Polsby v. St. Martin's Press, Inc., No. 97 Civ. 960 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (internal citation omitted). The "moving party bears the burden of proof." Freedom, N.Y., Inc. v. United States, 438 F. Supp. 2d 457, 462 (S.D.N.Y. 2006).

The decision to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'" Premium Sports Inc. v. Connell, No. 10 Civ. 3753 (KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting Aczel v. Labonia, 584 F.3d 52, 61 (2d Cir. 2009)).

In addition, the Court also has authority under Rule 54(b) "as well as the inherent power of the court, to reconsider a prior decision at any time before the entry of final judgment." Richman v. W.L. Gore & Assocs., 988 F. Supp. 753, 755 (S.D.N.Y. 1997). Rule 54(b) provides that

> any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Reconsideration is valid under Rule 54(b) when there is "an intervening change of controlling law," new evidence becomes available, or reconsideration is needed to "correct a clear error or to prevent manifest injustice." Richman, 988 F. Supp. at 755. Requests for relief under Rule 54(b) must be made within the time period specified in Local Civil Rule 6.3

unless "justice so requires" a deviation.  Clinton v. Brown & Williamson Holdings, Inc., 652 F.

Supp. 2d 528, 530 (S.D.N.Y. 2009) (internal citation omitted).

### III.    DISCUSSION

**A. AAI's Motion for Reconsideration**

To determine the merits of the Motion for Reconsideration, the Court must first assess

whether it can properly consider the Wang Declaration (ECF No. 426), which AAI has submitted

in support.

#### 1.    The Wang Declaration and Defendants' Conference Motion

On August 19, 2019, The American Prospect and Brandon Smith (collectively, the

"Proposed Intervenors") field a Motion to Intervene and Unseal Court Records (the "Motion to

Intervene").  (ECF No. 328).  On November 19, 2019, in light of discussions among AAI,

Defendants, and Proposed Intervenors to determine whether they could resolve the Motion to

Intervene without Court intervention, the Court ordered AAI and Defendants to work with the

Proposed Intervenors to resolve the Motion to Intervene, and notify the Court if a resolution

could not be reached.  (ECF No. 387).  The parties have been working since then to resolve the

Motion to Intervene.  (See ECF Nos. 391, 395, 412–13, 424–25, 433, 435, 436–37).

On February 5, 2020, the parties wrote jointly to the Court regarding the status of their

continued efforts.  (ECF No. 424).  The Proposed Intervenors sought a redacted version of "some

or all of the remainder of the [Fourth] Fan Declaration, [ECF No. 219]" and "other court records."

(Id. at 1).  Only eight pages of the Fourth Fan Declaration had been provided to the Proposed

Intervenors.  (Id.)  On February 6, 2020, the Court directed AAI and Defendants "to produce

redacted versions of some or all of the remainder of the Fourth Fan Declaration, as well as other court records, to the Proposed Intervenors" (the "February 6 Order").  (ECF No. 425).

AAI argues that the February 6 Order granted it permission to include the Wang Declaration as support for its Motion for Reconsideration.  (ECF No. 430).  Defendants argue that the Wang Declaration should not be considered in analyzing the Motion for Reconsideration because AAI never served it on them and, contrary to AAI's assertion, the February 6 Order, regarding the partial un-redaction of the Fourth Fan Declaration, did not give AAI the right to include the Wang Declaration as support for its Motion for Reconsideration.  (ECF No. 429).  Defendants seek a conference concerning AAI's use of the Wang Declaration to support its Motion for Reconsideration; to exclude its use; and to clarify the February 6 Order.  (Id.)

Sanctions for failure to comply with a court order are non-dispositive and within the Magistrate Judge's Rule 72(a) authority, "unless the sanction employed disposes of a claim." Seena Int'l Inc. v. One Step Up, Ltd., 15 Civ. No. 1095 (PKC) (BCM), 2016 WL 2865350, at *10 (S.D.N.Y. May 11, 2016) (internal citation omitted).  "The critical issue . . . is what sanction the magistrate judge actually imposes, not what sanction the moving party seeks."  Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., 328 F.R.D. 100, 118 (S.D.N.Y. 2018) (internal citation omitted).  Striking a pleading is a drastic sanction, generally used only when alternatives have been considered and the failure to comply was "due to willfulness, bad faith, or any fault of the party sanctioned."  Pelgrift v. 355 W. 51st Tavern Inc., No. 14 Civ. 8934 (AJN), 2016 WL 817470, at *2 (S.D.N.Y. Feb. 23, 2016) (internal citation omitted).

The "court has broad discretion to determine the type of sanction to impose upon a party, based on all the facts of the case."  Scantibodies Lab., Inc. v. Church & Dwight Co., No. 14 Civ.

2275 (JGK) (DF), 2016 WL 11271874, at *18 (S.D.N.Y. Nov. 4, 2016) adopted by, 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017) (internal citation omitted). Federal Rule of Civil Procedure 37(b)(2) provides:

> two standards—one general and one specific—that limit a district court's discretion in determining which sanctions are appropriate. First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery. Thus, the Court must select sanctions that are commensurate with the non-compliance such that they restore the prejudiced party, as nearly as possible, to the position it would have occupied had the discovery been produced and the evidence disclosed.

Chevron Corp v. Donziger, 296 F.R.D. 168, 220 (S.D.N.Y. 2013) (internal citation omitted).

In this Circuit, when determining which sanctions to impose, the district court considers the following four non-exhaustive and non-exclusive factors: "(1) the willfulness of the noncompliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." S. New England Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010) (internal citation omitted). The court may also consider the full record in the case and any prejudice to the moving party. Syntel Sterling Best Shores Mauritius Ltd., 328 F.R.D. at 120. In analyzing prejudice to the moving party, "the Second Circuit has consistently rejected a 'no harm, no foul' standard for evaluating discovery sanctions." Id. (internal citation omitted).

In January 2012, Judge Pitman set a revised discovery schedule ordering the submission of AAI's expert disclosures by May 17, 2012 and completion of all discovery by July 17, 2012; he also admonished the parties to raise discovery disputes promptly. (ECF No. 235 at 3). Subsequently, Judge Pitman struck the Fan Reply as untimely (ECF No. 174) and limited use of

the Fourth Fan Declaration, in part because of its untimeliness (ECF No. 235). The Wang Declaration is dated April 23, 2015—over three years after Judge Pitman ordered the completion of discovery.

AAI's argument that the February 6 Order granted it leave to file the untimely Wang Declaration <u>eight years</u> after the discovery deadline set by Judge Pitman is unavailing. The February 6 Order was specific to the parties' and Proposed Intervenors' effort to minimize unnecessary motion practice and progress this case toward trial. The February 6 Order directed the parties to "produce redacted versions of some or all of the remainder of the Fourth Fan Declaration, as well as other court records, to the Proposed Intervenors." (ECF No. 425 at 2). To eliminate any ambiguity, the Court now clarifies that the "other court records" in the February 6 Order meant the documents the parties and the Proposed Intervenors contemplated for unsealing. (<u>See</u> ECF Nos. 391, 395, 412–13, 424–25, 433, 435, 436–37). The February 6 Order does not mention the Wang Declaration, and neither do any of the other filings related to the Proposed Intervenors' collaborations with the parties to unseal documents on the docket.

Therefore, the Court has received the Wang Declaration and is aware of what it contains —AAI's repeated allegations of collusion, analyzed and dismissed in detail below, <u>infra</u> III.A.3.a— but has not relied on its substance in deciding the Motion for Reconsideration. Accordingly, Defendants' request to exclude the Wang Declaration is GRANTED IN PART AND DENIED IN PART.

Having ruled on all of the issues presented in Defendants' Conference Motion, that Motion is DENIED.

### 2. **Timeliness**

AAI moves for reconsideration pursuant to Federal Rule of Civil Procedure 54(b) and Local Civil Rule 6.3. (ECF No. 423 at 5). Defendants argue that AAI's Motion for Reconsideration is untimely because Local Civil Rule 6.3 "requires that a motion for reconsideration be filed within fourteen days of the order at issue, [but AAI] waited nearly forty days before indicating its intent to seek reconsideration of the Case Management Order and nearly thirty days before indicating its intent to seek reconsideration of the [Amended Award of Attorney's Fes]." (ECF No. 427 at 8).

The Case Management Order was filed on November 12, 2019 (ECF No. 375) and the First Award of Attorney's Fees was filed on December 5, 2019 (ECF No. 389). AAI's First Request for Reconsideration was filed on December 19, 2019, making it untimely at more than five weeks after the Case Management Order, but timely at exactly two weeks after the First Award of Attorney's Fees. The Court amended the First Award for Attorney's Fees with the Amended Award of Attorney's Fees, filed on January 8, 2020, (ECF No. 410), and at the Court's instruction, AAI filed its Motion for Reconsideration on January 17, 2020. (ECF No. 423).

Although AAI was late in seeking reconsideration of the Case Management Order, the Court discussed and considered its request from December 19, 2019, when the First Request for Reconsideration was filed, through the January 15, 2020 conference, when AAI confirmed that the Motion for Reconsideration would encompass the Amended Award of Attorney's Fees and Case Management Order. (See ECF No. 420).

Accordingly, the Court finds that AAI's Motion for Reconsideration is not untimely (1) with regard to the Amended Award of Attorney's Fees because it was timely filed two weeks after

entry of that order, and (2) with regard to the Case Management Order because of the Court's on-going consideration of its merits.

### 3. Case Management Order

#### a. Alleged Collusion

The principal theme of AAI's Motion for Reconsideration is the allegation that Defendants' counsel and AAI's prior counsel, Collins, colluded such that essentially every decision in this case against AAI should be reconsidered. (ECF No. 423 at 6). AAI also requests that the Court order an investigation into the alleged collusion. (Id.)

Fact discovery in this case closed in September 2007. (See ECF No 76). Following Judge Swain's adoption in part (ECF No. 124) of Judge Pitman's Report & Recommendation (ECF No. 112) granting in part Defendants' first motion for summary judgment, discovery was partially reopened in 2010 to allow additional discovery regarding the development and testing of Defendants' relevant sequences. (See ECF No. 124 at 5–6). After 18 months, on the eve of the "second close of discovery," AAI sought further discovery. (ECF No. 427 at 9). Judge Pitman rejected AAI's request, finding that AAI sought to "pursue a theory that [Defendants] produced fabricated evidence in discovery of which there seems to be really very, very little evidence, if any evidence." (ECF No. 175 at 94:17–20). Judge Swain affirmed Judge Pitman's ruling. (ECF No. 214).

In April 2013, Defendants filed a second motion for summary judgment. (See ECF No. 216). AAI's opposition allegedly attempted to "resuscitate" its unsuccessful arguments from 2012, "principally relying on the Fourth [Fan Declaration]." (ECF No. 427 at 10). Defendants then moved to strike the Fourth Fan Declaration, which the March 2014 Order granted and awarded

14

attorney's fees as a sanction.  (ECF No. 235).  On May 31, 2017, Collins was then permitted to withdraw as AAI's counsel.  (ECF Nos. 263, 275).

On January 4 and May 31, 2017, Dr. Wang filed letters with the Court alleging that Collins colluded with Defendants' counsel "to thwart [AAI's] efforts to win its case, including 'framing' [AAI] for contempt by filing the Fourth Fan Decl[aration] for an improper purpose." (ECF No. 427 at 10).  In support of the collusion theory, Dr. Wang argued that Collins "and Defendants' counsel jointly called Magistrate Judge Pitman to inform him that [AAI] intended to withdraw" a motion for sanctions.  (Id. at 11).  In granting Collins' motion to withdraw, Judge Pitman noted that Dr. Wang's claim failed to cite "any evidence, that [Collins] colluded with [D]efendants' counsel to file deficient papers in opposition to [D]efendants' motion for summary judgment."  (ECF No. 275 at 2).

After retaining new counsel, in July 2017, AAI filed a motion pursuant to Rule 56(d) (ECF No. 289), repeating the same "baseless allegation of discovery misconduct" contained it its 2012 motion to compel discovery, the Fourth Fan Declaration, and 2017 letters alleging collusion—all of which Judge Pitman had considered and rejected.  (ECF No. 427 at 11).  Defendants moved to strike this new motion, citing the previously dismissed allegations (ECF No. 293), and Judge Pitman denied the motion, finding the allegations of discovery misconduct "were addressed in 2012 and 2013 by both [him] and by Judge Swain."  (ECF No. 381 at 13:20–23, 16:2–4, 53:23–55:18).

On June 26, 2019, AAI moved pursuant to Rule 56(h) again alleging the same baseless allegations of collusion (ECF No. 313), which Judge Pitman denied on September 4, 2019. Advanced Analytics, Inc. v. Citigroup Glob. Mkts., No. 04 Civ. 3531 (LTS) (HBP), 2019 WL 4193941,

at *2 (S.D.N.Y. Sept. 4, 2019) (stating that AAI's disagreements with Collins did not imply that Collins colluded with Defendants' counsel and finding "no basis to revisit" AAI's rejected allegations of discovery misconduct) (the "Sept. 2019 Report & Recommendation).  AAI's objection to the Sept. 2019 Report & Recommendation is pending before Judge Swain.  (ECF No. 361).

In its Motion for Reconsideration, AAI makes the same conclusory arguments that Collins' collusion with Defendants' counsel is the reason for AAI's unsuccessful motions throughout this litigation.  (ECF No. 423 at 9–25, 27–29).  AAI attempts to (1) reintroduce the Fourth Fan Declaration, the use of which was previously limited by the March 2014 Order (ECF No. 235); and (2) introduce the Wang Declaration, the use of which the Court has denied here in part because of its untimeliness and reliance on AAI's collusion allegations.  (See supra Section III.A.1).

A motion for reconsideration, however, is not "an occasion for repeating old arguments previously rejected . . ."  Associated Press, 395 F. Supp. 2d at 19.  Despite numerous rulings by Judge Swain and Judge Pitman, in this over 16-year-old case, rejecting AAI's allegations of collusion, AAI fails to point to an intervening change in controlling law, new evidence that just became available, any showing that reconsideration is needed to correct clear error, or any showing that reconsideration is needed to prevent manifest injustice.  See Richman, 988 F. Supp. at 755.  AAI has failed to point to any matter that the Court has overlooked over the last 16 years of litigation in this case or through its previous dismissals of AAI's allegation of collusion that might reasonably be expected to alter any of the Court's prior decisions.  Shrader, 70 F.3d at 257.  Accordingly, AAI's Motion for Reconsideration based on its alleged "3-Prong Scheme of collusion" is DENIED.

### b. **Preauthorization**

AAI asks the Court to reconsider the portion of the Case Management Order requiring the parties to meet and confer, then seek a pre-motion conference with the Court before filing requests for relief.  (ECF No. 423 at 5).

"A district judge may refer to a magistrate judge for determination any matter that does not dispose of a charge or defense," including pretrial and discovery management.  Fed. R. Civ. P. 59; 28 U.S.C. § 636.  A "district court may order the parties to appear at a pretrial conference in order to 'discourag[e] wasteful pretrial activities.'"  Youssef v. Halcrow, Inc., No. 11 Civ. 2283 (PKC), 2011 WL 2693527, at *1 (S.D.N.Y. June 30, 2011) (quoting Fed. R. Civ. P. 16(a)(3)).  "At any pretrial conference, the court may consider and take appropriate action on . . . formulating and simplifying the issues, and eliminating frivolous claims or defenses."  Fed. R. Civ. P. 16(c)(2)(A). The Second Circuit has noted that, while "it is within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion, . . . the judge may not require that the court's permission be secured at such a conference before a party may file its motion" because a court has no power to prevent a party from filing motions authorized by the Federal Rules of Civil Procedure."  Eisemann v. Greene, 204 F.3d 393, 397 (2d Cir. 2000) (internal citation omitted).

During the January 3 Conference, the Court granted AAI leave to file the Motion for Reconsideration, noting that AAI could not be precluded from filing its motion (ECF No. 415 at 10), and AAI filed its Motion for Reconsideration on January 17, 2020 (ECF No. 423).

AAI argues that the Court struck down its Motion to Defer without first giving AAI an opportunity to respond to Defendants' Motion for Preauthorization and to strike the Motion to

Defer. (ECF No. 423 at 30–31). AAI takes this opportunity to spin this argument into another collusion allegation against Defendants. (Id. at 31–33). The Court, in the January Stay Order, ultimately granted AAI's Motion to Defer, staying the Amended Award of Attorney's Fees pending a decision regarding AAI's Motion for Reconsideration, and Defendants' Motion for Preauthorization was denied as noted in the January 3 Conference. Accordingly, the portion of the Motion for Reconsideration requesting reconsideration of the Motion for Preauthorization is DENIED as moot.

### 4. Award of Attorney's Fees

AAI asks the Court to reconsider the entire Award for Attorney's fees because it is based on the March 2014 Order, to which AAI objected (ECF No. 361) and is currently pending before Judge Swain. (ECF No. 423 at 5). AAI again posits that its main reason for the requested deferral is to permit Judge Swain to investigate the alleged collusion. (Id. at 33). AAI also argues that Collins and his firm, not AAI, should be responsible for the payment of the fees because of the collusion. (Id.)

Defendants argue that the Motion for Reconsideration erroneously "focuses not on the mathematical calculation of fees—which the Court has explained was the sole function in issuing the [Amended Award of Attorney's Fees]—but on the question of whether [the March 2014 Order awarding] fees to Defendants nearly six years ago was proper." (ECF No. 427 at 8).

A party and its counsel can be held liable for attorney's fees and costs incurred for violating the court's scheduling orders or Federal Rule of Civil Procedure 26(a). Fed. R. Civ. P. 16(f), 37(c)(1). Under Rule 16(f)(2), "in addition to or instead of sanctions, the court may award 'reasonable expenses—including attorney's fees—incurred because of [any] noncompliance with

this rule, unless the noncompliance was substantially justified or other circumstances made an award of expenses unjust.'" Tessemae's LLC v. Atlantis Capital LLC, No. 18 Civ. 4902 (KHP), 2019 WL 2635956, at *2 (S.D.N.Y. June 27, 2019) (quoting Fed. R. Civ. P. 16(f)(2)). Under the law of this Circuit, identical language in Rule 37 imposes on the disobedient party the "burden to show that his failure is justified or that special circumstances make an award of expenses unjust." Id. at *3 (internal citation omitted). The prevailing party is also entitled to costs, including "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." Kreisler v. Second Avenue Diner Corp., No. 10 Civ. 7592 (RJS), 2013 WL 3965247, at *2 (S.D.N.Y. July 31, 2013) (internal citation omitted).

The district court has broad discretion to determine the amount to be awarded. Vincent v. Comm'r of Soc. Sec., 651 F.3d 299, 307 (2d Cir. 2011). In Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cty. of Albany, 522 F.3d 182 (2d Cir. 2008), the Second Circuit articulated the method for calculating reasonable attorney's fees: a reasonable hourly rate multiplied by a reasonable number of hours extended on the work. Kreisler, 2013 WL 3965247, at *1. The court may reduce the hours spent on the litigation to exclude excessive, redundant, or otherwise unnecessary time. Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998).

In the Amended Award of Attorney's Fees, which amended the scrivener's error AAI highlighted regarding its joint liability with its former counsel, the Court awarded payment to Defendants in accordance with the law as detailed above. AAI fails to point to an intervening change in controlling law, new evidence that recently became available, any showing that reconsideration is needed to correct clear error, or any showing that reconsideration is needed

to prevent manifest injustice.  Richman, 988 F. Supp. at 755.  AAI has failed to point to any matter that the Court overlooked in the Amended Award of Attorney's Fees.  Shrader, 70 F.3d at 257.

Accordingly, and because the Court has already rejected AAI's collusion allegations, see supra Section III.A.3.a, the portion of the Motion for Reconsideration with respect to the Amended Award of Attorney's Fees is DENIED.

**B.**  **The Parties' Requests for Fees and Costs**

AAI requests costs for opposing Defendants' "frivolous motions filed in bad faith" and for bringing the Motion for Reconsideration.  (ECF No. 428 at 14).  Defendants assert that the Court should issue sanctions against AAI and its counsel for a "course of conduct [that] establishes that denial of its requests alone will not deter the repeated filing of motions with the same groundless claims or, consequently, the need for Defendants to continue incurring the expense of responding to [AAI's] frivolous requests."  (ECF No. 427 at 8, 28–30).

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:  (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

Fed. R. Civ. P. 11(b)(1).  "Once a court determines that Rule 11(b) has been violated, it may in its discretion impose sanctions limited to what is 'sufficient to deter repetition of such conduct.'"  Margo v. Weiss, 213 F.3d 55, 64 (2d Cir. 2000) (quoting Fed. R. Civ. P. 11(c)(2)).  "Sanctions serve three purposes:  (1) to prevent a party from benefitting from its own improper conduct, (2) to provide specific deterrents, and (3) to provide general deterrence."  Kensington Int'l. Ltd. v. Republic of Congo, No. 03 Civ. 4578 (LAP), 2007 WL 2456993 at *10 (S.D.N.Y. Aug. 24, 2007).

The Court should consider whether:

the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants . . .

Fed. R. Civ. P. 11 Advisory Comm. Notes (1993 amendments).  Because Rule 11 sanctions are meant to "deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty."  Id.

This is a 16 year-old case, involving complex and technical underlying facts, voluminous motion practice, a pending motion to intervene to unseal numerous sealed documents, and pending objections to various orders.  During the pendency of this case, AAI has been represented by several different counsel and repeats the same allegations of collusion through motion practice, in declarations, and through objections to orders dismissing its filings.

The Court's review of the factors identified in the Rule 11 Advisory Committee Notes demonstrates, however, that neither party's request for monetary sanctions should be granted. First, the parties request that their counsels' fees and costs be paid, but Rule 11 is meant to deter, not compensate.  Although AAI repeats the same arguments, the Court recognizes that its multiple counsel changes (approaching double digits) may have contributed to its repetitive filings.  In addition, even after having been sanctioned to pay fees and costs (see Amended Award of Attorney's Fees and March 2014 Order), dismissal of multiple meritless motions, and discussions with the Court about the possible futility of its motions, AAI continues to diligently

file papers making the same collusion arguments.  As discussed, <u>supra</u> III.A.3.b, the Court cannot stop AAI from filing motions it has a right to file.

AAI's arguments against Defendants for costs for defending against Defendants' allegedly frivolous motions and for having to file the Motion for Reconsideration fair no better.  As discussed above, the Motion for Reconsideration is denied and, in the interest of clarity and justice, neither side is entitled to fees or costs.  The parties are encouraged to move this case to a close, on the merits, rather than continuing to file ancillary pleadings.  Accordingly, the parties' motions for fees and costs are DENIED.

### IV.   <u>CONCLUSION</u>

For the reasons set forth above, (1) AAI's Motion for Reconsideration (ECF No. 423) is DENIED, (2) Defendants' request to exclude the Wang Declaration (ECF No. 429) is GRANTED IN PART AND DENIED IN PART, (3) the parties' requests for costs and fees (ECF Nos. 427–28) are DENIED, (4) and Defendants' Conference Motion (ECF No. 429) is DENIED.  The Court's award of attorney's fees to Defendants (ECF No. 410) stands and must be paid by AAI and its counsel within 60 days of the date of this Order.  The Clerk of Court is respectfully directed to close ECF Nos. 423 and 429, and unseal ECF No. 366.


Dated:        New York, New York
              June 9, 2020

                                                    _____
                                                    SARAH L. CAVE
                                                    United States Magistrate Judge