**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

**ADVANCED ANALYTICS, INC.,**

        Plaintiff-Counter-Defendant

    v.

**CITIGROUP GLOBAL MARKETS, INC.,**
***ET AL.,***

        Defendants-Counter Claimants

**The AMERICAN PROSPECT, Brandon Smith,**

        Intervenors

**Case No. 04 Civ. 3531 (LTS) (SLC)**

---

**PLAINTIFF'S NOTICE OF MOTIONS AND**
**MOTION I, UNDER FED. R. APP.PROC. 10(c) and 10(b)(2) AND**
**MOTION II, FOR SANCTION UNDER NEW YORK JUDICIARY LAW § 487 AND THE**
**COURT'S INHERENT POWER;**
**MEMORANDUM OF LAW**

---

i

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... iv

PRELIMINARY STATEMENT .............................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...............................4

    I. Three Level Fraud:  clandestine theft and use of ACE; Three Prong Scheme, and Collins' collusion to obstruct the Court's consideration of the Level 1 and 2 Fraud. ...................................................................................................... 4

    II. Defense counsel admitted six times, in Joint Call to MJ Pitman that Collins covertly withdrew Pl's Rule 37(b) Spoliation Sanction Motion and Opposition to Defendants Sanction for a schedule violation; then he lied to his client and the Court to mask his conspiracy with Defendants........................................... 7

    III. Defendants made myriad misrepresentations in six Court filings to obstruct the investigation and to mask the evidence of collusion including Collins' Covert Withdrawal of Plaintiff's Rule 37(b) Spoliation Motion.................................... 11

    IV. Defendants Distorted Dr. Wang's Letters and MJ's 2017-5-31 Order to Mask Counsel's Collusion, and Altered Evidence Submitted in 2021 to Conceal This. .................................................................................................................... 17

    V. Defendants' new variants of 1st Prong of their Scheme, misrepresenting data file as "source code," and the Court's order to support their variants............ 18

    VI. Collins conspired with Defs and withheld Pl's essential case files including all of their email communications, from Pl. While refusing to produce to Pl,  Defs also vehemently opposed Pl from retrieving its case files from Collins, contrary to their misrepresentation to the Second Circuit. .............................. 18

ARGUMENT.....................................................................................................19

    I.   The Court should approve and settle the Fed. R. App. P. 10(c) Statement of Evidence. ............................................................................................... 19

    II.   The Authorities Cited by Defendants Actually Support that the Filing of Plaintiff's FRAP10(c) motion with the Supporting 8th Wang Decl is Entirely Appropriate, Necessary and Essential for the Appeal. ...................................... 20

    III.   Defendants and Collins' Deceit and Conspiracy Constitute Fraud on the Courts have  Violated The New York Rules of Professional Conduct Rule 3.3(a), Rule 4.1, and Federal Criminal Laws. ...................................................... 23

    IV.   Defendants/Defense Counsel, and Collins's Deceit and Conspiracy Constitute Fraud on the Courts and Violate New York Judiciary Law § 487 .................. 23

    V.   Defendants and Collins Committed Civil Conspiracy and defrauded the Court .................................................................................................................... 24

CONCLUSION ................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Rules and Laws**

18 U.S.C §1503 ................................................................................................................... 25

18 U.S.C §1512 ................................................................................................................... 25

18 U.S.C §371 ..................................................................................................................... 25

Fed. R. App. P. 10(b)(2) .................................................................................................. v, 1

Fed. R. App. P. 10(c) ........................................................................................... ii, v, 1, 19

New York Judiciary Law § 487 ....................................................................................*Passim*

New York Rules of Professional Conduct Rule 3.3(a)(1), Rule 3.4, Rule 4.1, Rule 8.4 ............... v

**Cases**

Advanced Analytics, Inc. v. Citigroup Global Markets, Inc., 2010 WL 4780772 *3, (S.D.N.Y. Nov. 22, 2010) ................................................................................................................. 5

*Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008).) *Trepel v. Dippold*, 2005 WL 1107010 (SDNY 2005) ....................................................................................................... 24

*Amalfitano v. Rosenberg*, 572 F.3d 91, 92 (2d Cir. 2009) ............................................................. 24

*Amalfitano v.Rosenberg*, 428 F.Supp.2d 196 (SDNY 2006) ........................................................ 24

*Bounkhoun v. Barnes*, No. 15-CV-631A, 2017 WL 1331359, at *8 (W.D.N.Y. Apr. 11, 2017). 24

*Chestnut v. Hall, 284* F.3d 816, 820–21 (7th Cir. 2002) .............................................................. 22

*Demjanjuk v. Petrovsky,* 10 F.3d 338, 348 (6th Cir.1993) ........................................................... 25

*Gelboim v. Bank of America Corp.,* 823 F.3d 759, 781 (2d Cir. 2016) ......................................... 24

*Herring v. U.S.,* 424 F.3d 384, 390 (3d Cir, 2005). ...................................................................... 25

New York Judiciary Law Sec. 487 ................................................................................................ 23

*Thomas v. City of New York,* 1997 WL 639242, at *1 (S.D.N.Y. Oct. 16, 1997) ........................ 20

iv

*United States v. Fackrell*, 991 F.3d 589 (5th Cir. 2021).................................................................. 22

*United States v. Regalado*, 2007 WL 403226, at *1 (S.D.N.Y. Feb. 5, 2007) ............................ 11

*United States v. Todd*, 287 F.3d 1160, 1162–65 (D.C. Cir. 2002)................................................ 22

*United States v. Weisser*, 417 F.3d 336, 342–43 (2d Cir. 2005)................................................... 21

# NOTICE OF MOTION

PLEASE TAKE NOTICE that pursuant to Federal Rules of Appellate Procedure ("Fed. R. App. P."), specifically, Fed. R. App. P. 10(c), and Fed. R. App. P. 10(b)(2), and New York Judiciary Law § 487, The New York Rules of Professional Conduct Rule 3.3(a)(1), Rule 3.4, Rule 4.1, Rule 8.4 and the Court's inherent power, based on the accompanying Memorandum of Law, and the undisputed facts as set forth in, Exhibits A-K to the attached Declaration of Peter J. Toren,[1] the pleadings and prior proceedings in this matter, Plaintiff Advanced Analytics, Inc. ("Plaintiff," "Pl," or "AAI"), respectfully requests this Court to

I.  approve and settle the Statement of Evidence and direct the Clerk of the District Court to include the pertinent proceedings in the record on appeal; and

II.  (a) impose appropriate sanctions against Citigroup Global Markets, Inc. et al and Cleary Gottlieb Steen & Hamilton LLP ("Defense counsel," or "Cleary," together "Defendants") and Mr. Todd S. Collins ("Collins") for their misconduct, in a manner and amount deemed just and proper by this Court, in order to deter such misconduct in the future and to preserve the integrity of the judicial process.

   (i)  Declare that the actions and conduct of Collins and Defense counsel, as detailed in this motion, constitute willful deceit upon this Court within the meaning of New York Judiciary Law § 487.

   (ii)  Grant an award of treble damages against the Defense counsel and Collins for any damages directly resulting from their deceit, as allowed by New York Judiciary Law § 487.

   (iii) Refer Collins and Defense' counsel to the appropriate state bar or disciplinary committee for further investigation and potential disciplinary action given the gravity of their misconduct.

---

[1] Hereinafter, citations to "Ex." refer to the exhibits attached to the Declaration of Peter J. Toren in Support of Plaintiff's Motion, dated Oct. 12, 2023 ("Toren Decl.")

    (iv)  Grant any other relief this Court deems just and appropriate in light of the facts and circumstances presented in this motion and in the interests of justice.

  (b) Direct Defendants to serve a copy of this Order to Collins within seven (7) days from the entry of this Order.

Further, pursuant to Rule A(2)(b)(ii) of the Court's IPR, Plaintiff's Counsel certifies that Plaintiff has provided notification to Defendants of the relief sought in the two Motions as early as April 24, 2023, and again on October 6, 2023.[2]

On October 1, 2023, Plaintiff moved in the Second Circuit Court of Appeals for a stay pending the resolution of this matter in this Court the next day, upon Defendants' belated responses of September 30, 2023, to Plaintiff's proposal for reasonable extension. As of now, Plaintiff still does not know Defendants' position. *Id.*

Under the impending deadline for the filing of the brief and appendix, it is of paramount importance for the Second Circuit to have a complete and correct record for review.  Accordingly, at the Court's discretion, the Court may hold in abeyance the adjudication of Plaintiff's Sanction Motion II until the resolution of Plaintiff's pending FRAP 10(e), 11(b)(2) Motion. This sequencing should best serve the interests of justice and efficiency in both this Court and the Second Circuit. Plaintiff's FRAP 10(e), 11(b)(2) Motion requested the Court to direct Defendants to produce materials that are essential for the appellate proceedings in the Second Circuit, and directing Collins, Berger and Montague to promptly hand over Plaintiff's case files, that Plaintiff needs for the appendix and brief and further assist the Court to adjudicate the issues in Motion II for Sanction.


(The remaining part of the page is intentionally left blank.)

---

[2] See Letter from P. Toren to J. Park dated 2023-4-24, [D.I. 82, pp28-41, Ex. A], Ex. 6, to the Toren Declaration and email from P. Toren to T. Kessler on October 6, 2023, email chain, Ex. 8.

# MEMORANDUM OF LAW

Pursuant to Federal Rules of Appellate Procedure ("Fed. R. App. P."), specifically, Fed. R. App. P. 10(c), and Fed. R. App. P. 10(b)(2), and New York Judiciary Law § 487, The New York Rules of Professional Conduct Rule 3.3(a)(1), Rule 3.4, Rule 4.1, Rule 8.4 and the Court's inherent power, based on the accompanying Memorandum of Law, and the undisputed facts as set forth in, Exhibits A-K to the attached Declaration of Peter J. Toren, the pleadings and prior proceedings in this matter, Plaintiff Advanced Analytics, Inc. ("Plaintiff," "Pl," or "AAI"), respectfully requests this Court to

I.        approve and settle the Statement of Evidence; and

II.       impose measures that the Court deems appropriate to sanction Citigroup Global Markets, Inc. et al and Cleary Gottlieb Steen & Hamilton LLP (Defense counsel, together "Defendants," "Defs") and Plaintiff's former lead counsel, Mr. Todd S. Collins ("Collins") for their conspiracy, collusion, deceit, fraud on the Court and Plaintiff.

The Court respectfully referred to the Notice of Motion in the previous pages vi-vii, for a more detailed description of the relief requested by Pl.

## PRELIMINARY STATEMENT[3]

This Motion presents conclusive evidence that Collins and Defs colluded to deceive the Court (Level 3 Fraud, in their three-tiered of fraud), to obstruct the consideration of both the overt theft and use of invaluable trade secrets (Level 1 Fraud) and the 3- Prong Scheme of obstruction (Level 2 Fraud). Here is a roadmap to unveil this intricate web of deceit.[4]

**Level 1 Fraud.** Defs' clandestine theft of the numerical ACE sequences ("ACE", the Holy Grail determining MBS pricing formulas, created and owned by Pl), and their immediate

---

[3] Citations to (ECF No.) refer to this Case No. 04 Civ. 3531 (LTS) (SLC) (S.D.N.Y.), [D.I.] refer to the appeal in Second Circuit, Case 22-1718.

[4] See e.g., the undisputed facts in Pl's Rule 54(b) Mot, (ECF No. 423) pp.2-14. The Court recognized that Plaintiff "alleged collusion between Defendants and Plaintiff's prior counsel and what Plaintiff believes are 'Defendants' 'three levels of fraud' perpetuated on the Court in this action; claim that the collusion and fraud call into question the rulings issued by this Court from the 'latter part of 2012 until 2014," but deemed Pl's claims were "only tangentially related to the challenged orders issued by Judge Cave." Mem. Order of Sept. 30, 2021 (ECF. No. 461. P.13). Now in this Motion, Defs and Collins collusion is laid bare.

arbitrage trading relying on the purloined ACE, garnering massive risk-free profits, all in flagrant breach of the parties' NDAs.

**Level 2 Fraud** is a three-pronged scheme deployed from the start of litigation:

**1st Prong**. Defs mischaracterized <u>Pl's</u> claim of misappropriation of trade secrets, as "(nonspecific fake sequences) incorporated ACE." Pl refers to this quoted statement as "Defs False Claim."  which implies "Pl stole ACE from Defs," "ACE is not trade secret," and is contrary to:

**Undisputed Basic Fact:** ACE sequences *cannot* be generated by any random number generators, certainly not Yield Book Monte Carlo code, but are stored as data files and read at execution time by The Yield Book system.

**2nd Prong**. Defs massively spoliated and fabricated their sequence records, misrepresented their production, and withheld the sequences used by TYB, and TYB-RCS (which reads ACE).

**3rd Prong**, Defs submitted seven false declarations to mislead the Court.

On June 17, 2013, through co-counsel, Pl filed the <u>Letter Motion to Sanction Defendants for Spoliation and Violation of the Court's Express Discovery Orders Pursuant to FRCP 37(b) and Inherent Power and Opposition</u> to Defendants' Rule 37(c) Letter Motion, <u>supported by the Fourth Declaration of Dr. Jianqing Fan</u> ("Pl's Rule 37(b) Spoliation Sanction Mot"), which would have fully exposed the Level 1 and Level 2 Fraud and established Defs' liability.

**Level 3 Fraud.**  Unknown to Pl, in a joint court conference call on June 18, 2013, with MJ Pitman that included Defense counsel, (the "Joint Call"), Collins covertly withdrew Pl's Rule 37(b) Spoliation Sanction Mot ("Collins' Withdrawal") just filed the previous night. In a blatant act of deceit, Collins relentlessly concealed his Withdrawal from his client and the Court.

The proposed FRAP10(c) Statement of Evidence with supporting documents provides conclusive evidence of Collins' collusion. Defs' myriad misrepresentations in subsequent court proceedings effectively barred this Court from considering the evidence.

Defs have avoided and deflected all the substances and evidence in Pl's post-2018 motions in the SDNY by repeatedly claiming "relitigation," misrepresenting that MJ Pitman had

2

considered and rejected Pl's Rule 37(b) Sanction Motion with the supporting Fourth Fan Declaration. However, this claim has been demolished by Defs' own admissions. Collins' clandestine Withdrawal of Pl's Mot and the 4th Fan Decl., ensured that the Court has never considered Defs' Level 1 and Level 2 Fraud with the new evidence.

Defs' subsequent relentless misrepresentations concealed this admission evidence of collusion and further led the Court astray from the Judgment and related orders. MJ Pitman overlooked the collusion evidence other than a non-sequitur statement that "[Collins'] disagreement with plaintiff's principal is not collusion." But this is untrue. In collusion with Defs, Collins deceived his client by pretending he *agreed* with Pl's principal that the Rule 37(b) Spoliation Mot, which he had secretly withdrawn, "SHOULD BE BRIEFED FIRST."  In collusion with Defs, **Collins deceived both his client and the Court.** Infra.

Defense counsel, who participated in the Joint Call, has **admitted** to this conclusive evidence of collusion **in six court filings**. Defs were compelled to make the admission for the first time, in Oct. 2019, when Pl's new counsel sought MJ Cave's leave to file a formal Rule 37(b) Mot. Defendants relentlessly attempted to conceal this admissions evidence of collusion and to obstruct the investigation with blatant misrepresentations in **the same six court filings**: four in this Court, which led to four erroneous rulings, and two in the Second Circuit relating to Fed. R. App. P.10(c) statements. Each filing is a masterclass in duplicity: while compelled to admit the collusion evidence (see §II(1)-(6) *infra*), Defs layered flat-out false misrepresentations over previously exposed ones (see §III(1)-(6), *infra*). Defs cited the erroneous ruling to seek a leave-to-file sanction in the Second Circuit while concealing the Court's orders that had revered the erroneous rulings.[5]

 Defs have taken advantage that "the subject matter [in this case which is] extremely difficult to understand,"[6] as stated by MJ Pitman. Many court files are missing, and Defs have

---

[5] Pl's FRAP10(e)(1) Mot. of July 11, 2023, [D.I. 105], pp.18-19.
[6] See Email Chain, Toren and Kessler, Ex. 9, Toren Decl.

sealed more than 40 entries in the docket, which has made it very difficult even for this Court to review the rulings below. Yet Defs have failed to provide all the relevant documents, only possessed by Defs, in response to this Court's order.[7]  Collins and Defs colluded to withhold case files from Pl. Defs' failure to comply with their obligations led directly to the Judgement and related orders.  Pursuant to FRAP 10(c), Pl respectfully requests the Court to adjust and settle the FRAP 10(c) Statement of Evidence based on the supporting material, with a focus on key statements, including letters submitted to MJ Pitman that were cc'ed to this Court following MJ Pitman's May 31, 2013, Order.  The Court should sanction Collins and Defendants for their conduct and collusion under its inherent power and New York Judicial Law §487.  Otherwise, the perpetrators will remain a threat to the justice system.  As MLK proclaimed, "An injustice anywhere is a threat to justice everywhere." It's imperative that the Court not turn a blind eye.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defs have not disputed any of the facts presented herein below.[8]

**I. Three Level Fraud:  clandestine theft and use of ACE; Three Prong Scheme, and Collins' collusion to obstruct the Court's consideration of the Level 1 and 2 Fraud.**

**Level 1 Fraud.**  Defs' code archives ("MR-RCS") revealed the following events: (i) the first version of specially designed software (the "Theft Code") with self-evident functions named "save_seq" and "get_seq" intended to steal ACE  appeared on August 1, 1996. On the very next day, August 2, 1996, Defs called Dr. Wang to invite him to "test" ACE on their systems, (ii) the Theft Code has been revised eight times in lockstep with the progress of ACE tests; (iii) Defs then integrated Theft Code into The Yield Book test system for the final ACE test on June 3, 1998, during which Defs pilfered all ACE sequences; (iv) Defs then immediately replaced the Theft Code with an extensive suite designed exclusively for their traders' use of ACE for trading and then arbitrage operation (the "ACE Use Code"). After the theft of ACE sequences, the Yield Book started using a "1000 paths" sequence daily for calibration. Defs' programmers expressly explained in the ACE Use Code that "1000 paths" is **not** generated by Yield Book Monte Carlo

---

[7] Toren Decl. Ex. A attached to Pl's FRAP10(e)(1), 11(b)(2) Mot at pgs. 2-3.
[8] See Pl's Rule 59(e) 60(b) Mot. of Dec. 3, 2021 (ECF No. 467), pp. 4-13, and The Eighth Declaration of Xiaolu Wang dated Jan. 12, 2023, [D.I. 53-3]. Toren Decl, Ex.4.

code but is a "variance redaction" (x4) combination of the 32, 64, and 128 paths of the secret "pricing [ACE] sequences," and read as data files. This is only part of the conclusive evidence supporting Pl's **ACE Verbatim Use Claim**.[9]

As the Court presciently suggested in its Nov.22, 2010, Order, to create a façade to hide their ACE Verbatim Use, Defs hired Mihail Teytel to use the stolen ACE as the target to select "their" sequences, dubbed "LDS" sequences. Teyetl testified that all three LDS of 64, 100, and 200 paths were selected by one and the same Algorithm. By unrebutted mathematical calculation, Pl's expert Prof. Jianqing Fan found that the one and same Algorithm is not the phony Mixed Seed Algorithm faked by Teytel, (which is mathematical "nonsense," admitted by Teyetl's supervisor, Dr. Lakhbir Hayre, and it would have taken 89 years to execute to select just LDS64 alone,) but is with more than 99.95% certainty the Algorithm targeting the stolen ACE. This is part of irrefutable evidence supporting Pls's **ACE Derivative Use Claim**. *Id.*

**Level 2 Fraud**. **2d Prong**: Defs have refused to produce any Yield Book system to test a sequence in violation of five existing discovery Orders, and refused to produce the Yield Book production code ("TYB-RCS" which contains the code read ACE sequences). Defs made 14 misrepresentations in the September 5, 2012, Court Hearing that the 3 concocted Radak code files are the 1000+ TYB-RCS code files,

**Massive spoliation records**. On March 2, 2006, Pl deposed the author of the Theft Code and ACE Use Code Robert Russell, who realized YB code has a code name "1000 paths" for the Super ACE sequence but the Yield Book systems could not even generate any 1000 path sequences. Defs immediately directed B. Radak to manufacture a 1000 paths sequence that was installed in April 2006 to cover this up. This Court's Nov. 22, 2010, Order overruled Defs' objection of six years and directed Defs to produce the Sequence Record. Nearly all files

---

[9] The Court stated presciently before the ACE Use Code was discovered. Advanced Analytics, Inc. v. Citigroup Global Markets, Inc., 2010 WL 4780772 *3, (S.D.N.Y. Nov. 22, 2010) ("Defendants' disclosed practices were a front for actual use of the ACE sequence in generating Yield Book outputs.") Rule 56(d) mot (ECF. No. 289), Rule 56(h), (ECF No. 313), the 59(e)(60(b) Mot. at pgs. 6-7 (ECF No. 467), FRE 201, at pg. 7 (ECF No. 479).

produced by Defs were fabricated in 2005, seven years after the purported original creation dates. Both Teytel and Radak testified in 2012 that after the subpoena, Defs destroyed the original Sequence Records. [10]

**Level 3 Fraud**. See §II, §III *infra.* In particular, as **FRAP10(c) Statement of Evidence** revealed, behind his client's back, during the Joint Call, Collins covertly withdrew Pl's Rule 37(b) Spoliation Mot filed the night before on June 17, 2013. Then Collins relentless deceived his client and the Court to mark his Withdrawal.

Collins deliberately deleted all the references of Pl's Rule 37(b) Mot in all six sets of "opposition" papers to Defs 37(c) Mot against Pl, filed with MJ Pitman and CJ Swain. Due to Collins' and Defs' deceit,  the Court erroneously believed that Pl's Rule 37(b) Spoliation Sanction Mot was a "contemplated" "application" "to seek leave" to reschedule discovery, and mistakenly held "[d]espite the seriousness of its charges [of fraud], AAI has not yet sought spoliation sanctions."[11]  When in fact, the 37(b) Spoliation Mot sought to establish liability and to end discovery. This collusion procured the part that sanctioned Pl in MJ Pitman's order dated March 26, 2014, aff'd July 15, 2014. [12]

In 2008, Collins' Opp Memo to Defs' Mot for Summary Judgement ("MSJ") cited the Second Declaration of Dr. Jianqing Fan of April 24, 2008, at 33, praising ACE as an "incredible feat of mathematics feat involved in calculating a Low Discrepancy Sequence, a sequence derived from mathematical calculations," and are magnitudes faster and more accurate than the sequences generated by the Yield Book Monte Carlo code.

However in his MSJ "Opposition" Memo of May 28, 2014, and his letter of December 12, 2016, to MJ Pitman, over Dr. Wang's vehement objections,[13] Collins relentlessly distorted the same quote from Prof. Fan's 2d Decl. to embrace Defs False Claim: "The Yield Book Monte Carlo code generated ACE," which was then quoted by MJ Pitman's R&R of 2019 as the basis

---

[10] Rule 59(e)60(b) Mot, (ECF No. 467),  AAI-II Amd Cmpl. ¶¶174-180.
[11] *Id*, at p. 25, in Section "§i Explanation of Noncompliance."
[12] See Rule 54(b) Mot (ECF No. 423), at 14-17. Rule 59(e)60(b) Mot (ECF No. 467) pp.11-13.
[13] The 6th Decl. of Dr. Xiaolu Wang, ¶¶205-210.

of the purported "Pl's claim" and his dismissal due to a lack of evidence.

Due to their 1st Prong, the Judgment adopted the R&R and dismissed the case due to a lack of evidence supporting **Defs** False Claim, which the Court mistakenly believed to be "**Pl's** claim" of misappropriation of trade secret.

## II. Defense counsel admitted six times, in Joint Call to MJ Pitman that Collins covertly withdrew Pl's Rule 37(b) Spoliation Sanction Motion and Opposition to Defendants Sanction for a schedule violation; then he lied to his client and the Court to mask his conspiracy with Defendants.

In 2012, Defs and Collins in collusion misled the Court to suspend discovery, for Defs to renew MSJ **while withholding** key evidence and key witnesses from depositions. Pl's experts have provided four declarations in support of its motions to sanction Defs for their massive spoliations and violation of the Court orders for submitting seven false declarations in bad faith in support of the MSJ's, pursuant to Fed. R. Civ. P. 37(b), 56(d)/(h). Yet Collins blocked all of Pl's motions, mischaracterizing all the declarations as "untimely expert reports," to set them up as the targets *per se* for Defs to strike them.

Through co-counsel, Pl filed Rule 37(b) Spoliation Sanction Mot, supported by the Fourth Fan Decl, on the night of June 17, 2013. The next day, Defs requested CJ Swain to disregard the motion but promised a response to the allegations (ECF No. 220). Defense counsel, Jennifer Kenny Park ("Park") emailed Collins and proposed a joint call to the Court, stating that "we would advise the Court that we intend to file our response letter regarding AAI's anticipated motion for sanctions on June 26, 2013 (next Wednesday)."

Instead of simply consenting to the extension, Collins secretly withdrew Pl's Rule 37(b) Spoliation Sanction Mot during the Joint Call, then steadfastly concealed his Withdrawal from his client. This has been admitted, by defense lead counsel including Ms. Park, who participated in the Joint Call with Collins, **six times** in submissions in both the SDNY and the Second Circuit. Collins' withdrawal of the Rule 37(b) Spoliation Mot together with the supporting 4th Fan Declaration. also set up Pl for Defs' sanction for "violating" a scheduling order for expert reports, leaving Pl defenseless to Defs' attacks set up by Collins.

7

**Collins' Deceit** Collins' Withdrawal procured the order of June 19, 2013. But Collins first denied to Dr. Wang that the Joint Call had occurred. He later acknowledged the Joint Call but insisted it was unrelated to the June 19, 2013, Order, and consistently masked his covert Withdrawal from his client. Through calls and emails, Collins reassured his client that they shared the same stance, ensuring the client remained clueless about his covert Withdrawal. For instance, in his email to Dr. Wang on June 24, 2013, he reassured emphatically:

> "MY POSITION IS THAT OUR JUNE 17 LETTER LAID OUT DEFS'
> FRAUD AND TOLD THE COURT THAT THE TWO MOTIONS, THEIRS TO STRIKE
> AND OURS FOR SANCTIONS, SHOULD BE BRIEFED SIMULTANEOUSLY (OR ELSE
> OUR MOTION SHOULD BE BRIEFED FIRST). (Upper case in the original.))

To further mask his deceit, Collins also theatrically filed a flimsy 6-page Motion to Reconsider the June 19, 2013 Order. Cleansed key facts, arguments, and relevant authorities, it was clearly crafted to be denied, a fate it swiftly met at the hands of MJ Pitman.[14] In all six subsequent court filings, Collins deliberately ***concealed*** that Pl had already filed the Rule 37(b) Spoliation Sanction Mot supported by the Fourth Fan Declaration, in order to frame the Pl for Defs' Rule 37(c) sanction.[15]

Ironically, to prevent that Pl's new counsel who entered the Case in 2019 from filing a formal Rule 37(b) spoliation motion, Defs were compelled to rely again on Collins' collusion.

Ms. Park, who participated in the Joint Call, disclosed that Collins withdrew Pl's Rule 37(b) Spoliation Sanction Mot during the Joint Call of June 18, 2013, with MJ Pitman. Collins' Withdrawal is an undisputed fact, which has been admitted by Defense counsel, based on Park's personal knowledge, in no less than **six** formal filings in both the SDNY and the Second Circuit:[16]

> **II (1)** JOINT STATUS REPORT of **2019-10-17**, signed by Ms. Park,
> **Statement from Defendants**: [Pl's Rule 37(b) Spoliation Sanction Mot], which was expressly predicated on the now-stricken Fourth Fan Declaration, is not pending before the Court. First, Plaintiff withdrew the letter in a call with Judge Pitman in 2013." (ECF. No.355, p.3).

---

[14]  See the Sixth Wang Decl.  (ECF No. 373), ¶¶141-142.
[15]  The Sixth Decl. of Xiaolu Wang, Pl's Mot for Defer (ECF No. 371).
[16]  Letter from P. Toren to J. Park dated 2023-1-12, p.6, Fn. 9, Ex. 3, Toren Decl. Fn. 9

**II (2)** Defs' **2019-11-11**, Mot. to Strike and Sanction, signed by Park, ECF No. 370, at 8, admitted Collins' Withdrawal:

> "Plaintiff submitted June 17, 2013, letter (the 'June 2013 Letter') claiming that Plaintiff intended to seek sanctions for its claimed discovery misconduct, using the Fourth Fan Decl. as factual support. See June 2013 Letter at 1. The next day, [June 18, 2023] [Collins] informed Judge Pitman that Plaintiff was withdrawing the letter. See Joint Status Report, ECF No. 355 (Oct. 17, 2019)."

**II (3)** Defs' Opp. Memo. of **2020-2-7** to Pl's Mot. under FRCP 54(b), (ECF no. 427, at 5) signed by Park, reconfirmed Collins' Withdrawal as an "uncontroversial fact" but distorted everything else:

> "In both letters (of Dr. Wang to MJ Pitman of Jan 4, 2017, and May 31, 2017), Pl's sole 'evidence' of the alleged 'collusion' was the uncontroversial fact that, …,[Collins] and Defendants' counsel jointly called Magistrate Judge Pitman to inform him that Pl intended to withdraw its motion for sanctions."

**II(4)** Defs Opp of **2020-7-23**, to Pl's Obj MJ Cave's June 9, 2020, Order on the Rule 54(b) Mot,

"[Collins] placing a June 2013 joint call to Magistrate Judge Pitman so that [Collins] could

inform him that Plaintiff intended to withdraw a Rule 37(b) letter-motion for sanctions Plaintiff

filed earlier…." Again Defs lied about everything else.

**II(5)** Park's Letter to Toren dated **2022-9-20** at 4, submitted to the Second Court [D.I.41-2]

again admitted Collins' Withdrawal: [17]

> "insofar as Appellant's reference to June 18, 2013 …call to Magistrate Judge Pitman made jointly by [Collins] and Appellees' counsel, the contents of that call are amply described by the existing record. ***See, e.g.***, Defs' Opp. To Pl's Mot. for Reconsideration, ECF No.427 at 5 (Feb. 7, 2020) (referring to a joint call [by Collins and Defs] conducted to inform Magistrate Judge Pitman of [Collin]'s intent to withdraw a motion for sanctions)."

To cover up this admission evidence of collusion <u>and</u> that Defs' misrepresentations to MJ

Cave had procured the 2020-6-20 Order, Defs distorted the record with a new layer of

misrepresentations.

**II(6)** Defs Letter of **January 26, 2023**[18] signed by Thomas Kessler reconfirmed Collins'

---

[17] Letter from J. Park to P. Toren dated 2022-9-2. D.I. 41-2. Toren Decl. Ex. 2.

[18] Kessler's admission is on behalf of Park.

Withdrawal,[19] in another submission to the Second Court,"(1) On June 17, 2013, [AAI's co-counsel] submitted [Rule 37 Spoliation Sanction Motion];" (2) On June 18, 2013, there was a phone call between Magistrate Judge Pitman, [Collins], and Appellees' counsel, in which [Collins] withdrew [Rule 37 Spoliation Sanction Mot.]."

To cover up this admission evidence of collusion, and their new misrepresentation to MJ Cave outlined in II(5) supra, Defs again made a slew of new factual misrepresentations to the Second Circuit Court.

As established *supra* II(1)-(6), by Defense counsel's admission, **Collins' Withdrawal of Pl's Rule 37(b) Spoliation Motion and Collins' Deceit on client to concealing his Withdrawal are undisputed facts.** In sum, Collins played a duplicitous game to have the case dismissed. He feigned commitment, yet his actions narrated a tale of betrayal and subversion, all to the detriment of the very party he was bound to represent and the integrity of the judicial system. By deceiving his client, and the proactive concealment of his covert Withdrawal of Pl's Rule 37(b) Spoliation Mot, Collins kept Pl's principal in the dark until Defense counsel's admission in October 2019. Such subterfuge is evident in Dr. Wang's communications to MJ Pitman from 2015 to 2017, the Fourth Wang Decl. of April 23, 2015, (ECF No. 426), and the subsequent Sixth and Seventh Wang Decl's of January 2, 2019 (ECF. No. 302).

Collins' covert withdrawal of Pl's Rule 37(b) Spoliation Mot., including the supporting Fourth Fan Declaration, prevented the Court from ever considering the conclusive admissible evidence of Defs' Level 1 and Level 2 fraud.

Despite this, in subsequent briefs, Defs audaciously misrepresented that the withdrawn 37(b) Spoliation Sanction Mot. had been considered and denied by MJ Pitman and that Pl's subsequent motions seeking relief filed between 2018 to 2022 should be denied as "relitigation." Defs contended that this evidence had already been presented, primarily in the withdrawn Rule 37(b) Spoliation Mot. and Fan 4th Decl. Defs knew their claim is patently false because they knew Collins had secretly withdrawn the filings. In truth, the Court has never adequately

---

[19] D.I. 57-2 Toren Decl. Ex. 5.

considered Pl's evidence and claims, not even for the first time.

**III. Defendants made myriad misrepresentations in six Court filings to obstruct investigation and to mask the evidence of collusion including Collins' Covert Withdrawal of Plaintiff's Rule 37(b) Spoliation Motion.**

On September 6, 2022, Pl proposed a statement of evidence of the proceedings pursuant to Fed. R. App. P.10(c),  included the Statements at pgs. 20-23 and the Undisputed Facts in Annex A in Pl's FRE201 Mot. for Judicial Notice. [20] Pl followed up in an email within a week.[21] Defs objected on the procedural basis citing *United States v. Regalado*, 2007 WL 403226, at *1 (S.D.N.Y. Feb. 5, 2007) that the statements were not specific and should be supported by declarations. Thus Pl provided the Eight Declaration of Xiaolu Wang dated 2023-1-12. (Ex. 2.).

**III (1)** JOINT STATUS REPORT of **2019-10-17**.  Defs admitted Collins' Withdrawal.  MJ Pitman's March 26, 2014, Order also confirmed that he did not see the Rule 37(b) Spoliation Sanction Mot. p.6, *supra*. Yet, Defs misrepresented that the Order had "considered and disposed" the Rule 37(b) Spoliation Sanction Mot. Defs opposed Pl's Rule 56(d), Rule 56(h) Mot's, and Defs' request for formal 37(b) spoliation motion to MJ Cave with their repeated "relitigation" misrepresentation that MJ Pitman had considered and denied "the allegations levied in the June 17, 2013 letter," and procured all the related orders.

**III (2)** Defs' **2019-11-11**, Mot. for Sanction and to Strike (Pl's Mot. of Nov. 8, 2019, ECF No. 369) procured the order (ECF No. 375), which MJ Cave vacated (ECF No. 438, 17-18) after Pl exposed Defs' distortion of the procedural history and relevant authorities. Pl's Rule 54(b) Mot. (ECF No. 423), at 17-22. Yet, Defs tried to relied on ECF No. 375 to procure the same sanction order from the Second Circuit. [D.I. 105 at 18-21], and [D.I. 85, 16-18], Ex.7.

**III (3).** Defs' Opp. Memo. of **2020-2-7** to Pl's Mot. under FRCP 54(b), (ECF no. 427). Defs made new factual misrepresentations to mask the admission evidence of collusion.[22] Some are laid bare in FRAP10(c) Statement, ¶¶ 13-14. Ex.11. The facts reveal why MJ Cave did not

---

[20] See Letter from P. Toren to C. Moore dated September 6, 2022, Ex.1 Toren Decl. at p.3.

[21] P. Toren email to Defendants' counsel Mr. Thomas Kessler of September 13, 2022 ("Sept 13 Email"), Ex.1 to Park's Letter to Toren dated September 20, 2022, D.I.41-2, Ex.1 Toren Decl.  p.3.

[22] See Pl's Obj of June 24, 2020, to MJ Cave' June  9, 2020 Order (ECF No. 442), pp.12-14;

consider the evidence and, therefore must be an integral part of the Statement of Evidence. Unbeknownst to MJ Cave of Defs deceit, her June 9, 2020, Order copied and relied on the "facts" verbatim from Defs' Opp verbatim (e.g. Collins' Withdrawal was "the only collusion evidence alleged" in Dr. Wang's Letters of 1-3-2017, and 5-31-2017, and had been "considered and rejected" by MJ Pitman 2017-5-31 order). The Letters (Exs. 1, 16, the 6th Wang Decl. ECF, No, 373) starkly contradicted them:

*First,* Dr. Wang's January 4, 2017, letter ***never*** mentioned any call, no 4th Fan Decl, much less purportedly admitting "filing the Fourth Fan Decl for an improper purpose."[23]

*Second*, neither Letter mentioned any call. In 2017 Dr. Wang could not even know Collins' Withdrawal, because of Collins' deceit. FRAP10(c) Statement, ¶¶13-14.

*Third,* Collins' Withdrawal is **by no means** "Pl's sole 'evidence' of the alleged 'collusion.'" Dr. Wang's May 31, 2017, letter, at 2-7, provided a list of 12 evidentiary items of their conspiracy including Collins' MSJ "Opp" Memo, and Defs' submissions. E.g, Defs, and Collins both knew that their misrepresentations to the Court are totally false and that Defs' False Claims are the exact opposite of Pl's claims, but they mischaracterized  Pl's claims as Defs False Claim (i.e., the 1st Prong). Then in hand in glove interdependent steps, Collins MSJ "Opp" Memo ***disavowed*** the Basic Fact, and dismissed its implications fatal to Defs' Deceit as "red herring," while Defs' MSJ's cited the Basic Facts to dismiss the purported "Pl's claims. Their diabolic Scheme turned Defs' programmers' direct admission evidence of ACE Verbatim Use (that the sequences used by Yield Book are *not* generated by Monte Car code---but *only* ACE sequences) into "non-use" of ACE. They colluded to silence and intimidate Dr. Wang to withdraw his Nov. 30, 2016, letter, which exposed Defs 1st Prong. Collins' Dec. 12, 2016, Letter deliberately deceived the Court that "[Pl's claim were Defs False Claim] is undisputed."[24]

---

[23] See the Sixth Wang Decl, ¶129, p.39, for the five bases (supporting that the Fan 4th cites in MSJ are admissible) that were all concealed by Collins.
[24] See the list in Pl's FRE 201, ECF No. 479, pp.6-9.

*Fourth,* when MJ Pitman issued his May 31, 2017, Order, he had **not** even received Dr. Wang's May 31, 2017, letter. This was pointed out in Pl's briefs, ECF 423 and 428, citing Wang 7th Decl. ¶78 (ECF302). This fact is also amply established in the record in the letters by Collins and Dr. Wang, attached to Dr. Wang's letter of June 7, 2017, to the Court, (Ex. D, FRE 201 J. Notice, ECF. No. 479, Feb. 1, 2022)  Dr. Wang's letters of Jan 4, 2017, stated that Collins *intentionally* altered Dr. Fan's 2nd Expert report to embrace <u>Defs False Claim,</u> "YB Monte Carlo code generated ACE sequences" as purported Pl's claim.  But MJ Pitman misunderstood Pl's claims. See Pl's FRE 201 J. Notice, pp. 4-8, and Pl' Obj under 54(b) (ECF.No. 442). at 12.

**Defs' deceit procured the June 9, 2020.** Defs misled MJ Cave into believing that: (1) the January 4 and May 31, 2017 letters contained the admission evidence of collusion, whereas, neither referred to it. Only through the admission of Defense counsel in October of 2019 did Dr. Wang learn for the first time that Collins had withdrawn the Rule 37(b) sanctions motion; and that (2) MJ Pitman's May 31, 2017, Order had rejected it. Thus, June 9, 2020 Order found:
> "[a]ccordingly, and because the Court (MJ Pitman) has already rejected AAI's collusion allegations, see supra Section III.A.3.a, the portion of the Mot for Reconsideration with respect to the Amended Award of Attorney's Fees is DENIED." Id. at 20.

**III (4)** Defs Opp of **2020-7-23**, to Pl's Objection. ECF No.448, at pgs. 4-5. Instead of correcting their factual misrepresentations to the Court as mandated by the Ethics Rules, Argument. II infra, Defs deployed their favorite tactics, to further mislead the Court and mask their conspiracy with Collins. Once their lies in III (3) were exposed. Defs obfuscated with (i) Issue Misrepresentation, (ii) Citation Misdirection and Misrepresentations; conflate other collusion evidence as the new admission evidence of Collins' Withdrawal; *infra*. In addition, Defs altered the evidence submitted to the Court in March 2022, to support their misrepresentation and to obfuscate the clear facts in the record, §IV, in order to support their misrepresentations e.g. that "[Dr. Wang's May 31, 2017 letter was not received until after Magistrate Judge Pitman's order was docketed] is far from clear." Id, n.11. §IV *infra*. This deceit procured the Mem Ord of September 30, 2021.

**III (5)** Park's Letter to Toren dated **2022-9-20 at 4**, [D.I. 41-2]  Ex.2,  Toren Decl, In the disguise of claiming "contents of that call are amply described by the existing record," Defs

restated verbatim their prior brazen misrepresentations in III(4), that are all belied by the record.
[25] This is an independent basis for the FRAP 10(c) Statement.¶15, Ex.11.

(i) **Issue Misrepresentation** Defs again misrepresented that "[A]ppellant's reference to June 18,
2013, is intended to refer to" the issue about "the Code of Conduct for United States Judges,"
when in fact the issue is _only_ about the conduct of Defense counsel and Collins' deceit and
collusion and conspiracy to willfully deceive the client and the Court, Arg.II, _infra_.

(ii) **Deceit to the Court:**  Defs portrayed Collins' Withdrawal as Pl s intent. Collins not only
concealed this act but also repeatedly deceived his client and the Court to mask his collusion
with Defs.[26] Despite Defs' initial request for a mere extension, Collins' move rendered their
opposition moot, sacrificing Pl's rights. In collusion with Defs, Collins also withdrew Pl's Opp to
Defs Rule 37 (c) sanction motion and made Pl a sitting duck for Defs' attacks after having
framed Pl for violating a scheduling order.

(iii) **Citation Misdirection and Misrepresentation.** Defs deployed their Favorite Tactics to MJ
Cave's June 9, 2020 Order,  _Id_ at 4. Their purported "instances in which Appellant had raised
unfounded arguments…", are all the exact Defs' misrepresentations contrary to the original
records. This June 9, 2020 Order only verbatim cited _Defs_' briefs without checking the two
Letters by Dr. Wang.[27] This confirms that Defs' deceit regarding this Joint Call and the events
that transpired misled the Court and procured the Judgement and the related orders. This Court
has received these original Letters and the personal knowledge of their dates and their names
(FRE 201, Exs. D-G, ECF. No. 479), and may settle FRAP10(c) Statement of Evidence.

(iv) **Defs Refusal to Correct Misrepresentations to the Court and Evidence Manipulation**
Defs refused to correct their numerous misrepresentations to the Court, even those that are
contradicted by court records as set forth above. Detailing the events and issues relating to the

---

[25] See Letter from P. Toren to J. Park dated 2023-1-12. D.I. 53-1, Toren Decl. Ex. 3.
[26] See his deceptive emails to Dr. Wang. Supra.
[27] See Plaintiff's Request for Judicial Notice, at p.21 and Annex p.4, and the 8th Wang Decl at pp.29-45,
Ex.2. _See_ p.2, _supra_

June 18, 2013 hearing, Dr. Wang's Eighth Declaration provided a comprehensive summary that is also attached.[28]

**III (6)** Kessler's Response of **Jan 25, 2023** [D.I. 64]. Defs "refer to the anodyne call," but have provided no "anodyne" explanation and have refused to provide any information for Collins' actions during the call or reasons for Collins's Withdrawal. The only explanation for Collins' Withdrawal, especially when viewed alongside his actions detailed in the Fifth, Sixth, and Seventh Wang Decl.'s, is that Collins tried to prevent Defs from being sanctioned for their spoliation, and ultimately to have the case dismissed. The Kessler Letter crafted newer misrepresentations to cover up their exposed fraud above as set forth in III (5). Pl's FRAP 10(c) motion further exposes this fraud. See Letter from P. Toren to J. Park dated 2023-4-24, pp.5-8, [D.I. 82, pp28-41, Ex. A]. Ex. 6, Toren Decl.

Defs claimed that "the existing record adequately reflects [Collins' Withdrawal]," but then densely weaved misrepresentations into the purported "the existing record" in two Paragraphs (1) and (2). *Id*. at 4.  See p.6, Toren's Letter of April 24, 2023. See Toren April 24, 2023, Letter at pg. 6. Thus, the Rule 10(c) Statement is necessary for several reasons

First, contrary to Defs' insinuation, MJ Pitman's March 26, 2014 Order did not mention at all that Collins had secretly withdrawn Pl's Rule 37(b) Spoliation Sanction Mot..

Second,  Collins' Withdrawal procured MJ Pitman's March 26, 2014 Order. *Supra*. Id. at 35-36. The collusion also concealed from CJ Swain the existence of Pl's 37(b) Spoliation Sanction Mot. [29]  Defs again deployed the same Favorite Tactics: cited June 9, 2020 order where it copied their misrepresentations verbatim. See Toren to Park Letter dated 2023-4-24, at pgs. 6-7 [D.I.84, Ex. A.]

The Kessler Letter manipulatively omits details from the phone call as per MJ Cave's ruling of June 9, 2020, intentionally leaving out critical context and information of the ten lines from the same section of MJ Cave's Order, ("On January 4 and May 31, 2017, Dr. Wang filed

---

[28] FRAP 10(c) Statement of Evidence..
[29] See ECF. No. 220, and the 8th Wang Decl. ¶19. ¶22, D.I.53-3.

letters …(ECF No. 275 at 2).” indicating that MJ Cave was quoting verbatim (ECF No. 427 at 10 [Defendants' brief]), not from Dr. Wang's two letters. See Toren Letter to Park of April 24, 2023, Ex. p.7. The glaring omission in Kessler's "(2)" conveniently skips the vital clause "in Dr. Wang's Letters of Jan 4, May 31, 2017" from MJ Cave's ruling, a tactic employed to deliberately mislead the Court:

First, Defs falsely depict Collins' Withdrawal of Rule 37(b) sanction motion as rooted in MJ Cave's findings. This misrepresentation is egregious; Collins' Withdrawal during the Joint Call is, in truth, undeniable evidence of collusion, as begrudgingly admitted by Defs themselves.

Second, by intentionally leaving out "in Dr. Wang's Letters of Jan 4, May 31, 2017" from MJ Cave's decision, Defs are orchestrating a cover-up, falsely asserting the joint call was the "only piece of evidence [of collusion] cited in Dr. Wang's Letters of Jan 4, May 31, 2017." Despite repeated exposures of this lie by the Pl, Defs have not only stubbornly refused to rectify it but have intensified their deception to further mislead the Second Circuit.

Third, The Kessler Letter claimed a purported "quote", allegedly sourced from MJ Cave, but in fact, was from Defs' brief. It falsely conveys that MJ Cave recognized the joint call as collusion evidence. In truth, MJ Cave, hoodwinked by the Defs' distortions, mistakenly believed MJ Pitman had scrutinized this "sole evidence" in both letters. This led MJ Cave to categorically dismiss not only this but all other collusion evidence, e.g., the 4th Wang Declaration, because "it alleged collusion," Id.

**Defs' Deceit procured June 9, 2020 Order.** Defs misled MJ Cave to believe that: (1) the January 4 and May 31, 2017 letters contained the withdrawal evidence of collusion, whereas, in fact, neither referred to it. Only through the admission of Defense counsel in October of 2019 did Dr. Wang learn for the first time that Collins had withdrawn the Rule 37(b) sanctions motion; and that (2) MJ Pitman's May 31, 2017, Order had rejected it. Thus MJ Cave found,
    "[a]ccordingly, and because the Court (MJ Pitman) has already rejected AAI's collusion allegations, see supra Section III.A.3.a, the portion of the Mot for Reconsideration with respect to the Amended Award of Attorney's Fees is DENIED." Id. at 20.

In essence, the lies woven into the Kessler Letter further deepen the mire of deceit already propagated by the Defs in the record,  III(1)-(6) above, amplifying the urgency for the Rule 10(c) Statement of Evidence, and justified the requested sanction relief.

Defs did not and could not dispute any of the evidence of their fraud outlined in Toren's Letter of April 24, 2023.  Deploying their favorite tactics, Park's Letter to Toren dated 2023-5-8 Ex. 8, includes only a single substantive sentence which deployed their Favorite Tactics: citing their false claim from an order (MJ Cave's June 9, 2020 Order) procured by their now exposed misrepresentations. Thus all the evidence presented in Toren Letter is undisputed.

## IV. Defendants Distorted Dr. Wang's Letters and MJ's 2017-5-31 Order to Mask Counsel's Collusion, and Altered Evidence Submitted in 2021 to Conceal This.

Starting on June 1, 2017, Defs and Collins in collusion sought to silence Dr. Wang, pressuring him to retract his 2017-5-31 Letter to MJ Pitman because it was filed after the 2017-5-31 Order.  When he resisted, Collins in collusion with Defs reported that purported violation to MJ Pitman, aiming to strike the letter and ensure sanctions against him. Based on the undisputed record, FRE 201 Mot (ECF. No. 479, Exs. D-J, Toren Decl.), the facts in Annex from 2017-5-31 to 2017-6-7, pp.1-2, (1)-(9) pp, 21-22, it is irrefutable that Defs knew and acknowledged that the Letter "2017-5-31 Wang 2 Judge Pitman.pdf" was filed post the issuance of MJ's 2017-5-31 order between 2017 to 2018, and their new claim post-October 2019, asserting that MJ Pitman's order had considered 2017-5-31 letter, is patently false.

To conceal this misrepresentation, Defs' March 1, 2021 production to Chambers of CJ Swain altered the date of his May 31, 2017, letter to "May 30, 2017". After the confrontation, Defs continued to reference "May 30, 2017" in their December 17, 2021, Opp. to Rule 59(e)60(b) Mot., Defs manipulated both MJ Pitman's orders of May 31, 2017 order and June 1, 2017. They attempted to show their altercation of the evidence was not due to deliberation but negligence.[30]

---

[30] After the damage due to their tampering of evidence is done to Plaintiff in the SDNY, Defendants changed the date of "May 30, 2017" of Dr. Wang's letter back to May 31, 2017, in their zip file produced in 2022.

**V.  Defendants' new variants of 1st Prong of their Scheme, misrepresenting data files as "source code," and the Court's order to support their variants**.

Defs distorted Pl's claim as Defs False Claim, which implies "Pl stole ACE from Defs," and that "ACE is not trade secret." This is the 1st prong.  Defs could have agreed with this purported "Pl's claim," and pointed out that it implies "Pl stole Defs' code", and "ACE is not trade secret" to dismiss the litigation. But then their pervert Scheme would have been exposed. So they had Collins embrace Defs False Claim as "true."[31] Working hand in glove, Defs and Collins conspired to deceive the Court. When the absurdity of their misrepresentation was exposed, Defendants crafted a new variant of the 1st Prong, obfuscating data file sequences as "code files," citing the Court's Nov. 22, 2010, as their basis. On Dec. 14 and 15, 2021, Pl urged Defense counsel to rectify these distortions and their misrepresentations of CJ Swain's order, particularly obfuscating sequences as "software code." However, Defendants refused, but doubled down on their distortions of "Plaintiff's claims" and persisted in their obfuscating sequences as "code."" See 8-10, pp. 22, and the court documents dated 2021-10-7, 2021-12-14, 2021-12-15, Annex of Defs' FRE 201 Notice (ECF. No. 479).

**VI.  Collins conspired with Defs and withheld Pl's essential case files including all of their email communications, from Pl. While refusing to produce to Pl,  Defs also vehemently opposed Pl from retrieving its case files from Collins, contrary to their misrepresentation to the Second Circuit.**

The docket is woefully deficient. Defs and Collins are the only parties that have access to the missing court files.[32] Yet,  Defendants (1) have refused to produce any Missing Court Files to Pl, and (2) have fiercely opposed Pl's motions in this Court to retrieve its case files from Collins since Pl's counsel entered the case in 2019. *All of Defs' misrepresentations in their Second Circuit briefs are directly contradicted by Defs' concurrent actions.*

As for (1), Defs' misrepresentations *e.g.,* they produced all the documents requested by Pl is exposed by Pl's 10(e) and 11(b)(2) Mot in the SDNY, §A-§C.

---

[31] FRE 201 Notice. ECF.No. 479, Pp. 6-7.
[32] Toren Decl in support of Pl's motion to extend time, ¶¶8-122, [D.I. 127], pgs 27-28.

As for (2), in particular, Defs Opp. of Oct. 11, 2023, to Pl's 10(e), 11(b)(2) Mot contained a robust four-page segment fiercely opposing Pl's Request II to retrieve its case files from Collins. (ECF No. 505, pp. 14-17). In contrast, filed concurrently opposing Pl's Motion to extend time in the Second Circuit, Defendants merely addressed Pl's lack of files from Collins in a single with one sentence of dismissive statement: "any issue Plaintiff has with the transfer of files between its counsel is a matter for the Plaintiff and its former counsel," feigning indifference and no involvement with Pl's lack of critical case files. See *id.* bottom of p.10. Ex. 10, Toren Decl.

# ARGUMENT

**I.    The Court should approve and settle the Fed. R. App. P. 10(c) Statement of Evidence, and included the evidence pursuant to Fed. R. App. P. 10(b)(2). Pursuant to Fed. R. App. P. 10(c) ) and Fed. R. App. P. 10(b)(2), this Court should approve and settle the proposed Statement of Evidence.**

Defs again failed to present any valid legal or factual arguments to oppose the FRAP 10(c) Mot. In no less than six court filings, the Defense lead counsel, who has personal knowledge and has admitted to Collins' Withdrawal. §II. But when faced with the implications of the admission evidence of collusion, Defs made material misrepresentations in six sets of court filings to cover it up and procured 4 erroneous rulings. §III. Pursuant to FRAP 10(b)(2), on appeal that these findings or conclusions are contrary to the evidence, the Court needs to ensure the record contains all relevant evidence and to settle and adjust the FRAp10(c) Statement.

Defs objection is based on two arguments. Neither is valid and they are inherently *conflicting* First, they argued that the key evidence that Collins' withdrawal right after it was filed, has been amply documented in the record, and admitted by Defense counsel, and therefore there is no need for a separate FRAP10(c) Statement.

This argument fails. It would have been better if Defense counsel had provided additional "adjustments and supplements" to the FRAP10(c). But their refusal to disclose and do so pursuant to FRAP10(c) does not prevent the key piece of evidence from being admitted, and settled by the Court. There are no requirements that key evidence must be very lengthy in order

to be part of a FRAP10(c) Statement. It provides a missing piece of the puzzle fitting the other pieces of the conclusive evidence of collusion.

Second, Defs back-pedaled from their admission of "uncontroverted facts," but argued that Pl did not participate in the Joint Call and has no personal knowledge, only Defense counsel and Collins did, and therefore the FRAP10(c) Statement would be "unreliable" [D.I.57-2]. However, the 8th Wang Decl provides the essential personal knowledge concerning Collins' deceit to his client and the Court.

It strains credulity, not to mention logic, to contend that the Court may not rely on an "uncontroverted material fact" such as this, which was admitted under cross-examination by Defense counsel six times. Under Defs new theory of their admission against themselves were "unreliable," then all of their filings should be withdrawn. As §III demonstrated, they are already proven to be filled up with misrepresentations.

## II.      The Authorities Cited by Defendants Actually Support that the Filing of Plaintiff's FRAP10(c) motion with the Supporting 8th Wang Decl is Entirely Appropriate, Necessary and Essential for the Appeal.

Defs have completely previously failed to challenge any of the facts outlined in Pl proposed Statement of Evidence under FRAP 10(c), but simply objected on procedural grounds.[33] Indeed, Defs' single authority, *Thomas v. City of New York,* 1997 WL 639242, at *1 (S.D.N.Y. Oct. 16, 1997),  actually supports Pl's position that the filing of its FRAP10(c) motion and the 8th Wang Decl is necessary and essential and that FRCP10(c) evidence encompasses the Joint Conference Call, subsequent court rulings, the FRCP 10(c) Statement of Evidence, and the 8th Wang Declaration.

Citing *Thomas*, Defs claimed that "it is far from clear whether Rule 10(c) permits the reconstruction of" the call with MJ Pitman and that "Rule 10(c) is designed to apply to the types of proceedings at which evidence is taken and which are typically stenographically recorded.' However, *Thomas* is easily distinguishable for several reasons. First, *Thomas* was decided under

---

[33] (Plaintiff's September 6, 2022 letter (ECF no. 35-1), January 12, 2023 letter (ECF no. 47), and December 28, 2022 letter (ECF no. 49)). Plaintiff's Jan. 12, 2013, Letter.

a prior version of Rule 10(c) of FRAP, amended in 1998. Second, and, moreover, *Thomas* is limited to "oral arguments," stating that Rule 10(c) "is designed to apply to the types of proceedings at which evidence is taken and which are typically stenographically recorded." *Id*. According to *Thomas*, FRAP 10(c) still covers the Joint Conference Call and the rulings in this case because "the evidence" – the 4th Fan Decl. has been *taken [out]* of consideration because of Collins' Withdrawal of crucial evidence, including admission evidence of collusion that must also be covered by the FRAP10(c) Statement of Evidence.

As *Thomas* indicated, when the evidence is presented for the court and is implicated, as in this instance, the FRAP 10(c) is necessary. Whereas *Thomas* only involved oral arguments and not evidence. Here, by contrast, little recollection of the argument is required, in addition to the fact that during the Joint Conference Call, Collins withdrew the Rule 37(b) sanctions motion that included evidence contained in the 4th Fan Decl.  This is very different from an oral argument.

The other cases cited in footnotes in the Kessler Letter support Pl that the relevant FRAP10(c) evidence covers the Joint Conference Call, all the subsequent court rulings, and all of Pl's FRCP 10(c) Statement of Evidence, and the evidence as outlined in the 8th Wang Declaration.

In *United States v. Garcia–De La Rosa*, 832 F.3d 128, 131–32 (2d Cir. 2016), the court found "[Degante-Galano] has taken no steps, available to him under Rule 10(c) . . . to accommodate the fact that the complete transcript is unavailable." Here, Pl has meticulously taken all the necessary steps, submitting "[t]he statement and any objections or proposed amendments" "to the district court for settlement and approval," pursuant to FRAP10(c).

Second, *Degante-Galano* also failed to demonstrate "'specific prejudice to his ability to perfect an appeal." "Prejudice exists if the record is "so deficient that it is impossible for the appellate court to determine if the district court has committed reversible error." *United States v. Weisser*, 417 F.3d 336, 342–43 (2d Cir. 2005) (internal quotation marks omitted). Further, inability to raise an ineffective assistance claim due to gaps in the record may support a claim of specific prejudice." *United States v. Weisser*, 417 F.3d 336, 343 (2d Cir. 2005). Pl's FRCP 10(c)

21

Statement of Evidence and the 8th Wang Declaration are conclusive evidence demonstrating "the specific prejudice" to Pl. Therefore, they are required and necessary for the appeal.

Next, *Weisser* also cited *United States v. Todd*, 287 F.3d 1160, 1162–65 (D.C. Cir. 2002), in which the parties and the court determined that many of Todd's claims rely at least in part on facts neither fully litigated nor part of the appellate record." "Todd's ineffective assistance claim likewise depends on facts missing from the record." *Id*. Thus, the court relied on the affidavits of the FRAP 10(c) movant. By contrast most of Pl's claims have never been prosecuted, let alone "fully litigated," and accordingly, Pl's Rule 10(c) statement is necessary.

Defs also cited *United States v. Fackrell*, 991 F.3d 589 (5th Cir. 2021) which is totally inapposite and involved testimony regarding a jury charge conference that was not even included in the Opening Brief, nor contained in the Appendix, and there was no proof that these omissions were substantial or significant. In comparison, Pl's FRAP10(c) and the 8th Wang Declarations include evidence showing substantial prejudice. The *Fackrell* court also held: "[w]here the defendant has new counsel on appeal, the court will reverse if (1) a missing portion of the record is substantial and significant, and (2) the trial court's reconstruction is not a substantially verbatim account."

In comparison, the issues here are crucial evidence of Collins' collusion with Defs deceiving Pl and the Court and was sought to prevent the filing of Pl's 37(b) spoliation sanction motion leading directly to Defs' 37(c) sanction against Pl and the Judgment and related orders. These are not the insignificant "conference of witness testimony by a government witness," but are substantial and significant. The District Court did not reconstruct, let alone provide "a substantially verbatim account", but relied on all of Defs' misrepresentations in subsequent rulings, and never considered any evidence of any of Defs' fraud.

In the last case cited by Defs, *Chestnut v. Hall, 284* F.3d 816, 820–21 (7th Cir. 2002), the appellate court upheld a decision by the district court **to accept** a FRAP10(c) statement, despite that it involved an immaterial issue, "so as to afford[] the appellants the full opportunity to alert the court to their objections so that any errors could be corrected prior to deliberations." The

Rule 10(c) statement concerned only an insignificant conference regarding "Instruction 23" during the trial to support the appellant's objection in violation of FRCP 51, yet the appellee submitted a response, and the Court settled the FRCP 10(c) statement. In contrast, Pl's Rule 10(c) statement and supporting evidence are conclusive evidence of Collins' collusion with Defs, and as a result, Pl has been denied its constitutional right to a fair trial.

### III.   Defendants and Collins' Deceit and Conspiracy Constitute Fraud on the Courts have  Violated The New York Rules of Professional Conduct Rule 3.3(a), Rule 4.1, and Federal Criminal Laws.

Defs and Collins made willful material misrepresentations which they refused to correct,[34] e.g.,

- Pl's claim as Defs False Claim,
- The 3 files of Radak Code as "TYB-RCS" containing over 1000+ code files, on fourteen occasions during the September 5, 2012 Court Hearings to procure the Order,
- Deceiving the Court to procure other orders as listed in §III.
- Data files are "code files," misrepresenting the Court's order as the basis.
- Misrepresentations in six Court filings were made to obstruct the investigation and to conceal admission evidence and other evidence of collusion.
- Altering the date of "2017-5-31 Xiaolu Wang's Letter to Judge Pitman" to "2017-5-30".

Defendants/counsel's and Collins's conduct, collusion, and deceits have violated multiple provisions of the New York Rules of Professional Conduct, including:

- Rule 3.3(a)(1), which prohibits knowingly making or failing to correct a false statement of fact or law to a tribunal;
- Rule 3.3(a)(3), which prevents a lawyer from offering or failing to disclose known false evidence;
- Rule 3.4(a), which bars altering evidence or obstructing another party's access to evidence;
- Rule 4.1(a), which disallows false statements; and
- Rule 8.4(c), which prohibits dishonesty, fraud, deceit, or misrepresentation.

### IV.   Defendants/Defense Counsel, and Collins's Deceit and Conspiracy Constitute Fraud on the Courts and Violate New York Judiciary Law § 487

Defense counsel and Collins collusion deceived Pl and the Court, in violation of New York Judiciary Law §487,[35] and are serious obstruction of the proceedings in the courts. As presented in the Statement of Facts Defs and Collins' deceit and collusion on Pl and the courts

---

[34] see Toren 4-24-2023 Letter to Park,
[35] New York Judiciary Law Sec. 487, prohibits "(1) any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."

(including this Court, the Court of AAI-II (20-cv-07034-JHR, and the Second Circuit in order to conceal their fraud on this Court) are calculated, systematic, pervasive, supported by palpable, clear and convincing evidence, including the documented evidence by Defs admission, demonstrate a clear pattern.

Defs have utterly failed to dispute any of the evidence of obstruction andd collusion in §III, and Fan Decl and Wang Decl. Defs silence concerning the three 3 Prong Scheme and 3 Level Fraud is deafening. These allegations supported by the overwhelming evidence are undisputed.

First, Collins' covert Withdrawal, and his brazen deceit of his client and the Court to mask his Withdrawal,[36] is a blatant violation of New York Judiciary Law § 487 and other laws, necessitates that the Court grant Relief II.

Further, the compelling factual evidence, including that contained in the Facts, and the Sixth, and Seventh Wang Declarations conclusively establishes that Collins colluded with Defs hand in glove, to sabotage his client's case, and exhibited a "chronic and extreme pattern of legal delinquency." This is not required by the Second Circuit to support liability under Judiciary Law § 487,[37] to deceive the Court. The Second Circuit held "[t]he operative language" of section 487 "focuses on the attorney's intent to deceive, not the deceit's success." *Amalfitano v. Rosenberg*, 572 F.3d 91, 92 (2d Cir. 2009). Defs and Collins' collusion derailed the Case and procured the Judgment and the related orders. Defs and Collins' conspiracy is still ongoing.

### V. Defendants and Collins Committed Civil Conspiracy and defrauded the Court

See, Pl's Mot to Defer of 11/8/2019 at p. 13. (ECF no. 366) p.16. *Amalfitano v. Rosenberg* 428 F. Supp. 2d 196, 211 (S.D.N.Y. 2006) at 208 (in light of the knowledge [Collins] gained, we have no hesitancy in concluding that [Collins]' actions evince a deliberate intent to deceive both)

---

[36] As to what is "deceit", the court in *Amalfitano v.Rosenberg*, 428 F.Supp.2d 196 (SDNY 2006), as including: (1) The act of intentionally giving a false impression… (2) A false statement of fact made by a person knowingly or recklessly (i.e. not caring whether it is true or false) with the intent that someone else will act upon it…

[37] *Bounkhoun v. Barnes*, No. 15-CV-631A, 2017 WL 1331359, at *8 (W.D.N.Y. Apr. 11, 2017) ("That requirement appears nowhere in the text of the statute, however, and other courts have found attorneys liable under the statute for a single intentionally deceitful or collusive act." *Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008).) *Trepel v. Dippold*, 2005 WL 1107010 (SDNY 2005) ("a single act or decision, if sufficiently egregious and accompanied by an intent to deceive, is sufficient to support liability [under Judiciary Law Section 487].)

In *Gelboim v. Bank of America Corp.,* 823 F.3d 759, 781 (2d Cir. 2016), the court found that conspiracies can be discerned from "interdependent conduct," further evidenced by plus factors: a shared conspiracy motive, actions against individual economic interests, and significant inter-firm communications. When these factors are applied to their interdependent conducts, the Court will infer an agreement between Defs and Collins:

- Collins acted in every way that furthered Defs' objectives, echoing their mischaracterizations and deceits
- Collins' actions were directly counter to his and his client's economic interests,
- Significant communication between Collins and Defs/Defense Counsel without Pl's awareness.[38]

An element of fraud in the court is that an officer of the court commits the conduct and "**in fact deceives the court.**" [39] Here, Defs have deceived the Court numerous times. Thus, Defs' claims of "relitigation" to deflect all substance utterly fail. The Court recognized Pl's alleged fraud on the Court. Fn. 3.  While this is a civil matter, the conduct of Defs and Collins is so egregious, it may have violated federal criminal statutes on obstruction, prohibiting obstruction of justice such as 18 U.S.C §1512, 18 U.S.C §1503, and conspiracy such as 18 U.S.C §371. See Pl's Mot to Defer,  pp.12-16, for more details. Defendants resorted to deceit to strike this motion, thereby preventing the court from its consideration, and obstructed the Pl from retrieving its case files, including email communications from Collins. Such actions could constitute violations. The Court should weigh the severity of the misconduct, coupled with the compelling evidence of their conspiracy and fraud upon the Court when determining appropriate sanctions under New York Judiciary Law § 487 and the Court's inherent power to award the requested sanction relief.

## CONCLUSION

For the reasons set forth above, Pl respectfully requests that the Court grant its Motions in its entirety.

---

[38] Due to Defense counsel's admission, MJ Cave directed them to serve Collins the Court's order. ECF No. 480.

[39] Fraud upon the court consists "1. an officer of the court; 2. directed to the court; 3. That is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth; 4. That is a positive averment or is concealment…; 5. That deceives the court." See *Demjanjuk v. Petrovsky,* 10 F.3d 338, 348 (6th Cir.1993), and *Herring v. U.S.,* 424 F.3d 384, 390 (3d Cir, 2005).

Dated:   October 15, 2023
              New York, New York

Respectfully submitted,

Peter J. Toren
**LAW OFFICE OF PETER J. TOREN**
43 West 43rd Street, Suite 266,
New York, N.Y. 10036-7424,
ptoren@petertoren.com,
(646) 623-4654.

*Attorneys for Plaintiff and
Counter-Claim Defendant
Advanced Analytics, Inc.*