# Exhibit 4

# Statement of the Evidence Under Rule 10(c) of the Federal Rules of Appellate Procedure

IT IS ORDERED that the following, be, and settled and approved by this Court, as a statement of the evidence regarding the Chambers telephone conference joined by Plaintiff's former counsel Mr. Todd S. Collins ("Mr. Collins") and Defense counsel Mr. Christopher Moore and Ms. Kennedy Park, held before Magistrate Judge Henry B Pitman subsequent to June 17, 2013 and before the June 19, 2013 order by Magistrate Judgement Pitman was issued, and no stenographic record has been made found for this conference and for the events that transpired afterwards:

1. Plaintiff Advanced Analytics, Inc. is the appellant herein; it appeals from a judgment of November 4, 2021, and any related orders, entered by this Court. Dr. Xiaolu Wang is the owner and the principal of Advanced Analytics, Inc.

2. At the times of these related orders on and after September 5, 2012, including the orders of March 26, 2014, and July 15, 2014, before this Court, Plaintiff's lead counsel was Mr. Todd S. Collins ("Mr. Collins"), and the lead counsel of Defendants CGMI *at al*, were and are Mr. Christopher P. Moore ("Mr. Moore"), and Ms. Jennifer Kennedy Park (Ms. Park").

3. On June 17, 2013, Plaintiff filed <u>Plaintiff's Rule 37(b) Letter Motion to Sanction Defendants for Spoliation and Violation of the Court Discovery Orders supported by the Fourth Declaration of Jianqing Fan, Ph.D. and Opposition to Defendants Rule 37 (c) Sanction Motion</u> ("Plaintiff's Rule 37(b) Spoliation Sanction Motion and Opposition to Defendants' Rule 37 (c) Motion") in the Chambers of both Chief Judge Laura T. Swain and Magistrate Judge Henry B. Pitman.

4. On June 18, 2013, Defense counsel, Mr. Moore, filed a letter to ask Chief Judge Swain to "discard, or alternatively, forward" the Rule 37(b) Spoliation Sanction Motion to Magistrate Judge Henry B. Pitman. Mr. Moore's letter stated that Defendants "will submit a written response to Magistrate Judge Pitman addressing the unfounded allegations contained in AAI's July[sic] 17 Letter in due course." At Defendants' request, Chief Judge Swain forwarded the entire Rule 37(b) Spoliation Sanction Motion and Opposition to Defendants' Rule 37 (c) Motion with the supporting material to Magistrate Judge Pitman.

5. On or about June 18, 2013, Defense counsel, Ms. Park requested Plaintiff to agree that the deadline for Defendants' response to Plaintiff's Rule 37(b) Spoliation Sanction Motion and Opposition to Defendants' Rule 37 (c) Motion be extended to June 26, 2013, and that the deadline for Defendants' reply to Plaintiff's Opposition of June 4, 2013, to Defendants Motion for Summary Judgment of 2013 be stayed.

6. In the subsequent joint call with Defense counsel, including Ms. Park, to Magistrate Judge Pitman's Chambers, Mr. Collins withdrew Plaintiff's Rule 37(b) Spoliation Sanction Motion and Opposition to Defendants' 37(c) Sanction Motion just filed in the Court on June 17, 2013.

7. Consequently, Magistrate Judge Pitman issued the order of June 19, 2013.

8. Defendants admitted directly in court filings between October 2019 and September 20, 2022, made by their lead counsel, Ms. Park, the fact as stated in Paragraph 6 above, that during the joint call of June 18, 2013, to Magistrate Judge Henry B. Pitman, Mr. Collins withdrew Plaintiff's Rule 37(b) Spoliation Sanction Motion and Opposition to Defendants' 37(c) Motion filed on June 17, 2013.

9. On June 1, 2017, Mr. Collins and Defense counsel Nathaniel E. Jedrey, in emails copied to Mr. Moore and Ms. Park, demanded that Dr. Wang withdraw his May 31, 2017, Letter, or else Defendants would seek to sanction Dr. Wang for the violation of the May 31, 2017 Order that directed him to make submissions only through a new counsel, because Dr. Xiaolu Wang's May 31, 2017, letter to Magistrate Judge Pitman was filed *after* Magistrate Judge Pitman's order of May 31, 2017, had been filed with the ECF system earlier that day.

10. After Dr. Wang refused their demand to withdraw his letter, Mr. Collins submitted two letters to Magistrate Judge Pitman on June 1, 2017, and June 5, 2017, cc'ed to Defense counsel including Mr. Moore and Ms. Park, reporting that Dr. Wang's May 31, 2017, letter to Magistrate Judge Pitman was filed *after* Mr. Collins had forwarded Magistrate Judge Pitman's Order of May 31, 2017, to Dr. Wang.

11. Neither Dr. Wang's letters of January 4, 2017, nor May 31, 2017, made reference to any call. But Defendants repeatedly asserted to Magistrate Judge Cave, *e.g.,* in their Opposition Memorandum of February 7, 2020, to Plaintiff's Motion to Reconsider that "[i]n both letters, Plaintiff's sole 'evidence' of the alleged 'collusion' was [the call ¶6 *supra*]" and which Magistrate Judge Pitman had considered and rejected in his May 31, 2017, Order.

12. MJ Cave's Opinion and Order of June 9, 2020, cited Defendants' assertions, so did her other opinions and orders, including the denials of Plaintiff's Motion to Defer, and the refusal to consider Plaintiff's allegation and evidence of collusion and the partial granting Defendants' November 11, 2019, Motion to Strike and for Injunction and for fee application.

13. Plaintiff stated, for example, in its Objection of MJ Cave's Opinion and Order dated June 9, 2020, that "when MJ Pitman issued his May 31, 2017 Order, he had not even received Dr. Wang's May 31, 2017 letter." "The records demonstrated that Dr. Wang did not know about the call and did not mention the call in the two letters, and that MJ Pitman had not received the collusion evidence when he issued May 31, 2017 Order." ECF. 442. Defendants' opposition to Plaintiff's objection to MJ Cave's orders responded that "[Dr. Wang's May 31, 2017 letter was not received until after Magistrate Judge Pitman's order was docketed] is far from clear." ECF 446 at 6.

14. To support their response in Paragraph 12 above, Defendants altered the date "May 31, 2017" of "Dr. Wang's May 31, 2017 Letter to Judge Pitman" to "May 30, 2017" in their most recent filings in the Chambers of Chief Judge Swain on March 1, 2021.

15. Defendants refused Plaintiff's request to correct this alteration for the Court. Following a meet-and confer regarding Plaintiff's request for judicial notice, Defendants still refused to retract their assertion in Paragraph 11 above and their alterations set forth in Paragraph 14 above for the Court, and to clarify the undisputed facts in Paragraphs 9 and 10 above for the Court.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
ADVANCED ANALYTICS, INC.,                     :
                                              :
    Plaintiff and Counterclaim Defendant,   :
                                              :
                  v.                        :        No. 04 Civ. 3531 (LTS) (SLC)
                                              :
CITIGROUP GLOBAL MARKETS, INC.,               :
SALOMON SMITH BARNEY, INC., and               :
THE YIELD BOOK INC., f/k/a/ SALOMON           :
ANALYTICS, INC.,                              :
                                              :
    Defendants and Counterclaim-Plaintiffs   :
---------------------------------------------------------------------X

# EIGHTH DECLARATION OF XIAOLU WANG

Xiaolu Wang hereby declares as follows:

    1.    I am the founder and the principal of Plaintiff Advanced Analytics, Inc. ("Plaintiff"), in this captioned case (the "Case," "Litigation"). I respectfully submit this declaration (the "Eighth Wang Declaration," the "Declaration"), in support of Plaintiff's Statement of Evidence pursuant to Federal Rules of Appellate Procedure 10(c), to be submitted to the District Court for approval and settlement, together with Citigroup Global Markets, Inc. and The Yield Book Inc. (collectively, the "Defendants")'s responses, and then to be filed with the Second Circuit Court of Appeals.

    2.    This Declaration is based on my personal knowledge, and the record evidence that I have been permitted to review.

    3.    The basic facts in this Litigation are set forth in my previous declaration dated November 12, 2018 (the "Sixth Wang Decl." ECF nos. 289 and 373), especially §III-V, and summarized in my declaration dated January 2, 2019 (the "Seventh Wang Decl." ECF. no. 302). These basic facts are undisputed, and reconfirmed by the subsequent documentary evidence filed in the Litigation. They are not reproduced here, but their familiarity is assumed.

1

A. **In the Entire Litigation, Defendants Mischaracterized all Plaintiff's Claims of Misappropriated Trade Secret as Defendants False Claims (such as "Plainiff Stole Defendants' Code and ACE is Not Trade Secret") and Misrepresented Their Discovery Production**

4. A mountain of evidence discovered in this Case undisputedly concludes that after Defendants backed out Plaintiff's ACE sequences ("ACE") from the secretly stolen interest rate paths generated by ACE using their Theft Code clandestinely installed in their ACE test system of June 3, 1998, Defendants immediately installed large suites of code ("ACE Use Code") in the Yield Book ("TYB" or "YB") systems for the exclusive use of the stolen ACE by their internal users, especially by all of their traders for trading and arbitrage. This is Plaintiff's ACE Verbatim Use Claim.

5. Recall that a sequence is a matrix, i.e., a table, of decimals. See ¶ 26, the 6th Wang Decl. The Yield Book uses Monte Carlo code which generates random sequences at runtime. In contrast, Plaintiff's ACE sequences are created from exceedingly accurate calculations from very complex mathematical formulas and can produce extremely accurate prices within the minimal time constraint. ACE sequences *cannot* be generated by any random number sequence generators, certainly not by the Yield Book sequence generators. ACE sequences are stored as data files and read at run time by the Yield Book system, whether during ACE tests or after Defendants have stolen ACE and used ACE to generate/store future interest rate paths for trading. This is the **Basic Fact.** *Id.* Defendants confused the nonspecific description "incorporated ACE," to Defendants false claims "included ACE [in either the Yield Book code files or the sequences generated by the Yield Book." For the Yield Book systems to use ACE verbatim as set forth above, they read ACE sequences or future interest rate paths generated by ACE as data files at runtime, contrary to Defendants' Mischaracterization of Plaintiff's claims.

6. **(a)** (i) From the very start of the Litigation, Defendants *mischaracterized* Plaintiff's claim of misappropriation of trade secrets, as "'Yield Book sequences' incorporated ACE sequences" ("Defendants False Claim") which means "*Plaintiff* stole the Yield Book code from *Defendants* to generate ACE sequences" and "ACE is *not* trade secret." Defendants relied on their Mischaracterization to deceive the Court and withheld the key evidence, *e.g.*, the sequences *used* by the Yield Book, the sequence development and testing records, and the entire Yield Book production code from The Yield Book, *Inc* ("TYB-RCS"), in particular the code which read the stolen ACE sequences stored in hidden data files.

2

7.  **(a)** (ii) After Chief Judge Swain overruled Defendants' steadfast resistance and directed Defendants to produce the sequence development and testing records, Defendants were compelled to produce documents which revealed that Defendants had massively spoliated the sequence development and testing records and destroyed inculpatory evidence but fabricated their discovery productions after they were served the subpoenas and requests for documents by Plaintiff in 2005. This was further confirmed by the depositions of Defendants witnesses, Mikhail Teytel and Branislav Radak, in 2012.

8.  **(a)** (iii) When these misrepresentations and their spoliation **(a)** (ii) were exposed, Defendants fell back to relying on their Mischaracterization **(a)** (i);

9.  **(b)** (i) Starting in 2012, Defendants surreptitiously flipped Mr. Todd S. Collins ("Collins"), the formal lead attorney for Plaintiff. Since then he steadfastly echoed Defendants' misrepresentations, fully embraced Defendants' deceits, behind my back secretly withdrew Plaintiff's motion to sanction Defendants for their spoliation and withholding of evidence in violation of the Court orders, covered up Defendants' fraud, and procured the contempt orders against Plaintiff.[1] *Infra.*

10. **(b)** (ii) Collins' Memorandum of Law in Opposition to Defendants' Summary Judgement Motion (the "SJB") dated May 28, 2014, exemplified their collusion **(b)** at work: The 3rd SJB echoed Defendants' mischaracterization and misrepresentations of (a), and completely covered up Defendants' concealment of the key evidence of misappropriation; Then

11. **(c)** Defendants cited the Basic Fact to dismiss the purported "Plaintiff's" claim (in reality, Defendants' False Claim) as undisputedly false, as the basis to dismiss the Case.

12. On September 4, 2019, the Court mistakenly cited Collins' embracement of Defendants' Mischaracterization from his SJB **(b)(ii)**, instead as specific evidence of conspiracy repeatedly alerted by me and Plaintiff's current counsel, but as the basis of "Plaintiff's" claim (in reality, Defendants' False Claim). Then the Court mistakenly relied on Defendants and Collins' conspiracy and collusion **(a), (b)**, and **(c)** to dismiss the purported "Plaintiff's" claim (in reality, Defendants' False Claim) and this Litigation.[2] As a result, Plaintiff's claims of misappropriation

---

[1] See §IV; Annex A and Annex B, the 6th Wang Decl.
[2] See pp 2-3, Statement of Fact §I, Motions Under F.R.C.P. 59(e) and 60(b) (the "Rule 59(e)60(b) Motion," ECF no. 467). See also pp. 6-9, §B, Plaintiff's Motion and Request for Judicial Notice of Documents and Facts Pursuant to F.R.E. 201 and in Support of Motions Under F.R.C.P. 59(e) and 60(b) (ECF no. 479, the "FRE201 Motion.").

3

of trade secrets have *never* been addressed in any of the relevant Court's rulings after Chief Judge Swain's correct ruling on November 22, 2010.

13. **(a)** (iii) Undisputed mathematical calculation by Plaintiff's expert Prof. Jianqing Fan and the authentic documentary evidence produced by Defendants conclude that the one and only algorithm used by Defendants developer, Mikhail Teytel that selected all the sequences generated by the Yield Book known as "LDS" sequences, is not the purported mixed seed algorithm (proffered by Teytel based on pricing portfolios) but is the algorithm of targeting the stolen ACE sequences. This is Plaintiff's ACE Derivative Use Claim.

14. Defendants also mischaracterized *Plaintiff's* claims of misappropriation of trade secret, e.g., ACE Derivative Use Claim, as that some phony "Yield Book sequences" *copyright-infringed* ACE sequences ("Defendants' False Claims") and requiring "similarity or derivation [from massively spoliated and fabricated record]" of patently phony sequences to ACE sequences. Defendants have never had any sequences as an end "product." Defendants have not disputed the fact that they have not produced the code files that could be compiled to allow a sequence, in particular a sequence from seeds in spoliated records, to be tested or authenticated, and that they produced certain phony "Yield Book" sequences created by Radak, who had no personal knowledge, in violation of the express and explicit Court's orders.

15. As a result of Defendants' Mischaracterization, the Court has never considered *either* the undisputed conclusive evidence of Defendants' breach of the parties' Nondisclosure Agreements and *or* Plaintiff's claims of misappropriation of trade secrets, *e.g.,* Defendants' theft and use of ACE sequences.

**B.** **In a Joint Call with the Court, In Collusion with Defendants, Collins Secretly Withdrew Plaintiff's Rule 37(b) Spoliation Sanction Motion and Opposition to Defendants Rule 37(c) Letter Motion Behind the Back of Plaintiff**

16. Jointly with Defendants, Collins maneuvered to mislead the Court to suspend discovery, for Defendants to renew the motion for summary judgment while withholding key evidence abruptly **before** Plaintiff could take Defendants' witness depositions for its expert Prof. Jianqing Fan to get the deposition transcripts for analysis to report his findings. Beginning in July 2012 and continuing through June 2013, Plaintiff has submitted four declarations by its experts prepared in support of its anticipated motions to sanction Defendants for their massive spoliations and fabrication of their sequence development records and for withholding key evidence in

4

violation of the Court orders pursuant to Fed. R. Civ. P. 37(b), and for submitting seven false/misleading declarations in bad faith in support of two motions for summary judgment, pursuant to Fed. R. Civ. P. 56(d)/(h).

17. Yet Collins blocked or delayed and then buried all of Plaintiff's motions under FRCP 37(a)(b) and later FRCP 56(d)/(h) that I had repeatedly urged him to file. Instead of submitting these experts' declarations as **admissible** evidence in support of these motions seeking relief from Defendants' fraud, Collins misrepresented all the declarations as untimely expert reports, or otherwise **inadmissible** opinions, to set the declarations up as the targets *per se* for Defendants to strike, one after another. Over my strong objections, Mr. Collins *misrepresented* to the Court that these experts' declarations were prepared for inadmissible purposes and submitted in violation of a scheduling order without justification, to frame Plaintiff for contempt of court and later for Defendants' FRCP 37(c) sanction.

18. Eventually, through co-counsel, Plaintiff filed its <u>Letter Motion to Sanction Defendants for Spoliation and Violation of the Court's Express Discovery Orders Pursuant to FRCP 37(b) and Inherent Power and the Opposition</u> to Defendants' Rule 37(c) Letter Motion, in the night of June 17, 2013 ("Plaintiff's Rule 37(b) Spoliation Sanction Motion and Opposition to Defendants Rule 37(c) Letter Motion" or "Rule 37(b) Spoliation Sanction Motion"), supported by the factual evidence presented in the Fourth Fan Declaration.

19. On the *very* next day, June 18, 2013, defense counsel, Mr. Christopher Moore ("Moore") sent a letter asking Chief Judge Swain to "discard, or alternatively, forward" the Rule 37(b) Spoliation Sanction Motion to Magistrate Judge Henry B. Pitman, and stated that Defendants "will submit a written response to Magistrate Judge Pitman addressing the unfounded allegations contained in AAI's July[sic] 17 Letter in due course." Chief Judge Swain endorsed Moore's letter and forwarded the Rule 37(b) Spoliation Sanction Motion to Magistrate Judge Pitman. ECF no. 220.

20. At the same time, defense counsel, Jennifer Kenny Park ("Park") emailed Collins and proposed a call to the Court, stating that "we would advise the Court that we intend to file our response letter regarding AAI's anticipated motion for sanctions on June 26, 2013 (next Wednesday)."

21. However, directly contrary to my express instruction and concealing from me, instead of consenting to Defendants' request to file a response, Collins secretly "withdrew

5

[Plaintiff's Rule 37(b) Spoliation Sanction Motion and Plaintiff's Opposition to Defendants Rule 37(c) Letter Motion] during the call with Judge Pitman,"[3] in a joint call to Chambers of Magistrate Judge Pitman with defense counsel including Park. This was later revealed and repeatedly confirmed by defense counsel who participated in the joint call with Collins. Collins gave away Plaintiff's right to file the motions to sanction Defendants, without Defendants' need to file even an opposition. In collusion with Defendants, Collins also withdrew Plaintiff's opposition to Defendants Rule 37 (c) sanction motion, and made Plaintiff a sitting duck for Defendants' attacks after having framed Plaintiff for violating a scheduling order.

22. As a result, Magistrate Judge Pitman issued the order of June 19, 2013. I was stunned by the June 19, 2013, order procured jointly by Collins and Defendants and I questioned Collins. Collins first denied that any call concerning Plaintiff's Rule 37(b) Spoliation Sanction Motion had taken place. He then conceded that there had been a joint call, but he claimed the call had nothing to do with June 19, 2013, Order, and then Collins repeatedly, explicitly and expressly concealed from me his clandestine withdrawal of Plaintiff's Rule 37(b) Spoliation Sanction Motion and Opposition to Defendants Rule 37 (c) Sanction Motion, in numerous phone calls with me on and after June 19, 2013, and in his emails to me. For example, Collins sent an email to me on June 24, 2013, that reassured me that

> "MY POSITION IS THAT OUR JUNE 17 LETTER LAID OUT DEFS' FRAUD AND TOLD THE COURT THAT THE TWO MOTIONS, THEIRS TO STRIKE AND OURS FOR SANCTIONS, SHOULD BE BRIEFED SIMULTANEOUSLY (OR ELSE OUR MOTION SHOULD BE BRIEFED FIRST).
>
> [MJ Pitman] HAS NOT SAID HE WILL NOT HEAR THE SANCTIONS MOTION AND, AS RUSS POINTS OUT, THE LAW IN THE DISTRICT PROVIDES THAT THE PRE MOTION CONFERENCE PROCEDURE IS NOT A MEANS WHEREBY WE CAN BE DENIED THE OPPORTUNITY TO FILE THE MOTION. INDEED, IF THE FAN FOURTH IS STRUCK EVEN AS TO THE SANCTIONS MOTION, WE WILL STILL MOVE EVEN IN THE ABSENSE OF THE FAN FOURTH. (Upper case in the original.)[4])

23. Collins then concealed the fact that Plaintiff had already filed the Rule 37(b) Spoliation Sanction Motion, *from both Judge Pitman and Chief Judge Swain* in all subsequent

---

[3] See **Statement from Defendants:** p.3, Joint Status Report, ECF No. 355 (Oct. 17, 2019).
[4] "THEIRS TO STRIKE" is C. Moore's letter motion of June 10, 2013 under FRCP 37(c) to MJ Pitman. It is not in the index of the court records, like the other Defendants and Collins' letters to the Court.

6

court proceedings he filed. Instead, Collins misrepresented in six court filings that the Fourth Fan Declaration was prepared to oppose Defendants' motion for summary judgment without justification, not to support the Rule 37(b) Spoliation Sanction Motion, which Collins concealed its existence in all six sets of court papers. Based on these false assertions, Defendants and Collins procured the March 26, 2014, Order and July 15, 2014, Order that granted Defendants' Rule 37(c) Sanction Motion unopposed, which was in fact actually supported by Collins.

24. In the six sets of "opposition" papers filed without my approval to Defendants Rule 37(c) Motion, Collins deleted from the drafts all the references to the Rule 37(b) Spoliation Sanction Motion *filed* on June 17, 2013 to sanction Defendants for spoliation and violation of existing Court orders that I inserted. Instead, Collins misled both Magistrate Judge Pitman and Chief Judge Swain that Plaintiff's "contemplated" "applications" were "to seek leave for" discovery sanctions under FRCP 16(b)(4) and 26 to reopen and to reschedule discovery, as part of his effort to support Defendants' Rule 37(c) sanction against Plaintiff.

25. Consequently, Chief Judge Swain and Magistrate Judge Pitman never considered nor knew that Plaintiff had sought and filed a Rule 37(b) spoliation sanction. As a result of Colins' collusion with Defendants, MJ Pitman's March 26, 2014, Order, mistakenly held "[d]espite the seriousness of its charges [of fraud], AAI has not yet sought spoliation sanctions,"[5] precisely because Collins withdrew and then concealed Plaintiff's 37(b) Spoliation Sanction Motion. MJ Pitman's Order noted "[In September 5, 2012 Hearing, the Court] found that there was 'very, very little evidence, if any evidence' [apart from Fan July 2012 Decl. *per se* withheld by Collins from supporting Plaintiff's sanction] that Defendants had committed fraud during discovery," --precisely because Collins concealed palpable evidence of Defendants fraud in collusion with Defendants.[6]

26. Defendants counsel Park, who participated in the joint call with Collins, admitted directly in approximately five court filings on behalf of Defendants from October 2019 until September 2022, that during the joint call of June 18, 2013 to Magistrate Judge Henry B. Pitman, Collins "withdrew" Plaintiff's Rule 37(b) Spoliation Sanction Motion, to prevent that Plaintiff from filing a former Rule 37(b) spoliation motion to sanction Defendants.

---

[5] *Id*, at p. 25, in Section "§i Explanation of Noncompliance."
[6] See ¶ 143, the Sixth Wang Decl.

7

27. For example, Defendants' November 11, 2019, Motion to Strike and Sanction, signed by Park, stated "Plaintiff submitted June 17, 2013, letter (the "June 2013 Letter") claiming that Plaintiff intended to seek sanctions for its claimed discovery misconduct, using the Fourth Fan Decl. as factual support. See June 2013 Letter at 1. The next day, [June 18] Plaintiff's counsel informed Judge Pitman that Plaintiff was withdrawing the letter. See Joint Status Report, ECF No. 355 (Oct. 17, 2019)."

28. Because of Collins' deliberate concealment from me, I was totally unaware of Collins' secret withdrawal of Plaintiff's Rule 37(b) Spoliation Motion during the Joint Call until Defense counsel's admission in October 2019. My lack of knowledge is amply demonstrated by my letters to Magistrate Judge Pitman from 2015 to 2017, the 4th Wang Decl. of April 23, 2015 (ECF no. 426) the 6th Wang Decl. of November 12, 2018, and the 7th Wang Declaration of January 2, 2019 (ECF. no. 302). In sum, because of Collins' secret withdrawal of Plaintiff's June 17, 2013 Letter seeking Rule 37(b) Spoliation Motion and the supporting 4th Fan Decl, the Court has never considered Plaintiff's June 17, 2013 Letter, and never considered the conclusive evidence of Defendants' fraud, and never considered Plaintiff's claim of misappropriation of trade secret and hundreds of pieces supporting conclusive admissible evidence of Plaintiff's claims of misappropriation of trade secret. However, Defendants relied and cited on the withdrawn Plaintiff's June 17, 2013, Letter to argue in their subsequent motions and filings that all of Plaintiff's motions seeking relief from Defendants fraud must be denied for "relitigation" because the allegations and the evidence in these motions had been already raised in Plaintiff's June 17, 2013 Letter.

**C. Defendants' Misrepresentations of My Letters of January 7, and May 31, 2017, to the Court to Covered Up Their Admission Evidence of the Joint Call with the Court, the Other Direct Evidence of Collusion, and Defendants' Fraud Including their Mischaracterization of Plaintiff's Claims**

29. After Magistrate Judge Pitman retired at the end of September 2019, Magistrate Judge Cave took over the bench at the beginning of October 2019. To prevent MJ Cave from consideration of any evidence of collusion, especially Defendants' admission of the joint call, and Defendants' Mischaracterization of Plaintiff's claims as exposed in my May 31, 2017 Letter, Defendants repeatedly misrepresented to Magistrate Judge Cave in all of their briefs, that "[i]n both letters [ of January 4, 2017, and May 31, 2017, by me to MJ Pitman], Plaintiff's sole 'evidence' of the alleged 'collusion' was [the joint call referred in Para. 21 above]" and that MJ

8

Pitman's Order of May 31, 2017, considered and rejected "the sole evidence."[7] Contrary to Defendants' misrepresentations, neither of my letters of January 4, 2017, and May 31, 2017, referred to any call. Instead, my letters of January 4, 2017, presented evidence of Collins' collusion regarding his deliberate embracement of Defendants' Mischaracterization of Plaintiff's claims over my express objection. My letter of May 31, 2017, presented a dozen pieces of other direct evidence of Collins' collusion with Defendants. This 2017-5-31 Letter again contains no words "call" and references no joint call by Collins and Defendants. My letter of May 31, 2017, was filed after MJ Pitman had issued his order of May 31, 2017.

30. Prior to having time to become familiar with the records, Magistrate Judge Cave's opinions and orders[8] cited and all relied on Defendants' misrepresentations that are flatly contrary to the record. My letters of January 4, 2017, and May 31, 2017 speak for themselves. These opinions and orders include the denials of Plaintiff's Motion of November 8, 2019 to Defer, and the granting of Defendants' November 11, 2019 Motion to Strike and for Injunction, and their motions for fee application (ECF no. 375), partial denial of Plaintiff's Motion Under Fed R. Civ. P 54(b)[9], and the decline to consider Plaintiff's allegation and evidence of Collins' collusion.

31. My Letter of January 4th, 2017, to Magistrate Judge Pitman does not contain the word "call." The Letter mentioned no "call" at all and certainly not a joint call by Collins and Defendants with the Court. Instead, the Letter presented the following direct evidence of Collins' collusion with Defendants:[10]

> First, in Collins's Memorandum in Support of Plaintiff "Opposition" to Defendants MSJ Revised on May 28, 2015, he embraced Defendants' Mischaracterization of Plaintiff's claims to be Defs' False Claim "Yield Book sequences incorporated ACE" (which means "Plaintiff stole Yield Book code and ACE are not trade secret). Then Defendants argued that because it is undisputed that these purported AAI's claims are false, so MSJ should be granted. Collins resorted to the fabrication of Prof. Fan's testimony to explain Defs' False Claim.
>
> Second, Collins' embracement of Defendants' Mischaracterization was intentional and not inadvertent error nor out of ignorance. I had called out Collins about

---

[7] *E.g.*, Defendants' Opposition to Plaintiff's Motion Under FRCP 54(b), of February 7, 2020 (ECF no. 427) at 12.
[8] Prior to the order of March 2, 2022 (ECF. no. 492).
[9] The Opinion and Order of June 9, 2020 (ECF. no. 438) at 15.
[10] P. 1, Annex of Undisputed Facts, Plaintiff's FRE 201 Motion, ECF. no. 479.

9

his embrace of Defendants' Mischaracterization. Collins replied that we were no longer allowed to submit to the Court to correct it. Christopher Moore's Letters of Dec. 6, and Dec. 12, 2016, to MJ Pitman mischaracterized again Defs' False Claim as AAI's claim. Instead of correcting the Mischaracterization of Plaintiff's claim, Collins' Dec. 12, 2016, Letter to MJ Pitman doubled down to misrepresent *Defs'* False Claim to the Court to be *Plaintiff*'s claim and to be true, for three (3) times.

32. MJ Pitman's May 31, 2017 Order mistakenly faulted Plaintiff that "plaintiff's principal has claimed, without citing any evidence, that plaintiff's current counsel colluded with defendants' counsel to file deficient papers in opposition to defendants' motion for summary judgment," without realizing that Collins' briefs in "opposition" to defendants' motion for summary judgment are *by themselves* evidence of collusion. In fact, MJ Pitman's order of September 5, 2019, mistakenly cited and relied upon the exact Collins' embrace of Defendants' Mischaracterization, not as evidence of collusion exposed by my Jan. 4, 2017 Letter, but as the basis for him to dismiss "Plaintiff's" claims, which in fact are Defendants False Claims.

33. Defendants knew very well that my Letter of May 31, 2017, to MJ Pitman was filed in the evening after MJ Pitman's order of May 31, 2017, had been docketed during the day. See the events (1)-(7) below. (1) On the evening of May 31, 2017, I emailed simultaneously to all counsel, in particular Defense counsel, including Park and Moore, the pdf file named "<u>2017-5-31 Wang 2 Judge Pitman</u>." and faxed it to MJ Pitman's Chambers.

34. (2) Early in the next morning of June 1, 2017, Collins and Defense counsel exchanged emails. In an email by Defense counsel Nathaniel E. Jedrey, to Collins cc'ed to both Park and Moore, Defendants demanded that I withdraw my 2017-5-31 letter filed the previous night or else Defendants would seek to sanction me for a purported violation of the May 31, 2017 Order; (3) At approximately 7 a.m. on 2017-6-1, Collins forwarded Jedrey's email to me and demanded that I withdraw my <u>Letter of</u> <u>2017-5-31 Wang 2 Judge</u> Pitman for violating the May 31, 2017 Order docketed earlier that day directing me not to make any further submissions to the Court except through new counsel. I refused the joint demand by Defendants and Collins to withdraw my May 31, 2017 Letter. Collins' sent an email and reported my refusal back to Park, Moore, and Jedrey; (4) Collins immediately acted on Defendants' threat and wrote to MJ Pitman shortly after 10 a.m. on June 1, 2017, to report my purported willful violation of the May

10

31, 2017, Order to MJ Pitman, and tried to strike my May 31, 2017 Letter and for the Court to sanction me. *Id.* p.2.

35.     (5) On June 2, 2017, I responded with a letter to MJ Pitman, stating "[w]ithout the benefit of [my letter] of May 31, 2017, the [May 31, 2017 Order] criticized that [I] had not cited evidence of collusion." However, the relevant documents, *i.e.* the emails between me, Defendants and Collins, and Collins and my letters to MJ Pitman, unequivocally confirmed that Defendants knew very well that my letter of May 31, 2017, to MJ Pitman was filed in the evening *after* MJ Pitman's order of May 31, 2017 had been docketed that afternoon.

36.     (6) Having seen no action by Magistrate Judge Pitman following Collins and Defendants' request of June 1, on June 5, 2017, Collins again filed a letter to MJ Pitman to reconfirm that my May 31, 2017, Letter was filed in the evening after Collins had emailed me "within minutes" of his receipt of the May 31, 2017, Order docketed in the afternoon, and that "[t]he next day, following receipt of Dr. Wang's communication with Chambers on the evening of May 31, I again emailed Dr. Wang, specifically addressing the subject matter of the portion of the Order at Docket 275 that pertains to pro se communications with Chambers."). Id, P.3. It was again intended for the Court to strike my May 31, 2017, Letter and for me to be sanctioned for the willful violation of the May 31, 2017 Order. Both June 1, 2017, and June 5, 2017, letters by Collins were emailed to me and to all Defense counsel on record, including Moore and Park.

37.     (7) on June 7, 2017, I responded with a letter to MJ Pitman, stating "as *citizen witness* to report a crime against the Court and Judge Swain. Mr. Collins' letter of June 5, 2017, confirmed that his email (of 7 am, June 1, to my current address) attempted to silence me." This letter was cc'ed to Chief Judge Laura T. Swain and cc's in emails to defense counsel Moore and Park. including a folder containing the pdf file with original name "2017-5-31Wang 2 Judge Pitman.pdf". *Id.*

38.     Plaintiff noted, e.g., in its Objection of MJ Cave's Opinion and Order of June 9, 2020, that "when MJ Pitman issued his May 31, 2017, Order, he had **not** even received Dr. Wang's May 31, 2017 letter." (Emphasis in original). "The records demonstrated that Dr. Wang did not know about the call and did not mention the call in the two letters and that MJ Pitman had not received the collusion evidence when he issued May 31, 2017 Order." ECF no. 442.

39.     In sum, Defendants and Collins jointly and repeatedly demanded that I withdraw the May 31, 2017, Letter filed after the May 31, 2017, Order. Defendants repeatedly attempted to

11

enforce the award of fees based on March 26, 2014 Order, and to dismiss Plaintiff's case all with Collins's support.[11] In collusion with Defendants, Collins procured the contempt order against "AAI and its [former] counsel." Yet, Defendants only sought to recover the fees *only* from AAI but strenuously *opposed* that AAI's former counsel, i.e., Collins, should pay even a part of these fees that were single-handedly procured by Collins in collusion with Defendants. Magistrate Judge Cave correctly denied Defendants' opposition, and ordered Defendants, who admitted to having been in constant consultation with Collins, to serve Collins with the notice to appear in Court. Then immediately Collins paid the fees to avoid having to appear in Court.

> **D.** **Defendants Flipped Their Consistent Position (from May 2017 - until February 2020) to Sanction Me for Filing Dr. Wang May 31, 2017 Letter *After* May 31, 2017 Order, Now Misrepresenting that the Letter was filed *before* May 31, 2017 Order. They Tampered With the Evidence Submitted to the Court in 2021 to Support their New Misrepresentation.**

40. In Opposition to Plaintiff's Motion for Reconsideration of parts of MJ Cave's orders (ECF 427), Defendants stated

> "In a January 4, 2017 letter to the Court, Plaintiff's principal, Dr. Xiaolu Wang, claimed that Plaintiff's Prior Counsel had colluded with defense counsel to thwart Plaintiff's efforts to win its case, including by 'framing' Plaintiff for contempt by filing the Fourth Fan Decl. for an improper purpose. *See* Dr. Wang's Jan. 4, 2017 Letter. Plaintiff repeated these allegations in a May 31, 2017 letter to the Court. *See* Dr. Wang's May 31, 2017 Letter. In both letters, Plaintiff's sole 'evidence' of the alleged 'collusion' was the uncontroversial fact that…, Prior Counsel and Defendants' counsel jointly called Magistrate Judge Pitman to inform him that Plaintiff intended to withdraw its motion for sanctions. In granting the motion, Magistrate Judge Pitman noted that, 'based on what [he] had] been able to observe, I was not aware of any evidence supporting or even suggesting that claims made by plaintiff's principal that counsel have colluded with adverse counsel. Order, May 31, 2017 (ECF No. 275 at 2)." (Defendants' Opposition at 5, and 10-11. ECF 427).

41. Defendants' preceding misrepresentations were cited as the basis for MJ Cave's ruling of 2020-6-9:

> "On January 4 and May 31, 2017, Dr. Wang filed letters with the Court alleging that Collins colluded with Defendants' counsel 'to thwart [AAI's] efforts to win its case, including 'framing' [AAI] for contempt by filing the Fourth Fan Decl[aration] for an improper purpose.' (ECF No. 427 at 10). In support of the collusion theory, Dr. Wang argued that Collins 'and Defendants' counsel jointly called Magistrate Judge Pitman to inform him that [AAI] intended to withdraw' a motion for sanctions. (Id. at 11). In

---

[11] See p. 3, Annex of Undisputed Facts, Plaintiff' FRE 201 Motion, ECF no. 479

12

granting Collins' motion to withdraw, Judge Pitman noted that Dr. Wang's claim failed to cite 'any evidence, that [Collins] colluded with [D]efendants' counsel to file deficient papers in opposition to [D]efendants' motion for summary judgment.' (ECF No. 275 at 2)…and 2017 letters alleging collusion—all of which Judge Pitman had considered and rejected. (ECF No. 427 at 11)." (MJ Cave's Order of June 9, 2020, at 15, ECF438, at 15).

42. From June 1, 2017, and continuing through March, 2021, Defendants in all of their pleadings and submissions unequivocally referred to my letter they received in the evening of May 31, 2017, entitled "2017-5-31 Wang 2 Judge Pitman.pdf" *correctly* as "Dr. Wang's May 31, 2017 letter," and admitted that this Letter was "submitted on May 31." (See, e.g. "Dr. Wang's January 4 and May 31 letters," Defendants' letter of August 7, 2020 to J. Swain at 2, ECF. 452; and "Dr. Wang also submitted letters on January 4, 2017 (ECF No. 443-16) and May 31, 2017 (ECF No. 276)," Defendants' Opposition to Objection at 5, July 23, 2020, ECF 448.)

43. Defendants' Opposition of July 23, 2020 (ECF no. 448) to Plaintiff's objection to MJ Cave's orders obfuscated that "which [Dr. Wang's May 31, 2017 letter was not received until after Magistrate Judge Pitman's order was docketed] is far from clear," which is directly contrary to Defendants repeated prior claims. *Id.* fn. 11.

44. To muddy the waters and make the crystal clear record as outlined in Paragraph 33, "unclear" and to support their misrepresentations in Paragraph 40 above, Defendants tampered with the court records submitted to Chief Judge Swain on March 1, 2021. First, Defendants altered all the dates from 2017-5-31, to "2017-5-30."[12] Prior to that, in all of their court filings, Defendants had correctly referred to the letter as the

> Dr. Wang's May 31, 2017 Letter to Judge Pitman.

Now Defendants altered the date to

> "Dr. Wang's May 30, 2017 Letter to Judge Pitman."[13]

*Second* for good measure, in their March 1, 2021 Production submitted to the Court, Defendants even altered the date of the ECF no. 276, from 2017-6-1 in the Docket entry index, to

---

[12] In the March 1, 2021 Production to the Court, the date of Dr. Wang's May 31, 2017 Letter has all been changed everywhere by Defendants from 2017-5- 31 to "2017-5-30." In the so-called "Documents requested by Plaintiff", zip file 1c, Defendants altered the date of "2017-5-31" in "2017-5-31 Wang to Judge Pitman Letter" to "2017-5-30" in at least three places. See Undisputed Facts, p. 6,  File List; Summary "00.index," in Defendants' Production, Ex. C , and Ex.D, Toren Decl. Plaintiff's FRE 201 Motion, ECF no. 479..

[13] ExI- 2021-3-1 DefendantsProducitonIndex03 and ExJ-2021-3-1 DefendantsProductionFileNames, Plaintiff's FRE 201 Motion,, ECF no. 479.

13

"2017-5-30," in connection to the ECF no. 276 containing Dr. Wang's May 31, 2017 Letter to Judge Pitman.

45. Defendants' tampering with the evidence to support their misrepresentation in Paragraph 40 was intentional, and not an inadvertent error. After Plaintiff requested Defendants to correct the tampered with evidence Defendants submitted to the Court on March 1, 2021, Defendants repeatedly declined as "unimportant." Instead of correction, Defendants made further misrepresentations in their Opposition of December 16, 2021, to Plaintiff's Rule 59(e) and 60(b) Motion and changed all the date of Dr. Wang's May 31, 2017 Letter to Judge Pitman to "Dr. Wang's May 30, 2017 Letter to Judge Pitman," relying on the tampered with evidence in their March 1, 2021 Production submitted to the Court.

E. **Defendants' New Variant to Cover Up Their Mischaracterization of Plaintiff's Claims as Defendants False Claim: Calling Numerical Sequences and Data Files as Code Files.**

46. In a related case filed by Plaintiff against new defendants Citigroup Inc, and London Stock Exchange LLc, *et al*[14], Plaintiff pointed out that the Court's rulings and judgment did not address at all Plaintiff's claims but dismissed purported "Plaintiff's" claims which Defendants Mischaracterized as Defendants' False Claims in this entire Litigation.[15]

47. Defendants' purported "Plaintiff's claims" implies that "*Plaintiff* stole *Defendants*' software code." To cover up the absurdity of this Mischaracterization,[16] before the Court in AAI-II, Defendants simply switched their purported "Plaintiff's claims" from Defendants' False Claims to a new variant: "Defendants stole Plaintiff's *code*." Defendants knew that ACE sequences are *not* code, and there could be no possible basis for this new variant of their Mischaracterization, but the defendants in AAI-II misrepresented "*AAI I*, 2010 WL 4780772, *1-2" as the source of their new variant of their Mischaracterization, despite this Order by Chief Swain never even mentioned the word "code."

48. To the contrary to Defendants' misrepresentation, this Court's Order by Chief Swain recognized that "[p]laintiff alleges that Defendants misappropriated number sequences

---

[14] See 20 Civ. 7034-PGG ("AAI-II"). The AAI-II defendants are represented by the same defense counsel for the Defendants in AAI-I.
[15] See the documents cited on pp.10-11, Plaintiff's FRE201 Motion.
[16] And to cover up Defendants and their programmers' admission evidence, *e.g.*, that the Yield Book used exclusively by their internal users do *not* use Monte Carlo code but only ACE data files.

14

developed by Plaintiff's principal, Dr. Xiaolu Wang (the 'ACE Sequences'), during Defendants' testing of those sequences." [17]

49. Defendants in AAI-II also confused "sequences" to "code" everywhere else including in their Mischaracterization of Plaintiff's claims, as purported "direct use" and "indirect use" claim[18], to cover up their mischaracterization of Plaintiff's ACE Verbatim Use Claim and ACE Derivative Use Claim.[19]

50. Plaintiff demanded that defense counsel correct their misrepresentations made to the Court in AAI-II as required by the Rules, e.g., New York Rules of Professional Conduct. [20] Defendants refused, doubled down and misrepresented that "ACE sequences are software code," in AAI-II, to further confuse data files with code files,[21] and to confuse sequences with code in AAI-I.[22] Defendants previously indicated that "ACE is sequences of numbers." Thus, Defendants knew that their new variant of their Mischaracterization is blatantly false.

51. Plaintiff also called out defense counsel and reminded their duty under the Rules to correct their Mischaracterization in their forthcoming Opposition to Plaintiff's Rule 59(e)60(b) Motion before this Court of AAI-I:[23]

> Defense counsel is duty-bound to correct Defendants' Mischaracterizations for the Court in their response. A starting point is to confirm
>> "When the Yield book system use ACE sequences (either during ACE tests or according to Plaintiff's claim of ACE Verbatim Use) to generate interest rate paths, it reads ACE sequences as data files at run time. Plaintiff's claim of ACE Verbatim Use is not that "Defendants sequences incorporated ACE."

52. Defendants abandoned their direct Mischaracterization at the opening section of their Opposition to the Rule 59(e) 60(b) Motion, but still relied upon and cited the same absurd Mischaracterization that had misled the two Recommendation & Report's ("R&R"), from the 2019 R&R itself. The R&R's adopted Defendants' Mischaracterization in its entirety, and

---

[17] *Id,* ECF no. 461, at 2.
[18] *See* Defendants' Statements: Defendants stole "Plaintiff's proprietary code," Column 4-5, p.5 of the Parties Joint Statements in AAI's Letter of October 7, 2021 to Judge Gardephe, AAI-II, ECF no. 43.
[19] *See* pp. 6-7, Plaintiff's Amended Complaint of November 25, 2020, Annex A of Undisputed Facts, the FRE201 Motion.
[20] See Fn. 3, Plaintiff's Reply in 59(e) 50(b) Motion, ECF 477.
[21] Software code are instructions for computers. A sequence of numbers is a product generated by code, see ¶26, Fn.15, the "6th Wang Decl. For a sequence, see ¶79, Ex 5, *Id*.
[22] In both AAI-II and, AAI-I. See Fn.3, and Fn.5, Plaintiff's Reply to Rule 59(e) 60(b) Motion.
[23] P. Toren's email to T. Kessler of December 14, 2021, in Ex. 1 to Plaintiff's Letter of December 16, 2021 to the Court, ECF no. 473.

15

referred Defendants False Claim ("Yield Book sequences" incorporated ACE sequences) as "Plaintiff's claim of direct misappropriation." The Mem Order (ECF no. 461) and Nov 4, 2021 Order (ECF no. 464) adopted R&R's and in turn critically cited and relied on Defendants' Mischaracterization.

53.	The 2019 R&R dismissed the conclusive direct evidence of ACE Verbatim Use Claim, and the evidence Defendants used ACE verbatim for arbitrage, by the mistaken reasoning that because the evidence of Defendants' ACE Verbatim Use, `hedge.c,` did not support "direct misappropriation" of ACE (which MJ Pitman mistook as Defendants False Claim because of Defendants' Mischaracterization) to be *true*. Now Defendants' Opposition to Plaintiff's Rule 59(e)60(b) Motion before the Court of AAI-I still and again misrepresented and cited MJ Pitman's mistaken "direct misappropriation" of ACE, *i.e,* Defendants False Claim as Plaintiff's claim of misappropriation of trade secret.

54.	Plaintiff' counsel sent emails to defense counsel twice on December 14, and 15, 2021,[24] requesting that defense counsel correct their new mischaracterizations of Plaintiff's claims and their misrepresentation of Judge Swain's order, *e.g.,* calling ACE sequences as "software code." Defendants refused.[25]

55.	Instead, the AAI-II Defendant Citigroup doubled down on their new mischaracterization of purported "Plaintiff's claims" in this Case AAI-I, and repeated their misrepresentation that the numerical sequences are "code."

Under penalty of perjury, under the laws of the United States, I hereby declare the foregoing is true and correct. I am willing and able to testify in any court of law as to the matters stated herein.

DATED:	Beltsville, Maryland
	January 12, 2023

By: _____
    Xiaolu Wang, President
    Advanced Analytics, Inc.

---

[24] Ex. A of AAI-II Defendants' Letter of 2021-12-15 to Judge Paul Gardephe, at p.2, as Ex.1 to Peter Toren letter of December 16, 2021 to Chief Judge Swain, ECF no. 473.
[25] See pp 8-9 of Annex A, FRE 201 Motion.

16