# Exhibit 5

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

**AMERICAS**
NEW YORK
SAN FRANCISCO
SÃO PAULO
SILICON VALLEY
WASHINGTON, D.C.

**ASIA**
BEIJING
HONG KONG
SEOUL

**EUROPE & MIDDLE EAST**
ABU DHABI
BRUSSELS
COLOGNE
FRANKFURT
LONDON
MILAN
PARIS
ROME

CRAIG B. BROD
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEV L. DASSIN
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
JEFFREY A. ROSENTHAL
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
DEBORAH NORTH
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU

ROGER A. COOPER
LILLIAN TSU
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
RISHI ZUTSHI
JANE VANLARE
AUDRY X. CASUSOL
ELIZABETH DYER
DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOHN A. KUPIEC
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
ELANA S. BRONSON
MANUEL SILVA
KYLE A. HARRIS

LINA BENSMAN
ARON M. ZUCKERMAN
KENNETH S. BLAZEJEWSKI
MARK E. MCDONALD
F. JAMAL FULTON
PAUL V. IMPERATORE
CLAYTON SIMMONS
CHARLES W. ALLEN
JULIA L. PETTY
HELENA K. GRANNIS
SUSANNA E. PARKER
THOMAS S. KESSLER
*RESIDENT PARTNERS*

JUDITH KASSEL
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
HEIDE H. ILGENFRITZ
ANDREW WEAVER
JOHN V. HARRISON
MATTHEW BRIGHAM
EMILIO MINVIELLE
LAURA BAGARELLA
JONATHAN D.W. GIFFORD
DAVID W.S. YUDIN
KARA A. HAILEY
ANNA KOGAN
BRANDON M. HAMMER
BRIAN J. MORRIS
CARINA S. WALLANCE
ALEXANDER JANGHORBANI
*RESIDENT COUNSEL*

D: +1 212 225 2884
tkessler@cgsh.com

January 26, 2023

<u>VIA EMAIL</u>

Peter J. Toren, Esq.
Anderson Kill P.C.
1251 Avenue of the Americas
New York, NY 10020

> Re: *Advanced Analytics, Inc. v. Citigroup Global Markets, Inc., et al.*,
> <u>Case No. 22-1718 (2d Cir.)</u>

Dear Peter:

      We write on behalf of Defendants-Appellees Citigroup Global Markets, Inc. and The Yield Book, Inc. (together, the "<u>Appellees</u>") in response to Plaintiff-Appellant Advanced Analytics, Inc.'s ("<u>AAI</u>") letter dated January 12, 2023 (the "<u>January 12 Letter</u>") [D.I. 53-1][1] and its accompanying purported Statement of Evidence Under Rule 10(c) of the Federal Rules of Appellate Procedure (the "<u>Rule 10(c) Statement</u>") [D.I. 53-2] and Eighth Declaration of Xiaolu Wang (the "<u>Eighth Wang Declaration</u>") [D.I. 53-3], as well as AAI's letter dated January 25, 2023 [D.I. 55]. At the outset, nearly all of the January 12 Letter, the purported Rule 10(c) Statement, and the Eighth Wang Declaration are devoted to rehashing AAI's baseless conspiracy theories of discovery misconduct and collusion and appear designed to pre-argue the merits of AAI's appeal. Given the clear impropriety of that tactic, we will not respond to those (baseless)

---

[1] Unless quoted from Appellant's correspondence or otherwise noted, docket citations to "ECF No." refer to the proceeding below, *Advanced Analytics, Inc. v. Citigroup Global Markets, Inc., et al*, Case No. 04 Civ. 3531 (LTS)(SLC) (S.D.N.Y.). "[D.I.]" refers to the above-captioned appeal.

Peter J. Toren, Esq., p. 2

claims; rather, Appellees will take up the merits of this appeal if and when AAI files its opening brief.[2]

The purpose of this letter, instead, is to object to AAI's purported Rule 10(c) Statement in its entirety. The Rule 10(c) Statement, like AAI's first attempt to prepare a Rule 10(c) statement in its letter filed on September 6, 2022 [D.I. 35-1], is improper both as a matter of procedure and on the merits.

I. AAI's Purported Rule 10(c) Statement is Impermissible, Unnecessary, and Improper

As noted in our September 20, 2022 letter [D.I. 41-2], Federal Rule of Appellate Procedure 10(c) ("Rule 10(c)") serves a straightforward, limited purpose: to provide a process to reconstruct the record of a hearing or trial where no transcript is available. *See* Fed. R. App. P. 10(c) ("If the transcript of a hearing or trial is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection."); *see also, e.g.*, *United States v. Regalado*, 2007 WL 403226, at *1 (S.D.N.Y. Feb. 5, 2007) (settling a statement pursuant to Rule 10(c) of the proceedings at a non-transcribed change of plea hearing). AAI's purported Rule 10(c) Statement, a thinly veiled advocacy piece which does not purport to reconstruct any on-the-record proceedings, is nothing of the sort.

First, under its plain language, Rule 10(c) only applies to hearings or trials, not to off-the-record calls, conferences, meetings, or attorney correspondence.[3] Nowhere in its putative Rule 10(c) Statement does AAI even purport to describe a non-transcribed "hearing or trial." Other than a single sentence describing the June 18, 2013 telephone call between AAI's former counsel, Appellees' counsel, and Magistrate Judge Pitman, *see* Rule 10(c) Statement ¶ 6, AAI's Rule 10(c) Statement comprises self-serving characterizations of (and editorial comments regarding) a variety of District Court filings, and correspondence between AAI's former counsel and Appellees' counsel. *See, e.g.*, Rule 10(c) Statement ¶¶ 4–5, 8, 10–11, 13–14 (describing filings); *id.* ¶ 9 (describing email communications); *id.* ¶¶ 11–12 (setting forth AAI's arguments regarding its belief that certain orders below were incorrect). None of this constitutes a "hearing or trial" within the meaning of Rule 10(c). That alone is a basis to reject AAI's Rule 10(c) Statement.

---

[2] For the avoidance of doubt, we disagree entirely with each of AAI's assertions, and Appellees reserve all rights and defenses, both with respect to AAI's specious allegations concerning the case below, as well as AAI's refusal to prosecute its appeal based on meritless claims regarding the state of the appellate record. Further, to the extent AAI seeks relief in respect of its purported Rule 10(c) Statement or the Eighth Wang Declaration, Appellees reserve all rights and defenses, including concerning a request to strike the documents as improper.

[3] *See United States v. Garcia-De La Rosa*, 832 F.3d 128, 131–32 (2d Cir. 2016) (noting that Rule 10(c) applies to a plea colloquy in open court for which "the complete transcript is unavailable"); *United States v. Fackrell*, 991 F.3d 589, 613 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 1373 (2022) (concluding that a conference regarding the testimony of a government witness "was not a 'hearing or trial' within the meaning of Rule 10"); *Burch v. P.J. Cheese*, 861 F.3d 1338, 1344 n.11 (11th Cir. 2017) (noting with approval the district court's conclusion that Rule 10(c) did not apply to affidavits prepared by the appellant and his attorney describing communications with the district court and e-mail exchanges between the appellant and district court concerning proposed pretrial orders and discovery issues); *cf. Chestnut v. Hall*, 284 F.3d 816, 820 (7th Cir. 2002) (noting that the district court had "question[ed] the applicability of Rule 10(c) to pre-trial conferences").

Peter J. Toren, Esq., p. 3

Rather than hew to the plain text of Rule 10(c), AAI claims that the rule applies to "proceedings," which, armed only with Black's Law Dictionary, it interprets to mean any activity that occurred during the near nineteen-year history of the litigation below. [D.I. 53-1, at 3]. Of course, Rule 10(c) means no such thing. First, the word "proceedings" in Rule 10(c) is preceded by the conditional clause "If the transcript of a hearing or trial is unavailable . . . ." Fed. R. App. Pr. 10(c). When read together, it is clear that Rule 10(c)'s use of the term "proceeding" refers to the proceedings that occurred <u>at the non-transcribed hearing or trial</u>, and cannot plausibly sweep so broadly as to permit a wholesale reconstruction of the course of an entire litigation or portions of that litigation.[4] Yet, that is precisely what AAI's Rule 10(c) Statement attempts to do. *See, e.g.*, Rule 10(c) Statement ¶¶ 8–15 (describing AAI's version of events that took place between 2017 and 2021); Eighth Wang Declaration ¶¶ 29–55 (describing AAI's version of events that took place between 2019 and 2021, and AAI's version of events that took place in a separate, duplicative litigation).[5]

In addition, to the extent that AAI contends that the Eighth Wang Declaration forms a part of its Rule 10(c) Statement (which is far from clear based on the January 12 Letter), we also object to the Eighth Wang Declaration in its entirety. The sixteen-page Eighth Wang Declaration does nothing more than set forth AAI's baseless and repeatedly rejected claims of discovery misconduct and collusion; a blatantly improper use of Rule 10(c) to attempt to argue the merits of its appeal in advance of proper briefing. Nothing in Rule 10(c) allows, or even suggests, that AAI is entitled to submit a sixteen-page declaration, separate and apart from its purported Rule 10(c) Statement. AAI's reliance on *United States v. Regalado*, 2007 WL 403226 (S.D.N.Y. Feb. 5, 2007), in support of its improper submission of the Eighth Wang Declaration is misguided. In *Regalado*, the district court simply noted that the parties had not prepared a Rule 10(c) statement in the typical manner: the parties had instead chosen to submit competing affidavits to the district court and requested that the district court add its own recollection to reconstruct the record. 2007 WL 403226, at *1. *Regalado* provides no indication, much less approval, of the idea that an appellant is entitled to submit a declaration allegedly "in support of" a Rule 10(c) statement.

Second, the only event described in AAI's purported Rule 10(c) Statement, when read in the most charitable light, that could conceivably fall within the scope of Rule 10(c) is the June 18, 2013 joint call between Magistrate Judge Pitman, AAI's prior counsel, and Appellees'

---

[4] Although the Federal Rules of Appellate Procedure are not statutes, principles of statutory construction should inform the manner in which they are read. *See, e.g.*, *Castro v. United States*, 310 F.3d 900, 902 (6th Cir. 2002) (using canons of statutory interpretation to interpret Federal Rules of Appellate Procedure). The principle of *noscitur a sociis*—that "a word is known by the company it keeps" applies here. *Yates v. United States*, 574 U.S. 528, 543 (2015); *see also Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 604 (2d Cir. 2021) (applying the principle of *noscitur a sociis*). This principle is necessary "to avoid ascribing to [the word 'proceeding'] a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the" Federal Rules of Appellate Procedure. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995).

[5] A prior version of Rule 10(c) makes clear the absurdity of AAI's interpretation. Prior to 1998, Rule 10(c) applied where "no report of the evidence or proceedings at a hearing or trial was made." *Thomas v. City of New York*, 1997 WL 639242, at *1 (S.D.N.Y. Oct. 16, 1997) (unpublished) (quoting Fed. R. App. P. 10(c) (eff. Dec. 1, 1995)). The "language and organization of" Rule 10 was amended in 1998, but the changes were purely stylistic. Fed. R. App. P. 10 (Advisory Committee Note, 1998 Amendments).

Peter J. Toren, Esq., p. 4

counsel. *See* Rule 10(c) Statement ¶ 6. At the outset, it is far from clear whether Rule 10(c) permits the reconstruction of such a call. *See, e.g.*, *Thomas v. City of New York*, 1997 WL 639242, at *1 (S.D.N.Y. Oct. 16, 1997) (noting that Rule 10(c) is designed to apply to the types of proceedings at which evidence is taken and which are typically stenographically recorded).[6] In any event, even if Rule 10(c) permits the reconstruction of the June 18, 2013 phone call, it is unnecessary here because the existing record adequately reflects that:

(1) On June 17, 2013, AAI "submitted a letter . . . requesting a conference in connection with an anticipated motion for sanctions . . . ." *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 31, 34 (S.D.N.Y.), *objections overruled*, 301 F.R.D. 47 (S.D.N.Y. 2014);[7] and

(2) On June 18, 2013, there was a phone call between Magistrate Judge Pitman, AAI's prior counsel, and Appellees' counsel, in which AAI's prior counsel withdrew AAI's letter. *See, e.g.*, *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 2020 WL 3056450, at *7–8 (S.D.N.Y. June 9, 2020) ("In support of the collusion theory, Dr. Wang argued that Collins 'and Defendants' counsel jointly called Magistrate Judge Pitman to inform him that [AAI] intended to withdraw a motion for sanctions.").[8]

Considering the extensive record regarding the anodyne June 18, 2013 call, there is no need for a Rule 10(c) statement here. AAI's purported Rule 10(c) Statement further confirms there is no need for such a statement, considering that <u>only one sentence</u> of its three-page statement describes the June 18, 2013 phone call. *See* Rule 10(c) Statement ¶ 6.

Finally, even if a reconstruction of the June 18, 2013 phone call were permitted under Rule 10(c) and necessary for this appeal, AAI is incapable of providing it. As AAI has repeatedly noted across multiple pleadings and for several years, <u>its principal did not participate</u>

---

[6] To support its contention that Rule 10(c) may apply to the June 18, 2013 call, AAI cites only out-of-circuit precedent that is not binding on any court here and is irrelevant given the ample existing record of the call and AAI's inability to reconstruct it, as discussed *infra*. Further, AAI ignores that other courts have declined to read Rule 10(c) so broadly. *See supra*, note 3.

[7] AAI has previously described the letter as a "sanction letter motion." Pl's Obj. to Part of Mag. Judge Cave's Order of June 9, 2020 and Denial of Pl's Mot. To Defer, Mem. Of Law, ECF No. 442, at 11–13 (June 23, 2020) ("In the late night of June 17, 2013, Plaintiff filed the Rule 37(b) sanction letter motion supported by Fan 4th Decl . . . .").

[8] This is far from the only example. *See* Pl's Obj. to Part of Mag. Judge Cave's Order of June 9, 2020 and Denial of Pl's Mot. To Defer, Mem. Of Law, ECF No. 442, at 11–13 (June 23, 2020) ("Early next morning on June 18, 2013, behind the back of AAI without Dr. Wang's knowledge, Collins secretly withdrew AAI's 37(b) spoliation motion, in **a joint call to the Court with Defense counsel**.") (emphasis in original); Joint Status Report, ECF No. 355 (Oct. 17, 2019) ("Plaintiff withdrew the letter in a call with Judge Pitman in 2013."); Defs' Opp. to Pl's Mot. for Reconsideration, ECF No. 427, at 5 (Feb. 7, 2020) ("[I]n accordance with the Code of Conduct for United States Judges which restricts *ex parte* communications between judges and parties, Prior Counsel and Defendants' counsel jointly called Magistrate Judge Pitman to inform him that Plaintiff intended to withdraw its motion for sanctions."); Mem. of Law in Support of Pl's Mot. for Reconsideration of Mag. Judge's Order Granting Defs' Mot. to Strike and Injunction and Order of Fee Sanctions, ECF No. 402-1, at 15 (Jan. 3, 2020) ("Until recently Dr. Wang did not know that Collins and Defendants had called MJ Pitman to "withdraw" the motion on June 18, 2013. Collins never informed him of this, but instead filed the Motion to reconsider to hide the withdrawal from Plaintiff and to hide his apparent collusion with Defendants.").

Peter J. Toren, Esq., p. 5

in that phone call. *See, e.g.*, Pls. Mot. Pursuant to Fed. R. Civ. P. 59(e) and 60(b) for Reconsideration and Relief from Judgment, ECF No. 467, at 12 (Dec. 3, 2021). Because the call included only counsel for Appellees, former counsel for AAI, and Magistrate Judge Pitman, AAI has no recollection on which it can base a purported "reconstruction" of that phone call and its version of events is, to the extent not derived from the existing record, entirely speculative.

II. The January 12 Letter Betrays a Lack of Counsel Involvement

The January 12 Letter, which bears your signature and your new firm's letterhead, calls into serious question whether you, or any member of your firm or the bar, is substantively involved in the drafting of the papers being filed on behalf of AAI. The January 12 Letter's numerous grammatical, syntax and typographical errors,[9] to say nothing of its substantive lack of merit, along with your continued refusal to directly contact us or respond to our request to meet and confer, only further underscore our long held concerns regarding the role of AAI's principal in this case, including whether AAI, through its principal, is engaging in the unauthorized practice of law as aided by you and your firm. We continue to reserve all rights on this issue.

We remain available to meet and confer telephonically to discuss AAI's purported issues in order to move this appeal forward, end the needless wasting of resources, and the improper burdening of the Second Circuit's docket with AAI's continued letter-writing campaign.

Sincerely,

*/s/ Thomas S. Kessler*

Thomas S. Kessler

Cc: Robert M. Horkovich, Esq. (via email)

---

[9] *See, e.g.*, January 12 Letter at 1 ("…implying 'Plaintiff stole Defendants code and ACE is not trade secrets."); *id.* at 3 ("The hearings/joint call/conferences, the proceedings, and these orders are the proceedings as defined by Black's Law and are affected and transpired by the events of May 31, 2017 and June 18, 2013."); *id.* at 3 n.5 ("In response to numerous substantial Plaintiff's Letters, Defendants responded just one on September 20, 2022 ('Defendants' Letter').)"; *id.* at 4 ("Defendants should confirm if their position applies to all the paragraphs in the Statement of Evidence under Fed R. App. P 10(c), Ex. 1. If so, that should be Defendants' consent to these statements, if not applicable to all the statements Defendants must indicate the paragraphs which they object or amend, for the District Court to settle according to the records, pursuant to Fed R. App. P 10(c)."); *id.* at 5 ("Defendants alternated the evidence submitted to the Court. . . .").