UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ADVANCED ANALYTICS, INC.,**<br><br>        Plaintiff-Counter-Defendant<br><br>v.<br><br>**CITIGROUP GLOBAL MARKETS, INC.,** *ET AL.*,<br><br>        Defendants-Counter Claimants<br><br>**The AMERICAN PROSPECT, Brandon Smith,**<br><br>        Intervenors | **Case No. 04 Civ. 3531 (LTS) (SLC)** |

**PLAINTIFF'S MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION TO AAI'S MOTION FOR THE RECORD ON APPEAL IN COMPLIANCE WITH FEDERAL RULES OF APPELLATE PROCEDURE 10(a), 10(e)(1)(2)(A), (B), 11(b)(2)(A), and 30(a)**

i

# TABLE OF CONTENTS

Page(s)

**ARGUMENT** ................................................................................................................................1

    **I.**    **Defs and Collins in collusion blocked the Appellate Record from the Second Circuit and Plaintiff.** .......................................................................................... 1

    **II.**    **The Court Should Order Collins to hand over all Plaintiff's case files including the Correspondences with Defendants** ................................................................. 2

    **III.**    **Defendants finally admitted that the docket is woefully deficient, so the Record has not been filed** ....................................................................................................... 3

    **IV.**    **Immediate Approval of stipulation needed: direct Defendants to produce the Missing Court Files and identify pre-2018 sealed entries, and allow the parties to supplement the list of Missing Court Files to be added to the docket.** ............ 5

    **V.**    **Defendants opposition to Pl's FRAP 10(e)(3) Motion based on venue: "the District Court is the proper venue to resolve any such disputes," the Second Circuit certifies Order to the District Court.** ........................................................ 5

    **VI.**    **Defendants willfully mischaracterized and obfuscated Fed. R. App. P. 10(e)(1), Fed. R. App. P. 10(e)(2), Fed. R. App. P. 10(e)(3), and Fed. R. App. P. 11(b)(2).** ...................................................................................................................... 6

    **VII.** **Defs must comply with the Court's IRP and controlling authorities remove blanket "HC" designations and produce redacted version** ................................ 9

**CONCLUSION** ...........................................................................................................................10

**Cases**

pages

Armfield v. Jacobson, 95–cv–4820, 1998 WL 199852, at *2 (E.D.N.Y. Mar.27, 1998) ............... 7

*In re General General Motors LLC Ignition Switch Litigation*, No. 14-MD-2543 (JMF), 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015) ........................................................................ 10

*In re Parmalat Securities Litigation*, 258 F.R.D. 236 (S.D.N.Y. 2009) ....................................... 10

*Robinson v. Santuary Rec. Grps., Ltd.*, 589 F. Supp. 2d 273 (S.D.N.Y. 2008) .............................. 8

Rubin v. Brady, 1992 WL 350749, *1 (S.D.N.Y.Nov.17, 1992) ...................................................... 7

that *Lugosch v. Pyramid Company of Onondaga,* 435 F.3d 110 (2d Cir. 2006) .......................... 10

*United States v. DiPietro,* No. 02 Cr. 1237(SWK), 2007 WL 2164262, at *2–4 (S.D.N.Y. July 25, 2007) ............................................................................................................................... 7

*United States v. Kaufmanman*, 2014 WL 2048198, at *13 n.5 (S.D.N.Y. May 19, 2014) ............. 7

*Weiping Liu v. Indium Corp. of Am.*, 2020 WL 6568606 (N.D.N.Y. May 6, 2020) ...................... 8

**Rules and Laws**

Fed. R. App. P.  10(e)(3) ................................................................................................................ 6

Fed. R. App. P.  11(b)(2) ............................................................................................................... 7

Fed. R. App. P. 10(e)(1) ............................................................................................................ 6, 7

Fed. R. App. P. 10(e)(2) ................................................................................................................ 7

Fed. R. App. **P. 10(e)(3)** ................................................................................................................ 7

Plaintiff Advanced Analytics, Inc. ("Pl") respectfully submits this Reply to Defendants Citigroup Global Markets, Inc. and The Yield Book (together "Defs") Defendants' Memorandum of Law in Opposition ("Opp") to AAI's Motion for the Record on Appeal in Compliance with Federal Rules of Appellate Procedure 10(a), 10(e)(1)(2)(A), (B), 11(b)(2)(A) and 30(a) ("FRAP 10(e)(1), 11(b)(2) Motion" or "Mot").

## PRELIMINARY STATEMENT

The Opp neither refuted nor could contest that Pl's Mot establishes that Defs and Collins in collusion blocked the Second Circuit and Pl to have the Record on Appeal, as mandated by Fed.R.App.P. 10(a):

(a) Defs knew and admitted that multiple court hearings and transcripts were missing from the docket, (a) Defs knew and admitted that multiple court hearings and transcripts are missing from the docket, contrary to Fed.R.App.P. 10(a)(2);

(b) Collins and Defs in collusion have withheld the Missing Court documents that were filed by the SDNY and adjudicated by the Court, but are not in the docket, contrary to FRAP 10(a)(1);

(c) Defs have refused to identify or provide the court files in more than 30 sealed docket entries between 2004 and 2018. Only Defs and Collins have the electronic versions for items (b) and (c);

(d) Defs have blanked judicial documents as "Highly Confidential," to hinder Pl's principal, Dr. Wang, from assisting its counsel in the appeal.[1]

(e) Defs' dilatory tactics blocked and continue to block Pl best efforts to get the Record;

(f) On Oct. 11, 2023, Defs asserted to the Second Circuit that Pl's retrieving its case files "is between AAI and its former counsel." Their Opp. filed concurrently, also on Oct. 11, 2023, pp.14-17 which revealed that in the SDNY, Defs have been fighting from 2019 onward to resisted staunchly Pl's efforts to retrieve its case files including email correspondence. Given their admission in the Second Circuit alone that Defs have no standing to oppose Pl's Request II, the Court must deny Opp, and direct Collins to promptly hand over all Pl's case files, inclusive of all email correspondences, to Pl, and grant Pl' Mot of Rule 10(e)(1).

## ARGUMENT

**I. Defs and Collins in collusion blocked the Appellate Record from the Second Circuit and Plaintiff.**

While Pl did not link to its Rule 10(e)(1), 11(b)(2) Mot, when it filed its Rule 10(c), 10(b)(2)

---

[1] See FRE 201 Req. for Judicial Notice, Chief Judge Swain's January 26 Order. ECF No. 479, Ex. A.

Mot on Oct. 15, 2023, the Court's order of October 16, 2023, within hours recognized that "October 15, 2023, Plaintiff filed a motion under, inter alia, Federal Rules of Appellate Procedure 10(b)(2) and 10(c), which also regards the Record on Appeal," and decided that "the Court is prepared to decide the Motions together in due course…"

Defs have never disputed that any of Collins' several dozens of actions in collusion with Defs from 2012 until May 2017 evidenced his collusion with Defs to sabotage Pl's case.  Defs' lead counsel who have personal knowledge have yet to deny the conspiracy and collusion allegation and have rebuffed Pl's requests for a personal meet-and-confer 6 times.  Defs' Opp was signed by Kessler who has no personal knowledge. Collins acted as Defs covert de facto counsel when Collins purportedly represented Pl.  After Collins had been discharged as Pl's counsel, Defs acted as Collins' de facto counsel, as shown by Opp. Defs and Collins are the only parties who have the missing case files. But Defs and Collins in collusion withheld them and blocked the Record from being completed and filed with the Second Circuit. Defs' Opp supported Collins' withholding of Pl's essential case files, including all of his email correspondences with Defs.

If Collins had not colluded with Defs, he would readily have provided Pl's case files, Pl's new counsel. To hand over Pl's property is his ethical and fiduciary duty but would also have been advantageous to his benefits. Contrarily, Collins refused to provide essential case files including any email correspondences with Defs. See Rule 10(e)(1) Mot, Toren Decl. ¶¶3-5. Pl has been compelled to seek court intervention to enforce such production. The only logical conclusion explaining these seemingly incongruous events is Collins' collusion with the Defs. Opp has no rebuttal to the undisputed facts (a)(b)(c) supra, as presented in Pl's 10(e)(1) Mot. They conspired to block the Record from the Second Circuit and Pl.

## II. The Court Should Order Collins to hand over all Plaintiff's case files including the Correspondences with Defendants

**Defendants' duplicity on both the Second Circuit and this Court.** (i)To the Second Circuit, Defs conceded that "any issue AAI has with the transfer of files between its counsel" is only "an issue between AAI and its prior counsel,"  nothing to do with Defs,  concealing their

ferocious ongoing battle to block Pl's efforts to retrieve its case files starting in 2019, in order to oppose Pl's Mot to Extend. [2] Defs' concealment is deliberate, because

(ii) to this District Court, in Defs' Opp to 10(e)(1) Mot filed **concurrently** with (i), Defs claimed **Pl's same request** "is its most untethered," by distorting its property retrieval matter as a "reopening of discovery," Opp. 14-17. Defs knew that their distortion to this Court is totally false. Defs' duplicity is laid bare by their own filings (i) and (ii).[3]

Pl's case files encompass the missing court documents required for compliance with FRAP 10(e)(1). Defs' opposition based on that the emails contained evidence of collusion, to hinder the Court's inquiry into fraud upon the Court, would not make Pl's retrieval of its own property a "discovery," but may have breached laws forbidding obstruction and conspiracy. Opps argued the Court to abandon its inherent power but to surrender its duty to "administrative grievance agencies" has no merits. Def's opposition has no basis, and the Court should direct Pl's case files to be handed over. Pl has requested Defs inter alia, in 16 letters, to provide the Missing Court Files but to no avail. As the August 22, 2023 Order corrected found, "why [Defs do] not already have copies of those documents or why they have not provided copies of any missing documents to [Pl]." See Mot. p.15. Pl has sought answers to these queries from Defs to no avail. [4]

Defs' Opp glaringly avoided the questions posed in the Aug. 22 Order, The is, Defs possess these Missing Documents but have withheld them from Pl because their intent is to deny both the Second Circuit and Pl the necessary Record for appeal all alone. This was why they stonewalled Pl's requests for Record in 16 letters. This deceit is the genuine motive behind Defs' opposition to the Motions.

### III. Defendants finally admitted that the docket is woefully deficient, so the Record has not been filed

After one year of dilatory tactics to block Pl's repeated attempts to get the Record prepared,[5] Defs have finally admitted there are at least 11 Missing Files: 7 court hearing

---

[2] Defs' Opp to Pl's Mot for Extension. 18-19,
[3] Pl's Rule 10(c) Mot, at 18-19.
[4] Rule 10(e)(1) Mot,Toren Decl. Ex. 2, the emails, e.g. P8, and the emails, Rule 10(c) Mot. Toren Decl. Ex.9, p.4,

3

transcripts and 4 sets of crucial court files of 2014 MSJ papers are missing in the docket. Mot 5-7. Defs opposed any efforts to complete and unseal because their deceits thrived in deficient and sealed dockets, which has made even this District Court very difficult to adjudicate issues, let alone the Second Circuit. CJ Swain directed Defs to provide the files not available in dockets in Feb. 2022, but Defs largely failed to comply. See Mot at 15.

Opp did not and could not that hundreds of essential court files were filed and adjudicated by MJ Pitman, but are missing in the docket. First, all of the Court's substantive hearings between 2004 and 2018 and the transcripts from those hearings (including those of the dates 3/1/06, 7/2/07, 8/21/07, 10/1/07, 10/19/07, 12/11/07, 7/15/08) are missing.[6] It took eight months for Defs to respond to just one July 15, 2008 transcript and they gave an erroneous answer "ECF No. 119". The Second Circuit checked "ECF No. 119" does not have it. Finally, on Sept. 30, 2023, Defs belatedly consented to stipulate the transcripts dated: (i) Mar. 1, 2006, (ii) July 2, 2007; (iii) Aug. 21, 2007; (iv) Oct. 1, 2007; (v) Oct. 19, 2007; (vi) Dec. 11, 2007; and (vii) July 15, 2008, be added to the docket.[7] Defs have admitted that the Record is not complete.

Second, Defs knew that the Missing Court Files included nearly all of the parties' letter motions *filed in the SDNY*, between 2004 and 2018.[8]

Third, it is clear from the Second Circuit's August 22, Order, that Defs misrepresented the contents of ECF No. 119, which is "Appellees' opposition to Appellant's objections to a 2009 magistrate judge report and recommendation," Similarly, according to the Second Circuit, ECF No. 246[9] is "Appellant's opposition to Appellee's request for expenses." This confirmed that the four sets of the April 25, 2014, MSJ papers are among the Missing Court files.[10] This establishes again that the Record is not complete. Despite the stipulation, Defs have not produced the missing MSJ papers despite Pl's requests.[11]

---

[6] On Sept. 6, 2022, Pl designated "[t]he relevant portions of" these eight transcripts," for the Appendix in the Second Circuit. [D.I. 35-1, at 3].
[7] Sept. 30, 2023, Kessler email to P. Toren. Toren Decl. Ex.9.
[8] For examples of Missing Court Files, see Pl's Motion at 5.
[9] Defs failed to state why they refused to provide any information about this missing file. [D.I. 98 at 8].
[10] *Id.* at 6.
[11] See Sept. 30, 2023, Kessler's email, and Toren's email to Kessler Oct. 6, 2023. Ex.9, Rule 10(c) Mot.

    **IV.**    **Immediate Approval of stipulation needed: direct Defendants to produce the Missing Court Files and identify pre-2018 sealed entries, and allow the parties to supplement the list of Missing Court Files to be added to the docket.**

The Opp. conceded that the Court may order Defs to comply with Pl' proposed Stipulation, as revised by Defs, Ex.. Op. at 17. See Kessler's email of Sep. 30, 2023, Ex.9. On September 27, 2023, Pl provided Defs with a proposed stipulation as a foundational template, with the intention for both parties to collectively identify the missing court files in the docket and provide them to the Clerk of the SDNY.[12] The proposed stipulation listed 11 missing Court documents as revealed by the two sealed entries that the Second Circuit identified in its August 22, 2023, Order. As previously stated, more than 30 such unidentified sealed entries exist in the existing docket from before 2019 when Pl's current counsel entered the case.

In response, Defs provided a revised stipulation that recognized and confirmed seven court transcripts and four court documents were missing from the record, stating "Defendants are willing to docket certain items, each reflected below,[13] that do not currently appear to have corresponding ECF numbers." Yet, Defs failed to respond to Pl's repeated requests to provide all these 4 sets of Missing Court Files and the redacted versions of the 3 Files Defs intended to seal, see Ex. 9, the email chain between Toren and Kessler, of 2023-10-9, p.2.[14]

    Putting aside that Defs' statement is an admission that the existing docket does not constitute the Record as defined by FRAP 10(a)(1), (2), and (3), and is contrary to Defs' persistent misrepresentations in their motions and oppositions, the Court must order that Defs shall immediately produce them to Pl and provide copies to the Clerk for entry in the docket.

    **V.**    **Defendants' opposition to Pl's FRAP 10(e)(3) Motion based on venue: "the District Court is the proper venue to resolve any such disputes," the Second Circuit certifies Order to the District Court.**

Defs Opp falsely denied that their Opp to Pl's July 11, Mot under Fed. R. App. P. 10(e)(3)

---

[12] Toren Decl. Ex. __.
[13] They correspond to the 11 items listed in the Op. Op. at 17.
[14] Given the imminent deadline, Pl requested Defs to provide for its appendix, before October 11, 2023, "2. All the Missing Court Files 2-5 that Defendants have admitted are not in the docket, and Plaintiff does not have. 3. Redacted copies of items 9-11 as proposed in Defendants' stipulation." Defs ignored all these requests.

Mot on the basis of the venue change, by citing another paragraph in which Defs falsely accused Pl of not moved in the District Court sooner. Both Defs' denial and accusation are false. First

Their Opp to Pl's July 11, Mot has a whole Section:

> ***"B. AAI's requests are improperly directed to the Second Circuit*** B
> To the extent that AAI claims the District Court record is incomplete or
> inaccurate (which Appellees do not believe to be true and which AAI takes no
> steps to demonstrate), the Federal Rules clearly provide that the District Court is
> the proper venue to resolve any such disputes. See Fed. R. App. P. 10(c), (e)
> (providing for District Court settlement or approval)"

The Second Circuit adopted Defendants' opposition to Pl's FRAP 10(e)(3) Mot based on venue change: "The District Court is the proper venue to resolve any such disputes" and certified its Order to the District Court. Defs Opp now are trying to run away from their own request for venue change. Opp claim that "The Second Circuit has fully adjudicated AAI's record-related requests," is totally false. It has not even adjudicated the two questions that Defs are still running away from, supra.

The Second Circuit left the discretion to Pl and SDNY if they want to file Fed. R. App. P. 10(e)(1), not mandatory. The issues delegated are "why Defs do not say if the parties do not have the Missing Documents, and why Defs refuse to provide them to Pl." The answers are here p.14-17: Collins and Defs in collusion refused to provide them to Pl.

Defs' false accusation that Pl' "gambit" of its filing FRAP10(e)(3) in the Second Circuit or "delay" in filing FRAP10(e)(1) the SDNY is baseless. After they had stonewalled Pl's 16 letters and noticed Pl's FRAP10(e)(1) Mot the SDNY, Defs filed April 6, 2023 Mot to preempt FRAP 10(e)(1) in SDNY. Consequently, Pl filed Mot I in CA2, because Defs April 6, 2023 Mot for Schedule and sanction may incapacitate Pl's appeal, and because Defs claimed they did not know what Pl's requests were.

### VI. Defendants willfully mischaracterized and obfuscated Fed. R. App. P. 10(e)(1), Fed. R. App. P. 10(e)(2), Fed. R. App. P. 10(e)(3), and Fed. R. App. P. 11(b)(2).

Opp consists mostly of mischaracterizations of all the Rules and procedures. It obfuscated Fed R App. P 10(e)(1) in the SDNY with Fed R App. P 10(e)(3) in the Second Circuit, absurdly mislabeled FRAP 10(e)(1) Mot as "the Second FRAP 10(e) Mot." This Court's Order of October

6

16 rejected Defs' mislabel. Opp also misquoted FRAP 10(e)(1), and obfuscated Pl's requests under FRAP 10(e)(1) with that under FRAP 10(e)(2).

The purpose of FRAP 10(e)(1) is to permit correction or modification of the record transmitted to the Court of Appeals so that it adequately reflects what was considered by [the district] court." *Armfield v. Jacobson,* 95–cv–4820, <u>1998 WL 199852, at *2 (E.D.N.Y. Mar.27, 1998)</u> (quoting *Rubin v. Brady,* <u>1992 WL 350749, *1 (S.D.N.Y.Nov.17, 1992)</u>. Here, Defs have been obstructing Pl from doing exactly that.

Defs argue that Pl's have failed to show that the materials were not "omitted from or misstated in the record by error of accident,'" and "that the district court *may* (but is not required to) correct or supplement the record." Opp. at 8, (quoting FRAP 10(e)(1)-(2)). Defs, however, are completely misstating the requirements of Rule 10(e)(1) by combining them with Rule 10(e)(2) requirements. Rule 10(e)(1) and Rule 10(e)(2) requirements are separate and distinct. Rule 10(e)(1) provides "if any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly." Opp omitted the critical mandatory requirement  "must… the record conformed accordingly." *Id*. 8.

In contrast, Rule 10(e)(2) is discretionary, "[i]f anything material to either party is omitted from or misstated by error or accident, the omission or misstatement <u>may be</u> corrected and a supplemental record may be certified and forward: . . ." (emphasis added). Thus, there is no requirement under 10(e)(1) for the record to be "omitted from or misstated by error . . ." and, in contrast to Rule 10(e)(2) any difference in the record "must be settled to and settled by that court and the record conformed accordingly."

While the court in *United States v. Kaufmanman*, 2014 WL 2048198, at *13 n.5 (S.D.N.Y. May 19, 2014), did not distinguish between Rule 10(e)(1) and (e)(2), it is clear that the court was referring to 10(e)(2), stating "(providing that a district court may correct errors in the transcript); *United States v. DiPietro,* No. 02 Cr. 1237(SWK), 2007 WL 2164262, at *2–4 (S.D.N.Y. July 25, 2007). Indeed, in *Dipietro,* also cited by Defs, concerns whether a transcript is correct which means that the court was considering 10(e)(1) and not 10(e)(2). Notably, the court was also concerned with the "level of proof the district court should require before it takes such an action." *Id.* at 2. This is an understandable concern concerning 10(e)(2), because a court is not required to take action, but "may" do so. Whereas, as noted, a court "must" act so "the

record conformed accordingly," meaning there is no choice but to do so where there is a difference in the record. Next, in *Weiping Liu v. Indium Corp. of Am.*, 2020 WL 6568606 (N.D.N.Y. May 6, 2020), contrary to Defs' assertions, the court while quoting from Rule 10(e)(2) clearly determined the issue under 10(e)(2) *Id.* at *2. Here in this instant case, Defs admitted that as many as 7 court hearing transcripts all on important matters are missing in the docket. Defs stipulated that they be included in the docket because they could not object.

Finally, in *Robinson v. Santuary Rec. Grps., Ltd.*, 589 F. Supp. 2d 273 (S.D.N.Y. 2008), the court was concerned with the 10(e)(2) requirement that the "motion must demonstrate that the evidence to be supplemented was before the lower court in the course of its proceedings leading to the judgment under review and was mistakenly omitted from the record." *Id.* at 275.

Defs assert that Pl has not established that these documents are missing from the record by "omission or accident" (Op. at pg. 9), and that "AAI's request also fails to demonstrate how any of the purportedly missing documents are material to its appeal or how the current record does not truly disclose what occurred." Op. at pg. 10. However, this is not the test under Rule 10(e)(1), which does not mention "omission or accident," or "material," but provides "[i]f any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly." Accordingly, Defs cannot hide behind these claims and not produce the records Pl has sought from Defs for over a year.

It is black letter law that only after the Record on Appeal, as defined by FRAP 10(a), is complete, the Record is forwarded to the appellate court pursuant to FRAP 11(b)(2). Subsequently, FRAP 31(a)(2) provides that the brief must be filed with the appellate court "within 40 days after the record is filed." *See also* Second Circuit Local Rule 31.2(a) (same). By Defs' admissions, the Record is not complete, and many documents are missing from the docket. Pursuant to FRAP 10(a)(2) and FRAP(e)(2)(C), the parties have a duty to assist the District Court clerk in completing the record and the index for the Second Circuit, which Defs have failed to do. In addition, the SDNY has not even forwarded the existing portion of the Record to the Second Circuit. Therefore, this Court should grant Pl's motion under FRAP 10(e) to complete the Record.

Further, only Defs have all the court files in the 30 missing entries, which were filed as hardcopies in this Court before 2018 and are inaccessible to the Second Circuit and Pl's counsel who appeared in the case in 2019. Opp obfuscated FRAP 10(e) with FRAP 11(b)(2). Opp argues that "Rule 10(e) says nothing about the titles of entries on the docket." Id. at 13. But Pl's request is for Defs to "[I](ii) identify all the sealed court files  (the "Sealed Files") for each sealed entry in

8

the current index [D.I. 6, the "Deficient Index"] of the docket pursuant to Fed. R. App. P. 11(b)(2);" and IV. *See* Not. of Mot, at 1, and Mot at 12, 15, 22, and the Stipulation. From several dozens of Pl's briefs and letters, Defs knew this request is specifically provided under Fed.R.App.P.11(b)(2), not under Fed.R.App.P.10(e). Opp ignored Clerk and case manager's advice that they have no access to seal entries and that all files in appendix must be verified in the docket. Toren ¶¶23-34.

### VII. Defs must comply with the Court's IRP and controlling authorities remove blanket "HC" designations and produce redacted version

In opposition to Pl's demand that Defs remove improperly designated "HC" or "C" designations and provide redacted files for the remaining Defs to fall back again on a Protective Order Governing Confidential Material that was entered on March 22, 2005. (ECF No. 25). Defs also rely on several specific orders in which the Court allegedly upheld Defs confidentiality designations. Op. at 12. At best, the orders cited by Defs approve the particular confidentiality designations in those cases. To suggest, that this Court has universally blessed Defs "HC" and "C" designations is nonsensical and contrary to the law. Indeed, Defendants' contention that the Court's July 30, 2015, Order, (ECF No. 272) controls whether the redacted versions of sealed documents must be provided is flawed for several reasons. This Order concerned whether redacted documents should be created to assist in reviewing documents by a prospective new counsel before agreeing to represent AAI. This is totally different from the current situation concerning Defs' obligation to produce redacted documents for confidential documents that Defs have insisted on sealing. Defs claimed there, as they do here, that "such a task is unduly burdensome and is unnecessary give [sic] the volume of filed documents . . . [it] would require the review and redaction of more than 10,000 pages of documents." Because the Court determined that there was an alternate form of relief of modifying the existing protective order to permit prospective new counsel to review the seal documents, the Court denied Pl's request, and found that this remedy "substantially diminishes the need for defendant to redact documents that

9

are currently filed under seal."[15] Order at 3. Of course, there is no such alternative relief available presently. See email chain, Ex.9, Toren Decl. p.6.  Defs ignored ¶17 of the Protective Order, and Court's IRP II(C)(5) (require Defs' motions).Defs claim that *Lugosch v. Pyramid Company of Onondaga,* 435 F.3d 110 (2d Cir. 2006) concerns "whether a party seeking to intervene in a civil case was bound by the district court's prior confidentiality order, 435 F.3d at 126" Op. at 12, fn 10. However, the Second Circuit stated that the "mere existence of a confidentiality order says nothing about whether complete reliance on a [confidentiality order] to avoid disclosure was reasonable." *Lugosch,* 435 F.3d at 126. and "it is difficult to see how the defendants can reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret", (*Id),* which is precisely what Defs are attempting to do in this case. See *In re General General Motors LLC Ignition Switch Litigation*, No. 14-MD-2543 (JMF), 2015 WL 4750774, at *4 (S.D.N.Y. Aug. 11, 2015) (same). Finally, Defs objection to *In re Parmalat Securities Litigation*, 258 F.R.D. 236 (S.D.N.Y. 2009) is inapposite (Op. at 12, fn 10.) totally fails. There is no requirement anywhere that the challenge must be under specific Rule. The sweeping unsealing of all thousands of sealed judicial documents in *In re Parmalat* is far more sweeping than Pl's limited requests opposing Defs' sweeping HC designation and for the redaction. The burden of establishing good cause then lies with the party seeking to prevent the disclosure of documents." *Id.* at 243. *See* D.I. 70-4, at 5-6, which Defs utterly failed to do. Defs and Collins' collusion and deceits of the Court and dilatory tactics blocked and continue to block the Record from being prepared for the Second Circuit and Pl, to gravely prejudice Pl in the appeal under the imminent deadline.

## CONCLUSION

For the reasons set forth above, Pl respectfully requests that the Court

grant its Motion expeditiously in its entirety.

---

[15] The Order also recognized that "Plaintiff alleges that it invented a sequence of numbers that are uniquely beneficial in valuing mortgage-backed securities." *Id.* at 1. This rejected Defs' mischaracterization of Pl's claim of misappropriation of trade secrets as "Yield Book Monte Carlo Code generated Ace Sequences." ("Defs false claim," that implies that "Pl stole ACE from Defs" and ACE is not a trade secret.")

Dated:   October 18, 2023
New York, New York

        Respectfully submitted,

Peter J. Toren
**LAW OFFICE OF PETER J. TOREN**
43 West 43rd Street, Suite 266,
New York, N.Y. 10036-7424,
ptoren@petertoren.com,
(646) 623-4654.

*Attorneys for Plaintiff and*
*Counter-Claim Defendant*
*Advanced Analytics, Inc.*

11