## KEVIN KERVENG TUNG, P.C.

Attorneys and Counselors at Law

Writer's direct email:
Kevin K. Tung, Esq.
ktung@kktlawfirm.com
Admitted in NY and NJ

Queens Crossing Business Center
136-20 38th Avenue, Suite 3D
Flushing, New York 11354
Tel: (718) 939-4633
Fax: (718) 939-4468

www.kktlawfirm.com

Hon. Laura Taylor Swain
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 702
New York, NY 10007

**<u>MEMO ENDORSED</u>**

VIA ECF ELECTRONIC FILING

   <u>Re. Advanced Analytics, Inc. v. Citigroup Global Markets Inc. et al, 04 Civ. 3531 (LTS) (SLC)</u>

Dear Chief Judge Swain:

      We represent Plaintiff Advanced Analytics, Inc. (Plaintiff, or "AAI") in the above-captioned matter. We respectfully submit this letter pursuant to the Court's July 11, 2025 Order (ECF No. 522), which directed Plaintiff to respond to Defendants' request concerning their anticipated application for attorneys' fees.

      Defendants' request directly contradicts the well-established requirements for attorney fee applications in the Second Circuit, particularly the standard articulated in *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983), and also conflicts with the Court's prior orders.

**1. Defendants' Request Fails to Acknowledge "Reasonable" Attorneys' Fees**

Defendants request inexplicitly omits a critical requirement that governs any application for attorneys' fees in this case—namely, that only **reasonable** fees may be awarded.

This critical **reasonable** requirement is expressly set forth in Paragraph 21 of the governing Non-Disclosure Agreement ("NDA"): "reasonable attorneys' fees". That language was quoted and reaffirmed by the Court in its November 4, 2021 Order (ECF No. 464), where the Court particularily noted that [Defendants' admitted breach of the NDA] may affect the amount of 'reasonable' fees the Court ultimately awards." *Id*, n.2.

This requirement is not only contractual, but also mandated by settled law. The Supreme Court has held that courts must calculate a "lodestar" figure to determine reasonable attorney's fees. See *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Blum v. Stenson*, 465 U.S. 886, 888 (1984).The *Blum* Court emphasized that "reasonable fees" are to be determined "according to the

1

prevailing market rates in the relevant community"—not according to a party's internal costs of legal services.

## 2. The Controlling Standard Requires Detailed, Contemporaneous Billing Records Without Exception for Administrative Convenience

The Second Circuit unequivocally reaffirmed that *Carey* standard and requires all applications for attorneys' fees to be supported by contemporaneous time records that: "specify, for each attorney, the date, the hours expended, and the nature of the work done." Defendants must first demonstrate that the fees they seek are reasonable under the governing legal and contractual standards. Their request fails to do so.

This standard is not discretionary. The *Carey* standard held that these records are essential to enable the court to assess the **reasonableness** of time claimed, the **necessity** of the work performed, and the **amount of time reasonably required**. The rule is one of substance, not form. It ensures meaningful judicial review and protects the integrity of fee awards. This requirement has been **strictly reaffirmed** by the Second Circuit in *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) ("*Scott I*") and again in *Scott v. City of New York*, 643 F.3d 56 (2d Cir. 2011) ("*Scott II*").

Together, Carey and its reaffirmation in *Scott v. City of New York*, 626 F.3d 130 (2d Cir. 2010) ("Scott I") and 643 F.3d 56 (2d Cir. 2011) ("Scott II"), establish a strict, bright-line rule: fee applicants must submit detailed contemporaneous time records specifying, for each attorney, the date, the hours expended, and the nature of the work performed. No substitute format—such as quarterly summaries, aggregated totals, or generalized descriptions—is acceptable. Exceptions to this requirement are "minimal and limited in scope," permitted only under "truly unusual circumstances beyond the applying attorney's control," not for ordinary administrative burdens like the volume of records or the effort to redact privileged material. *Scott* I expressly rejected those very excuses, which are identical to the ones Defendants now offer. Moreover, if a district court departs from this mandate, it must offer a specific, detailed justification; otherwise, the fee award will be vacated on appeal.

Defendants' proposal to submit "quarter-by-quarter summaries" fails entirely to meet this rigorous standard and would make meaningful judicial review of fee reasonableness impossible

## 3. Defendants' Misconduct and Resources Make Their Request Particularly Improper

Defendants' request to bypass the Carey standard is especially improper given their litigation conduct over the past two decades. As this Court and the Second Circuit are aware, Defendants have repeatedly prolonged litigation through concealment, obstruction, and procedural gamesmanship. They resisted producing critical documents—such as the sequences used by TYB and the Sequence Record—that the Court later ruled must be disclosed, and which Plaintiff was forced to pursue at great cost. Then they produced spoliated and fabricated records. Defendants now seek attorneys' fees for that very conduct, while attempting to conceal the details of the work they performed. This is contrary to both the NDA and settled precedent, which prohibit awarding fees for unreasonable, obstructive, or unlawful litigation conduct.

2

Defendants attempt to justify their request for a waiver of the Carey/Scott standard by citing the supposed "burden" of preparing and redacting billing records spanning "18,000 time entries" and over 750 pages. But this argument fails on both factual and legal grounds. Defendants are among the largest and most sophisticated financial institutions in the world, represented throughout this litigation by highly resourced, top-tier law firms. It is not credible for them to claim that assembling a standard fee application imposes an undue burden. The Carey standard applies equally to small nonprofit litigants and to billion-dollar entities—indeed, that is its purpose. If compliance were excused based on administrative inconvenience, the entire framework for assessing "reasonable" fees would collapse.

If Defendants now find it administratively burdensome to provide a full accounting of their billing, that burden is of their own making. Moreover, their claim of redaction burden is both overblown and suspicious. Defendants have not explained why attorney-client privileged content must be interwoven throughout their billing narratives, nor why summaries would avoid that concern but detailed time entries would not. Their argument raises further concern that they may seek to **conceal improper entries**—such as possible undisclosed payments to conflicted individuals—or time billed for misconduct, including resisting discovery of "apparently relevant" evidence. No redaction is appropriate where the law requires transparency, and *Carey* mandates precisely that.

In light of this history, Plaintiff expressly reserves all rights under the laws and the NDA to seek affirmative relief, including reimbursement for fees caused by Defendants' misconduct. However, Plaintiff does not presently request any such relief or a hearing at this time. This letter responds only to the Court's request for position on Defendants' fee proposal.[1]

Plaintiff therefore requests that the Court deny Defendants' request for a waiver of the *Carey* standard and direct Defendants to provide a fee application supported by full, unredacted, contemporaneous time records specifying the date, hours expended, and the nature

---

- [1] Moreover, the determination of "reasonable" fees is further complicated by Defendants' misconduct in this litigation. The 2009 R&R (2009 WL 7133660 (S.D.N.Y.)), confirmed "a cause of action for a breach of contract occurs at the time of the breach" and Defendants' admitted breach, which triggered Paragraph 19 of the parties' NDA, which provides: "In any event of actual or potential breach involving Confidential Software Information, the compensation from the Receiving Party shall be no less than the actual or potential damage caused to the Disclosing Party." This provision reinforces Plaintiff's entitlement to compensation for Defendants' breach, including potentially attorney fees incurred to bring this action.
- The subsequent 2019 R&R and related orders were procured through conspiracy and fraud. This sequence of events severely impact the fairness of awarding Defendants fees as "prevailing parties" and necessitates strict scrutiny of their fee application. It makes the need for a precise determination of "reasonable" fees, based on strict adherence to *Carey*, even more imperative.
- Defendants' legal work was not merely excessive or unreasonable—it was rooted in a 3-Level Fraud that has obstructed this litigation from ever being resolved on the merits. As part of their 3-Pronged Scheme (Level 2 Fraud), Defendants persistently resisted the production of sequences and the sequence record—information this Court later found to be "apparently relevant" and ordered to be produced. See Chief Judge Swain's Order of Nov. 22, 2010 (2010 WL 4780772 (S.D.N.Y.). Awarding attorneys' fees for work that was not only unreasonable but unlawful from their victim would constitute manifest injustice.

of the work done by each attorney, in accordance with Second Circuit precedent and the Court's own rulings.

        Respectfully submitted,

        /s/ Kevin K. Tung

        Counsel for Plaintiff

cc: All counsel of record (via ECF)

The parties are directed to meet and confer to see if they are able to reach a resolution without the Court's intervention.  If the parties are not able to reach a resolution, Defendants are directed to submit a reply by **August 1, 2025**.  The Court also notes that caselaw suggests that "[a] prevailing party has the right to recover reasonable attorneys' fees and expenses incurred in preparing a successful motion for attorneys' fees." Ognibene v. Parkes, No. 08-CV-1335-LTS-FM, 2014 WL 3610947, at *4 (S.D.N.Y. July 22, 2014) (citing cases).  The Court merely notes the existence of such authority for the benefit of the parties' meet and confer; the Court does not decide whether this authority applies here.  DE # 525 is resolved.
SO ORDERED.
7/21/2025
/s/ Laura Taylor Swain, Chief USDJ